IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| CORDANCE CORPORATION, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 06-491-***(MPT) |
| | ) | |
| AMAZON.COM, INC., | ) | |
| | ) | |
| Defendant. | ) | |

**CORDANCE'S OPENING MEMORANDUM IN SUPPORT OF
ITS MOTION TO DISMISS AMAZON'S FOURTH COUNTERCLAIM**

ASHBY & GEDDES
Steven J. Balick (I.D. #2114)
John G. Day (I.D. #2403)
Tiffany Geyer Lydon (I.D. #3950)
500 Delaware Avenue, 8h Floor
P.O. Box 1150
Wilmington, DE 19899
302-654-1888
sbalick@ashby-geddes.com
jday@ashby-geddes.com
tlydon@ashby-geddes.com

*Attorneys for Plaintiff Cordance Corporation*

*Of Counsel:*

Michael A. Albert
Robert M. Abrahamsen
Adam J. Kessel
WOLF, GREENFIELD & SACKS, P.C.
600 Atlantic Avenue
Boston, Massachusetts 02210
617-646-8000

Dated: December 26, 2006

# TABLE OF CONTENTS

Introduction ........................................................................................................... 1

   I.   Background ..................................................................................................... 2

      A.  Cordance ................................................................................................ 2

         i.   The XRI/XDI Standards ................................................................. 3

         ii.  i-names ........................................................................................ 4

         iii. The CeLiberate Unified Address Book ....................................... 6

      B.  Amazon ................................................................................................. 7

         i.   The '369 Patent ............................................................................ 7


Argument ............................................................................................................... 8

   I.   The Court Must Dismiss the Counterclaim Because Amazon Did Not, and
      Cannot, Allege that Cordance has Refused to Change the Course of Its Actions
      such that Cordance Would Have a Reasonable Apprehension that Suit by
      Amazon Would Be Forthcoming, thus Failing to Meet a Jurisdictional
      Requirement ..................................................................................................... 8

   II.  Even If Declaratory Judgment Jurisdiction Did Exist, the Court Should Refrain
      from Exercising that Jurisdiction ................................................................... 14

   III. The Court Must Dismiss the Counterclaim Because Amazon's Allegations Are
      Too Vague to State a Claim Upon Which Relief May Be Granted .................. 16


Conclusion ........................................................................................................... 19

## TABLE OF AUTHORITIES

**Cases**

Abbott Diabetes Care, Inc. v. Dexcom, Inc.,
  2006 WL 2375035 (D. Del. Aug. 16, 2006) .................................................................. 10

Amgen v. Hoffman-LaRoche,
  __ F. Supp. 2d __, 2006 WL 2987949 (D. Mass. Oct. 20, 2006) ............................................. 14

Amgen, Inc. v. Hoechst Marion Roussel, Inc.,
  3 F. Supp. 2d 104 (D. Mass. 1998) ........................................................................... 17

Arrowhead Indus. Water, Inc. v. Ecolochem, Inc.,
  846 F.2d 731 (Fed. Cir. 1988) ................................................................................. 9

Cardiac Pacemakers, Inc. v. St. Jude Medical, Inc.,
  1997 U.S. Dist. LEXIS 8951 (S.D. Ind. Apr. 30, 1997) ...................................................... 14

Conley v. Gibson,
  355 U.S. 41 (1957) ............................................................................................ 17

Gen-Probe, Inc. v. Amoco Corp., Inc.,
  926 F. Supp. 948 (S.D. Cal. 1996) ........................................................................... 18

Glaxo, Inc. v. Novopharm,
  110 F.3d 1562 (Fed. Cir. 1997) ..................................................................... 9, 10, 14

Lang v. Pacific Marine and Supply Co.,
  895 F.2d 761 (Fed. Cir. 1990) .................................................................. 9, 10, 11, 12

Met-Coil Systems Corp. v. Korners Unlimited, Inc.,
  803 F.2d 684 (Fed. Cir. 1986) ................................................................................ 19

Minnesota Mining & Mfg. Co. v. Norton Co.,
  929 F.2d 670 (Fed. Cir. 1991) .......................................................................... 15, 16

Ondeo Nalco Co. v. EKA Chemicals, Inc.,
  2002 WL 1458853 (D. Del. June 10, 2002) ................................................................ 18, 19

Porter v. Farmers Supply Service, Inc.,
  790 F.2d 882 (Fed. Cir. 1986) ................................................................................ 19

Public Service Comm'n of Utah v. Wycoff Co.,
  344 U.S. 237 (1952) .......................................................................................... 16

Sierra Applied Sciences, Inc. v. Advanced Energy Industries, Inc.,
  363 F.3d 1361 (Fed. Cir. 2004) ............................................................................... 11

Spectronics Corp. v. H.B. Fuller Co.,
  940 F.2d 631 (Fed. Cir. 1991) ............................................................................... 11

**Statutes**

28 U.S.C. § 2201(a) ............................................................................................ 9

# INTRODUCTION

Plaintiff Cordance Corporation ("Cordance") moves pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6) to dismiss Amazon.com's and Amazon.com Holdings LLC's (collectively "Amazon") Fourth Counterclaim (the "Counterclaim").  The Counterclaim seeks a declaratory judgment that Cordance infringes U.S. Patent No. 6,269,369 (the "'369 Patent"), assigned on its face to Amazon.com Holdings, Inc.

The Court should dismiss the Counterclaim on any one of the following three grounds:

(1) Amazon did not (and cannot) allege that Cordance refused to change the course of its actions such that Cordance would have a reasonable apprehension that a suit by Amazon would be forthcoming, and thus the Court lacks subject matter jurisdiction over Amazon's claim for declaratory judgment.

(2) Alternatively, the Court should exercise its discretion not to hear the declaratory judgment claim as it would serve no useful purpose and waste limited party and judicial resources.

(3) Amazon has not alleged infringement or inducement with the particularity required under the Federal Rules and thus fails to state a claim upon which relief may be granted.

I.    **Background**

A.    **Cordance**

Cordance is a small software company that was founded in 1994 as Intermind.[1]  It has been engaged in the development and commercialization of digital addressing and automated data interchange technology from its inception.  Cordance owns a family of patents claiming priority to applications filed in 1996.  One of those patents, U.S. Patent No. 6,757,710, entitled "Object-based On-line Transaction Infrastructure" (the "'710 Patent") issued on June 29, 2004 (D.I. 6 Ex. A).  This case concerns Amazon's infringement of the '710 Patent, including, *inter alia*, by its implementation of its "1-Click" ordering system.

Amazon's patent infringement counterclaim appears to be directed to a product (a "Unified Address Book" service) that does not yet exist.  Cordance does not know when the product will be released, if ever.  Even if that product is released, it is not a product developed or sold by Cordance.  Cordance has no legal, contractual, or financial relationship with the company that is developing that product.  More to the point, Cordance has no control over that company and is not working with that company to develop or assist in the development of the product in question.  At most, the Unified Address Book uses a general purpose identity platform, XRI/XDI (invented by

---

[1] The information in this background section is being offered only to assist the Court in understanding the factual context for this motion.  Cordance is not providing supporting declarations for this background because this motion to dismiss can be decided on the face of Amazon's pleadings.  See 5B Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1350 (3d ed. 2004) ("When the motion is directed solely at the sufficiency of the complaint's jurisdictional allegations, then it is unlikely that affidavits or other materials outside the pleadings will be necessary.")

Cordance), to look up contact information. As discussed in more detail below, holding

Cordance liable for third-party uses of its identity platform would be akin to imposing

liability on the original creators of the set of protocols that constitute the World Wide

Web for the existence of Napster.

### i.    The XRI/XDI Standards

Cordance commercialized the technology described in its family of patents by

creating the leading open standard for digital identity and trusted data exchange. This

standard is composed of two related communications protocols, known as Extensible

Resource Identifier (XRI) and XRI Data Interchange (XDI). The XRI/XDI standards

have been adopted by the Organization for the Advancement of Structured Information

Standards (OASIS), a not-for-profit, international consortium that drives the

development, convergence, and adoption of ecommerce standards. Among other uses,

the XRI/XDI standards provide a framework for automated, machine-to-machine

communications to facilitate commercial transactions. They could eliminate the need for

buyers and sellers to perform repetitive tasks such as providing payment information

during a sale by having that information previously stored with a trusted third party. The

standards thus enable computers to act as automated agents for their human controllers.

Several companies with an interest in facilitating commercial transactions over

the Internet are presently involved in the development and deployment of technologies

that exploit these standards, including Visa International, Boeing, AMD, and NeuStar.

Much like the Domain Name, Uniform Resource Locator (URL), and Hypertext Markup

Language (HTML) standards that make up the modern World Wide Web, the XRI/XDI

standards constitute a framework for potentially unlimited applications in ecommerce and digital identity.

Like a URL, an XRI can be used to look up a resource. For example, when an Internet user wants to see news, she may enter a URL such as "http://www.cnn.com" into her web browser to view the CNN website. The web browser then translates the domain name into an IP address, and the request for the webpage is ultimately routed to a specific server that is connected to the Internet. That server then responds with the requested web page. An XRI, similarly, can be used to look up information regarding the identity of a specific person or organization on a network.

Unlike URL's, however, XRI's can resolve to several different facets of a given identity, depending on the context. A cell phone user might enter an XRI into his phone and be connected to the that person's cell phone number. Entering the same XRI into email software could cause the XRI to resolve to an email address. XRI's can also be used to look up other biographical information, such as a person's resume or employer. Further, they can be used to authenticate a user when they sign into an online retail website or make a purchase. In recent years, an industry of third party developers has emerged around various uses of the extensible features of XRI's.

**ii.**     **i-names**

One application of the XRI standard is Cordance's "i-names" service, which provides users with a single permanent unified communications address. A single i-name can be used to look up various forms of contact information over the Internet, including, for example, an email address or a cell phone number. An i-name is a type of XRI that is

easy to read and type – for example, someone's i-name could simply be "=john" (i-names for individuals always begin with an "=" sign.) Similarly, groups can register i-names for their organization, such as "@visa" for Visa International or "@neustar" for NeuStar, Inc. These individual and group i-names must be registered with one of several accredited "i-brokers," similar to the process whereby individuals and organizations register unique domain names with domain name registrars. These i-brokers may provide additional services to their customers such as filtering contact requests to prevent spam.

Cordance itself is not an i-broker. Cordance's role in i-names is to provide technical assistance to XDI.ORG. XDI.ORG is the nonprofit organization that operates the central i-names registry, known as the "Global Registry Service," or GRS. The GRS is essentially a list of i-names and their affiliated identity information, similar to the Domain Name System (DNS) nameservers which provide IP addresses for given domain names. In order to contact someone through an i-name, a user's computer can send a request to the GRS for information on that i-name. The GRS returns an "identity services record" for the requested i-name. That record can include various methods of contact (e.g., email, cell phone), as well as other biographical information (e.g., resume, personal website). The record may also refer the requester to a service provider for the person who owns the requested i-name. That service provider can present various means for contacting the person, such as through a web-based contact form or at a cell phone number, depending on how the i-name owner desires to be contacted. DNS employs a similar process for looking up the IP address associated with a given domain name,

although DNS infrastructure can only resolve domain names to IP addresses and cannot provide the set of robust communications tools enabled by XRI/XDI.

Over the past few years, various third parties that are unaffiliated with Cordance have been developing applications that rely on the XRI/XDI standards and i-names. This third party development is analogous to that which has occurred on the World Wide Web with the creation of web browsers and other tools that rely on the Domain Name and HTML standards. One such application that Cordance understands is currently under development is the CeLiberate Unified Address Book.

### iii.    The CeLiberate Unified Address Book

CeLiberate is a software company based in California and India. CeLiberate has no legal, contractual, or financial relationship with Cordance. One service that CeLiberate has been developing is known as the Unified Address Book service (the "UAB"). The UAB is not presently available to the public. Although Cordance is not aware of the precise details of CeLiberate's implementation of the UAB, to the best of its knowledge, the UAB is a service that would be designed to run in web browsers and advanced cell phones. The UAB, if and when it is ever implemented, would aggregate information about a customer's contacts in one central location. The UAB, according to CeLiberate, would allow customers to access phone numbers, email addresses, and other contact information from several different devices without the need to manually copy the information to each device. The UAB is still under development and may undergo substantial modifications by CeLiberate before it is made publicly available.

Cordance did not develop or assist in the development of the UAB.  When given an i-name, the CeLiberate product will retrieve the contact information associated with that i-name, first by looking up the identity services record associated with the i-name in the central i-name registry (the GRS), and then by requesting that information from the identity service provider.  Cordance's only role in this arrangement is providing technical assistance for the operation of the GRS.  Cordance does not provide, and does not plan to provide, the "Unified Address Book" or any other "address book" product of any sort.

### B.    Amazon

Amazon is a Delaware corporation with operations across the country.  Amazon's business is conducted primarily over the Internet, with sellers and consumers across the country.  Amazon and third-party vendors that sell through Amazon's interactive website sell a wide variety of goods, including books, music, videos, consumer electronics, games, toys, gifts, automobile parts, and other items.   Amazon's trademarked "1-Click®" purchasing option is featured throughout its website.

### i.    The '369 Patent

The '369 Patent, entitled "Networked Personal Contact Manager," was filed in November 1997 and assigned to Sage Enterprise, Inc. dba PlanetAll.  In August 1998, Amazon acquired PlanetAll.  PTO records indicate that the '369 application was assigned to Amazon in February 2001.  The Patent is directed generally to "computer software used to manage contact information—such as mailing addresses, e-mail addresses, phone numbers, and birthdays—and more specifically to a method of creating links between members over a network and providing information to each member based on levels of

permission maintained by the other members to which they are linked." (Countercl. Ex. A, '369 Patent Col. 1 Lines 4-10.)  To the best of Cordance's knowledge, Amazon does not practice the '369 Patent, and the PlanetAll address book service was shut down in July 2000 after Amazon acquired the company and its patents.

In its Counterclaim, Amazon alleges that Cordance has "engaged in present activity and/or taken concrete steps with the intent to conduct such activity, which would constitute infringement of one or more claims of the '369 patent directly, as inducement of infringement and/or as contributory infringement." (Countercl. ¶ 23.)  According to Amazon, the allegedly infringing activity includes "standardizing, promoting, commercializing and/or operating 'iNames' [*sic*] and/or related services, including the 'Contact Service' and/or 'Unified Address Book Service.'" (Id. ¶ 21.)  Amazon seeks a declaratory judgment that "Cordance's present and/or future activity, *inter alia*, in connection with Cordance Services, constitutes infringement of the '369 patent directly, by inducement, as contributory infringement, and/or otherwise." (Id. at 7.)  As explained below, Amazon has not alleged an actual controversy regarding the '369 Patent, and thus the Counterclaim must be dismissed for lack of jurisdiction.

## ARGUMENT

I.    **The Court Must Dismiss the Counterclaim Because Amazon Did Not, and Cannot, Allege that Cordance has Refused to Change the Course of Its Actions such that Cordance Would Have a Reasonable Apprehension that Suit by Amazon Would Be Forthcoming, thus Failing to Meet a Jurisdictional Requirement.**

Declaratory judgment claims are "most commonly brought by potential infringers against patentees seeking a declaration of noninfringement or invalidity or both." Lang

- 8 -

v. Pacific Marine and Supply Co., 895 F.2d 761, 763 (Fed. Cir. 1990). Amazon's First and Second Counterclaims seek such declarations. In this Motion, Cordance challenges only the legal sufficiency of Amazon's Fourth Counterclaim, which seeks a declaratory judgment of infringement of Amazon's own '369 Patent. Because Amazon cannot allege facts sufficient to show an actual controversy over this Counterclaim, it must be dismissed for lack of jurisdiction.

Under the Declaratory Judgment Act, a court does not have jurisdiction to entertain a declaratory judgment action unless it is presented with an "actual controversy." 28 U.S.C. § 2201(a); Arrowhead Indus. Water, Inc. v. Ecolochem, Inc., 846 F.2d 731, 736 (Fed. Cir. 1988). In Lang, the Federal Circuit set out the requirements for "controversy" where a patentee seeks a declaratory judgment of patent infringement:

> To meet the controversy requirement in a declaratory judgment suit by a patentee against an alleged future infringer, two elements must be present: (1) the defendant must be engaged in an activity directed toward making, selling, or using subject to an infringement charge under 35 U.S.C. § 271(a) (1982), or be making meaningful preparation for such activity; and (2) acts of the defendant must indicate a refusal to change the course of its actions in the face of acts by the patentee sufficient to create a reasonable apprehension that a suit will be forthcoming.

Lang, 895 F.2d at 764; accord Glaxo, Inc. v. Novopharm, 110 F.3d 1562, 1571 (Fed. Cir. 1997). The Federal Circuit most recently reiterated this two-pronged requirement for jurisdiction in Metabolite Laboratories, Inc. v. Laboratory Corporation of America:

> In order to demonstrate that an actual case or controversy exists, however, a patentee must demonstrate two elements. First, the patentee must show that the future infringer is "engaged in an activity directed to making, selling, or using subject to an infringement charge under 35 U.S.C. § 271(a)." The patentee must then demonstrate that the defendant's acts represent a refusal to alter its course of action in light of the patentee's warning actions.

Metabolite Laboratories, Inc. v. Laboratory Corporation of America, 370 F.3d 1354 (Fed. Cir. 2004), cert. dismissed, 126 S. Ct. 2921 (2006) (citing Lang, 895 F.2d at 764); see also Glaxo, 110 F.3d at 1571.

"If there is no actual controversy the district court is without jurisdiction to hear a claim for declaratory relief." Glaxo, 110 F.3d at 1570. Amazon, as the party seeking a declaration of infringement, has the burden of satisfying the two prongs of the Lang test to establish subject matter jurisdiction, even at the motion to dismiss stage. See Abbott Diabetes Care, Inc. v. Dexcom, Inc., 2006 WL 2375035, *3 (D. Del. Aug. 16, 2006) (granting motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(1) where declaratory judgment plaintiff "did not, and could not, allege with any certainty" that the design of an accused medical device would not change before approval by the FDA). Moreover, jurisdiction over the declaratory judgment claim must exist at the time the complaint was filed and continue at all stages of the action. Spectronics Corp. v. H.B. Fuller Co., 940 F.2d 631, 635 (Fed. Cir. 1991).

Amazon has not met and cannot meet either prong of the Lang test for subject matter jurisdiction. The first prong requires that the allegedly infringing acts be both "immediate" and "real." Lang, 895 F.2d at 764. In Lang, the Federal Circuit affirmed the district court's dismissal of a declaratory judgment claim for lack of jurisdiction where the accused product (the hull of a boat) would not be completed until nine months after the complaint was filed, and thus the alleged infringement was not sufficiently "immediate." Lang, 895 F.2d at 765; see also Sierra Applied Sciences, Inc. v. Advanced Energy Industries, Inc., 363 F.3d 1361, 1379, 1380 (Fed. Cir. 2004) (affirming dismissal

- 10 -

of declaratory judgment claim for lack of jurisdiction; claim did not satisfy "immediacy" requirement because accused product would not be built until twelve months after complaint was filed, nor did it satisfy "reality" requirement because the "design was fluid on the date the complaint was filed").

As explained above, Cordance has not and is not engaged in any activity directed toward any address book product, and thus there is no allegedly infringing act that could be "immediate" and "real." No UAB is on the market yet, and, in any event, Cordance is not the company developing that product.[2] Even if Amazon were to allege otherwise (which it cannot do, as there would be no basis for such an allegation), the Counterclaim still fails on its face to establish jurisdiction because Amazon has not met the requirements of the second prong. This failure is, itself, sufficient grounds to require the Court to dismiss the Counterclaim for lack of jurisdiction.

The second prong requires Amazon to show that Cordance, the declaratory judgment defendant, "indicate a refusal to change the course of its actions in the face of acts by the patentee [Amazon] sufficient to create a reasonable apprehension that a suit will be forthcoming." Lang, 895 F.2d at 764. Like the first prong, the second prong can also be broken down into two separate requirements. As the Lang court explained, "the second prong requires conduct by both the accused infringer and the patentee and is similar to the reasonable apprehension prong in the normal action. … It ensures that the

---

[2] Indeed, accusing Cordance of infringing a patent covering address books is analogous to claiming that a technical advisor to the DNS system is liable for Napster's copyright infringement, simply because users of the web were able to access the IP address of the Napster server using DNS.

controversy is definite and concrete between parties having adverse legal interests." Lang, 859 F.2d at 764 (internal citations omitted). In order to establish an actual controversy to support jurisdiction under Lang, Amazon must show that both aspects are satisfied: (1) action by Cordance that indicates a refusal to change the course of its action, and (2) action by Amazon sufficient to create a reasonable apprehension of suit in face of Cordance's refusal. In other words, prior to suit, Amazon must have brought the '369 Patent to Cordance's attention, contended that developing the UAB would constitute infringement of the Patent, and demanded that Cordance stop under threat of suit. Cordance, for its part, must have actually been developing the UAB and must have refused to stop in the face of Amazon's threat. Only then would declaratory judgment jurisdiction exist. But none of these events took place, and, accordingly, none are alleged. Amazon did not notify Cordance of the '369 Patent and does not claim to have done so. Cordance was not, and is not, developing the UAB and, accordingly, did not refuse to cease doing so. The entire chain of events that would give rise to declaratory judgment jurisdiction is simply absent from Amazon's pleading (for the simple reason that it did not happen). Amazon has thus not alleged **any** conduct by either the accused infringer or the patentee that would create even a scintilla of apprehension that a suit would be forthcoming, and thus the Counterclaim fails on its face.

The parties have had no contact whatsoever regarding the '369 Patent. Amazon has not alleged (nor could it allege) that it ever put Cordance on notice of its patent or threatened Cordance with an infringement suit. Amazon has not alleged (nor could it allege), that Cordance ever took any actions that could even arguably be construed as a

- 12 -

refusal to change its course of action. Amazon has made no assertion as to what acts it

believes Cordance should refrain from committing, let alone alleged that Cordance had

refused to comply. Indeed, it appears that the only product which Amazon could even

contend will infringe (once released, which has yet to occur, if it ever does) is not a

product offered, designed, created, or sold by Cordance. The only product Amazon could

possibly be seeking a declaration of infringement for is the "Unified Address Book"

application. That application is currently being developed independently by a third party,

CeLiberate, without Cordance's participation. Cordance has no contract, equity or other

legal relationship with CeLiberate.

District courts have consistently required plaintiffs seeking a declaratory

judgment of infringement to specifically set forth allegations in the complaint that the

defendant refused to desist in face of threats of litigation from the plaintiff in order to

establish jurisdiction. See, e.g., Amgen v. Hoffman-LaRoche, __ F. Supp. 2d __, 2006

WL 2987949 (D. Mass. Oct. 20, 2006) ("The evidence suggests a refusal of [defendant]

to change course in spite of threats of litigation from [plaintiff] and predictions of

litigation from outside parties.")[3]; Glaxo Group v. Apotex, 130 F. Supp. 2d 1006, 1009

---

[3] The Amgen plaintiff included allegations in its complaint that the defendant had refused
to desist in face of threats of litigation: "Despite actions by [Plaintiff] demonstrating its
intent to enforce its patents against [Defendant's] marketing and sale of [the accused
product] in the United States, [Plaintiff] is informed and believes that Roche has
demonstrated a refusal to desist from continued and impending infringement of
[Plaintiff's patents], such that a definite and concrete controversy now exists between
[Plaintiff] and [Defendant] regarding [Defendant's] continued and impending
infringement of one or more claims of the [Plaintiff's patents]." Amgen v. Hoffman-
LaRoche, No. 05-CV-12237-WGY D.I. 52 ¶ 31 (Amended Complaint) (D. Mass. Apr.
25, 2006). Amazon has made no analogous allegation, nor could it, as Cordance has not
expressed a refusal to desist from anything.

(N.D. Ill. 2001) ("Defendant's refusal to respond to plaintiff's letters inquiring about defendant's plans, coupled with defendant's same refusal at oral argument, along with the enormous amount of money at stake, leads to the inescapable conclusion that defendant plans to enter the market as soon as possible."); Cardiac Pacemakers, Inc. v. St. Jude Medical, Inc., 1997 U.S. Dist. LEXIS 8951, at *11 (S.D. Ind. Apr. 30, 1997) ("Plaintiffs . . . assert[ed] in their brief that they 'have at all times declared their intention to enforce their patent rights and defendants have refused to alter their announced course of conduct.'").

Amazon's Counterclaim fails to meet the requirements imposed by the Declaratory Judgment Act as consistently interpreted in the above-cited case law. There have been no threats of litigation, and there has been no refusal to desist. Nor could Amazon in good faith amend its Counterclaim to make such allegations, as Cordance has not developed and will not develop the accused "Unified Address Book" product. There simply is no controversy ripe for resolution now, nor will there ever be. Accordingly, the Court should dismiss Amazon's Counterclaim for lack of subject matter jurisdiction.

## II.    Even If Declaratory Judgment Jurisdiction Did Exist, the Court Should Refrain from Exercising that Jurisdiction.

Even if jurisdiction did exist – which it does not, as shown in Part I *supra* – the Court can and should use its discretion to decline to exercise such jurisdiction. See Minnesota Mining & Mfg. Co. v. Norton Co., 929 F.2d 670, 672 (Fed. Cir. 1991) (stating that even if plaintiff alleges facts sufficient to establish actual controversy, court has discretion to decline declaratory judgment jurisdiction). In exercising its discretion to decline to hear a declaratory judgment claim, a court should balance the interest in

"conserving limited judicial resources" against the interest that the party seeking a declaratory judgment may claim to have in obtaining an early adjudication of its rights and liabilities. Id. at 673. A court must "make a reasoned judgment whether the investment of judicial time and resources in a declaratory action will prove worthwhile in resolving a justiciable dispute." Id. at 672. Of principal importance to a court is whether a delay in an adjudication of rights will result in harm that would be avoided by an immediate declaration of those rights. Id. at 673-74. In other words, there must be "some useful purpose to be achieved in deciding [a party's rights]." Public Service Comm'n of Utah v. Wycoff Co., 344 U.S. 237, 244 (1952).

In this case, no "useful purpose" would be achieved by hearing Amazon's Counterclaim at this time. Even setting aside the fact that Cordance has no direct or indirect involvement in the accused "Unified Address Book" product, that product is not released and, presumably, is still under development. It may well undergo substantial modifications by its developer (not a party to this case) before it is made publicly available. It would be a waste of limited judicial resources for the Court to entertain a hypothetical patent infringement claim, and attempt to engage in the detailed analysis necessary to determine infringement with regard to a product that has not been and may never be released, or that might change substantially prior to release. Moreover, Amazon cannot show that a "delay in an adjudication of rights will result in harm that would be avoided by an immediate declaration of those rights," Minnesota Mining, 929 F.2d at 673-674, because Amazon does not itself practice the Patent.

- 15 -

What is going on here is clear: Cordance brought suit to remedy Amazon's

infringement of Cordance's '710 Patent. In a blatant attempt at retaliation and pressure

by one of the nation's largest ecommerce companies against a vastly smaller software

company, Amazon scoured its patent portfolio to find a patent which it could credibly

allege Cordance was infringing. It didn't find any. Undeterred from its goal of running

up Cordance's costs, Amazon proceeded to seek a declaratory judgment that a product

that Cordance does not make or sell, and which even the company that does make

(CeLiberate) has yet to release, might someday infringe a patent that Amazon does not

itself use and never previously accused Cordance (or CeLiberate, so far as Cordance is

aware) of infringing. Even if there were declaratory judgment jurisdiction, the Court

would be well within its discretion in declining to exercise it to conserve the resources of

the parties and the Court until such time (if ever) that a genuine dispute over an actual

product comes into existence. Amgen, Inc. v. Hoechst Marion Roussel, Inc., 3 F. Supp.

2d 104, 113 (D. Mass. 1998) (exercising discretion to dismiss declaratory judgment claim

where claim could be rendered moot by future alterations to accused product and noting

that Declaratory Judgment Act should not be used as "a tool of harassment and

intimidation").

### III.    The Court Must Dismiss the Counterclaim Because Amazon's Allegations Are Too Vague to State a Claim Upon Which Relief May Be Granted.

Even if the Court found declaratory judgment jurisdiction and the Court chose to

exercise it, the Counterclaim should still be dismissed for inadequate notice. Fed. R. Civ.

P. 8(a) requires that a claim provide "fair notice of what the plaintiff's claim is and the

grounds upon which it rests." <u>Conley v. Gibson</u>, 355 U.S. 41, 47 (1957). Amazon's

Counterclaim does not sufficiently identify which products are accused of infringement

and fails to adequately plead inducement of infringement. The allegedly infringing acts

and the alleged infringing services are all plead in the alternative:

> Plaintiff and Counterclaim-Defendant Cordance is in the business of
> standardizing, promoting, commercializing, **and/or** operating "iNames"
> **and/or** related services, including the "Contact Service" **and/or** "Unified
> Address Book Service," collectively "the Cordance Services." … By
> standardizing, promoting, commercializing, **and/or** operating "iNames"
> **and/or** the Cordance Services, Plaintiff and Counterclaim-Defendant
> Cordance has engaged in present activity **and/or** taken concrete steps with
> the intent to conduct such activity, which would constitute infringement of
> one or more claims of the '369 patent directly, as inducement of
> infringement **and/or** contributory infringement.

(Am. Countercl. ¶¶ 21, 23) (emphasis added).

District courts regularly dismiss patent infringement claims under Rule 12(b)(6)

when the patentee identifies the accused products vaguely or in the alternative. <u>E.g.</u>,

<u>Gen-Probe, Inc. v. Amoco Corp., Inc.</u>, 926 F. Supp. 948, 962 (S.D. Cal. 1996) ("Filing a

patent infringement action pointing vaguely to 'products and/or kits' does not provide

adequate notice as required by the Rules, and does not reflect the reasonable inquiry

required by the Rules."); <u>Ondeo Nalco Co. v. EKA Chemicals, Inc.</u>, 2002 WL 1458853,

*1 (D. Del. June 10, 2002) ("The pleadings are too vague to provide plaintiff with fair

notice of which products are accused of infringing defendant's patents.").

"iNames," the "Contact Service," and the "Unified Address Book Service" are all

separate services, only the third of which (the "Unified Address Book Service") has any

even arguable relationship to the claims of the '369 Patent. Cordance is only involved in

the development of i-names, not either of the other two services accused in the

alternative.  Amazon has not provided Cordance with sufficient notice as to what activity it accuses of potential future infringement to satisfy Rule 8(a).  Indeed, Cordance is unable to determine from the face of the Counterclaim which acts Amazon demands Cordance cease preparing to commit.[4]

Among its several alternative allegations, Amazon alleges inducement and/or contributory infringement.  Absent direct infringement, however, there can be neither contributory infringement, Porter v. Farmers Supply Service, Inc., 790 F.2d 882, 884 (Fed. Cir. 1986), nor inducement of infringement, Met-Coil Systems Corp. v. Korners Unlimited, Inc., 803 F.2d 684, 687 (Fed. Cir. 1986).  Amazon failed to identify any alleged direct infringer.  It thus fails to state a claim for inducement or contributory infringement.  Ondeo Nalco, 2002 WL 1458853, *1 (dismissing counterclaim for direct, contributory, and induced infringement for failure to state a claim, holding that "the pleadings fail to allege direct infringement by a party other than ONDEO Nalco and, therefore, insufficiently plead induced infringement.")

Because Amazon has not given Cordance "fair notice" of the allegedly infringing acts, the Court should dismiss the Counterclaim.

---

[4] That Cordance does not know what Amazon wants it to stop doing is further evidence that there is no declaratory judgment jurisdiction, as argued in Part I above, because Amazon did not request, nor did Cordance refuse, any change in Cordance's course of action.

## CONCLUSION

For the above-stated reasons, the Court should dismiss Amazon's Fourth

Counterclaim for a declaration of patent infringement in its entirety.

ASHBY & GEDDES

/s/ Steven J. Balick
Steven J. Balick (I.D. #2114)
John G. Day (I.D. #2403)
Tiffany Geyer Lydon (I.D. #3950)
500 Delaware Avenue, 8th Floor
P.O. Box 1150
Wilmington, DE 19899
302-654-1888
sbalick@ashby-geddes.com
jday@ashby-geddes.com
tlydon@ashby-geddes.com

*Attorneys for Plaintiff Cordance Corporation*

*Of Counsel:*

Michael A. Albert
Robert M. Abrahamsen
Adam J. Kessel
WOLF, GREENFIELD & SACKS, P.C.
600 Atlantic Avenue
Boston, Massachusetts 02210
617-646-8000
malbert@wolfgreenfield.com
rabrahamsen@wolfgreenfield.com
akessel@wolfgreenfield.com

Dated: December 26, 2006