# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| CORDANCE CORPORATION, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 06-491*** |
| | ) | |
| AMAZON.COM, INC., | ) | **JURY TRIAL DEMANDED** |
| | ) | |
| Defendant. | ) | |

## AMAZON.COM'S ANSWERING BRIEF IN OPPOSITION TO CORDANCE'S MOTION TO DISMISS AMAZON.COM'S FOURTH COUNTERCLAIM

Richard L. Horwitz (I.D. #2246)
David E. Moore (I.D. #3983)
POTTER ANDERSON & CORROON LLP
Hercules Plaza, 6th Floor
1313 N. Market Street
Wilmington, DE 19899
Tel: (302) 984-6000
rhorwitz@potteranderson.com
dmoore@potteranderson.com

*Of counsel:*

Lynn H. Pasahow
J. David Hadden
Darren E. Donnelly
Saina S. Shamilov
Ryan Marton
Gaurav Mathur
FENWICK & WEST LLP
801 California Street
Mountain View, CA 94041
Telephone: (650) 988-8500
Facsimile: (650) 938-5200

*Attorneys for Defendant and Counterclaim Plaintiff Amazon.com*

January 10, 2007

## TABLE OF CONTENTS

I.    NATURE AND STAGE OF THE PROCEEDINGS ...............................................1

II.   SUMMARY OF ARGUMENT .........................................................................1

III.  STATEMENT OF FACTS ...............................................................................2

      A.    Amazon.com's Counterclaim .................................................................2

      B.    Activities of Defendant Cordance.........................................................2

IV.   ARGUMENT....................................................................................................3

      A.    Amazon.com's complaint sufficiently alleges the controversy
           requirement and properly invokes declaratory judgment
           jurisdiction. ...........................................................................................3

           1.    The counterclaim alleges the required "immediacy"
                and "reality." ...........................................................................5

           2.    The counterclaim satisfies the first prong of the
                controversy test as it alleges that Cordance had taken
                concrete steps with intent to engage in potentially
                infringing activities. ................................................................6

           3.    Cordance had or should have had a reasonable
                apprehension that Amazon.com may assert a
                counterclaim against it and the allegations in
                Amazon.com's counterclaim reflect it ..........................................12

           4.    The Court should deny Cordance's motion because at a
                minimum Amazon.com is entitled to a leave to amend
                its counterclaim ......................................................................17

      B.    This Court should exercise its jurisdiction over Amazon.com's
           counterclaim as it would serve a "useful purpose" and "afford
           relief from uncertainty, insecurity, and controversy." ...............................17

      C.    Amazon.com's counterclaim complies with Fed. R. Civ. P. 8(a)
           as it sufficiently identifies products accused of infringement and
           adequately states a claim of indirect patent infringement.......................19

           1.    Amazon.com sufficiently identifies the infringing
                products in its counterclaim.........................................................20

           2.    Amazon.com adequately pleads inducement of
                infringement and contributory infringement in its
                counterclaim...........................................................................22

           3.    The Court should not dismiss Amazon.com's
                counterclaim under Rule 12(b)(6) without permitting a
                curative amendment .................................................................24

V.    CONCLUSION.................................................................................................25

# TABLE OF AUTHORITIES

page(s)

## CASES

*Agilent Technologies, Inc. v. Micromuse, Inc.*,
No. 04 Civ. 3090, 2004 U.S. Dist. LEXIS 20723 (S.D.N.Y. Oct. 19, 2004) ...................... 23

*Alston v. Parker*,
363 F.3d 229 (3rd Cir. 2004) .................................................................................. 24

*American Technical Machinery Corp. v. Masterpiece Enters. Inc.*,
235 F. Supp. 917 (M.D. Pa. 1964) ......................................................................... 23

*Amgen v. Hoffman-LaRoche*,
456 F. Supp. 2d 267 (D. Mass. 2006) ............................................................. 7, 13

*Apple Computer, Inc. v. Unova, Inc.*,
C.A. No. 03-101-JJF, 2003 U.S. Dist. LEXIS 23843 (D. Del. Nov. 25, 2003)..................... 19

*ARGOS v. Orthotec L.L.C.*,
304 F. Supp. 2d 591 (D. Del. 2004)................................................................... 4, 7

*Arrowhead Indus. Water, Inc. v. Ecolochem*, Inc.,
846 F.2d 731 (Fed. Cir. 1988).............................................................................. 14

*Automation Sys., Inc. v. Intel Corp.*,
501 F. Supp. 345 (S.D. Iowa 1980) ................................................................ 15, 17

*BP Chemicals Ltd. v. Union Carbide Corp.*,
4 F.3d 975 (Fed. Cir. 1993)................................................................................. 15

*Cardiac Pacemakers, Inc. v. St. Jude Medical, Inc.*,
No. IP 96-1718-C, 1997 U.S. Dist. LEXIS 8951 (S.D. Ind. Apr. 30, 1997) ...................... 14

*Ciriello v. United States Supreme Court*,
C.A. Nos. 02-1393-JJF, 02-1394-JJF, 02-1395-JJF, 02-1396-JJF, 2003 U.S.
Dist. LEXIS 14109 (D. Del. Aug. 12, 2003) ............................................................ 7

*Conley v. Gibson*,
355 U.S. 41 (1957)............................................................................................. 19

*Coolsavings.com, Inc. v. Catalian Mktg. Corp.*,
No. 98-C-06668, 1999 U.S. Dist. LEXIS 7891 (D. Ill. May 13, 1999)................................ 21

*DuPont De Nemours v. Great Lakes Chem. Corp.*,
383 F. Supp. 2d 642 (D. Del. 2005)...................................................................... 19

*Gammino v. Cellco P'ship*,
No. 04-4303, 2005 U.S. Dist. LEXIS 21557 (E.D. Pa. Sept. 27, 2005) .......................... 19, 22

*Gen-Probe, Inc. v. Amoco Corp.*,
926 F. Supp. 948 (S.D. Cal. 1996)........................................................................ 21

*Glaxo Group v. Apotex*,
130 F. Supp 2d 1006 (N.D. Ill. 2001) ................................................................... 14

*Glaxo, Inc. v. Novorpham, Ltd.*,
110 F.3d 1562 (Fed. Cir. 1997)............................................................................. 15

*Gould Elecs., Inc. v. United States*,
220 F.3d 169 (3rd Cir. 2000) ................................................................................. 4

*Hishon v. King & Spalding,*
467 U.S. 69 (1984)........................................................................................ 19

*Hurley v. Minner,*
C.A. No. 05-826-SLR, 2006 U.S. Dist. LEXIS 69090 (D. Del. Sept. 26, 2006)................. 4, 7

*In re Rivastigmine Patent Litigation,*
No. 05-MD-1661, 2005 U.S. Dist. LEXIS 7167 (S.D.N.Y. 2005) ....................................... 22

*Interdigital Tech. Corp. v. OKI Am.,*
845 F. Supp. 276 (E.D. Pa. 1994) .............................................................. 20, 22

*Lang v. Pacific Marine and Supply Co.,*
895 F.2d 761 (Fed. Cir. 1990)................................................................... *passim*

*Minn. Mining and Mfg. Co., v. Norton Co.,*
929 F.2d 670 (Fed. Cir. 1991)...................................................................... 17

*Montez v. Dept. of the Navy,*
392 F.3d 147 (5th Cir. 2004) ........................................................................ 4

*Morongo Band of Mission Indians v. Cal. State Bd. of Equalization,*
858 F.2d 1376 (9th Cir. 1988) ..................................................................... 17

*Mortensen v. First Fed. Sav. & Loan Ass'n,*
549 F.2d 884 (3rd Cir. 1977)......................................................................... 4

*Newman-Green, Inc. v. Alfonzo-Larrain,*
490 U.S. 826 (1989)................................................................................. 17

*Ondeo Nalco Co. v. EKA Chemicals, Inc.,*
C.A. No. 01-537-SLR, 2002 WL 1458853 (D. Del. June 10, 2002) ............................ 21, 24

*Rosenger v. XM Ventures,*
129 F. Supp. 2d 681 (D. Del. 2001) ............................................................... 21

*Shane v. Fauver,*
213 F.3d 113 (3rd Cir. 2000) ...................................................................... 24

*Sierra Applied Sciences, Inc., v. Advanced Energy Indus., Inc.,*
363 F.3d 1361 (Fed. Cir. 2004)............................................................... 5, 6, 11

*Sony Electronics Indus. v. Soundview Technologies, Inc.,*
157 F. Supp. 2d 190 (D. Conn. 2001)........................................................ 7, 22, 23

*Stanziale v. Nachtomi (In Re Tower Air),*
416 F.3d 229 (3rd Cir. 2005) ...................................................................... 20

*Sturm v. Clark,*
835 F.2d 1009 (3rd Cir. 1987) ..................................................................... 19

*Swierkiewicz v. Sorema N.A.,*
534 U.S. 506 (2002)......................................................................... 19, 20, 21

*Symbol Technologies, Inc. v. Hand Held Products, Inc.,*
C.A. No. 03-102-SLR, 2003 U.S. Dist. LEXIS 21002 (D. Del. Nov. 14, 2003)................... 22

*Takeda Chem. Indus. v. Watson Pharms., Inc.,*
329 F. Supp. 2d 394 (D.N.Y. 2004)................................................................. 5

*Teva Pharms. U.S.A., Inc. v. Pfizer Inc.,*
395 F.3d 1324 (Fed. Cir. 2005)..................................................................... 14

*Young v. New Sewickley Twp.*,
   160 Fed. App'x. 263 (3rd Cir. 2005) .................................................................................... 24

## STATUTES & RULES

28 U.S.C. § 2201 ........................................................................................................... 17, 19

Fed. R. Civ. P. 8 ....................................................................................................... 20, 21, 22

Fed. R. Civ. P. 8(a) ............................................................................................................ 19

Fed. R. Civ. P. 12(b)(1) ................................................................................................. 1, 3, 17

Fed. R. Civ. P. 12(b)(6) ............................................................................................... *passim*

Fed. R. Civ. P. 13(a) and 13(b) ............................................................................................ 13

Fed. R. Civ. P. 26(b)(6) ...................................................................................................... 21

## OTHER AUTHORITIES

*2 Moore's Federal Practice* § 12.30[4] (Mathew Bender 3d ed.) .................................................. 4

## I.    NATURE AND STAGE OF THE PROCEEDINGS

Plaintiff Cordance Corporation brought this action against defendant Amazon.com alleging infringement of U.S. Patent No. 6,757,710 (the "'710 patent"). Amazon.com counterclaimed for declarations of non-infringement and invalidity of the '710 patent. Amazon.com also counterclaimed for a declaration that Cordance's operation, commercialization, standardization and promotion of its iName services infringes U.S. Patent No. 6,269,369. This is Amazon.com's Answering Brief in Opposition to Cordance's Motion to Dismiss Amazon.com's Fourth Counterclaim.

## II.    SUMMARY OF ARGUMENT

Plaintiff Cordance Corporation filed this action against Defendant Amazon.com, Inc. alleging infringement of a patent it purports covers its iName technology. It now complains that Amazon.com brought a declaratory judgment counterclaim and seeks dismissal of it under Rules 12(b)(1) and 12(b)(6), arguing for application of a heightened pleading standard which neither the law nor common sense dictates. Declaratory relief counterclaims are common in patent cases and jurisdiction is soundly based on a real and immediate controversy between the parties. As is clear in this case, such a controversy plainly exists over Cordance's liability for infringement of Amazon.com's patent, and the Court is in a position to decide it.

Cordance attacks Amazon.com's counterclaim based on the alleged inadequacy of the pleadings and directly asks the Court to decide its motion to dismiss on the face of the allegations in the counterclaim. Under the applicable legal standard—which deems the allegations in the counterclaim true and draws all reasonable inferences in Amazon.com's favor—Amazon.com's allegations sufficiently plead the actual controversy and dismissal under Rule 12(b)(1) is improper.

Moreover, Amazon.com's counterclaim fully satisfies the standard of notice pleading against Cordance. The counterclaim specifically identifies the accused products

and adequately pleads indirect infringement. Dismissal under Rule 12(b)(6) is also improper.

### III.    STATEMENT OF FACTS

#### A.    Amazon.com's Counterclaim

Amazon.com asserts several counterclaims in this litigation. Its Fourth Counterclaim is at issue in Cordance's motion. The counterclaim seeks a declaration of infringement of U.S. Patent No. 6,269,369 (the "'369 patent"), which is directed to a form of a network contact manager with various features, *e.g.*, sharing an electronic address book. The disclosed system automatically reflects updated personal information of people listed in the book. The counterclaim alleges that "a real and substantial controversy" exists between the parties as Cordance infringes "one or more claims of the '369 patent." D.I. 24, Answer and First Amended Counterclaims, Fourth Counterclaim ("Counterclaim") at ¶ 24. Specifically, the counterclaim identifies three accused products and services—iNames, the Contact Service and the Unified Address Book Service—and specifies that the "'Unified Address Book Service' is used in conjunction with the 'Contact Service,' and will soon be made available to the public, if not already so available." *Id.* at ¶¶ 21 and 22. The counterclaim further alleges that Cordance "is in the business of standardizing, promoting, commercializing and/or operating" the accused products and services and by doing so Cordance "has engaged in present activity and/or taken concrete steps with the intent to conduct such activity, which would constitute infringement of one or more claims of the '369 patent directly, as inducement of infringement and/or as contributory infringement." *Id.* at ¶ 23.

#### B.    Activities of Defendant Cordance

Cordance is a developer of iName technology that provides people with unique personal identifiers for use on the web. This technology is designed, among other things, to simplify the process of entering personal information on various websites. iNames can be purchased online through iNames.net—the website that is registered in Cordance's

name. A user can purchase an iName for twenty U.S. dollars per year and associate all his or her personal information, such as a home address, work telephone number, and mobile telephone number, with the purchased iName. Cordance stores the associated personal information in a centralized repository or the Global Registry. From then on, the user can use the iName on the web instead of using his or her name and contact information. For example, if an online purchasing site supports iNames, the user can provide the site with the iName when making a purchase. To complete the purchase, the site will request the user's personal information from the Global Registry.

Several iServices are already available for use with this technology. One of these services is the Contact Service that provides iName purchasers with a personal webpage through which they can receive communications from others without revealing their email addresses or personal contact information. Cordance's website indicates the Unified Address Book Service is "arriving soon" and, or services will be available "in coming weeks and months."

Without these and other iServices, iNames themselves are useless as they can only be used with the associated services. The description and advertisement of the services are intended to motivate and encourage others to recognize the benefit of having iNames. This will in turn increase the popularity of Cordance's iName technology and the revenue it receives from the sales of iNames.

## IV.    ARGUMENT

### A.    Amazon.com's complaint sufficiently alleges the controversy requirement and properly invokes declaratory judgment jurisdiction.

In its motion Cordance seeks dismissal of Amazon.com's declaratory judgment counterclaim under Fed. R. Civ. P. 12(b)(1). Cordance asks the Court to decide its motion "on the face of Amazon's pleadings," and the factual assertions presented in the motion are "offered only to assist the Court in understanding the factual context for [the] motion." D.I. 28, Cordance's Opening Memorandum in Support of its Motion to Dismiss

Amazon's Fourth Counterclaim ("Motion") at 2, footnote 1. When a pleading is attacked on its face, the Court must accept the allegations in the complaint as true. *Montez v. Dept. of the Navy*, 392 F.3d 147, 149-150 (5th Cir. 2004); *Mortensen v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 891 (3rd Cir. 1977); *Gould Elecs., Inc. v. United States*, 220 F.3d 169, 188 (3rd Cir. 2000).

Further, because Cordance facially attacks the pleading and it has not filed an answer to Amazon.com's counterclaim, the Court must construe the allegations most favorably to Amazon.com and not look beyond the face of the complaint to determine jurisdiction. *Hurley v. Minner*, C.A. No. 05-826-SLR, 2006 U.S. Dist. LEXIS 69090, at *7 (D. Del. Sept. 26, 2006) (attached hereto as Exhibit A) ("Where a defendant has not filed an answer to the complaint, as in the instant case, the attack on subject matter jurisdiction is necessarily considered a facial attack. Under this type of analysis, the court must accept the allegations of the complaint as true and draw all reasonable inferences in favor of the plaintiff."); *ARGOS v. Orthotec L.L.C.*, 304 F. Supp. 2d 591, 593 (D. Del. 2004) (accord); *see also 2 Moore's Federal Practice* § 12.30[4] (Mathew Bender 3d ed.) ("on a facial challenge … [the court] will not look beyond the face of the complaint to determine jurisdiction."). Amazon.com's allegations in its counterclaim for declaratory judgment of infringement, once accepted as true, and all reasonable inferences drawn from them satisfy all the requirements of the Federal Rules.

It is well established that patent holders may seek declarations of infringement based on future activities of the alleged infringers. *Lang v. Pacific Marine and Supply Co.*, 895 F.2d 761, 764 (Fed. Cir. 1990) ("If *the controversy requirement is met by a sufficient allegation of immediacy and reality*, we see no reason why a patentee should be unable to seek a declaration of infringement against a future infringer… .") (emphasis added). To conclude that it has the required jurisdiction, the Court must determine "*whether the facts alleged, under all the circumstances*, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and

reality to warrant the issuance of declaratory judgment." *Sierra Applied Sciences, Inc., v. Advanced Energy Indus., Inc.*, 363 F.3d 1361, 1372 (Fed. Cir. 2004) (emphasis added). A real and immediate controversy exists between the parties to warrant the issuance of declaratory judgment if (1) the accused infringer "had taken concrete steps (or, to put it in another way, had meaningful preparation) with intent to engage in potentially infringing activities" and (2) the accused infringer had or should have had a reasonable apprehension that a claim of infringement is forthcoming. *Id.* at 1378 (internal quotations omitted); *Lang*, 895 F.2d at 764; *Takeda Chem. Indus. v. Watson Pharms., Inc.*, 329 F. Supp. 2d 394, 402 (D.N.Y. 2004) ("Inducement actions brought under Section 271(b) may anticipate future infringing conduct so long as there is a controversy of sufficient immediacy and reality.") (internal quotation omitted). The plaintiff, however, does not need to plead the two prongs of the test, and needs to allege only the "immediacy and reality" of the infringing activities. *Lang*, 895 F.2d at 764.

Amazon.com's counterclaim not only sufficiently alleges the immediacy and reality of the dispute, but the allegations contained therein also satisfy both prongs of the controversy test.

### 1.    The counterclaim alleges the required "immediacy" and "reality."

In its counterclaim, Amazon.com alleges that Cordance's infringing activity is immediate and real. The infringing activities are immediate when "the period of time between the date on which the complaint was filed and the date on which potentially infringing activities will begin" is not great. *Sierra,* 363 F.3d at 1378. Amazon.com's counterclaim alleges that the accused products and services "will soon be made available to the public, if not already so available." D.I. 24, Counterclaim at ¶ 22. Amazon.com's counterclaim further alleges that the infringing activity has already begun as "Cordance has engaged in present activity and/or taken concrete steps with intent to conduct such activity" by "standardizing, promoting, commercializing, and/or operating" the accused

- 5 -

products and services. D.I. 24, Counterclaim at ¶ 23. Thus, Amazon.com adequately alleges the required immediacy by identifying the infringing activity in which Cordance is already engaged and by specifying that some of the accused products and services "will soon be made available to the public, if not already so available." *Id.*

The infringing activities are real when "the design of the potentially infringing subject of the declaratory-judgment suit was substantially fixed" with respect to its potentially-infringing characteristics. *Sierra,* 363 F.3d at 1379. Here, the counterclaim alleges that iNames, the Contact Service and the Unified Address Book infringe the asserted patent. D.I. 24, Counterclaim at ¶¶ 21, 22, and 23. Furthermore, the counterclaim alleges that the Unified Address book "will soon be made available to the public, if not already so available." D.I. 24, Counterclaim at ¶ 22. When all reasonable inferences are drawn in favor of Amazon.com, these allegations, considered under all the circumstances, establish that the infringing products and services are substantially fixed as they will be available soon, "if not already so available," they infringe "one or more claims of the '369 Patent," and the infringing activity has already begun. D.I. 24, Counterclaim at ¶¶ 21-24. Amazon.com adequately alleges the "reality" of the infringing activities.

> **2.  The counterclaim satisfies the first prong of the controversy test as it alleges that Cordance had taken concrete steps with intent to engage in potentially infringing activities.**

Amazon.com's allegations also satisfy the first prong of the controversy test. The first prong of the test requires that the accused infringer "had taken concrete steps (or, to put it in another way, had meaningful preparation) with intent to engage in potentially infringing activities." *Sierra,* 363 F.3d at 1378. The counterclaim alleges that Cordance had taken concrete steps with intent to engage in the infringing activity. Specifically, the counterclaim alleges that Cordance "standardize[es], promot[es], commercializ[es] and operat[es]" the infringing products and services that "will soon be made available to the public, if not already so available." D.I. 24, Counterclaim at ¶¶ 21, 22, and 23. The

- 6 -

Counterclaim further alleges that Cordance has engaged in such activity "with the intent to conduct" it. D.I. 24, Counterclaim at ¶ 23. This Court must accept these allegations as true. In any event, Cordance fails to offer any evidence to contradict these allegations. All that Cordance offers is its unsupported statement that it "is not engaged in any activity directed toward any address book product." D.I. 28, Motion at 11. Cordance's unsupported assertions, however, are not evidence and cannot be relied on to contradict or undermine the allegations in Amazon.com's counterclaim. *See, e.g., Amgen v. Hoffman-LaRoche*, 456 F. Supp. 2d 267 (D. Mass. 2006) (to challenge the adequacy of allegations in a pleading a party must "proffer material of evidentiary quality in support of that position.").[1] Moreover, the counterclaim specifically identifies three separate products and services and not just "any address book product." And—as alleged in the counterclaim and shown below—Cordance is directly involved in standardizing, promoting, commercializing and operating of all of the accused products and services including the soon-to-arrive Unified Address Book.

Indeed, Cordance admits that it already created an open standard covering the accused iName technology. D.I. 28, Motion at 3. It is well established that an act of standardization of a technology—alleged by Amazon.com in paragraphs 21 and 23 of its counterclaim—can be an act of infringement. *Sony Elecs. Indus. v. Soundview Techs., Inc.*, 157 F. Supp. 2d 190 (D. Conn. 2001) (developing and promoting industry standards can induce patent infringement). Thus, the alleged Cordance's standardization of its technology is a very concrete step of engagement in potentially infringing activities

---

[1] Further, because Cordance did not answer Amazon.com's counterclaim before it filed its motion to dismiss, its attack is necessarily a facial attack and Cordance cannot present evidence in support of its position. *Hurley v. Minner*, C.A. No. 05-826-SLR, 2006 U.S. Dist. LEXIS 69090, at *7 (D. Del. Sept. 26, 2006) (attached hereto as Exhibit A); *ARGOS v. Orthotec LLC*, 304 F. Supp. 2d 591, 593 (D. Del. 2004); *Ciriello v. United States Supreme Court*, C.A. Nos. 02-1393-JJF, 02-1394-JJF, 02-1395-JJF, 02-1396-JJF, 2003 U.S. Dist. LEXIS 14109, at *4-5 (D. Del. Aug. 12, 2003) (attached hereto as Exhibit B) ("Where, as here, the defendants have not filed an answer to the complaint, the attack on subject matter jurisdiction is considered a facial attack.").

including the deployment of the soon-to-arrive Unified Address Book. But this is not the only concrete step that Cordance took and the counterclaim alleges. Cordance also promotes the accused products and services—the activity alleged in paragraphs 21 and 23 of the counterclaim—and encourages others to use them:

**Welcome to i-names, the world's first unified communications address.**

The power of an i-name is that it stands for you, the real person beyond all your communications devices.

After years of development and standardization, i-name technology is finally here and you can begin enjoying its benefits today. Here are the introductory i-name services:

 **Single Sign-On Service**: Enables you to log on to any i-name-enabled Web site with only your i-name and your i-name account password. It's that simple.

**Contact Service**: The safe way to never lose touch and never get spam.

**Forwarding Service**: Create your own permanent Web addresses for anything you want to share.

**Unified Address Book Service** (arriving soon): Gives you the first address book you can use everywhere for everything.

Indeed, as evidenced by the above screenshot from Cordance's website, Cordance already offers the accused Contact Service. Further, Cordance promotes and describes the accused Unified Address Book Service as "arriving soon." Amazon.com's counterclaim alleges these acts of "promotion." D.I. 24, Counterclaim at ¶¶ 21 and 23.

But Cordance's concrete steps in engaging in the infringing activities do not stop here and the counterclaim alleges these additional "commercialization" steps. *Id.* Cordance sells and offers to sell the accused iNames, which are necessary for using the Contact Service and the soon-to-arrive Unified Address Book service:

**Register**

Register your own global
i-name (individual or business)
today.

Cordance also encourages others to become i-Brokers to help it distribute and sell iNames that are required for use of any of the iNames services:

Cordance and NeuStar, together with XDI.org, have published a short guide to the process. "Becoming an I-Broker," which includes all the information necessary to get started. It also includes contact information for the i-broker support teams at both companies.

**Download Becoming an I-Broker**

The downloaded document and the associated I-Broker Accreditation Application—also available on Cordance's website—specify that in order for an entity to become an i-Broker to sell iNames and the associated services, the entity must submit the application along with a fee to Cordance:

- *An application fee of US $2,500.00 (non-refundable).* Application fees may be submitted by wire transfer, money order, or bank check, and must be denominated in United States currency. To pay by wire transfer, please send an email to lon.wiese@cordance.net for wiring instructions.

Completed applications should be sent by mail or courier directly to Cordance Corporation at the following address:

Cordance Corporation
Attn: I-Broker Services
3020 Issaquah-Pine Lake Rd., #74
Sammamish, Washington 98075
http://xri.net/=lon.wiese
Ph. 425.837.3784
Email: ibroker-services@cordance.net

Several entities, listed on Cordance's website, have already purchased their accreditations from Cordance:






(Authorized EZiBroker retailer)




(Authorized EZiBroker retailer)



Thus, Cordance has already received revenue in preparation for its infringing activity by at least receiving application fees from these i-Brokers. Amazon.com's counterclaim again alleges this act of "commercialization." D.I. 24, Counterclaim at ¶¶ 21 and 23. Accordingly, Cordance has taken very concrete steps with an intent to engage in the infringing activity and deployment of the accused products and services, including the Unified Address Book, by "standardizing, promoting, commercializing and/or operating" its iNames and iNames services—as alleged in Amazon.com's counterclaim.[2] D.I. 24, Counterclaim at ¶¶ 21 and 23. The first prong of the jurisdiction test is satisfied.

In its motion, Cordance relies on *Lang*. But its reliance is misplaced. The Federal Circuit in *Lang* dismissed the declaratory judgment claim not because the accused infringing products were to be released onto the market in another nine months, as

---

[2] Cordance's relationship with CeLiberate, which according to Cordance is developing the Unified Address Book Service, is irrelevant as the counterclaim alleges, and as shown above, Cordance itself is involved in a number of concrete steps with an intent to engage in the potentially infringing activities. Further, Cordance's comparison of itself to a technical advisor to the DNS system is misplaced as, again, evidenced by the allegations in the counterclaim and Cordance's standardization, promotion, commercialization and operation of the accused iName technology.

Cordance would like this Court to believe, but because "the accused infringer [also] has not distributed sales literature, prepared to solicit orders, or engaged in any activity" indicating that the accused product will soon be on the market. *Lang,* 895 F.2d at 765. This case is very different. The counterclaim alleges that Cordance has already engaged in at least "standardization, promotion, commercialization and operation" of the accused products and services. D.I. 24, Counterclaim at ¶¶ 21 and 23. Cordance has created "the leading open standard" covering its iNames and the related technology. Motion at 3. Cordance has offered for sale its iNames. Cordance has registered several i-Brokers. Cordance advertises the accused Contact Service and the Unified Address Book. Indeed, Cordance itself refers to the accused services as "Cordance's i-names service." D.I. 28, Motion at 4. Thus, the counterclaim alleges that Cordance's activities satisfy the "immediacy" requirement as at least some of the infringing activities have already began and Cordance advertises the accused Unified Address Book as "arriving soon." *Sierra,* 363 F.3d at 1378-1379 (the controversy is immediate when "the period of time between the date on which the complaint was filed and the date on which potentially infringing activities will begin" is not great).

As discussed above, Cordance's infringing activities are also very "real" as alleged in the counterclaim. *Id.* at 1379 (the infringing activities are real when "the design of the potentially infringing subject of the declaratory-judgment suit was substantially fixed" with respect to its potentially-infringing characteristics.) Moreover, the design of the soon-to-arrive Unified Address Book service is substantially fixed with respect to its potentially-infringing characteristics. The claims of the '369 patent are directed to a contact management system that allows a user to update their personal records in a database and reflect the updates in the address books of others. D.I. 24, Counterclaim, Ex. A (the '369 patent). The Unified Address Book—characterized by Cordance as "arriving soon"—is described as providing the potentially infringing functionality:

- 11 -

> With this new service, you'll never need to "synchronize" address books again because all your devices can share your secure, lifetime i-name address book.
>
> All i-name entries automatically stay current *forever*—as long as you and your contact want to keep the relationship.
>
> Permanently solves the problem of how to keep track of constantly changing directory information.

Thus, the above infringing functionality—the core of the Unified Address Book—is substantially fixed. In fact, the potentially infringing functionality is largely defined by Cordance's iNames service; without it there will be no Unified Address Book. Moreover, both Cordance and its i-Brokers promise that the Unified Address Book is arriving soon and that it will perform the above-listed functionality.

As shown above, Cordance has taken very concrete steps in engaging in the immediate and real infringing activities. These steps are plead in Amazon.com's counterclaim. The first prong of the controversy test is satisfied.[3]

### 3. Cordance had or should have had a reasonable apprehension that Amazon.com may assert a counterclaim against it and the allegations in Amazon.com's counterclaim reflect it.

Amazon.com's counterclaim fully complies with the Federal Rules and satisfies the second prong of the controversy test. Cordance misinterprets the law. In its motion, Cordance argues that Amazon.com's counterclaim fails on its face because it does not allege that Cordance had a reasonable apprehension of the suit. But Amazon.com does not need to plead its counterclaim with such specificity. All Amazon.com needs to allege is that an immediate and real dispute between the parties exists. *Lang*, 895 F. 2d at 764 (The controversy requirement "is met by a sufficient allegation of immediacy and

---

[3] Without offering any evidence in support for its position, Cordance appears to ask this Court to rule on the substance of the allegations in the counterclaim by arguing that it does not make all of the accused products and services and it does not have any legal, contractual or financial relationship with CeLiberate, the company that is allegedly developing the Unified Address Book Service. But such a request is premature as it is only appropriate at a summary judgment phase of this litigation. Moreover, because Cordance does not factually attack the counterclaim, it cannot contradict Amazon.com's allegations.

reality.") Amazon.com did exactly that. In its counterclaim, Amazon.com alleged that the controversy is immediate as the infringing products and services "will soon be made available to the public, if not already so available" and real as Cordance's "standardization, promotion, commercialization and operation" of the soon-to-arrive accused products and services that infringe "one or more claims of the '369 patent" are "concrete steps with the intent to conduct" infringing activity that create "a real and substantial controversy" between the parties. D.I. 24, Counterclaim at ¶¶ 22, 23, and 24.

Further, Amazon.com's declaratory judgment claim is pleaded as a counterclaim in response to a lawsuit that Cordance voluntarily filed. The allegations in the counterclaim are based on the same technology as Cordance's offensive claim— Cordance's iName technology. D.I. 1, Cordance's Complaint at 2; D.I. 28, Motion at pp. 3-4; D.I. 24, Counterclaim at 21. Cordance cannot reasonably complain that it did not have and could not have had a reasonable apprehension that Amazon.com may assert a counterclaim against the technology that is already part of Cordance's offensive case. Fed. R. Civ. P. 13(a) and 13(b) (a defendant may file counterclaims in federal court). Thus, when all reasonable inferences are drawn from the allegations in Amazon.com's counterclaim and they are considered under all the circumstances, the counterclaim alleges the reasonable apprehension on Cordance's behalf that Amazon.com may file a counterclaim involving the same iName technology as Cordance's patent infringement claim.

Cordance's assertion that an allegation of a refusal to desist is necessary to establish jurisdiction is mistaken. None of the decisions cited by Cordance requires or even suggests such a requirement. In fact, none of the quotes presented in Cordance's motion suggests anything about the allegations that a plaintiff must plead in the complaint. D.I. 28, Motion at pp. 13-14. In *Amgen v. Hoffman-LaRoche*, cited by Cordance, the court denied the motion to dismiss a declaratory judgment claim of infringement based on the evidence submitted by the parties and not on the face of the

pleadings. The language that was included in Amgen's complaint, presented in footnote 3 on page 13 of Cordance's motion, is of no importance as the court in Amgen did not consider the sufficiency of plaintiff's allegations and did not advise that a refusal to desist must be alleged in the complaint. D.I. 28. None of the other cases cited by Cordance supports its assertion.[4] The Federal Circuit was clear that all that is required to establish the controversy requirement is an "allegation of immediacy and reality." *Lang*, 895 F.2d at 764. Indeed, the Federal Circuit in *Lang* did not rule that the patentee must plead specifically what is required by both prongs of the test. In *Lang*, the Federal Circuit was not faced with an issue of whether the complaint adequately alleged the facts necessary to establish the declaratory judgment jurisdiction, but was analyzing the totality of the circumstances, based on the presented evidence, to determine whether the declaratory judgment jurisdiction was present. Amazon.com did not violate any pleading requirements for the declaratory judgment claim.

Cordance also seems to believe that only specific communications between the parties prior to the filing of a claim satisfy the second prong of the controversy test. This is not the law. The Court must consider the totality of the circumstances when determining whether Cordance had or should have had a reasonable apprehension that Amazon.com's counterclaim may be forthcoming. *Teva Pharms. U.S.A., Inc. v. Pfizer Inc.*, 395 F.3d 1324, 1333 (Fed. Cir. 2005) (citing *Arrowhead Indus. Water, Inc. v. Ecolochem*, Inc., 846 F.2d 731, 736 (Fed. Cir. 1988)) ("one must consider the totality of the circumstances in determining whether [the] conduct meets the [second] prong of the test."). In fact, no direct communication between the patentee and the alleged infringer is

---

[4] In *Glaxo Group v. Apotex*, 130 F. Supp 2d 1006 (N.D. Ill. 2001) the court decided the motion to dismiss a declaratory judgment of infringement based on the facts presented in the parties' moving papers and not on the face of the pleading. The court did not rule that the patentee must allege that the defendant refused to desist its potentially infringing activity. Similarly, in *Cardiac Pacemakers, Inc. v. St. Jude Med., Inc.*, No. IP 96-1718-C, 1997 U.S. Dist. LEXIS 8951 (S.D. Ind. Apr. 30, 1997) (attached hereto as Exhibit C) the court considered evidence presented in the parties' moving papers and did not advise that defendant's refusal to desist the infringing activity must be alleged in a complaint.

necessary. *Automation Sys., Inc. v. Intel Corp.*, 501 F. Supp. 345, 348 (S.D. Iowa 1980) ("the Court does not believe that there need be communication between the patentee and the alleged infringer . . . to support a finding of 'actual controversy'"); *BP Chemicals Ltd. v. Union Carbide Corp.*, 4 F.3d 975, 979 (Fed. Cir. 1993) ("Declaratory judgment jurisdiction does not require direct threats.") Here, the totality of the circumstances establish that the controversy between the parties is immediate and real. Amazon.com's declaratory judgment claim is plead in response to a patent infringement lawsuit initiated by Cordance. Both Cordance's offensive claim and Amazon.com's counterclaim revolve around the same subject matter—Cordance's iName technology. Thus, the parties are already involved in a real and immediate dispute surrounding Cordance's standardization and promotion of the accused iName technology.

Moreover, the Federal Circuit, in applying the declaratory judgment jurisdiction test to claims brought by the patentee, makes the "concrete steps" prong the focus of its analysis. For example, in *Glaxo v. Novorpham*, the Federal Circuit based its decision of whether there was declaratory judgment jurisdiction solely on examining the intended infringing acts and the time period between the filing of the claim and the commencement of the infringing acts. 110 F.3d 1562 (Fed. Cir. 1997). The Federal Circuit did not even mention in its decision any threatening communications by the patent holder to the accused infringer.[5] Similarly, in *Lang*, the Federal Circuit based its decision of whether there was a declaratory judgment jurisdiction solely on "concrete steps" taken by the accused infringer in furtherance of the infringing activity. Again, as in *Glaxo*, the court did not mention whether the parties exchanged any threatening communications.

---

[5] Although the parties were involved in a previous patent litigation involving the parent of the patent asserted in the declaratory judgment claim, there is no indication in the opinion that the patentee communicated a threat to the accused future infringer with respect to the patent subject of the declaratory judgment claim.

"The sole requirement for jurisdiction under the [Declaratory Judgment] Act is that the conflict be real and immediate, i.e., there be a true, actual controversy required by the Act." *Lang*, 895 F.2d at 764.   The Act does not require that a patentee must specifically allege defendant's refusal to desist or direct communications between the parties in order to be able to assert a declaratory judgment claim.  The concern that declaratory judgment procedure should not be made a medium for securing an advisory opinion in controversy which has not arisen is not present here, as Cordance has taken very concrete steps in preparing for its infringing activity and the dispute between the parties is immediate and real.

Moreover, Cordance's actions after it was on notice of Amazon.com's counterclaim further evidence the immediate and real controversy between the parties. Amazon.com's counterclaim is the clearest threat Cordance can receive.  In the face of this threat, however, Cordance continues to advertise all the accused services.  In fact, Cordance continues to advertise that the accused Unified Address Book Service is to "arrive soon." This Court should not dismiss Amazon.com's counterclaim as the informality of communications between the parties, that is not even required, already occurred and Cordance, at least as of the date of receiving Amazon.com's counterclaim, had an apprehension that Amazon.com alleges patent infringement.  Dismissal of the counterclaim for lack of reasonable apprehension will serve no purpose and will waste judicial resources.  The dismissal will only force the parties to brief yet another issue— Amazon.com's right to seek a leave to amend its pleadings to add the same declaratory judgment counterclaim based on the communications between the parties and their actions that took place during the exchange of the pleadings and briefing of this jurisdictional issue.

4. **The Court should deny Cordance's motion because at a minimum Amazon.com is entitled to a leave to amend its counterclaim.**

When a Rule 12(b)(1) motion challenges allegations of a complaint without relying on any extrinsic evidence, the court may grant leave to amend the complaint "[w]hen the district court has jurisdiction over the action at the outset but the complaint inadequately alleges jurisdiction." *Morongo Band of Mission Indians v. Cal. State Bd. of Equalization*, 858 F.2d 1376, 1381 (9th Cir. 1988); *see also Newman-Green, Inc. v. Alfonzo-Larrain*, 490 U.S. 826 (1989) (28 U.S.C. § 1653 provides that defective allegations of jurisdiction may be amended). As demonstrated above, this Court does have jurisdiction over Amazon.com's counterclaim. Should the Court, however, find that the form of the counterclaim is deficient, it should grant Amazon.com leave to amend the counterclaim to adequately allege jurisdiction that this Court already has.

B. **This Court should exercise its jurisdiction over Amazon.com's counterclaim as it would serve a "useful purpose" and "afford relief from uncertainty, insecurity, and controversy."**

Cordance further asks the Court to refrain from exercising its jurisdiction over Amazon.com's counterclaim. But situations justifying exercise of the Court's decision to issue a declaratory judgment include: "(1) when the judgment will serve a useful purpose in clarifying and settling the legal relations in issue, and (2) when it will terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding." *Minn. Mining and Mfg. Co., v. Norton Co.*, 929 F.2d 670, 672-673 (Fed. Cir. 1991). Here, both situations are present. First, the judgment will settle the immediate and real patent dispute between the parties and thus serve a very useful purpose. Second, "the immediate review of the patent infringement issue provides both parties with a determination of their rights and obligations upon which they rely in assessing future behavior with respect to the product or process in question." *Automation Sys, Inc. v. Intel Corp.*, 501 F. Supp. 345 (D. Iowa 1980). This immediate review will eliminate any uncertainty and insecurity associated with the development and deployment

- 17 -

of the accused products and services. Because the actual controversy exists between the parties, "[i]t will be to no one's advantage to wait for a consideration of the infringing character of a product or process until the actual infringement takes place since this only services to increase the resulting potential economic harm." *Id.*

Contrary to Cordance's assertions, no judicial resources will be wasted should this Court exercise its jurisdiction over the declaratory judgment counterclaim. Indeed, litigating Cordance's offensive case and Amazon.com's declaratory judgment claim will promote judicial efficiency as Cordance's offensive case already revolves around its technology. The asserted Cordance patent purportedly covers iName technology that Cordance standardizes. D.I. 28, Motion at p. 3; D.I. 1, Cordance's Complaint at 2. Thus, the parties' efforts and investigation in this case with respect to Cordance's offensive case will necessarily involve analysis of Cordance's iName technology. For example, the testimony of the inventor of the asserted Cordance patent, who is also substantively involved in promoting the standard covering Cordance's iName technology, will already have to be obtained as part of Cordance's offensive case. The same testimony will also be relevant for Amazon.com's declaratory judgment claim. Also, the analysis of Cordance's licensing practices of its patent for iName technology and the application of those practices to Cordance's damages scenarios will have to be litigated by the parties as part of Cordance's offensive case. The same issues will be analyzed as part of Amazon.com's declaratory judgment claim to show Cordance's involvement in standardization and promotion of its technology.

In its motion, Cordance argues that because the Unified Address Book is not yet on the market, this Court should decline to exercise its declaratory judgment jurisdiction. But the Federal Circuit specifically advised that "[a] concern that the alleged future infringer might alter its course of conduct or discontinue it altogether should not cause a dismissal any more than it should in a suit by the accused infringer." *Lang,* 895 F.2d at 764. In fact, the Declaratory Judgment Act applies "whether or not further relief is or

- 18 -

could be sought." 28 U.S.C. § 2201. Furthermore, as described in detail above, the design of the Unified Address Book is substantially-fixed with respect to its potentially infringing functionality. Accordingly, because the actual controversy exists between the parties and, as described above, Cordance's infringing activities are substantially fixed, this Court should exercise its jurisdiction over Amazon.com's fourth counterclaim.

**C.    Amazon.com's counterclaim complies with Fed. R. Civ. P. 8(a) as it sufficiently identifies products accused of infringement and adequately states a claim of indirect patent infringement.**

Cordance also seeks dismissal of Amazon.com's counterclaim under Rule 12(b)(6). The U.S. Supreme Court, however, has established a strict standard for Rule 12(b)(6) motions to dismiss, which should not be granted "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957). In considering Cordance's motion, the Court must accept "all allegations in the complaint and all reasonable inferences that can be drawn therefrom … as true and view [it] in the light most favorable to the non-moving party." *Sturm v. Clark*, 835 F.2d 1009, 1011 (3rd Cir. 1987). A "court may dismiss a complaint for failure to state a claim only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *DuPont De Nemours v. Great Lakes Chem. Corp.*, 383 F. Supp. 2d 642, 645 (D. Del. 2005) (citing *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984)); *Apple Computer, Inc. v. Unova, Inc.*, C.A. No. 03-101-JJF, 2003 U.S. Dist. LEXIS 23843, at *5 (D. Del. Nov. 25, 2003) (attached hereto as Exhibit D). Cordance's motion does not meet this standard.

The Federal Rules of Civil Procedure adopt a simple, notice pleading standard that requires only "a short and plain statement of the claim that will give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Conley*, 355 U.S. at 47; *Gammino v. Cellco P'ship*, No. 04-4303, 2005 U.S. Dist. LEXIS 21557, at *4-6 (E.D. Pa. Sept. 27, 2005) (attached hereto as Exhibit E) (discussing *Swierkiewicz*

- 19 -

*v. Sorema N.A.*, 534 U.S. 506, 510-514 (2002) (Rule 8 sets a liberal pleading standard,

which is not based on the merits of the claim or the possibility of recovery); *Stanziale v.*

*Nachtomi (In Re Tower Air),* 416 F.3d 229, 237 (3rd Cir. 2005) ("[A] plaintiff need only

make out a claim upon which relief can be granted."); *Interdigital Tech. Corp. v. OKI*

*Am.*, 845 F. Supp. 276, 283 (E.D. Pa. 1994) (patent claim need only to "sufficiently

identif[y] products in some way" that are alleged to infringe and does not even need to

identify specific products by name).

      Here, Cordance requests the Court to judge Amazon.com's counterclaim by a

heightened pleading standard contrary to the notice pleading requirements adopted by the

Federal Rules of Civil Procedure. Amazon.com, however, has met the requirements of

the Rules. Amazon.com's counterclaim sufficiently identifies products and services

accused of infringement and adequately pleads indirect infringement.

        **1.**     **Amazon.com sufficiently identifies the infringing products in**
               **its counterclaim.**

      Cordance complains that Amazon.com did not sufficiently identify products

accused of infringement. In its counterclaim, however, Amazon.com specifically

identifies by name three products and services—iNames, the Contact Service and Unified

Address Book Service—in alleging infringement of the '369 patent:

> Plaintiff and Counterclaim-Defendant Cordance is in the business of
> standardizing, promoting, commercializing, and/or operating **"iNames"**
> and/or related services, including the **"Contact Service"** and/or
> **"Unified Address Book Service,"** collectively **"the Cordance**
> **Services."** . . . By standardizing, promoting, commercializing, and/or
> operating **"iNames"** and/or **the Cordance Services,** Plaintiff and
> Counterclaim-Defendant Cordance has engaged in present activity
> and/or taken concrete steps with the intent to conduct such activity,
> which would constitute infringement of one or more claims of the '369
> patent, directly, as inducement of infringement and/or contributory
> infringement.

D.I. 24, Counterclaim at ¶¶ 21 and 23 (emphasis added).

      Cordance, admits that it understood what products and services Amazon.com

alleges of infringement as it argues that because it "is only involved in the development

- 20 -

of i-names" and not in "the other two services accused in the alternative," the Court

should dismiss Amazon.com's counterclaim. D.I. 24, Motion at p. 17. The substance of

Amazon.com's allegations, however, will be decided by the trier of fact at a later stage in

this litigation and Amazon.com does not need to plead sufficient evidence to prove its

case at this early stage. Indeed, the liberal pleading standard set by Rule 8, is not based

on the merits of the claim or the possibility of recovery. *Swierkiewicz,* 534 U.S. at 510-

514; *see also Rosenger v. XM Ventures,* 129 F. Supp. 2d 681, 684 (D. Del. 2001) (the

review of a Fed. R. Civ. P. 12(b)(6) motion is limited, and "the issue is not whether a

plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to

support the claims."); *Coolsavings.com, Inc. v. Catalian Mktg. Corp.*, No. 98-C-06668,

1999 U.S. Dist. LEXIS 7891, *2-3 (D. Ill. May 13, 1999) (attached hereto as Exhibit F)

("[t]he purpose of a 12(b)(6) motion to dismiss is to test the sufficiency of the complaint,

not to resolve the case on the merits.").

The cases that Cordance relies on in support for its request for dismissal under

Rule 26(b)(6) are not persuasive. The allegations of Amazon.com's counterclaim far

exceed the insufficient statements made by the plaintiff in *Gen-Probe, Inc. v. Amoco

Corp.*, 926 F. Supp. 948 (S.D. Cal. 1996) (attached hereto as Exhibit H). In *GenProbe*,

the complaint alleging patent infringement simply accused defendants of making, using,

selling or offering for sale "products and/or kits" without providing any other

identification of the accused products and kits. The counterclaim in this case, however,

specifically identifies the accused products by name and obviously provides fair and

adequate notice as Cordance understood which products Amazon.com identifies of

infringement. D.I. 28, Motion at p. 17.

Cordance also misplaces its reliance on *Ondeo Nalco Co. v. EKA Chems., Inc.*,

C.A. No. 01-537-SLR, 2002 WL 1458853 (D. Del. June 10, 2002) (attached hereto as

Exhibit G) in which the complaint described the infringing products as "products,

including the product numbered 8692, … that are used in paper-making process… ."

- 21 -

Here, Amazon.com not only sufficiently identifies products as evidenced by Cordance's understanding of the accused products, but goes beyond what Federal Rules require it to do and specifically identifies the infringing products and services by name. *See, e.g., Symbol Techs., Inc. v. Hand Held Prods., Inc.*, C.A. No. 03-102-SLR, 2003 U.S. Dist. LEXIS 21002 (D. Del. Nov. 14, 2003) (attached hereto as Exhibit H) (denying motion to dismiss for failure to state a claim because no precedent binding on the court requires plaintiff to identify the accused infringing products); *Interdigital Tech. Corp.,* 845 F. Supp. at 283 (patent claim need only to "sufficiently identif[y] in some way" that are alleged to infringe and does not even need to identify specific products by name). Therefore, Amazon.com sufficiently identifies the accused infringing products in its counterclaim.

## 2. Amazon.com adequately pleads inducement of infringement and contributory infringement in its counterclaim.

Amazon.com further met the requirements of the Federal Rules by adequately pleading inducement of infringement and contributory infringement. "[U]nder the notice pleading standard provided in Rule 8 of the Federal Rules of Civil Procedure, [Amazon.com is] not, at this stage in litigation, required to plead with particularity specific acts of inducement or encouragement of third parties." *In re Rivastigmine Patent Litig.*, No. 05-MD-1661, 2005 U.S. Dist. LEXIS 7167, at *13 (S.D.N.Y. 2005) (attached hereto as Exhibit I). Amazon.com need only allege infringement and inducement of infringement or contributory infringement to provide defendant with notice of the claims and to satisfy the pleading requirements of Rule 8. *Gammino,* 2005 U.S. Dist. LEXIS 21557, at *8 (attached hereto as Exhibit E); *see also Sony,* 157 F. Supp. 2d at 196-197, 201.

In its counterclaim, Amazon.com alleges that:

By **standardizing, promoting, commercializing, and/or operating "iNames" and/or the Cordance Services,** Plaintiff and Counterclaim-Defendant Cordance has engaged in present activity and/or taken concrete steps **with the intent to conduct such activity,** which would

- 22 -

constitute **infringement** of one or more claims of the '369 patent **directly**, as **inducement of infringement** and/or **contributory infringement**.

D.I. 24, Counterclaim at ¶ 23 (emphasis added).

The counterclaim specifically states that Cordance standardizes, promotes, commercializes and operates the specifically-identified services—obviously to be used by others—with "the intent to conduct such activity" that constitutes inducement of infringement and contributory infringement. Thus, the counterclaim provides adequate notice to Cordance that usage of the services that it standardizes, promotes, commercializes, and makes "available to the public" constitutes direct infringement and Cordance's actions along with its "intent to conduct such activity" constitute indirect infringement. D.I. 24, Counterclaim at ¶¶ 22 and 23.[6]

Moreover, dismissal of Amazon.com's counterclaim is not proper as its inducement and contributory infringement allegations are not "so confused, ambiguous, vague, or otherwise unintelligible that [their] true substance, if any is well disguised." *Agilent Techs., Inc. v. Micromuse, Inc.*, No. 04 Civ. 3090, 2004 U.S. Dist. LEXIS 20723, at *7 (S.D.N.Y. Oct. 19, 2004) (attached hereto as Exhibit J). The counterclaim specifies that Cordance's acts of standardization, promotion, commercialization, and operation of services to be used by others with the intent to conduct such activity constitutes inducement of infringement by others and contribute to the infringement by others. Accordingly, Amazon.com's counterclaim adequately pleads indirect infringement and provides enough facts from which Cordance may form a responsive pleading. *Sony,* 157 F.Supp. 2d at 197 (citing *American Technical Machinery Corp. v. Masterpiece Enters. Inc.*, 235 F. Supp. 917 (M.D. Pa. 1964)) (all that is usually required in the complaint is a

---

[6] Cordance's own complaint belies the standard it would have this Court adopt. Its own allegation of infringement would not meet the standard for which it now argues and Cordance is in no position challenge the allegations in Amazon.com counterclaim. See D.I. 1, Cordance Complaint at ¶ 10.

- 23 -

generalized statement of the facts from which the defendant may form a responsive pleading).

Cordance relies on *Ondeo* to support its argument that Amazon.com did not plead indirect infringement adequately. But, Cordance's reliance on this case is once again misplaced. The allegations in Amazon.com's counterclaim are easily distinguishable over the counterclaim in *Ondeo*. Amazon.com's counterclaim specifically identifies by name the accused products and services. The counterclaim in *Ondeo* did not. Amazon.com's counterclaim specifically identifies acts and alleges intent to cause indirect infringement. The counterclaim in *Ondeo* did not. Moreover, Cordance mischaracterizes the outcome of the case. In *Ondeo*, the court did not simply dismiss the counterclaim, but dismissed it **with leave to amend**.

### 3. The Court should not dismiss Amazon.com's counterclaim under Rule 12(b)(6) without permitting a curative amendment.

Should this Court agree with Cordance and decide that Amazon.com's counterclaim is defective, it should not dismiss the counterclaim under Rule 12(b)(6) without providing Amazon.com with an opportunity to amend it. "If a complaint is vulnerable to Rule 12(b)(6) dismissal, a District Court must permit a curative amendment, unless such an amendment would be inequitable or futile." *Alston v. Parker*, 363 F.3d 229, 235 (3rd Cir. 2004). "[U]nless the district court finds that amendment would be inequitable or futile, the court must inform the plaintiff that he has leave to amend the complaint within a set period of time." *Young v. New Sewickley Twp.*, 160 Fed. App'x. 263, 267 (3rd Cir. 2005). If Amazon.com does not submit an amended pleading within the prescribed time, the Court may then dismiss the counterclaim. *Id.* ("The district court may dismiss the action if the plaintiff does not submit an amended pleading within that time, or if the plaintiff files notice with the district court of his intent to stand on the complaint."); *see also Shane v. Fauver*, 213 F.3d 113, 116 (3rd Cir. 2000) (accord).

- 24 -

Accordingly, at a minimum, the Court should grant Amazon.com a leave to amend its counterclaim as it would not be inequitable or futile. As explained above, the counterclaim provides enough notice and indication of the accused infringing products and does identify actions and intent constituting indirect infringement. Minor modifications of the allegations, should the Court agree with Cordance, will not prejudice Cordance as it was on general notice of the allegations and the amendments will cure any deficiencies and will not be futile.

## V.    CONCLUSION

For the foregoing reasons, the Court should (1) deny Cordance's motion to dismiss for lack of subject matter jurisdiction and exercise its declaratory judgment jurisdiction, and (2) deny Cordance's motion to dismiss for failure to state a claim.

POTTER ANDERSON & CORROON LLP

OF COUNSEL:

Lynn H. Pasahow
J. David Hadden
Darren E. Donnelly
Saina S. Shamilov
Ryan Marton
Gaurav Mathur
FENWICK & WEST LLP
801 California Street
Mountain View, CA 94041
Telephone: (650) 988-8500
Facsimile: (650) 938-5200

Dated: January 10, 2007
771402 / 30763

By:   */s/ David E. Moore*
      Richard L. Horwitz
      David E. Moore
      Hercules Plaza, 6th Floor
      1313 N. Market Street
      Wilmington, Delaware  19801
      Tel: (302) 984-6000
      rhorwitz@potteranderson.com
      dmoore@potteranderson.com

*Attorneys for Defendant and Counterclaim*
*Plaintiff Amazon.com*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

### CERTIFICATE OF SERVICE

I, David E. Moore, hereby certify that on January 10, 2007, the attached document

was electronically mailed and hand delivered to the following persons and was

electronically filed with the Clerk of the Court using CM/ECF which will send

notification to the registered attorney(s) of record that the document has been filed and is

available for viewing and downloading:

Steven J. Balick
John G. Day
Tiffany Geyer Lydon
Ashby & Geddes
500 Delaware Avenue, 8th Floor
Wilmington, DE 19899

I hereby certify that on January 10, 2007, I have Electronically Mailed the

documents to the following:

Michael A. Albert
Robert M. Abrahamsen
Adam J. Kessel
Wolf, Greenfield & Sacks, P.C.
600 Atlantic Avenue
Boston, MA 02210-2206
malbert@wolfgreenfield.com
rabrahamsen@wolfgreenfield.com
akessel@wolfgreenfield.com

By:  /s/ David E. Moore
       Richard L. Horwitz
       David E. Moore
       Hercules Plaza, 6th Floor
       1313 N. Market Street
       Wilmington, Delaware 19899-0951
       (302) 984-6000
       rhorwitz@potteranderson.com
       dmoore@potteranderson.com

757320 / 30763

# EXHIBIT A

JOSEPH HURLEY, KAREN G. WRIGHT, and STEPHEN WRIGHT, Plaintiffs, v. RUTH ANN MINNER, M. JANE BRADY, and JOHN CORDREY, Defendants.

Civ. No. 05-826-SLR

UNITED STATES DISTRICT COURT FOR THE DISTRICT OF DELAWARE

2006 U.S. Dist. LEXIS 69090

September 26, 2006, Decided

**COUNSEL:** {*1}  James R. Folsom, Esquire, Wilmington, Delaware, for Plaintiffs. Of Counsel: James A. Tanford, Esquire, Indiana University School of Law, Bloomington, Indiana; and Robert Epstein, Esquire, Epstein Cohen Donahoe & Mendes, Indianapolis, Indiana.

Laura L. Gerard, Esquire, Department of Justice, State of Delaware, Wilmington, Delaware, for Defendants.

**JUDGES:** Sue L. Robinson, United States District Judge.

**OPINION BY:** Sue L. Robinson

**OPINION: MEMORANDUM OPINION**

Dated: September 26, 2006
Wilmington, Delaware

Sue L. Robinson, **Chief Judge**

## I. INTRODUCTION

On December 2, 2005, Joseph Hurley ("Hurley"), as an individual, and Karen and Stephen Wright ("the Wrights"), on behalf of their company Wright Wine Works ("Wine Works") (collectively, "plaintiffs"), filed a complaint against Governor Ruth Ann Minner ("Minner"), Attorney General M. Jane Brady ( "Brady" ), and Delaware Alcoholic Beverage Control Commissioner John Cordrey ("Cordrey"), all officials of the State of Delaware. (D.I. 4) Plaintiffs' amended complaint alleges a violation of their civil rights under **42 U.S.C. § 1983** and seeks a declaratory judgment that, because certain sections of the {*2} Delaware Code n1 violate the **Commerce Clause of the United States Constitution, U.S. CONST. art. 1, § 8, cl. 3,** plaintiffs have been deprived of their right to engage in interstate commerce. (D.I. 4 at 1-2) They allege two different violations: "[D]iscrimination against out-of-state wineries with respect to consumers" (count 1), and "discrimination against out-of-state wineries with respect to sales to licensed retail wine sellers" (count II). (*Id.* at 3, 5) Plaintiffs request an injunction barring the enforcement of the challenged statutes, which regulate the ability of out-of-state wineries to ship alcoholic beverages into Delaware. (*Id.* at 2)

- - -Footnotes- - -

n1 Specifically, plaintiffs challenge **4 Del. C. §§ 501 (a), (d), (f); §§ 526 (a), (b), (c), (e); § 701;** and **§ 703,** as well as **§§4 Del. Admin. C. 8, 8.1, 77.**

- - -End Footnotes- - -

Defendants filed a motion to dismiss for failure to state a claim upon which relief can be granted, **Fed. R. Civ. P. 12(b) (6),** and lack {*3} of subject matter jurisdiction, **Fed. R. Civ. P. 12(b) (1),** on January 20, 2006. (D.I. 5) They argued that: 1) Minner and Brady are not proper parties to the action; 2) plaintiffs lack standing and their claim is not ripe for adjudication; and 3) the relief sought by plaintiffs potentially exceeds the subject matter jurisdiction of this court. (D.I. 6) Subsequently, defendants filed a motion to stay the proceedings pending the resolution of a bill then before the state legislature. (D.I. 7)

On August 25, 2006, the parties stipulated that both count II of the complaint and the motion for a stay are now moot because the legislation in question, H.B. 336, has become law. (D.I. 12) Likewise, plaintiffs agreed to drop their claims against Minner and Brady, leaving Cordrey as the sole remaining defendant ("defendant"). (*Id.* ) The court has jurisdiction over the remainder of this action, count I of the complaint, pursuant to **28 U.S.C. §§ 1331 and 1343(a) (3),** and. has the power to grant declaratory relief under **28 U.S.C. §§ 2201 and 2202.**

## II. BACKGROUND {*4}

Joseph Hurley, a Delaware citizen, is over the age of twenty-one and is legally allowed to purchase, possess, and consume alcoholic beverages. (D.I. 4 at P 6) The Wrights are the owners of Wine Works, a Pennsylvania winery which possesses the necessary permits to ship wine through interstate commerce. (*Id.* at P 7) Hurley, a wine enthusiast, wishes to buy wine from out-of-state wineries, including Wine Works, and have it shipped to his home in Delaware; Wine Works

and the Wrights wish to sell and ship their wine to residents of Delaware such as Hurley. (*Id.* at P 6-7) The remaining defendant, John Cordrey, is the Delaware Alcoholic Beverage Control Commissioner, head of the department charged with regulating the creation, distribution, and consumption of alcoholic beverages in Delaware. (*Id.* at P 12) According to plaintiffs, defendant acts under color of state law when enforcing the statutes and regulations challenged in the complaint. (*Id.* at P 13)

Under 4 **Del. C. § 512A**, wineries may apply to the State of Delaware for a farm winery license, which would permit them "to manufacture, ferment, blend, age, store and bottle wine containing 14 {*5} percent or less of ethyl alcohol by volume on the[ir] premises." *Id.* § 512A(a). "A farm winery licensee [is] authorized to store and sell wine on the premises . . . for consumption on or off the premises where sold." *Id.* § 512A(b). Delaware law also provides that, with certain restrictions, "a Delaware resident may purchase [wine] and beer that is not readily available to consumers throughout the State directly from a manufacturer or retailer of such beverages domiciled outside of Delaware." *Id.* § 526 (a). Under Delaware law, "[n]o manufacturer or importer shall sell, ship, transport or deliver wine or beer within this State to any person unless in accordance with the published regulations of the Commissioner." *Id.* § 703.

Any out-of-state seller who wishes to take direct orders (over the internet or telephone or through the mail) from people in Delaware may do so after obtaining a direct shipper license; however, "[u]nder no circumstance may the wine or beer be shipped directly to the resident." *Id.* § 526(b), (e); see also id. §§ 501(a), 501(d), 701. Instead, the shipment must be sent through a Delaware wholesaler to a Delaware retailer and then {*6} picked up by the customer, who must show proof of age. Id. §§ 526(e); 4 Del. Admin. C. 077. Out-of-state importers must pay fees and taxes on, as well as provide documentation for, their shipments. 4 Del. Admin. C. 008. n2

- - -Footnotes- - -

n2 Plaintiffs state, however, that they "do not request that the State be enjoined from collecting any tax due on the sale of wine." (D.I. 4 at 6)

- - -End Footnotes- - -

Plaintiffs seek a declaratory judgment that the challenged statutes and administrative regulations are unconstitutional, an injunction allowing them to deliver wine directly to residents of Delaware, costs

and expenses, and any other relief the court deems appropriate. (Id. at 5-6) Defendant has moved to dismiss. (D.I. 5)

### III. STANDARD OF REVIEW

#### A. Rule 12(b)(1) - Lack of Subject Matter Jurisdiction

**Rule 12(b)(1) of the Federal Rules of Civil Procedure** permits a court to dismiss a complaint for lack of subject matter jurisdiction. **Fed. R. Civ. P. 12(b) (1) {*7}** . There are two types of **Rule 12(b) (1)** motions. The first type, a facial attack, challenges the complaint on its face. The second type attacks the existence of subject matter jurisdiction in fact. See **Mortensen v. First Fed. Sav. & Loan Ass'n, 549 F.2d 884, 891 (3d Cir. 1977)**. Where a defendant has not filed an answer to the complaint, as in the instant case, the attack on subject matter jurisdiction is necessarily considered a facial attack. Under this type of analysis, the court must accept the allegations of the complaint as true and draw all reasonable inferences in favor of the plaintiff. Id. Dismissal for a facial challenge is "proper only when the claim 'clearly appears to be immaterial and made solely for the purpose of obtaining jurisdiction or . . . is wholly insubstantial and frivolous.'" **Kehr Packages, Inc. v. Fidelcor. inc., 926 F.2d 1406, 1408-09 (3d Cir. 1991)** (quoting **Bell v. Hood, 327 U.S. 678, 682, 66 S. Ct. 773, 90 L. Ed. 939 (1946))**.

The ripeness doctrine is meant to prevent a court from prematurely adjudicating an issue: "[It] is drawn both from Article III limitations on judicial power and from prudential reasons for refusing to exercise {*8} jurisdiction." **Reno v. Catholic Social Servs., Inc., 509 U.S. 43, 58 n.18, 113 S. Ct. 2485, 125 L. Ed. 2d 38 (1993)**. The Third Circuit enunciated a three part ripeness test in **Step-Saver Data Systems, Inc. v. Wyse Technology, 912 F.2d 643 (3d Cir. 1990)**. Under the Step-Saver test, the court should look at: 1) "the adversity of the interest of the parties"; 2) "the conclusiveness of the judicial judgment"; and 3) "the practical help, or utility, of that judgment." **Id. at 647** (citation omitted). While the Supreme Court has previously recognized a seemingly different two part test, n3 the Third Circuit has stated that "[o]ur refinement simply alters the headings under which various factors are grouped, and since Step-Saver, we have employed both tests." **Phil. Federation of Teachers, Am. Federation of Teachers, Local 3, Philadelphia Fed'n of Teachers v. Ridge, 150 F.3d 319, 323 n.4 (3d Cir. 1998)** (citations omitted).

- - -Footnotes- - -

n3 The Supreme Court's two-prong test evaluates: (1) "the fitness of the issues for judicial decision"; and (2) "the hardship to the parties of withholding court consideration." **Abbott Laboratories v. Gardner, 387 U.S. 136, 149, 87 S. Ct. 1507, 18 L. Ed. 2d 681 (1967),** abrogated on other grounds, **Califano v. Sanders, 430 U.S. 99, 97 S. Ct. 980, 51 L. Ed. 2d 192 (1977).**

- - -End Footnotes- - -
{*9}

Standing has been defined by the United States Supreme Court as "whether the litigant is entitled to have the court decide the merits of a dispute or of particular issues." **Warth v. Seldin, 422 U.S. 490, 498, 95 S. Ct. 2197, 45 L. Ed. 2d 343 (1975).** It is a "threshold issue in every federal case, determining the power of the court to entertain the suit." Id. The Supreme Court has announced three requirements for standing which originate from Article III of the Constitution, all of which must be satisfied for a federal court to entertain a claim. To satisfy the constitutional standing requirements, a plaintiff must show that he has (1) suffered or will imminently suffer an injury, which is (2) fairly traceable to the defendant's conduct and which is (3) likely to be redressed by a favorable federal ruling on the matter. See **Lujan v. Defenders of Wildlife, 504 U.S. 555, 560-61, 112 S. Ct. 2130, 119 L. Ed. 2d 351 (1992).** On this first point, a plaintiff must show that his injury is "actual or imminent, not conjectural or hypothetical." **Id.** In addition, a plaintiff who seeks injunctive relief must show that the defendant's conduct will likely cause injury in the future. See **City of Los Angeles v. Lyons, 461 U.S. 95, 105-06, 103 S. Ct. 1660, 75 L. Ed. 2d 675 (1983).** {*10}

### B. Rule 12(b)(6) - Failure to State a Claim

In analyzing a motion to dismiss pursuant to **Rule 12(b)(6),** the court must accept as true all material allegations of the complaint and it must construe the complaint in favor of the plaintiff. See **Trump Hotels & Casino Resorts. Inc. v. Mirage Resorts, inc., 140 F.3d 478, 483 (3d Cir. 1998).** "A complaint should be dismissed only if, after accepting as true all of the facts alleged in the complaint, and drawing all reasonable inferences in the plaintiff's favor, no relief could be granted under any set of facts consistent with the allegations of the complaint." Id. Claims may be dismissed pursuant to a **Rule 12(b)(6)** motion only if the plaintiff cannot demonstrate any set of facts that would entitle him to relief. See **Conley v. Gibson, 355**

**U.S. 41, 45-46, 78 S. Ct. 99, 2 L. Ed. 2d 80 (1957).** The moving party has the burden of persuasion. See **Kehr Packages, Inc. v. Fidelcor, Inc., 926 F.2d 1406, 1409 (3d Cir. 1991).**

## IV. DISCUSSION

### A. Ripeness and Standing

Accepting the allegations of the complaint as true and drawing all inferences in favor of plaintiffs, count I of the complaint is ripe {*11} for review. Plaintiffs have stated, which the court must accept as true, that they intend to engage in the purchase, sale, and delivery to Delaware of out-of-state wines if the applicable Delaware laws are found to be unconstitutional. (D.I 4 at PP 6-7) Their stated intent to engage in activity that is currently illegal moves plaintiffs' claim beyond the realm of a mere "hypothetical" dispute. **KVUE, Inc. v. Moore, 709 F.2d 922, 927 (5th Cir. 1983).** According to the Third Circuit, "the Supreme Court has held that allegations of chilling injury are not sufficient basis for standing to challenge a government action, at least when the chill is 'subjective' and not substantiated by evidence that the government action has a present and concrete effect." **Salvation Army v. Department of Community Affairs, 919 F.2d 183, 193 (3d Cir. 1990)** (citations omitted). In this case, however, the fact that plaintiffs would be subject to criminal penalties, including imprisonment, for engaging in the challenged activity shows that the statutes have "a present and concrete effect." See, e.g., **4 Del. C. §§ 910, 901** ("Whoever . . . {*12} [n]ot being the holder of a proper and valid license, or not being so authorized by this title, sells any alcoholic liquor in this State . . . shall, in addition to the payment of costs, be imprisoned not less than 3 nor more than 6 months.").

Plaintiffs' claim meets the three requirements of the Step-Saver test. See **Step-Saver Data System, Inc. v. Wyse Technology, 912 F.2d at 647.** The parties' interests are adverse: plaintiffs wish to engage in behavior that is currently prohibited by the laws of the State of Delaware (which are, in turn, enforced by defendant). The mere act of engaging in that activity would subject plaintiffs to criminal liability, which qualifies as "'some form of overt conduct on the part of the [d]efendant . . . [] sufficient to form the basis of an actual controversy necessary to give the [c]ourt jurisdiction under the Declaratory Judgment Act.'" **Id. at 648** (quoting **Gates Energy Prods. v. Yuasa Battery Co., 599 F.Supp. 368, 375 (D. Colo. 1983)**).

"The conclusivity inquiry . . . goes to whether the parties' rights will be definitively decided by a declaratory judgment." **Id. at 649 n.9.** Plaintiffs {*13}

have targeted and challenged the specific sections of Delaware law that apply to the transactions in which they wish to engage. A declaratory judgment from the court on the constitutionality of those statutes would definitively decide the Wrights' ability, under Delaware law, to sell and directly deliver wine to Hurley.

According to Step-Saver, "[t]he utility inquiry . . . goes not to whether the legal rights will be clarified, but to whether the parties' plans of actions are likely to be affected by a declaratory judgment." Id. Plaintiffs have made clear in their complaint that they wish to engage in the currently-prohibited conduct and that, if declaratory judgment is awarded in their favor, they will do so. Their plans of action will certainly be affected by the outcome of this case. Having met the three applicable requirements, plaintiffs' complaint is ripe.

Defendant also contends that plaintiffs do not have standing to bring their challenge because the Wrights chose not to acquire a direct shipper's license, which would have made it legal for them to import wine into Delaware and obviated many of the claims in their complaint. (D.I. 6 at 14-16) Defendant avers that {*14} plaintiffs would not have standing unless and until they had applied for such a license and been rejected and that, even if such an event took place, the **Twenty-First Amendment** would prohibit this court from forcing defendant to grant plaintiffs a license. (Id. at 15-16) Plaintiffs correctly point out, however, that a direct shipper's license only allows out-of-state wineries to import into Delaware "sparkling wine, still wine and beer that is not readily available to consumers throughout [Delaware]." **4 Del. C. § 526(a)** (emphasis added). Plaintiffs wish to import many different kinds of wine into Delaware, including those which are already easily available to the State's residents; likewise, they want to ship wine directly to Delaware consumers, which is not permitted under the statute. (D.I. 9 at 3-4) A direct shipper's license will not help them achieve either of these goals; therefore, the fact that the Wrights have failed to apply for such a license does not defeat their claims.

Plaintiffs have clearly suffered an injury (a restraint on their ability to engage in interstate commerce), and it is "fairly traceable" to laws enacted by the State of Delaware {*15} and enforced by defendant. Defendant argues that plaintiffs are not able to meet the third prong of the standing test enumerated in **Lujan v. Defenders of Wildlife, 504 U.S. 555, 560-61, 112 S. Ct. 2130, 119 L. Ed. 2d 351 (1992)**, because the court is not in the position to grant plaintiffs redress. (D.I. 6 at 15) This is so, defendant states, because, in balancing the **Commerce Clause**

and the **Twenty-First Amendment**, the United States Supreme Court "has left licensing matters to the authority of the States." (Id. at 15) Moreover, defendant contends that the relief requested by plaintiffs is potentially outside the court's subject matter jurisdiction. (Id. at 16) If the court were to declare **4 Del. C. § 703** n4 invalid, defendant claims, it "would permit the shipment of wine **and beer** into Delaware without regulation, effectively repealing the **21st Amendment** to the extent it concerns the sale and distribution of wine and beer in Delaware. There is no jurisdiction in federal court to declare the **21st Amendment** unconstitutional." (Id. at 16-17 (emphasis in original))

- - -Footnotes- - -

n4 No manufacturer or importer shall sell, ship, transport or deliver wine or beer within this State to any person unless in accordance with the published regulations of the Commissioner . . . ." **4 Del. C. § 703.**

- - -End Footnotes- - -
{*16}

Defendant's arguments mirror those made by the states of New York and Michigan in **Granholm v. Heald, 544 U.S. 460, 125 S. Ct. 1885, 161 L. Ed. 2d 796 (2005)**, the United States Supreme Court's most recent ruling on state regulation of direct wine shipments. n5 The Supreme Court found, however, that "[t]he States' position [was] inconsistent with the **Twenty-first Amendment's** history. **Section 2** [of the Amendment] does not allow States to regulate the direct shipment of wine on terms that discriminate in favor of in-state producers." **Id. at 476.** Moreover, the Court opined, its "more recent cases . . . confirm that the **Twenty-first Amendment** does not supersede other provisions of the Constitution." **Id. at 486.** According to the Court, its prior holdings in **Bacchus Imports, Ltd. v. Dias, 468 U.S. 263, 104 S. Ct. 3049, 82 L. Ed. 2d 200 (1984); Brown-Forman Distillers Corp. v. New York State Liquor Authority, 476 U.S. 573, 106 S. Ct. 2080, 90 L. Ed. 2d 552 (1986);** and **Healy v. Beer Institute, 491 U.S. 324, 109 S. Ct. 2491, 105 L. Ed. 2d 275 (1989)**, "foreclose[] any contention that § 2 of the **Twenty-first Amendment** immunizes discriminatory direct-shipment laws from **Commerce Clause** scrutiny." **Granholm, 544 U.S. at 487-88.** {*17}

- - -Footnotes- - -

n5 According to the Court in Granholm, even though "[s]tate laws that discriminate against interstate commerce face a 'virtually per se rule of invalidity,'" New York and Michigan "contend[ed] their statutes [were] saved by **§ 2 of the Twenty-first Amendment**, which provides: 'The transportation or importation into any State, Territory, or possession of the United States for delivery or use therein of intoxicating liquors, in violation of the laws thereof, is hereby prohibited.'" **Granholm, 544 U.S. at 476** (internal citation omitted).

- - -End Footnotes- - -

Federal courts have jurisdiction to hear **Commerce Clause** challenges to states' direct-shipping laws even though the resulting rulings may implicate the **Twenty-First Amendment**; as a result, this court is in a position to grant plaintiffs the relief they seek. Because plaintiffs are suffering an actual injury and will continue to suffer it until this issue is decided, injunctive relief is a proper potential remedy and plaintiffs have standing to bring {*18} their claim. Defendant's motion to dismiss for lack of subject matter jurisdiction is therefore denied.

**B. Failure to State a Claim**

While plaintiffs' claim is ripe and they have the standing to bring it, the crux of their argument appears to, in defendant's words, "ignore [] geography and mix[] apples with oranges." (D.I. 11 at 4) Count I of plaintiffs' complaint alleges that certain Delaware laws violate the **Commerce Clause** by allowing in-state wineries to sell directly to Delaware residents, while out-of-state wineries wishing to do the same are required to go through one or more intermediaries. (D.I. 4 at PP 15-16) This misstates what plaintiffs are actually trying to accomplish: they wish to be able to sell and ship wine directly to Delaware residents' homes, a right that is not even afforded to in-state wineries.

Delaware wineries are permitted to sell directly to customers on their premises - should Wine Works open a facility in Delaware and obtain the proper license, it would be allowed to do the same. See **4 Del. C. §§ 512A(a), (b).** Likewise, Wine Works may sell its wine directly to Delaware residents on its Pennsylvania premises. {*19} See **47 Pa. Stat. Ann. § 5-505.2(2).** The key fact in the case at bar is that, under the current statutory scheme, neither in-state nor out-of-state wineries are allowed to deliver wine directly to Delaware residents' homes. n6

Delaware's farm winery license statute provides that "a farm winery licensee shall be authorized to sell, deliver and ship such wine . . . to persons licensed [by the State] to import wine; and to sell and ship wine to persons outside of the State." **4 Del. C. § 512A(a).** The Delaware Code does not authorize in-state wineries to directly ship wine to Delaware residents' homes-they may only sell directly to such people on the premises of the winery. See id. **§ 512A(b).**

- - -Footnotes- - -

n6 Pennsylvania, Wine Works' state of domicile, had similar laws restricting the circumstances under which out-of-state wineries could import their products into the state. See, e.g., **47 Pa. Cons. Stat. Ann. § 4-488.** The United States District Court for the Eastern District of Pennsylvania recently found some of these statutes to be unconstitutional under **Granholm v. Heald, 544 U.S. 460; 125 S. Ct. 1885, 161 L. Ed. 2d 796 (2005),** because in-state wineries were treated more favorably. See **Cutner v. Newman, 398 F. Supp. 2d 389 (E.D. Pa. 2005).** In Pennsylvania, domestic wineries were allowed to accept mail and telephone orders and ship their wine to state residents; out-of-state wineries with direct shipper's licenses were limited to internet orders of no more than nine liters per person per month which had to be shipped to a Pennsylvania liquor store, rather than the customer himself. Compare **40 Pa. C. § 11.111(a) (11)** with **47 Pa. Cons. Stat. Ann. § 4-488.** In the case at bar, there is no such differential treatment with respect to wine shipments to residents' homes.

- - -End Footnotes- - -
{*20}

Plaintiffs allege that the State of Delaware has violated the **Commerce Clause** by treating in-state wineries more favorably than those from other states. Upon reviewing the statutes in question, the court finds that both types of wineries are treated the same with respect to direct wine shipments to Delaware residents. Unlike the state statutes that were invalidated by **Granholm,** "the object and effect" of Delaware's laws are not "to allow in-state wineries to sell wine directly to consumers in that State but to prohibit out-of-state wineries from doing so, or, at the least, to make direct sales impractical from an economic standpoint."

**Granholm v. Heald, 544 U.S. 460, 466, 125 S. Ct. 1885, 161 L. Ed. 2d 796 (2005).**

Even when taking the material allegations in the complaint as true and construing the complaint in plaintiffs' favor, plaintiffs cannot demonstrate any set of facts that would entitle them to relief and, therefore, the court grants defendant's motion to dismiss for failure to state a claim upon which relief can be granted.

## V. CONCLUSION

For the reasons stated above, defendant's motion to dismiss is granted and defendant's motion to stay the proceedings is denied as moot. An {*21} appropriate order shall issue.

## ORDER

At Wilmington, this 26th day of September, 2006, consistent with the memorandum opinion issued this same date;

IT IS ORDERED that:

1. Defendant's motion to dismiss (D.I. 5) is granted.

2. Defendant's motion to stay proceedings (D.I. 7) is denied as moot.

Sue L. Robinson

United States District Judge

# EXHIBIT B

MARK SCOTT CIRIELLO, Plaintiff, v. U.S. SUPREME COURT, et. al, Defendants.

ACTIONS NOT CONSOLIDATED Civil Action No. 02-1393-JJF, Civil Action No. 02-1394-JJF, Civil Action No. 02-1395-JJF, Civil Action No. 02-1396-JJF

UNITED STATES DISTRICT COURT FOR THE DISTRICT OF DELAWARE

2003 U.S. Dist. LEXIS 14109

August 12, 2003, Decided

**PRIOR HISTORY: Ciriello v. United States Supreme Court, 2003 U.S. Dist. LEXIS 14100 (D. Del., Aug. 12, 2003) Ciriello v. United States Supreme Court, 2003 U.S. Dist. LEXIS 14108 (D. Del., Aug. 12, 2003)**

**DISPOSITION:** {*1} Federal Defendants' motions to dismiss granted.

**COUNSEL:** Mark Scott Ciriello, Plaintiff, Pro se.

For Federal Defendants: Colm F. Connolly, Esquire, United States Attorney, Paulette K. Nash, Esquire, Assistant United States Attorney, UNITED STATES DEPARTMENT OF JUSTICE, Wilmington, Delaware.

For Prudential Insurance Company of America, Defendant: Laurence V. Cronin, Esquire, SMITH, KATZENSTEIN, & FURLOW, Wilmington, Delaware.

For Prudential Insurance Company of America, Defendant: Dean R. Lospinoso, Esquire, Of Counsel, CUYLER BURK, LLP, Parsippany, New Jersey.

For Waterbury Hospital, Defendant: Scott A. Holt, Esquire, YOUNG CONAWAY STARGATT & TAYLOR, LLP, Wilmington, Delaware.

For St. Mary's Hospital, Defendant: Dennis D. Ferri, Esquire, MORRIS, JAMES, HITCHENS & WILLIAMS LLP, Wilmington, Delaware.

For American Medical Response, Defendant: Stephen P. Casarino, Esquire, CASARINO, CHRISTMAN & SHALK, Wilmington, Delaware.

**JUDGES:** JOSEPH J. FARNAN, JR., UNITED STATES DISTRICT JUDGE.

**OPINION BY:** JOSEPH J. FARNAN, JR.

**OPINION: MEMORANDUM OPINION**

August 12, 2003

Wilmington, Delaware

Farnan, {*2} District Judge.

Pending before the Court are the Federal Defendants' Motions To Dismiss (Civil Action No. 02-1393-JJF, D.I. 4; Civil Action No. 02-1394-JJF, D.I. 11; Civil Action No. 02-1395-JJF, D.I. 4; Civil Action No. 02-1396-JJF, D.I. 8) the Complaints filed by Plaintiff, Mark Scott Ciriello. For the reasons discussed, the Federal Defendants' Motions To Dismiss will be granted.

**BACKGROUND**

Plaintiff filed four complaints in this Court naming several defendants that are part of the federal government. In each of Plaintiff's Complaints, he refers to "impeachment" and makes "settlement" demands in various sums. Plaintiff's Complaints also reference other actions that he claims he filed in the Southern District of New York and the District of New Jersey. n1

- - -Footnotes- - -

n1 The Federal Defendants have informed the Court that they have only been able to locate an action filed by Plaintiff in the District of New Jersey.

- - -End Footnotes- - -

Although each Complaint contains the reference to "impeachment," each Complaint deals with a different {*3} topic. In his Complaint in Civil Action No. 02-1393-JJF, Plaintiff alleges that he has diamond and 24-karat gold assets and that his assets are worthless, because of "false-essaying." Thus, Plaintiff alleges that he "should be wealthy, but is not because of false-essaying [sic] of assets . . ." (Civil Action No. 02-1393-JJF, D.I. 1 at 2). In his Complaint in Civil Action No. 02-1394-JJF, Plaintiff demands relief under several insurance policies in various sums. There are no references to the Federal Defendants in this Complaint. (Civil Action No. 02-1394-JJF, D.I. 1 at 2). In the Complaint filed in Civil Action No. 02-1395-JJF, Plaintiff discusses a "transparent photosynthesis

gaseous reaction," including charts and tables. (Civil Action No. 02-1395-JJF, D.I. 1). And, in the Complaint filed in Civil Action No. 02-1396-JJF, Plaintiff alleges dissatisfaction with other lawsuits he has filed. (Civil Action No. 02-1396-JJF, D.I. 1).

In lieu of filing an Answer to the Complaints, the Federal Defendants moved to dismiss Plaintiff's Complaints pursuant to **Rule 8** and **Rule 12 of the Federal Rules of Civil Procedure.** Specifically, the Federal Defendants contend that the Complaints fail to {\*4} (1) meet the notice pleading requirements of **Rule 8**; (2) establish subject matter jurisdiction pursuant to **Rule 12(b)(1)**; (3) allege venue pursuant to **Rule 12(b)(3)**; and (4) establish any claim for relief pursuant to **Rule 12(b)(6)**. Plaintiff did not respond to the Federal Defendants' Motions, and the Court subsequently ordered Plaintiff to file an Answering Brief within twenty-days of the Court's order. By the Order, the Court further advised Plaintiff that the matter would be decided on the record before it if no Answering Brief was filed. To date, Plaintiff has failed to file a response to the pending Motions To Dismiss. Accordingly, the Court will proceed to resolve this matter on the record before it.

## DISCUSSION

After reviewing Plaintiffs' Complaints in light of the arguments raised by the Federal Defendants, the Court concludes that dismissal is appropriate on two grounds. Specifically, the Court concludes that Plaintiff cannot establish subject matter jurisdiction under **Rule 12(b)(1)** and cannot state a claim for relief under **Rule 12(b)(6)**.

Pursuant to **Rule 12(b)(1)**, the court may dismiss a lawsuit for failure to establish subject matter jurisdiction. Where, as here, {\*5} the defendants have not filed an answer to the complaint, the attack on subject matter jurisdiction is considered a facial attack. **Lexington Insurance Co. v. Forrest, 263 F. Supp. 2d 986, 2003 WL 21087014, \*6 (E.D. Pa. May 6, 2003).** When considering a facial attack under **Rule 12(b)(1)**, the court must accept the allegations of the complaint as true and draw all reasonable inferences in favor of the plaintiff. **Id.**

By their Motion, the Federal Defendants contend that the Court lacks subject matter jurisdiction, because Plaintiff lacks standing to assert his claims. The doctrine of standing consists of two parts: (1) the case or controversy requirement stemming from Article III, Section 2 of the Constitution, and (2) a subconstitutional prudential element. **Forrest, 263 F. Supp. 2d 986, 2003 WL at \*6.** Defendants challenge the constitutional aspect of standing and contend that

Plaintiff cannot establish a justiciable case or controversy.

To establish constitutional standing, the plaintiff must show that (1) he suffered an "injury-in-fact", i.e. an injury which is concrete and particularized, and actual and imminent, not conjectural or hypothetical; (2) a causal connection exists between the injury and {\*6} the challenged action of the defendant; and (3) the injury will be redressed by a favorable decision. See **Pryor v. NCAA, 288 F.3d 548, 561 (3d Cir. 2002).** The burden of establishing standing rests with the plaintiff. **Lujan v. Defenders of Wildlife, 504 U.S. 555, 561, 119 L. Ed. 2d 351, 112 S. Ct. 2130 (1992)** (citations omitted).

The Court concludes that Plaintiff has failed to establish the standing requirements. Plaintiff fails to allege a concrete injury and asserts vague and confusing allegations about the state of his wealth, certain insurance policies, "transparent photosynthesis gaseous reaction," and prior court cases he filed. Plaintiff also fails to allege a causal connection between claims and the conduct of any of the Federal Defendants. Because Plaintiff has failed to establish that he has standing to pursue these actions, the Court concludes that dismissal of these actions is appropriate under **Rule 12(b)(1)**.

In addition, the Court concludes that dismissal is appropriate pursuant to **Federal Rule of Civil Procedure 12(b)(6)**. When considering a motion to dismiss pursuant to **Rule 12(b)(6)**, the Court must accept, {\*7} as true, all the allegations in the complaint and must draw all reasonable factual inferences in the light most favorable to the plaintiff. **Neitzke v. Williams, 490 U.S. 319, 326, 104 L. Ed. 2d 338, 109 S. Ct. 1827 (1989).** However, the Court is not required to credit "bald assertions" or "legal conclusions" when deciding a motion to dismiss. **Morse v. Lower Merion Sch. Dist., 132 F.3d 902, 906 (3d Cir. 1997).** Pro se pleadings are held to a less stringent standard than formal pleadings drafted by lawyers. **Becker v. C.I.R., 751 F.2d 146, 149 (3d Cir. 1984).** Thus, "[a] pro se complaint may be dismissed for failure to state a claim only if it appears 'beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" **Milhouse v. Carlson, 652 F.2d 371, 373 (3d Cir. 1981)** (quoting **Haines v. Kerner, 404 U.S. 519, 30 L. Ed. 2d 652, 92 S. Ct. 594 (1972)**).

In this case, Plaintiff's factual allegations are frivolous and fanciful in nature, and Plaintiff makes no coherent, legally cognizable claims against the Federal Defendants. See e.g. **Crumpacker v. Civiletti** {\*8} , **90 F.R.D.326, 333 (N.D. Ind. 1981)** (dismissing cause of action where pleadings consisted of bare

conclusions that illegal searches occurred and did not allege nature of defendant's conduct or any resultant damage suffered by plaintiff). Further, Plaintiff has failed to file any response to the pending Motions To Dismiss. Given the frivolous nature of Plaintiff's allegations and his failure to respond to the Federal Defendants' Motions, the Court further concludes that any amendments to Plaintiff's Complaints would be futile. See e.g. **Cowell v. Palmer Township, 263 F.3d 286, 296 (3d Cir. 2001)** (recognizing that leave to amend should be freely given under **Rule 15(a)**, but that leave to amend may be denied if the amendment would be futile). Accordingly, the Court will dismiss Plaintiff's Complaints pursuant to **Rule 12(b)(6)** for failure to state a claim upon which relief may be granted.

## CONCLUSION

For the reasons discussed, the Federal Defendants' Motions To Dismiss filed in Civil Action Nos. 02-1393, 02-1394, 02-1395, and 02-1396 will be granted.

An appropriate Order will be entered.

## ORDER

At Wilmington, this 12th day of August 2003, for the reasons {*9} set forth in the Memorandum Opinion issued this date;

IT IS HEREBY ORDERED that:

1. The Federal Defendants' Motion To Dismiss (D.I. 4) in Civil Action No. 02-1393-JJF is GRANTED.

2. The Federal Defendants' Motion To Dismiss (D.I. 11) in Civil Action No. 02-1394-JJF is GRANTED.

3. The Federal Defendants' Motion To Dismiss (D.I. 4) in Civil Action No. 02-1395-JJF is GRANTED.

4. The Federal Defendants' Motion To Dismiss (D.I. 8) in, Civil Action No. 02-1396-JJF is GRANTED.

JOSEPH J. FARNAN, JR.

UNITED STATES DISTRICT JUDGE

# EXHIBIT C

LEXSEE 1997 U.S. DIST. LEXIS 8951



Warning
As of: Dec 27, 2006

**CARDIAC PACEMAKERS, INC., GUIDANT SALES CORPORATION, and ELI LILLY AND COMPANY, Plaintiffs, v. ST. JUDE MEDICAL, INC., PACESETTER, INC., VENTRITEX, INC., and JOHN DOES 1-10, Defendants.**

**CAUSE NO. IP 96-1718-C H/G**

**UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF INDIANA, INDIANAPOLIS DIVISION**

*1997 U.S. Dist. LEXIS 8951*

**April 30, 1997, Decided
April 30, 1997, FILED**

**SUBSEQUENT HISTORY:** [*1] As Amended May 16, 1997.

**DISPOSITION:** Defendants' motion to dismiss plaintiffs' complaint or stay proceedings DENIED. Court's prior order limiting discovery to issues of subject matter jurisdiction VACATED.

**COUNSEL:**

For CARDIAC PACEMAKERS, INC, PLAINTIFF: JOHN R. SCHAIBLEY III, BAKER & DANIELS, INDIANAPOLIS, IN. TIMOTHY J MALLOY, MCANDREWS HELD MALLOY LTD, CHICAGO, IL.

For GUIDANT SALES CORPORATION, PLAINTIFF: DAVID T KASPER, LOCKE REYNOLDS BOYD & WEISELL, INDIANAPOLIS, IN.

For ELI LILLY & COMPANY, PLAINTIFF: JAMES HUGHES, SOMMER & BARNARD, INDIANAPOLIS, IN.

For ST JUDE MEDICAL, INC, PACESETTER, INC, DEFENDANT(S): EVAN E STEGER, ICE MILLER DONADIO & RYAN, INDIANAPOLIS, IN. DENNIS J

BLOCK, WEIL GATSHAL & MANAGES LLP, NEW YORK, NY. DENNIS R SALMON, GIBSON DUNN & CRUTCHER, PALTO ALTO, CA. MICHAEL RACKMAN, GOTTLIEB RACKMAN & RIESMAN, NEW YORK, NY.

For VENTRITEX, INC, DEFENDANT: DENNIS R SALMON, GIBSON DUNN & CRUTCHER, PALTO ALTO, CA. MICHAEL RACKMAN, GOTTLIEB RACKMAN & RIESMAN, NEW YORK, NY.

For JOHN DOES 1 - 10, DEFENDANT(S): MICHAEL RACKMAN, GOTTLIEB RACKMAN & RIESMAN, NEW YORK, NY.

**JUDGES:** DAVID F. HAMILTON, JUDGE, United States District Court, Southern District of Indiana

**OPINION BY:** DAVID F. HAMILTON

**OPINION:**

**ENTRY ON DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' COMPLAINT OR STAY PROCEEDINGS**

The three plaintiffs in this case manufacture and/or

sell cardiac stimulation devices, such as heart pacemakers, cardioverters, and defibrillators. They seek a declaratory judgment that the manufacture or sale of certain devices by defendants St. Jude Medical, Inc. and Pacesetter, Inc. will infringe patents held by plaintiffs. Defendants have moved to dismiss plaintiffs' complaint pursuant to *Federal Rule of Civil Procedure 12(b)(1)* for lack of subject matter jurisdiction or, alternatively, to stay this action. Defendants assert that the court lacks jurisdiction over this case for two reasons: (1) the resolution of the case depends on the outcome of a parallel action brought in Marion Superior Court in Marion County, Indiana, but currently pending in this court; and (2) defendants have not [*2] yet consummated the agreement by which St. Jude and Pacesetter might arguably acquire the licenses to manufacture the devices at issue. For the reasons explained below, the court finds that plaintiffs have presented justiciable claims within the court's jurisdiction, and that neither dismissal nor stay is appropriate as a matter of prudential case management. Accordingly, the court denies defendants' motion to dismiss or stay the case.

### Facts

For purposes of defendants' motion to dismiss for lack of subject matter jurisdiction or to stay, the court is not limited to considering the factual allegations in the complaint. Both sides have presented additional evidence, including information developed through discovery (which has been limited to jurisdictional matters up to this point). No party has requested an evidentiary hearing to resolve disputed issues of fact, and the court sees no need for one.

In the early 1990s, plaintiffs Eli Lilly and Company ("Lilly") and Cardiac Pacemakers, Inc. ("CPI") were involved in a dispute with defendant Ventritex, Inc. concerning the patents related to the manufacture and sale of cardiac stimulation devices. Cplt. P 10. n1 The dispute was resolved [*3] by a cross-licensing agreement ("the Ventritex Licensing Agreement") effective May 1, 1993. Cplt. P 11; Def. Br. at 3. Under the Ventritex Licensing Agreement, Ventritex granted to Lilly and CPI a non-exclusive, fully paid-up, irrevocable, royalty-free, worldwide license or sublicense under patents owned by or licensed to Ventritex relating to cardiac stimulation devices. Cplt. P 12. In exchange, Lilly and CPI granted to Ventritex a cross-license under patents owned by Lilly and/or CPI. The complaint alleges that although the rights granted by Ventritex to CPI and Lilly were irrevocable and would survive the termination of the Ventritex Licensing Agreement, that agreement stated that the licenses in favor of Ventritex would terminate immediately upon "the change of control" of Ventritex. Cplt. P 13.

> n1 The third plaintiff, Guidant Sales Corporation ("GSC"), sells cardiac stimulation devices manufactured by CPI. CPI is now a wholly owned subsidiary of GSC and was previously a wholly owned subsidiary of Lilly. Cplt. PP 1-2.

[*4]

On October 23, 1996, defendants St. Jude Medical, Inc. and Pacesetter, Inc. - a wholly owned subsidiary of St. Jude - entered into an agreement with Ventritex providing for the merger of Ventritex with and into Pacesetter, with Pacesetter surviving the merger. Cplt. P 14; Def. Br. at 5. Pacesetter or some other St. Jude-controlled entity intends, upon the closing of the merger, to continue to manufacture and sell cardiac stimulation devices of the type currently manufactured by Ventritex. On November 26, 1996, plaintiffs filed this action seeking "a declaratory judgment that the manufacture, use, or sale of cardiac stimulation devices of the type or similar to the type currently manufactured and sold by Ventritex will be unlicensed and therefore constitute an act of patent infringement after Ventritex merges" with St. Jude or Pacesetter. Cplt. P 31. According to the complaint, since the Ventritex Licensing Agreement provided that Ventritex's license to the patents owned by plaintiffs would terminate upon the change of control of Ventritex, any attempt by Ventritex to transfer or assign the patent licenses as part of the planned merger would be ineffective. Also according to the complaint, [*5] defendants have notice that plaintiffs object to the purported attempt to assign the licenses granted to Ventritex. Cplt. P 23. On December 19, 1996, defendants moved to dismiss plaintiffs' complaint under Rule 12(b)(1) or, in the alternative, to stay the proceedings pending the resolution of a dispute arising under a separate contract either through arbitration or in a related case now pending in this court, *Guidant Corp., et al. v. St. Jude Medical Inc., et al., 1997 U.S. Dist. LEXIS 8953,* Cause No. IP 96-1824-C. n2

n2 The defendants in Cause No. IP 96-1824-C also sought dismissal or stay of that action based on a related action filed later in the District of Minnesota seeking to compel arbitration of the issues in that case.

## Discussion

Plaintiffs seek a declaratory judgment for anticipatory patent infringement arising under the patent law of the United States, *35 U.S.C. § 1 et seq.* The federal Declaratory Judgment Act provides: "In a case of actual controversy within its jurisdiction; . . . any court of the United [*6] States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." *28 U.S.C. § 2201.* In order to invoke the court's jurisdiction under the Declaratory Judgment Act, plaintiffs' complaint must present a "case of actual controversy." See *Cardinal Chem. Co. v. Morton Int'l, Inc., 508 U.S. 83, 96, 124 L. Ed. 2d 1, 113 S. Ct. 1967 (1993)* (sole requirement for jurisdiction under the Act is a real and immediate conflict - a "true, actual 'controversy'") (citations omitted). This "actual controversy" requirement "tracks the 'cases' or 'controversies' requirement" of Article III of the United States Constitution. *Harris Trust and Sav. Bank v. E-II Holdings, Inc., 926 F.2d 636, 639 (7th Cir. 1991);* accord, *Aetna Life Ins. Co. v. Haworth, 300 U.S. 227, 239-40, 81 L. Ed. 617, 57 S. Ct. 461 (1937)* (Declaratory Judgment Act "is operative only in respect to controversies which are such in the constitutional sense"). Even where the Article III jurisdictional requirements are satisfied in a declaratory judgment, a district court may exercise sound discretion to decline to hear the case for prudential reasons. See [*7] *Matter of VMS Sec. Litig., 103 F.3d 1317, 1327 (7th Cir. 1996).* n3

n3 In VMS Securities, the Seventh Circuit noted the "simmering circuit split" on the standard of appellate review and reiterated its adherence to *de novo* review on appeal of district courts' discretionary decisions about exercising jurisdiction under the *Declaratory Judgment Act. 103 F.3d at 1327 & n.7.* In *Wilton v. Seven Falls Co., 515 U.S. 277, 115 S. Ct. 2137, 2143-44, 132 L. Ed. 2d 214 (1995),* a unanimous Supreme Court held that the Declaratory Judgment Act grants its discretion to district courts and that

courts of appeals should apply an "abuse of discretion" standard when reviewing district courts' decisions whether to stay federal declaratory judgment actions in light of parallel state court litigation.

Defendants assert that no "actual controversy" exists for two reasons. First, defendants argue that the case is not ripe for judicial decision because Ventritex has not yet merged into Pacesetter - the merger agreement is still contingent upon "government [*8] clearance under federal antitrust laws and regulations and approval by Ventritex's shareholders," see Wilson Aff. P 3; Def. Rep. Br. at 12 - so that Pacesetter has not yet actually begun producing, marketing, or selling Ventritex's cardiac stimulation devices. See *BP Chems. Ltd. v. Union Carbide Corp., 4 F.3d 975, 977 (Fed Cir. 1993)* ("The requirement of actual controversy encompasses concepts such as ripeness. . . ."). Second, defendants argue that the outcome of a closely related dispute, either in arbitration or in *Guidant Corp. v. St. Jude Medical, Inc.,* the parallel action filed in Marion Superior Court and removed to this court, could moot this action. Defendants have cast their arguments in terms of both constitutional standards and the discretion that district courts must exercise under the Declaratory Judgment Act.

### I. Ripeness

The doctrine of ripeness is an essential component of a justiciable case or controversy, *Smith v. Wisconsin Dep't of Agric., 23 F.3d 1134, 1141 (7th Cir. 1994),* and is likewise an essential component of an "actual controversy" under the Declaratory Judgment Act. *BP Chems., 4 F.3d at 977.* Ripeness is concerned with timing - [*9] whether the plaintiff's threatened injury is sufficiently imminent to warrant judicial action. *Regional Rail Reorganization Act Cases, 419 U.S. 102, 140, 42 L. Ed. 2d 320, 95 S. Ct. 335 (1974)* (ripeness is "peculiarly a question of timing"). Cases are not ripe where "parties point only to hypothetical, speculative, or illusory disputes as opposed to actual, concrete conflicts." *Hinrichs v. Whitburn, 975 F.2d 1329, 1333 (7th Cir. 1992).* As explained by the Supreme Court in *Abbott Laboratories v. Gardner,* the ripeness doctrine's "basic rationale is to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements." *387 U.S. 136, 87 S. Ct. 1507, 18 L. Ed. 2d 681 (1967), overruled on other grounds,*

*Califano v. Sanders, 430 U.S. 99, 105, 97 S. Ct. 980, 51 L. Ed. 2d 192 (1977).* The Court in *Abbott Laboratories* directed district courts to consider "both the fitness of the issues for judicial decision and the hardship to the parties of withholding court consideration." *387 U.S. at 149.*

Both sides rely on *Lang v. Pacific Marine and Supply Co., 895 F.2d 761 (Fed. Cir. 1990)*, where the Federal Circuit set forth a two-prong test for whether a ripe "actual controversy" exists in suits brought by patent holders **[*10]** against parties who allegedly plan to infringe in the future, but who are not presently infringing. To meet the "actual controversy" requirement in such a case, two elements must he present:

> (1) the defendant must be engaged in an activity directed toward making, selling, or using subject to an infringement charge under *35 U.S.C. § 271(a). . .*, or be making meaningful preparation for such activity; and (2) acts of the defendant must indicate a refusal to change the course of its actions in the face of acts by the patentee sufficient to create a reasonable apprehension that a suit will be forthcoming.

*895 F.2d at 764* (noting that these requirements are similar to those in a more typical patent declaratory judgment action where the threatened infringer is the plaintiff); accord, *Abbott Labs. v. Zenith Labs., Inc., 934 F. Supp. 925, 937 (N.D. Ill. 1995)*. n4 The decision whether to dismiss the declaratory judgment claim must be based on the facts existing at the time the complaint under consideration was filed. *Lang, 895 F.2d at 764; Abbott Labs., 934 F. Supp. at 937.*

n4 *35 U.S.C. § 271(a)* provides in relevant part that "whoever without authorization makes, uses, offers to sell, or sells any patented invention, within the United States . . . during the term of the patent thereof, infringes the patent." Lang made clear that even though a patentee seeking a declaration of infringement - unlike a competitor seeking a more typical declaration of non-infringement - has an express statutory remedy for actual infringement, the patentee need not wait until the defendant actually makes, uses, offers to sell, or sells plaintiff's patented invention *Lang, 895 F.2d at 764.*

**[*11]**

Plaintiffs have clearly met the second prong of the *Lang* test, and defendants do not argue otherwise. In a declaratory judgment suit brought by a patentee against a future infringer, the "reasonable apprehension" prong is satisfied if the conduct by both parties would have been sufficient for the future infringer to have brought a declaratory judgment action itself. See *Lang, 895 F.2d at 764;* see also *International Harvester Co. v. Deere & Co., 623 F.2d 1207, 1211 (7th Cir 1980)* (explaining that a reasonable apprehension need not be the result of an explicit accusation of infringement, but must be the product of the patentee's statements or conduct). According to the complaint, defendants had "notice that [plaintiffs] object to the purported attempt to assign or transfer to [St. Jude], Pacesetter, or related entity the licenses granted to Ventritex," and defendants "refused to change the course of [their] actions." Cplt. P 23. Plaintiffs further assert in their brief that they "have at all times declared their intention to enforce their patent rights and defendants have refused to alter their announced course of conduct." Pl. Br. at 8. Defendants have not attempted **[*12]** to dispute these allegations, which are sufficient to satisfy the second prong of the *Lang* test.

Defendants challenge plaintiffs' ability to satisfy the first prong of the *Lang* test. The complaint alleges that the merger agreement between St. Jude, Pacesetter, and Ventritex amounts to an "activity directed toward making, selling, or using" the allegedly infringing cardiac stimulation devices. Cplt. P 22. The merger of Ventritex into Pacesetter has not yet closed, so Pacesetter and St. Jude have not yet actually engaged in advertising, soliciting, marketing, or producing Ventritex's devices. Defendants rely on the specific facts in *Lang*, where the Federal Circuit held that the plaintiffs' claims in that case were not sufficiently real or immediate for the court to issue a declaratory judgment. *Lang, 895 F.2d at 765.* The plaintiffs in *Lang* were patentees and licensees of two patents that claimed features of a ship's hull. The plaintiffs asserted the defendants were in the process of manufacturing a hull structure that would infringe the patents. *Id. at 763.* The district court dismissed the plaintiffs' complaint. The Federal Circuit agreed that the plaintiffs **[*13]** had not alleged an actual controversy for two reasons. First, the "accused infringing ship's hull

1997 U.S. Dist. LEXIS 8951, *13

would not be finished until at least 9 months after the complaint was filed. *Id. at 764.* Second, "the accused infringers had not distributed sales literature, prepared to solicit orders, or engaged in any activity indicating that the ship would soon be ready for sea." *Id. at 765.* Accord, *Telectronics Pacing Sys. v. Ventritex, Inc., 982 F.2d 1520, 1527 (Fed. Cir. 1992)* (stating in *dicta* that the district court's decision not to exercise jurisdiction was proper because, at the time the suit commenced, the defendant's device had only recently begun clinical trials and was years away from FDA approval, the defendant was prohibited from distributing sales literature or soliciting orders, and there was no certainty that the device when approved would be the same device that began clinical trials); *Abbott Labs., 934 F. Supp. at 927-32* (finding that no case or controversy existed because the defendant's allegedly infringing drug had yet to be approved by the FDA, there was no guarantee that it would be approved on any particular date in the future, and defendants' mere request [*14] for FDA approval did not mean that the defendant would not ultimately change its course of action and decide not to market the drug).

Defendants' reliance on the specific holding in *Lang* is not persuasive under the record in this case. The Ventritex merger at issue here was not complete at the time the complaint was filed, but plaintiffs alleged that the merger would be complete - and that infringing products would be made, used, or sold - in or about the first quarter of 1997. Cplt. P 30. Plaintiffs' belief was supported by an article in a health care information newsletter on October 28, 1996, see Cplt. Ex. A, and defendants do not dispute that the information was accurate at the time. Thus, when the complaint was filed, plaintiffs had ample reason to believe the merger would be complete in as little as five weeks. This relative immediacy supports a conclusion that the case is ripe for review. n5

n5 Defendants' reply brief asserted that the merger would not be completed in the first quarter of 1997 and that: "there is presently no date set" for closing. Def. Rep. Br. at 12. On April 23, 1997, plaintiffs filed a copy of a news release in which St. Jude announced that the closing of the merger is now subject only "to approval by Ventritex shareholders at a special meeting scheduled for May 12, 1997." The fact that the merger now appears likely to close in the second

quarter of 1997 rather than the first quarter does not affect the conclusion that the merger's completion was sufficiently imminent when the complaint was filed to make the case ripe for review.

[*15]

Even more important, this case does not involve a product still in the development stage. The allegedly infringing product was already on the market at the time the complaint was filed. The courts in *Lang, Telectronics Pacing Systems,* and *Abbott Laboratories* focused on the fact that the defendants in those cases had not yet distributed sales literature, prepared to solicit orders, or engaged in any activity indicating that the allegedly infringing products would soon be made, used, or sold on the market. In each of those cases a competitor was inventing or developing a new product that would allegedly, upon its completion and approval at some unknown date in the future, infringe the plaintiff's patented invention. In addition, the products in those cases were in the developmental stage and could still have been altered considerably (or abandoned altogether) before being ready for use or sale. Thus, factual uncertainties as to both timing and design prevented the controversies from moving beyond the point of being merely hypothetical or speculative.

Here, by contrast, the allegedly infringing products are already on the market. Ventritex is now manufacturing and selling them [*16] under the 1993 Ventritex Licensing Agreement. The question on the merits is whether, once the merger closes and Ventritex merges into Pacesetter, defendants lose the right to manufacture and sell Ventritex's cardiac stimulation devices due to the termination of licenses to plaintiffs' patents on such devices under the Ventritex Licensing Agreement. Plaintiffs allege, and defendants do not dispute, that after the merger Pacesetter or St. Jude will sell products similar or identical to those now sold by Ventritex. Thus, taking the allegations in plaintiffs' complaint as true, once the merger closes, plaintiffs' patent rights will be infringed.

Under these facts, the issues are sufficiently concrete to be appropriate for judicial resolution. The characteristics of the allegedly infringing devices are known. The only question is precisely when defendants will begin to manufacture and sell them - *i.e.,* when the

merger will be complete. Of course, if defendants were merely negotiating a possible merger, the fact that the merger was not complete would be sufficient to deprive the court of jurisdiction. Here, however, by the time the complaint was filed the defendants had already agreed [*17] to apparently definitive terms of a publicly announced merger. They were awaiting contingencies that were both out of their hands and likely to be resolved in the foreseeable future. Cf. Glaxo, Inc. v. Novopharm, Ltd., 110 F.3d 1257, 1997 WL 156592, at 10 (Fed. Cir. 1997) (actual controversy existed where defendant asserted by letter that it intended to market the allegedly infringing product in approximately 18 months and had submitted an application "accompanied by data sufficient to make FDA approval imminent" - thus, the threat of defendant entering the market was neither "years away" nor in any doubt). Plaintiffs have shown that defendants have engaged in "meaningful preparation" for activity that would subject them to an infringement charge under 35 U.S.C. § 271(a), and have accordingly satisfied the first prong of the Lang test.

Accepting plaintiffs' allegations as true, if the court were to wait until the merger is complete, it would in effect be waiting until defendants were actually infringing plaintiffs' patents. Patentees are not required to wait until defendants actually infringe their patents before bringing a declaratory judgment action. [*18] Lang, 895 F.2d at 764. In light of these considerations, including the hardship to plaintiffs if the court were to delay considering their claim until Pacesetter actually begins selling the allegedly infringing products, the court finds that plaintiffs' claims are ripe for litigation. Their claims satisfy the jurisdictional requirements of Article III and it would be prudent for the court to exercise its discretion and take jurisdiction of the action.

## II. Resolution of Related Pending Case

Defendants' other argument in favor of dismissal or stay is that the resolution of the dispute set forth in Guidant Corp. v. St. Jude Medical, Inc., a parallel case filed in state court and removed to this court, may render this case moot. Defendants' brief sets forth the relevant facts, which plaintiffs do not dispute, and this court is of course familiar with the other action. Nearly a year after the Ventritex Licensing Agreement took effect, Lilly and CPI entered into a separate cross-licensing agreement ("the Telectronics Licensing Agreement") with other competitors (collectively "the Telectronics Group").

According to defendants here, the patent licenses granted by CPI and [*19] Lilly to the Telectronics Group were "virtually identical" to those granted to Ventritex in the Ventritex Licensing Agreement. Def. Br. at 3-4. There is an important difference, however. Under the terms of the Telectronics Licensing Agreement, the patent licenses could be transferred with the sale of substantially all the assets of the Telectronics Group.

On November 29, 1996, three days after this action was filed, a series of transactions caused Pacesetter (along with some of its affiliates) to acquire at least some important assets of the Telectronics Group, including "the licensing rights to the Lilly/CPI patents." Def. Br. at 5. On November 26, 1996, plaintiffs filed suit in the Marion Superior Court in Indiana seeking primarily a declaration that the transactions culminating in the November 29, 1996, agreement did not constitute a "sale of substantially all of the assets" of the Telectronics Group. The defendants then removed that action to this court. Guidant Corp., et al. v. St. Jude Med., Inc. et al., 1997 U.S. Dist. LEXIS 8953, Cause No. IP 96-1824-C.

Some of the defendants in these two actions also filed an action in the District of Minnesota seeking: (a) an order compelling arbitration of their [*20] ability to transfer rights to the Lilly and CPI patents under the terms of the Telectronics Licensing Agreement; and (b) an injunction against Lilly, CPI, GSC, and Guidant Corporation (CPI's parent corporation) to prohibit them from pursuing either of the actions pending in this court. As of the date of this entry, the District of Minnesota has denied the requested injunctive relief and has dismissed that action, and the Eighth Circuit has denied a motion seeking an injunction pending appeal and an expedited appeal.

Defendants assert in this case that, since they may have acquired essentially the same licenses to the Lilly/CPI patents through the Telectronics Licensing Agreement, a declaration in this case that defendants will infringe those patents would serve no useful purpose. Defendants conclude that this action "should be dismissed for lack of subject matter jurisdiction on the ground that it is not yet a ripe case or controversy because its resolution is dependent on a parallel action brought by plaintiffs. . . ." Def. Br. at 2. The existence of a related action involving very similar patent rights under a similar license does not deprive this court of jurisdiction. The complaint [*21] in this case presents

questions about the scope and validity of plaintiffs' patent rights and the effect of the Pacesetter-Ventritex merger on the license rights that presumably will be asserted as a defense to the alleged anticipatory infringement. The fact that defendants also intend to rely here on another (disputed) license defense that is being litigated in another action does not prevent this action from presenting an actual case or controversy within the court's jurisdiction.

Nevertheless, the existence of the other case is relevant to whether the court should, in its discretion, decline to exercise jurisdiction over plaintiffs' complaint. See, *e.g.*, *International Harvester Co. v. Deere & Co., 623 F.2d 1207, 1218 (7th Cir. 1980)* (stating that even if plaintiff had established a justiciable case or controversy, court would have declined to exercise jurisdiction because existence of a pending related case "may make resolution of the issues presented by this declaratory judgment suit unnecessary"). For two related reasons, the court will not decline to exercise its jurisdiction in this case.

First, the *Guidant* case and the present action involve some different factual [*22] and legal issues. The *Guidant* case arises under state contract law. The primary issues on the merits involve the meaning of the phrase "sale of substantially all of the assets of the Telectronics Group" under the terms of the Telectronics Licensing Agreement. This action arises under federal patent law and presents primarily the question whether defendants' intended manufacture and sale of the medical devices currently sold by Ventritex will infringe patents held by plaintiffs.

Second, there is no reason to believe that the *Guidant* case will be resolved before this action is resolved. The two actions were filed at the same time and are both at similar (and early) procedural stages. Defendants' motion here argued from the premise that the disputed issues under the Telectronics Licensing Agreement would be decided either by arbitration in Minnesota or in the related case pending in this court. If that premise were correct, defendants' motion would have considerable merit. This court could reasonably expect arbitration to proceed faster than federal civil litigation, and this court exercises some degree of control over the pace of litigation pending here. However, in view of [*23] the actions taken in the District of Minnesota and the Eighth Circuit, it now appears unlikely that the Telectronics

issues will be arbitrated soon, and perhaps not at all. Nor will they be litigated in this court. By separate entry on this date, the *Guidant* case is being remanded to state court for lack of subject matter jurisdiction. In combination, these facts convince the court that it should not decline jurisdiction over the present case. Cf. *Intermedics Infusaid, Inc. v. Regents of Univ. of Minn., 804 F.2d 129, 134-35 (Fed. Cir. 1986)* (district court did not abuse discretion in staying its own patent infringement action where a pending state-law case involving the same parties was pending; one factor was that a judgment in defendant's favor in the pending case "could well moot" the patent case; another factor was proceedings in the state-law case were "well advanced" - the suit was nine months old and discovery was virtually complete - by the time the patent suit was filed).

Defendants assert that this case is "similar to" *International Harvester Co. v. Deere & Co.,* where the Seventh Circuit, after concluding that the case was not ripe, commented that it would have [*24] declined to exercise jurisdiction under the Declaratory Judgment Act even if the case had been ripe. *623 F.2d at 1218.* This case is very different. In *International Harvester,* the plaintiff sought a declaratory judgment that its product did not infringe the defendant's patent. The court determined that declaratory judgment relief would not be appropriate because there was a "distinct possibility" that it would not serve a useful purpose due to a pending action. *Id.* Unlike the situation here, the "other action" in *International Harvester* was a patent infringement action involving the same patent and the same parties and, significantly, had been fully litigated - to the point that, seven months before the defendant had filed the second action, the district court had held that the plaintiff had infringed defendant's patent. *460 F. Supp. 523 (S.D. Ill. 1978), rev'd, 618 F.2d 110 (7th Cir. 1980).* Although the district court's decision had been reversed, the Seventh Circuit determined that "because of the current status of the prior patent suit," the resolution of the issues in the later suit would likely have been rendered unnecessary. *623 F.2d at 1218.* Here, by contrast, [*25] the two suits were filed simultaneously and there is no reason to believe that the *Guidant* case will be resolved before this case.

In exercising its discretionary jurisdiction, the court has also considered the public interest and the plaintiffs' need for the requested relief. *International Harvester, 623 F.2d at 1218.* Defendants assert that, regardless of

1997 U.S. Dist. LEXIS 8951, *25

whether or not they would otherwise be infringing plaintiffs' patents, they lawfully acquired licences to plaintiffs' patents through the Telectronics Licensing Agreement. If defendants had conceded that this "license defense" was the only disputed issue on the merits of this case, it might have been wiser to stay the present action pending resolution of that issue as a matter of case management and conservation of judicial resources. (The interest in case management has diminished significantly in light of the need to remand the *Guidant* case to state court for lack of federal subject matter jurisdiction.) However, defendants do not concede that the license defense based on the Telectronics transactions is their only defense here. They do not concede that, absent the acquisition of a license to plaintiffs' patents through [*26] the Telectronics transactions, the manufacture and sale of Ventritex's cardiac stimulation devices would in fact violate those patent rights. Defendants seek to have this court dismiss plaintiffs' patent infringement claims or stay them for perhaps years while the Indiana courts decide whether this particular affirmative defense is successful. And, if defendants' license defense is not successful, defendants would then have the parties and the court begin again from scratch on the task of litigating whether defendants' unlicensed manufacture and sale of Ventritex's cardiac stimulation devices will violate plaintiffs' patent rights, an issue that defendants apparently intend to dispute. It does not make sense here to litigate the defendants' defenses one by one. The interest in possibly conserving judicial resources is outweighed in this case by the overriding public interest in resolving patent disputes with reasonable speed. The Supreme Court has observed:

> The possession and assertion of patent rights are 'issues of great moment to the public.' A patent by its very nature is affected with a public interest. As recognized by the Constitution, it is a special privilege designed [*27] to serve the public purpose of promoting the 'Progress of Science and useful Arts.' At the same time, a patent is an exception to the general rule against monopolies and to

the right to access to a free and open market.

*Precision Instrument Mfg. Co. v. Automotive Maintenance Mach. Co., 324 U.S. 806, 815-16, 89 L. Ed. 1381, 65 S. Ct. 993 (1945)* (citations omitted).

Defendants are correct that a judgment for the defendants in the *Guidant* case may render the issues in this case moot. On the other hand, if defendants prevail in this action - *i.e.,* if the fact finder determines that defendants' manufacture and sale of Ventritex's cardiac stimulation devices do not infringe plaintiffs' patents - some issues in the *Guidant* case may similarly be rendered moot. The court will not decline or delay resolving the issues presented in this case, of importance to both the litigants and the public, merely because it might become moot at some future time, either before or after this case is resolved.

**Conclusion**

Plaintiffs' declaratory judgment action presents a justiciable case, and the court is convinced that both the public and the parties are served best by going forward at this time. Defendants' [*28] motion to dismiss plaintiffs' complaint or stay proceedings is DENIED. The court's prior order limiting discovery to issues of subject matter jurisdiction is hereby VACATED. The court will conduct a pretrial conference in this action **on May 30, 1997, at 2:00 p.m.** for the purpose of setting a trial date and dealing with other case management issues. Counsel shall confer about the topics of the case management plan and shall submit either a joint plan or separate plans **no later than two days before the conference.**

So ordered.

Date: April 30, 1997

DAVID F. HAMILTON, JUDGE

United States District Court

Southern District of Indiana

# EXHIBIT D

APPLE COMPUTER, INC., Plaintiff, v. UNOVA, INC. INTERMEC TECHNOLOGIES CORPORATION, CINCINNATI MACHINE OF UNOVA, INC., and UNOVA INDUSTRIAL AUTOMATION SYSTEMS, INC., Defendants.

Civil Action No. 03-101-JJF

UNITED STATES DISTRICT COURT FOR THE DISTRICT OF DELAWARE

2003 U.S. Dist. LEXIS 23843

November 25, 2003, Decided

**DISPOSITION:** {*1} Defendants' motion to strike plaintiff's amended and supplemental complaint denied. Defendants' motion to transfer denied. Defendants' motion to dismiss denied.

**COUNSEL:** Josy W. Ingersoll, Esquire and John W. Shaw, Esquire of YOUNG CONAWAY STARGATT & TAYLOR, LLP, Wilmington, Delaware.

Of Counsel: Robert G. Krupka, Esquire, Alexander F. MacKinnon, Esquire, and Shannon M. Hansen, Esquire of KIRKLAND & ELLIS, Los Angeles, California.

Counsel for Plaintiff Apple Computer, Inc.

Jack B. Blumenfeld, Esquire and Sean T. O'Kelly, Esquire of MORRIS, NICHOLS, ARSHT & TUNNELL, Wilmington, Delaware.

Of Counsel: Frederick A. Lorig, Esquire and David M. Kleiman, Esquire of BRIGHT & LORIG, Los Angeles, California.

Counsel for Defendants UNOVA, Inc. and Intermec Technologies Corporation.

**JUDGES:** JOSEPH J. FARNAN, JR., UNITED STATES DISTRICT JUDGE.

**OPINION BY:** JOSEPH J. FARNAN, JR.

**OPINION: MEMORANDUM OPINION**

Wilmington, Delaware

**Farnan, District Judge**

Presently before {*2} the Court are the Motion to Strike Plaintiff's Amended and Supplemental Complaint (33-1), Motion to Transfer (D.I. 12-1), and Motion to Dismiss (14-1) filed by Defendants UNOVA, Inc. ("Unova") and Intermec Technologies Corporation ("Intermec"). For the reasons discussed, Defendants' motions will be denied.

**BACKGROUND**

Apple Computer, Inc., ("Apple") filed suit against the Defendants alleging infringement of several Apple patents. Unova and Intermec responded by filing the instant Motion to Dismiss and Motion to Transfer. Apple then filed an amended complaint that added supplemental allegations and claims of patent infringement against Cincinnati Machine of Unova, Inc. ("CMU"), and Unova Industrial Automation Systems, Inc. ("UIAS"). Unova and Intermec filed a motion to strike the amended complaint. Unova is currently involved in a patent infringement lawsuit against Apple in the Central District of California.

Apple is a California corporation with its principal place of business in northern California. Intermec, CMU, and UIAS are subsidiaries of Unova. Unova is a Delaware corporation, has its principal place of business in California, and is in the process of moving its headquarters {*3} to Seattle. Intermec is a Washington corporation with its principal place of business in Washington. CMU and UIAS are Delaware corporations with their principal places of business in Ohio and Michigan respectively.

**DISCUSSION**

**I. The Legal Standards**

A. Motion to Strike

**Federal Rule of Civil Procedure 12(f),** in relevant part, states that "[a] court may order stricken ... any redundant, immaterial, impertinent, or scandalous matter." However, such motions are generally disfavored unless the matter is clearly irrelevant to the litigation or will prejudice the adverse party. See **Rechsteiner v. Madison Fund, Inc., 75 F.R.D. 499, 505 (D. Del.1977).**

B. Motion to Transfer

"For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." **28 U.S.C. § 1404(a).** In the Third Circuit, decisions on motions to transfer are guided by the private and public factors announced in

**Jumara v. State Farm Ins. Co. 55 F.3d 873, 879 (3d Cir. 1995).** When determining {*4} whether transfer is warranted, district courts must balance all of the relevant factors and respect that a plaintiff's choice of forum is entitled to substantial deference and should not be lightly disturbed when it is due to legitimate, rational concerns. **Id. at 883.** The burden is upon the movant to establish that the balance of the interests strongly weighs in favor of transfer, and a transfer will be denied if the factors are evenly balanced or weigh only slightly in favor of the transfer. See **Continental Cas. Co. v. American Home Assurance Co., 61 F. Supp. 2d 128, 131 (D. Del. 1999).**

C. Motion to Dismiss

**Federal Rule of Civil Procedure 12(b)(6)** allows a claim to be dismissed for "failure to state a claim upon which relief can be granted." The purpose of a motion to dismiss pursuant to **Rule 12(b)(6)** is to test the legal sufficiency of a complaint. **Conley v. Gibson, 355 U.S. 41, 45-46, 2 L. Ed. 2d 80, 78 S. Ct. 99 (1957).** In reviewing a motion to dismiss for failure to state a claim, "all allegations in the complaint and all reasonable inferences that can be drawn therefrom must be accepted as true {*5} and viewed in the light most favorable to the non-moving party." **Strum v. Clark, 835 F.2d 1009, 1011 (3d Cir.1987).** A court may dismiss a complaint for failure to state a claim only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations. **Hishon v. King & Spalding, 467 U.S. 69, 73, 81 L. Ed. 2d 59, 104 S. Ct. 2229 (1984).**

**II. Assertions of the Parties**

A. Motion to Strike

Intermec and Unova assert that the claims against Cincinnati Machine, and UIAS were only added in an attempt to maintain forum in Delaware. Intermec and Unova assert that Apple's complaint could not be amended without leave of court and that such leave was not granted.

Apple contends that under **Federal Rule of Civil Procedure 15(a) ("Rule 15(a)")** it had the right, without leave of court, to add UIAS and CMU and to amend its allegations based on facts in existence before the filing of the original complaint. As to its other amendments, Apple requests leave under **Federal Rule of Civil Procedure 15(d) ("Rule 15(d)")** to the {*6} extent leave is required. Apple makes this request in its briefs and has not filed a motion seeking leave. Apple contends that allowing its amendments will not unfairly prejudice the defendants.

B. Motion to Transfer

Unova and Intermec assert that the parties in the instant case have no substantial connection to Delaware and that the case should be moved to the Central District of California, a forum more convenient for the parties and more related to the action. Unova and Intermec contend that because Delaware is not the forum closest to Apple's residence or principal place of business, Apple will be less inconvenienced by a transfer and assert that Apple only chose the current forum for tactical reasons. Defendants allege that the case will be more quickly resolved in the Central District of California and that, because the parties already have litigation between them pending in the Central District of California, the case will be more efficiently heard in that District. Unova and Intermec contend that CMU and UIAS were not properly joined to this case and should not be considered in determining whether to transfer the case.

Unova and Intermec assert forum is appropriate in {*7} California and have asserted facts indicating that all parties are subject to personal jurisdiction in California. Unova and Intermec assert that the Central District of California is closer to the headquarters of Unova, Apple, and Intermec.

Unova and Intermec assert that the Central District of California will provide greater access to witnesses. Unova and Intermec contend that the patents involved have inventors most of whom are in California and none of whom are in Delaware. According to Unova and Intermec, no witness with knowledge of Apple's use of the inventions or licensing of the patents is in Delaware. Apple and Unova contend that unless a court has personal jurisdiction over a witness, that witness's presence at trial cannot be ensured. Apple and Unova contend that therefore the presence of more witnesses can be ensured by moving the case to California.

Unova and Intermec assert that nothing concerning Apple's inventions is located in Delaware. Unova and Intermec contend that more sales of the allegedly infringing products have occurred in California than in Delaware and that the products are manufactured far from Delaware. Unova and Intermec contend that no documents on {*8} the design, manufacture, use, or sale of the products accused to violate the patents are located in or near Delaware.

Apple asserts that, as the plaintiff, it is entitled to deference on its choice of forum and that it has chosen an appropriate forum. Apple asserts that, with the exception of Intermec, three of the four defendants are Delaware corporations and are properly sued in Delaware even if not conducting business in the state. Apple asserts that Unova will be headquartered in

Washington and not California by the time this case reaches trial.

Apple asserts that no location will be ideal for the convenience of the witnesses who are dispersed throughout the United States and France. Apple contends that Defendants have not provided evidence establishing that any witness critical to its case will be unavailable for trial in Delaware. Apple contends that the key witnesses on infringement are in Washington, Michigan, and Iowa, and not in California.

Apple contends that this case is unrelated to the one pending in the Central District of California and that moving the case would not produce improvements in judicial economy. Apple contends that the disposition of this case would {*9} occur at essentially the same time in Delaware as in California.

Apple asserts that there is not sufficient reason to justify moving this case. Apple asserts that patent law does not implicate local interests and that local interest should not be a factor in deciding whether to move this case. Apple asserts that Delaware's expertise and experience in patent law also point to keeping the case in Delaware. Apple asserts that Defendants are large corporations with substantial resources who will not be substantially burdened by travel to Delaware.

C. Motion to Dismiss

Unova contends that all of Apple's claims against it should be dismissed; Intermec contends that Apple's claims against it alleging indirect infringement should be dismissed. Unova asserts that it is a holding company that does not make, use, sell, or import any of the accused products and that has not contributed to or induced infringement. Unova asserts that Apple has neither alleged that Unova sold infringing products nor alleged that Unova should be held liable for Intermec's sale of allegedly infringing products.

Unova and Intermec contend that Apple has not and can not set forth a basis for its allegations of {*10} induced infringement. Unova and Intermec contend they were unaware of the patents at issue in the case before the lawsuit was filed and have introduced an affidavit in support of this contention.

Apple asserts that its amended complaint has cured any defects in the original complaint and made the motion to dismiss moot. Apple asserts that the motion to dismiss targets the non-operative former complaint and that a ruling on this complaint would be, in effect, an advisory opinion. Apple asserts that it has sufficiently pled its causes of action.

Apple asserts that no discovery has occurred in this case and that neither dismissal nor summary judgment (should the Court choose to convert the motion to dismiss) is appropriate. Apple asserts that Unova's website and public declarations indicate that Unova makes and sells products. Apple asserts that Intermec also makes and sells products. Apple asserts that Unova and Intermec both have products infringing on at least one claim of each patent at issue in this action and have been actively and intentionally inducing their customers and, in the case of Unova, subsidiaries, to use the infringing products. Apple asserts that all of the facts {*11} relevant to infringement are in Unova and Intermec's possession and that it is entitled to discovery as to its claims. Apple contends that there are material issues of fact that preclude summary judgement.

III. Analysis

A. Motion to Strike

"A party may amend the party's pleading once as a matter of course at any time before a responsive pleading is served[.]" FED. R. CIV. P. 15(a). "Neither a motion to dismiss, nor a motion for summary judgment, constitutes a responsive pleading under **Federal Rule of Civil Procedure 15(a)." Centifanti v. Nix, 865 F.2d 1422, 1431 n.9 (3d Cir. 1989).** Apple's amended complaint was filed before Defendants made a responsive pleading and therefore the Court concludes that Apple was generally entitled to amend its complaint.

Even if a responsive pleading has not been filed, Court approval is required for "supplemental pleading[s] setting forth transactions or occurrences or events which have happened since the date of the pleading sought to be supplemented." FED. R. CIV. P. 15(d). "[A] supplemental {*12} pleading adds to the original some matter occurring after the beginning of the action or after a responsive pleading has been filed." **Klee v. Pittsburgh & W.V. Ry. Co., 22 F.R.D. 252, 254 (W.D. Pa.1958).** Apple's claims alleging knowledge based on information conveyed in the original complaint are clearly supplemental pleadings.

Additionally, **Federal Rule of Civil Procedure 21 ("Rule 21"),** in relevant part, holds that "parties may be dropped or added by order of the court on motion of any party or of its own initiative at any stage of the action and on such terms as are just." FED. R. CIV. P. 15(a). Some courts have held that **Rule 21** supersedes **Rule 15** and requires court permission before parties are added. See, e.g., **Renard v. Dillman, 1998 U.S. App. LEXIS 38626 (2nd Cir. 1998).** Other courts, including courts in this District, have indicated that, before a responsive pleading has been issued, parties may be added even without leave to amend. See e.g. **Standard Chlorine of Del., Inc. v. Sinibaldi, 821 F.**

**Supp. 232, 259 (D. Del. 1992)**. The Court has not considered {*13} on the issue and need not do so today.

Apple has requested leave to amend to the extent its pleading requires such leave. "In the absence of any apparent or declared reason--such as undue delay, bad faith or dilatory motive[], repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of [the] amendment," leave to amend is to be given freely and is entrusted to the discretion of the court. **Foman v. Davis, 371 U.S. 178, 182, 9 L. Ed. 2d 222, 83 S. Ct. 227 (1962)**. The Court finds that Defendants will not suffer unfair prejudice from granting leave to amend. While Apple should have made its request more formally, the Court will grant Apple leave to amend to the extent such leave is now required.

### B. Motion to Transfer

Jumara v. State Farm Ins. Co. dictates that the Court examine the private and public interest in determining whether a transfer is warranted. **55 F.3d 873, 879 (3d Cir. 1995)**.

The Court finds that the asserted public advantages of moving the case to the Central District of California are insufficient. The parties are already involved in a dispute {*14} in the Central District of California; however, the California action is unrelated to the claims of the instant action and involves multiple parties not joined in this case. Also, on comparing the jurisdictional statistics for the Central District of California and the District of Delaware, the Court finds that moving the case to the Central District of California will produce little advantage in expediency and in the allocation of judicial resources. Neither California nor Delaware has a local interest in the decision of this case.

The Court also finds that the private factors do not favor transfer. While more witnesses can be subpoenaed in California, a particular need to subpoena these witnesses has not been demonstrated. The parties are predominantly located closer to California and neither the parties nor the case have strong ties to Delaware. However, the parties as a whole are not located close to the Central District of California and all of the parties are sophisticated and substantial enough to litigate in Delaware. Apple is entitled to deference on its choice of forum, and

therefore the Court concludes that Unova and Intermec's Motion to Transfer must be denied.

### C. {*15} Motion to Dismiss

Initially the Court observes that Apple's amended complaint has made parts of Unova and Intermec's motion to dismiss moot. In its Amended Complaint, Apple has alleged that, since the initial pleading, Intermec and Unova were aware of Apple's patents. In this regard Apple has plead a claim for inducement of infringement and contributory infringement.

Unova contends that it does not make, use, sell, or offer for sale any of the accused products and is entitled to the dismissal of Apple's claims. Apple has pled the opposite and has stated a claim for infringement. The parties have not yet engaged in discovery, and, at this early stage, factual determinations are not appropriate. If Unova is correct in its contentions about itself and about Apple's motives in filing suit, summary judgment and sanctions may later be appropriate. At present, however, the Court will deny Unova and Intermec's motion to dismiss.

### CONCLUSION

For the reasons discussed, the Court has denied the Motion to Strike Plaintiff's Amended and Supplemental Complaint (33-1), Motion to Transfer (D.I. 12-1), and Motion to Dismiss (14-1) filed by Defendants UNOVA, Inc. and Intermec Technologies {*16} Corporation. An Order consistent with this Memorandum Opinion will be entered.

### ORDER

At Wilmington, this 25th day of November, 2003, for the reasons discussed in the Memorandum Opinion issued this date;

IT IS HEREBY ORDERED that:

1) The Motion to Strike Plaintiff's Amended and Supplemental Complaint (33-1) filed by Defendants UNOVA, Inc. and Intermec Technologies Corporation is **DENIED.** 2) The Motion to Transfer (D.I. 12-1) filed by Defendants UNOVA, Inc. and Intermec Technologies Corporation is **DENIED.** 3) The Motion to Dismiss (D.I. 14-1) filed by Defendants UNOVA, Inc. and Intermec Technologies Corporation is **DENIED.**

JOSEPH J. FARNAN, JR.

UNITED STATES DISTRICT JUDGE

# EXHIBIT E

JOHN GAMMINO, Plaintiff, v. CELLCO PARTNERSHIP d/b/a VERIZON WIRELESS VERIZON COMMUNICATIONS, INC. VODAPHONE GROUP PLC, and AT&T CORPORATION, Defendants.

NO. 04-4303

UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF PENNSYLVANIA

2005 U.S. Dist. LEXIS 21557

September 27, 2005, Filed

**SUBSEQUENT HISTORY:** Reconsideration denied by **Gammino v. Cellco P'ship, 2006 U.S. Dist. LEXIS 46079 (E.D. Pa., July 6, 2006)**

**COUNSEL:** {*1} For JOHN R. GAMMINO, Plaintiff: WILLIAM M. MULLINEAUX, FLAMM BOROFF & BACINE, BLUE BELL, PA; FRANK SCHWARTZ, FLAMM BOROFF & BACINE PC, BLUE BELL, PA; RICHARD J. JOYCE, FLAMM, BOROFF & BACINE, PC, BLUE BELL, PA.

For CELLCO PARTNERSHIP, doing business as VERIZON WIRELESS, VODAFONE GROUP PLC, Defendants: KATHERINE MENAPACE, AKIN GUMP STRAUSS HAUER & FELD, LLP, PHILADELPHIA, PA; SAMUEL W. SILVER, SCHNADER HARRISON SEGAL & LEWIS LLP, PHILADELPHIA, PA.

For VERIZON COMMUNICATIONS, INC., Defendant: SAMUEL W. SILVER, SCHNADER HARRISON SEGAL & LEWIS LLP, PHILADELPHIA, PA.

For AT&T CORP., Defendant: KATHERINE MENAPACE, AKIN GUMP STRAUSS HAUER & FELD, LLP, PHILADELPHIA, PA.

For SPRINT CORPORATION, Defendant: WILLIAM A. JONES, SWARTZ CAMPBELL, LLC, THE FLINTKOTE COMPANY, PHILADELPHIA, PA; KATHERINE MENAPACE, AKIN GUMP STRAUSS HAUER & FELD, LLP, PHILADELPHIA, PA.

For DAVEL COMMUNICATIONS, INC., Defendant: GREGORY B. LARE, DUANE MORRIS LLP, PHILADELPHIA, PA; MARK A. WATKINS, AKRON, OH; R. ERIC GAUM, HAHN, LOESER, AKRON, OH; RICHARD H. LOWE, DUANE MORRIS LLP, PHILADELPHIA, PA; KATHERINE MENAPACE, AKIN GUMP STRAUSS HAUER & FELD, LLP, PHILADELPHIA, PA.

For JOHN R. GAMMINO, {*2} JOHN R. GAMMINO, Counter Defendants: WILLIAM M.

MULLINEAUX, FLAMM BOROFF & BACINE, BLUE BELL, PA.

For CELLCO PARTNERSHIP, Counter Claimant: SAMUEL W. SILVER, SCHNADER HARRISON SEGAL & LEWIS LLP, PHILADELPHIA, PA.

**JUDGES:** Clifford Scott Green, S.J.

**OPINION BY:** Clifford Scott Green

**OPINION: MEMORANDUM**

**GREEN, S.J.**

Presently pending are Defendant Verizon Communications, Inc. ("VCI") Motion to Dismiss, and Defendant Vodaphone Group PLC's ("Vodaphone") Motion to Dismiss. Defendants Cellco Partnership ("Cellco" will be referred to as "Verizon Wireless"), Davel Communications, Inc., Sprint Communications, and AT&T have each filed an Answer to Plaintiff's Complaint. For the reasons set forth below, Defendant VCI's motion will be denied. Defendant Vodaphone's motion will be dismissed without prejudice pending the completion of jurisdictional discovery.

**FACTUAL AND PROCEDURAL BACKGROUND**

Plaintiff filed a Complaint against Defendants alleging that Defendants have in the past, and continue to, directly infringe upon and/or actively induce the infringement of two patents Plaintiff registered and owns. The patents purportedly cover techniques for blocking fraudulent international {*3} telephone calls thereby resulting in substantial savings for Defendants.

VCI argues that Plaintiff's Complaint should be dismissed against it because VCI is not a partner of Verizon Wireless. VCI also maintains that Plaintiff failed to state a claim that VCI directly infringed upon the patent or induced Verizon Wireless to infringe the patent. VCI claims that it is a holding company which only holds the stock of other companies, and that it does not conduct any other business. Secondly, VCI argues that it should be dismissed from this action because Plaintiff has already sued VCI for

infringement of the same patents in a related matter in this court, Gammino, v. Verizon Communications, et al., Civ. Ac. No. 03-5579. In reply, Plaintiff responds that VCI is a general partner of Verizon Wireless as is demonstrated by many public filings. Plaintiff further responds that the instant suit against VCI is not duplicative litigation because the claims alleged against VCI herein derive from VCI's alleged infringement of the patents for wireless services only. Plaintiff states that the related case does not contain any claims for violation of patents relating to wireless services. Therefore, {*4} Plaintiff concludes that the claims made in this action do not duplicate claims made in Gammino, v. Verizon Communications, et al., Civ. Ac. No. 03-5579.

## DISCUSSION

A court may dismiss a complaint for failure to state a cause of action only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations. **Swierkiewicz v. Sorema N.A., 534 U.S. 506, 122 S. Ct. 992, 998, 152 L. Ed. 2d 1 (2002)** (quoting **Hishon v. King & Spalding, 467 U.S. 69, 73, 104 S. Ct. 2229, 81 L. Ed. 2d 59 (1984)**). The court "must take all the well pleaded allegations as true and construe the complaint in the light most favorable to the plaintiff." **Colburn v. Upper Darby Twp., 838 F.2d 663, 665-66 (3d Cir. 1988)**. In Swierkiewicz, the United States Supreme Court addressed the liberal pleading standards set forth in **Fed.R.Civ.P. 8(a)(2)**, noting that **Fed.R.Civ.P. 8(a)(2)** only requires "a short and plain statement of the claim showing that the pleader is entitled to relief." **Swierkiewicz 534 U.S. 506, 122 S. Ct. 992 at 998-999, 152 L. Ed. 2d 1.** {*5}  The Supreme Court further noted that the statement of facts must simply "give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." **Id. at 998.** (quoting **Conley v. Gibson, 355 U.S. 41, 47, 78 S. Ct. 99, 2 L. Ed. 2d 80(1957)**. Notice pleading is all that is required even when it may appear on the face of the pleadings that a recovery is very remote and unlikely. See **Swierkiewicz at 997-998.** "The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." **Id. at 997** (quoting **Scheuer v. Rhodes, 416 U.S. 232, 236, 94 S. Ct. 1683, 40 L. Ed. 2d 90)**). The Supreme Court further expounded upon the simplified notice pleading standard stating that the standard relies on liberal discovery rules and summary judgment motions to define disputed facts and issues and to dispose of unmeritorious claims. **Id. at 998.** The pleading standard is a liberal one and was adopted to focus litigation on the merits of a claim. **Id. at 999.** Therefore, **Fed.R.Civ.Pro. 8(a)** establishes a pleading

standard without {*6}  regard to whether a claim will succeed on the merits. .

## A. VCI's Motion to Dismiss

VCI argues that dismissal is warranted because it is only a holding company, and not a partner of Verizon Wireless. VCI also argues that the instant litigation is duplicative, a waste of judicial resources, and unduly burdensome. Upon review of the Complaint the court notes that Plaintiff has alleged that VCI is a general partner of Verizon Wireless. (See Compl. at PP 35, 38,73, and 85). Plaintiff's has sufficiently alleged that VCI is Verizon Wireless' partner. Swierkiewicz, discussed *supra* makes it clear that pleading with particularity is not required and also that Plaintiff is not required to provide proof that his allegations are correct at the time of pleading. The pleading standard is a liberal one and was adopted to focus litigation on the merits of a claim. **Id. at 999.** Whether VCI actually is a partner of Verizon Wireless is a matter to be determined after the completion of discovery and upon summary judgment, if appropriate. Furthermore, Plaintiff has also alleged, albeit quite generally, that VCI has actively infringed upon, and induced Verizon Wireless to {*7}  infringe upon, Plaintiff's patents. VCI asserts that Plaintiff must specify the manner in which the alleged infringement occurred and cites to **Phonometrics, Inc. v. Hospitality Franchise Sys. Inc., 203 F.3d 790 (Fed. Cir 2000)** in support of this position. (VCI Mot. Dismiss at 6). However, VCI has misconstrued the court's holding in that case. In **Phonometrics** ,the court merely stated that "a patentee need only plead facts sufficient to place the alleged infringer on notice. This requirement ensures that an accused infringer has sufficient knowledge of the facts alleged to enable it to answer the complaint and defend itself." **Phonometrics, 203 F.3d at 794.** Notably the court specifically held that:

> [Pleading] requirements do not require a patentee to amend its claims to include specific allegations about each limitation once a court has construed the claims of the patent. To impose such requirements would contravene the notice pleading standard, and would add needless steps to the already complex process of patent litigation. Instead. . . [the] complaint alleges ownership of the asserted patent, names each individual defendant, cites {*8}  the patent that is allegedly infringed, describes the means by which the defendants allegedly infringe, and points to the specific sections of the patent law invoked.

**Id**. Therefore, Plaintiff is only required to provide Defendants with notice of his claims. By alleging that Defendants have actively infringed upon, and induced

others to infringe upon, his patents by using them, Plaintiff has satisfied the pleading requirements of **Fed.R.Civ.P. 8(a)(2)**. VCI's motion to dismiss largely relies on its assertions that Plaintiff cannot prove that VCI is Verizon Wireless' partner. VCI's motion for dismissal also asserts that VCI cannot and has not infringed upon any patents because it is only a holding company. Again, these arguments are appropriately advanced after discovery has been completed and upon summary judgment. Defendant VCI's motion to dismiss for failure to state a claim will be dismissed

VCI's final argument favoring dismissal is that the instant matter duplicates litigation. Plaintiff has filed a complaint against VCI in a related matter. See, Gammino v Verizon Communications, Inc., et al., Civ. Ac. No. 03-5579. However, {*9} as Plaintiff correctly notes, none of Plaintiff's claims against any of the Defendants in that matter involve allegations of patent infringement relating to wireless telephone services. The claims against all Defendants herein involve wireless service. The court recognizes that VCI will be required to simultaneously litigate two cases involving the same patent. However, the court will attempt to minimize this burden by coordinating scheduling and other deadlines in the related case. Accordingly, Defendant VCI's motion to dismiss Plaintiff's Complaint will be denied.

### B. Vodaphone's Motion to Dismiss

Vodaphone moves for dismissal pursuant to **Fed.R.Civ.P. 12(b)(2)** asserting that this court does not have jurisdiction over Vodaphone, a UK-based company. Vodaphone asserts that it has no Pennsylvania contacts and that in Pennsylvania it: does not do any business; has never sold any goods or services; does not own any property; does not pay any tax, or employ any personnel. As Vodaphone correctly points out, Plaintiff bears the burden of establishing that Vodaphone has sufficient contacts with Pennsylvania to warrant this court's exercise {*10} of either general or specific personal jurisdiction over Vodaphone. See, **Inamed Corp. V. Kuzmak, 249 F.3d 1356, 1360 (Fed. Cir. 2001); Akro Corp. v. Luker, 45 F.3d, 1541, 1545 (Fed. Cir. 1995)**. However, on the present record, the court is unable to determine whether it may lawfully exercise personal jurisdiction over Vodaphone. An opportunity for jurisdictional discovery must be granted in order to permit Plaintiff to demonstrate to this court that jurisdiction over Vodaphone is warranted. n1

- - -Footnotes- - -

n1 Vodaphone also moves for dismissal pursuant to **Fed.R.Civ.P. 12(b)(6)** maintaining that it is not a partner of Verizon Wireless and cannot be liable for any alleged infringing conduct committed by Verizon Wireless. Vodaphone further argues that Plaintiff has failed to state a claim for patent infringement because the complaint failed to allege sufficient facts to support a claim of either direct or indirect patent infringement. (See Vodaphone Mot. Dismiss at 14-15, 17-19). The court will not determine whether dismissal pursuant to **Fed.R.Civ.P. 12(b)(6)** is appropriate until after the court decides whether it may properly exercise jurisdiction over Vodaphone.

- - -End Footnotes- - -
{*11}

An appropriate order follows.

### ORDER

**AND NOW** this    day of September 2005, **IT IS HEREBY ORDERED** that:

1. Defendant VCI's Motion to Dismiss is **DENIED**. Defendant VCI shall file an Answer to Plaintiff's Complaint within 10 days of the date of this Order; 2. Decision on Defendant Vodaphone's Motion to Dismiss is **DEFERRED** pending the completion of discovery limited to the issues raised pursuant to **Fed. R. Civ. P 12(b)(2)**; 3. Discovery on the jurisdictional issue shall be completed on or before November 30, 2005; 4. Defendant Vodaphone may move within ten (10) days of the completion of discovery to reinstate the motion including legal memorandum; 5. Plaintiff shall have ten (10) days from the date of Defendant's letter request to reinstate his reply.

BY THE COURT:

S/ Clifford Scott Green, S.J.

# EXHIBIT F

COOLSAVINGS.COM, INC., Plaintiff, v. CATALINA MARKETING CORPORATION and SUPERMARKETS ONLINE, INC., Defendants.

No. 98 C 6668

UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

1999 U.S. Dist. LEXIS 7891

May 13, 1999, Decided

May 14, 1999, Docketed

**DISPOSITION:** {*1} Defendants' motion to dismiss [17-1] granted in part as to paragraph 8 of complaint and denied as to all other allegations.

**COUNSEL:** For COOL SAVINGS.COM, INC., plaintiff: Thomas G. Scavone, Christopher J. Lee, Sally Wiggins, David J. Sheikh, Niro, Scavone, Haller & Niro, Ltd., Chicago, IL.

For CATALINA MARKETING CORPORATION, SUPERMARKETS ONLINE, INC., defendants: Slawomir Z. Szczepanski, Mary Jo Boldingh, Rimas T. Lukas, Arnold, White & Durkee, Chicago, IL.

**JUDGES:** John F. Grady, United States District Judge.

**OPINION BY:** John F. Grady

**OPINION: MEMORANDUM OPINION**

Before the court is defendants' motion to dismiss the amended complaint pursuant to **Rule 12(b)(6) of the Federal Rules of Civil Procedure** or, in the alternative, for plaintiff to provide a more definitive statement pursuant to **Rule 12(e) of the Federal Rules of Civil Procedure.** For the following reasons, the motion is granted in part and denied in part.

**BACKGROUND**

Plaintiff Coolsavings.com, Inc. ("Coolsavings") is a Michigan corporation that does business in Illinois. Defendants Catalina Marketing Corporation ("Catalina") and SuperMarkets Online, Inc. ("SuperMarkets") are Delaware corporations that do business in {*2} Florida. Each party operates an internet web site that provides "electronic coupons." Consumers can visit the web site, access a database of coupons, print them, and use them for discounts at local stores.

On June 2, 1998, the United States Patent and Trademark Office issued United States Letters Patent No. 5,761,648 (the " '648 patent") to Coolsavings. The '648 patent claims protection of sixteen methods that involve the creation and distribution of electronic coupons through the internet. Coolsavings alleges that Catalina and SuperMarkets have infringed the '648 patent by, "among other things, making and using a system for offering and providing targeted electronic coupons on the www.valupage.com and www.supermarkets.com Internet web sites." First Amended Complaint P 7. In addition to direct infringement, Coolsavings alleges that Catalina induced and contributed to SuperMarkets Online's infringement. Coolsavings seeks both injunctive and monetary relief.

Defendants now move to dismiss or, in the alternative, for plaintiff to "specifically allege actionable acts of infringement . . . as required by Rule 8."

**DISCUSSION**

The purpose of a 12(b)(6) motion to dismiss {*3} is to test the sufficiency of the complaint, not to resolve the case on the merits. 5A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1356, at 294 (2d ed. 1990). When evaluating such a motion, the court must accept as true all factual allegations in the complaint and draw all reasonable inferences in the plaintiff's favor. **Jang v. A.M. Miller & Assocs., 122 F.3d 480, 483 (7th Cir. 1997); Travel All Over The World, Inc. v. Kingdom of Saudi Arabia, 73 F.3d 1423, 1429 (7th Cir. 1996).** Dismissal is appropriate only if "'it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations.'" **Ledford v. Sullivan, 105 F.3d 354, 356 (7th Cir. 1997)** (quoting **Hishon v. King & Spalding, 467 U.S. 69, 73, 81 L. Ed. 2d 59, 104 S. Ct. 2229 (1984)); Jones v. General Elec. Co., 87 F.3d 209, 211 (7th Cir.), cert. denied, 519 U.S. 1008, 117 S. Ct. 510, 136 L. Ed. 2d 400 (1996).**

Under the liberal system of notice pleading envisioned by **Federal Rule of Civil Procedure 8:**

complaints need not contain elaborate factual recitations. They are supposed to be succinct. . . . Any need to plead facts {*4} that, if true, establish each element of a "cause of action" was abolished by the Rules of Civil Procedure in 1938, which to signify the

radical change from code pleading also replaced "cause of action" with "claim for relief." One pleads a "claim for relief" by briefly describing the events. At this stage the plaintiff receives the benefit of imagination, so long as the hypotheses are consistent with the complaint.

**Sanjuan v. American Bd. of Psychiatry & Neurology, Inc., 40 F.3d 247, 251 (7th Cir. 1994)** (citations omitted), cert. denied, **516 U.S. 1159, 134 L. Ed. 2d 191, 116 S. Ct. 1044 (1996).**

Defendants argue that plaintiff's complaint fails because it alleges only that defendants have infringed the **'648** patent by "making and using a system," not by actually performing all of the steps of the claimed method. But the first amended complaint more than adequately gives defendants reasonable notice by identifying both the patent at issue and the web sites alleged to infringe it. Defendants can read the patent, examine their own actions, and appropriately answer the complaint.

Furthermore, defendants argue that the patent at issue protects only method claims, not apparatus {*5} claims, and that the word "system" refers only to the latter. The heart of this argument, however, depends not on pleading but on proof. Neither of defendants' case citations on this point address the adequacy of pleadings, but rather involve inadequacy of proof. See **Joy Techs., Inc. v. Flakt, Inc., 6 F.3d 770 (Fed. Cir. 1993)** (vacating district court injunction); **Mendenhall v. Cedarapids, Inc., 5 F.3d 1557 (Fed Cir. 1993)** (affirming in part and reversing in part district court judgment awarding damages). A complaint must only describe events briefly and succinctly; "details of both fact and law come later, in other documents." **Bartholet v. Reishauer A.G., 953 F.2d 1073, 1078 (7th Cir. 1992).** With regard to the direct infringement claim, plaintiff has met its burden.

Plaintiff's inducement claim, however, fails because it does not allege the requisite intent. For an inducement claim to succeed, the plaintiff must show that the defendant encouraged another's direct infringement with both knowledge and specific intent. See **Manville Sales Corp. v. Paramount Sys., Inc., 917 F.2d 544, 553 (Fed. Cir. 1990)**; see also 35 U.S.C. § 271(b) ("Whoever actively induces infringement {*6} of a patent shall be liable as an infringer"). The instant complaint alleges only the "bald assertion" of active inducement, which, "without the allegation of any facts supporting it," does not satisfy the pleading requirements of the federal rules. See **Ristvedt-Johnson, Inc. v. Peltz, 1991 U.S. Dist. LEXIS 17233, No. 91 C 3273, 1991 WL 255691, at *4 (N.D. Ill. Nov. 18, 1991)** (dismissing inducement allegation for lack of personal jurisdiction and failure to state a claim). The mere fact that SuperMarkets is a business unit of Catalina does not provide the necessary inference of intent for this claim to move forward as it stands. Id. For this claim to satisfy Rule 12(b)(6), plaintiff must make some factual allegation that implies the existence of the requisite scienter.

## CONCLUSION

For the foregoing reasons, we grant defendants' motion to dismiss the portion of paragraph 8 of plaintiff's complaint that alleges that Catalina "actively induced" SuperMarkets to infringe the **'648** patent. We deny defendants' motion to dismiss as to all other allegations. Plaintiff may have until June 1, 1999, to amend its complaint to allege inducement to infringe the patent, if it can do so. The claim should {*7} be set forth in a separate count. A status conference is already set for June 8, 1999, at 9:45 a.m.

DATED: May 13, 1999

ENTER:

John F. Grady, United States District Judge

# EXHIBIT G

Westlaw.

Not Reported in F.Supp.2d                                    Page 1
Not Reported in F.Supp.2d, 2002 WL 1458853 (D.Del.)
**(Cite as: Not Reported in F.Supp.2d)**

**H**
Briefs and Other Related Documents
Ondeo Nalco Co. v. EKA Chemicals, Inc.D.Del.,2002.Only the Westlaw citation is currently available.
United States District Court, D. Delaware.
ONDEO NALCO COMPANY, a Delaware Corporation, Plaintiff,
v.
EKA CHEMICALS, INC., a Delaware Corporation, Defendant.
**No. Civ.A.01-537-SLR.**

June 10, 2002.

MEMORANDUM ORDER
ROBINSON, J.
**\*1** At Wilmington this 10th day of June, 2002, having reviewed the briefs submitted by the parties with respect to plaintiff's pending motions;

IT IS ORDERED that plaintiff's motion to dismiss defendant's counterclaims (D.I.23) is granted; and plaintiff's motion for leave to filed an amended complaint (D.I.42) is granted, for the reasons that follow:

1. The court has jurisdiction over this action pursuant to 35 U.S.C. §§ 271 and 281 and 28 U.S.C. § 1338(a).

2. Motion to Dismiss Counterclaims. In analyzing a motion to dismiss pursuant to Rule 12(b)(6), the court must accept as true all material allegations of the complaint and it must construe the complaint in favor of the plaintiff. *See Trump Hotels & Casino Resorts, Inc. v. Mirage Resorts, Inc.,* 140 F.3d 478, 483 (3d Cir.1998). "A complaint should be dismissed only if, after accepting as true all of the facts alleged in the complaint, and drawing all reasonable inferences in the plaintiff's favor, no relief could be granted under any set of facts consistent with the allegations of the complaint." *Id.* Claims may be dismissed pursuant to a Rule 12(b)(6) motion only if the plaintiff cannot demonstrate any set of facts that would entitle him to relief. *See Conley v. Gibson,* 355 U.S. 41, 45-46 (1957). The moving party has the burden of persua-

sion. *See Kehr Packages, Inc. v. Fidelcor, Inc.,* 926 F.2d 1406, 1409 (3d Cir.1991).

3. Plaintiff argues that defendant's counterclaims, which allege that plaintiff's products infringe three of defendant's patents,[FN1] fail to provide fair notice of the claims and the grounds upon which they rest, as required by Federal Rule of Civil Procedure 8(a). *Conley,* 355 U.S. at 47 (Rule 8(a) requires that a claim provide "fair notice of what the plaintiff's claim is and the grounds upon which it rests"). Plaintiff asserts that the counterclaims insufficiently identify which products are accused of infringement[FN2] and fail to adequately plead induced infringement.[FN3] Plaintiff also objects that the counterclaims do not specify when the alleged infringement occurred (the '961 and '150 patents are now expired) and they combine the direct, contributory, and induced infringement claims into one count for each patent.

> FN1. United States Patent No. 5,603,805 ("the '805 patent"); United States Patent No. 4,385,961 ("the '961 patent"); and United States Patent No. 4,388,150 ("the '150 patent").

> FN2. The infringing products are described as "Nalco's products, including the 8692 product." (D.I.22, ¶¶ 29,34,40) The only additional clue to the identity of the alleged infringing products is the averment "Nalco makes and sells products, including the product numbered 8692, ... that are used in paper-making processes ..." or "to make paper." (*Id.* at ¶ 24)

> FN3. Defendant simply avers that "[u]pon information and belief, Nalco has induced the infringement of the claims of the ... patent, in violation of 35 U.S.C. § 271(b), by selling its products, including the 8692 product, and in instructing and encouraging others in the use of its products, including the 8692 product." (D.I.22, ¶¶ 30,36,42)

4. The court agrees with plaintiff that the counter-

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                          Page 2
Not Reported in F.Supp.2d, 2002 WL 1458853 (D.Del.)
(Cite as: Not Reported in F.Supp.2d)

claims do not satisfy Rule 8(a). With the exception of the description of the 8692 product, the pleadings are too vague to provide plaintiff with fair notice of which products are accused of infringing defendant's patents. *See* Conley, 355 U.S. at 47; Gen-Probe, Inc. v. Amoco Corp., 926 F.Supp. 948, 961 (S.D.Cal.1996) (vague reference to "products and/or kits" does not provide adequate notice). *Compare* Interdigital Technology Corp. v. OKI America, Inc., 845 F.Supp. 276, 283 (E.D.Pa.1994) (patent claim need not identify specific products that are alleged to infringe by name so long as they are "sufficiently identified in some way"). In addition, the pleadings fail to allege direct infringement by a party other than ONDEO Nalco and, therefore, insufficiently plead induced infringement. *See* Met-Coil Systems Corp. v. Korners Unlimited, Inc., 803 F.2d 684, 687 (Fed.Cir.1986) (direct infringement required element of induced infringement); *Shearing v.. Optical Radiation Corp.,* 30 U.S.P.Q. 1878, 1880 (D.Nev.1994) (complaint must allege direct infringement by someone other than the inducer).

**\*2** 5. Based on the above, the court dismisses defendant's counterclaims with leave to amend.

6. Motion for Leave to File a First Amended Complaint. Under Federal Rule of Civil Procedure 15(a), leave to file amended complaints "shall be freely given when justice so requires." *See also* Gooding v. Warner-Lambert Co., 744 F.2d 354, 358 (3d Cir.1984). Plaintiff seeks leave to amend its complaint (a) to remove two alien defendants whom plaintiff and defendant have agreed to dismiss with prejudice (see Stipulation and Order, D.I. 20, ¶ 1); and (b) to add declaratory judgment counts related to invalidity of the patents-in-suit. Defendant objected that the proposed amended complaint would be deficient for failure to plead with specificity inequitable conduct and for asserting "unenforceability" of the subject patents in combination with invalidity. In response, plaintiff added more specific allegations of inequitable conduct with respect to the procurement of the '805 patent to a revised first amended complaint (D.I.45, Ex. D, ¶¶ 22-54); plaintiff makes no inequitable conduct allegations with respect to the '150 patent or the '961 patent (*Id.* at 5-6; Ex. D, ¶¶ 55-65). Based on the above, the court grants plaintiff

leave to file a first amended complaint.

D.Del.,2002.
Ondeo Nalco Co. v. EKA Chemicals, Inc.
Not Reported in F.Supp.2d, 2002 WL 1458853 (D.Del.)

Briefs and Other Related Documents (Back to top)

• 2003 WL 24334377 () Expert Report of Donald R. Uhlmann (Jan. 22, 2003) Original Image of this Document (PDF)
• 2002 WL 33030936 () Expert Report of GERALD H. BJORGE for Plaintiff Ondeo Nalco Regarding Unenforceability of U.S. Pat. No. 5,603,805 (Dec. 23, 2002) Original Image of this Document (PDF)
• 1:01CV00537 (Docket) (Aug. 10, 2001)
• 2001 WL 34922258 () (Partial Testimony) (2001) Original Image of this Document (PDF)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

# EXHIBIT H

*2003 U.S. Dist. LEXIS 21002, \**

**SYMBOL** TECHNOLOGIES, INC., Plaintiff, **v. HAND** HELD PRODUCTS, INC. and HHP-NC, INC., Defendants.

<u>View the Full Docket from LexisNexis CourtLink for 1:03cv102</u>
Civil Action No. 03-102-SLR

UNITED STATES DISTRICT COURT FOR THE DISTRICT OF DELAWARE

2003 U.S. Dist. LEXIS 21002

November 14, 2003, Decided

**DISPOSITION: [\*1]** Motions decided. Claims dismissed. Allegations stricken.

**CASE SUMMARY:**
**PROCEDURAL POSTURE:** Plaintiff patent holder alleged that defendant competitor infringed, induced others to infringe, and/or committed acts of contributory infringement of, one or more claims of each of the patent holder's numerous patents. The patent holder sought a declaratory judgment that the patents were noninfringed, invalid, and unenforceable. The competitor brought numerous motions to dismiss.

**OVERVIEW:** The competitor was acquired by its parent company, which was a direct competitor of the patent holder. Shortly thereafter, the parent company's in-house counsel corresponded with the patent holder's in-house patent counsel indicating that certain parent company patents might "present problems" to one of the patent holder's product lines. Having concluded that the totality of circumstances sufficiently demonstrated a reasonable apprehension of suit, nonetheless, the court held that the patent holder did not establish a reasonable apprehension of suit with respect to each of the named competitor patents. At most, the affidavit and accompanying documents filed to support the complaint suggest that only those patents referenced in the correspondence from the parent company were proper subjects of a declaratory judgment suit. Consequently, the court dismissed those competitor patents which were not the subject of the correspondence. With respect to the remaining patents, the court found that the parent holder engaged in the manufacture and production of products sufficiently similar to competitor's patents.

**OUTCOME:** The competitor's motions were granted in part and dismissed in part.

**CORE TERMS:** patent, motion to dismiss, unenforceability, infringement, subject matter jurisdiction, apprehension, declaratory judgment, particularity, definite, infringe, affirmatively, collectively, invalidity, competitor, correspondence, declaratory, licensing, infringed, motion to strike, valid license, oral argument, finite number, noninfringement, jurisdictional, discovery, totality, license, refine, notice, product line

**LexisNexis(R) Headnotes**

Patent Law > Ownership > Conveyances > Licenses
*HN1* It is established law that a licensee that exceeds the scope of its license may be held liable for patent infringement.

Civil Procedure > Pleading & Practice > Pleadings > Rule Application & Interpretation
Civil Procedure > Discovery > General Overview
*HN2* It is established law that liberal pleading requirements are designed to put the parties on notice generally as to the nature of the cause of action. Particularly in complex litigation, it is through the discovery process that the parties refine and focus their claims.

Civil Procedure > Pleading & Practice > Defenses, Demurrers, & Objections > Defects of Form
Civil Procedure > Judgments > Relief From Judgment > General Overview
HN3⬆ A motion under Fed. R. Civ. P. 12(e) is to correct a pleading that is so vague or ambiguous
that a party cannot reasonably be required to frame a responsive pleading.

Civil Procedure > Declaratory Judgment Actions > Federal Judgments > General Overview
Patent Law > Remedies > Declaratory Relief
HN4⬆ Declaratory judgment pursuant to 28 U.S.C.S. § 2201 requires that there be (1) an explicit
threat or other action by the patentee, which creates a reasonable apprehension on the part
of the declaratory plaintiff that it will face an infringement suit, and (2) present activity
which could constitute infringement or concrete steps taken with the intent to conduct such
activity. In reaching its conclusion, the court must apply a totality of the circumstances
standard.

Civil Procedure > Justiciability > Case or Controversy Requirements > General Overview
HN5⬆ Test for finding a "controversy" for jurisdictional purposes is a pragmatic one and cannot
turn on whether the parties use polite terms in dealing with one another or engage in more
bellicose saber rattling. The question is whether the relationship between the parties can be
considered a "controversy," and that inquiry does not turn on whether the parties have used
particular "magic words" in communicating with one another. Therefore, the absence of an
explicit threat of suit, while a factor, is not dispositive.

Civil Procedure > Pleading & Practice > Pleadings > Heightened Pleading Requirements > Fraud
Claims
Civil Procedure > Dismissals > General Overview
Patent Law > U.S. Patent & Trademark Office Proceedings > Reissues > General Overview
HN6⬆ Fraud is a clear exception to the otherwise broad notice-pleading standards under Fed. R.
Civ. P. 9. A claim of patent unenforceability is premised upon inequitable conduct before the
Patent and Trademark Office (PTO), which is a claim sounding in fraud. A plaintiff alleging
unenforceability, therefore, must plead with particularity those facts which support the claim
the patent holder acted fraudulently before the PTO.

**COUNSEL:** For Symbol Technologies, Inc, PLAINTIFF: Arthur G Connolly, III, Connolly, Bove, Lodge
& Hutz, Wilmington, DE USA.

For Hand Held Products Inc, HHP-NC Inc, DEFENDANTS: Donald F Parsons, Jr, Mary B Graham,
Morris, Nichols, Arsht & Tunnell, Wilmington, DE USA.

**JUDGES:** [*2] Sue L. Robinson, United States District Judge.

**OPINION BY:** Sue L. Robinson

**OPINION: MEMORANDUM ORDER**

**I. INTRODUCTION**

Currently before the court are the following motions by the defendants Hand Held Products, Inc. and
HHP-NC, Inc. (collectively "HHP"): 1) motion to dismiss U.S. Patent No. 5,591,956 of Count II for
lack of subject matter jurisdiction; 2) motion to dismiss U.S. Patent No. 5,130,520 of Count I from
the action because HHP holds a valid license; 3) motion to dismiss plaintiff's infringement and **[*3]**
noninfringement claims from Counts I and II pursuant to Fed. R. Civ. P. 8 and 12(b)(6) for failure to
state a claim; 4) motion to dismiss Count II of the complaint pursuant to Fed. R. Civ. P. 12(b)(1) and
12(b)(6) for lack of subject matter jurisdiction for failure to satisfy the jurisdictional requirements of
28 U.S.C. § 2201; 5) motion to dismiss plaintiff's invalidity and unenforceability claims from Count II
pursuant to Fed. R. Civ. P. 8 and 12(b)(6) for failure to give notice of the bases for claims of
invalidity and unenforceability; 6) motion to strike plaintiff's unenforceability allegations pursuant to
Fed. R. Civ. P. 12(b)(6) for failure to plead fraud with particularity; and 7) motion for a more

definite statement as to Counts I and II. (D.I. 10) For the reasons and to the extent stated below, the court grants in part and denies in part HHP's motions.

## II. BACKGROUND [*4]

Plaintiff Symbol Technologies, Inc. ("Symbol") and HHP are competitors in the hand-held optical scanner industry, each holding patents and manufacturing a variety of products. Symbol is the owner of U.S. Patent Nos. 5,029,183; 5,130,520; 5,157,687; 5,479,441; 5,521,366; 5,646,390; 5,702,059; 5,783,811; 5,818,028; 6,00,612; 6,019,286; and 6,105,871 (collectively, the "Symbol Patents"). HHP is the owner of U.S. Patent Nos. 5,286,960; 5,291,008; 5,391,182; 5,420,409; 5,463,214; 5,569,902; 5,591,956; 5,723,853; 5,723,868; 5,773,806; 5,773,810; 5,780,834; 5,784,102; 5,786,586; 5,793,967; 5,801,918; 5,825,006; 5,831,254; 5,837,985; 5,838,495; 5,900,613; 5,914,476; 5,929,418; 5,932,862; 5,942,741; 5,949,052; 5,949,054; 5,965,863; 6,015,088; 6,060,722; 6,161,760; 6,298,176; 6,491,223; D392,282; D400,199, and D400,872 (collectively the "HHP Patents").

In September 1999, HHP was acquired by Welch Allyn, Inc. ("Welch Allyn"), a direct competitor of Symbol. Later that fall, Welch Allyn announced that it intended to acquire another competitor of Symbol's, PSC, Inc., with whom Symbol was engaged in patent litigation.

On March 13, 2000, Welch Allyn's in-house counsel sent an email to Symbol's [*5] in-house patent counsel indicating that certain Welch Allyn patents might "present problems" to Symbol's Golden Eye product line. (D.I. 19)

On June 6, 2000, Welch Allyn began negotiating with Symbol on behalf of Welch Allyn's newly acquired subsidiary, PSC, Inc. (Id.) Later that month, a meeting was held between Symbol and Welch Allyn to discuss the licensing of certain patents held by HHP relating to the Golden Eye product line. At that meeting, a list of twenty-three (23) patents was presented to Symbol which Welch Allyn viewed as relevant. (Id.)

On June 28, 2000, a second list was provided to Symbol by HHP in response to a request made at the earlier meeting. This second list contained only ten (10) patents, eight of which were previously listed on the first list, and two of which were new additions. The June 28 letter indicated that these patents should be the topic of further licensing discussions between the parties. (Id.)

On November 30, 2000, Symbol acquired Telxon, a Texas company that was at the time engaged in patent-related disputes with Welch Allyn. Previously that year, Welch Allyn had sent a list of patents to Telxon, identical to the first list sent to [*6] Symbol, and suggested that Telxon's products might be infringing. Welch Allyn had also previously raised infringement issues with Metanetics, a Telxon subsidiary. (Id.)

Relations between Symbol and Welch Allyn deteriorated completely when Welch Allyn filed a lawsuit against Symbol in North Carolina regarding a certain contract that they shared to provide products to the United States Postal Service. (Id.)

On January 21, 2003, Symbol filed a two-count complaint alleging that HHP has infringed the Symbol Patents and seeking declaratory judgment that the HHP Patents are not infringed, invalid and/or unenforceable. (D.I. 1)

In Count I of the complaint, Symbol alleges that "HHP infringed and continues to infringe, has induced and continues to induce others to infringe, and/or has committed and continues to commit acts of contributory infringement of, one or more claims of each of the Symbol Patents." (D.I. 1 at 6) In Count II of the complaint, Symbol seeks a declaratory judgment that the HHP Patents are noninfringed, invalid, and unenforceable. (Id.)

## III. DISCUSSION

## A. HHP's Motion to Dismiss U.S. Patent No. 5,591,956

HHP contends that the court is without subject-matter **[*7]** jurisdiction as to U.S. Patent No. 5,591,956 ("'956 patent"). (D.I. 11) At oral arguments before the court on October 28, 2003, HHP's counsel affirmatively stated that the '956 patent is dedicated to the public; therefore, this patent will be dismissed from the complaint.

**B. HHP's Motion to Dismiss U.S. Patent No. 5,130,520**

HHP contends that U.S. Patent No. 5,130,520 ("'520 patent") should be dismissed because it is the subject of a valid license from Symbol. Symbol contends that there is a license for the '520 patent, but that it pertains to a narrow field of use. *HN1*It is established law that a licensee that exceeds the scope of its license may be held liable for infringement. See General Talking Pictures Co., 304 U.S. 175, 82 L. Ed. 1273, 58 S. Ct. 849, 1938 Dec. Comm'r Pat. 831 (1938); Eli Lilly & Co. v. Genetech, Inc., 1990 U.S. Dist. LEXIS 18619, 17 U.S.P.Q.2d 1531, 1534 (S.D. Ind. 1990). Consequently, HHP's motion to dismiss the '520 patent will be denied.

**C. HHP's Motion to Dismiss Infringement and Noninfringement Claims from Count I and II for Failure to State a Claim, Motion to Dismiss Symbol's Claims of Invalidity and Unenforceability, and Motion for a More [*8] Definite Statement**

HHP contends that Symbol's complaint is facially defective under Fed. R. Civ. P. 8(a), as it fails to provide sufficient notice of which of HHP's products infringe claims under the Symbol Patents and which of Symbol's products may infringe HHP Patents. (D.I. 11 at 16) HHP, however, has failed to cite any precedent binding upon this court that requires a complaint to identify the basis of an infringement claim with such particularity. n1 *HN2*It is established law that liberal pleading requirements are designed to put the parties on notice generally as to the nature of the cause of action. Conley v. Gibson, 355 U.S. 41, 47, 2 L. Ed. 2d 80, 78 S. Ct. 99 (1957); Weston v. Pennsylvania, 251 F.3d 420, 429 (3d Cir. 2001). Particularly in complex litigation, it is through the discovery process that the parties refine and focus their claims. At this stage in the litigation, the court declines to dismiss Symbol's claims until adequate discovery has been completed.

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

n1 The court notes that HHP attempts to bootstrap Fed. R. Civ. P. 11 requirements into Rule 8, without actually alleging that Symbol's complaint is frivolous. (D.I. 11 at 9-10) In the absence of an actual motion by HHP to the contrary, the court will assume that Symbol's counsel has complied with their ethical obligations under Fed. R. Civ. P. 11.

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - **[*9]**

In the alternative, HHP moves the court to require Symbol to provide a more definite statement pursuant to Fed. R. Civ. P. 12(e). *HN3*A motion under Rule 12(e) is to correct a pleading that is "so vague or ambiguous that a party cannot reasonably be required to frame a responsive pleading." The purpose, however, of Rule 12(e) is not to make it easier for the moving party to prepare its case. Fed. R. Civ. P. 12 advisory committee's note. In this case, the crux of HHP's motion is that Symbol's complaint is simply too large. There are, however, a finite number of claims and a finite number of infringing products. Consequently, the court finds that traditional mechanisms of discovery are the proper tools to refine the scope of this litigation. HHP's motions in this regard will be denied.

**D. HHP's Motions to Dismiss Count II for Lack of Subject Matter Jurisdiction**

HHP contends that the court is without subject matter jurisdiction as to the HHP Patents, as there is not an actual controversy within the meaning of § 2201. (Id.) See Vectra Fitness, Inc. v. TNWK Corp., 162 F.3d 1379, 1383 (Fed. Cir. 1998). **[*10]**

*HN4*Declaratory judgment pursuant to 28 U.S.C. § 2201 requires that there be "(1) an explicit

threat or other action by the patentee, which creates a reasonable apprehension on the part of the declaratory plaintiff that it will face an infringement suit, and (2) present activity which could constitute infringement or concrete steps taken with the intent to conduct such activity." BP Chemicals Ltd. v. Union Carbide Corp., 4 F.3d 975, 978 (Fed. Cir. 1993). In reaching its conclusion, the court must apply a totality of the circumstances standard. See C.R.Bard, Inc. v. Schwartz, 716 F.2d 874, 880 (Fed. Cir. 1983).

The recent contentious and litigious history between the parties weighs in favor of a finding that Symbol has a reasonable apprehension of suit. In EMC Corp. v. Norand Corp., 89 F.3d 807 (Fed. Cir. 1996), the Federal Circuit stated that the $^{HN5}$ "test for finding a 'controversy' for jurisdictional purposes is a pragmatic one and cannot turn on whether the parties use polite terms in dealing with one another or engage in more bellicose saber rattling." Id. at 811. The Court of Appeals continued [*11] and emphasized that "the question is whether the relationship between the parties can be considered a 'controversy,' and that inquiry does not turn on whether the parties have used particular 'magic words' in communicating with one another." Id. at 812. Therefore, the absence of an explicit threat of suit, while a factor, is not dispositive. See BP Chemicals Ltd. v. Union Carbide Corp., 4 F.3d 975, 979 (Fed. Cir. 1993) ("Declaratory judgment jurisdiction does not require direct threats.").

Further, it is relevant under Federal Circuit precedent that at oral argument HHP did not affirmatively state that it would not bring suit. In C.R. Bard Inc., the Court of Appeals held that a plaintiff had a reasonable apprehension of suit when the defendant in a declaratory judgment declined to affirmatively state at oral arguments that he would not bring a suit for infringement against the plaintiff. n2 716 F.2d at 881.

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

n2 The court is not entirely comfortable with the notion that a plaintiff might bring a declaratory judgment against a defendant for the purpose of forcing an admission of the defendant's intent to enforce its patent rights. The court is also uncomfortable with the notion that a defendant might plead that the plaintiff has no reasonable apprehension of suit, and then file in another forum once the declaratory judgment has been dismissed for want of subject matter jurisdiction. Nonetheless, the Federal Circuit in C.R. Bard made it clear that the failure to deny an intent to sue for infringement is a factor to be considered.

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - [*12]

Having concluded that the totality of circumstances sufficiently demonstrates a reasonable apprehension of suit, nonetheless, Symbol has not established a reasonable apprehension of suit with respect to each of the named HHP Patents. At most, the affidavit and accompanying documents filed to support the complaint suggest that only those patents referenced in the June 28, 2000 correspondence from Welch Allyn are proper subjects of a declaratory judgment suit. n3 Consequently, the court will dismiss without prejudice those HHP Patents which were not the subject of the June 28, 2000 correspondence.

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

n3 Those patents are: U.S. Patent Nos. 5,286,960; 5,900,613; 5,723,868; 5,780,834; 5,784,102; 5,825,006; 5,831,254; 6,060,722; 5,929,418; and 5,965,863.

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - -

With respect to the remaining HHP Patents, the court finds that Symbol satisfies the "present activity" requirement of § 2201. It is sufficient that Symbol engages in the manufacture and production of products sufficiently similar to HHP's patents. See Millipore Corp. v. University Patents,

Inc., 682 F. Supp. 227, 232 (D. Del. 1987). **[*13]** Moreover, the fact that HHP's own correspondence to Symbol suggests that licensing of its patents may be needed is sufficient for the court to conclude that there is "present activity" as required under § 2201.

### E. HHP's Motion to Strike Symbol's Allegations of Unenforceability for Failure to Plead with Particularity

The court will dismiss Symbol's claims for unenforceability without prejudice. *HN6*Fraud is a clear exception to the otherwise broad notice-pleading standards under Fed. R. P. 9. A claim of patent unenforceability is premised upon inequitable conduct before the Patent & Trademark Office ("PTO"), which is a claim sounding in fraud. A plaintiff alleging unenforceability, therefore, must plead with particularity those facts which support the claim the patent holder acted fraudulently before the PTO. As Symbol has failed to adequately plead its bases for unenforceability of the remaining HHP Patents, that portion of Count II will be dismissed without prejudice.

## IV. CONCLUSION

At Wilmington this 14th day of November, 2003, having held oral argument and reviewed HHP's motion to dismiss pursuant to Fed. R. Civ. P. 8(a), 9 **[*14]** , 12(b)(1), 12(b)(6) and 12(f), or in the alternative for a more definite statement pursuant to Rule 12(e) (D.I. 10), and Symbol's response thereto;

IT IS ORDERED that:

1. HHP's motion to dismiss Count II of Symbol's complaint with respect to U.S. Patent No. 5,591,956 is **granted.** (D.I. 10-1)

2. HHP's motion to dismiss U.S. Patent No. 5,130,520 of Count I is **denied.** (D.I. 10-2)

3. HHP's motion to dismiss infringement and noninfringement claims from Counts I and II of the complaint pursuant to Fed. R. Civ. P. 8and 12(b)(6) is **denied.** (D.I. 10-3)

4. HHP's motion to dismiss Count II of the complaint pursuant to Fed. R. Civ P. 12(b)(1)and 12(b)(6) for lack of subject matter jurisdiction is **granted** with respect to U.S. Patent Nos. 5,291,008; 5,391,182; 5,420,409; 5,463,214; 5,697,902; 5,723,853; 5,773,806; 5,773,810; 5,786,586; 5,793,967; 5,801,918; **[*15]** 5,837,985; 5,838,495; 5,914,476; 5,932,862; 5,942,741; 5,949,052; 5,949,054; 6,015,088; 6,161,760; 6,298,176; 6,491,223; D392,282; D400,199; and D400,872, and is **denied** with respect to U.S. Patent Nos. 5,286,960; 5,900,613; 5,723,868; 5,780,834; 5,784,102; 5,825,006; 5,831,254; 6,060,722; 5,929,418; and 5,965,863. (D.I. 10-4)

5. HHP's motion pursuant to Fed. R. Civ. P. 8and 12(b)(6) to dismiss Symbol's invalidity and unenforceability claims from Count II is **denied.** (D.I. 10-5)

6. HHP's motion to strike Symbol's allegations of unenforceability pursuant to Fed. R. Civ. P. 12(b)(6)or 12(f) is **granted.** (D.I. 10-6)

7. HHP's motion for a more definite statement is **denied.** (D.I. 10-7)

Sue L. Robinson

United States **[*16]** District Judge

Source: Legal > / . . . / > Federal & State Cases, Combined 🔲
Terms: name(symbol and hand) (Edit Search | Suggest Terms for My Search)
View: Full
Date/Time: Tuesday, January 9, 2007 - 5:52 PM EST

* Signal Legend:

- Warning: Negative treatment is indicated
- Questioned: Validity questioned by citing refs
- Caution: Possible negative treatment
- Positive treatment is indicated
- Citing Refs. With Analysis Available
- Citation information available

\* Click on any *Shepard's* signal to *Shepardize*® that case.



About LexisNexis | Terms & Conditions
Copyright © 2007 LexisNexis, a division of Reed Elsevier Inc. All rights reserved.

# EXHIBIT I

*2005 U.S. Dist. LEXIS 7167, \**

In Re RIVASTIGMINE PATENT LITIGATION (MDL No. 1661),

(05 MD 1661) (HB) (JCF)

UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF NEW YORK

2005 U.S. Dist. LEXIS 7167

April 25, 2005, Decided
April 25, 2005, Filed

**SUBSEQUENT HISTORY:** Motion granted by, Motion denied by In re Rivastigmine Patent Litig., 2005 U.S. Dist. LEXIS 20851 (S.D.N.Y., Sept. 22, 2005)

**DISPOSITION: [\*1]** Novartis' motion to amend granted.

**CASE SUMMARY:**

**PROCEDURAL POSTURE:** Plaintiffs, a group of pharmaceutical companies, sought to amend their complaints in consolidated patent cases to include claims for induced infringement under 35 U.S.C.S. § 271(e)(2). Defendant pharmaceutical companies argued that the motion to amend should be denied because the proposed amendments were futile.

**OVERVIEW:** Defendant pharmaceutical companies (DPCs) filed abbreviated new drug applications (ANDAs) to piggyback on the safety and effectiveness information that the plaintiff pharmaceutical companies (PPCs) submitted in their new drug application (NDA) for a drug that treated dementia associated with Alzheimer's disease. The PPCs sued the DPCs, and sought to amend the complaints to allege induced patent infringement under 35 U.S.C.S. § 271(e)(2). The PPCs initially based their infringement actions only on the filing of the ANDAs, which was not sufficient, given that they were still required to prove infringement under a traditional patent infringement analysis. Therefore, the PPCs moved to amend their complaints to add language that included patent infringement elements. The DPCs argued that the amendments were futile because they were speculative and did not set out specific intent. However, the court found that the fact that the amendments referred to what the DPCs might do in the future was not fatal given that the drugs had not been marketed yet. Also, under the notice pleading standard, the PPCs were not required to plead particular specific acts of inducement.

**OUTCOME:** The court granted the motion to amend.

**CORE TERMS:** patent, infringement, induced, patent infringement, manufacturer, amend, certification, induce, specific intent, motion to amend, new drug, pharmaceutical, collectively, manufacture, speculative, submitting, piggyback, futility, futile, affirmative conduct, required to state, deny permission, third parties, patent law, rivastigmine, expiration, inducement, infringed, infringer, dementia

## LexisNexis(R) Headnotes

Patent Law > Infringement Actions > Defenses > Experimental Use & Testing
Patent Law > Infringement Actions > Infringing Acts > Contributory, Indirect & Induced Infringement
*HN1* See 35 U.S.C.S. § 271(e)(2).

Civil Procedure > Justiciability > Case or Controversy Requirements > General Overview
Patent Law > Infringement Actions > Defenses > Experimental Use & Testing
Patent Law > Infringement Actions > Infringing Acts > Contributory, Indirect & Induced

Infringement
HN2⬇ 35 U.S.C.S. § 271(e)(2) merely creates an act of infringement for the purpose of forestalling the argument that no case or controversy yet exists. A plaintiff claiming induced infringement under § 271(e)(2) must still prove infringement under a traditional patent infringement analysis.

Civil Procedure > Pleading & Practice > Pleadings > Amended Pleadings > Leave of Court
HN3⬇ A motion to amend is governed by Fed. R. Civ. P. 15(a), which states that leave to amend shall be freely given when justice so requires. Notwithstanding the liberality of the general rule, it is within the sound discretion of the court whether to grant leave to amend, and for the proper reasons, a court may deny permission to amend in whole or in part.

Civil Procedure > Pleading & Practice > Pleadings > Amended Pleadings > General Overview
HN4⬇ Among the reasons for which a court may deny permission to amend a complaint is the futility of amendment. A motion to amend may be denied as futile if the amendment could not withstand a motion to dismiss.

Civil Procedure > Pleading & Practice > Pleadings > Amended Pleadings > General Overview
Patent Law > Jurisdiction & Review > Subject Matter Jurisdiction > Appeals
HN5⬇ Although the law of the U.S. Court of Appeals for the Federal Circuit governs questions of patent law, the law of the regional circuit applies to procedural questions that are not specific to patent law, such as motions to amend.

Civil Procedure > Justiciability > Case or Controversy Requirements > General Overview
Patent Law > Infringement Actions > Infringing Acts > Contributory, Indirect & Induced Infringement
HN6⬇ A claim under 35 U.S.C.S. § 271(e)(2) is, by its very nature, speculative to a certain degree. Indeed, in comparing actions brought under § 271(e)(2) and traditional infringement claims brought under § 271(a), the only difference is that the allegedly infringing drug has not yet been marketed and therefore the question of infringement must focus on what the abbreviated new drug application applicant will likely market if its application is approved, an act that has not yet occurred. Thus, while a § 271(e)(2) induced infringement claim may be speculative, it is not sufficiently so to contravene the case or controversy requirement.

Patent Law > Infringement Actions > Burdens of Proof
Patent Law > Infringement Actions > Infringing Acts > Contributory, Indirect & Induced Infringement
Patent Law > Infringement Actions > Infringing Acts > Intent & Knowledge
HN7⬇ In order to succeed on an induced infringement claim under 35 U.S.C.S. § 271(e)(2), a plaintiff must prove infringement under a traditional patent infringement analysis. Such an analysis requires proof that if the abbreviated new drug application is approved, the accused infringer will induce a third party to directly infringe the asserted patent and that the accused infringer knows or should know that his actions will induce infringement.

Civil Procedure > Pleading & Practice > Pleadings > Complaints > Requirements
Patent Law > Infringement Actions > Infringing Acts > Contributory, Indirect & Induced Infringement
Patent Law > Infringement Actions > Infringing Acts > Intent & Knowledge
HN8⬇ Specific intent in the induced infringement context requires that a defendant intend specifically to encourage another's infringement, as opposed to merely knowing of the acts alleged to constitute inducement. And, under the notice pleading standard provided in Fed. R. Civ. P. 8, plaintiffs are not required to plead with particularity specific acts of inducement or encouragement of third parties.

**COUNSEL:** For Novartis Pharmaceuticals Corporation, Novartis AG, Novartis Pharma AG, Novartis International Pharmaceutical Ltd., Plaintiffs: Christopher Michael Welling, David C. Van Dyke,

Cassiday, Schade & Gloor, Chicago, IL; David M Conca, Gregory B. Sephton, Nicholas Nicholas Kallas, Robert Louis Baechtold, Diego Scambia, Fitzpatrick, Cella, Harper & Scinto, New York, NY; Edward Anthony Kmett, Jr., Michael K. O'Neill, Fitzpatrick, Cella, Harper & Scinto, Costa Mesa, CA.

For Proterra AG, Plaintiff: David M Conca, Gregory B. Sephton, Nicholas Nicholas Kallas, Robert Louis Baechtold, Fitzpatrick, Cella, Harper & Scinto, New York, NY.

For Dr. Reddy's Laboratories, Ltd., Dr. Reddy's Laboratories, Inc., Defendants: Maurice Newmark Ross, Budd Larner P.C., NY, NY.

For Sun Pharmaceutical Industries Ltd., Defendant: David J. Doyle, Derek John Sarafa, James Francis Hurst, Winston & Strawn, LLP, Chicago, IL; Kristen G. Cowan, Winston & Strawn, Chicago, IL.

For Watson Pharmaceuticals Inc., Watson Laboratories Inc., Defendants: Leonard J. Santisi, Frommer Lawrence & Haug, San Diego, CA.

**JUDGES:** JAMES C. FRANCIS IV, UNITED STATES MAGISTRATE JUDGE.

**OPINION BY:** JAMES C. FRANCIS IV

**OPINION:** MEMORANDUM AND ORDER

JAMES C. FRANCIS IV
UNITED STATES MAGISTRATE JUDGE

Plaintiffs Novartis Pharmaceuticals Corporation, Novartis AG, Novartis Pharma AG, Novartis International Pharmaceutical Ltd. and Proterra AG (collectively "Novartis"), seek to amend their complaints in these consolidated patent cases to include claims for induced infringement under 35 U.S.C. § 271(e)(2). Defendants, Dr. Reddy's Laboratories, Ltd. and Dr. Reddy's Laboratory, Inc. (collectively "Reddy"), Watson Pharmaceuticals Inc. and Watson Laboratories, Inc. (collectively "Watson"), and Sun Pharmaceutical Ltd. ("Sun"), argue that plaintiffs' motion should be denied because the proposed amendments are futile. For the reasons set forth below, Novartis' motion is granted.

Background

A. The Regulatory Framework

Pursuant to the Food, Drug, and Cosmetic Act, 21 U.S.C. § 301-99 (the "FDCA"), a pharmaceutical manufacturer seeking to market a new drug must first obtain approval from the Food and Drug Administration (the "FDA") by submitting a new drug application ("NDA"). Purepac Pharm. Co. v. TorPharm, Inc., 354 F.3d 877, 879, 359 U.S. App. D.C. 319 (Fed. Cir. 2004); **[*3]** Allergan, Inc. v. Alcon Laboratories, Inc., 324 F.3d 1322, 1325 (Fed. Cir. 2003). If an NDA is approved, the FDA grants the manufacturer a five-year period of exclusive marketing for the drug. Allergan, 324 F.3d at 1325. The application must contain, among other things, the results of extensive testing, information regarding the drug's safety and effectiveness, and information about patents that cover the drug. 21 U.S.C. § 355(b)(1); Purepac, 354 F.3d at 879. The FDA publishes the patent information, which must be updated by the NDA owner, in a publication known generally as the "Orange Book." Allergan, 324 F.3d at 1325-26. "Method-of-use patents," that is, patents that cover a drug's specific uses, may be included in the Orange Book only if the covered uses have been approved by the FDA. Purepac, 354 F.3d at 880 (citing 21 C.F.R. § 314.53(b)).

With the goal of expediting access by generic drug manufacturers to the pharmaceutical market, Congress passed the "Hatch Waxman" amendments to the FDCA in 1984. See The Drug Price Competition and Patent **[*4]** Restoration Act of 1984, Pub. L. No. 98-417, 98 Stat. 1585 (1984) (codified in scattered sections of titles 21, 35, and 42 of the United States Code); Purepac, 354 F.3d at 879. The amendments allow manufacturers seeking approval to market a generic version of an FDA-approved drug to file Abbreviated New Drug Applications ("ANDAs") which "piggyback on the

safety-and-effectiveness information that the brand-name manufacturers submitted in their NDAs." Id. Like NDA applicants, ANDA applicants must address patents that cover, or ostensibly cover, the drug for which they are seeking approval. Id. One way in which they may do this is by submitting a statement that the patents which purport to cover the drug are "invalid or will not be infringed by the manufacture, use, or sale of the new drug" (a "paragraph IV certification"). 21 U.S.C. § 355(j)(2)(A)(vii)(IV). Upon submitting a paragraph IV certification, an ANDA applicant must notify the patent holder, as well as the company that filed the NDA on which the ANDA "piggybacks." Purepac, 354 F.3d at 879. The patent holder then has 45 days in which to file a patent-infringement **[*5]** suit. Id.

B. The Infringed Patents

This case arises out of efforts by the defendants, Reddy, Watson, and Sun to market rivastigmine tartrate, which is sold by Novartis under the brand name Exelon. On April 21, 2000, the FDA approved Exelon for "the treatment of mild to moderate dementia of the Alzheimer's type". (Amended Complaint for Patent Infringement against Reddy ("Am. Compl."), attached as Exh. A to Declaration of Simon A. Fitzpatrick dated Jan. 12, 2004 ("Fitzpatrick Decl."), P26; Exelon Product Label, attached as Exh. 5 to Declaration of Lars P. R. Taavola dated Jan. 26, 2005 ("Taavola Decl."), at 9). Novartis subsequently submitted two patents purporting to cover Exelon for publication in the Orange Book, U.S. Patent Nos. 4,948,807 ("the '807 patent") and 5,602,176 ("the '176 patent"). (Taavola Decl., Exhs. 6 & 7). Each patent contains several claims, only two of which are at issue here: claim 4 of the '807 patent and claim 5 of the '176 patent. (Plaintiffs' Memorandum in Support of their Motion to Amend the Complaints ("Pl. Memo.") at 3). Both claims address methods of using certain compounds to treat various medical conditions including Alzheimer's disease. (Pl. **[*6]** Memo. at 3; Taavola Decl., Exh. 6 at 14 & Exh. 7 at 4-5).

As stated in the complaints, the defendants here have filed ANDAs, which attempt to "piggyback" on the plaintiffs' NDA for Exelon. (Defendants' Joint Memorandum in Opposition to Plaintiffs' Motion to Amend the Complaints ("Def. Memo.") at 6). Reddy and Watson have submitted a paragraph IV certification stating that "the '807 and '176 patents are invalid, unenforceable or will not be infringed." (Am. Compl., P27; Answer and Counterclaim of Dr. Reddy's Laboratories, Ltd. and Dr. Reddy's Laboratories, Inc., attached as Exh. 3 to Taavola Decl., P27; Amended Complaint for Patent Infringement against Watson, attached as Exh. B to Fitzpatrick Decl., P27). Sun has submitted the same certification pertaining only to the '176 patent. (Amended Complaint for Patent Infringement against Sun, attached as Exh. C to Fitzpatrick Decl., P19).

Novartis subsequently filed a declaratory judgment action against Reddy, Watson, and Sun. The initial complaints against each defendant alleged infringement based only on the filing of the ANDAs "for the purpose of obtaining approval to engage in the commercial manufacture, use, or sale" of rivastigmine **[*7]** tartrate capsules before the expiration of the '807 and/or '176 patents. (Am. Compl., PP23-24). 35 U.S.C. § 271(e)(2) provides that:

> *HN1*⚓It shall be an act of infringement to submit-(A) an [ANDA] . . . for a drug claimed in a patent or the use of which is claimed in a patent, . . . if the purpose of such submission is to obtain approval under [Title 21 of the United States Code] to engage in the commercial manufacture, use, or sale of a drug . . . claimed in a patent or the use of which is claimed in a patent before the expiration of such patent.

The plaintiffs are not the first parties to argue that this language creates a cause of action for infringement based solely on the filing of an ANDA. See Warner-Lambert Co. v. Apotex Corp., 316 F.3d 1348, 1355 (Fed. Cir. 2003); Allergan, Inc. v. Alcon Laboratories, Inc., 200 F. Supp. 2d 1219, 1227 (C.D. Cal. 2002). Nevertheless, the Federal Circuit has soundly rejected this argument, holding that *HN2*⚓section 271(e)(2) merely creates "an act of infringement" for the purpose of forestalling

the argument that no case or controversy yet exists. A plaintiff claiming induced infringement **[*8]** under section 271(e)(2) must still prove infringement under a traditional patent infringement analysis. Allergan, 324 F.3d at 1330-32; Warner-Lambert, 316 F.3d at 1365-66. Accordingly, Novartis now proposes to supplement its claims for induced infringement under section 271(e)(2) by adding the following paragraph:

> On information and belief, [defendant's] Rivastigmine Tartrate Products if approved, will be administered to human patients in a therapeutically effective amount for treatment of mild to moderate dementia of the Alzheimer's type, which administration constitutes direct infringement of the [relevant] patents. On information and belief, this will occur at [defendant's] active behest and with its intent, knowledge and encouragement. On information and belief, [defendant] will actively induce, encourage, aid and abet this administration with knowledge that it is in contravention of Plaintiff's right under the [relevant] patents.

(Am. Compl., P26).

Discussion

*HN3*⚡A motion to amend is governed by Rule 15(a) of the Federal Rules of Civil Procedure, which states that leave to **[*9]** amend "shall be freely given when justice so requires." Fed. R. Civ. P. 15 (a); see Oneida Indian Nation of New York v. City of Sherrill, New York, 337 F.3d 139, 168 (2d Cir. 2003), rev'd on other grounds,   U.S.   , 161 L. Ed. 2d 386, 125 S. Ct. 1478 (2005). Notwithstanding the liberality of the general rule, "it is within the sound discretion of the court whether to grant leave to amend," John Hancock Mutual Life Insurance Co. v. Amerford International Corp., 22 F.3d 458, 462 (2d Cir. 1994) (citation omitted), and for the proper reasons, a court may deny permission to amend in whole or in part. See Krumme v. Westpoint Stevens Inc., 143 F.3d 71, 88 (2d Cir. 1998).

*HN4*⚡Among the reasons for which a court may deny permission to amend is the "futility of amendment." Foman v. Davis, 371 U.S. 178, 182, 9 L. Ed. 2d 222, 83 S. Ct. 227 (1962). A motion to amend may be denied as futile if the amendment could not withstand a motion to dismiss. See Milanese v. Rust-Oleum Corp., 244 F.3d 104, 110 (2d Cir. 2001); Smith v. CPC International, Inc., 104 F. Supp. 2d 272, 274 (S.D.N.Y. 2000). **[*10]** n1 *HN5*⚡Although the law of the Federal Circuit governs questions of patent law, the law of the regional circuit applies to procedural questions that are not specific to patent law. See Madey v. Duke University, 307 F.3d 1351, 1358 (Fed. Cir. 2002). Thus, Second Circuit law governs the legal standards for pleading under Rule 8(a) of the Federal Rules of Civil Procedure and for dismissal under Rules 12(b)(1) and 12(b)(6).

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

n1 Because only the futility of the amendment is at issue, I will not address the defendants' arguments to the extent they encompass assertions in the initial complaint. For example, the defendants contend that the plaintiffs' amendments should be denied because the plaintiffs have not pleaded that the use indicated in patents '807 and '176 is an FDA approved use. (Def. Memo. at 17-19). Since the plaintiffs' assertions regarding the uses indicated in the relevant patents and approved by the FDA are contained in the initial complaint, their sufficiency is not at issue here. (Complaint for Patent Infringement against Reddy, PP16, 19, 22).

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - **[*11]**

The defendants argue that Novartis' proposed amendments are futile because they are speculative and because they fail to set out the "specific intent" and affirmative conduct required to state a claim for induced infringement under 35 U.S.C. § 271(e)(2). (Def. Memo. at 20-21). I will address

each of these contentions in turn.

First, it is not fatal to the plaintiffs' motion that the proposed amendments pertain to "what [the] defendants may do in the future." (Def. Memo. at 20). *HN6*"A claim under 35 U.S.C. § 271(e)(2) is, by its very nature, speculative to a certain degree[.]" Allergan, 324 F.3d at 1331. Indeed, in comparing actions brought under section 271(e)(2) and traditional infringement claims brought under section 271(a), the Federal Circuit has stated that "the only difference . . . is that the allegedly infringing drug has not yet been marketed and therefore the question of infringement must focus on what the ANDA applicant will likely market if its application is approved, an act that has not yet occurred." Glaxo, Inc. v. Novopharm, Ltd., 110 F.3d 1562, 1569 (Fed. Cir. 1997). Thus, "while a **[\*12]** section 271(e)(2) induced infringement claim may be speculative, it is not sufficiently so to contravene the case or controversy requirement." Allergan, 324 F.3d at 1331-32.

Second, contrary to the defendants' assertions, the proposed amendments adequately set out the intent and conduct required to state a claim for induced infringement under 35 U.S.C. § 271(e)(2). As noted above, *HN7*in order to succeed on an induced infringement claim under section 271(e)(2), a plaintiff must prove infringement under a traditional patent infringement analysis. Such an analysis requires proof that "if the ANDA is approved, the accused infringer will induce a third party to directly infringe the asserted patent and that the accused infringer knows or should know that his actions will induce infringement." Allergan, 324 F.3d at 1336 (citing Manville Sales Corp. v. Paramount Systems, Inc., 917 F.2d 544, 553 (Fed. Cir. 1990)). The amendments proposed here address each of these elements; the plaintiffs allege that third parties will directly infringe the '807 and '176 patents at the "active behest" and with the intent of defendants. **[\*13]** The defendants assert that the plaintiffs must establish "specific intent" and allege "affirmative conduct" such as funding clinical studies or employing a sales force. (Def. Memo. at 12). However, *HN8*"specific intent" in the induced infringement context requires that a defendant intend specifically to encourage another's infringement, as opposed to merely knowing "of the acts alleged to constitute inducement." Manville Sales, 917 F.2d at 553. And, under the notice pleading standard provided in Rule 8 of the Federal Rules of Civil Procedures, the plaintiffs are not, at this stage in the litigation, required to plead with particularity specific acts of inducement or encouragement of third parties. See Takeda Chemical Industries, Ltd. v. Watson Pharmaceuticals, Inc., 329 F. Supp. 2d 394, 401 (S.D.N.Y. 2004) (holding that plaintiff stated traditional claim for induced infringement where it alleged existence of patent and claimed that defendant "[had] taken and [would] take acts to induce infringement of those patents"). Thus, the proposed amendments are not barred on the grounds of futility.

Conclusion **[\*14]**

For the reasons set forth above, Novartis' motion to amend is granted.

SO ORDERED.

JAMES C. FRANCIS IV

UNITED STATES MAGISTRATE JUDGE

Dated: New York, New York

April 25, 2005

Service: **Get by LEXSEE®**
Citation: **2005 US Dist Lexis 7167**
View: Full
Date/Time: Wednesday, January 10, 2007 - 2:32 PM EST

\* Signal Legend:
- Warning: Negative treatment is indicated
- Questioned: Validity questioned by citing refs

⚠ - Caution: Possible negative treatment
◆ - Positive treatment is indicated
Ⓐ - Citing Refs. With Analysis Available
ⓘ - Citation information available
* Click on any *Shepard's* signal to *Shepardize®* that case.



About LexisNexis  |  Terms & Conditions
Copyright © 2007 LexisNexis, a division of Reed Elsevier Inc. All rights reserved.

# EXHIBIT J

*2004 U.S. Dist. LEXIS 20723, **

**AGILENT** TECHNOLOGIES, INC., Plaintiff, v. MICROMUSE, INC., Defendant.

04 Civ. 3090 (RWS)

UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF NEW YORK

2004 U.S. Dist. LEXIS 20723

October 19, 2004, Decided
October 19, 2004, Filed

**DISPOSITION:** Micromuse's motion to dismiss the complaint was denied and its motion for a more definite statement was granted.

**CASE SUMMARY:**

**PROCEDURAL POSTURE:** Plaintiff, a communications technology provider, brought a patent infringement action against defendant, an alleged infringer, regarding its patents for a particular internet service and a network service. The alleged infringer moved to dismiss under Fed. R. Civ. P. 12(b)(6), moved for a more definite statement, moved to add a necessary party, and moved to disqualify the provider's counsel. The provider cross-moved for a supplemental declaration.

**OVERVIEW:** The alleged infringer claimed that the provider's complaint failed to specify or identify any allegedly infringing product. The court held that dismissal under Fed. R. Civ. P. 12(b)(6) for failure to state a claim was not appropriate because the provider's complaint complied with Fed. R. Civ. P. 8(a)(2) by establishing jurisdiction, by setting forth the ownership of the patents, and by alleging patent infringement by the alleged infringer. The court then held that the alleged infringer was entitled to a more definite statement under Fed. R. Civ. P. 12(e) setting forth which of its products or services were alleged to have infringed the provider's patents due to the general allegations in the provider's complaint. The court further held that the co-owner of the provider's patents was not required to be joined as a necessary party under Fed. R. Civ. P. 19 (a) because, pursuant to an agreement between the provider and the co-owner, the co-owner had no independent capacity to file a patent infringement action against the alleged infringer regarding the patents at issue. The court finally held that the alleged infringer was not entitled to disqualification of the provider's counsel.

**OUTCOME:** The alleged infringer's motion to dismiss was denied, and its motions to add a necessary party and to disqualify the provider's counsel were denied with leave to renew. The alleged infringer's motion for a more definite statement was granted. The provider's motion to file a supplemental declaration was granted.

**CORE TERMS:** patent, infringement, co-owner, patent infringement, definite, disqualification, infringing, necessary party, licensee, prior representation, motion to dismiss, infringed, joinder, lawsuit, vague, join, software, supplemental declaration, exclusive right, supplemental, disqualify, discovery, entity, joined, infringe, responsive pleading, opposing party, subject matter, contributory, ambiguous

**LexisNexis(R) Headnotes**

Civil Procedure > Pleading & Practice > Defenses, Demurrers, & Objections > Failures to State Claims

*HN1* In considering a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), the court should construe the complaint liberally, accepting all factual allegations in the complaint as true, and drawing all reasonable inferences in the plaintiff's favor, although mere conclusions of law or unwarranted deductions need not be accepted. The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the

claims. In other words, the office of a motion to dismiss is merely to assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof. Dismissal is only appropriate when it appears beyond doubt that the plaintiff can prove no set of facts which would entitle him or her to relief.

Civil Procedure > Pleading & Practice > Pleadings > Complaints > Requirements
Civil Procedure > Pleading & Practice > Pleadings > Rule Application & Interpretation
*HN2* The indulgent standard for a filing a complaint is codified in Fed. R. Civ. P. 8, which requires no more than a short and plain statement of a claim showing that the pleader is entitled to relief. Fed. R. Civ. P. 8(a)(2). The United States Supreme Court has interpreted Fed. R. Civ. P. 8 not to require a claimant to set out in detail the facts upon which he bases his claim. Indeed, the Federal Rules of Civil Procedure require (with irrelevant exceptions) only that the complaint state a claim, not that it plead the facts that if true would establish (subject to any defenses) that the claim was valid. All that need be specified is the bare minimum facts necessary to put the defendant on notice of the claim so that he can file an answer.

Civil Procedure > Pleading & Practice > Pleadings > Complaints > Requirements
Civil Procedure > Pleading & Practice > Pleadings > Rule Application & Interpretation
Civil Procedure > Dismissals > General Overview
*HN3* Whether a complaint satisfies Fed. R. Civ. P. 8(a)(2) is determined by whether the pleading provides fair notice to the opposing party. Accordingly, dismissal for failure to comply with the requirements of Fed. R. Civ. P. 8 is usually reserved for those cases in which the true complaint is so confused, ambiguous, vague, or otherwise unintelligible that its true substance, if any, is well disguised.

Civil Procedure > Pleading & Practice > Defenses, Demurrers, & Objections > Defects of Form
*HN4* Where a pleading is sufficient to provide notice of the claim but does not contain sufficient information to allow a responsive pleading to be framed without risk of prejudice, the proper remedy is a motion for a more definite statement under Fed. R. Civ. P. 12(e).

Civil Procedure > Pleading & Practice > Defenses, Demurrers, & Objections > Defects of Form
Civil Procedure > Pleading & Practice > Pleadings > Answers
*HN5* See Fed. R. Civ. P. 12(e).

Civil Procedure > Pleading & Practice > Defenses, Demurrers, & Objections > Defects of Form
Civil Procedure > Pleading & Practice > Defenses, Demurrers, & Objections > Denials
*HN6* Fed. R. Civ. P. 12(e) applies only in limited circumstances: the pleading must be sufficiently intelligible for the district court to be able to make out one or more potentially viable legal theories on which the claimant might proceed; in other words the pleading must be sufficient to survive a Fed. R. Civ. P. 12(b)(6) motion to dismiss. At the same time, the pleading also must be so vague or ambiguous that the opposing party cannot respond to it, even with a simple denial as permitted by Fed. R. Civ. P. 8(b), with a pleading that can be interposed in good faith or without prejudice to himself.

Civil Procedure > Pleading & Practice > Defenses, Demurrers, & Objections > Defects of Form
Patent Law > Inequitable Conduct > General Overview
Patent Law > Infringement Actions > Burdens of Proof
*HN7* Although motions pursuant to Fed. R. Civ. P. 12(e) are generally disfavored where prompt resort to discovery may provide an adequate means for ascertaining relevant facts, courts have considered Fed. R. Civ. P. 12(e) relief appropriate in patent infringement cases where a plaintiff has failed to identify any allegedly infringing product or products. A pleading need not identify every infringing product where some other limiting parameter has been set forth or at least one purportedly infringing product has been identified.

Civil Procedure > Pleading & Practice > Defenses, Demurrers, & Objections > Defects of Form
Civil Procedure > Pleading & Practice > Pleadings > General Overview
*HN8* Where a motion made under Fed. R. Civ. P. 12(e) has been granted, the order of the court to provide a more definite statement must be obeyed within ten days after notice of the

order or within such other time as the court may fix. Fed. R. Civ. P. 12(e).

Civil Procedure > Pleading & Practice > Defenses, Demurrers, & Objections > Motions to Dismiss
Civil Procedure > Parties > Joinder > Indispensable Parties
Civil Procedure > Parties > Joinder > Necessary Parties
*HN9* Fed. R. Civ. P. 19 sets forth a two-step test for determining whether the court must dismiss an action for failure to join an indispensable party. First, the court must determine whether an absent party belongs in the suit, i.e., whether the party qualifies as a necessary party under Fed. R. Civ. P. 19(a).

Civil Procedure > Jurisdiction > General Overview
Civil Procedure > Pleading & Practice > Service of Process > General Overview
Civil Procedure > Parties > Joinder > Necessary Parties
*HN10* See Fed. R. Civ. P. 19(a).

Civil Procedure > Parties > Joinder > Necessary Parties
*HN11* If a party is deemed necessary, it then must be determined whether the party's absence warrants dismissal pursuant to Fed. R. Civ. P. 19(b). If a party does not qualify as necessary under Fed. R. Civ. P. 19(a), then the court need not decide whether its absence warrants dismissal under Fed. R. Civ. P. 19(b).

Civil Procedure > Parties > Joinder > Necessary Parties
Copyright Law > Civil Infringement Actions > Standing > Copyright Act of 1976
Patent Law > Ownership > Conveyances > Equitable Assignments & Joint Ownership
*HN12* As a general matter, United States patent law requires that all co-owners normally must join as plaintiffs in an infringement suit. Since all co-owners have standing to sue for infringement, if all the co-owners are not joined in an infringement suit, there may be a risk that the defendant will be subject to multiple suits. Since the introduction of Fed. R. Civ. P. 19 and its 1966 amendments, however, courts are less concerned with abstract characterizations of the parties and more concerned with whether the rights of the parties can be fairly adjudicated absent joinder of the patent co-owner. Thus, where the co-owner of a patent or other entity or individual whose interest in a patent might be directly affected by litigation has specifically disclaimed all interest in pursuing litigation related to the patent in favor of the party who has brought the suit, courts have held that joinder of the co-owner or other entity or individual is not necessary.

Patent Law > Ownership > Conveyances > Equitable Assignments & Joint Ownership
Patent Law > Ownership > Conveyances > Licenses
Real Property Law > Estates > Future Interests > Reverter & Reversions
*HN13* A licensor is a necessary party to a patent infringement action despite the existence of an agreement with a plaintiff licensee granting the licensee sole and exclusive rights to sue for infringement where the agreement is of fixed term and where the licensor retains a reversionary interest in the patent.

Civil Procedure > Pleading & Practice > Pleadings > Amended Pleadings > Leave of Court
Civil Procedure > Pleading & Practice > Pleadings > Supplemental Pleadings
*HN14* Although submission of supplemental papers is often more of a hindrance than a help, where the issues addressed in the supplemental papers presented are carefully cabined and respond to arguably new contentions contained in reply papers on the underlying motion, and where the opposing party has disclaimed any prejudice resulting from the submission of the supplemental papers, there is no evidence of bad faith by the party seeking to submit the supplemental papers, and the parties will be best served by the court's deciding the issue presented to it on the most complete factual basis possible, leave to submit supplemental papers is appropriately granted.

Civil Procedure > Counsel > General Overview
Criminal Law & Procedure > Counsel > Right to Counsel > General Overview
Legal Ethics > Client Relations > Appearance of Impropriety

HN15⭐ Motions to disqualify counsel have long been disfavored in the United States Court of Appeals for the Second Circuit. Disqualification motions are often made for tactical reasons, and thereby unduly interfere with a party's right to employ counsel of his choice. Moreover, disqualification motions, even when made in the best of faith inevitably cause delay. A high standard of proof is therefore required from one who moves to disqualify counsel. The appearance of impropriety alone does not warrant disqualification.

Civil Procedure > Counsel > General Overview
Legal Ethics > Client Relations > Appearance of Impropriety
HN16⭐ In determining whether an attorney can oppose his former client, courts evaluate whether the new matter is substantially related to the subject matter of the prior representation. An attorney may be disqualified from representing a client in a particular case if: (1) the moving party is a former client of the adverse party's counsel; (2) there is a substantial relationship between the subject matter of the counsel's prior representation of the moving party and the issues in the present lawsuit; and (3) the attorney whose disqualification is sought had access to, or was likely to have had access to, relevant privileged information in the course of his prior representation of the client. Under this standard, proof of substantial similarity must be patently clear to warrant disqualification. A substantial relationship exists where facts pertinent to the problems underlying the prior representation are relevant to the subsequent representation.

Civil Procedure > Counsel > General Overview
HN17⭐ A party is entitled to seek an opposing party's counsel's disqualification based on the counsel's prior representation of the party's wholly owned subsidiary. A plaintiff's law firm will be deemed to have previously represented a defendant where the plaintiff's law firm has previously represented the defendant corporation's subsidiary and the defendant corporation has taken in active role with regard to the law firm's representation of its subsidiary.

Labor & Employment Law > Employment Relationships > Employment Contracts > Conditions & Terms > Trade Secrets & Unfair Competition > Employee Inventions
Patent Law > Infringement Actions > General Overview
Patent Law > U.S. Patent & Trademark Office Proceedings > Continuation Applications > General Overview
HN18⭐ For purposes of the disqualification of counsel, prior general business representation by a plaintiff's law firm of an entity related to a defendant on matters unrelated to the lawsuit at issue does not meet the high burden of establishing a conflict.

**COUNSEL:** [*1] Attorneys for Plaintiff: CHRISTIAN & BARTON, Richmond, VA. By : MICHAEL W. SMITH, ESQ. CRAIG T. MERRITT, ESQ. R. BRAXTON HILL, ESQ. Of Counsel. GRAY CARY WARE & FREIDENRICH, San Diego, CA. By: EDWARD H. SIKORSKI, ESQ. JOHN ALLCOCK, ESQ. SEAN C. CUNNINGHAM, ESQ. MEGAN WHYMAN OLESEK, ESQ.

Attorneys for Defendant: BROWN RAYSMAN MILLSTEIN FELDER & STEINER, New York, NY. By: SETH OSTROW, ESQ. JEFFREY P. WEINGART, ESQ. ERIC C. OSTERBERG, ESQ. Of Counsel. WILLCOX & SAVAGE, Norfolk, VA. By: MICHAEL R. KATCHMARK, ESQ. GARY A. BRYANT, ESQ. Of Counsel.

**JUDGES:** ROBERT W. SWEET, U.S.D.J.

**OPINION BY:** ROBERT W. SWEET

**OPINION:**

**Sweet, D.J.,**

Defendant Micromuse, Inc. ("Micromuse") has moved pursuant to Federal Rule of Civil Procedure 12 (b)(6), to dismiss the complaint of plaintiff Agilent Technologies, Inc. ("Agilent") alleging patent

infringement, and, in the alternative, for a more definite statement pursuant to Rule 12(e), and to add Hewlett Packard Company ("H-P") as a necessary party under Rules 12(b)(7) and 19(a) of those same Rules. Micromuse has also moved to disqualify Gray Cary Ware & Freidenrich, LLP ("Gray Cary") from representing Agilent in this action, **[*2]** Gray Cary having previously represented NetWork Harmoni, Inc. ("Network Harmoni"), an entity acquired by Micromuse prior to the filing of this action. Agilent has cross-moved for leave to file a supplemental declaration in opposition to Micromuse's motion to disqualify Gray Cary. For the reasons set forth below, Micromuse's motion to dismiss is denied, the motion for a more definite statement is granted, the motion to add H-P as a party is denied at this time with leave granted to renew, and the motion to disqualify is denied at this time with leave granted to renew. Agilent's cross-motion for leave to file a supplemental declaration is granted.

**Prior Proceedings**

The complaint in this patent infringement action was filed in the United States District Court for the Eastern District of Virginia, Norfolk Division, on November 10, 2003.

On December 17, 2003, Micromuse filed the instant motions in the Eastern District of Virginia as well as a motion to transfer the action to this district, which latter motion was granted by order of the Honorable Raymond A. Jackson filed on April 16, 2004. The action was transferred to this district on April 22, 2004.

The remaining motions **[*3]** were argued and marked fully submitted on May 19, 2004.

**The Complaint**

The following facts are drawn from Agilent's complaint and do not constitute findings of fact by the Court.

According to the complaint, Agilent is a Delaware corporation having its headquarters in Palo Alto, California, and significant operations in Fort Collins, Colorado. It is alleged that Micromuse is a Delaware Corporation with headquarters in San Francisco, California, and significant operations in Northern Virginia, Georgia, Illinois, Texas, New York, London, and other overseas destinations. Subject matter jurisdiction is alleged under 28 U.S.C. §§ 1331 and 1338.

With regard to the factual background of the complaint, it is alleged that:

6. Agilent is a leading provider of components, test, measurement, monitoring and management solutions for the communications industry. Agilent's broad set of solutions and services includes, among other technologies, optical, wireless, Internet and broadband technologies that span the entire communications life cycle. Having invested substantial resources in the development of these technologies, Agilent maintains a portfolio **[*4]** of patents covering its inventions, including the patents at issue.

7. On October 24, 2000, United States Patent No. 6,138,122 ("the '122 Patent"), entitled "Modeling of Internet Services," was duly and legally issued to MarkD. Smith, Deborah L. Caswell and Srinivas Ramanathan. All rights, title and interest in the '122 Patent were assigned to Agilent, which remains the sole owner of the '122 Patent...

8. On January 1, 2002, United States Patent No. 6,336,138 ("the '138 Patent"), entitled "Template-Driven Approach For Generating Models On Network Services," was duly and legally issued to Deborah L. Caswell, Srinivas Ramanathan, James D. Hunter, Scott S. Neal, Frederick A. Sicker and Mark D. Smith. All rights, title and interest in the '138 Patent were assigned to Hewlett-Packard Company. Agilent and Hewlett-Packard Company now jointly own the '138 Patent, and Agilent has the exclusive right to enforce the '138 Patent against Micromuse...

(Compl. at PP 6-8.) It is further alleged that Micromuse "makes, sells, or offers products for sale in this district that infringe Agilent's patents." (Compl. at P 4.)

The complaint contains two counts and Micromuse's liability **[*5]** is alleged as follows:

COUNT ONE

Infringement of U.S. Patent No. 6,138,122

9. Agilent realleges the foregoing paragraphs.

10. Agilent is informed and believes that Micromuse has directly infringed and continues to infringe, has induced and continues to induce, and/or has committed and continues to commit acts of contributory infringement of, one or more claims of the '122 Patent.

11. Agilent is informed and believes that Micromuse's acts of patent infringement are and continue to be willful and deliberate.

12. As a result of Micromuse's patent infringement, Agilent has suffered damages in an amount not yet determined, and will continue to suffer damages in the future.

13. Unless an injunction is issued enjoining Micromuse and its agents, servants, employees, attorneys, representatives, and all others acting on their behalf from infringing the '122 Patent, Agilent will be greatly and irreparably harmed.

COUNT TWO

Infringement of U.S. Patent No. 6,336,138

14. Agilent realleges the foregoing paragraphs.

15. Agilent is informed and believes that Micromuse has directly infringed and continues to infringe, has induced and continues to induce, and/or has committed and continues **[*6]** to commit acts of contributory infringement of, one or more claims of the '138 Patent.

16. Agilent is informed and believes that Micromuse's acts of patent infringement are and continue to be willful and deliberate.

17. As a result of Micromuse's patent infringement, Agilent has suffered damages in an amount not yet determined, and will continue to suffer damages in the future.

18. Unless an injunction is issued enjoining Micromuse and its agents, servants, employees, attorneys, representatives, and all others acting on its behalf from infringing the '138 Patent, Agilent will be greatly and irreparably harmed.

(Compl. at PP 9-18.)

**Discussion**

**I. Micromuse's Motion To Dismiss Is Denied**

Micromuse has moved to dismiss Agilent's Complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure on the grounds that the complaint fails to meet the notice requirements of Rule 8 (a) of those same Rules.

*HN1*⚓In considering a motion to dismiss pursuant to Rule 12(b)(6), the court should construe the complaint liberally, "accepting all factual allegations in the complaint as true, and drawing all reasonable **[*7]** inferences in the plaintiff's favor," Chambers v. Time Warner, Inc., 282 F.3d 147,

152 (2d Cir. 2002) (citing Gregory v. Daly, 243 F.3d 687, 691 (2d Cir. 2001)), although "mere conclusions of law or unwarranted deductions" need not be accepted. First Nationwide Bank v. Gelt Funding Corp., 27 F.3d 763, 771 (2d Cir. 1994). "The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." Villager Pond, Inc. v. Town of Darien, 56 F.3d 375, 378 (2d Cir. 1995) (quoting Scheuer v. Rhodes, 416 U.S. 232, 236, 40 L. Ed. 2d 90, 94 S. Ct. 1683 (1974)). In other words, "'the office of a motion to dismiss is merely to assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof.'" Eternity Global Master Fund Ltd. v. Morgan Guar. Trust Co. of New York, 375 F.3d 168, 176 (2d Cir. 2004) (quoting Geisler v. Petrocelli, 616 F.2d 636, 639 (2d Cir. 1980)). Dismissal is only appropriate when "it appears beyond doubt that the plaintiff can prove no set of facts [*8] which would entitle him or her to relief." Sweet v. Sheahan, 235 F.3d 80, 83 (2d Cir. 2000); accord Eternity Global Master Fund, 375 F.3d at 176-77.

HN2 "The indulgent standard evident in these precedents is codified in Rule 8, which requires no more than 'a short and plain statement of [a] claim showing that the pleader is entitled to relief.'" Id. at 177 (quoting Fed. R. Civ. P. 8(a)(2)) (alteration in original); see also Wynder v. McMahon, 360 F.3d 73, 76-77 & n.5 (2d Cir. 2004) (referring to the "bare-bones standards of Rule 8" and noting that "Rule 8 pleading is extremely permissive"). The Supreme Court has interpreted Rule 8 "not to require a claimant to set out in detail the facts upon which he bases his claim." Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit, 507 U.S. 163, 168, 122 L. Ed. 2d 517, 113 S. Ct. 1160 (1993) (quoting Conley v. Gibson, 355 U.S. 41, 47, 2 L. Ed. 2d 80, 78 S. Ct. 99 (1957)). Indeed,

> The federal rules require (with irrelevant exceptions) only that the complaint state a
> claim, not that it plead the facts that if [*9] true would establish (subject to any
> defenses) that the claim was valid ... All that need be specified is the bare minimum
> facts necessary to put the defendant on notice of the claim so that he can file an
> answer.

Higgs v. Carver, 286 F.3d 437, 439 (7th Cir. 2002); see also Scutti Enters., LLC v. Park Place Entm't Corp., 322 F.3d 211, 215 (2d Cir. 2003) ("'More extensive pleading of fact is not required because the Federal Rules of Procedure provide other devices besides pleadings that will serve to define the facts and issues and to dispose of unmeritorious claims.'") (quoting 2 James Wm. Moore, et al., Moore's Federal Practice § 8.04[1] (3d ed. 1999) (citation omitted)). HN3 Whether a complaint satisfies Rule 8(a)(2) is determined by whether the pleading provides fair notice to the opposing party. See Conley, 355 U.S. at 47; see also Wynder, 360 F.3d at 79 ("The key to Rule 8(a)'s requirements is whether adequate notice is given."). Accordingly, dismissal for failure to comply with the requirements of Rule 8 "is usually reserved for those cases in which the complaint is [*10] so confused, ambiguous, vague, or otherwise unintelligible that its true substance, if any, is well disguised.'" Simmons v. Abruzzo, 49 F.3d 83, 86 (2d Cir. 1995) (quoting Salahuddin v. Cuomo, 861 F.2d 40, 42 (2d Cir. 1988)).

Here, Agilent's complaint establishes the jurisdiction of this Court, sets forth the ownership of the patents in suit and alleges that Micromuse makes, sells, or offers products for sale that infringe Agilent's patents. The complaint further alleges that Micromuse is liable for direct infringement, contributory infringement and infringement by inducement. Agilent has provided a "short and plain statement" of its claims against Micromuse and the nature of those claims is discernible. Fed. R. Civ. P. 8(a)(2). Indeed, it would be difficult to frame a more skeletal pleading.

Micromuse nonetheless argues that dismissal of Agilent's complaint is appropriate because the complaint fails to specify any allegedly infringing product, fails to identify any allegedly infringing conduct, and fails to set forth any of the other actors implicated by the allegations that Micromuse has contributed to and [*11] induced patent infringement. The absence of allegations such as

those described does not demonstrate that the harsh sanction of dismissal is appropriate here, as this absence does not make it "appear[] beyond doubt that the plaintiff can prove no set of facts which would entitle him or her to relief," Sweet, 235 F.3d at 83, nor that the complaint is "'so confused, ambiguous, vague, or otherwise unintelligible that its true substance, if any, is well disguised.'" Simmons, 49 F.3d at 86 (quoting Salahuddin, 861 F.2d at 42); see generally Glus v. Brooklyn E. Dist. Terminal, 359 U.S. 231, 235, 3 L. Ed. 2d 770, 79 S. Ct. 760 (1959) ("It may well be that petitioner's complaint as now drawn is too vague, but that is no ground for dismissing his action.").

*HN4* Where, as here, a pleading is sufficient to provide notice of the claim but does not contain sufficient information to allow a responsive pleading to be framed without risk of prejudice, the proper remedy is a motion for a more definite statement under Rule 12(e), Fed. R. Civ. P. See, e.g., Scott v. City of Chicago, 195 F.3d 950, 952 (7th Cir. 1999); **[*12]** Sisk v. Texas Parks & Wildlife Dep't, 644 F.2d 1056, 1059 (5th Cir. 1981); Harman v. Nat'l Bank of Arizona, 339 F.2d 564, 567 (9th Cir. 1964); but compare Ondeo Nalco Co. v. Eka Chems., Inc., 2002 U.S. Dist. LEXIS 26195, No. 01 Civ. 537 (SLR), 2002 WL 1458853, at *1-2 (D. Del. August 10, 2002) (dismissing defendant's counterclaims where it was unclear which products were being accused, concluding that the pleading was "too vague to provide plaintiff with fair notice," and granting leave to amend).

## II. Micromuse's Motion For A More Definite Statement Is Granted

Rule 12(e) of the Federal Rules of Civil Procedure provides in pertinent part that *HN5* "if a pleading to which a responsive pleading is permitted is so vague or ambiguous that a party cannot reasonably be required to frame a responsive pleading, the party may move for a more definite statement before interposing a responsive pleading." Fed. R. Civ. P. 12(e). *HN6* Rule 12(e) applies only in limited circumstances:

> The pleading must be sufficiently intelligible for the district court to be able to make out one or more **[*13]** potentially viable legal theories on which the claimant might proceed; in other words the pleading must be sufficient to survive a Rule 12(b)(6) motion to dismiss. At the same time, the pleading also must be so vague or ambiguous that the opposing party cannot respond to it, even with a simple denial as permitted by Rule 8(b), with a pleading that can be interposed in good faith or without prejudice to himself.

5C Charles Alan Wright & Arthur R. Miller, Federal Practice & Procedure § 1376 at 311 (3d ed. 2004) (footnote omitted); see Humphreys v. Nager, 962 F. Supp. 347, 352-53 (E.D.N.Y. 1997) ("A 12(b) (6) motion is one made for a failure to state a claim, while a 12(e) motion is proper when a complaint pleads a viable legal theory, but is so unclear that the opposing party cannot respond to the complaint."); but compare Home & Nature Inc. v. Sherman Specialty Co., 322 F. Supp. 2d 260, 265 (E.D.N.Y. 2004) ("Rule 12(e) motion should be denied if a complaint comports with the liberal pleading requirements of Rule 8(a).") (collecting cases).

*HN7* Although motions pursuant to Rule 12(e) are generally disfavored where prompt resort to discovery **[*14]** may provide an adequate means for ascertaining relevant facts, see id., courts have considered Rule 12(e) relief appropriate in patent infringement cases where a plaintiff has failed to identify any allegedly infringing product or products. See, e.g., In re Papst Licensing, GmbH, Patent Litig., 2001 U.S. Dist. LEXIS 2255, Nos. MDL 1298 & C.A. 99-3118, 2001 WL 179926, at *2 (E.D. La. Feb. 22, 2001) (concluding that the plaintiff's complaint must be amended to specifically identify which of the defendant's products are alleged to have infringed the plaintiff's patents); cf. Creative Copier Servs. v. Xerox Corp. (In re Indep. Serv. Orgs. Antitrust Litig.), 85 F. Supp. 2d 1130, 1169 (D. Kan. 2000) (denying the plaintiff's motion for summary judgment on a defendant's counterclaim where the plaintiff argued that it did not have adequate notice of which of

its devices allegedly infringed the defendant's patents, observing that the plaintiff had already answered the counterclaim and that, if the plaintiff "did not truly know which parts were covered by the patents identified, it could have filed a motion for a more definite statement under Rule 12(e)"). The cases cited by Agilent in opposition to Micromuse's motion **[*15]** do not suggest that a contrary result is required here, as they stand for the propositions that a pleading need not identify every infringing product where some other limiting parameter has been set forth or at least one purportedly infringing product has been identified. *See* Symbol Techs., Inc. v. Hand Held Prods., 2003 U.S. Dist. LEXIS 21002, No. 03-102-SLR, 2003 WL 22750145, at *3 (D. Del. Nov. 14, 2003) (denying a Rule 12(e) motion where there was a "finite" set of potentially infringing products under identified patents held by the defendant); Oki Elec. Indus. Co., Ltd. v. Lg Semicon Co., Ltd., 1998 U.S. Dist. LEXIS 22507, No. 97 Civ. 20310 (SW), 1998 WL 101737, at *3 (N.D. Cal. Feb. 25, 1998) (denying a motion to dismiss where the plaintiff identified infringing products by specifying that the products concerned were "devices that embody the patented methods, including 4 megabit and higher density DRAMs") (internal quotation marks omitted), aff'd, 243 F.3d 559 (Fed. Cir. 2000).

Agilent's complaint does not specify which products infringed plaintiff's patents; it merely states that the alleged infringements occurred as a result of the fact that Micromuse "makes, sells, or offers products **[*16]** for sale . . . that infringe Agilent's patents." (Compl. at P 4.) Although Agilent's papers submitted in opposition to Micromuse's various motions suggest that Micromuse possesses at least four infringing products, those products have not been formally accused. Under these circumstances, Micromuse is entitled to know which of its products or services are alleged to have infringed Agilent's patents and a more definite statement setting forth that information is appropriate.

Micromuse has also argued that Agilent's complaint fails to identify the primary infringer with respect to the contributory and inducement claims. Micromuse has cited to a single unpublished authority in support of its argument that such identification is required to render a pleading answerable, and this authority, Net Moneyin, Inc. v. Mellon Fin. Corp., No. O1 Civ. 441 (TUC) (RCC), slip op. (D. Ariz. July 30, 2003), itself cites no other case law directly on point. Micromuse has accordingly failed to establish that relief under Rule 12(e) with respect to the identity of any primary infringers is appropriate.

*HN8*⟟"Where a motion made under Rule 12(e) has been granted, the order of the court to provide a more definite **[*17]** statement must be obeyed within ten days after notice of the order "or within such other time as the court may fix." Fed. R. Civ. P. 12(e). Agilent is directed to comply with the grant of Micromuse's motion for a more definite statement by filing and serving an amended complaint within thirty (30) days of entry of this order and opinion.

## III. H-P Will Not Be Deemed A Necessary Party At This Time

Micromuse argues that, if Agilent's complaint is not dismissed, H-P, as co-owner of the '138 Patent, should be joined as a necessary party to this lawsuit, pursuant to Rule 19(a) of the Federal Rules of Civil Procedure. In addition, Micromuse asserts that if H-P is not so joined, the case should be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(7).

*HN9*⟟"Fed. R. Civ. P. 19 sets forth a two-step test for determining whether the court must dismiss an action for failure to join an indispensable party. First, the court must determine whether an absent party belongs in the suit, i.e., whether the party qualifies as **[*18]** a 'necessary' party under Rule 19(a)." Viacom Int'l, Inc. v. Kearney, 212 F.3d 721, 724 (2d. Cir. 2000). Rule 19(a) provides in relevant part that,

> *HN10*⟟A person who is subject to service of process and whose joinder will not deprive the court of jurisdiction over the subject matter of the action shall be joined as a party in the action if (1) in the person's absence complete relief cannot be accorded among those already parties, or (2) the person claims an interest relating to the subject of the action and is so situated that the disposition of the action in the person's absence may

(i) as a practical matter impair or impede the person's ability to protect that interest or (ii) leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of the claimed interest. If the person has not been so joined, the court shall order that the person be made a party.

Fed. R. Civ. P. 19(a). Second, $^{HN11}$ if a party is deemed necessary, it then must be determined whether the party's absence warrants dismissal pursuant to Rule 19(b), Fed. R. Civ. P. **[\*19]** See Viacom Int'l, 212 F.3d at 725. "If a party does not qualify as necessary under Rule 19(a), then the court need not decide whether its absence warrants dismissal under Rule 19(b)." Id. at 724 (citing Associated Dry Goods Corp. v. Towers Fin. Corp., 920 F.2d 1121, 1123 (2d Cir. 1990)).

$^{HN12}$ As a general matter, "United States patent law . . . requires that all co-owners normally must join as plaintiffs in an infringement suit." Int'l Nutrition Co. v. Horphag Research Ltd., 257 F.3d 1324, 1331 (Fed. Cir. 2001); see also Ethicon, Inc. v. United States Surgical Corp., 135 F.3d 1456, 1468 (Fed. Cir. 1998) (stating that, "as a matter of substantive patent law, all coowners must ordinarily consent to join as plaintiff in an infringement suit") (footnote omitted); see generally Waterman v. MacKenzie, 138 U.S. 252, 255-56, 34 L. Ed. 923, 11 S. Ct. 334, 1891 Dec. Comm'r Pat. 320 (1891). As one court has explained, since "all co-owners have standing to sue for infringement, if all the co-owners are not joined in an infringement suit, there may be a risk that the defendant will be subject to multiple suits.'"E-Z Bowz, L.L.C. v. Prof'l Prod. Research Co., 2003 U.S. Dist. LEXIS 15364, No. 00 Civ. 8670 (LTS) (GWG), 2003 WL 22064257, **[\*20]** at \*3 (S.D.N.Y. Sept. 5, 2003) (quoting IBM Corp. v. Conner Peripherals, 1994 U.S. Dist. LEXIS 2884, No. 93 Civ. 20591 (RMW), 1994 WL 409493, at \*3 (N.D. Cal. Jan. 28, 1994)); see also Union Trust Nat'l Bank v. Audio Devices, Inc., 295 F. Supp. 25, 27 (S.D.N.Y. 1969) ("That all co-owners be parties to a suit is a necessary requirement if conflicting decisions about the same patent (for example, its validity) are to be avoided."); cf. Vaupel Textilmaschinen KG v. Meccanica Euro Italia S.P.A., 944 F.2d 870, 875 (Fed. Cir. 1991) ("The policy underlying the requirement to join the owner when an exclusive licensee brings suit is (to prevent the possibility of two suits on the same patent against a single infringer.").

"Since the introduction of Fed. R. Civ. P. 19 and the 1966 amendments to the rule, however, 'courts are less concerned with abstract characterizations of the parties and more concerned with whether the rights of the parties can be fairly adjudicated absent joinder of the patent co-owner.'" E.Z. Bowz, 2003 U.S. Dist. LEXIS 15364, 2003 WL 22064257, at \*3 (quoting Michaels of Oregon Co. v. Mil-Tech, Inc., 1995 U.S. Dist. LEXIS 20875, No. 95 Civ. 908 (MA), 1995 WL 852122, **[\*21]** at \*1 (D. Or. Oct. 17, 1995)); cf. Howes v. Med. Components, Inc., 698 F. Supp. 574, 576 (E.D. Pa. 1988) ("The adoption of the 1966 amendments to Rule 19 'makes inappropriate any contention that patent co-owners are per se indispensable in infringement suits.'") (quoting Catanzaro v. Int'l Tel. & Tel. Corp., 378 F. Supp. 203, 205 (D. Del. 1974)).

Thus, where the co-owner of a patent or other entity or individual whose interest in a patent might be directly affected by litigation has specifically disclaimed all interest in pursuing litigation related to the patent in favor of the party who has brought the suit, courts have held that joinder of the co-owner or other entity or individual is not necessary. See Vaupel Textilmaschinen, 944 F.2d at 875-76 (concluding that the policy to join an owner when an exclusive licensee bring suit in order to preclude the possibility of duplicative lawsuits was not undercut where, pursuant to express agreements, the right to sue rested solely with the licensee and denying the defendant's Rule 19 motion); E-Z Bowz, 2003 U.S. Dist. LEXIS 15364, 2003 WL 22064257, at \*4-5 (holding that the defendant would not **[\*22]** be subject to a substantial risk of incurring inconsistent obligations where the former co-owner of certain patents had relinquished her interest in the patents as well as any rights of action relating to the patents and concluding that the rights of the parties could be fairly adjudicated without joinder of the absent former co-owner); Michaels of Oregon, 1995 U.S. Dist. LEXIS 20875, 1995 WL 852122, at \*2-3 (determining that an absent co-owner of certain patents was not a necessary party where that absent co-owner had entered into an agreement with

the plaintiff providing that only the plaintiff might file actions for patent infringement); compare Parkson Corp. v. Andritz Sprout-Bauer, Inc., 866 F. Supp. 773, 775 (S.D.N.Y. 1995) (concluding that it was not possible to determine whether an owner was a necessary party to an action brought by an exclusive licensee where the licensing agreement did not unambiguously give the licensee control over whether infringement claims should be brought); Howes, 698 F. Supp. at 577 (concluding that an absent patent co-owner was a necessary party where the defendants might face the risk of relitigation by that co-owner).

Although **[*23]** the complaint alleges that Agilent and H-P jointly own the '138 Patent, it further alleges that Agilent enjoys the exclusive right to enforce the '138 Patent against Micromuse. In opposition to Micromuse's motion, Agilent has submitted a redacted version of an August 22, 2003 agreement between Agilent and H-P (the "August Agreement") regarding their respective rights concerning the enforcement of the '138 Patent. According to the August Agreement, H-P grants to Agilent "the exclusive right to license the ['138 Patent to Micromuse." (Declaration of Megan Whyman Whyman Olesek, dated Jan. 15, 2004 ("Olesek Decl."), Exh. X at P 1.) H-P further grants to Agilent "the exclusive right to enforce the ['138 Patent to and against Micromuse" including by "filing and prosecuting the Agilent Patent Suit to final judgment, including appeals." n1 (Id.) H-P has also agreed that

> As between the parties, Agilent shall have the full power and authority to control the Agilent Patent Suit and any settlement thereof and shall retain one hundred percent (100%) of any damages or compensation received in connection with the Agilent Patent Suit or settlement thereof.

(Id. at P 3.)

- - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - -

N1 The "Agilent Patent Suit" is defined as "a patent infringement lawsuit against Micromuse." (Olesek Decl., Exh. X, preamble.)

- - - - - - - - - - - End Footnotes- - - - - - - - - - - - **[*24]**

Based on the terms of the August Agreement, it does not appear that H-P's absence from this lawsuit will subject Micromuse to any "substantial risk of incurring double, multiple, or otherwise inconsistent obligations," Fed. R. Civ. P. 19(a), because H-P has no independent capacity to file a patent infringement action against Micromuse based on the '138 Patent, having expressly disclaimed any interest in pursuing a claim against Micromuse with respect to the '138 Patent. In light of the broad contractual language by which H-P has granted Agilent the exclusive right to enforce the '138 Patent against Micromuse, the absence of any provision in the August Agreement stating that H-P agrees to be bound by the outcome of this litigation is not determinative here. Likewise, the absence of an affirmative representation that H-P has relinquished its right to sue Micromuse for any purported past infringement does not, contrary to the argument advanced by Micromuse, require joinder of H-P. On the facts now available, it thus appears that complete relief can be accorded among those already present.

Micromuse has noted, however, that the August Agreement **[*25]** makes explicit reference to the existence of a Master Patent Ownership and License Agreement and that the August Agreement is an agreement among Agilent and H-P "together with Hewlett Packard Development Company, L.P." (Olesek Decl., Exh. X, preamble), an entity that, according to Micromuse, may also have an interest in the '138 Patent. Micromuse has further observed that the redacted form of the August Agreement does not set forth its effective term or termination provisions and suggests that the

absence of such provisions raises questions of whether H-P enjoys a reversion, termination, or expiration interest in the '138 Patent, questions which may, in turn, affect any determination as to whether H-P is a necessary party here. See, e.g., Moore U.S.A. Inc. v. Standard Register Co., 60 F. Supp. 2d 104, 109-110 (W.D.N.Y. 1999) (concluding that *HN13* a licensor was a necessary party to a patent infringement action despite the existence of an agreement with the plaintiff licensee granting the licensee sole and exclusive rights to sue for infringement where the agreement was of fixed term and where the licensor retained a reversionary interest in the patent).

Although the **[*26]** facts presently available do not establish that H-P is a necessary party, Micromuse's observations suggest that developments resulting from discovery may cause the issue of H-P's joinder to be revisited. Accordingly, Micromuse's motion to join H-P is denied at this time and leave is hereby granted to renew the motion after further discovery.

## IV. Gray Cary Will Not Be Disqualified At This Time

Micromuse has moved to disqualify Gray Cary from representing Agilent in this matter on the grounds that, for many years, Gray Cary provided extensive legal representation to Network Harmoni, a company acquired by Micromuse in August 2003. Micromuse argues that Network Harmoni's suite of proprietary intelligent software agents is now part of Micromuse's product offerings and, under the current complaint, potentially the target of Agilent's patent infringement claims. Micromuse asserts that Gray Cary thus formerly represented Network Harmoni in matters substantially related to the subject matter of this action and must be disqualified from representing Agilent as a result. Agilent opposes Micromuse's motion, arguing that in its representation of Network Harmoni Gray Cary was at all **[*27]** times in an adverse relationship to Micromuse and that Gray Cary's prior representation of Network Harmoni involved no confidential information about the product or products at issue in the present action. n2

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - -

n2 Following briefing on Micromuse's motion, Agilent moved for leave to submit a supplemental declaration, claiming the need to respond to certain contentions in Micromuse's reply papers, and Micromuse opposed the motion. Agilent's motion for leave to submit the supplemental declaration is granted. *HN14* Although submission of supplemental papers is often more of a hindrance than a help, the issues addressed in the supplemental papers presented here are carefully cabined and respond to arguably new contentions contained in reply papers on the underlying motion. Where this is true, and where, as here, the opposing party has disclaimed any prejudice resulting from the submission of the supplemental papers, there is no evidence of bad faith by the party seeking to submit the supplemental papers, and "the parties will be best served by the Court's deciding the . . . issue presented to it on the most complete factual basis possible," Nat'l Union Fire Ins. Co. v. BP Amoco P.L.C., 2003 U.S. Dist. LEXIS 4810, No. 03 Civ. 200 (GEL), 2003 WL 1618534, at *1 (S.D.N.Y. Mar. 27, 2003), leave to submit supplemental papers is appropriately granted.

- - - - - - - - - - - End Footnotes- - - - - - - - - - - - **[*28]**

*HN15* Motions to disqualify counsel have long been disfavored in this Circuit. See, e.g., Evans v. Artek Sys. Corp., 715 F.2d 788, 791-92 (2d Cir. 1983) (enumerating the reasons for which disqualification motions are disfavored); Bennett Silvershein Assoc. v. Furman, 776 F. Supp. 800, 802 (S.D.N.Y. 1991) ("The Second Circuit has indeed been loathe to separate a client from his chosen attorney . . . .") (collecting cases). "Disqualification motions are often made for tactical reasons, and thereby unduly interfere with a party's right to employ counsel of his choice." Skidmore v. Warburg Dillon Read LLC., 2001 U.S. Dist. LEXIS 6101, No. 99 Civ. 10525 (NRB), 2001 WL 504876, at *2 (S.D.N.Y. May 11, 2001) (citing Board of Educ. v. Nyquist, 590 F.2d 1241, 1246 (2d Cir. 1979)). Moreover, disqualification motions, "even when made in the best of faith . . . inevitably cause delay." Evans, 715 F.2d at 792 (quoting Nyquist, 590 F.2d at 1246). A "high standard of proof" is therefore required from one who moves to disqualify counsel. Id. at 791 (quoting Government of India v. Cook Industries, Inc., 569 F.2d 737, 739 (2d Cir. 1978)). **[*29]**

The appearance of impropriety alone does not warrant disqualification. See Nyquist, 590 F.2d at 1246-47.

[HN16]In determining whether an attorney can oppose his former client, courts evaluate whether the new matter is substantially related to the subject matter of the prior representation. An attorney may be disqualified from representing a client in a particular case if:

> (1) the moving party is a former client of the adverse party's counsel;

> (2) there is a substantial relationship between the subject matter of the counsel's prior representation of the moving party and the issues in the present lawsuit; and

> (3) the attorney whose disqualification is sought had access to, or was likely to have had access to, relevant privileged information in the course of his prior representation of the client.

Id. at 791. "Under this standard, proof of substantial similarity must be 'patently clear' to warrant disqualification." Decora Inc. v. DW Wallcovering, Inc., 899 F. Supp. 132, 136 (S.D.N.Y. 1995) (quoting Government of India, 569 F.2d at 739-40) (additional citations omitted). A "substantial relationship" exists where **[*30]** facts pertinent to the problems underlying the prior representation are relevant to the subsequent representation. See U.S. Football League v. Nat'l Football League, 605 F. Supp. 1448, 1459-60 & n.25 (S.D.N.Y. 1985) ("It is the congruence of factual matters, rather than areas of law, that establishes a substantial relationship between representations for disqualification purposes.") (emphasis in original).

According to Micromuse, Network Harmoni evolved from a research project in network visualization software conducted at Curtin University in Perth, Australia. In 1996, the founders of the project formed NDG Software, Inc., and in November 1998 the company received its first venture funding and moved its headquarters from Australia to San Diego, California. It is alleged that Gray Cary initially provided advice, counsel and representation in establishing and structuring this U.S.-based company and its operations, and served as outside counsel. Subsequently, NDG Software, Inc., changed its name to Network Harmoni, Inc.

During the time of Gray Cary's representation, Network Harmoni developed and licensed to its customers, including Agilent and Micromuse, proprietary **[*31]** intelligent software agents designed to provide users with information on the status and security of computer networks, systems and applications. Micromuse contends that Gray Cary, during its five-year relationship with Network Harmoni, represented Network Harmoni in its corporate affairs, employment issues, in prosecuting its patents and trademarks and handling other patent and trademark-related matters, in evaluating third-party patents, and in drafting and negotiating licensing agreements, financing instruments and other corporate-related documents.

Over the course of its representation of Network Harmoni, Gray Cary is alleged to have drafted and filed several patent applications with the United States Patent and Trademark Office relating to certain aspects of Network Harmoni's software products and was informed of virtually all attributes and potential uses of Network Harmoni's suite of proprietary intelligent software agents, as well as the company's plans for future software applications and services.

According to Micromuse, Gray Cary represented Network Harmoni in its negotiations to be purchased by Micromuse, and Network Harmoni and Micromuse executed a non-disclosure agreement **[*32]** to assure that the parties could have full and complete discussions without the use of such information for non-acquisition purposes.

It is further alleged that in three rounds of financing, Gray Cary was allowed to participate on the same basis as the initial preferred investors and became a shareholder of Network Harmoni, and until September 1999, one of its lawyers served as a member of its board of directors. Gray Cary sold its stock in connection with Network Harmoni's acquisition by Micromuse.

In opposition to Micromuse's motion it is alleged that Gray Cary first became aware of a potential claim against Micromuse by Agilent on September 19, 2003, when Agilent approached Gray Cary about the possibility of Gray Cary handling the matter for Agilent. It is also alleged that on December 8, 2003, an ethical wall was established to isolate all attorneys working on Agilent matters from any and all information related to any matter in which Network Harmoni had been a client for the firm.

Agilent asserts that Gray Cary never had an attorney-client relationship with Micromuse and that such a relationship may not be inferred from Micromuse's disclosure of confidential business information **[*33]** to Network Harmoni and its then-counsel Gray Cary during negotiations for the acquisition of Network Harmoni. At present, however, there appears to be no dispute that *HN17* ✠Micromuse is entitled to seek Gray Cary's disqualification based on Gray Cary's prior representation of Micromuse's wholly owned subsidiary, Network Harmoni. See generally Hartford Accident & Indem. Co. v. RJR Nabisco, Inc., 721 F. Supp. 534, 539-40 (S.D.N.Y. 1989) (concluding that the plaintiff's law firm would be deemed to have previously represented the defendant where the plaintiff's law firm had previously represented the defendant corporation's subsidiary and the defendant corporation had taken in active role with regard to the law firm's representation of its subsidiary); cf. Decora, 899 F. Supp. at 137 (concluding that the plaintiff could properly seek disqualification of the defendant's attorney in a patent infringement action where the attorney had previously represented the plaintiff's parent corporation, thereby learning certain of the plaintiff's trade secrets).

Assuming without deciding that the first prong of the test set forth in Evans has therefore been satisfied, **[*34]** Micromuse's motion for disqualification is denied nonetheless, since, to date, Micromuse has not met its burden of proof with respect to establishing a "substantial relationship" between Gray Cary's former representation of Network Harmoni and its current representation of Agilent. It has not been shown that Gray Cary gave Network Harmoni advice on the validity of the patents in suit, including whether there was infringement by Network Harmoni of the patents in suit. All that has been established is that Gray Cary advised Network Harmoni on corporate governance issues, employment matters, original equipment manufacturer ("OEM") agreements, patent and trademark filings, and financing instruments. *HN18* ✠Prior general business representation by the plaintiff's law firm of an entity related to the defendant on matters unrelated to the lawsuit at issue does not meet the high burden of establishing a conflict. See, e.g., In re Maritima Aragua, S.A., 847 F. Supp. 1177, 1182-83 (S.D.N.Y. 1994).

The Micromuse products and services alleged to be violative of the Agilent patent will be identified as a consequence of the granting of Micromuse's motion for a more definite statement. **[*35]** Thereafter, discovery may be sought with respect to the knowledge and participation of Gray Cary in the development of any such accused products or services. Should this discovery yield additional facts establishing that the prior representation of Network Harmoni by Gray Cary dealt with issues presented in this action, leave is granted to Micromuse to renew its disqualification motion, which motion is denied at this time.

### Conclusion

For the reasons set forth above, Micromuse's motion to dismiss the complaint is denied and its motion for a more definite statement is granted. Agilent is directed to comply with the grant of Micromuse's motion for a more definite statement by filing and serving an amended complaint within thirty (30) days of entry of this order and opinion. In addition, Micromuse's motions to add H P as a party and to disqualify Gray Cary are denied at this time with leave to renew. Agilent's motion to file a supplemental declaration is granted.

It is so ordered.

**ROBERT W. SWEET**

**U.S.D.J.**

Source: Legal > / . . . / > **Federal & State Cases, Combined** 🛈
 Terms: **name(agilent)** (Edit Search | Suggest Terms for My Search)
  View: Full
Date/Time: Tuesday, January 9, 2007 - 7:18 PM EST

* Signal Legend:
⬤ - Warning: Negative treatment is indicated
🔲 - Questioned: Validity questioned by citing refs
⚠ - Caution: Possible negative treatment
◆ - Positive treatment is indicated
Ⓐ - Citing Refs. With Analysis Available
🛈 - Citation information available
* Click on any *Shepard's* signal to *Shepardize®* that case.

LexisNexis®

About LexisNexis | Terms & Conditions
Copyright © 2007 LexisNexis, a division of Reed Elsevier Inc. All rights reserved.