# ASHBY & GEDDES

ATTORNEYS AND COUNSELLORS AT LAW

500 DELAWARE AVENUE

P. O. BOX 1150

WILMINGTON, DELAWARE 19899

TELEPHONE
302-654-1888

FACSIMILE
302-654-2067

May 24, 2007

The Honorable Mary Pat Thynge
United States District Court
844 North King Street
Wilmington, DE  19801

VIA ELECTRONIC FILING

Re:   *Cordance Corp. v. Amazon.com, Inc.*,
       C.A. No. 06-491-MPT

Dear Judge Thynge:

Pursuant to your Honor's May 10, 2007 order, Defendant Cordance Corporation ("Cordance") files this letter in support of its Motion to Dismiss Amazon's Fourth Counterclaim. The Court requested that the parties address whether the Supreme Court's opinion in MedImmune, Inc., v. Genentech, Inc., 127 S. Ct. 764 (2007) bears on the pending motion to dismiss.

The short answer is no. MedImmune alters one prong of the standard for a declaratory judgment of noninfringement by a potential infringer. It has no effect on the standard for a declaratory judgment of infringement by a patentee. Even if it did, the issue is moot because Amazon also failed to meet a wholly separate prong of that standard, unaffected by MedImmune. The bottom line is that MedImmune actually reaffirmed that a declaratory judgment action of any sort cannot proceed without a live case or controversy; and here there is none.

I.     **MedImmune Did Not Address Declaratory Judgment Actions by a Patentee.**

The standard for a declaratory judgment of infringement by a patentee implicates very different policy concerns than does the standard for a declaratory judgment of noninfringement by an accused infringer. Declaratory judgment actions by an accused infringer are fairly commonplace, allowing an accused to clear the air and ensure its ability to continue to invest in a technology unhampered by the threat of a later infringement suit. By contrast, actions seeking a declaratory judgment of infringement – i.e., a declaration that some future action may infringe – are a rare breed. And appropriately so, since such actions seek in essence an advisory opinion. Such relief may be warranted in the rare instance where the threat of infringement is immediate, the damage will be irreparable, and the patentee has taken all reasonable steps to seek a change in course but the defendant has refused. None of those things happened here.

The Federal Circuit has crafted two different tests for determining whether a declaratory judgment plaintiff meets the Article III "case or controversy" requirement: One for declarations or noninfringement or invalidity, and one for the rarer circumstance where a declaration of future infringement is sought. Both tests have a "reasonable apprehension" prong which arguably was affected by MedImmune (although even that conclusion is flawed, since neither MedImmune nor its progeny has ever held that it applies to declaratory judgment of infringement). But in any

event, what remains clearly unchanged is the second requirement – which Amazon has also failed to meet – of alleging defendant's <u>failure to change its course</u>.

### A. Declaratory Judgment Actions by the Accused Infringer

A patentee may hold a threat of suit over another's head, creating an aura of "uncertainty and insecurity" for the accused infringer. See <u>Arrowhead Indus. Water, Inc. v. Ecolochem, Inc.</u>, 846 F.2d 731, 735 (Fed. Cir. 1988). The Declaratory Judgment Act provides a remedy so the accused infringer can "clear the air." <u>Id.</u> Prior to <u>MedImmune</u>, the Federal Circuit applied a two-part test for determining whether an actual controversy existed for this type of declaratory judgment action:

> (1) an explicit threat or other action by the patentee, which creates a reasonable apprehension on the part of the declaratory plaintiff that it will face an infringement suit, and (2) present activity which could constitute infringement or concrete steps taken with the intent to conduct such activity.

<u>Sierra Applied Sciences, Inc. v. Advanced Energy Indus., Inc.</u>, 363 F.3d 1361, 1373 (Fed. Cir. 2004). This test looks to whether there is a genuine, present controversy. For example, where the patentee "has done nothing but obtain a patent, there can be no basis for the required apprehension" and thus no jurisdiction, as the potential infringer would be seeking effectively "an advisory opinion on whether it would be liable for patent infringement if it were to initiate some merely contemplated activity." <u>Arrowhead</u>, 846 F.2d at 736.

In <u>MedImmune</u>, the Supreme Court found that a licensee who wished to challenge the patent's validity did not have to breach the license (and risk multiple damages) before doing so. On those facts, the Supreme Court held a reasonable apprehension of imminent suit was not required in order to test the patent, because a sufficient controversy existed for a different reason. <u>MedImmune</u>, 127 S. Ct. at 774 n.11, 777. "The fact that royalties were being paid did not make this a difference or dispute of a hypothetical or abstract character." <u>Id.</u> at 773 (internal quotation marks omitted). Because the license fees were "essentially coerced," an actual controversy existed, and the potential infringer was not required to choose "between abandoning his rights or risking prosecution." <u>Id.</u> at 772-73.

Since <u>MedImmune</u>, two Federal Circuit cases, <u>Teva Pharmaceuticals USA, Inc. v. Novartis Pharmaceuticals Corp.</u>, No. 06-1181 (Fed. Cir. Mar. 30, 2007) and <u>SanDisk Corp. v. STMicroelectronics, Inc.</u>, No. 05-1300 (Fed. Cir. Mar. 26, 2007), have applied its holding; but neither one has gone so far as to extend it beyond those facts. See, e.g., <u>Teva Pharmaceuticals</u>, at *22 n.2 ("In this case, we address only the first prong of this court's two-part test. There is no dispute that the second prong is met. We therefore leave to another day the effect of <u>MedImmune</u>, if any, on the second prong").

### B. Declaratory Judgment by a Patentee

A wholly different situation is presented if a patentee fears that a competitor is about to release an infringing product, and seeks declaratory relief. Until the product is actually released, no infringement will have occurred, and the patentee is thus unable to bring a suit for patent infringement. In that case, the Federal Circuit applies a different two-part test to determine whether a patentee has alleged enough of a substantial controversy to warrant jurisdiction:

> (1) the defendant must be engaged in an activity directed toward making, selling, or using subject to an infringement charge . . . or be making meaningful

preparation for such activity; and (2) acts of the defendant must indicate **a refusal to change the course of its actions** in the face of acts by the patentee sufficient to create a reasonable apprehension that a suit will be forthcoming.

Lang v. Pacific Marine and Supply Co., 895 F.2d 761, 763 (Fed. Cir. 1990) (emphasis added); accord Metabolite Laboratories, Inc. v. Laboratory Corporation of America, 370 F.3d 1354 (Fed. Cir. 2004). Lang thus allows a declaratory judgment only in the narrow circumstance in which, among other things, the "acts of the defendant . . . indicate a refusal to change the course of its actions." Lang, 895 F.2d at 763.

MedImmune did not address actions brought by the patentee for a declaratory judgment of infringement. The need for declaratory judgment jurisdiction in such cases is much more limited, because the patentee has a remedy at law: Upon the performance of a single infringing act (should one ever occur), the patentee can promptly sue for infringement, and seek injunctive or other relief at that time. It is thus, appropriately, much harder to jump the gun and establish the kind of "imminence" and "genuine controversy" needed to allow for this type of declaratory judgment action. Neither MedImmune nor Teva, SanDisk, or any other case has altered the Federal Circuit's Lang decision on this point. Accordingly, Lang is still binding precedent.

In MedImmune, the accused infringer would have no way to clear the air, and be sure its ongoing investment in its product would be free of infringement claims, if it could not file suit. By contrast, Amazon has no sword dangling over its head. Cordance is not about to issue any "virtual address book product," never has, and never will; but if it did, Amazon has the remedy at law of a prompt infringement action available to protect it. At the time it filed its counterclaim, there plainly was no controversy over Amazon's '369 patent – indeed, Amazon had not so much as told Cordance that patent existed, let alone claimed it was being infringed or asked for any remedial action. MedImmune is beside the point here – nothing even approaching a controversy of any kind existed when Amazon filed its claim.

**II.   Amazon Has Not Alleged Facts Establishing the Two Elements of the Lang Test.**

As explained in more detail in Cordance's prior briefs, Amazon has never even attempted to argue that it has alleged facts establishing the two elements of the Lang test. For the first element of the Lang test, Amazon has not alleged any activities by Cordance that constitute making, using, or selling any product that infringes the '369 patent, nor any "meaningful preparations" to do so. Indeed, Amazon could not, consistent with Rule 11, make any such allegations.

The '369 patent relates to "virtual address books." The only reference in the Counterclaim to an address book is a "Unified Address Book Service," allegedly being developed by a third party, CeLiberate (not by Cordance). Amazon has thus not alleged a single fact in support of a claim for any future direct infringement by Cordance.

Nor has Amazon alleged any future anticipated acts by Cordance to induce such infringement. Cordance had never even heard of the '369 patent – let alone refused to "change its course of conduct" with regard to that patent – until Amazon filed the Counterclaim, and Amazon has not alleged otherwise. In order to establish a claim for induced infringement, Amazon must allege knowledge of the patent and "specific intent and action to induce infringement." DSU Med. Corp. v. JMS Co., 471 F.3d 1293, 1305 (Fed. Cir. 2006). Neither such allegation has been nor could be made about a patent Cordance had never heard of.

The Honorable Mary Pat Thynge
May 24, 2007
Page 4

Finally, Amazon has not alleged any future acts amounting to contributory infringement. In order to be liable for contributory infringement, Cordance must have supplied "[1] a component of a patented machine, manufacture, combination or composition . . . [2] constituting a material part of the invention, [3] knowing the same to be especially made or especially adapted for use in an infringement of such patent, and [4] not a staple article or commodity of commerce suitable for substantial noninfringing use." 35 U.S.C. § 271(c); see also Microsoft Corp. v. AT & T Corp., 127 S. Ct. 1746 (2007) (finding that a component must be a physical embodiment and cannot include software in the abstract). Amazon has not alleged any of these four numbered elements. In sum, Amazon has not met the first element of the Lang test for future contributory infringement.

The second element of the Lang test is composed of two parts. First, Amazon must have created a reasonable apprehension of suit, and second, Cordance must have refused to change the course of its actions. Even assuming arguendo that MedImmune has altered the "reasonable apprehension" prong (and no court has so held in the context of declaratory judgment of future infringement), the second prong alone is dispositive here. Since Amazon never even informed Cordance of the '369 patent before filing the Counterclaim, Amazon never created a reasonable apprehension of suit, and Cordance never had the opportunity to change the course of its actions. Indeed, to this day, despite requests for this information, Amazon still refuses to tell Cordance what actions with regard to the '369 patent it wants Cordance to alter.[1] Even if it had answered this inquiry it would still fail to establish jurisdiction at the relevant time (i.e. when suit was filed), but its ongoing deliberate and express refusal to meet the second element of Lang is striking.

### III. Amazon Has Not Alleged a Substantial Controversy of Sufficient Immediacy And Reality to Establish Jurisdiction.

The bottom line is that whether viewed from an "all the circumstances" test (as Amazon suggests in its papers at one point), or in light of the binding Federal Circuit Lang test, there simply is no real, live controversy here. In MedImmune, the Supreme Court restated the long-standing principle that to establish jurisdiction for a declaratory judgment action "the facts alleged, under all the circumstances, [must] show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." MedImmune, 127 S. Ct. at 771. Amazon has not alleged a single fact in support of any such actual controversy. The '369 patent relates to a virtual address book. Cordance doesn't make such a product, never has, never will, and does not wish to.[2] It was never told about the patent before the Counterclaim was filed, it was never asked to cease making such a product, and would have readily agreed not to make one had it been asked. Under

---

[1]   On May 10, 2007, Cordance sent a letter to Amazon, asking Amazon to identify the products or activities that do or will infringe its patent and also asked Amazon identify what changes it would like Cordance to make to prevent any current or future infringement of its patent. In a letter dated May 18, 2007, Amazon expressly refused to respond to this inquiry.

[2]   At one point in time, Cordance made reference on its web site to the as-yet-nonexistent CeLiberate product. As soon as Cordance learned of Amazon's patent and its claims that CeLiberate's future product might infringe, Cordance deleted that reference (even though there can be no serious allegation that such reference would constitute infringement).

any test, this is a textbook case of <u>lack</u> of genuine controversy. It is puzzling how Amazon could continue to argue to this Court that the Fourth Counterclaim should not be dismissed, but for its apparent desire to impose burdensome expenses on a far smaller litigant.

Amazon's arguments to the contrary amount to nothing more than statements that are irrelevant to the applicable test. For example, Amazon says that the Counterclaim is "based on the same technology" as Cordance's claims. Similarity of technology between two companies does not alone amount to a justiciable controversy under Article III, absent facts creating a genuine issue for resolution by a court.

Nor has Amazon alleged any basis for believing that CeLiberate's service will infringe its patent when ultimately released, let alone any basis for believing that Cordance has or will have anything to do with any such speculative future infringement by CeLiberate. Nor has Amazon alleged any basis to believe that, if CeLiberate does come out with an address book product, it will not be designed in a manner that avoids infringement. Precisely in order to avoid involving the federal courts in resolving complex and expensive patent disputes before the operative facts have even come into existence, the Article III case or controversy requirement (whether construed in light of <u>Lang</u> or in any other way) bars such a premature cause of action.

Further, no real controversy exists because Amazon never communicated with Cordance regarding the '369 patent before filing the Counterclaim. Amazon never informed Cordance of the existence of the patent, never accused Cordance of patent infringement, never asked Cordance to license its patent or cease any particular activities. That there are no activities to cease is almost beside the point since the pleading fails on its face. The reason the Federal Circuit requires such communications as a condition precedent to jurisdiction is to avoid embroiling parties and courts in litigation when the accused infringer might simply agree to change its actions. Indeed, if Amazon asked Cordance to agree not to produce a virtual address book, it would agree.

Amazon's claim is speculation built upon speculation. If, at some future time, (1) CeLiberate begins making or selling a service that, as designed, infringes Amazon's patent, (2) CeLiberate does not redesign its service when asked, (3) Cordance participates materially in CeLiberate's infringement, and (4) Cordance refuses to halt any such actions, then perhaps a controversy would exist. What Amazon's actual pleading seeks is nothing more than an advisory opinion forbidden by Article III of the Constitution.

Respectfully,

/s/ *Lauren E. Maguire*

Lauren E. Maguire

LEM/nml
180911.1

cc:   Richard L. Horwitz, Esquire (by hand and via electronic mail)
      Lynn H. Pasahow, Esquire (via electronic mail)
      Michael A. Albert, Esquire (via electronic mail)