

**David E. Moore**

Attorney at Law
dmoore@potteranderson.com
302 984-6147  Direct Phone
302 658-1192  Fax

1313 North Market Street
P.O. Box 951
Wilmington, DE  19899-0951
302 984-6000

www.potteranderson.com

July 27, 2007

**VIA ELECTRONIC FILING**

The Honorable Mary Pat Thynge
United States Magistrate Judge
United States District Court
  for the District of Delaware
844 N. King Street
Wilmington, Delaware 19801

      Re:    <u>Cordance Corporation v. Amazon.com, Inc.</u>, C.A. No. 06-491-MPT

Dear Judge Thynge:

      On July 24, 2007, plaintiff and counterclaim defendant, Cordance Corp. ("Cordance"), advised the Court of the recent decision by the Federal Circuit in *Benitec Australia, Ltd. V. Nucleonics, Inc.*, No. 06-1122, 2007 U.S. LEXIS 17299 (Fed. Cir. Jul. 20, 2007).  Cordance asserts *Benitec* is relevant to its pending Motion to Dismiss Amazon.com's Fourth Counterclaim for a declaration of infringement of Amazon.com, Inc.'s ("Amazon.com") U.S. Patent No. 6,269,369.[1]  (D.I. 27).  Amazon.com submits this letter to briefly discuss the *Benitec* opinion.

      *Benitec* is applicable to Cordance's motion to dismiss only to the extent that it, like *Teva* and *SanDisk*, affirms *Medimmune's* rejection of the Federal Circuit's reasonable apprehension of suit test including the related and also rejected requirement that there be an explicit threat or

---

[1] Cordance's Motion to Dismiss charges that Amazon.com's counterclaim for declaratory relief does not satisfy the case or controversy jurisdictional requirement.  Cordance's motion is premised on the Federal Circuit's "reasonable apprehension of suit" standard as articulated in *Lang v. Pacific Marine and Supply Co.*, 895 F.2d 761, 764 (Fed. Cir. 1990).  The Supreme Court's recent *Medimmune* decision, however, indicated that the Federal Circuit's "reasonable apprehension of suit" requirement conflicted with Supreme Court precedent and, in response, the Federal Circuit has since expressly abandoned it.  *See Medimmune, Inc. v. Genentech, Inc.*, 127 S. Ct. 764, 774, fn. 11 (2007); *see also SanDisk Corp. v. STMicroelectronics, Inc.*, 480 F.3d 1372, 1380 (Fed. Cir. 2007); *Teva Pharms. USA, Inc. v. Novartis Pharms. Corp.*, 482 F.3d 1330, 1339 (Fed. Cir. 2007).

During the May 10, 2007 teleconference on Amazon.com's motion to compel, the Court ordered the parties to submit briefs addressing how the Supreme Court and Federal Circuit decisions eliminating the "reasonable apprehension of suit" requirement impact Cordance's Motion to Dismiss.  On May 24, 2007 Cordance and Amazon.com submitted letter briefs discussing *Medimmune*, *SanDisk* and *Teva*.  (D.I. 56 & 57).

The Honorable Mary Pat Thynge
Page 2

other specific action by the patentee as a predicate to declaratory judgment jurisdiction. *Benitec,* 2007 U.S. App. LEXIS 17299 at *6-9.

In *Benitec* the patentee filed an action against the defendant (Nucleonics) for patent infringement. Nucleonics moved to dismiss arguing "Benitec has shot before there is even a target" because its activities were immunized from infringement by the safe-harbor in 35 U.S.C. § 271(e)(1) and, under the complicated statutory regime in § 271(e), Benitec's suit was premature, as Nucleonics was at least 6-8 years away from being able to file a New Drug Application. *Id*. at *2-3. The issue in Nucleonics' motion was before the Supreme Court in *Merck KGaA v. Integra Lifesciences I, Ltd.*, 545 U.S. 193 (2005) and, when the Court validated Nucleonics' position, Benitec dismissed its infringement claims without prejudice. *Id.* at *3-4. In the meantime, Nucleonics had counterclaimed for a declaration of invalidity and unenforceability but the court dismissed this counterclaim along with Benitec's claims.

After dismissal of its counterclaim, in support of its position that jurisdiction existed, Nucleonics argued that its present intent to engage in allegedly infringing conduct sometime in the future established a basis for jurisdiction. *Id*. at *15, 19-20. It pointed to its planned human therapies within § 271(e)(1) Safe Harbor and a desire to investigate the possibility of animal husbandry and veterinary products. *Id.*

On its human therapies, Nucleonics earlier had argued these were not "even a target" under the regime in § 271(e), being 6-8 years away from being able to submit a New Drug Application, which itself is contingent upon successful clinical trials and during which time one has immunity under the Safe Harbor provision broadened by *Merck*. Additionally, Benitec had issued a covenant not to sue for any of Nucleonics' activities occurring on or before September 29, 2005 – more than nine months after Nucleonics filed its counterclaim.

Nucleonics' other basis for a justiciable controversy (potentially developing animal husbandry and veterinary products) was even more remote. This plan was not hatched until after Nucleonics filed its counterclaim and there was no evidence that any concrete steps had been taken towards implementing this plan. *Id.* at 20, fn. 4. Nucleonics had signed a confidentiality agreement[2] with a supplier of livestock food species. With the supplier, it hoped to discuss how Nucleonics' general technology could be used in the suppliers' industry. With that information, presumably, Nucleonics could then *begin* research on some product. Thus, Nucleonics was merely planning to plan to research, develop, test, and market a product for animal husbandry/veterinary use[3] which, if its other product were any indicator, would be at least 6-8 years away.

In light of these facts, the Federal Circuit affirmed the dismissal of Nucleonics' counterclaims on the ground that there was no "substantial controversy" between the parties. *Id*. at *24. In reaching that ruling, the Federal Circuit held that Nucleonics' plans to engage in allegedly infringing activities failed to meet the "immediacy and reality requirement of *Medimmune*." *Id*. at *22 ("[T]o allow such a scant showing to provoke a declaratory judgment suit would be to allow nearly anyone who so desired to challenge a patent."). Specifically, the

---

[2] It is unclear from the opinion whether the other party had executed the agreement.
[3] The Federal Circuit notes that it was unclear whether any such product ultimately would be outside the Safe Harbor in 271(e)(1). *Id.* at 22-23

court noted that Nucleonics had "not shown that it is engaged in any 'use' of the patented invention that could subject it to an infringement suit" by the patentee. *Id*. at 21. As such, the court held that Nucleonics had "not met its burden of showing that it is engaged in any present activity that could subject it to a claim of infringement." *Id*.

The situation in *Benitec* is not comparable to our situation where Cordance concedes that for the purposes of determining jurisdiction in the context of its motion to dismiss, the Court should assume the following facts to be true:

- "'Cordance is in the business of standardizing, promoting, commercializing and/or operating' the accused products."

- "The Unified Address Book Service is used in conjunction with the 'Contact Service' and will soon be made available to the public if not already so available."

- "Cordance has engaged in present activity and/or taken concrete steps with the intent to conduct such activity, which would constitute infringement of one or more claims of the '369 patent directly, as inducement of infringement and/or as contributory infringement."

(D.I. 61 at 2). *Benitec* involves parties that agree that no current activities could be infringing while in our case Cordance and Amazon.com concede that "Cordance has engaged in present activity and/or taken concrete steps with the intent to conduct such activity, which would constitute infringement of one or more claims of the '369 patent."

Respectfully,

*/s/ David E. Moore*

David E. Moore

DEM:nmt/809476/30763

cc:   Clerk of the Court (via hand delivery)
      Steven J. Balick (via electronic mail)
      Robert M. Abrahamsen (via electronic mail)