

**Potter Anderson & Corroon LLP**

Richard L. Horwitz
Partner
Attorney at Law
rhorwitz@potteranderson.com
302 984-6027  Direct Phone
302 658-1192  Fax

1313 North Market Street
P.O. Box 951
Wilmington, DE 19899-0951
302 984 6000

www.potteranderson.com

August 24, 2007

**VIA ELECTRONIC FILING**

The Honorable Mary Pat Thynge
United States Magistrate Judge
United States District Court
   for the District of Delaware
844 N. King Street
Wilmington, Delaware 19801

Re:    *Cordance Corporation v. Amazon.com, Inc.*, C.A. No. 06-491-MPT

Dear Judge Thynge:

Amazon.com hereby respectfully requests the Court to enter the protective order attached hereto as Exhibit A.  Two issues remain with respect to the form of protective order: (1) whether a patent prosecution bar should be imposed on those with access to confidential information; and (2) whether Cordance's employees should have access to Amazon.com's highly confidential information.  The current dispute will be heard by the Court on August 28, 2007.

**1. Patent Prosecution Bar.**  Amazon.com has proposed that individuals who are involved in patent prosecuting activities either do not have access to confidential information of the other party or do not participate in patent prosecuting activities in the field of the other party's accused products during the litigation and for 1 year after its termination, including any appeals. *See* Exhibit A at ¶¶ 4, 7.

Cordance objects to the proposed prosecution bar for two reasons.  First, it maintains that no prosecution bar is necessary as the protective order allows use of confidential material only for the purpose of litigating this case.  Second, it contends that its current litigation counsel Wolf, Greenfield prosecute patents in the field of Amazon.com's business—online e-commerce—and wish to continue to do so after viewing Amazon.com's confidential information.  Neither of Cordance's objections withstands scrutiny.

Courts routinely recognize the need for the additional protections of the proposed prosecution bar because patent prosecution creates a high risk of inadvertent misuse or disclosure of confidential information that protective orders are designed to eliminate.  *See Commissariat A L'Energie Atomique ("CEA") v. Dell Computer Corp.*, 2004 U.S. Dist. LEXIS 12782, at *7-8 (D. Del. 2004) (restricting access to confidential information by prosecuting attorneys because patent prosecution implicates competitive decision making as claims may be drafted to read on competitors' products).  Even if Cordance's attorneys will comply with all their ethics obligations and with the protective order requirement to use confidential information only for the purposes of the litigation, their human ability to separate information they learn from Amazon.com's confidential production in this case from information they learn on their own or from their clients presents an obvious risk of inadvertent disclosure of Amazon.com's

The Honorable Mary Pat Thynge
August 24, 2007
Page 2

confidential research, technical and business information. "The level of introspection that would be required is simply too much to expect, no mater how intelligent, dedicated, or ethical the ... attorneys may be." *Id.*, at \*9. Moreover, this District has expressly rejected Cordance's argument that generic provisions provide adequate protection in this context. *See Motorola, Inc. v. Interdigital Tech. Corp.*, 1994 U.S. Dist. LEXIS 20714, at \*7-8 (D. Del. 1994) (rejecting an approach based on the "faith in the attorneys ability to respect the protective order while pursuing future patent prosecutions" and imposing a patent prosecution bar).

The history of Cordance's patent-in-suit illustrates why its second objection does not withstand scrutiny. Wolf, Greenfield not only prosecuted the very patent Cordance asserts in this litigation against Amazon.com—the '710 patent—but has done so with a clear direction of combining patent prosecution and litigation strategy. The specification of the '710 patent and the claims issuing from its parent applications are essentially unrelated to e-commerce. After Amazon.com's 1-Click® ordering technology—which Cordance accuses here—gained renown in the e-commerce field, Wolf, Greenfield and Cordance tried to draft claims to cover e-commerce to assert against Amazon.com and seek financial backing for litigation against Amazon.com. Before the '710 patent was even issued, Cordance—through its attorneys at Wolf, Greenfield—has submitted a claim to its insurer for coverage of patent litigation costs against Amazon.com for infringement of the '710 patent. *See* Exhibit B at ¶ 9[1]. As this past demonstrates, Cordance's counsel can be called on by its clients to try to claim in the Patent Office subject matter covering Amazon.com's business and advocate for their ability to litigate those claims against Amazon.com.

Amazon.com's proposal eliminates these risks as it prevents those with access to confidential information produced in this action from participating in prosecuting activities during this litigation and for one year after its termination, including any appeals. This offers Cordance's attorneys a choice to either have access to Amazon.com's confidential information and agree not to prosecute patents in the field of online commerce for a limited amount of time, or not have access to Amazon.com's confidential information. *See CEA*, 2004 U.S. Dist. LEXIS 12782, at \*11 (providing litigation counsel with a choice of either to prosecute patents or have access to confidential information). This proposal does not restrict or disqualify representation of Cordance by its litigation counsel.

Amazon.com does not propose anything out of the ordinary. This District routinely approves prosecution bar provisions to protect confidential information disclosed in litigation and prevent serious injuries that may arise should confidential information be used in future patent prosecution activities. For example, Your Honor approved a prosecution bar provision in *E.I. Dupont de Nemours & Co. v. MacDermid, Inc.*, C.A. No. 02-303. *See also, e.g., Ingenio Filiale De Lot-Quebec v Gamelogic*, C.A. No. 04-1532-KAJ; *Hitachi v. BorgWarner*, C.A. No. 05-048-SLR; *Ventana Medical Systems v. Dakocytomation California Inc.*, C.A. No. 04-1522-GMS (patent prosecution bar for three years after termination of litigation which is significantly broader than the one proposed by Amazon.com) (Exhibits E-H). Because courts bar prosecuting activities "relating to the broad subject matter of the patents in suit," Cordance's attorneys should not be able to prosecute patents in the field of on-line commerce—the field of the asserted '710 patent and Amazon.com's business. *Motorola*, 1994 U.S. Dist. LEXIS 20714, at \*8-9; *CEA*, 2004 U.S. Dist. LEXIS 12782, at \*10.

---

[1] The '710 patent was issued on June 29, 2004.

The Honorable Mary Pat Thynge
August 24, 2007
Page 3

      **2.  Employee Access to Amazon.com's Highly Confidential Information.**  The parties also dispute whether Cordance's employees, Brian Lewis and Drummond Reed, can have access to Amazon.com's highly confidential information.  Courts preclude access to highly confidential information from those who are involved in competitive decision making, which is a "shorthand for [] activities, association, and relationship … that are such as to involve counsel's advice and participation in any or all of the client's decisions (pricing, product design, etc.) made in light of similar or corresponding information about a competitor." *U.S. Steel Corp. v. United States*, 730 F.2d 1465, 1468 n.3 (Fed. Cir. 1984).  The competitor concept has been broadly construed to include a party whose highly confidential information can potentially be of value. *R.R. Donnelley & Sons Co. v. Quark, Inc.*, 2007 U.S. Dist. LEXIS 424, at *6 n.2 (D. Del. 2007).

      Messrs. Lewis and Reed are involved in setting the competitive direction for Cordance and making competitive decisions.  Mr. Lewis is Cordance's General Counsel.  Although the mere status of in-house counsel does not preclude access to highly confidential information, in-house counsel's activities and relations with the party may justify denial of access. *Affymetrix, Inc. v. Illumina, Inc.*, 2005 U.S. Dist. LEXIS 15482, at *7-8 (D. Del. 2005).  Mr. Lewis is also a member of Cordance's **Management** Team. *See* Exhibit C.  In this capacity, Mr. Lewis must understand Cordance's business and marketing plans, including product and service designs and how they relate to other market players' products and services, and a serious threat exists that Mr. Lewis will not be able to separate knowledge that he has obtained through Amazon.com's highly confidential information from the knowledge he has obtained through other sources.  Such risk must be prevented by the protective order in this case. *See Affymetrix*, 2005 U.S. Dist. LEXIS 15482, at *8 (denying access to confidential information by an in-house attorney who is also a member of a company's management team); *U.S. Steel*, 730 F.2d 1465 at 1468 ("where in-house counsel are involved in competitive decisionmaking, it may well be that a party seeking access should be forced to retain outside counsel or be denied the access recognized as needed.").

      Mr. Reed, Cordance's Chief Technology Officer responsible for development of new product designs and innovations, is also involved in competitive decision making.  Moreover, he is an inventor of multiple patents and is actively involved in the prosecution of his patents. *See, e.g.*, Exhibit D.  Indeed, Mr. Reed through his attorneys at Wolf, Greenfield, has already drafted claims to cover Amazon.com's products in one of his patents—the asserted '710 patent.  In light of this history, Mr. Reed's participation in patent prosecution maters and his role of Chief Technology Officer create a high risk of serious injury to Amazon.com[2].

      Cordance maintains that access to Amazon.com's highly confidential information by Messrs. Lewis and Reed is necessary so that they "can intelligently participate in strategy decisions, including determinations relating to the technical and legal merits of the case."  Abrahamsen email of 5/17/2007.  But, "the risk of inadvertent disclosure cannot be overcome by the mere contention that access to confidential information is necessary for case management." *R.R. Donnelley*, 2007 U.S. Dist. LEXIS 424, at *3-4.  Moreover, both of these individuals can participate in strategy decisions without access to Amazon.com's highly confidential information, so Cordance's position should be rejected.

---

[2] Cordance maintains that because the parties are not direct competitors, competitive decision making analysis is irrelevant.  But so long as the confidential information may be of value to the receiving party, access to it may be denied. *See R.R. Donnelley*, 2007 U.S. Dist. LEXIS 424, at *6 n.2.  Cordance's past actions indicate that Amazon.com's information can be of value to it.

The Honorable Mary Pat Thynge
August 24, 2007
Page 4

Respectfully,

/s/ Richard L. Horwitz

Richard L. Horwitz

cc:    Clerk of the Court (via hand delivery)
       Steven J. Balick (via electronic mail)
       Robert M. Abrahamsen (via electronic mail)

# EXHIBIT A

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

CORDANCE CORPORATION,

        Plaintiff,

    v.

AMAZON.COM, INC.,

        Defendant.

Civil Action No. 06-491- MPT

## STIPULATED [PROPOSED] PROTECTIVE ORDER

To facilitate discovery and protect, pursuant to Federal Rule of Civil Procedure 26(c), the confidentiality of and rights to information and documents disclosed in connection with this litigation, the parties hereby stipulate to the following:

1.    ***Applicability of This Protective Order.***  All information, things, and documents filed with the Court or produced by any party or non-party in discovery in this action shall be governed by this Protective Order.

2.    ***Use of Information Produced Pursuant to This Order.***  Information and material produced or exchanged in discovery in this case and designated by a party or non-party as "Confidential" or "Confidential – Outside Attorneys' Eyes Only" pursuant to the terms of this Protective Order (hereafter, "Confidential Material") shall not be made available to any person or entity except as authorized under this Protective Order.  Confidential Material shall be used, by the party or parties to whom the information is produced, solely for the purpose of litigating the above-captioned action.  Unless otherwise agreed in writing by the producing party or so ordered by a court, such information and material shall not either (1) be used or disclosed to any other person or entity or (2) be used or disclosed for any other use or purpose.  For purposes of this Protective Order, the party or non-party designating information or material as Confidential

Material is defined as the "Designating Party." Nothing contained in this Protective Order shall affect the right of a Designating Party to disclose or use its own Confidential Material for any purpose. Nothing in this Protective Order shall limit or bar any attorney from rendering advise or counsel to his or her client with respect to this litigation or, in the connection with rendering such advise or counsel, from conveying such attorney's evaluation or assessment of Confidential Material, provided that, such conveyance, advise, or counsel does not disclose the contents of any Confidential Material produced by another party herein, which disclosure would be contrary to the terms of this Protective Order.

      3.     **_Designation of Confidential Materials._** A party or non-party may designate Confidential Materials with one of the following Confidential Designations:

      (a)     **_Confidential Information Designation._** A party or non-party may designate as "Confidential" any document, material, item, deposition testimony, or information that is filed with the Court or produced in discovery in this action and is or contains confidential technical, research, development, private, financial, or commercial information of the Designating Party.

      (b)     **_Confidential – Outside Attorneys' Eyes Only Designation._** A party or non-party may designate as "Confidential – Outside Attorneys' Eyes Only" any document, material, item, deposition testimony, or information that is filed with the Court or produced in discovery in this action and is or contains highly confidential financial, commercial, proprietary, marketing or technical information (including but not limited to source code and detailed nonpublic financial information) the disclosure of which, to persons other than those described in paragraphs 7(a), 7(b), 7(c), 7(d), 7(e), 7(f), 7(h) or 7(f) below, the Designating Party in good faith believes could be likely to harm the Designating Party's competitive position.

      4.     **_Patenting and Patent Protected Persons_**

      (a)     "Patenting" shall mean and include:

      (i)     preparing and/or prosecuting any patent application (or portion thereof), whether design or utility, and either in the United States or abroad (and including

applications filed under the Patent Cooperation Treaty) relating to Confidential information received in this litigation that relates to the field of the other parties' accused products (the field of Amazon.com's accused products being online e-commerce technology and the field of Cordance's accused products being digital identity as standardized by xdi.org);

(ii)    preparing patent claim(s) relating to Confidential information received in this litigation that relates to the field of the other parties' accused products (field of each parties' accused product as defined in (i) above);

(iii)    providing advice, counsel or suggestion regarding, or in any other way influencing, claim scope and/or language, embodiment(s) for claim coverage, claim(s) for prosecution, or products or processes for coverage by claim(s) relating to Confidential information received in this litigation that relates to the field of the other parties' accused products (field of each parties' accused product as defined in (i) above); and

(iv)    assisting, consulting with, supervising, and/or providing counsel to anyone in connection with doing any of the foregoing.

(b)    The "Patent Protected Persons" for a party shall mean and include any and all persons involved, either directly or indirectly, with Patenting any application where any, right, title or interest in the application are owned by such party and/or there exists an obligation to transfer rights in the application to the party, and includes, but is not limited to, any person who is an inventor for any party of any method, apparatus or other invention that is or is anticipated to be the subject of a patent or application therefor. Patent Protected Persons specifically includes, but is not limited to, all individuals associated with the filing or prosecution of the patent application within the meaning of 37 C.F.R. 1.56. "Party" as used here shall include affiliates, parents, subsidiaries, and other entities which are under common ownership and control.

5.    ***Designating and Marking Confidential Material.***  Confidential Material shall be designated and marked as follows:

(a)     A document is to be designated as Confidential Material by stamping or writing on it one of the following legends, or an equivalent thereof:  "Confidential" or "Confidential – Outside Attorneys' Eyes Only."  Such legend shall be placed on the first page of the document and on each page that the Designating Party claims to contain Confidential Material.

(b)     Information or material produced digitally, e.g., on a magnetic or optical medium or by network communication, is to be designated as Confidential Material by marking the medium, container or communication with one of the legends specified in subsection 5(a) above and by appending the such legend to the file names or designators.  If any person or entity who receives such a designated medium prints or otherwise transfers to another medium any of the information, any resulting document or other medium shall be marked by that person or entity as Confidential Material as set forth above.

(c)     A physical exhibit, including but not limited to any electronic file or document printed for use at a deposition, in a court proceeding, or for provision to a qualified expert, is to be designated as Confidential Material as set forth above.

(d)     A discovery response is to be designated as Confidential Material by placing, on the first page of the set of responses and on each page that contains information that the Designating Party claims to be Confidential Material, one of the legends specified in subsection 5(a) above.

(e)     Portions or the entirety of a deposition transcript (including exhibits not already designated under this protective order) are to be designated as Confidential Material (1) by making a statement to that effect on the record, during the deposition, or (2) by sending to all other parties, the court reporter for the deposition, and all other persons known to the Designating Party to have received a copy of the deposition transcript, on or before thirty (30) days, or as otherwise agreed by the parties, after being notified by court reporter that the deposition transcript is available, a letter or other written notice designating the portions or entirety of the transcript with a Confidential Designation.  All deposition transcripts and

associated exhibits are to be treated presumptively as Confidential – Outside Attorneys' Eyes Only Material until the expiration of such thirty day period.  The letter or other notice shall cite this Protective Order, identify the appropriate level of confidentiality, and, if available, identify the pages and lines, and/or exhibits, to be Confidential Material.  Each copy of the transcript, and portions thereof, so designated shall be marked, by the person receiving the letter or other notice, with one of the legends specified in subparagraph 5(a) above indicating the level of confidentiality claimed by the Designating Party and shall be governed by the terms of this Protective Order.  If a deposition or portion thereof is designated on the record, during the deposition, with one of the Confidential Designations, the deposition shall continue in the absence of all persons to whom access to Confidential Material is not permitted under this Protective Order.  The court reporter or videographer shall separately mark any pages of the transcript of the deposition or hearing that have been designated to contain Confidential Material.  Copies of the pages marked as containing Confidential Material may be provided only to persons permitted by the other provisions of this Protective Order to receive such Confidential Material.

6.      ***Inadvertent Misdesignation.***  A Designating Party that inadvertently fails to mark an item with one of the Confidential Designations or marks an item with an incorrect designation of confidentiality at the time of the production shall have 15 days after learning of the inadvertent failure to correct its mistake.  The correction shall be made in writing and shall be accompanied by substitute copies of each item, appropriately marked as Confidential Material.  Within five days of receipt of the substitute copies, the receiving party shall return or destroy the previously unmarked, or incorrectly marked, items and all copies thereof.

7.      ***Disclosure of Information Designated Confidential.***  Documents, materials, items, testimony or information designated Confidential pursuant to this Protective Order, or copies or extracts therefrom, and compilations and summaries thereof, and the information therein, may be given, shown, made available to or communicated in any way only to the following persons, provided that (1) such persons are not Patent Protected Persons for the

receiving party, and (2) shall not during the pendency of this litigation and for one (1) year after the conclusion thereof, including any appeals, participate in any Patenting for such party:

(a)    Retained outside counsel of record to any party to this litigation, and the employees of such outside counsel (or such counsel's law firm) who work under the supervision of, support such counsel and assist such counsel in this litigation and who are not members, employees, officers or directors of a party to this litigation;

(b)    The contractors or vendors of retained outside counsel of record to any party to this litigation (or such counsel's law firm) who work under the supervision of, support such counsel and assist such counsel in this litigation and who are not members, employees, officers, or directors of a party to this litigation, provided such contractors or vendors do not have an interest in the outcome of this litigation;

(c)    Independent consultants or expert witnesses performing services in connection with the prosecution or defense of this litigation, provided that each such person is not a member, officer, director, or employee of or for any party to this litigation, and provided that each such person

(i)    executes a copy of the Certification attached to this Order;

(ii)    has been previously approved pursuant to the procedure in paragraph 11(a), below;

(iii)    is not presently engaged in Patenting and shall not engage in any Patenting during the pendency of this litigation, including any appeals therefrom, and for a period of two years thereafter.

(d)    Deposition witnesses, where at least one of the following conditions applies:

(i)    The witness is an employee of the Designating Party when the disclosure is made;

(ii)    the attorney taking the deposition and showing the witness the Confidential Material represents the Designating Party;

(iii)    the witness's name appears on the Confidential Material as a person who has previously seen or received the Confidential Material, or it is otherwise established that the witness has previously seen, received, or had access to the Confidential Material or knows the information contained within it;

(iv)    the Designating Party has consented on the record of the deposition to the showing of the Confidential Material to the witness; or

(v)    at least ten days before the deposition, the party wishing to show the witness the Confidential Material notifies the Designating Party in writing of its intent to do so, with a specific listing of the Confidential Material to be shown, and the Designating Party fails to provide, within ten (10) days of receipt of the notice or two business days prior to the deposition, whichever is later, written objection to this use of Confidential Material.  If a timely written objection is provided, the Confidential Information listed in the written objection shall not be shown to the witness unless and until the objection is withdrawn or the party wishing to show that Confidential Material to the witness moves for and obtains appropriate relief from the Court.  Witnesses being shown Confidential Material under this subsection must sign the Certification annexed to this Order before being shown the Confidential Material unless the witness's name appears on the Confidential Material as a person who has previously seen or received the Confidential Material, or it is otherwise established that the witness has previously seen, received, or had access to the Confidential Material or knows the information contained within it.  Counsel defending the deponent to which Confidential Information is disclosed during deposition shall provide to counsel for the Designating Party, prior to witnesses being shown Confidential Material, a copy of the executed Certification.

(e)    The Court in this proceeding, Court personnel, and Court reporters;

(f)    Litigation support services, including independent document copiers, graphic artists and jury consultants who have an obligation to keep such information confidential;

(g)    Any named party to the litigation, including any present or former employee thereof to whom it is necessary that the material be shown for purposes of this litigation, but only if such person is not involved, directly or indirectly, in Patenting (for example, an inventor for any party of any method, apparatus or other invention that is or could be the subject of a patent);

(h)    Mock Jurors or Focus Group Members engaged by a jury consultant or counsel in preparation for trial, provided that

(i)    No such persons are officers, directors, or employees of any of the parties to this action;

(ii)    That any such persons shall first agree in writing to be bound by this Protective Order (by signing the nondisclosure agreement attached hereto as Exhibit B or other Certification with equivalent terms with redactions of the identity of some or all of the Parties);

(iii)    Such agreements be retained under the control of counsel until final termination of this action; and

(iv)    Upon final termination of this action and at the written request of the person or entity designating or producing such disclosed information, all such executed agreements by mock jurors and focus group members to whom such materials have been disclosed shall be provided upon request to counsel of record for the person or entity that designated or produced such materials.

(i)    Any other person as to whom the Designating Party first agrees in writing.

8.    ***Disclosure of Information Designated Confidential – Outside Attorneys' Eyes Only.***  Materials designated "Confidential – Outside Attorneys' Eyes Only" may be disclosed only to the persons described in paragraphs 7(a), 7(b), 7(c), 7(d), 7(e), 7(f), 7(h), or 7(i).

9.    ***Protections For Parties' Source Code.***  All electronic source code produced by a party to this suit pursuant to pretrial discovery shall be subject to the same restrictions as information designated as Highly Confidential – Outside Attorneys' Eyes Only.  In addition, the

following restrictions shall apply to electronic source code designated by a party to this suit as Highly Confidential – Outside Attorneys' Eyes Only – Source Code:

      (a)     Three electronic copies of source code or executable code shall be made available for inspection on three stand-alone computers;

      (b)     The stand-alone computers shall be password protected and supplied by the source code provider;

      (c)     The stand-alone computers shall be located at outside counsel's office or other location that the parties may agree upon or at offices of experts who have been approved under this protective order;

      (d)     Access to the stand-alone computer shall be permitted, after notice to the provider and an opportunity to object, only to outside counsel representing the requesting party and experts retained by the requesting party, provided each such person has been approved under the protective order in place;

      (e)     Excerpts of source code may be printed using printers attached to the stand-alone computers only for the purpose of facilitating the review thereof or for compiling deposition exhibits.  The parties shall endeavor to keep to a minimum the amount of source code that is so printed and shall promptly destroy any printed excerpts that are determined not to be relevant to any claim or defense of any party.  Every such printed page must be affixed with a legend Highly Confidential – Outside Attorneys' Eyes Only and shall be treated as such in accordance with the provisions of this protective order.  At no point may the entire source code, or any substantial portions thereof, be included in electronic documents such as legal memoranda, exhibits, reports, declarations, or other word processing or presentation documents.

      (f)     The source code provider shall provide a manifest of the contents of the stand-alone computer. This manifest, will list the name, location, and MD5 checksum of every source and executable file being produced on the computer.

      (g)     The stand-alone computer shall include software utilities which will allow counsel and experts to view, search, and analyze the source code. At a minimum, these utilities

should provide the ability to (i) view, search, and line-number any source file, (ii) search for a given pattern of text through a number of files, (iii) compare two files and display their differences, (iv) compute the MD5 checksum of a file, and (v) print copies of selected portions of the source code.

        (h)     If the court determines that the issue of missing files needs to be addressed, the source code provider will include on the stand-alone computer the build scripts, compilers, assemblers, and other utilities necessary to rebuild the application from source code, along with instructions for their use.

        10.     ***Protests of Designation of Confidential Material.***  Protests of the designation of Confidential Material will occur only as follows:

        (a)     If a party believes that material bearing a Confidential Designation is not in fact the proper subject for such designation, or should be reclassified or revealed to an individual not otherwise authorized to have access to such material under the terms of this Order, then such party shall provide to the Designating Party written notice of this disagreement with the designation.  The parties shall first try to resolve such dispute in good faith on an informal basis.

        (b)     If the parties are unable to resolve their dispute, then the party challenging the designation may request appropriate relief from the Court.  It shall be the burden of the Designating Party to establish that the contested material is confidential.  In any event, unless and until a Court ruling is obtained changing a designation, or the parties agree otherwise, the material involved shall be treated according to its designation.

        11.     ***Procedure for Qualifying Independent Experts and Consultants.***  In order for an independent expert or consultant to be permitted access to materials bearing a Confidential Designation the counsel of the party employing the expert or consultant must notify in writing the Designating Party or parties, at least ten (10) business days before allowing such access (or such shorter period to which the Designating Party agrees in writing).  The identification of an expert or consultant pursuant to this Order shall not be construed as the identification of an

expert trial witness under Federal Rule 26 (a)(2), and shall not constitute a waiver of attorney work-product protection or the attorney client privilege.

    (a)    *Contents of the Written Notification:*  Such written notice shall include the following: (i) The name of the expert or consultant; (ii) The present employer and title of the expert or consultant; (iii) a copy of a Certification (attached hereto as Exhibit A) signed by the expert or consultant that states that the expert or consultant has read and understood the terms of this Order and agrees to be bound by its terms; and (iv) a current curriculum vitae that lists all employers and clients to whom the expert or consultant has provided services in the past five (v) years (except where disclosure of employers or clients would be prohibited by a court order or nondisclosure agreement, in which case a copy of such court order or nondisclosure agreement shall be provided to opposing counsel to verify the existence of the non-disclosure obligations).

    (b)    *Objections by Disclosing Parties:*  Before the ten (10) day period from the receipt of the written notification has expired, a Designating Party may object in writing to the disclosure of materials bearing a Confidential Designation to the expert or consultant in question. Should a Designating Party so object, no material bearing a Confidential Designation that is the subject of the Designating Party's objection shall be disclosed to the expert or consultant in question until the objection has been resolved by the parties or by the Court.

    12.    ***Use of Confidential Material by Designating Party.***  Nothing in this Protective Order limits a party's ability to show materials which that party has designated with a Confidential Designation to whomever the Designating Party may deem appropriate.  Further, nothing in this Protective Order limits a party's ability to show materials designated by another party with a Confidential Designation to that Designating Party, including any present officer, director, employee, or representative thereof.

    13.    ***Jurisdiction.***  Each person receiving Confidential Material under the terms of this Protective Order hereby agrees to subject himself or herself to the jurisdiction of this Court for purposes of any proceedings relating to the performance under, compliance with, or violation of this Protective Order.

14.    ***Protecting Confidential Materials.***  Each person who receives any Confidential Material shall exercise due and proper care, in connection with the storage, custody, use, and dissemination of such material, to avoid any intentional or inadvertent disclosure to persons to whom disclosure is not permitted under this Protective Order.

15. ***Confidential Materials to Be Filed Under Seal.***  Any Confidential Material designated with a Confidential Designation that is to be filed with a Court in connection with any proceedings herein, shall be filed with the clerk of the court in accordance with the Court's then subsisting procedures therefore.  Unless proscribed, the heading, case caption, case number, and document title must be prominently marked on the front of a sealed envelope in addition to the following legend:

**CONFIDENTIAL – FILED UNDER SEAL**

**SUBJECT TO A PROTECTIVE ORDER**

16.    ***Information Protected by Privilege, Work Product, or Other Doctrine.***  The inadvertent production of any document or other disclosure of Confidential Material which the Designating Party contends is subject to the attorney-client privilege, work-product protection, or any other privilege or protection against discovery shall not necessarily be deemed a waiver in whole or in part of the claim of privilege or protection, either as to the specific document or the information disclosed or as to any other document or information relating thereto.  Within a reasonable time after the discovery of the inadvertent production, the Designating Party shall give notice to the receiving party that privileged documents or information have been inadvertently produced or disclosed and request the return of such documents.  Any document or portion of transcript, including all copies thereof, constituting or containing information as to which notice of inadvertent production is given shall be returned to the Designating Party within fifteen (15) days of such demand.  If the receiving party objects to the claim of privilege, the claim of inadvertent production and/or the reasonableness of the notice given, the receiving party

and the Designating Party shall attempt to resolve the dispute.  If the dispute is not resolved, the receiving party may move the Court to compel the re-production of the document(s) at issue. From the time of the Designating Party's notification of inadvertent production, any documents or information as to which notice is given shall be deemed and treated as privileged and shall not be used for any purpose until the Court enters an order ruling otherwise, or until the receiving party and the Designating Party otherwise agree. All communications between counsel and any expert approved under this protective order shall be treated as litigation work product for this litigation as well as for any other lawsuits or proceedings except the expert relies on them for his or her opinions.

17.    ***Conclusion of Litigation.***  All provisions of this Protective Order restricting the communication or use of Confidential Material shall continue to be binding after the conclusion of this action, unless otherwise agreed by all the parties or ordered by the Court.  Upon conclusion of the litigation, including the running of any time to appeal or to move for relief under Fed. R. Civ. P. 60(B)(1)-(3), a party in possession of Confidential Material, other than that which is contained in pleadings, correspondence, attorney files, and deposition transcripts, shall either (a) return such documents, no later than 30 days after conclusion of this action, to counsel for the party or non-party who provided such information, or, upon consent of the Designating Party, (b) destroy the documents within that time period and certify in writing within that time period that the documents have been destroyed.

18.    ***Use of Confidential Material During Court Proceedings.***  If any Confidential Material is used in any Court pretrial proceeding in this litigation (including, but not limited to, conferences, oral arguments, and hearings), the Confidential Material shall not lose its status as Confidential Material through such use.  The parties shall take all steps reasonably necessary to protect the confidentiality of the Confidential Material during any such use, including, but not limited to, requesting *in camera* proceedings.  The terms of this Protective Order do not preclude, limit, restrict, or otherwise apply to the use of documents at trial.  The parties agree to

meet and confer in good faith prior to trial to establish procedures for the use of Confidential Material at trial.

19.     ***Improper Disclosure of Confidential Materials.***  If any Confidential Material is disclosed to any person to whom such disclosure is not authorized by this Protective Order, or other than in a manner authorized by this Protective Order, the party responsible for the disclosure shall, upon discovery of the disclosure, immediately inform the Designating Party of all facts pertinent to the disclosure that, after due diligence and prompt investigation, are known to the party responsible for the disclosure (including the name, address, telephone number, and employer of the person to whom the disclosure was made), shall immediately take all reasonable efforts to prevent further disclosure by each unauthorized person who received such information, and shall immediately require each unauthorized person to return all Confidential Material that was improperly disclosed to that person, all copies made of the improperly disclosed Confidential Material, and all documents containing excerpts from or references to the improperly disclosed Confidential Material.

20.     ***No Admissions.***  Compliance with this Protective Order in no way constitutes an admission by any party that any information designated pursuant to this Protective Order is or is not proprietary, confidential, or a trade secret.

21.     ***Modification of Protective Order.***  Each party reserves the right to request that the Court modify the terms of this Protective Order in the event that the party believes that a modification is necessary.  If such an application is made, all signatories of copies of the Certification, as well as persons described herein, shall remain bound by this Protective Order unless and until it is modified by the Court.

SO STIPULATED**:**

DATED: _____, 2007                    CORDANCE CORPORATION


By _____
    Steven J. Balick
    ASHBY & GEDDES
    Attorneys for Plaintiffs

DATED: _____, 2007                    CORDANCE CORPORATION


By _____
    Michael A. Albert
    WOLF, GREENFIELD & SACKS, P.C.

    Attorneys for Plaintiffs

DATED: _____, 2007                    AMAZON.COM, INC.


By _____
    Richard L. Horwitz
    POTTER, ANDERSON & CORROON LLP

    Attorneys for Defendant

DATED: _____, 2007                    AMAZON.COM, INC.


By _____
    Lynn H. Pasahow
    FENWICK & WEST LLP

    Attorneys for Defendant

IT IS SO ORDERED.


Dated: _____        _____

                                     Mary Pat Thynge
                                     United States Magistrate Judge

**EXHIBIT A**

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| CORDANCE CORPORATION, | Civil Action No. 06-491- MPT |
| Plaintiff, | |
| v. | |
| AMAZON.COM, INC., | |
| Defendant. | |

**CONSENT TO BE BOUND BY STIPULATED PROTECTIVE ORDER**

I, the undersigned, hereby acknowledge that I have read the Stipulated Protective Order in this case, understand its terms, agree to be bound by them, and consent to the jurisdiction of the United States District Court for the District of Delaware to enforce them.  I acknowledge that I will treat any Confidential Material I receive in this action strictly according to the terms of the Protective Order, and I understand that any unauthorized use of the Confidential Material I receive constitutes contempt of court.

Dated: _____          _____

**EXHIBIT B**

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| CORDANCE CORPORATION, | Civil Action No. 06-491- MPT |
| Plaintiff, | |
| v. | |
| AMAZON.COM, INC., | |
| Defendant. | |

**NONDISCLOSURE AGREEMENT**
**(FOR UNDERTAKING BY MOCK JURORS OR FOCUS GROUP MEMBERS)**

I hereby acknowledge that in the course of my activities in this case, I may receive confidential research, development, commercial, financial, marketing, or technical information; that such information is normally kept secret from the public at large, from the parties' competitors, and even from many or most employees of the party that owns that information; and that the disclosure of such information would be likely to harm the competitive position of the party that owns that information.

I hereby agree that any unauthorized use or disclosure of the Confidential Material I receive constitutes contempt of court, and shall be punishable as such; that I will exercise due and proper care in connection with the storage, custody, and use of such material; and that, at the conclusion of my activities in this case, I will promptly return all information that I have received from any party to this case or their attorney.

I hereby consent to the jurisdiction of the United States District Court for the District of Delaware to enforce this Agreement.

Dated: _____          _____

# EXHIBIT B

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

CORDANCE CORPORATION
       Plaintiff,

v.

UNDERWRITERS AT LLOYD'S, LONDON
       Defendant.

Misc. No. _____

## PETITION TO COMPEL ARBITRATION

Cordance Corporation ("Cordance") brings this Petition to compel arbitration against the Underwriters at Lloyd's, London ("Lloyd's").

## **THE PARTIES**

1.      Plaintiff Cordance is a Washington Corporation with its principal place of business at 3020 Issaquah-Pinelake Road #74, Sammamish, WA 98075.

2.      On information and belief, Defendant Lloyd's is an association of insurance underwriters with its principal place of business at One Lime Street, London, EC3M 7HA, United Kingdom.

## **JURISDICTION AND VENUE**

3.      This is a petition to compel arbitration pursuant to the Federal Arbitration Act, 9 U.S.C. § 1 et seq. and the Massachusetts Uniform Arbitration Act, Mass. Gen. L. Ch. 251 § 2 et seq. There is diversity of citizenship between the parties. This Court has jurisdiction pursuant to 28 U.S.C. § 1332.

4.      This Court has personal jurisdiction over Defendant. Defendant does business in Massachusetts, and has contractually agreed to submit to the jurisdiction of courts in the United States.

## THE AGREEMENT TO ARBITRATE

5.      On October 6, 2000, Cordance and Lloyd's entered into an insurance agreement ("the Agreement") providing for binding arbitration of disputed claims of coverage.  The Agreement is attached as Exhibit 1.

6.      The relevant portion of the Agreement reads as follows: "Any dispute between the INSURED and Underwriters arising out of Authorization under this Certificate as it relates to the opinion of independent patent counsel shall be promptly referred to arbitration for final determination."

7.      The Agreement also provides: "For the purposes, and only for the purposes, of effectuating the foregoing arbitration provision, including, without limitation, the enforcement of any award entered at such an arbitration.  Underwriters agree as follows: It is agreed that in the event of the failure of Underwriters hereon to pay any amount claimed to be due under this insurance, Underwriters hereon, at the request of the NAMED INSURED, will submit to the jurisdiction of a court of competent jurisdiction within the United States."

## LLOYD'S REFUSAL TO AUTHORIZE LITIGATION UNDER THE AGREEMENT

8.      The Agreement provides licensing failure indemnity coverage.  Under the Agreement, Lloyd's is obligated to authorize and cover the costs of a patent infringement lawsuit for an amount up to $5,000,000 on the condition that an independent patent counsel review the patent claims and accused product and issue an opinion that the insured patent has been infringed and is not subject to valid assertions of invalidity, unenforceability or inequitable conduct, and that there are no issues present which would present a material impediment to successful prosecution of the litigation.

9.      On August 7, 2003, Cordance submitted a notice of its claim under the Agreement to Lloyd's.

10.     On October 12, 2004, an independent patent counsel completed its review of the insured patent and accused product and sent an opinion to Lloyd's.  That opinion concluded: "Given all of the issues discussed above, however, we believe that the Insured's claim has merit, and the Insured **should be authorized under the Policy to proceed with litigation** against the Potential Infringer."  (Emphasis added.)

11.     On November 17, 2004, Lloyd's informed Cordance that it refused to authorize litigation on the insured patent, claiming that the independent patent counsel's opinion did not meet all of the requirements of the Agreement.

12.     On January 11, 2005, the independent patent counsel wrote a letter to Lloyd's, reiterating its conclusion that the litigation should be authorized.  The independent patent counsel stated: "Based on the facts and material that we reviewed, **we maintain that [Cordance's] claim has merit and that should be authorized under the Policy to proceed**.  We thus understand that **our letter does, in fact, meet the requirements of a letter that requires authorization of the litigation**." (Emphasis added)

13.     Despite the independent patent counsel's unequivocal conclusion that Lloyd's must authorize the claimed litigation, Lloyd's continued to refuse to authorize Cordance's claims.

## LLOYD'S LACK OF RESPONSE TO CORDANCE'S ARBITRATION PROPOSALS

14.     On February 11, 2005, Cordance wrote to Lloyd's, requesting a response to the independent patent counsel's January 11, 2005 letter, and stating that it would invoke the arbitration clause in the Agreement if Lloyd's did not respond by February 25, 2005.

15.    Between March 2005 and December 2005, the parties engaged in negotiations regarding the details of the requested arbitration proceeding.

16.    On December 1, 2005, Cordance sent Lloyd's a comprehensive letter setting out its position on the arbitration proceeding.  That letter is attached as Exhibit 2.

17.    At the time this Complaint is being filed, Lloyd's has not provided a written response to Cordance's December 1, 2005 proposal, despite the passage of three months.

18.    Throughout December, January, and February, Cordance repeatedly contacted and attempted to contact Lloyd's to request a written response to its December 1, 2005 letter.  Lloyd's repeatedly failed to return calls or provide promised responses.  On several occasions when counsel for Cordance was able to reach counsel for Lloyd's, the latter would promise to get back to Cordance shortly and then failed to do so at all.  Although acknowledging repeatedly their obligation to arbitrate, Lloyd's simply ignored both Cordance's proposed deadlines for doing so and their own agreed-upon deadlines for doing so.

19.    On February 16, 2006, Cordance sent Lloyd's a final letter outlining in detail the history of these attempts to obtain a good-faith response and good-faith participation in the arbitration procedure.  Cordance concluded by noting that Lloyd's was leaving Cordance with no choice but institute appropriate action to compel Lloyd's to attend the required arbitration if Lloyd's would not respond by February 24, 2006 with a commitment to cooperate in good faith with the arbitration process.  This letter is attached as Exhibit 3.

20.    Lloyd's has not responded to or otherwise acknowledged Cordance's February 16, 2006 letter.

## APPLICABLE LAW

21.     The Federal Arbitration Act ("FAA") provides that "[a] written provision in any … contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction, or the refusal to perform the whole or any part thereof…shall be valid, irrevocable and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract."  9 U.S.C. § 2.

22.     The purpose of the FAA is to ensure the "rapid and unobstructed enforcement of agreements."  Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 23 (1983). There is thus a strong public policy favoring that favors the arbitration of disputes by requiring courts to enforce arbitration agreements.  Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc., 473 U.S. 614, 613 (1985); Gilmer v. Interstate/Johnson Lane Corp., 500 U.S. 20, 24 (1991). Accordingly, the Court must order arbitration where an applicable arbitration provision exists. Dean Witter Reynolds v. Byrd, 470 U.S. 213, 218 (1985).

## RELIEF REQUESTED

WHEREFORE, Plaintiff Requests that this Court:

23.     Order Defendant to cooperate in good faith with the arbitration process and attend the arbitration, as required by the Agreement.

24.     Award Plaintiff such further relief as this Court may deem just and necessary.

25.     Award Plaintiff its fees and costs in preparing this Petition.

Respectfully submitted,


CORDANCE CORPORATION,

By its attorneys,

Dated: March 2, 2006

Michael A. Albert, BBO # 558566
malbert@wolfgreenfield.com
Adam J. Kessel, BBO # 661211
akessel@wolfgreenfield.com
WOLF, GREENFIELD & SACKS, P.C.
600 Atlantic Avenue
Boston, Massachusetts 02210
(617) 646.8000 Phone
(617) 646.8646 FAX

# EXHIBIT C



**Home**

**Management Team**

**Partners**

**XRI Links**

**News & Events**

**Contact Us**





## Management Team

**Vince Caluori, President and CEO**

**=vince.caluori**

From 1997 to 2002, Vince was President and CEO of Wizards of the Coast, where he was responsible for the overall leadership and operation of this market-leading games company with a peak staff of 1,800 employees and revenues of $780 million.

Prior to his tenure at Wizards, Vince was Manager of Space Division Business Development at the Boeing Company from 1976 to 1995. In this period, he established an unprecedented competitive sales record winning over 90% (40 out of 42) of all bids to NASA and the United States Air Force. This success led directly to over $350 million in contracts and $10 billion of business over the life of those programs.

Vince began his engineering career at Boeing in 1962 and worked on a number of programs including the B1 bomber, the space shuttle, the Airborne Warning and Control System (AWACS), military derivatives of Boeing's commercial airplanes, the C-14 Advanced STOL transport, and the NASA-Navy VSTOL. His most senior engineering position was as Chief Engineer for the Space Station.

Vince has a BS in Aeronautical Engineering from St. Louis University, and he is a competition cross-country skier and a model airplane builder and pilot.

**Drummond Reed, CTO**

**=drummond.reed**

Drummond conceived the digital addressing and intelligent linking technology on which Cordance was founded. He led the team that filed the cornerstone patents on the technology starting in 1996, and subsequently led the effort to contribute those patents to **XDI.org** so they could become open, public, royalty-free standards.

XDI.org subsequently contributed this intellectual property to OASIS where Drummond serves as co-chair of the **XRI (Extensible Resource Identifier) Technical Committee** with Gabe Wachob, Chief Systems Architect, Visa International, and co-chair of the **XDI (XRI Data Interchange) Technical Committee** with Geoffrey Strongin, Platform Security Architect, AMD.

Drummond was a founding board member of the **International Security, Trust & Privacy Alliance (ISTPA)**. He is also a founding board member of **OpenXRI.org**, and serves as a trustee of **Identity Commons**.

Drummond attended Harvard University and is a carpenter of anything from high-rise treehouses to professional stage sets. He is also an active parent at the **Seattle Waldorf School**.

## Lon Wiese, EVP and CFO

=lon.wiese

Prior to joining Cordance, Lon was President of Pine Lake Group, Inc., a consulting firm he founded in 1999 specializing in advising companies on business and financial management issues. Lon has over 30 years of experience, including various financial and accounting management positions with Fortune 50 corporations. Over the past 18 years, he has been CFO of four companies; two were successful startups, and two were in the $25-$75 million annual sales range.

Lon has a BA in Business Administration and an MBA in Financial Management from Washington State University, and is a member of the Turnaround Management Association. When not working, he can often be found putting as many miles as possible on his motorcycle.

## Brian Lewis, General Counsel

=bike

Brian was Vice President, Business Development & General Counsel for Wizards of the Coast from 1994 to 2002. At Wizards, his responsibilities included business development, M&A, licensing, intellectual property, and e-commerce strategy.

Brian began his career in law as Patent Liaison for Boeing Commercial Airplane Company utilizing his law degree from Seattle University and his mechanical engineering degree from Michigan Technological University. Prior to obtaining his law degree, Brian co-chaired Boeing's initial 777 fuselage design team.

Home  |  Management Team  |  Partners  |  XRI Links  |  News & Events  |  Contact Us

Except where noted, this site is licensed under a
Creative Commons Attribution-NonCommercial-ShareAlike 2.5 License.

# EXHIBIT D

May  6 200.  17:28    P.08    #10

ATTORNEY'S DOCKET NO: I00234.70007.US

IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

| | |
|---|---|
| Applicant: | Reed (formerly "Reed, et al.") |
| Serial No: | 10/068,341 |
| Filed: | February 5, 2002 |
| For: | ON-LINE TRANSACTION INFRASTRUCTURE (formerly, "OBJECT-BASED ON-LINE TRANSACTION INFRASTRUCTURE") |
| Confirmation No.: | 8490 |
| Examiner: | B. Barot |
| Art Unit: | 2154 |

CERTIFICATE OF FACSIMILE TRANSMISSION UNDER 37 C.F.R. §1.8(a)

The undersigned hereby certifies that this document is being facsimile transmitted to the United States Patent and Trademark Office in accordance with 37 C.F.R. §1.6(d), on the ____ of May, 2003.

_____
Signature

Commissioner for Patents
P.O. Box 1450
Alexandria, VA 22313-1450

Dear Sir:

## Declaration of Drummond Reed under 37 C.F.R. §1.131

I, Drummond Reed, the inventor in the above-identified application, hereby declare as follows:

1.    That prior to August 29, 1995, I conceived a computer-implemented method (referred to herein below as "the First Method") comprising steps of: (a) providing customer data storing information for a customer usable to automatically complete an on-line purchase of an item from a seller; (b) providing the customer with information from the seller with respect to an item; (c) receiving from the customer an indication to initiate a purchase transaction for purchasing the item; (d) in response to the received indication, automatically completing the purchase of an item from the seller by accessing the

700085.1

May 6 200_ 17:28    P.09

Serial No.: 10/068,341                    - 2 -                    Art Unit: 2154

customer data to retrieve the information and process the retrieved information so as to complete the purchase transaction.

2.    That prior to August 29, 1995, I conceived a computer-implemented method (referred to herein below as "the Second Method") comprising steps of: (a) providing information provider data storing information for an information provider usable to automatically complete an on-line transaction; (b) providing the information provider with information from an information consumer with respect to a proposed transaction; (c) receiving from the information provider an indication to complete the proposed transaction; (d) in response to the received indication, automatically completing the transaction from the information consumer by accessing the information provider data to retrieve the information and process the retrieved information so as to complete the proposed transaction.

3.    A copy of a document prepared by me and witnessed on a date prior to August 29, 1995 describing each of the First Method and the Second Method is presented in Appendix A.

4.    Said document describes at least at page 2, §5.2.1, and at page 11, entry 1, third paragraph, providing a database of information pertaining to a customer/user (e.g., name, shipping address, billing address, mailing address, telephone number, credit card number, etc.). Accordingly, said document describes providing customer data storing information for a customer, as described in step (a) of the First Method. Further, said document describes at page 11, entry 1, third paragraph, that a screen can be produced using information from the database including all necessary ordering information. Accordingly, said document describes that the information is usable to automatically complete an on-line purchase of an item from a seller, as described in step (a) of the First Method.

5.    Said document describes at least at page 2, §5.2.1, and at page 11, entry 1, third paragraph, providing a database of information pertaining to a customer/user (e.g., name,

May  6 200.  17:29    P. 10

Serial No.: 10/068,341                    - 3 -                    Art Unit: 2154

shipping address, billing address, mailing address, telephone number, credit card number, etc.). Accordingly, said document describes providing an information provider object storing information for a information provider, as described in step (a) of the Second Method. Further, said document describes at page 11, entry 1, third paragraph, that a screen can be produced using information from the database including all necessary ordering information. Accordingly, said document describes that the information is usable to automatically complete an on-line transaction, as described in step (a) of the Second Method.

6.      Said document describes at least at page 11, entry 1, second paragraph, providing the customer with information from the seller including basic product information. Accordingly, said document describes providing the customer with information from the seller with respect to an item, as described in step (b) of the First Method.

7.      Said document describes at least at page 11, entry 1, second paragraph, providing the customer with information from the seller including basic product information. Accordingly, said document describes providing the information provider with information from an information consumer with respect to a proposed transaction, as described in step (b) of the Second Method.

8.      Said document describes at least at page 11, entry 1, third paragraph, that once the customer has made up his mind about which product to purchase, ordering may be achieved by clicking a product ordering button. Accordingly, said document describes receiving, from the customer, an indication to initiate a purchase transaction for purchasing the item, as described in element (c) of the First Method.

9.      Said document describes at least at page 11, entry 1, third paragraph, that once the customer has made up his mind about which product to purchase, ordering may be achieved by clicking a product ordering button. Accordingly, said document describes receiving from the information provider an indication to complete the proposed transaction, as described in element (c) of the Second Method.

May  6 200.  17:29    P.11

Serial No.: 10/068,341                    - 4 -                    Art Unit: 2154

10.    Said document further describes at least at page 11, entry 1, third paragraph, ordering a product by clicking a product ordering button, such that a screen is produced including all necessary ordering information from the database. Additionally, said document describes at page 11, entry 1, fourth paragraph, that a customer may click to confirm and order an item. Accordingly, said document describes automatically completing the purchase of an item in response to the received indication from the seller, by accessing the customer data to retrieve the information and process the retrieved information, so as to complete the purchase transaction, as recited in element (d) of the First Method.

11.    Said document further describes at least at page 11, entry 1, third paragraph, ordering a product by clicking a product ordering button, such that a screen is produced including all necessary ordering information from the database. Additionally, said document describes at page 11, entry 1, fourth paragraph, that a customer may click to confirm and order an item. Accordingly, said document describes automatically completing the transaction from the information consumer in response to the received indication, by accessing the information provider data to retrieve the information and process the retrieved information so as to complete the proposed transaction, as recited in element (d) of the Second Method.

12.    Said document describes at least at page 2, §5.2.1, that access objects can be located and retrieved from computers, and processed and stored on computers running the server program. Accordingly, said document describes storing the information provider data in an information consumer's computer, as recited in claim 4.

13.    Said document describes at least at page 2, §5.2.1, describes a global database of information pertaining to the user of the client program that is available to all access objects. Accordingly, said document describes maintaining the customer data as an object, as recited in claim 5.

May  6 200⌐  17:30    P. 12

Serial No.: 10/068,341            - 5 -                Art Unit: 2154

14.    Said document describes at least at page 2, §5.2.1, describes a global database of information pertaining to the user of the client program that is available to all access objects. Accordingly, said document describes maintaining the customer data as an object, as recited in claim 6.

15.    That from a date prior to August 29, 1995 until at least September, 1995, I was interviewing potential members of a development team for Intermind, Inc. (assignee) for the purpose of reducing each of the First Method and the Second Method to practice.

16.    That in August 1995, a website was developed and posted on the Internet for the purpose of furthering the recruitment of the development team.

17.    That in September 1995, I began hiring members of the development team and moved into new offices in Seattle, WA.

18.    That from August 1995 through October 1995, I set about finding a patent attorney for the purpose of obtaining patent protection for each of the First Method and the Second Method.

19.    That beginning in October 1995, through November 1995, I interviewed several patent attorneys for the purpose of selecting one to file a patent application for each of the First Method and the Second Method.

20.    That, during the course of interviewing patent attorneys, in late November 1995 I contacted Steven J. Henry ("Mr. Henry"), an attorney at the law firm of Wolf Greenfield and Sacks, P.C. in Boston, MA to discuss filing a patent application for each of the First Method and the Second Method. On or about November 26, 1995, Mr. Henry reviewed disclosure material pertaining to each of the First Method and the Second Method as a result of my contacting him, in preparation for a meeting with me and other members of my development team.

May  6 20C  17:30    P. 13

Serial No.: 10/068,341                    - 6 -                    Art Unit: 2154

21.    That on or about November 28, 1995, I traveled to Boston, MA to meet with Mr. Henry and to discuss, with him, filing a patent application for each of the First Method and the Second Method. That disclosure meeting was followed by activity from late November 1995 to early January 1996 related to the filing of a patent application, including numerous communications.

22.    That on or about January 2, 1996, Mr. Henry commenced writing a patent application directed to each of the First Method and the Second Method, and continued to work on the application, along with his associate Brett N. Dorney, until it was filed on February 28, 1996, resulting in United States Patent Application 03/609,115 (now U.S. Patent No. 6,044,205), a parent application to the present application. Such activity is supported in billing record from Mr. Henry's firm, which I have not attached due to the potential of losing attorney-client privilege.

23.    That my daily work activities from just prior to August 29, 1995 through at least February 28, 1996 were principally focused on code development for the purpose of producing a product embodying each of the First Method and the Second Method, and getting a patent application therefore on file. At no time did I digress from these activities for more than a day or two at a time, other than for illness, holidays, and attending to business needs to keep operational matters of the development of First Method and the Second Method running.

24.    That the above statements made of my own knowledge are true, and all statements made on information and belief are believed to be true.

25.    The above statements were made with the knowledge that willful false statements and the like are punishable by fine and/or imprisonment or both, under Section 1001 of Title 18 of the United Sates Code and any such willful false statement may jeopardize the

May  6 200.  17:30    P. 14

Serial No.: 10/068,341                    - 7 -                    Art Unit: 2154

validity of this application or any patent resulting therefrom.

Drummond S. Reed, Declarant

Date: May 5, 2003

700085-1

# EXHIBIT E

1

```
 1              IN THE UNITED STATES DISTRICT COURT

 2              IN AND FOR THE DISTRICT OF DELAWARE

 3                          - - -

 4   E.I. DUPONT DeNEMOURS & COMPANY,  :  CIVIL ACTION
                                       :
 5                                     :
              Plaintiff,               :
 6                                     :
         v.                            :
 7                                     :
     MACDERMID INC., and               :
 8   MACDERMID GRAPHIC ARTS INC.,      :
                                       :
 9           Defendants.               :  NO. 02-303 (###)(MPT)
     ----------------------------------  :
10                                     :
     MACDERMID GRAPHIC ARTS INC.,      :
11                                     :
              Plaintiff,               :         -and-
12                                     :
         v.                            :
13                                     :
     E.I. DUPONT DeNEMOURS & COMPANY,  :
14                                     :  NO. 02-1467 (###)(MPT)
              Defendant.
15                          - - -

16                      Wilmington, Delaware
              Wednesday, December 4, 2002 at about 4:00 p.m.
17                      TELEPHONE CONFERENCE

18                          - - -

19   BEFORE:   HONORABLE MARY PAT THYNGE, Magistrate Judge

20                          - - -
     APPEARANCES:
21

22         POTTER ANDERSON & CORROON
           BY:  RICHARD L. HORWITZ, ESQ.
23
                   -and-
24
                              Brian P. Gaffigan
25                            Official Court Reporter
```

2

```
1    APPEARANCES (Continued):

2

          MORGAN & FINNEGAN
3         BY:   JOHN T. GALLAGHER, ESQ., and
                STEPHEN R. SMITH, ESQ.
4               (New York, New York)

5                    Counsel for E.I. Dupont De Nemours & Company

6

          FISH & RICHARDSON, P.C.
7         BY:   WILLIAM MARSDEN, ESQ.

8                -and-

9         CARMODY & TORRANCE, LLP
          BY:   JOHN R. HORVACK, JR., ESQ.
10              (Waterbury, Connecticut)

11               -and-

12        MACDERMID GRAPHIC ARTS INC.
          BY:   JOHN L. CORDANI, ESQ.
13                   Counsel for MacDermid Graphic Arts Inc.

14

15

16

17                           - oOo -

18               P R O C E E D I N G S

19        (Telephone conference began at 4:00 p.m.)

20        THE COURT:  Good afternoon, counsel.  This is

21   Judge Thynge in the matter of DuPont vs. MacDermid.  The

22   court reporter that we have today, counsel, is Brian

23   Gaffigan.

24        Before we begin, who is on the line on behalf of

25   DuPont?
```

1          MR. HORWITZ:  Your Honor, this is Rich Horwitz

2     in Wilmington.  And with me at least is John Gallagher from

3     Morgan Finnegan in New York, and I'm not sure if anybody is

4     with John.

5          MR. SMITH:  Steve Smith is here also, your Honor.

6          THE COURT:  Okay.  Thank you.

7          Who is on the line on behalf of MacDermid?

8          MR. MARSDEN:  Hello, your Honor.  This is William

9     Marsden.  I have with me on the line John Horvack from the

10    Carmody & Torrance, and also John Cordani.

11         MR. HORVACK:  Good afternoon, your Honor, from us

12    both.

13         THE COURT:  My understanding is the basis for this

14    conference deals with the fact the parties haven't been able

15    to enter into, haven't been able to finalize a protective

16    order.  Is that correct?

17         MR. MARSDEN:  That's correct, your Honor.

18         THE COURT:  I've read through the materials that

19    counsel provided.  Specifically, I have docket entry number

20    47 which was DuPont's submission, docket number 46 which

21    was MacDermid's submission, and subsequently 50 was also

22    MacDermid's submission, and I believe 51, yes, was DuPont's.

23    I've gone through the materials that counsel has provided,

24    and I also tried to read through most of the cases that were

25    cited concerning this.

4

1          Let me tell you, my initial response is that I

2     don't think either one of you are completely right in your

3     approach, most of the cases cited by both sides; and I

4     realize MacDermid emphasized the fact that there have been

5     restrictions already imposed and the further restrictions

6     that DuPont suggests are a little bit Draconian.  The problem

7     or the concern that I have is the fact that the firm that is

8     representing MacDermid also does the prosecution of patents

9     and they're still involved.  Obviously, Mr. Cordani is still

10    involved obviously in prosecuting patents that appear to

11    have some relationship to the concerns that are necessarily

12    involved in the '837 patent that is part of this litigation.

13    Specifically, I reference docket entry number 51, specific-

14    ally Exhibit 9, Subexhibit A, which was apparently a patent

15    it's my understanding Mr. Cordani prosecuted on behalf of

16    MacDermid that was issued in July 2nd of this year.

17          I recognize that there is probably been a more

18    narrower interpretation suggested by MacDermid as to the

19    meaning of competitive decision making; but at the same time,

20    DuPont's suggestion, at least what it's proposing of areas

21    of limitation for either Cordani or other counsel appears to

22    be somewhat extensive as well, particularly in light of the

23    fact since I'm not completely familiar with what is going on

24    with a particular patent involved.  So I think there is some

25    middle of the road approach between the two suggestions or

1    two positions.

2              That's my initial thought.  Okay?  If counsel

3    wish to make any presentation or argument or suggestion at

4    this time, it's appropriate.

5              MR. MARSDEN:  Your Honor, this is William

6    Marsden.  If I can just sort of pick up.

7              The limitation we had imposed was a time

8    limitation similar to what the courts have done in the past

9    when they have approached this issue.  In the Motorola case

10   is probably the case that was cited most extensively in both

11   sides' letter submissions.  What Judge Longobardi did in that

12   case, it arose, during the litigation it came to light that

13   one of the law firms involved in the litigation had also

14   started doing patent prosecution and Judge Longobardi said

15   you have a choice.  You can continue doing the litigation and

16   not do prosecution in the designated fields or you can stay

17   in the litigation and not be involved in prosecution in those

18   fields for a period of the duration of the litigation and one

19   year thereafter.

20             Recognizing that that case law was out there and

21   that this is an issue that the court addresses from time to

22   time, we proposed to the other side that Mr. Cordani, because

23   he is involved in some levels in patent prosecution, not

24   have access to any information that was more than or less

25   than five years old effectively or six years old, I think.

6

1    That is actually more protection than what is provided in the

2    Motorola case where the attorneys were given access to every-

3    thing and the only restriction was they couldn't prosecute

4    for up to a year after the litigation.  Here, we're not seek-

5    ing information that's fresh or new and we're agreeing that

6    he won't see anything that is less than five or six years

7    old.

8            So that was our proposal.  It was driven, frankly,

9    your Honor, by the very important role Mr. Cordani plays at

10   MacDermid and his need to be able to make informed or to give

11   informed advice to his client about the litigation as we move

12   forward.  That's why we proposed the compromise we proposed.

13   We think it's consistent with the case law and meets any

14   legitimate concerns that DuPont would have.

15           MR. GALLAGHER:  Your Honor, John Gallagher for

16   DuPont. I think the protection afforded DuPont's confidential

17   information case should not be driven by the fact that Mr.

18   Cordani chooses to prosecute while taking an active role in

19   this litigation.  We're concerned with the inadvertent use

20   of this information.  Under MacDermid's proposal, the inform-

21   ation, the pre-1997 information that Mr. Marsden refers to

22   relates only to research and development.  Under MacDermid's

23   proposal, Mr. Cordani would have access to DuPont's current

24   commercial product and process, any improvements made to

25   that process/processes DuPont has decided to abandon or not

7

1  commercialize.

2            The 1997 cutoff date is arbitrary in nature.

3  This application was filed back in May of 1995.  The R&D

4  between May of '95 and this 1997 date forms the very basis

5  for DuPont's commercial process that they're using today and

6  to allow Mr. Cordani to have access to that information while

7  at the same time participating in prosecution creates an

8  unacceptable risk that some of that information could be

9  inadvertently used by MacDermid to DuPont's competitive

10  disadvantage.

11            Additionally, if you go to their protective order,

12  Mr. Cordani, under paragraph 2B of MacDermid's proposal, would

13  have access to confidential information which, quote-unquote,

14  comprises trade secrets, proprietary research and development

15  data and confidential process and product data.  Somebody who

16  has access to that information should not be prosecuting

17  patents.

18            When we got into this discussion regarding a

19  suitable protective order, at no time did we suggest that

20  DuPont's in-house patent prosecution people have access to

21  corresponding MacDermid information.  And you see in their

22  proposal, reference to a Tom McGee.  He is the individual

23  prosecuting patents for DuPont in this area.  We don't want

24  him to have access to MacDermid's confidential information.

25  We don't believe anybody prosecuting in this area should have

8

1    access to the other side's confidential information.

2                    MR. HORVACK:  Well, your Honor, it's John

3    Horvack.  If I can pipe in?

4                    THE COURT:  Yes.

5                    MR. HORVACK:  The reason why we did it in a

6    mutual way, our proposal, such that Mr. Cordani and Mr. McGee

7    would have access to materials which dated before January 1,

8    1997 is because we don't believe there is any risk, real risk

9    of inadvertent disclosure of this material during patent

10   prosecution.  That's why we were indicating that there should

11   be mutuality here.  All of this stuff that dates before that

12   should either be disclosed in the patent specification or is

13   otherwise out in the public already.

14                   THE COURT:  Why did you pick 1997?

15                   MR. HORVACK:  Excuse me?

16                   THE COURT:  Why did you pick January 1997?

17                   MR. HORVACK:  Well, in some sense it's arbitrary,

18   but in other senses it's reasonably calculated.  The patent

19   was filed May 1, I believe, of 1995.  Therefore, we were try-

20   ing to get some post-filing area of finding out what exactly

21   DuPont did with respect to commercialization.  At the same

22   time, we were recognizing that five or six years of more

23   current information would be absolutely not available to Mr.

24   Cordani or Mr. McGee.

25                   THE COURT:  Okay.

9

1          MR. HORVACK:  Obviously recognizing that the

2    state of the art moves, it moves rather quickly, including in

3    this field, we felt that six years was an adequate time.

4          MR. GALLAGHER:  Your Honor, if I just may speak

5    for a minute.  This is John Gallagher from New York.  The

6    pre-1997 R&D also bears directly on any possible interference

7    which MacDermid may attempt to provide to the Patent Office

8    regarding the patents.

9          THE COURT:  Mr. Gallagher.

10          MR. GALLAGHER:  Yes, your Honor.

11          THE COURT:  I don't know why but periodically

12    you fade in and out and I don't know what the problem is.

13          MR. GALLAGHER:  Because I dialed the coast code

14    this evening, your Honor.

15          THE COURT:  Okay.

16          MR. GALLAGHER:  I apologize.  But as I was

17    saying, your Honor, if you did not get it, this pre-1997

18    R&D that they want to disclose to Mr. Cordani bears on any

19    potential interference MacDermid attempts to provide with

20    DuPont's '837 patent.  There has been an allegation that

21    DuPont is not the first to invent this invention.  We're

22    concerned that some of this information may inadvertently

23    be used in an attempt to revoke an interference.

24          MR. HORVACK:  Well, your Honor, I think we

25    already adequately addressed that particular concern in our

1    proposal.  I've already told Mr. Gallagher early on that the

2    actual dates of conception and reduction to practice of the

3    claimed inventions in the '837 patent would be something that

4    Mr. Cordani could not get and would be excluded from even

5    though it was obviously before January of 1997.

6              MR. GALLAGHER:  Your Honor, John Gallagher

7    again.  As you are well aware, the date of invention is not

8    limited solely to the actual date of conception or reduction

9    to practice but the diligence demonstrated by the individual

10   inventor, so it's not two end points but everything that took

11   place between those two end points bear on the invention

12   date.

13             THE COURT:  Let me try to do some comparisons.

14   Give me the paragraph that DuPont's predominant proposal is

15   in or paragraphs.

16             MR. GALLAGHER:  Your Honor, you can find that

17   paragraph 4, sub-A?

18             THE COURT:  Yes.

19             MR. GALLAGHER:  Would you like me to read it.

20             THE COURT:  No, I have it right in front of me.

21             MR. GALLAGHER:  Okay.

22             THE COURT:  And I want to do the comparison also

23   with MacDermid's.

24             MR. HORVACK:  Your Honor, it's John Horvack.  It's

25   clearly laid out on pages 2 to 3 where we define the types

1    of protected information and define one category as highly

2    confidential and the other as confidential.  Thereafter, your

3    Honor, if you go to paragraph 6 on page 5, it designates to

4    whom the two categories of information may be disclosed.  For

5    example, the highly confidential information including the

6    information postdating January 1, 1997 would not be something

7    that Mr. Cordani or Mr. McGee would have access to.

8            THE COURT:  I understand.  What I think that what

9    DuPont is suggesting is prospective, that is, if Mr. Cordani

10   had access to the materials; is that correct?

11           MR. GALLAGHER:  Yes, your Honor.  If Mr. Cordani

12   or any of MacDermid's patent attorneys wish to have access

13   to the confidential information, they will agree not to

14   prosecute during pendency of this litigation and for two

15   years thereafter, just as with Motorola.

16           MR. HORVACK:  Well, first of all, it's not con-

17   sistent with Motorola at all.  It was one year thereafter.

18   That was the situation where the trial attorney and the

19   patent attorney happened to be the same.  That arose during

20   the litigation, as Mr. Marsden indicated, and so that was a

21   very unusual circumstance.  The circumstance here is very

22   different.  The difficulty with DuPont's proposal from our

23   perspective that is Mr. Cordani is the primary decision maker

24   with respect to the litigation.  He also is the only in-house

25   general counsel of MacDermid.  Thereafter, he is one that

1    directs the patent prosecution work, and so putting that

2    election to him is not workable.

3              THE COURT:  Well, the problem that I have with

4    MacDermid's suggestion is just this:  The fact that he is

5    allowed to continue on with some form of patent prosecution

6    directly.  Right?  That's what you are proposing while this

7    litigation is ongoing.  Yet he is the primary decision maker

8    and going to be the primary decision maker at MacDermid

9    regarding this litigation.  I mean that is what you are

10    suggesting, isn't it, John?

11              MR. HORVACK:  To John Horvack, your Honor?

12              THE COURT:  Yes, to John Horvack.  I'm sorry.

13              MR. HORVACK:  That's okay.  I believe, your

14    Honor, that's the reality of the situation.

15              THE COURT:  Well, you understand that and I know

16    you keep arguing that DuPont's proposal eliminates your right

17    to choose counsel, but the understanding is that you don't

18    have the unlimited right to choose counsel and you don't have

19    the unlimited right in that regard.  I mean I'm trying to do

20    a balancing here, and my preference is to basically say this:

21    That Mr. Cordani can receive of the information but he's got

22    to agree he is not going to be directly prosecuting or super-

23    vising the prosecution of patents during the time period this

24    litigation is going on and for roughly one year thereafter.

25    That's my thought, to basically go along similar lines of

13

1   Motorola.

2           MR. MARSDEN:  Your Honor, this is William Marsden.

3   If I could just address one aspect of that, the supervising

4   aspect of it.  Mr. Cordani is on and he can speak directly

5   what he does on a day-to-day basis, but I understand at least

6   a substantial part of what he does is in fact supervision

7   and the Medtronic case, which was in fact cited by DuPont,

8   rejected the supervisory language as being too broad or too

9   vague and suggested it really should be limited to direct

10  hands on involvement in drafting, et cetera.

11          THE COURT:  Well, the problem is, and I agree with

12  you that maybe there could be more specifics on supervision,

13  but if he is getting feedback from people in the law firm that

14  he is at, plus in his capacity as serving as general counsel

15  for MacDermid, and those people are coming back to him and

16  saying "we're doing the following on this," what happens then?

17          MR. CORDANI:  Your Honor?

18          THE COURT:  Yes.

19          MR. CORDANI:  This is John Cordani.  My per-

20  spective on this issue is I've been involved with competitors

21  of MacDermid in technical cases and patent cases and trade

22  secret cases many times.  I've never run into difficulty in

23  this regard.  We have received effectively confidential

24  information from competitors regularly and, in this industry

25  in particular, information that is really more than three

1   or four years old, even less than that, is quite stale and

2   is really of no competitive, no significant competitive

3   advantage.  The risk of inadvertent use here in prosecuting

4   patents with information that is more than five years old is

5   really nonexistent and is really, at least from my point of

6   view, is really a fallacy.

7              MR. GALLAGHER:  Your Honor, John Gallagher.  If I

8   may.

9              THE COURT:  Yes.

10             MR. GALLAGHER:  Mr. Cordani's good intentions and

11  self-executing obligations really do not go to the heart of

12  the issue -- the prevention of inadvertent disclosure.  I beg

13  to differ with Mr. Cordani that this pre-1997 material that he

14  wishes to have access to bears directly on DuPont's commercial

15  process and process product, and we do not believe he should

16  have that information while continuing to prosecute patents

17  in this area.  The commercial process or elements of the com-

18  mercial process are not always disclosed in the issued patent

19  and in fact are sometimes kept secret by the individuals.  We

20  don't think he should access to that information while con-

21  tinuing to prosecute and/or supervise prosecution.

22             THE COURT:  Tell me about the '837 patent.

23             MR. CORDANI:  Excuse me, your Honor?

24             THE COURT:  I'm sorry.  Tell me about the '837

25  patent itself.

1          MR. GALLAGHER:  It's directed to photosensitive

2     elements.  They're used, for lack of a better word, they're

3     big rubber stamps used to print high quality containers,

4     potato chip bags or what have you.  There are a number of

5     layers, and you enter the image you want transferred via

6     computer and a laser ablates or tears away part of the layers

7     or some of the layers, and then the images are printed with

8     resulting, quote-unquote, rubber stamp.

9          THE COURT:  Okay.  But is this a process or

10    product patent?

11         MR. GALLAGHER:  Product.

12         THE COURT:  Okay.

13         MR. CORDANI:  I would say this, your Honor, if I

14    might.  Two things.  Particularly with regard to a product

15    patent, at least all the information known to DuPont at the

16    time they filed the patent regardings the products should be

17    in the patent application, and if it's not we have a problem.

18    But in addition to that, your Honor, if we think about the

19    consequence of at least your initial thought in this case,

20    if the ruling is that I would have to give up prosecution or

21    supervising prosecution, then I would not be able to make

22    that election just because I'm physically not able to do it

23    because I'm the only person here that does that or at least

24    supervises it.

25         But in any case, if we were to go along those

```
 1    lines, in reality what you would have is only two years of
 2    protection, because then if I were to accept the proposal, I
 3    would have to wait for one year after this case was done and
 4    then I would we back into prosecution again, and you would
 5    really only have essentially two years of protection.  We're
 6    offering them five years of protection going back.
 7              THE COURT:  No, you are offering it going back
 8    but you are not offering it going forward.  That is where
 9    DuPont's focus in part is.
10              MR. CORDANI:  But I guess what I'm saying is if
11    you only have the protection of not prosecuting during the
12    pendency and one year after but yet you get all the inform-
13    ation up until right now, essentially all you are having is
14    two years of protection.  It's in reality less protection
15    than what we're offering.
16              THE COURT:  Well, what I think DuPont is request-
17    ing is two years right now, including all appeals.  So
18    they're saying if there are actually going to be more than
19    that protection -- and by your rule of thumb, maybe it's four
20    years -- right? --  with what DuPont is requesting?
21              MR. HORVACK:  Your Honor, it's John Horvack.  If I
22    could try?
23              THE COURT:  Yes.
24              MR. HORVACK:  With your initial thought, it would
25    be one year after this case is done, which John Cordani was
```

1   roughshoding as two years.

2          THE COURT:  Yes.

3          MR. HORVACK:  Our proposal gives them six years of

4   protection because he is not allowed anything which postdates

5   January 1, 1997.  So our proposal is he'll not get six years

6   of information from now back and your proposal is only two

7   years of information.

8          THE COURT:  I understand.  But what DuPont is

9   proposing -- my proposal is consistent to some extent with

10  what DuPont is proposing, is it not?

11         MR. GALLAGHER:  Yes, it is, your Honor, with the

12  exception of the one-year limitation where we were proposing

13  two years.  If I might, your Honor, if you go to MacDermid's

14  proposal, they would disqualify the attorneys who see all the

15  information for three years of prosecution.  So I think the

16  two years is quite reasonable if you compared it to Judge

17  Longobardi's decision in Motorola and MacDermid's proposal for

18  three years.  We're right down the middle.

19         MR. HORVACK:  Well --

20         THE COURT:  Wait a minute.  I missed that last

21  one, John.

22         MR. GALLAGHER:  If you look at MacDermid's

23  proposal, your Honor, they're saying attorneys who have access

24  to all of the, quote-unquote, confidential information has

25  to sign a declaration that they have not been prosecuting, are

1    not prosecuting and will not prosecute during the pendency of

2    the litigation and for three years thereafter.

3                THE COURT:  Where does it say that?

4                MR. GALLAGHER:  It says that in the declaration

5    which all attorneys must -- it's Exhibit A to MacDermid's

6    protective order, your Honor, on page 14.

7                THE COURT:  Okay.  I've got it.

8                MR. GALLAGHER:  It's the last four lines, I

9    believe.

10                THE COURT:  Yes.

11                MR. GALLAGHER:  Every attorney who has access to

12    confidential information produced by the other side must sign

13    that declaration and must be admitted pro hac vice under

14    MacDermid's proposal, which would require all the attorneys

15    to attorneys to say, okay, hands off the prosecution for three

16    years after prosecution was terminated.

17                THE COURT:  Then why do you have a problem with

18    that, what they're suggesting?

19                MR. GALLAGHER:  I'm not having a problem with what

20    they're suggesting on the time limit, your Honor.

21                THE COURT:  You're having a problem with what is

22    being allowed.

23                MR. GALLAGHER:  What is being allowed.  That

24    provision would not apply to Mr. Cordani.

25                MR. CORDANI:  That's exactly right.

1          THE COURT:  That is the three-year provision would

2   not apply to him.

3          MR. GALLAGHER:  It would apply to all the

4   attorneys at Morgan & Finnegan, all the attorneys at Fish &

5   Richardson, all the attorneys at Carmody & Torrance and all

6   the attorneys at Potter Corroon & Anderson who have access to

7   the other side's confidential information, but it would not

8   apply to Mr. Cordani.

9          THE COURT:  Okay.  That's what I thought.

10         MR. GALLAGHER:  I apologize, your Honor.

11         THE COURT:  That's what I thought before.  You

12  started to confuse me a little bit about the comment that you

13  just made, so I just was --

14         MR. GALLAGHER:  I apologize, your Honor.

15         THE COURT:  -- I was having some difficulty.

16         Okay.  See, I think what part of what you've said

17  though, part of what DuPont's proposal is, is that Mr. Cordani

18  not prosecute patents for two years after the termination of

19  this litigation, so DuPont is looking prospectively.

20         MR. GALLAGHER:  Yes, your Honor.

21         THE COURT:  Where, quite frankly, MacDermid is

22  looking towards the back end; correct?

23         MR. CORDANI:  We're trying to protect.  We're

24  offering to protect their most recent and valuable secrets.

25  We're basically saying that after five years, information

1    is going to be stale and not really valuable, it's not really

2    dangerous to have it be inadvertently used.

3              MR. GALLAGHER:  Your Honor, that is Mr. Cordani.

4    A subject regarding information he would have access to --

5              THE COURT:  Mr. Gallagher.

6              MR. GALLAGHER:  Yes, your Honor.

7              THE COURT:  It's getting very difficult to hear

8    you.  Both the court reporter and I are having a significant

9    problem.  Are you talking on a cell phone or are you talking

10   on a speakerphone?

11             MR. GALLAGHER:  I'm talking on a speakerphone.

12   I'm going to pick up the receiver now, your Honor.

13             THE COURT:  Thank you.

14             MR. GALLAGHER:  Is this better, your Honor?

15             THE COURT:  Yes, it's a lot better.  Thank you.

16             MR. GALLAGHER:  I apologize.  But what I was

17   saying, your Honor, is Mr. Cordani's assumption regarding the

18   information or staleness of information that he would have

19   access to is incorrect.

20             MR. CORDANI:  I would say it's not an assumption.

21   It's spoken from someone who knows.

22             THE COURT:  Okay.

23             MR. GALLAGHER:  Somebody who knows DuPont's

24   documents?

25             MR. CORDANI:  No, no, knowing the industry,

1   understanding what happens in this industry.  Five years is

2   far far beyond any, any, any reasonable thought of what is

3   current or valuable.

4            MR. MARSDEN:  Your Honor, this is William Marsden.

5   If I could speak briefly to that in terms of comparisons to

6   the Motorola case.  In Motorola, essentially if the attorney

7   agrees in the case of prosecution for the duration of the

8   litigation and one year thereafter, he or she was allowed to

9   see all of the most highly confidential information.

10            THE COURT:  That's right.

11            MR. MARSDEN:  So, therefore, the protection

12   prospectively was effectively the duration of the litigation,

13   whatever that might have been, two or three years or one or

14   two years, and then a year thereafter.  So we're talking about

15   two or three years based on the information received in the

16   litigation and that was the end of it, and the fact that that

17   information might have had use beyond that was not a concern

18   of the court.  They realize there had to be a line drawn

19   somewhere and as part of the balancing, so our effort was

20   essentially to go back and look at 1997 the same way, looking

21   forward and essentially saying --

22            THE COURT:  What you were basically doing was

23   already taking the time off before the litigation started.

24            MR. MARSDEN:  That's one way of looking at it,

25   your Honor.

1            THE COURT:  That's what you were doing.

2            MR. MARSDEN:  Yes.

3            THE COURT:  You did the reverse of what Judge

4    Longobardi did because he was faced with a prospective situ-

5    ation.  He had no choice because he had to do it prospectively

6    because the stuff in the past had already been provided.

7            MR. MARSDEN:  Right.  That's correct.  And so

8    we're saying he won't have access to anything after 1997.

9    Therefore ...

10           THE COURT:  That's actually a five year and even

11   longer period of time because if this litigation goes on for

12   say two years, you're looking at seven.

13           MR. MARSDEN:  Yes, your Honor.  That's what the

14   people in Connecticut were trying to articulate earlier.

15           THE COURT:  Okay.

16           MR. HORVACK:  Mr. Marsden did a much better job.

17           MR. GALLAGHER:  Once again, your Honor, under

18   their proposal, Mr. Cordani would have access to DuPont's

19   commercial process which we find completely unacceptable.

20           THE COURT:  Let me back up a little bit.

21           MR. GALLAGHER:  Yes, your Honor.

22           THE COURT:  That's why I asked you the question

23   of what type of patent that was.  The patent involved in his

24   litigation is a product patent, it's not a process patent.

25           MR. GALLAGHER:  But the discovery is so broad it

1    will include the process used to make these products.

2              MR. CORDANI:  That should be included.

3              THE COURT:  Wait a minute.  Back up a minute.

4              MR. GALLAGHER:  Yes, your Honor.

5              THE COURT:  The question is how does the process

6    for making -- how is the process to make these products

7    relevant to the product?  Are you telling me you've got a

8    product by process patent?

9              MR. GALLAGHER:  No, your Honor.  We have a product

10   patent.

11             MR. CORDANI:  It's a product patent.  The process

12   for making the product should be included in the patent also.

13   I mean the patent has to enable someone to make and use the

14   invention as claimed.

15             MR. GALLAGHER:  And that it does, your Honor.  But

16   it doesn't disclose DuPont's commercial process or DuPont's

17   commercial products which they are currently marketing now,

18   which would be included in that pre-1997 material that Mr.

19   Cordani would have access to.

20             MR. CORDANI:  The products are not made within,

21   they are not made under the scope of the patent.

22             MR. GALLAGHER:  I did not say that.

23             THE COURT:  This is tap dancing on the head of

24   a pin, counsel, right now, listening to the arguments.  Is

25   it necessary for Mr. Cordani, at least at this stage, to have

1    DuPont's process as to how they make the product that is I

2    guess the product that basically reads on the patent?  The

3    understanding, the assumption I'm working from, DuPont makes

4    the product and DuPont follows the patent to make the product.

5               MR. GALLAGHER:  Yes, your Honor.

6               THE COURT:  And what you said to me right now, Mr.

7    Gallagher, is that this preexisted 1997.

8               MR. GALLAGHER:  At least it forms the basis for

9    the commercial process being carried out today and the basis

10   for the actual commercial products being marketed today.  The

11   process has evolved over time.

12              THE COURT:  So it's evolved since January 1st,,

13   1997.

14              MR. GALLAGHER:  It has evolved since the filing

15   date of the patent in May of 1995.

16              THE COURT:  Yes.  Okay.  I understand that.  I

17   understand that.

18              MR. GALLAGHER:  And that interim period between

19   1995 and 1997 causes us some concern.

20              THE COURT:  That's what I wanted.  Then why don't

21   you just tell me that.

22              MR. GALLAGHER:  I apologize, your Honor.

23              THE COURT:  Okay?

24              MR. GALLAGHER:  I've been on the speakerphone, I

25   think, when you can't hear me.

1           THE COURT:  So that's really where the rub is.

2    That's all I'm trying to find out.  If it went back far

3    enough, you wouldn't have a problem.  That's what you are

4    saying to me.  In the long run, that really is what you are

5    saying to me, Mr. Gallagher, is the time period.  Your problem

6    is the cutoff date of January 1st, 1997 rather than having a

7    cutoff date on the date --

8           MR. GALLAGHER:  Of the filing date.

9           THE COURT:  -- of the filing date.  If you had had

10   the cutoff date of the filing date, there wouldn't have been

11   any problem with this.

12          MR. GALLAGHER:  And a preclusion -- that I would

13   not have a problem with the provision in MacDermid's protect-

14   ive order regarding the 1997 cutoff.  The 1997 cutoff proposed

15   by MacDermid is directed solely to research and development.

16   It does not include the commercial process.

17          THE COURT:  Well, let me back up a little bit.

18   Then on MacDermid's side of the fence, would it be absolutely

19   necessary, at least on a temporary basis, for Mr. Cordani not

20   to have the commercial process from January 1997 on?

21          MR. CORDANI:  No, no, no.  Our proposal would

22   prevent me from having anything after 1997.

23          THE COURT:  Let me back up.  What has been

24   represented to me was that you were still going to get

25   commercial process.  You are not going to get it after 1997.

1          MR. CORDANI:  No, we were proposing I get nothing,

2     no documents that dated after 1997.

3          THE COURT:  You understood that.

4          MR. CORDANI:  No document of any nature.

5          THE COURT:  Okay.

6          MR. GALLAGHER:  Your Honor, I hate to interrupt.

7     That is not how their protective order read.

8          THE COURT:  Well, that's what they're saying.

9          MR. GALLAGHER:  Okay.  I understand that.  So

10    we're a whole different ballgame now.

11         THE COURT:  So now we're dealing with January

12    1st, 1997.  From that point on, Mr. Cordani doesn't get any

13    documents.

14         MR. CORDANI:  Yes, that is our proposal.  At least

15    any highly confidential documents.

16         THE COURT:  Highly confidential documents.  Okay.

17    And highly confidential would include commercial processes?

18         MR. CORDANI:  Presumably; but since the

19    designation is within DuPont's realm, at least initially ...

20         THE COURT:  At least initially, and you can argue

21    whether it's highly confidential or not.

22         MR. CORDANI:  Right.

23         THE COURT:  Okay.  What is the problem with that,

24    Mr. Gallagher?

25         MR. GALLAGHER:  He is still getting access to the

1    material after the filing date of the '837 patent which would

2    be May 1995 through 1997.  That information, they're forming

3    the basis for DuPont's commercial product and processes.

4                  THE COURT:  Okay.  Now, go back to MacDermid's

5    side.

6                  MR. GALLAGHER:  Yes.

7                  THE COURT:  I'm talking to MacDermid now, okay?

8                  Why not have it have Mr. Cordani restricted from

9    the filing date of the patent forward, John?

10                 MR. HORVACK:  It's John Horvack.  I'm thinking,

11   your Honor.

12                 THE COURT:  Okay.

13                 MR. HORVACK:  Potentially on a temporary basis,

14   that may work, but I'd like to come back and revisit it,

15   if necessary.  I'm a little bit comfortable accepting Mr.

16   Gallagher's characterization of what DuPont's documents say.

17                 MR. MARSDEN:  He is absolutely right.

18                 THE COURT:  I understand.

19                 MR. HORVACK:  Maybe this should be decided by

20   somebody who is a little more objective than Mr. Gallagher is,

21   but we should be entitled to some materials beyond the filing

22   date.

23                 THE COURT:  Yes, I agree with that, too.

24                 What if we cut out the processes for now.  That

25   what you have represented right now is that from January 1st,

1    1997, Mr. Cordani does not get any other -- does not get any

2    documents to see, but that he does get to see some documents

3    that fall in the May 1995 to 1997 time frame, excluding the

4    processes that Mr. Gallagher mentioned, and understanding that

5    that is not necessarily permanent, it could very well open up

6    in the future.

7              MR. CORDANI:  That could be acceptable to us, your

8    Honor, yes.  This is John Cordani for MacDermid.

9              THE COURT:  How does that work for you, Mr.

10   Gallagher?

11             MR. GALLAGHER:  Your Honor, I would say you throw

12   in the products, the products or information relating to the

13   development of the products between May of 1995, the filing

14   date and January 1997.

15             THE COURT:  Wait a minute.  Isn't the products,

16   the process for the products -- explain to me what you mean by

17   the process vs. --

18             MR. GALLAGHER:  The process of making these

19   polymer plates and the various components.

20             THE COURT:  Okay.  What is your concern about the

21   products in that time frame?

22             MR. GALLAGHER:  The product is confidential.  The

23   documents relating or some of the documents relating between

24   the filing date of the patent and January 1997 bear on the

25   composition of the products DuPont commercially sells today.

1             MR. CORDANI:  But shouldn't those compositions be

2    disclosed in your patent, John?

3             MR. GALLAGHER:  The particular composition that

4    we are selling today?  Not necessarily.

5             THE COURT:  Then you are saying it's not

6    necessarily covered by the patent.

7             MR. GALLAGHER:  No, I did not say that, your

8    Honor.  The product evolved over time through the research

9    and development after the filing date.  That was the best

10   mode as of May of 1997, but the best mode is not necessarily

11   the product DuPont is commercially selling today.  And that

12   research between the filing date and January 1997 bears on

13   what DuPont is selling today.  We don't believe that somebody

14   who is prosecuting the patents should have access to that

15   information.

16            MR. HORVACK:  Your Honor, it's John Horbeck.  I

17   guess it doesn't define specifically what this issue comes

18   down to.  It's whether or not that set of information would

19   give DuPont some cause for concern that Mr. Cordani was going

20   to go out and inadvertently use that in patent prosecution.

21   It seems to me that that's a nullity because if it's as good

22   as John Gallagher's referring to, it's probably, yes, it's

23   probably out there in the U.S. Patent Office and is constantly

24   changing.

25            THE COURT:  Well, John, it's changing.  DuPont

1    innovation is continuing.

2                  MR. HORVACK:  So you have five-six years worth of

3    innovation after 1997.

4                  THE COURT:  What they don't want to you do is copy

5    their products.

6                  MR. GALLAGHER:  Yes, your Honor, or the process.

7    And that information is in the material between, that some of

8    that information is.

9                  THE COURT:  I accept it on the process situation,

10   Mr. Gallagher.  I'm having more problem understanding on the

11   product situation because, to me, it would seem to me if you

12   don't have the documents for the process, that may be you are

13   not going to have necessarily sufficient enough information

14   concerning the products themselves.  And so I'm less inclined

15   to provide it in that circumstance.

16                 Right now, that's what my ruling is going to be.

17   The process is out between May, the filing date and January

18   1st, 1997 with the right to have this reviewed.  And the

19   documents can actually be reviewed by the Court that are

20   necessarily of concern.  I'm not asking to have it done now

21   because I don't know enough about the patent itself, but the

22   products I'm less inclined.  I'm having a hard time under-

23   standing the divorce that you necessarily have.  So I'm going

24   to allow that for now.  And that Mr. Cordani doesn't get any

25   paper at all, doesn't get any documents that are dated after

1    December 31st, 1996; right?

2            MR. CORDANI:  Yes, that is right, your Honor.

3    John Cordani.

4            THE COURT:  That's how I think it works.

5            Now, the second issue that you had was discussion

6    with people in your office, other patent attorneys.  I'm not

7    going to allow that.  You go out and get another source and

8    get the information and discuss it with an expert or whatever

9    but you do not discuss it with the other patent attorneys in

10   your office.  I can't abide by that because I just think it's

11   way too difficult to control.  But I'm going to allow Mr.

12   Cordani access to materials prior to January 1st, 1997, except

13   for the process aspects.

14           MR. GALLAGHER:  And the documents relating to the

15   conception, reduction to practice and diligence of the '837

16   patent, your Honor?

17           THE COURT:  Well, he said conception and reduction

18   to practice.  The documents regarding diligence, I don't know

19   whether John included that in his concept or not.

20           MR. GALLAGHER:  It's not specifically represented

21   in MacDermid's proposal, your Honor.

22           THE COURT:  I understand.  I'm just trying to find

23   out what John Horvack's position is on that, please.

24           MR. HORVACK:  It's a vague term, your Honor.

25           THE COURT:  I know it is.

1            MR. HORVACK:  I'm somewhat concerned it's going

2    to be overused, and so I'm not too sure how we're going to

3    monitor that fairly.

4            THE COURT:  I don't know how you do it either with

5    what has been proposed by Mr. Gallagher.

6            I think one thing is this:  First of all, the

7    documents are going to be produced to counsel whose concern

8    right now, Mr. Gallagher, is the documents dealing with the

9    continuing diligence and the actual dates of conception,

10   reduction to practice were not going to be disclosed to Mr.

11   Cordani and you don't want the documents disclosed either.

12           MR. GALLAGHER:  Yes, your Honor.

13           THE COURT:  Now, when you had in here the actual

14   dates of conception, reduction to practice of each party's

15   claimed invention, John, what did you mean by that?

16           MR. HORVACK:  What I did mean was that the

17   actual dates would be redacted from any lab notebook or any

18   other document which evidenced the conception or reduction to

19   practice before Mr. Cordani could see them so that he would

20   have no idea.

21           THE COURT:  As to the time frame as to when that

22   happened.

23           MR. HORVACK:  Excuse me.

24           THE COURT:  As to the time frame as to when that

25   happened.

1          MR. HORVACK:  Exactly.

2          MR. CORDANI:  Yes, your Honor.

3          THE COURT:  And that you would also redact the

4    dates for the continued diligence?

5          MR. HORVACK:  We could.  If that gives Mr.

6    Gallagher comfort, sure.  Sure, we could redact all the dates

7    for Mr. Cordani.  That's fine.

8          THE COURT:  How does that work for you, Mr.

9    Gallagher?

10          MR. GALLAGHER:  Your Honor, we don't think Mr.

11    Cordani should have access to the documents relating to

12    conception, reduction to practice.  To go through and redact

13    the various laboratory notebooks for those elements and

14    leave everything else -- let me back up.  To go through and

15    individually redact the individual documents, lab notebooks,

16    memos relating to reduction, conception, reduction to practice

17    and the acts, the diligence and lab abandonment, that is a

18    rather large order.  But if that is what you are proposing --

19          THE COURT:  We're talking about redacting the

20    dates, yes, not redacting the content but redacting the dates.

21          MR. HORVACK:  Right.

22          MR. GALLAGHER:  If this would be the only way we

23    could preclude Mr. Cordani from having access to the actual

24    conception, reduction to practice and acts of diligence, we'll

25    abide by your Honor's order.  It will be an extreme burden

1   on behalf of DuPont to go through and do those individual

2   redactions.

3          THE COURT:  You can do it and so can the other

4   side.  I'm sure your situation, though, is, Mr. Gallagher,

5   you would rather have your side to do it to make sure it's

6   completed; correct?

7          MR. GALLAGHER:  Yes, your Honor.

8          THE COURT:  I figured that one.  Well, that's what

9   I'm going to rule for right now.  He'll have access to the

10  content but not to the dates.  That may take a heck of a long

11  time to do it and it's going to also require, quite frankly,

12  MacDermid's attorneys to double-check to make sure the dates

13  have been excluded.

14         MR. GALLAGHER:  It is going to take a long period

15  of time just knowing the documents surrounding the conception

16  and reduction to practice of the inventions is closed in the

17  '837 patent.  That is no short order, but if that is Your

18  Honor's order, you will get it done.

19         THE COURT:  That's my order but the responsibility

20  will first be on DuPont, but there will be an equally shared

21  responsibility on your side of the fence, John, simply because

22  I'm allowing Mr. Cordani access to this information.

23         MR. HORVACK:  Absolutely, your Honor.  I will

24  personally check and double-check before Mr. Cordani gets the

25  documents.

1             THE COURT:  Okay.

2             MR. CORDANI:  Thank you very much, your Honor.

3   This is John Cordani.

4             THE COURT:  Counsel, is there anything else?  I

5   know there is still one thing outstanding and that's the issue

6   you brought up, John, about the motion that was filed by

7   MacDermid and I'm working on it.

8             MR. GALLAGHER:  Your Honor, if I may.

9             THE COURT:  Yes.

10             MR. GALLAGHER:  This is John Gallagher.

11             THE COURT:  Sure.

12             MR. GALLAGHER:  Since the last telephone confer-

13   ence with your Honor, the parties have opened up a dialogue

14   regarding a possible stipulation to dismiss MacDermid Inc.

15   from the case.  I'm cautiously optimistic that we may be able

16   to work this out so we could take those eight inches of papers

17   off your desk, and maybe if you give us another week to see if

18   we could hammer home a stipulation.

19             THE COURT:  Sure.

20             MR. GALLAGHER:  Just so it's one less thing you

21   have to do.

22             THE COURT:  Okay.  If you want any help with the

23   Court from that standpoint, you can give me a call.

24             MR. GALLAGHER:  I appreciate it, your Honor.

25             THE COURT:  That's not a problem.  Okay.  I'll

1   hold off.  I started on it and have done an outline and some

2   drafting, not substantial but I have done some drafting on it,

3   and I'll just hold off and work on something else.  I can keep

4   myself entertained in many other ways, I assure you.

5              MR. GALLAGHER:  So we understand.

6              THE COURT:  Particularly since I'm getting back

7   into mediations now.

8              MR. MARSDEN:  We're relieved to hear that, your

9   Honor.

10             THE COURT:  Well, so am I.

11             Okay.  Get a protective order to me.  As I said,

12  Brian Gaffigan was the one who took down the information today

13  concerning my ruling.  If there are any questions, get back in

14  touch with me as soon as possible.

15             MR. MARSDEN:  Thank you, your Honor.

16             THE COURT:  Okay.  Thank you all.

17             MR. GALLAGHER:  Thank you for your time this

18  afternoon, your Honor.

19             THE COURT:  Take care.

20             (Telephone conference ends at 4:52 p.m.)

21

22

23

24

25

# EXHIBIT F

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

INGENIO, FILIALE DE LOTO-QUEBEC, )
INC., )
)
Plaintiff, )
)   C. A. No. 04-1532-KAJ
v. )
)
GAMELOGIC, INC. and )
SCIENTIFIC GAMES CORPORATION )
)
Defendants. )

## STIPULATED PROTECTIVE ORDER

WHEREAS, the parties recognize that pursuant to discovery or otherwise during the course of this action, all parties and nonparties may be required to disclose trade secrets and other confidential or proprietary research, development, or commercial information within the meaning of Rule 26(c) of the Federal Rules of Civil Procedure;

WHEREAS, this lawsuit involves, inter alia, (a) highly confidential, technical proprietary and trade secret subject matter and (b) highly sensitive and confidential financial and marketing information;

WHEREAS, the unrestricted disclosure of such highly confidential technical, trade secret, financial and marketing information would be extremely prejudicial to the parties and compromise their respective competitive positions; therefore, the parties have determined that this Protective Order is required in order to protect the interests of the parties while allowing the exchange of information relevant to the litigation; and

1

WHEREAS, the parties have, through counsel, stipulated to the entry of this Protective Order pursuant to Rule 26(c) to prevent unnecessary disclosure or dissemination of such confidential or proprietary information;

IT IS HEREBY ORDERED that the following provisions of this Order shall control:

1.    <u>Designated Material</u>

In accordance with the terms of this Protective Order, any information recorded in any form or any portion thereof, including any form of evidence or discovery contemplated under Rules 26 through 36 of the Federal Rules of Civil Procedure, may be designated pursuant to this Protective Order "HIGHLY CONFIDENTIAL," or "CONFIDENTIAL" by the person or entity producing it or by any party to this action (the "Designating Party") if: (a) produced or served, formally or informally, pursuant to the Federal Rules of Civil Procedure or in response to any other formal or informal discovery request in this action; and/or (b) filed with the Court. All such information and material and all information or material derived from it constitutes "Designated Material" under this Protective Order. Unless and until otherwise ordered by the Court or agreed to in writing by the parties, any and all material designated under this Protective Order shall not be used or disclosed by the party receiving the Designated Material except as provided under the terms of this Protective Order. (For purposes of this Protective Order, "disclose" or "disclosed" means to show, furnish, provide or otherwise communicate the contents or existence of the referenced material or document to anyone, except as provided herein).

2.    Access

      2.1    Materials Designated HIGHLY CONFIDENTIAL.

Subject to the limitations set forth in this Protective Order, Designated Material may be marked HIGHLY CONFIDENTIAL generally for the purpose of protecting non-public information relating to the Designating Party's highly sensitive research, development, trade secret, technical, manufacturing, patent application, marketing and financial information. Material designated HIGHLY CONFIDENTIAL may only be disclosed by the receiving party to:

      (a)    Subject to Section 3 below, persons who appear on the face of the Designated Material marked HIGHLY CONFIDENTIAL as an author, addressee or recipient thereof; or persons who have prior knowledge of the contents or subject matter of the document or thing (provided the prior knowledge was not gained in violation of this Order), participated in events relating to those described or contained in the document or thing or in whose former files the document or thing was found;

      (b)    Outside counsel for the parties to this action, as well as the partners, associates, agents and regularly employed staff and supporting personnel of such counsel to the extent reasonably necessary to render professional services in this action;

      (c)    The Court and court personnel (including stenographic reporters) and any necessary law clerk, paralegal, secretarial, clerical, and other lay court personnel;

      (d)    Subject to Section 3 below, Designated Material marked HIGHLY CONFIDENTIAL may also be disclosed to independent experts (and the assistants, secretarial and clerical staffs of such experts) (collectively, "Consultants"), who are not employees of the receiving party and who are retained by a party or its attorneys of record in this Action to assist

3

in the preparation of the case, such as independent economic, accounting or scientific experts or technical advisors, and to furnish technical or expert services in connection with this action, or to give testimony with respect to the subject matter thereof for the trial of this action, and (i) who have been designated in writing by notice to counsel for all the other parties to this suit prior to any disclosure of any of the producing party's CONFIDENTIAL or HIGHLY CONFIDENTIAL information to such persons under the terms of section 3.3 below, and (ii) who have been provided with a copy of this Order and have signed an affidavit of the form of Exhibit A attached hereto (a copy of such signed affidavit to be provided promptly to counsel for all other parties by counsel for the party retaining such person);

(e)    Duplicating, photocopying and document coding/scanning contractors, jury consultants, and graphics consultants provided that such contractors be provided a copy of this order and that such contractors agree in writing, in the form of Exhibit A attached hereto, to comply with and be bound by its terms;

(f)    Such other persons as or by order of this Court or as the parties may, in writing, agree.

(g)    If a Receiving Party wishes to disclose HIGHLY CONFIDENTIAL information to persons not otherwise authorized under the terms of this Protective Order, the Receiving Party shall give notice to the Designating Party identifying the person(s) and the HIGHLY CONFIDENTIAL information to be disclosed. The Designating Party shall, within five business days, inform the Receiving Party whether it agrees to the proposed disclosure. If the proposed disclosure is to be made as part of a deposition, the Designating Party shall, within two business days or 24 hours before the scheduled commencement of the deposition, whichever is earlier, inform the Receiving Party whether it agrees to the proposed disclosure. The

4

Designating Party's Consent shall not be unreasonably withheld. If the Designating Party objects to the proposed disclosure, it shall state the particular reasons for its objection in writing. The parties shall meet and confer in a good faith effort to resolve any dispute regarding a proposed disclosure. The confidentiality of all HIGHLY CONFIDENTIAL information shall at all times be maintained in compliance with the terms of this Protective Order.

   2.2    Materials Designated CONFIDENTIAL.

   Subject to the limitations set forth in this Protective Order, Designated Material may be marked CONFIDENTIAL for the purpose of protecting non-public technical, developmental, financial, manufacturing, patent, marketing, commercial, financial, business or other confidential information of the Designating Party. Materials designated CONFIDENTIAL may only be disclosed by the receiving party to:

   (a)    Subject to Section 3 below, persons who appear on the face of Designated Materials marked CONFIDENTIAL as an author, addressee or recipient thereof; or persons who have prior knowledge of the contents or subject matter of the document or thing (provided the prior knowledge was not gained in violation of this Order), participated in events relating to those described or contained in the document or thing or in whose former files the document or thing was found.

   (b)    Subject to Section 3 below, no more than two (2) in-house counsel per party who are involved in the conduct of this action and clerical staff of such in-house counsel to the extent reasonably necessary for a party's in-house counsel to fulfill his or her responsibilities in connection with the conduct of this action and/or for outside counsel to render professional services in this action; for purposes of this provision, "per party" means a total of two in-house counsel for Ingenio, Filiale de Loto-Quebec, Inc., a total of two (2) in-house counsel for

5

GameLogic, Inc. and a total of two (2) in-house counsel for Scientific Games Corporation. Notwithstanding the foregoing, no person who accesses another party's "Confidential Information" or "Highly Confidential Information" shall participate, during the course of the above-captioned litigation and for a period of one year following final resolution (including any appeals) of the above-captioned litigation, in preparing any patent applications or prosecuting patent applications with any governmental agency which contain claims purporting to cover equipment, apparatuses, systems, methods, processes or technology in the computer-based lottery field;

      (c)     Outside counsel defined in Section 2.1(b);

      (d)     Subject to Section 3 below, Consultants defined in Section 2.1(d) above;

      (e)     Present employees or agents of the designating party, provided, however, such disclosure shall occur only in connection with the testimony of such employee or agent, whether by deposition or at trial; and

      (f)     Consultants of the designating party and former employees of the designating party whose testimony is sought or will be offered by the designating party in this action; provided, however, that the subject matter of the confidential information disclosed to such person be reasonably related to the subject matter of such person's likely testimony and, provided further, that such disclosure shall occur only in connection with the testimony of such consultants or former employees, whether by deposition or at trial;

      (g)     The Court and court personnel (including stenographic reporters) and any necessary law clerk, paralegal, secretarial, clerical, and other lay court personnel;

      (h)     Duplicating, photocopying and document coding/scanning contractors, jury consultants, and graphics consultants, provided that such contractors be provided a copy of

this Order and that such contractors agree in writing, in the form of Exhibit A attached hereto, to comply with and be bound by its terms; and

        (i)     Such other persons as by order of the Court or as the parties may, in writing, agree.

        (j)     If a Receiving Party wishes to disclose CONFIDENTIAL information to persons not otherwise authorized under the terms of this Protective Order, the Receiving Party shall given notice to the Designating Party identifying the person(s) and the CONFIDENTIAL information to be disclosed. The Designating Party shall, within five business days, inform the Receiving Party whether it agrees to the proposed disclosure. If the proposed disclosure is to be made as part of a deposition, the Designating Party shall, within two business days or 24 hours before the scheduled commencement of the deposition, whichever is earlier, inform the Receiving Party whether it agrees to the proposed disclosure. The Designating Party's Consent shall not be unreasonably withheld. If the Designating Party objects to the proposed disclosure, it shall state the particular reasons for its objection in writing. The parties shall meet and confer in a good faith effort to resolve any dispute regarding a proposed disclosure. The confidentiality of all CONFIDENTIAL information shall at all times be maintained in compliance with the terms of this Protective Order.

    2.3    Upon the termination of this action all recipients of Designated Material pursuant to Section 2 shall return or destroy all Designated Material (and all copies thereof) in the manner described in Section 12.2 of this Protective Order.

    3.    <u>Certificates Concerning Designated Materials</u>

    3.1    Each person to whom any Designated Material of another party may be disclosed pursuant to the provisions of Section 2.2(b) above, shall, prior to the time such Designated

Material is disclosed to him or her, be provided with a copy of this Protective Order and shall certify under penalty of perjury that he or she has carefully read the Protective Order and fully understands and agrees to abide by its terms. This certificate shall be in the form attached as Exhibit A.

3.2     Outside counsel who makes any disclosure of Designated Materials to Consultants, pursuant to Sections 2.1(d) and 2.2(d) above, shall retain each original executed certificate. This certificate shall be in the form attached as Exhibit A.

3.3     If any party desires to give, show, make available or communicate any documents or information designated as HIGHLY CONFIDENTIAL to any person identified in paragraphs 2.1(a) or 2.1(d) above, or information designated CONFIDENTIAL information to any person(s) identified in paragraph 2.2(a) or 2.2(d) above, the party must first identify that individual to attorneys for the Designating Party, who shall have seven (7) business days from receipt of such notice to object to disclosure to any individual so identified. Such identification shall include the full name, company or firm name, professional address and a current resume, including a listing of companies and individuals for whom the Consultant has been employed or consulted with within the preceding five (5) years, for any person identified in paragraph 2.1(d) or 2.2(d). The parties shall attempt to resolve any objections informally. If the objections cannot be resolved within ten (10) business days from service of the notice, the party objecting to the disclosure of the documents or information designated as CONFIDENTIAL or HIGHLY CONFIDENTIAL to the individual may move for an order of the Court precluding such disclosure. In the event objections are made and not resolved informally, disclosure of HIGHLY CONFIDENTIAL or CONFIDENTIAL documents and/or information to the individual shall not be made until such a

8

motion for an order has been finally resolved by the Court.  The party seeking to preclude disclosure shall bear the burden of proving that the disclosure is inappropriate.

     4.    Use of Designated Materials by Designating Party

Nothing in this Protective Order shall limit any Designating Party's use of its own documents and information nor shall it prevent the Designating Party from disclosing its own confidential information or documents to any person.  Such disclosure shall not affect any designations made pursuant to the terms of this Protective Order, so long as the disclosure is made in a manner which is reasonably calculated to maintain the confidentiality of the information.

     5.    Designating Materials

Documents, information, materials, pleadings, legal memoranda, expert statements and discovery responses, in whole or in part, may be designated as CONFIDENTIAL or HIGHLY CONFIDENTIAL as follows:

     5.1    The producing or responding party shall designate material by placing the legend "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL" on each page of the materials or on each physical item prior to its production.

     5.2    When a party wishes to designate its own CONFIDENTIAL or HIGHLY CONFIDENTIAL materials produced by someone other than the Designating Party, such designation shall be made:

          (a)    Within twenty-five (25) days from the date that the Designating Party receives copies of such materials from the producing or disclosing entity; and

          (b)    By notice to all parties to this action and to the producing party, if such party is not a party to this action, identifying the materials to be designated with particularity

9

(either by production numbers or by providing other adequate identification of the specific material).  Such notice shall be sent by facsimile and regular mail.

       (c)     The parties receiving materials produced by third-parties pursuant to subpoena agree to treat them as "HIGHLY CONFIDENTIAL" under this Protective Order until expiration of said 25 day period or until designation is made as set forth above within said 25 day period.

    5.3    Upon notice of designation pursuant to Section 5.2 above, all persons receiving notice of the requested designation of materials, including the producing party, shall:

       (a)     Make no further disclosure of such Designated Material or information contained therein, except as allowed in this Protective Order;

       (b)     Take reasonable steps to notify any persons known to have possession of or access to such Designated Materials of the effect of such designation under this Protective Order; and

       (c)     Take reasonable steps to reclaim or prevent access to such Designated Material or information in the possession or control of any person not permitted to have access under the terms of this Protective Order.

    5.4    Defendant GameLogic Inc. produced documents prior to submission and entry of this Protective Order, many of which were designated "Confidential" pursuant to Local Rule 26.2.  GameLogic shall, within 14 calendar days of the date of this order, identify which previously produced documents are designated as "Highly Confidential" pursuant to section 2.1 of this Protective Order, and which previously produced documents are designated as "Confidential" pursuant to section 2.2 of this Protective Order.  All Receiving Parties shall abide

by the provisions of Local Rule 26.2 until they receive such notice from GameLogic.  Thereafter, all previously produced documents shall be handled as set forth in this Protective Order.

      6.     <u>Designating Depositions</u>

      6.1     Deposition transcripts or portions thereof may be designated as CONFIDENTIAL or HIGHLY CONFIDENTIAL by a party during deposition testimony taken in this action, in which case the portion of the transcript containing Designated Material shall be identified in the transcript by the Court Reporter as CONFIDENTIAL or HIGHLY CONFIDENTIAL.

      6.2     Where testimony is designated at a deposition, the Designating Party shall have the right to exclude at those portions of the deposition all persons not authorized by the terms of this Protective Order to receive such Designated Material.

      6.3     Notwithstanding the provisions set forth in Sections 2.1, 2.2 and 3, above, any party may mark Designated Material marked CONFIDENTIAL or HIGHLY CONFIDENTIAL as a deposition exhibit and examine any witness thereon, provided that the exhibit and related transcript pages receive the same confidentiality designation as the original Designated Material and provided that the person to whom the Designated Materials is to be shown is a person who may have such access under Sections 2.1, 2.2 and 3, above.

      6.4     Any party may, within thirty (30) calendar days after receiving a deposition transcript, designate pages of the transcript and/or its exhibits as Designated Material.  If any party so designates such material, the parties or deponents shall provide written notice of such designation to all parties within the thirty day period.  Designated Material within the deposition transcript or the exhibits thereto may be identified in writing or by underlining the relevant portions and marking such portions CONFIDENTIAL or HIGHLY CONFIDENTIAL.  Until the expiration of the thirty calendar day period, any portion of the deposition not previously

designated shall be treated as HIGHLY CONFIDENTIAL and subject to protection as provided by this Protective Order.

       7.     <u>Copies</u>

All complete or partial copies of Designated Materials shall also be deemed subject to the terms of this Protective Order.

       8.     <u>Court Procedures</u>

       8.1     <u>Disclosure of Designated Material to Court Officials</u>.  Subject to the provisions of this Section 8, Designated Material may be disclosed to the Court, Court officials or employees involved in this action (including court reporters, persons operating video recording equipment at depositions, and any special master or referee appointed by the Court), the jury in this action, and any interpreters interpreting on behalf of any party or deponent who complete the certification set out in Exhibit A.

       8.2     <u>Filing Designated Materials with the Court</u>.  In applications and motions to the Court, all Designated Material filed with the Court shall be in a sealed envelope or container on which shall be affixed the title of this action, an indication of the nature of the contents, the words "CONFIDENTIAL-FILED UNDER SEAL" and a statement substantially as follows:

> **THIS ENVELOPE CONTAINS MATERIAL SUBJECT TO A PROTECTIVE ORDER ENTERED IN THIS ACTION.  IT IS NOT TO BE OPENED NOR ARE ITS CONTENTS TO BE DISPLAYED, REVEALED OR MADE PUBLIC, EXCEPT BY ORDER OF THE COURT.**

The submission shall indicate clearly which portions are Designated Materials.  For the convenience of the parties and the Court, a party that files a paper that is a pleading, brief, declaration or exhibit that contains, in excerpts, quotes or paraphrases Designated Material and undesignated material may file the entire paper under seal.  The Clerk of the Court is directed to

maintain under seal all documents and transcripts of deposition testimony and answers to interrogatories, admissions and other pleadings filed under seal with the Court in this litigation that have been designated, in whole or in part, as Designated Material by a party to this action.

       8.3    <u>Retrieval of Designated Materials</u>. The party responsible for filing the Designated Materials shall be responsible for retrieving such Designated Materials from the Court following the final termination of the action (including any appeals thereof), to the extent permitted by the Court and the Court's governing rules.

       8.4    <u>Failure to File Under Seal</u>. If any party fails to file Designated Materials under seal, the Designating Party or any party to this action may request that the Court place the Designated Materials under seal within 30 days of the filing of said Designated Materials. The Clerk of the Court is directed to comply with such request if made.

       9.    <u>Objections</u>

       A party may challenge the propriety of any designation under this Protective Order at any time. A challenge may be made by serving all other parties with a captioned notice of objection, which shall identify with particularity the Designated Materials as to which the designation is challenged and state the basis for each challenge ("Notice of Objection"). Service of a Notice of Objection shall be made by facsimile and by mail.

       Following service of a Notice of Objection, the parties shall meet and confer in good faith to resolve the challenge. In the event that the parties are unable to resolve the challenge informally, the party challenging the designation may file, on or before the thirteenth (13) calendar day after service of a Notice of Objection, a motion to redesignate the challenged material, accompanied by a certification that the parties met and conferred in good faith prior to the filing of the motion. In the event of such a motion, the material at issue may be submitted to

the Court for in camera inspection. It shall be the burden of the designating person(s) under such circumstances to establish that the information so designated is CONFIDENTIAL or HIGHLY CONFIDENTIAL within the meaning of this Protective Order. The original designations shall remain effective until ten (10) business days after service of notice of entry of an order redesignating the materials and during the pendency of any timely filed appeal or writ petition.

In the event that a party files a motion challenging the designation of a document or documents, following the objection procedure set forth above and the meet and confer process, the Court may award sanctions, including reasonable attorneys' fees and costs, to the party prevailing on the motion if the Court finds that the other party acted without substantial justification by filing the motion, by resisting the motion, or by improperly designating materials as CONFIDENTIAL or HIGHLY CONFIDENTIAL, as the case may be.

10.    Client Communication

Nothing in this Protective Order shall prevent or otherwise restrict counsel from rendering advice to their clients and, in the course of rendering such advice, relying upon the examination of Designated Material. In rendering such advice and otherwise communicating with the client, however, counsel shall not disclose the contents, substance or source of any Designated Material, except as permitted by this Protective Order.

11.    No Prejudice

11.1    This Protective Order shall not diminish any existing obligation or right with respect to Designated Material, nor shall it prevent a disclosure to which the Designating Party consents in writing before the disclosure takes place.

14

11.2    Unless all parties stipulate otherwise, evidence of the existence or nonexistence of a designation under this Protective Order shall not be admissible for any purpose during any proceeding on the merits of this action.

11.3    The inadvertent or unintentional disclosure by the producing party of CONFIDENTIAL or HIGHLY CONFIDENTIAL information, regardless of whether the information was so designated at the time of the disclosure, shall not be deemed a waiver in whole or in part of the party's claim of confidentiality, either as to the specific information disclosed or as to any other information relating thereto or on the same or related subject matter.

11.4    If a party through inadvertence produces or provides discovery of any confidential information without labeling, marking or designating it as CONFIDENTIAL or HIGHLY CONFIDENTIAL, the producing party must give written notice to the receiving party or parties within ten (10) business days following such inadvertent production that the information, document, or thing is CONFIDENTIAL or HIGHLY CONFIDENTIAL.  If the producing party gives written notice that the information, document, or thing is CONFIDENTIAL or HIGHLY CONFIDENTIAL, the receiving party or parties shall treat such information, document or thing as CONFIDENTIAL or HIGHLY CONFIDENTIAL from the date such notice is received.

11.5    Disclosure of such information, document or thing prior to receipt of such notice shall not be deemed a violation of this Order.  However, if prior disclosure of such information, document, or thing was made to anyone not authorized to have access to such material under this Order, those persons to whom disclosure was made must be promptly advised that the material disclosed to them is CONFIDENTIAL or HIGHLY CONFIDENTIAL and must be treated in accordance with this Order.  Counsel shall cooperate to restore the confidentiality of any such inadvertently or unintentionally produced information.

15

11.6    Neither the provisions of this Protective Order, nor the filing of any material, under seal, shall prevent the use in court, at any hearing, or at trial of this case of any material that is subject to this Protective Order or filed under seal pursuant to its provisions.  Prior to the pretrial conference, the parties shall meet and confer concerning appropriate methods for dealing with Designated Material at trial.

12.    Modification and Survival

12.1    Modification.  The parties reserve the right to seek modification of this Protective Order at any time for good cause.  The parties agree to meet and confer prior to seeking to modify this Protective Order for any reason.  The restrictions imposed by this Protective Order may only be modified or terminated by written stipulation of all parties or by order of this Court.

12.2    Survival and Return of Designated Material.  This Protective Order shall survive termination of this action.  Upon final termination of the action, including appeals and retrials, and at the written request of the Designating Party, all Designated Material shall be returned to counsel for the Designating party or, if such party is not represented by counsel, directly to the Designating Party.  Such Designated Materials shall either be returned at the expense of the Designating Party or, at the option of the requesting party, destroyed.  Upon request for the return or destruction of Designated Materials, counsel of record shall certify their compliance with this provision and shall deliver such certification to counsel for the Designating Party not more than ninety (90) days after the written request to return or destroy Designated Materials.

Notwithstanding the provisions for return or destruction of Designated Material, outside counsel may retain one archival set of pleadings, attorney or consultant work product and deposition transcripts (including exhibits) that include Designated Material.

13.    The Provisions Hereof Do Not Apply to Information That Becomes Public
Knowledge In The Absence of A Violation of This Protective Order

The restrictions set forth in the foregoing paragraphs shall not apply to information which

(a) was or became public knowledge, not in violation of this Protective Order, (b) was or is

acquired in good faith from a third party, not a party to this litigation, not in violation of this

Protective Order and who has the right to disclose such information, (c) was or is discovered

independently by the receiving party without any violation of this Protective Order having

occurred, or (d) was disclosed by the Designating party to a third party in the absence of any

obligation that the information would be kept confidential.

14.    Material Disclosed to be Used Only for Purposes of Lawsuit

All Designated Material hereunder shall be used by each receiving party solely for

purposes of this litigation and for no other purpose.  Except as provided below a receiving party

may not use any Designated Material it obtains in the course of this litigation for any business

purpose or in any other legal or administrative proceedings or in any other manner relating to the

prosecution of any patent application or any request for patent rights in any country.  Designated

Material produced during the course of this litigation can be used by a receiving party in other

legal or administrative proceedings if such use is mutually agreed by the producing and receiving

party.

15.    No Contract

This stipulation is for the Court's consideration and approval as an order.  It shall not be

construed to create a contract between the parties or between the parties and their respective

counsel.

17

16.     Court's Retention of Jurisdiction

The Court retains jurisdiction to make such amendments, modifications, and additions to this Protective Order as it may from time to time deem appropriate.

17.     Approval By Counsel

Execution by counsel for the parties below shall indicate that the terms and conditions of this Stipulated Protective Order shall be regarded as a binding on the parties regardless of the date the Stipulated Protective Order actually is signed by the Court.

18.     Other Proceedings

By entering this order and limiting the disclosure of information in this case, the Court does not intend to preclude another court from finding that information may be relevant and subject to disclosure in another case. Any person or party subject to this order who becomes subject to a motion to disclose another party's information designated "CONFIDENTIAL," or "HIGHLY CONFIDENTIAL," pursuant to this order shall promptly notify that party of the motion so that the party may have an opportunity to appear and be heard on whether that information should be disclosed.


DATED:          April 22, 2005

AGREED:

_____           _____
Edmond D. Johnson (No. 2257)                 Richard L. Horwitz (#2246)
Thomas H. Kovach (No. 3964)                  David E. Moore (#3983)
222 Delaware Ave.                            Hercules Plaza 6th Floor
Suite 900                                    1313 N. Market Street
Wilmington, DE 19801                         P.O. Box 951
(302) 655-5000                               Wilmington, DE 19899
                                             (302) 984-6000

_P—M Burd_ (signature)

Rodger L. Tate
Brian M. Buroker
Christopher J. Cuneo
HUNTON & WILLIAMS LLP
1900 K Street, N.W.
Washington, DC  20006-1109
Telephone:  (202) 955-1500
Facsimile:   (202) 778-2201


Counsel for Plaintiff
Ingenio, Filiale De Loto-Quebec, Inc.

Gary M. Hnath
Susan Baker Manning
Star-shemah Bobatoon
BINGHAM MCCUTCHEN LLP
1120 20th Street, NW
Suite 800
Washington, DC 20036
Telephone:  (202) 778-6150
Facsimile:   (202) 778-6155


Counsel for Defendant
GameLogic, Inc.


Jack B. Blumenfeld (#1014)
Rodger D. Smith II (#3778)
MORRIS, NICHOLS, ARSHT & TUNNELL
1201 N. Market Street
P.O. Box 1347
Wilmington, DE 19899
(302) 658-9200

Counsel for Defendant
Scientific Games Corporation


SO ORDERED:

_____
United States Judge

_____
Rodger L. Tate
Brian M. Buroker
Christopher J. Cuneo
HUNTON & WILLIAMS LLP
1900 K Street, N.W.
Washington, DC  20006-1109
Telephone:  (202) 955-1500
Facsimile:   (202) 778-2201


Counsel for Plaintiff
Ingenio, Filiale De Loto-Quebec, Inc.

_____
Gary M. Hnath
Susan Baker Manning
Star-shemah Bobatoon
BINGHAM MCCUTCHEN LLP
1120 20th Street, NW
Suite 800
Washington, DC 20036
Telephone:  (202) 778-6150
Facsimile:   (202) 778-6155

Counsel for Defendant
GameLogic, Inc.


_____
Jack B. Blumenfeld (#1014)
Rodger D. Smith II (#3778)
MORRIS, NICHOLS, ARSHT & TUNNELL
1201 N. Market Street
P.O. Box 1347
Wilmington, DE 19899
(302) 658-9200

Counsel for Defendant
Scientific Games Corporation


SO ORDERED:                         _____

                                    United States Judge

Rodger L. Tate
Brian M. Buroker
Christopher J. Cuneo
HUNTON & WILLIAMS LLP
1900 K Street, N.W.
Washington, DC  20006-1109
Telephone:  (202) 955-1500
Facsimile:   (202) 778-2201


Counsel for Plaintiff
Ingenio, Filiale De Loto-Quebec, Inc.

Gary M. Hnath
Susan Baker Manning
Star-shemah Bobatoon
BINGHAM MCCUTCHEN LLP
1120 20th Street, NW
Suite 800
Washington, DC 20036
Telephone:  (202) 778-6150
Facsimile:   (202) 778-6155


Counsel for Defendant
GameLogic, Inc.

Jack B. Blumenfeld (#1014)
Rodger D. Smith II (#3778)
MORRIS, NICHOLS, ARSHT & TUNNELL
1201 N. Market Street
P.O. Box 1347
Wilmington, DE 19899
(302) 658-9200

Counsel for Defendant
Scientific Games Corporation


SO ORDERED:

_____
United States Judge

EXHIBIT A

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

**INGENIO, FILIALE DE LOTO-QUEBEC,
INC.,**

                    **Plaintiff,**

**v.**                                        **C. A. No. 04-1532-KAJ**

**GAMELOGIC, INC. AND
SCIENTIFIC GAMES CORPORATION**

        **Defendants**

### AGREEMENT

My full name is _____. I am presently employed by

_____ in the position of _____. My residence

address is _____.

I hereby acknowledge that I am to have access to information designated in this

litigation as CONFIDENTIAL material and/or HIGHLY CONFIDENTIAL material, if permitted

by the terms of the parties' Stipulated Protective Order, in the captioned litigation. I certify my

understanding that such information has been provided to me pursuant to the terms and

restrictions of the Stipulated Protective Order entered _____ 2005, in the captioned

litigation, under Section 2 thereof, and that I have been given a copy of and have read said

Stipulated Protective Order and agree to be bound by the terms thereof. I further agree to subject

myself to the jurisdiction of the United States District Court for the District of Delaware

regarding resolution of any matter pertaining to said Stipulated Protective Order.


Dated:_____        Signature:_____

                              Print Name:_____

## CERTIFICATE OF SERVICE

I hereby certify that on the 22nd day of April, 2005, I caused a copy of the foregoing

*Stipulated Protective Order* to be served via email and U.S. Mail upon:

COUNSEL FOR DEFENDANT GAMELOGIC, INC.

Of Counsel:

Gary M. Hnath
Susan Baker Manning
Bingham McCutchen LLP
1120 20th Street, NW
Suite 800
Washington, DC 20036
(202) 778-6150
gary.hnath@bingham.com
susan.manning@bingham.com

Richard L. Horowitz (#2246)
David E. Moore (#3983)
Potter Anderson & Corroon, LLP
Hercules Plaza 6th Floor
1313 N. Market Street
P.O. Box 951
Wilmington, DE 19899
(302) 984-6000
rhorwitz@potteranderson.com
dmoore@potteranderson.com

and

COUNSEL FOR DEFENDANT SCIENTIFIC GAMES CORPORATION

Jack B. Blumenfeld (#1014)
Rodger D. Smith II (#3778)
MORRIS, NICHOLS, ARSHT &
TUNNELL
1201 N. Market Street
P.O. Box 1347
Wilmington, DE 19899
(302) 658-9200
JBlumenfeld@MNAT.com
RSmith@MNAT.com

Thomas H. Kovach (No. 3964)

# EXHIBIT G

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| HITACHI, LTD., and UNISIA NORTH AMERICA, INC.,<br><br>Plaintiffs,<br><br>v.<br><br>BORGWARNER INC., and BORGWARNER MORSE TEC INC.,<br><br>Defendants. | )<br>)<br>)<br>)<br>)<br>)   Civil Action No. 05-048-SLR<br>)<br>)<br>)<br>)<br>)<br>) |
| BORGWARNER INC.,<br><br>Counterclaimant,<br><br>v.<br><br>HITACHI, LTD., and UNISIA NORTH AMERICA, INC.,<br><br>Counterdefendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

## STIPULATED PROTECTIVE ORDER

It is hereby stipulated and agreed, by and among the parties to the above-captioned action through their respective counsel, that the terms and conditions of this Stipulated Protective Order shall govern the production of documents, answers to interrogatories, responses to requests for admission, deposition testimony, and all other discovery taken pursuant to the Federal Rules of Civil Procedure, as well as testimony adduced at trial, matters in evidence and other information exchanged by the parties in the above-captioned action or produced by a third party witness, which the disclosing party designates as confidential hereunder.

NOW, THEREFORE, upon consideration of the record and pursuant to the provisions of Fed. R. Civ. P. 26(c), IT IS ORDERED:

### DEFINITIONS

1.    For the purposes of this Order, "Confidential Information" shall mean all information or material which is (i) produced for or disclosed to a Receiving Party, and (ii) considered by a Producing or Designating Party to constitute or to contain trade secrets or other confidential information, including but not limited to, technical, financial or commercial information, whether embodied in physical objects, documents, or the factual knowledge of persons, and which information has been designated in good faith by the Producing or Designating Party as "Confidential Information."

2.    "Confidential Attorneys' Eyes Only Information" shall mean Confidential Information deemed by the Producing or Designating Party to be sensitive technical, financial or commercial information that the Producing or Designating Party reasonably and in good faith believes could result in serious competitive disadvantage if disclosed to the other parties, and which information is designated in good faith by the Producing or Designating Party as "Confidential Attorneys' Eyes Only Information" at the time of production.

3.    "Confidential Information" and/or "Confidential Attorneys' Eyes Only Information" shall include all information, documents and things referring or relating to the foregoing, including but not limited to copies, summaries and abstracts of the foregoing.  No item shall be deemed protected by this Order if it is available to the public at the time of disclosure or becomes publicly known through means not constituting breaches of this Order by the Receiving Party.  Further, this Order shall not be deemed to cover items where the Receiving Party can show the information was already known to it, was independently developed by it, was

received by the Receiving Party after the time of disclosure hereunder from a third party having

the right to make such a disclosure, or was legitimately obtained by a party independently of this

proceeding.

4.      "Producing Party" means a party or third party that produces Confidential

Information or Confidential Attorneys' Eyes Only Information.

5.      "Receiving Party" means any party receiving Confidential Information or

Confidential Attorneys' Eyes Only Information.

6.      "Designating Party" means a party or third party that designated its own materials

or those of any other party or entity as Confidential Information or Confidential Attorneys' Eyes

Only Information.

7.      "Authorized Personnel" who have access to Confidential Attorneys' Eyes Only

Information means:

a.      Outside counsel for the plaintiffs, namely partners and associates of Foley

& Lardner LLP (including its Tokyo office) and Ashby & Geddes, and their necessary

support personnel, including without limitation secretaries, paralegals, jury consultants,

graphics and other litigation support staffs;

b.      Outside counsel for the defendants, namely partners and associates of

Sidley Austin Brown & Wood, LLP (including its Tokyo office) and Morris, James,

Hitchens & Williams LLP, and their necessary support personnel, including without

limitation secretaries, paralegals, jury consultants, graphics and other litigation support

staffs;

c.      Employees of outside vendors acting under the direction of outside U.S.

counsel identified above and providing translation, interpreting, copy services, coding,

imaging or other document management services, jury research and/or analysis, and/or

exhibit preparation services in connection with this litigation, provided that such

employees of third party vendors shall not be employees of a party or otherwise working

for or on behalf of a party in connection with that party's business;

        d.      Stenographic reporters and videographers engaged for depositions or

proceedings necessary to this action;

        e.      The Court, the Court's staff, and the jury in this litigation;

        f.      Outside experts or outside consultants for any party, whose advice and

consultation are being or will be used by such party in connection with this proceeding,

including other professional and clerical staff at the outside expert's or outside

consultant's firm, consulting group, or company. Outside experts or outside consultants,

as used in this Paragraph, shall not include any employee of the Receiving Party. Each

such outside expert or outside consultant shall execute an undertaking in the form

annexed hereto as Appendix A, prior to the disclosure to him or her of any Confidential

Information or Confidential Attorneys' Eyes Only Information. All such undertakings

executed by outside experts or consultants, together with a copy of his or her C.V. that

includes the following information: the expert's full name, professional address,

educational background, publications within the last five years, all present

nonconfidential employment and consultancies, all prior nonconfidential full-time

employment and consultancies within the last four years, and a list of all cases in which

the expert or consultant has testified at a deposition or in court within the last four years,

shall be transmitted to the other parties no less than seven (7) business days prior to the

disclosure of any such information. If a party believes that disclosure of Confidential

Information or Confidential Attorneys' Eyes Only Information to such person could injure or prejudice the Producing Party, that party may object, in writing, within seven (7) business days of the receipt of the undertaking to the party who selected the expert or consultant. Each party's counsel agrees to attempt to promptly contact their respective clients and receive an indication of whether any objection is forthcoming within 3 business days, with the understanding that up to 7 business days is available to provide any objection, if a response cannot in good faith be made in 3 business days. If a party objects pursuant to the provisions of this Paragraph and the parties cannot resolve their dispute on the terms of disclosure, no disclosure of Confidential Information or Confidential Attorneys' Eyes Only Information shall be made to any such expert or consultant with respect to whom an objection has been made except upon further order of this Court; and

      g.     Any person who (1) is identified as an author or recipient, including receipt by copy, of any document, information therein or tangible medium and is not otherwise shown prior to such disclosure not to have received the document, information therein or tangible medium, or (2) has been identified in writing by the Designating Party as having been provided with the document, information therein or tangible medium.

      h.     In no event shall a Receiving Party use Confidential Attorneys' Eyes Only Information of any Producing Party for the purpose of preparing or prosecuting any patent application or in connection with any other proceeding before the U.S. Patent and Trademark Office. Any individual who is given access to another party's Confidential Attorneys' Eyes Only Information pursuant to Paragraph 7 shall not counsel, assist, or participate in any way with the preparation, filing, or prosecution of any patent

application, protest, interference, public use proceeding, reissue, reexamination, citation

of prior art under 35 U.S.C. § 301, or request for certificate of correction concerning all

VCT systems, which expressly includes the patent-in-suit, any counterpart

patent/application to the patent-in-suit, any patent/application claiming priority to the

patent-in-suit or any counterpart, and any patent/application to which the patent-in-suit or

counterpart claims priority, until two (2) years following the earlier of (a) the date that a

respective Receiving Party is dismissed from this lawsuit, or (b) the date of final

termination of this lawsuit.

8.      "Authorized Personnel" who have access to Confidential Information means:

      a.      All persons identified in Paragraph 7; and

      b.      One (1) additional designated in-house attorney for each party, who needs

to have access to Confidential Information for the purpose of prosecuting this action for

the respective party in this action.  Each party may submit, in writing, the name of the

designee for approval at any time during this litigation with a description of his or her

title, job description and role with respect to this action.  Upon receiving a submission, a

party shall have seven (7) business days to object to the proposed designee, if a party

does not object, it shall be deemed to approve such designation.  Upon approval, any

designee shall execute an Undertaking in the form annexed hereto as Appendix A, prior

to the disclosure to him or her of any Confidential Information.  Objections shall be in

writing with detailed reasons for the objection.  Each party's counsel agrees to attempt to

promptly contact their respective clients and receive an indication of whether any

objection is forthcoming within 3 business days, with the understanding that up to 7

business days is available to provide any objection, if a response cannot in good faith be

made in 3 business days.  Parties shall, in good faith, attempt to resolve disputes over

objections, but no party shall disclose any Confidential Information to a designee who is

the subject of a standing objection except upon further order of this Court.  In the event

that the parties cannot resolve promptly a dispute regarding a designation under this

Paragraph, the Designating Party will have the burden of filing a motion within ten (10)

days of the objection and the objecting party shall have the burden of proving that the

objection is proper.  Pursuant to Paragraph 19 of this Order, no Confidential Attorneys'

Eyes Only Information shall be disclosed to designees under this Paragraph 8(b).  No

replacement or substitution of any employee previously designated and approved under

this provision shall be permitted unless such designated employee's relationship with the

party (as well as any entity related to the party) ends, in which case a replacement

employee may be designated.

   c. The same restriction under Paragraph 7h applies for Confidential

Information.

<strong>DESIGNATION OF MATERIAL</strong>

   9. All documents and things produced by any party or third party shall be numbered

by the Producing Party and may thereafter be identified by the parties by such numbers.

   10. At the time documents containing Confidential Information or Confidential

Attorneys' Eyes Only Information are produced or disclosed, any document that the Producing

or Designating Party desires to designate as such shall be stamped or marked on each page:

<strong>CONFIDENTIAL</strong>

<strong>OR</strong>

<strong>CONFIDENTIAL ATTORNEYS' EYES ONLY</strong>

7

11.     All documents, or any portions thereof, produced for inspection (but not yet provided to the inspecting party) shall be presumptively deemed Confidential Attorneys' Eyes Only Information subject to the provisions of this Order, regardless of whether so identified by the legend Confidential Attorneys' Eyes Only, until copies thereof are produced to the inspecting party by an agreement of the Producing Party and the inspecting party.  Counsel for a party producing documents may mask ("redact") material deemed exempt from discovery because (i) it is protected from disclosure under the attorney-client privilege or work product doctrine, (ii) it constitutes current research and development only if not related to VCT systems, or (iii) it is not related to VCT systems and is otherwise particularly sensitive information.  Any and all documents from which material is redacted shall identify in all redacted areas that a redaction has occurred.  The parties reserved the right to pursue additional categories for redaction, by either consent of the parties or order of the Court, to be addressed on a case-by-case basis.

12.     Deposition testimony that a party believes qualifies in whole or in part for treatment as Confidential Information or Confidential Attorneys' Eyes Only Information shall be appropriately designated either as set forth in Paragraph 10 at the time of the deposition or by written notice to all counsel of record no later than thirty (30) days after the deposition testimony.  Prior to the expiration of the thirty (30) day period, all material in deposition transcripts shall be treated as "Confidential Attorneys' Eyes Only Information."  The party claiming confidentiality for any deposition, transcript, or portion thereof, or any deposition exhibit, shall notify the reporter to label the relevant portion(s) of the transcript and exhibit(s):

**CONFIDENTIAL**

**OR**

**CONFIDENTIAL ATTORNEYS' EYES ONLY**

8

13.     Counsel for each party to this action shall be responsible for marking the designated portions of copies of the transcript in their possession with the legends above if written notice is given within the thirty (30) day period.  Portions of a deposition that contain Confidential Information or Confidential Attorneys' Eyes Only Information shall be taken only in the presence of persons entitled access to such information under Paragraphs 18 and 19.

14.     If inspection, measuring, testing, sampling or photographing of a party's processes, products, equipment, premises or other property pursuant to Fed. R. Civ. P. 34, or by agreement, will reveal or disclose Confidential Information or Confidential Attorneys' Eyes Only Information, the Producing Party shall advise the party seeking the discovery in advance that the inspection, measuring, testing, sampling or photographing will be permitted only on a confidential basis and that material discovered and the information derived from that material shall be treated as Confidential Information or Confidential Attorneys' Eyes Only Information subject to the terms of this Stipulated Protective Order.  If photographing or taping of premises, products, equipment, processes or other property is made which the producing entity has advised reveals Confidential Information or Confidential Attorneys' Eyes Only Information, such pictures or tapes shall bear the legend Confidential Information or Confidential Attorneys' Eyes Only Information on the photograph or videotape itself, and on any exterior packaging of the same.

## CHALLENGE TO DESIGNATION

15.     In the event that the Receiving Party disagrees with the designation by the Producing or Designating Party of any Confidential Information or Confidential Attorneys' Eyes Only Information, then the Receiving Party shall notify the Producing Party of its disagreement in writing at any time during this action.  The parties initially will try to resolve the dispute on an

informal basis. If the parties are unable to resolve such a dispute informally within seven (7) business days of the written notice by the Receiving Party, the Receiving Party may apply to the Court for relief, with the burden on the Designating Party to establish the appropriateness of its designation. Any such disputed items shall be treated as Confidential Information or Confidential Attorneys' Eyes Only Information, as designated, and subject to the protections of this Order unless and until the Court determines otherwise.

**THIRD PARTY WITNESSES**

16.     Discovery of a third party may involve receipt of that party's Confidential Information or Confidential Attorneys' Eyes Only Information. Third parties may produce documents designated as Confidential or Confidential Attorneys' Eyes Only pursuant to the terms of this Order and all such information shall be treated in accord with this Order, subject to Paragraph 17. A third party's confidentiality designations shall be subject to review in accord with Paragraph 15.

**LIMITATIONS ON ACCESS TO INFORMATION**

17.     Subject to Paragraph 20 of this Order, no Confidential Information or Confidential Attorneys' Eyes Only Information shall, without prior written consent of the Producing Party, (a) be disclosed to anyone other than the Court and the personnel specified in Paragraphs 18 and 19 hereof; or (b) be used by anyone other than the Producing Party for any purpose whatsoever other than the prosecution or defense of this proceeding without prior written consent. Nothing herein shall detract from, or affect in any way, confidentiality obligations to which the parties may be subject pursuant to agreements independent of this proceeding.

10

18.     Access to and disclosure of Confidential Information marked and identified in accordance with this Order shall be limited to Authorized Personnel listed in Paragraph 8 and shall not be provided, shown, made available or communicated to any other person or entity.

19.     Access to and disclosure of Confidential Attorneys' Eyes Only Information marked and identified in accordance with this Order shall be limited solely to Authorized Personnel listed in Paragraph 7 and shall not be provided, shown, made available or communicated to any other person or entity.

20.     Nothing contained in this Stipulated Protective Order shall affect the right of the Designating Party to disclose or use for any purpose the information, documents, or things produced and/or designated by it as Confidential or Confidential Attorneys' Eyes Only.

## GENERAL PROVISIONS

21.     Execution of this Order by outside counsel for a party shall constitute a representation by outside counsel that they, all persons employed by their firm, and the party they represent will abide by the terms of this Order and will subject themselves to the jurisdiction of this Court for purposes of enforcement and disciplinary action.

22.     To the extent that documents containing Confidential Information or Confidential Attorneys' Eyes Only Information are submitted with any Court filing, such documents shall remain subject to the provisions of this Order and shall be submitted to the Court in a sealed envelope or container clearly marked "CONFIDENTIAL" and with a statement in substantially the following form:

> This envelope contains documents which are filed in this case by
> [name of party] and which are confidential pursuant to the
> Protective Order entered in this case. This envelope is to remain
> sealed and its contents disclosed only to the Court and those
> persons authorized to view its contents under the terms of the
> Protective Order.

11

If the document is electronically filed, then such document will be similarly designated as "CONFIDENTIAL."

23.     If accepted for filing, such documents are to be maintained under seal by the clerk or the court reporter.  In the event that any party intends to use another party's Confidential Information or Confidential Attorneys' Eyes Only Information in any court proceeding in connection with this litigation, the party that intends to use such information shall provide notice to the Producing Party that its Confidential Information or Confidential Attorneys' Eyes Only Information may be used in the proceeding.  Any information used at a court proceeding shall not lose its status as Confidential or Confidential Attorneys' Eyes Only through such use, provided that the Producing Party takes (and, if necessary, obtains the Court's assistance in ordering) steps reasonably calculated to protect its confidentiality during such use.  Any party that intends to use any third party Confidential Information or Confidential Attorneys' Eyes Only Information in any court proceeding in connection with this litigation is obligated to take (or to seek the Court's assistance in ordering) steps reasonably calculated to protect its confidentiality during such use.  A party or third party may request that attendance at those portions of the hearing or trial or access to the transcripts of those hearings or the trial in which Confidential Information or Confidential Attorneys' Eyes Only Information is disclosed be restricted to court personnel and persons authorized to receive Confidential Information or Confidential Attorneys' Eyes Only Information under this Order.

24.     If a Party (i) is subpoenaed in another action, (ii) is served with a demand in another action to which it is a party, or (iii) is served with any other legal process by one not a party to this action, seeking information or material which was produced or designated as "Confidential", or "Confidential Attorney's Eyes Only" by someone other than the Party; the

Party shall give prompt actual written notice, by hand or facsimile transmission, to the Producing

Party, and shall object to its production to the extent permitted by law. Should the person

seeking access to the information or material take action against the Party or anyone else covered

by this Protective Order to enforce such a subpoena, demand or other legal process, the Party

shall respond by setting forth the existence of this Protective Order. Nothing herein shall be

construed as requiring the Party or anyone else covered by this Protective Order to challenge or

appeal any order requiring production of information or material covered by this Protective

Order, or to subject itself to any penalties for noncompliance with any legal process to order, or

to seek any relief from this Court.

      25.    This Order shall not prevent any party from applying to the Court for relief

therefrom, or from applying to the Court for further or additional protective orders, or from

agreeing among themselves to modification of this Order, subject to the approval of the Court.

      26.    Within sixty (60) days after the final termination of this proceeding, each party

and all other persons subject to the terms of this Order shall collect and return to the Producing

Party all copies of that Producing Party's Confidential Information or Confidential Attorneys'

Eyes Only Information or certify that they have been destroyed; provided, however, that each

outside counsel may retain one complete and unredacted set of pleadings and papers filed with

the Court or served on the other party and may retain attorney work product documents that

incorporate Confidential Information or Confidential Attorneys' Eyes Only Information. A party

to this action who has disclosed Confidential Information or Confidential Attorneys' Eyes Only

Information to persons identified in Paragraph 7(f) is responsible for obtaining all documents and

things containing Confidential Information or Confidential Attorneys' Eyes Only Information

from those persons, and for disposing of those documents or things in a manner provided in this

Paragraph, or, alternatively, is responsible for obtaining a certificate of destruction by any such persons. With respect to any documents or things that have been filed with the court under Paragraph 22, upon termination of this action, the ultimate disposition of any such documents or things, including all copies or summaries of or excerpts from such documents which may have been made, shall be as directed by the Court, provided that a party who seeks protection of confidentiality of its confidential document or information filed with the Court may apply to the Court for further protection of the confidentiality of such confidential materials after conclusion of this action with respect to it.

27.    This Order shall survive the final termination of this proceeding with respect to any retained Confidential Information or Confidential Attorneys' Eyes Only Information. Termination of the proceedings shall not relieve any person from the obligations of this Stipulated Protective Order, unless the Court orders otherwise.

28.    All notices required by this Stipulated Protective Order are to be served via facsimile or courier to the appropriate attorney(s) at the parties' outside counsel. The date by which a party to this action receiving a notice shall respond, or otherwise take action, shall be computed from the date indicating that the facsimile or courier package was delivered. Any of the notice requirements herein may be waived in whole or in part, but only in writing signed by an attorney for the designating or affected party.

29.    Confidential Information and Confidential Attorneys' Eyes Only Information shall be held in confidence by each person to whom it is disclosed, shall be used by the Receiving Party only for purposes of this action and no other purpose, shall specifically not be used for any business purpose, and shall not be disclosed to any person who is not entitled to receive such information under this Stipulated Protective Order. All Confidential Information or

Confidential Attorneys' Eyes Information shall be carefully maintained so as to preclude access by persons who are not entitled to receive such information.

30.    The designation of information, documents or things as Confidential or Confidential Attorneys' Eyes Only pursuant to this Stipulated Protective Order shall not be construed as a concession that such information is relevant or material to any issues or is otherwise discoverable. Nor shall the inspection or receipt by a party to this action of information, documents or things designated as Confidential Information or Confidential Attorneys' Eyes Only Information hereunder constitute a concession that the information, documents or things are confidential.

31.    Nothing in this Stipulated Protective Order shall bar or otherwise restrict any attorney who is an authorized recipient under the terms of Paragraphs 7 and 8 hereof from rendering advice to his or her client with respect to this action and, in the course thereof, from generally referring to or relying upon his examination or receipt of Confidential Information or Confidential Attorneys' Eyes Only Information. In rendering such advice or in otherwise communicating with his or her client, such attorney shall not disclose the specific content of any information, document or thing identified as Confidential or Confidential Attorneys' Eyes Only hereunder by a disclosing party where such disclosure would not otherwise be permitted under the terms of this Stipulated Protective Order.

32.    The inadvertent or unintentional disclosure by the Producing Party of information, documents or things which it believes should have been designated as Confidential or Confidential Attorneys' Eyes Only regardless of whether the information, documents or things were so designated at the time of disclosure, shall not be deemed a waiver in whole or in part of a party's claim of confidentiality, provided that the Producing Party notifies the Receiving Party

promptly upon discovery of the inadvertent or unintentional failure to designate.  Any document

that is produced without being designated Confidential or Confidential Attorneys' Eyes Only

may be so designated or redesignated, with respect to future disclosure by the Producing Party,

and the Receiving Party shall make all reasonable efforts to retrieve all copies, if any, of such

document disclosed to persons other than those listed in Paragraphs 7 and 8 hereof as authorized

to receive such document as subsequently designated or redesignated and to prevent further use

or disclosure of confidential information contained therein by such persons.  The Receiving Party

or Parties must treat such information or material as Confidential Information or Confidential

Attorneys' Eyes Only Information from the date such notice is received.  Disclosure of such

information or material prior to receipt of such notice to persons not authorized to receive

Confidential Information or Confidential Attorneys' Eyes Only Information shall not be deemed

a violation of this Stipulated Protective Order.

     33.    The production of any information, documents or things governed by this Order

shall be without prejudice to any claim by the Producing Party that such information, documents

or things are protected from discovery on the basis of privilege and/or the work-product doctrine,

so long as such production was made inadvertently.  No Producing Party shall be held to have

waived any of its rights by such an inadvertent production.  If, after information, documents or

things are produced, a claim of privilege and/or work-product is subsequently made, the

Receiving Party shall take reasonable steps to ensure that all known copies of such information,

documents or things are returned promptly to the Producing Party.  After the return of the

information, documents or things, the Receiving Party may challenge the Producing Party's

claim of privilege and/or work-product by filing a motion with the Court.  Any determination by

the Court on the Producing Party's claim of privilege and/or work-product shall be made without regard to the fact that such information, documents or things have been inadvertently produced.

34.    The court retains the right to allow disclosure of any subject covered by this stipulation or to modify this stipulation at any time in the interest of justice.

## ORDER

**IT IS SO ORDERED:**

DATED:_____            _____

Chief Judge

## STIPULATED AND AGREED:

ASHBY & GEDDES                            MORRIS JAMES HITCHENS & WILLIAMS LLP

/s/ John G. Day                           /s/ Mary Matterer
Steven J. Balick (I.D. #2114)             Richard K. Herrmann (I.D. #405)
John G. Day (I.D. #2403)                  Mary Matterer (I.D. #2696)
222 Delaware Ave., 17th Floor             222 Delaware Avenue, 10th Floor
P.O. Box 1150                             Wilmington, DE 19899
Wilmington, DE 19899                      (302) 888-6800
(302) 654-1888                            rherrmann@morrisjames.com
sbalick@ashby-geddes.com                  mmatterer@morrisjames.com
jday@ashby-geddes.com

                                          Of Counsel:
Of Counsel:
                                          Hugh A. Abrams
Michael D. Kaminski                       Marc A. Cavan
Pavan K. Agarwal                          Hillary A. Mann
Liane M. Peterson                         SIDLEY AUSTIN BROWN & WOOD, LLP
FOLEY & LARDNER LLP                       10 South Dearborn Street
Washington Harbour                        Chicago, Illinois 60603
3000 K Street, N.W., Suite 500            (312) 853-7000
Washington, D.C. 20007-5143
(202) 672-5300                            *Attorneys for BorgWarner Inc. and BorgWarner*
                                          *Morse Tec Inc.*

*Attorneys for Hitachi, Ltd. and*
*Unisia North America, Inc.*

## EXHIBIT A:  NON-DISCLOSURE AGREEMENT

I, _____ _____ do solemnly swear that I am fully familiar with the

terms of the Protective Order entered in *Hitachi, Ltd. and Unisia North America, Inc. v.*

*BorgWarner Inc. and BorgWarner Morse Tec Inc.*, Case No. 05-048-SLR, pending in the United

States District Court for the District of Delaware, and hereby agree to comply with and be bound

by the terms and conditions of said Order unless and until modified by further Order of this

Court.

I acknowledge that I am about to receive CONFIDENTIAL or CONFIDENTIAL

ATTORNEYS' EYES ONLY information in said action and certify my understanding that such

CONFIDENTIAL or CONFIDENTIAL ATTORNEYS' EYES ONLY information is being

provided to me pursuant to the terms and restrictions of the Protective Order.  I understand that

such information and any copies I make of any documentary material containing

CONFIDENTIAL or CONFIDENTIAL ATTORNEYS' EYES ONLY information or any notes

or other records that may be made regarding any such information shall not be disclosed to

others, except other qualified persons as defined in that Order.  I have reviewed Paragraph 25 of

the Protective Order and agree to cooperate with counsel for the parties to ensure that the

obligations for the return and/or destruction of materials at the end of the litigation are met.  I

hereby consent to the jurisdiction of said Court for purposes of enforcing this Order.

Signed:_____

Date:_____

Current Address:_____

_____

Employer:_____

18

# EXHIBIT H

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

VENTANA MEDICAL SYSTEMS, INC.,

       Plaintiff,

    v.

DAKOCYTOMATION CALIFORNIA INC.,

       Defendant.

Civil Action No. 04-1522 (GMS)

## STIPULATED PROTECTIVE ORDER

Ventana Medical Systems, Inc. ("Ventana") and DakoCytomation California Inc. ("DakoCytomation"), each asserts that it possesses information relating to the subject matter of this action which is confidential. Both parties recognize that in the course of discovery proceedings it may be necessary to disclose to the other party certain of its confidential information, but each wishes to ensure such information shall not be used for any purpose other than as agreed in this Order, and shall not be made public or be otherwise disseminated, beyond the extent necessary for the purposes agreed in this Order.

Accordingly, the following procedure shall be adopted for the protection of confidential and proprietary information:

## DEFINITIONS

1.     CONFIDENTIAL INFORMATION means any document or thing designated by a party in good faith as confidential because it contains or is a trade secret or other confidential research, development or commercial information as those terms are used in Rule 26(c)(7) of the

Federal Rules of Civil Procedure.  A party receiving information designated as confidential retains the right to challenge or object to the confidential designation at any time.

## DESIGNATION OF INFORMATION

2.      It is contemplated that a party may make available certain of its files for inspection by the other party, which files may contain confidential as well as nonconfidential material, and that following such inspection the inspecting party will designate documents to be copied.  In order to protect any CONFIDENTIAL INFORMATION contained in the files produced for inspection, all documents made available for such inspection shall be assumed to be CONFIDENTIAL INFORMATION.  When the inspecting party designates the documents it wishes copied, the producing party will mark appropriate documents as CONFIDENTIAL INFORMATION according to paragraph 3 and then provide copies of the designated documents to the inspecting party.

3.      Any CONFIDENTIAL INFORMATION which a party wishes to be made subject to this Protective Order shall be marked "(VENTANA or DAKOCYTOMATION) CONFIDENTIAL INFORMATION" or similar designation at the time it is turned over to the receiving party.  All copies made of such document or thing or document or thing created (e.g., any abstract, summary, memorandum or exhibit) containing information designated pursuant to this Order shall bear on its face the legend "(VENTANA or DAKOCYTOMATION) CONFIDENTIAL INFORMATION" or a similar legend.

4.      If, during the course of discovery in this action, a party hereto, or its representative, is authorized to inspect the other party's facilities, or processes of product manufacture, any documents or things generated as a consequence of any such inspection shall be deemed by the inspecting party to be RESTRICTED CONFIDENTIAL INFORMATION and shall be treated as such.

2

5.    Whenever a deposition involves a disclosure of CONFIDENTIAL INFORMATION, the following procedure shall be implemented:

(a)    At the request of the party whose CONFIDENTIAL INFORMATION is disclosed, the reporter shall mark those pages of the transcript containing CONFIDENTIAL INFORMATION.  Such request shall be made on the record whenever possible, but any party may designate additional portions of the transcript as containing CONFIDENTIAL INFORMATION after transcription as in the case of any other document or tangible thing, provided that written notice of document or tangible thing, provided that written notice of such designation is promptly given to the other party within one week of the receipt of the transcript. Following such notice, the parties shall confer as to the most convenient way to segregate the additional designated portions of the transcript.  The parties shall not disseminate a deposition transcript or the contents thereof beyond the persons designated in paragraphs 9(a), 9(b), 9(d), 9(e) and 10 hereof for a period of one week after receipt in order to give adequate time for such notice, except that portions of transcripts may be filed under seal with the Court and used in accordance with paragraph 6 in connection with this proceeding at any time.

(b)    The cover of any deposition transcript that contains CONFIDENTIAL INFORMATION shall be prominently marked with the legend referred to in paragraph 3.

(c)    When CONFIDENTIAL INFORMATION is discussed, quoted, or referred to in any deposition, the disclosing party shall take reasonable efforts to ensure that only persons qualified to have access are present.

6.    If any CONFIDENTIAL INFORMATION is included with or the content thereof is in any way disclosed in any pleading, motion, deposition transcript, or other paper filed with the Court, such documents and related materials shall be filed in a sealed envelope prominently

3

marked with the caption of this case, the identity of the party filing the envelope, and the notation:

CONFIDENTIAL INFORMATION
SUBJECT TO PROTECTIVE ORDER
THIS ENVELOPE IS NOT TO BE OPENED NOR THE
CONTENTS THEREOF DISPLAYED, COPIED OR REVEALED,
EXCEPT BY COURT ORDER OR BY AGREEMENT OF THE PARTIES

## USE OF CONFIDENTIAL INFORMATION

7.    CONFIDENTIAL INFORMATION shall be maintained in confidence according to the terms of this Order, may be disclosed only as provided in paragraphs 8-10 and shall be used solely in the preparation, prosecution or trial of this action.

8.    CONFIDENTIAL INFORMATION may be disclosed (1) by the party who designated the item CONFIDENTIAL INFORMATION, or (2) to any person who, on the basis of the document containing CONFIDENTIAL INFORMATION, is reasonably and in good faith believed to be an author, sender, addressee or recipient of the document, or (3) to a person that the producing party designated, pursuant to Fed.R.Civ.P. 30(b)(6), to testify concerning the subject matter of the CONFIDENTIAL INFORMATION.

9.    CONFIDENTIAL INFORMATION may be disclosed to:

(a)    Outside counsel of record for each party in this action.

(b)    Clerical personnel, technical specialists and paralegal assistants regularly employed by counsel of record for each party in this action.

(c)    The following designated employee of each party for the purpose of assisting counsel, upon each said employee executing an undertaking in the form attached as Exhibit A, acknowledging that he is familiar with the provisions of this Protective Order and will abide by them and a copy of said undertaking being provided to counsel for the opposing party:

4

For Ventana:   Huw R. Jones, Esq.

Jeffrey N. Danis, Esq.

For DakoCytomation:  Michael Sarrasin

(d)      Court personnel and stenographic reporters engaged in proceedings incident to preparation for trial or for trial of this action.

(e)      Outside copying, imaging, or document processing firms, jury consultants, and other litigation support providers retained by counsel.

10.      CONFIDENTIAL INFORMATION and RESTRICTED CONFIDENTIAL INFORMATION, as defined in paragraph 11, infra, may also be disclosed to any expert employed to assist counsel of record in the preparation for trial or trial of this action under the following conditions:

(a)      Before any disclosure of CONFIDENTIAL INFORMATION of another party is made to such expert, such expert shall be furnished with a copy of this Protective Order and shall execute a written statement under oath, in the form appended hereto as Exhibit A, acknowledging that he or she is familiar with the provisions of this Protective Order and will abide by them.

(b)      The party proposing such expert shall submit to the other party the executed written statement by facsimile and first class or overnight mail, together with a copy of the expert's curriculum vitae and a list of the entities for whom said expert has provided services during the past four (4) years and a disclosure of all known past or present business and/or personal connections or relationships with the party proposing the expert and with officers or employees of the party proposing the expert.

5

(c)    The other party shall have the opportunity to object to the proposed expert. Unless the proposing party is notified of any objection to the expert within ten (10) business days after the submission of the executed written statement, such proposed expert shall thereafter be allowed to have access to CONFIDENTIAL INFORMATION pursuant to the terms and conditions of this Order.

(d)    Should any party timely notify the proposing party of its objection to any such proposed expert, which objection shall be made in good faith and on reasonable grounds, the proposing party shall refrain from any disclosure of CONFIDENTIAL INFORMATION to such proposed expert unless and until the objection has been resolved between the parties or ruled on by the Court.

11.    RESTRICTED CONFIDENTIAL INFORMATION:

(a)    In addition to the other provisions of this Protective Order, each party may designate, in good faith, information consisting of pending patent applications, and/or highly sensitive research, development, financial and marketing information as "RESTRICTED CONFIDENTIAL INFORMATION" by marking such document or thing "(VENTANA or DAKOCYTOMATION) RESTRICTED CONFIDENTIAL INFORMATION," or with a similar legend, at the time it is turned over to the receiving party.  All items designated as RESTRICTED CONFIDENTIAL INFORMATION may be disclosed only to the persons identified in paragraphs 9(a), 9(b), 9(d), 9(e) and 10; provided, however, that RESTRICTED CONFIDENTIAL INFORMATION shall not be disclosed to attorneys or technical specialists who are involved in the preparation or prosecution (*i.e.*, preparation, drafting or filing of patent applications and related documents and communications), in the United States Patent and Trademark Office or in the patent office of any foreign country, of patent applications

6

concerning automated slide staining devices and, further provided, that attorneys and technical specialists who receive RESTRICTED CONFIDENTIAL INFORMATION, shall not, for a period of three (3) years following the final resolution, including all appeals, of this action, be involved in the preparation or prosecution, in the United States Patent and Trademark Office or in the patent office of any foreign country, of patent applications concerning automated slide staining devices.  All materials and information designated as RESTRICTED CONFIDENTIAL INFORMATION shall be treated in all other respects as CONFIDENTIAL INFORMATION. Nothing in this Order shall disqualify any attorney or technical specialist employed by the law firms that are counsel of record in this action, who did not receive RESTRICTED CONFIDENTIAL INFORMATION, from being involved in the preparation or prosecution, in the United States Patent and Trademark Office or in the patent office of any foreign country, of patent applications concerning automated slide staining devices.

## INFORMATION DESIGNATED IMPROPERLY

12.    The restrictions set forth in any of the preceding paragraphs shall not apply to:

(a)    any information which at the time of disclosure is available to the public.

(b)    any information which after disclosure becomes available to the public through no act, or failure to act, on behalf of the receiving party, its counsel or independent consultant.

(c)    any information that was lawfully in the possession of the receiving party prior to production and not subject to an obligation of confidentiality.

(d)    any information which the receiving party, its counsel or experts can show (i) as a matter of written record was already known to the receiving party from legitimate sources, (ii) as a matter of written record was independently developed by the receiving party,

7

(iii) was obtained from the furnishing party without having been identified as CONFIDENTIAL INFORMATION (subject to the provisions and circumstances provided for in paragraph 15 hereof), or (iv) was received after the time of disclosure hereunder from a third party having the right to make such disclosure and was not required to be held in confidence.

13.    In the event of any dispute with respect to the propriety or correctness of the designation of information, including testimony and documents, as CONFIDENTIAL INFORMATION, the parties shall attempt to resolve the dispute by negotiation.  If such negotiations fail to resolve the dispute, any party wishing to challenge the designation may file a motion for an appropriate order.  The information shall be treated as confidential until the issue is resolved.

14.    No party shall be obligated to challenge the propriety or correctness of the designation of information as CONFIDENTIAL INFORMATION and a failure to do so shall not preclude a subsequent challenge to such status.  The burden of proof with respect to the propriety or correctness in the designation of information as CONFIDENTIAL INFORMATION shall rest on the designating party, except that the burden of proving the exceptions set forth in paragraph 12 shall rest on the party asserting the exceptions.

15.    If a party inadvertently discloses any document or thing containing information that it deems confidential without designating it as CONFIDENTIAL INFORMATION:

(a)    the disclosing party shall promptly upon discovery of such inadvertent disclosure inform the receiving party in writing and the receiving party shall thereafter treat the information as CONFIDENTIAL INFORMATION under this Order.  To the extent such information may have been disclosed to persons other than authorized persons described in this

8

Order, the receiving party shall make every reasonable effort to retrieve the information promptly from such persons and to avoid any further disclosure to non-authorized persons; and

        (b)    if a producing party inadvertently discloses to a receiving party information that is privileged or otherwise immune from discovery, said producing party shall promptly upon discovery of such disclosure so advise the receiving party in writing and request that all copies of the item or items of information be returned, and no party to this action shall thereafter assert that such disclosure waived any privilege or immunity. It is further agreed that the receiving party will return such inadvertently produced item or items of information and all copies thereof within ten (10) days of the earliest of (a) discovery by the receiving party of its inadvertent production, or (b) receiving a written request for the return of such item or items of information. The party having returned such inadvertently produced item or items of information may thereafter, without asserting waiver because of inadvertent production, seek production of any such documents in accordance with the Federal Rules of Civil Procedure.

     16.    Promptly upon completion of this action, including all appeals, each party shall return or destroy all documents designated by the other party as CONFIDENTIAL INFORMATION and all copies thereof and shall destroy all documents and things containing information based on CONFIDENTIAL INFORMATION, except that outside counsel for each party may retain one copy of each document and thing designated by the other party as CONFIDENTIAL INFORMATION and one copy of each document and thing containing information based on CONFIDENTIAL INFORMATION for record purposes only.

## OTHER

     17.    Nothing in this Order shall be deemed to preclude any party from seeking and obtaining, on an appropriate showing, additional protection with respect to the confidentiality of

documents or other discovery material, or relief from this Order with respect to particular material designated hereunder.

18.　Nothing herein shall prevent disclosure if the party designating information as CONFIDENTIAL INFORMATION consents to such disclosure.

19.　Nothing in this Order shall bar or otherwise restrict any attorney from rendering advice to his client with respect to this action and, in the course thereof, referring to or relying generally upon his examination of documents or information designated CONFIDENTIAL INFORMATION or RESTRICTED CONFIDENTIAL INFORMATION provided, however that in rendering such advice and in otherwise communicating with his client, the attorney shall not disclose the content of such information or documents contrary to the terms of this Protective Order.

20.　The provisions of this Order shall also apply to documents, things, information and deposition testimony produced by third parties in discovery in this action.  Said third parties shall designate their documents, things, information and deposition testimony in accordance with the provisions of this Order.

21.　The obligations of this Order, to the extent applicable, shall survive the termination of this action and continue to bind the parties.

22.　Each of the firms, parties and individuals named above, by executing a copy of this Order, undertakes to abide by and be bound by its provisions and to use reasonable and appropriate care to see that its provisions are known and adhered to by those under its supervision or control.

23.　Any party may move for amendment, modification, or supplementation of this Protective Order.

24.    The provisions of this Protective Order shall become effective upon execution by counsel for the parties.

Dated:  August  22, 2005

FISH & RICHARDSON, P.C.

_____
Timothy Devlin, Esquire (No. 4241)
919 North Market Street
Suite 1100
P.O. Box 1114
Wilmington, DE 19899
(302) 652-5070
tdevlin@fr.com

Of counsel:

Michael E. Zeliger, Esquire (*pro hac vice*)
FISH & RICHARDSON P.C.
225 Franklin Street
Boston, MA 02110
(617) 542-5070

Counsel for Defendant

YOUNG CONAWAY STARGATT &
    TAYLOR

_____
Richard H. Morse, Esq. (No. 531)
The Brandywine Building, 17th Floor
1000 West Street
P.O. Box 391
Wilmington, DE 19899
(302) 571-6600
rmorse@ycst.com

Of counsel:

Ron E. Shulman, Esquire (*pro hac vice*)
WILSON SONSINI GOODRICH & ROSATI
650 Page Mill Road
Palo Alto, CA 94304
(650) 493-9300

Roger J. Chin (*pro hac vice*)
WILSON SONSINI GOODRICH & ROSATI
One Market Street
Spear Tower, Suite 3300
San Francisco, CA 94105
(415) 947-2000

Counsel for Plaintiff

SO ORDERED this ___ day of _____, 2005

Dated: _____

_____
HON. GREGORY M. SLEET
UNITED STATES DISTRICT JUDGE

11

# EXHIBIT A

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

VENTANA MEDICAL SYSTEMS, INC.,

        Plaintiff,

    v.                                Civil Action No. 04-1522

DAKOCYTOMATION CALIFORNIA INC.,

        Defendant.

_____, being sworn, deposes and says:

1. I have been requested by counsel for (Ventana Medical Systems, Inc. or DakoCytomation California Inc.) to assist counsel with certain material which I have been informed is Confidential Information within the terms of the Protective Order issued by the Court in the above-entitled action.

2. I have read the Protective Order dated _____, entered in this action and I agree not to disclose any information designated as Confidential Information and not to use such information other than in assisting counsel for _____. I hereby agree to submit to the jurisdiction of the United States District Court for the District of Delaware for enforcement of the undertakings I have made here.

                             Signed: _____

Subscribed and sworn to before me this ___ day of _____ 2005.

                           _____
                           Notary Public

1