# ASHBY & GEDDES

ATTORNEYS AND COUNSELLORS AT LAW

500 DELAWARE AVENUE

P. O. BOX 1150

WILMINGTON, DELAWARE 19899

TELEPHONE
302-654-1888

FACSIMILE
302-654-2067

August 27, 2007

The Honorable Mary Pat Thynge
United States District Court
844 North King Street
Wilmington, DE 19801

VIA ELECTRONIC FILING

Re:    *Cordance Corp. v. Amazon.com, Inc.,*
       C.A. No. 06-491-MPT

Dear Judge Thynge:

The "protections" sought by Amazon are unreasonable and wholly unwarranted. Strikingly, Amazon fails to cite the controlling Third Circuit authority on this issue. Under governing law, Amazon's request is improper. Cordance's proposed Protective Order (attached as Ex. A) provides ample protection for document confidentiality.[1]

Amazon has taken extreme positions on two issues, both for no apparent purpose other than to interfere with the ability of Cordance and its counsel to litigate this case or indeed carry on their business. In so doing, Amazon neglects to cite Shingara v. Skiles, 420 F.3d 301 (3d Cir. 2005), which is the controlling authority in the Third Circuit governing the issuance of discovery-related protective orders. See AFP Advanced Food Products, LLC v. Snyder's of Hanover Mfg., Inc., 2006 U.S. Dist. LEXIS 426, *5-6 (E.D. Pa. 2006) (questioning the precedential value of decisions prior to Shingara – including those cited by Amazon – because none had "applied the Third Circuit's standard for issuing a protective order in Shingara") (copy attached as Ex. C).

As the party seeking the restrictive provisions at issue here, Amazon bears the burden of showing "good cause" for such provisions under Fed. R. Civ. P. 26(c). To meet this standard, Amazon "must show that the disclosure of the information sought to be protected would result in a '*clearly defined, specific, and serious injury*.'" AFP, 2006 U.S. Dist. LEXIS 426 at *2 (emphasis added) (quoting Shingara, 420 F.3d at 306). "*Broad allegations of harm are not sufficient* to establish good cause." Id. at *3 (emphasis added). Here, Amazon makes only broad, speculative allegations of potential harm. It has not met the Shingara standard.

## Access to Confidential Information by Reed and Lewis

Amazon requests that two Cordance employees, Drummond Reed and Brian Lewis, be barred from access to any documents marked by Amazon as "Highly-Confidential." Such a bar would serve no purpose but to handicap Cordance from litigating this case effectively. Reed is the named inventor on the patent. His participation is critical. Amazon's tactical ploy to prevent him from assisting in the case is groundless. Lewis is general counsel to Cordance and helps guide the

---

[1] A redline showing differences between the parties' proposed orders is attached as Ex. B.

The Honorable Mary Pat Thynge
August 27, 2007
Page 2

litigation. Amazon has not shown, or even seriously attempted to show, that any disclosure to Reed or Lewis would cause a "clearly defined, specific, and serious injury."

The key threshold fact is that **Amazon and Cordance are not competitors**. Their respective businesses are in entirely different fields. (August 26, 2007 Declaration of Drummond S. Reed ("Reed Decl.") (Attached as Ex. D) at ¶¶4-5). Amazon sells books and other consumer products over the Internet. Cordance does not operate any such e-commerce business. It is a software developer focused on "digital addressing technology." (Id. at ¶4). Amazon **does not even allege** that the two are competitors. Furthermore, neither Reed nor Lewis participates in the design, development, or implementation of any e-commerce system, or has any plans to do so. (Reed Decl. at ¶3; August 26, 2007 Declaration of Brian E. Lewis ("Lewis Decl.") (Attached as Ex. E) at ¶5).

Amazon has failed to articulate how it could possibly be harmed if these individuals happen to learn details about Amazon's business in the course of assisting with the litigation. Amazon misleadingly focuses on whether Reed and Lewis are "competitive decision-makers" for Cordance, skipping over the threshold issue of whether they are even competitors at all. Because they are not, the analysis ends there. Amazon has not met (or even cited) the applicable <u>Shingara</u> test.

Cordance has proposed a protective order that would suffice. It would require Lewis and Reed to keep Amazon's highly-confidential information in strict confidence and to use it solely for purposes of this litigation. (Ex. A at ¶ 2). No further protections are required or justified.

**Amazon's Proposed Prosecution Bar**

Secondly, Amazon seeks to impose a broad "prosecution bar" upon anyone on Cordance's team who views information designated as "Confidential" or "Highly-Confidential," precluding them from working on any patent applications in the field of e-commerce until a year after this litigation ends. Amazon's proposed bar is not limited to the prosecution of related applications <u>for Cordance</u>, but instead would broadly apply to the prosecution of <u>any</u> "e-commerce" patent application for <u>any</u> client, including expert witnesses.[2]

Amazon attempts to justify such a bar by speculating that those who view Amazon's confidential information *might* inadvertently pursue patents for some *unspecified* client in some *unspecified* e-commerce application at some *unspecified* future time. No prosecution bar should be imposed at all, let alone the onerous bar Amazon proposes. It has not shown good cause for a bar.[3]

E-commerce technologies are ubiquitous in modern day business. It is rare to find a company of any stature that does not do at least some business over the internet. Amazon's proposed bar would effectively preclude all of the attorneys on Cordance's team from representing countless other clients in patent prosecution that happened to relate in some way to e-commerce. Several of the attorneys on Cordance's litigation team have "mixed" practices (prosecution as well

---

[2] It would be difficult for Cordance to find an expert witness of any prominence in the e-commerce field that would be willing or able to agree to such an onerous provision.

[3] Amazon's assertion that courts "routinely" extend a prosecution bar beyond the patents at issue in a lawsuit or related applications (such as continuations), let alone to work done for other parties, is incorrect. Prosecution bars are typically imposed only as between two competitors, and only when a showing is made that the patent prosecutors <u>for one party</u> might inadvertently misuse protected information to pursue patent protection that covers <u>the other party</u>. Neither circumstance applies here.

The Honorable Mary Pat Thynge
August 27, 2007
Page 3

as litigation). It would be unfair to Cordance and its counsel to ban their everyday practices, particularly in the absence of <u>any</u> proof of need that goes beyond speculation.

If Cordance had patent applications pending in which it could draft claims to cover confidential Amazon business practices, then a bar might make sense. Even then, it would be limited to prosecution of <u>those</u> pending patent applications for <u>that</u> client (Cordance). But Cordance has no pending applications. (Lewis Decl. at ¶3). It has not had any for nearly three years. (<u>Id.</u> at ¶2). It has no plans to pursue any in the future. (<u>Id.</u> at ¶4). A prosecution bar is not justified under such circumstances. <u>See AFP</u>, 2006 U.S. Dist. LEXIS 426 at *7 ("Barring AFP's attorneys from prosecuting similar patents for two years following this suit, without some tangible reason or good cause other than the general threat of inadvertent misuse of discovered materials, is the exact type of overly broad and generalized fear rejected in <u>Shingara</u>.").

Even in those cases that have found a bar to be justified, the bar that is imposed is typically limited to <u>related</u> patent applications being prosecuted for <u>one of the parties</u> to the litigation. <u>See, e.g.</u>, <u>RR. Donnelley & Sons Co v. Quark, Inc.</u>, 2007 U.S. Dist. LEXIS 424, *7 (D. Del. 2007) (copy attached as Exhibit F); <u>Motorola, Inc. v. Interdigital Tech. Corp.</u>, 1994 U.S. Dist. LEXIS 20714, *18 (D. Del. 1994) ("The prohibition applies only to ITC patent applications that are the subject matter of this litigation, not all ITC patent applications. The prohibition applies only to patent prosecutions for ITC, not for all other clients.") (copy attached as Ex. G).

The two cases that Amazon cites for its proposed bar do not support Amazon's position. In <u>CEA</u>,[4] a prosecution bar was entered where the defendant had made a clearly defined and specific showing that the recipients of designated information were <u>actively</u> prosecuting patent applications for one of the defendants' <u>major competitors</u> in the exact same technology area as the defendants. <u>See</u> 2004 U.S. Dist LEXIS 12782 at *7 ("<u>Central to my determination</u> is the Defendants' assertion, unrebutted by CEA, that CEA's patent prosecution attorneys . . . prosecute patents in the field of LCD technology for LG. Phillips, one of the Defendants' major competitors") (emphasis added). Amazon has not made any such showing, or even allegation, regarding Cordance.[5]

Amazon's other cited case, <u>Motorola</u>,[6] likewise turned on the fact that lawyers for one party were "prosecuting applications relating to the very patents at issue in [the] litigation." <u>Motorola</u> at *15. That is simply not the case here. Moreover, the prosecution bar granted in that case was limited to prosecution <u>for the parties</u> to the litigation and "not for all other clients." <u>Motorola</u> at *18.

Not only do <u>CEA</u> and <u>Motorola</u> fail to support Amazon's position, they also predate <u>Shingara</u> in which the Third Circuit made it even harder to prove a need for such a bar. <u>See AFP</u>, 2006 U.S. Dist. LEXIS 426 at *5-6 ("[Neither <u>Motorola</u> nor <u>CEA</u>] is precedential nor have they applied the Third Circuit's standard for issuing a protective order in <u>Shingara</u>.").

In sum, Amazon has failed to carry its burden to show good cause for imposing a prosecution bar. A protective order should enter in the form proposed by Cordance (Ex. A).

---

[4] <u>Commissariat a l'Energie Atomique v. Dell Computer Corp.</u>, 2004 U.S. Dist. LEXIS 12782 (D. Del. 2004) (copy attached as Ex. H).
[5] The prosecution bar in <u>CEA</u> was also much narrower than the bar proposed by Amazon. It related to a narrower field than e-commerce, and only applied to attorneys viewing "highly-confidential" material, not merely "confidential" material.
[6] <u>Motorola, Inc. v. Interdigital Tech. Corp.</u>, 1994 U.S. Dist. LEXIS 20714 (D. Del. 1994).

The Honorable Mary Pat Thynge
August 27, 2007
Page 4

Respectfully,

*/s/ Tiffany Geyer Lydon*

Tiffany Geyer Lydon

TGL/nml
183586.1
Attachments
cc:    Richard L. Horwitz, Esquire (by hand and via electronic mail; w/attachments)
       Lynn H. Pasahow, Esquire (via electronic mail; w/attachments)
       Michael A. Albert, Esquire (via electronic mail; w/attachments)

# EXHIBIT A

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

CORDANCE CORPORATION,

        Plaintiff,

    v.

AMAZON.COM, INC.,

        Defendant.

Civil Action No. 06-491- MPT

## CORDANCE'S [PROPOSED] PROTECTIVE ORDER

To facilitate discovery and protect, pursuant to Federal Rule of Civil Procedure 26(c), the confidentiality of and rights to information and documents disclosed in connection with this litigation, the parties hereby stipulate to the following:

**1.**    ***Applicability of This Protective Order.***  All information, things, and documents filed with the Court or produced by any party or non-party in discovery in this action shall be governed by this Protective Order.

**2.**    ***Use of Information Produced Pursuant to This Order.***  Information and material produced or exchanged in discovery in this case and designated by a party or non-party as "Confidential" or "Highly-Confidential" pursuant to the terms of this Protective Order (hereafter, "Confidential Material") shall not be made available to any person or entity except as authorized under this Protective Order.  Confidential Material shall be used, by the party or parties to whom the information is produced, solely for the purpose of litigating the above-captioned action.  Unless otherwise agreed in writing by the producing party or so ordered by a court, such information and material shall not either (1) be used or disclosed to any other person or entity, or (2) be used or disclosed for any other use or purpose.  For purposes of this Protective Order, the

party or non-party designating information or material as Confidential Material is defined as the "Designating Party." Nothing contained in this Protective Order shall affect the right of a Designating Party to disclose or use its own Confidential Material for any purpose. Nothing in this Protective Order shall limit or bar any attorney from rendering advice or counsel to his or her client with respect to this litigation or, in the connection with rendering such advice or counsel, from conveying such attorney's evaluation or assessment of Confidential Material, provided that, such conveyance, advice, or counsel does not disclose the contents of any Confidential Material produced by another party herein, which disclosure would be contrary to the terms of this Protective Order.

3. ***Designation of Confidential Materials.*** A party or non-party may designate Confidential Materials with one of the following Confidential Designations:

(a) ***Confidential.*** A party or non-party may designate as "Confidential" any document, material, item, deposition testimony, or information that is filed with the Court or produced in discovery in this action and is or contains confidential technical, research, development, private, financial, or commercial information of the Designating Party.

(b) ***Highly-Confidential.*** A party or non-party may designate as "Highly-Confidential" any document, material, item, deposition testimony, or information that is filed with the Court or produced in discovery in this action and is or contains highly confidential financial, commercial, proprietary, marketing or technical information (including but not limited to source code and detailed nonpublic financial information) the disclosure of which, to persons other than those described in paragraphs 6(a), 6(b), 6(c), 6(d), 6(e), 6(f), 6(h), 6(i), 6(j), or 6(k) below, the Designating Party in good faith believes could be likely to harm the Designating Party's competitive position.

**4.     *Designating and Marking Confidential Material.*** Confidential Material shall be designated and marked as follows:

**(a) *Paper Documents.*** A paper document is to be designated as Confidential Material by stamping or writing on it one of the following legends, or an equivalent thereof: "Confidential" or "Highly-Confidential." Such legend shall be placed on the first page of the document and on each page that the Designating Party claims to contain Confidential Material.

**(b) *Electronic Documents.*** Information or material produced digitally, e.g., on a magnetic or optical medium or by network communication, is to be designated as Confidential Material by marking the medium, container or communication with one of the legends specified in Section 0 above and by appending such legend to the file names or designators. If any person or entity who receives such a designated medium prints or otherwise transfers to another medium any of the information, any resulting document or other medium shall be marked by that person or entity as Confidential Material as set forth above.

**(c) *Exhibits.*** A physical exhibit, including but not limited to any electronic file or document printed for use at a deposition, in a court proceeding, or for provision to a qualified expert, is to be designated as Confidential Material as set forth above.

**(d) *Discovery Responses.*** A discovery response is to be designated as Confidential Material by placing, on the first page of the set of responses and on each page that contains information that the Designating Party claims to be Confidential Material, one of the legends specified in Section 0 above.

**(e) *Deposition Transcripts.*** Portions or the entirety of a deposition transcript (including any exhibits not already designated under this protective order) are to be designated as Confidential Material (i) by making a statement to that effect on the record, during the

deposition, or (ii) by sending to all other parties, the court reporter for the deposition, and all other persons known to the Designating Party to have received a copy of the deposition transcript, on or before thirty (30) days, or as otherwise agreed by the parties, after being notified by court reporter that the deposition transcript is available, a letter or other written notice designating the portions or entirety of the transcript with a Confidential Designation. All deposition transcripts and associated exhibits are to be treated presumptively as Highly-Confidential material until the expiration of such thirty day period. The letter or other notice shall cite this Protective Order, identify the appropriate level of confidentiality, and, if available, identify the pages and lines, and/or exhibits, to be Confidential Material. Each copy of the transcript, and portions thereof, so designated shall be marked, by the person receiving the letter or other notice, with one of the legends specified in Section 3 indicating the level of confidentiality claimed by the Designating Party and shall be governed by the terms of this Protective Order. If a deposition or portion thereof is designated on the record, during the deposition, with one of the Confidential Designations, the deposition shall continue in the absence of all persons to whom access to Confidential Material is not permitted under this Protective Order. The court reporter or videographer shall separately mark any pages of the transcript of the deposition or hearing that have been designated to contain Confidential Material. Copies of the pages marked as containing Confidential Material may be provided only to persons permitted by the other provisions of this Protective Order to receive such Confidential Material.

**5.**	***Inadvertent Misdesignation.***	A Designating Party that inadvertently fails to mark an item with one of the Confidential Designations or marks an item with an incorrect designation of confidentiality at the time of the production shall have 15 days after learning of the inadvertent failure to correct its mistake. The correction shall be made in writing and shall be

accompanied by substitute copies of each item, appropriately marked as Confidential Material. Within five days of receipt of the substitute copies, the receiving party shall return or destroy the previously unmarked, or incorrectly marked, items and all copies thereof.

**6.    *Disclosure of Information Designated Confidential.***  Documents, materials, items, testimony or information designated "Confidential" pursuant to this Protective Order, or copies or extracts therefrom, and compilations and summaries thereof, and the information therein, may be given, shown, made available to or communicated in any way only to the following persons:

(a) Retained outside counsel of record to any party to this litigation, and the employees of such outside counsel (or such counsel's law firm) who work under the supervision of, support such counsel and assist such counsel in this litigation and who are not members, employees, officers, or directors of a party to this litigation;

(b) The contractors or vendors of retained outside counsel of record to any party to this litigation  (or such counsel's law firm)  who work under the supervision of, support such counsel and assist such counsel in this litigation and who are not members, employees, officers, or directors of a party to this litigation, provided such contractors or vendors do not have an interest in the outcome of this litigation;

(c) Independent consultants or expert witnesses performing services in connection with the prosecution or defense of this litigation, provided that each such person is not a member, officer, director, or employee of or for any party to this litigation, and provided that each such person (i) executes a copy of the Certification attached to this Order; and (ii) has been previously approved pursuant to the procedure in paragraph 10(a) below.

(d) Deposition witnesses, where at least one of the following conditions applies:

(i) The witness is an employee of the Designating Party when the disclosure is made;

(ii) the attorney taking the deposition and showing the witness the Confidential Material represents the Designating Party;

(iii) the witness's name appears on the Confidential Material as a person who has previously seen or received the Confidential Material, or it is otherwise established that the witness has previously seen, received, or had access to the Confidential Material or knows the information contained within it;

(iv) the Designating Party has consented on the record of the deposition to the showing of the Confidential Material to the witness; or

(v) at least ten days before the deposition, the party wishing to show the witness the Confidential Material notifies the Designating Party in writing of its intent to do so, with a specific listing of the Confidential Material to be shown, and the Designating Party fails to provide, within ten (10) days of receipt of the notice or two business days prior to the deposition, whichever is later, written objection to this use of Confidential Material.  If a timely written objection is provided, the Confidential Information listed in the written objection shall not be shown to the witness unless and until the objection is withdrawn or the party wishing to show that Confidential Material to the witness moves for and obtains appropriate relief from the Court. Witnesses being shown Confidential Material under this subsection must sign the Certification annexed to this Order before being shown the Confidential Material unless the witness's name appears on the Confidential Material as a person who has previously seen or received the Confidential Material, or it is otherwise established that the witness has previously seen, received, or had access to the Confidential Material or knows the information contained within it.

Counsel defending the deponent to which Confidential Information is disclosed during deposition shall provide to counsel for the Designating Party, prior to witnesses being shown Confidential Material, a copy of the executed Certification.

(e) The Court in this proceeding, Court personnel, and Court reporters;

(f) Litigation support services, including independent document copiers, graphic artists and jury consultants who have an obligation to keep such information confidential;

(g) Any named party to the litigation, including any present or former employee thereof to whom it is necessary that the material be shown for purposes of this litigation;

(h) Mock Jurors or Focus Group Members engaged by a jury consultant or counsel in preparation for trial, provided that

(i) No such persons are officers, directors, or employees of any of the parties to this action;

(ii) That any such persons shall first agree in writing to be bound by this Protective Order (by signing the nondisclosure agreement attached hereto as Exhibit B or other Certification with equivalent terms with redactions of the identity of some or all of the Parties);

(iii) Such agreements be retained under the control of counsel until final termination of this action; and

(iv) Upon final termination of this action and at the written request of the person or entity designating or producing such disclosed information, all such executed agreements by mock jurors and focus group members to whom such materials have been disclosed shall be provided upon request to counsel of record for the person or entity that designated or produced such materials;

(i) Any other person as to whom the Designating Party first agrees in writing;

(j) Brian E. Lewis; and

(k) Drummond S. Reed.

7. ***Disclosure of Information Designated Highly-Confidential.*** Materials designated "Highly-Confidential" may be disclosed only to the persons described in paragraphs 6(a), 6(b), 6(c), 6(d), 6(e), 6(f), 6(h), 6(i), 6(j), or 6(k) .

8. ***Protections For Parties' Source Code.*** All electronic source code produced by a party to this suit pursuant to pretrial discovery shall be subject to the same restrictions as information designated as Highly-Confidential. In addition, the following restrictions shall apply to electronic source code designated by a party to this suit as Highly-Confidential – Source Code:

(a) Three electronic copies of source code or executable code shall be made available for inspection on three stand-alone computers;

(b) The stand-alone computers shall be password protected and supplied by the source code provider;

(c) The stand-alone computers shall be located at outside counsel's office or other location that the parties may agree upon or at offices of experts who have been approved under this protective order;

(d) Access to the stand-alone computer shall be permitted, after notice to the provider and an opportunity to object, only to outside counsel representing the requesting party and experts retained by the requesting party, provided each such person has been approved under the protective order in place;

(e) Excerpts of source code may be printed using printers attached to the stand-alone computers only for the purpose of facilitating the review thereof or for compiling

deposition exhibits.  The parties shall endeavor to keep to a minimum the amount of source code that is so printed and shall promptly destroy any printed excerpts that are determined not to be relevant to any claim or defense of any party.  Every such printed page must be affixed with a legend Highly-Confidential and shall be treated as such in accordance with the provisions of this protective order.  At no point may the entire source code, or any substantial portions thereof, be included in electronic documents such as legal memoranda, exhibits, reports, declarations, or other word processing or presentation documents;

(f)  The source code provider shall provide a manifest of the contents of the stand-alone computer.  This manifest, will list the name, location, and MD5 checksum of every source and executable file being produced on the computer;

(g)  The stand-alone computers shall include software utilities which will allow counsel and experts to view, search, and analyze the source code.  At a minimum, these utilities should provide the ability to (i) view, search, and line-number any source file, (ii) search for a given pattern of text through a number of files, (iii) compare two files and display their differences, (iv) compute the MD5 checksum of a file, and (v) print copies of selected portions of the source code; and

(h)  If the court determines that the issue of missing files needs to be addressed, the source code provider will include on the stand-alone computer the build scripts, compilers, assemblers, and other utilities necessary to rebuild the application from source code, along with instructions for their use.

**9.**    ***Protests of Designation of Confidential Material.***  Protests of the designation of Confidential Material will occur only as follows:

(a) If a party believes that material bearing a Confidential Designation is not in fact the proper subject for such designation, or should be reclassified or revealed to an individual not otherwise authorized to have access to such material under the terms of this Order, then such party shall provide to the Designating Party written notice of this disagreement with the designation.  The parties shall first try to resolve such dispute in good faith on an informal basis.

(b) If the parties are unable to resolve their dispute, then the party challenging the designation may request appropriate relief from the Court.  It shall be the burden of the Designating Party to establish that the contested material is confidential.  In any event, unless and until a Court ruling is obtained changing a designation, or the parties agree otherwise, the material involved shall be treated according to its designation.

**10.**    ***Procedure for Qualifying Independent Experts and Consultants.***  In order for an independent expert or consultant to be permitted access to materials bearing a Confidential Designation the counsel of the party employing the expert or consultant must notify in writing the Designating Party or parties, at least ten (10) business days before allowing such access (or such shorter period to which the Designating Party agrees in writing).  The identification of an expert or consultant pursuant to this Order shall not be construed as the identification of an expert trial witness under Federal Rule 26(a)(2), and shall not constitute a waiver of attorney work-product protection or the attorney client privilege.

***(a) Contents of the Written Notification:***  Such written notice shall include the following: (i) The name of the expert or consultant; (ii) The present employer and title of the expert or consultant; (iii) a copy of a Certification (attached hereto as Exhibit A) signed by the expert or consultant that states that the expert or consultant has read and understood the terms of this Order and agrees to be bound by its terms; and (iv) a current curriculum vitae that lists all

employers and clients to whom the expert or consultant has provided services in the past five (v) years (except where disclosure of employers or clients would be prohibited by a court order or nondisclosure agreement, in which case a copy of such court order or nondisclosure agreement shall be provided to opposing counsel to verify the existence of the non-disclosure obligations).

*(b) Objections by Disclosing Parties:* Before the ten (10) day period from the receipt of the written notification has expired, a Designating Party may object in writing to the disclosure of materials bearing a Confidential Designation to the expert or consultant in question. Should a Designating Party so object, no material bearing a Confidential Designation that is the subject of the Designating Party's objection shall be disclosed to the expert or consultant in question until the objection has been resolved by the parties or by the Court.

**11.** *Use of Confidential Material by Designating Party.* Nothing in this Protective Order limits a party's ability to show materials which that party has designated with a Confidential Designation to whomever the Designating Party may deem appropriate. Further, nothing in this Protective Order limits a party's ability to show materials designated by another party with a Confidential Designation to that Designating Party, including any present officer, director, employee, or representative thereof.

**12.** *Jurisdiction.* Each person receiving Confidential Material under the terms of this Protective Order hereby agrees to subject himself or herself to the jurisdiction of this Court for purposes of any proceedings relating to the performance under, compliance with, or violation of this Protective Order.

**13.** *Protecting Confidential Materials.* Each person who receives any Confidential Material shall exercise due and proper care, in connection with the storage, custody, use, and

dissemination of such material, to avoid any intentional or inadvertent disclosure to persons to whom disclosure is not permitted under this Protective Order.

14.   ***Confidential Materials to Be Filed Under Seal.***  Any Confidential Material designated with a Confidential Designation that is to be filed with a Court in connection with any proceedings herein, shall be filed with the clerk of the court in accordance with the Court's then subsisting procedures therefore.  Unless proscribed, the heading, case caption, case number, and document title must be prominently marked on the front of a sealed envelope in addition to the following legend:

## CONFIDENTIAL – FILED UNDER SEAL

## SUBJECT TO A PROTECTIVE ORDER

15.   ***Information Protected by Privilege, Work Product, or Other Doctrine.***  The inadvertent production of any document or other disclosure of Confidential Material which the Designating Party contends is subject to the attorney-client privilege, work-product protection, or any other privilege or protection against discovery shall not necessarily be deemed a waiver in whole or in part of the claim of privilege or protection, either as to the specific document or the information disclosed or as to any other document or information relating thereto.  Within a reasonable time after the discovery of the inadvertent production, the Designating Party shall give notice to the receiving party that privileged documents or information have been inadvertently produced or disclosed and request the return of such documents.  Any document or portion of transcript, including all copies thereof, constituting or containing information as to which notice of inadvertent production is given shall be returned to the Designating Party within fifteen (15) days of such demand.  If the receiving party objects to the claim of privilege, the claim of inadvertent production and/or the reasonableness of the notice given, the receiving party

and the Designating Party shall attempt to resolve the dispute.  If the dispute is not resolved, the

receiving party may move the Court to compel the re-production of the document(s) at issue.

From the time of the Designating Party's notification of inadvertent production, any documents

or information as to which notice is given shall be deemed and treated as privileged and shall not

be used for any purpose until the Court enters an order ruling otherwise, or until the receiving

party and the Designating Party otherwise agree.   All communications between counsel and any

expert approved under this protective order shall be treated as litigation work product for this

litigation as well as for any other lawsuits or proceedings except to the extent that such expert

relies on them for his or her opinions.

   **16.**   ***Conclusion of Litigation.***  All provisions of this Protective Order restricting the

communication or use of Confidential Material shall continue to be binding after the conclusion

of this action, unless otherwise agreed by all the parties or ordered by the Court.  Upon

conclusion of the litigation, including the running of any time to appeal or to move for relief

under Fed. R. Civ. P. 60(B)(1)-(3), a party in possession of Confidential Material, other than that

which is contained in pleadings, correspondence, attorney files, and deposition transcripts and

exhibits, shall either (a) return such documents, no later than 30 days after conclusion of this

action, to counsel for the party or non-party who provided such information, or, upon consent of

the Designating Party, (b) destroy the documents within that time period and certify in writing

within that time period that the documents have been destroyed.

   **17.**   ***Use of Confidential Material During Court Proceedings.***  If any Confidential

Material is used in any Court pretrial proceeding in this litigation (including, but not limited to,

conferences, oral arguments, and hearings), the Confidential Material shall not lose its status as

Confidential Material through such use.  The parties shall take all steps reasonably necessary to

protect the confidentiality of the Confidential Material during any such use, including, but not limited to, requesting *in camera* proceedings.  The terms of this Protective Order do not preclude, limit, restrict, or otherwise apply to the use of documents at trial.  The parties agree to meet and confer in good faith prior to trial to establish procedures for the use of Confidential Material at trial.

18.    ***Improper Disclosure of Confidential Materials.***  If any Confidential Material is disclosed to any person to whom such disclosure is not authorized by this Protective Order, or other than in a manner authorized by this Protective Order, the party responsible for the disclosure shall, upon discovery of the disclosure, immediately inform the Designating Party of all facts pertinent to the disclosure that, after due diligence and prompt investigation, are known to the party responsible for the disclosure (including the name, address, telephone number, and employer of the person to whom the disclosure was made), shall immediately take all reasonable efforts to prevent further disclosure by each unauthorized person who received such information, and shall immediately require each unauthorized person to return all Confidential Material that was improperly disclosed to that person, all copies made of the improperly disclosed Confidential Material, and all documents containing excerpts from or references to the improperly disclosed Confidential Material.

19.    ***No Admissions.***  Compliance with this Protective Order in no way constitutes an admission by any party that any information designated pursuant to this Protective Order is or is not proprietary, confidential, or a trade secret.

20.    ***Modification of Protective Order.***  Each party reserves the right to request that the Court modify the terms of this Protective Order in the event that the party believes that a modification is necessary.  If such an application is made, all signatories of copies of the

Certification, as well as persons described herein, shall remain bound by this Protective Order unless and until it is modified by the Court.


    SO STIPULATED**:**


DATED: _____, 2007       CORDANCE CORPORATION


By _____
    Steven J. Balick
    ASHBY & GEDDES
    Attorneys for Plaintiffs

DATED: _____, 2007       CORDANCE CORPORATION


By _____
    Michael A. Albert
    WOLF, GREENFIELD & SACKS, P.C.

    Attorneys for Plaintiffs

DATED: _____, 2007       AMAZON.COM, INC.


By _____
    Richard L. Horwitz
    POTTER, ANDERSON & CORROON LLP

    Attorneys for Defendant

DATED: _____, 2007            AMAZON.COM, INC.


By _____

        Lynn H. Pasahow
        FENWICK & WEST LLP

        Attorneys for Defendant


IT IS SO ORDERED.


Dated: _____    _____

        Mary Pat Thynge
        United States Magistrate Judge

**EXHIBIT A**

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| CORDANCE CORPORATION, | Civil Action No. 06-491- MPT |
| Plaintiff, | |
| v. | |
| AMAZON.COM, INC., | |
| Defendant. | |

**CONSENT TO BE BOUND BY STIPULATED PROTECTIVE ORDER**

I, the undersigned, hereby acknowledge that I have read the Stipulated Protective Order in this case, understand its terms, agree to be bound by them, and consent to the jurisdiction of the United States District Court for the District of Delaware to enforce them.  I acknowledge that I will treat any Confidential Material I receive in this action strictly according to the terms of the Protective Order, and I understand that any unauthorized use of the Confidential Material I receive constitutes contempt of court.

Dated: _____         _____

**EXHIBIT B**

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| CORDANCE CORPORATION, | Civil Action No. 06-491- MPT |
| Plaintiff, | |
| v. | |
| AMAZON.COM, INC., | |
| Defendant. | |

**NONDISCLOSURE AGREEMENT
(FOR UNDERTAKING BY MOCK JURORS OR FOCUS GROUP MEMBERS)**

I hereby acknowledge that in the course of my activities in this case, I may receive

confidential research, development, commercial, financial, marketing, or technical information;

that such information is normally kept secret from the public at large, from the parties'

competitors, and even from many or most employees of the party that owns that information; and

that the disclosure of such information would be likely to harm the competitive position of the

party that owns that information.

I hereby agree that any unauthorized use or disclosure of the Confidential Material I

receive constitutes contempt of court, and shall be punishable as such; that I will exercise due

and proper care in connection with the storage, custody, and use of such material; and that, at the

conclusion of my activities in this case, I will promptly return all information that I have

received from any party to this case or their attorney.

I hereby consent to the jurisdiction of the United States District Court for the District of

Delaware to enforce this Agreement.

Dated: _____      _____

# EXHIBIT B

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

CORDANCE CORPORATION,

       Plaintiff,

  v.

AMAZON.COM, INC.,

       Defendant.

Civil Action No. 06-491- MPT

### ~~STIPULATED~~CORDANCE'S [PROPOSED] PROTECTIVE ORDER

To facilitate discovery and protect, pursuant to Federal Rule of Civil Procedure 26(c), the confidentiality of and rights to information and documents disclosed in connection with this litigation, the parties hereby stipulate to the following:

    *1.    Applicability of This Protective Order.*  All information, things, and documents filed with the Court or produced by any party or non-party in discovery in this action shall be governed by this Protective Order.

    *2.    Use of Information Produced Pursuant to This Order.*  Information and material produced or exchanged in discovery in this case and designated by a party or non-party as "Confidential" or "Highly-Confidential—Outside Attorneys' Eyes Only" pursuant to the terms of this Protective Order (hereafter, "Confidential Material") shall not be made available to any person or entity except as authorized under this Protective Order.  Confidential Material shall be used, by the party or parties to whom the information is produced, solely for the purpose of litigating the above-captioned action.  Unless otherwise agreed in writing by the producing party or so ordered by a court, such information and material shall not either (1) be used or disclosed to any other person or entity, or (2) be used or disclosed for any other use or purpose.  For

purposes of this Protective Order, the party or non-party designating information or material as

Confidential Material is defined as the "Designating Party."  Nothing contained in this Protective

Order shall affect the right of a Designating Party to disclose or use its own Confidential

Material for any purpose.  Nothing in this Protective Order shall limit or bar any attorney from

rendering ~~advise~~advice or counsel to his or her client with respect to this litigation or, in the

connection with rendering such ~~advise~~advice or counsel, from conveying such attorney's

evaluation or assessment of Confidential Material, provided that, such conveyance, ~~advise~~advice,

or counsel does not disclose the contents of any Confidential Material produced by another party

herein, which disclosure would be contrary to the terms of this Protective Order.

**3.**     ***Designation of Confidential Materials.***   A party or non-party may designate

Confidential Materials with one of the following Confidential Designations:

**(a)**     ***Confidential ~~Information Designation~~.***   A party or non-party may designate as

"Confidential" any document, material, item, deposition testimony, or information that is filed

with the Court or produced in discovery in this action and is or contains confidential technical,

research, development, private, financial, or commercial information of the Designating Party.

**(a)**     ***Highly-Confidential ~~—Outside Attorneys' Eyes Only~~ Designation.***   A party or

non-party may designate as "Highly-Confidential ~~— Outside Attorneys' Eyes Only~~" any

document, material, item, deposition testimony, or information that is filed with the Court or

produced in discovery in this action and is or contains highly confidential financial, commercial,

proprietary, marketing or technical information (including but not limited to source code and

detailed nonpublic financial information) the disclosure of which, to persons other than those

described in paragraphs ~~7~~6(a), ~~7~~6(b), ~~7~~6(c), ~~7~~6(d), ~~7~~6(e), ~~7~~6(f), ~~7~~6(h), 6(i), 6(j), or ~~7~~6(~~f~~k) below,

the Designating Party in good faith believes could be likely to harm the Designating Party's
competitive position.

4. ~~*Patenting and Patent Protected Persons*~~

~~*(a)* "Patenting" shall mean and include:~~

~~(i) preparing and/or prosecuting any patent application (or portion
thereof), whether design or utility, and either in the United States or abroad (and including
applications filed under the Patent Cooperation Treaty) relating to Confidential information
received in this litigation that relates to the field of the other parties' accused products (the field
of Amazon.com's accused products being online e-commerce technology and the field of
Cordance's accused products being digital identity as standardized by xdi.org);~~

~~(ii) preparing patent claim(s) relating to Confidential information
received in this litigation that relates to the field of the other parties' accused products (field of
each parties' accused product as defined in (i) above);~~

~~(iii) providing advice, counsel or suggestion regarding, or in any other
way influencing, claim scope and/or language, embodiment(s) for claim coverage, claim(s) for
prosecution, or products or processes for coverage by claim(s) relating to Confidential
information received in this litigation that relates to the field of the other parties' accused
products (field of each parties' accused product as defined in (i) above); and~~

~~(iv) assisting, consulting with, supervising, and/or providing counsel to
anyone in connection with doing any of the foregoing.~~

~~*(b)* The "Patent Protected Persons" for a party shall mean and include any and
all persons involved, either directly or indirectly, with Patenting any application where any,
right, title or interest in the application are owned by such party and/or there exists an obligation
to transfer rights in the application to the party, and includes, but is not limited to, any person
who is an inventor for any party of any method, apparatus or other invention that is or is
anticipated to be the subject of a patent or application therefor. Patent Protected Persons~~

~~specifically includes, but is not limited to, all individuals associated with the filing or prosecution of the patent application within the meaning of 37 C.F.R. 1.56. "Party" as used here shall include affiliates, parents, subsidiaries, and other entities which are under common ownership and control.~~

    **4.**    ***Designating and Marking Confidential Material.***  Confidential Material shall be designated and marked as follows:

    **(a)** <u>***Paper Documents.***</u>  A <u>paper</u> document is to be designated as Confidential Material by stamping or writing on it one of the following legends, or an equivalent thereof: "Confidential" or "<u>Highly-</u>Confidential~~— Outside Attorneys' Eyes Only~~." Such legend shall be placed on the first page of the document and on each page that the Designating Party claims to contain Confidential Material.

    **(b)** <u>***Electronic Documents.***</u>  Information or material produced digitally, e.g., on a magnetic or optical medium or by network communication, is to be designated as Confidential Material by marking the medium, container or communication with one of the legends specified in ~~subsection 5(a)~~<u>Section 3</u> above and by appending ~~the~~ such legend to the file names or designators. If any person or entity who receives such a designated medium prints or otherwise transfers to another medium any of the information, any resulting document or other medium shall be marked by that person or entity as Confidential Material as set forth above.

    **(c)** <u>***Exhibits.***</u>  A physical exhibit, including but not limited to any electronic file or document printed for use at a deposition, in a court proceeding, or for provision to a qualified expert, is to be designated as Confidential Material as set forth above.

    **(d)** <u>***Discovery Responses.***</u>  A discovery response is to be designated as Confidential Material by placing, on the first page of the set of responses and on each page that

contains information that the Designating Party claims to be Confidential Material, one of the legends specified in ~~subsection 5(a)~~Section 3 above.

(e) ***Deposition Transcripts.*** Portions or the entirety of a deposition transcript (including any exhibits not already designated under this protective order) are to be designated as Confidential Material (~~1~~i) by making a statement to that effect on the record, during the deposition, or (~~2~~ii) by sending to all other parties, the court reporter for the deposition, and all other persons known to the Designating Party to have received a copy of the deposition transcript, on or before thirty (30) days, or as otherwise agreed by the parties, after being notified by court reporter that the deposition transcript is available, a letter or other written notice designating the portions or entirety of the transcript with a Confidential Designation. All deposition transcripts and associated exhibits are to be treated presumptively as Highly-Confidential ~~– Outside Attorneys' Eyes Only Material~~material until the expiration of such thirty day period. The letter or other notice shall cite this Protective Order, identify the appropriate level of confidentiality, and, if available, identify the pages and lines, and/or exhibits, to be Confidential Material. Each copy of the transcript, and portions thereof, so designated shall be marked, by the person receiving the letter or other notice, with one of the legends specified in ~~subparagraph 5(a) above~~Section 3 indicating the level of confidentiality claimed by the Designating Party and shall be governed by the terms of this Protective Order. If a deposition or portion thereof is designated on the record, during the deposition, with one of the Confidential Designations, the deposition shall continue in the absence of all persons to whom access to Confidential Material is not permitted under this Protective Order. The court reporter or videographer shall separately mark any pages of the transcript of the deposition or hearing that have been designated to contain Confidential Material. Copies of the pages marked as

containing Confidential Material may be provided only to persons permitted by the other provisions of this Protective Order to receive such Confidential Material.

~~6.~~ **_5. Inadvertent Misdesignation._**  A Designating Party that inadvertently fails to mark an item with one of the Confidential Designations or marks an item with an incorrect designation of confidentiality at the time of the production shall have 15 days after learning of the inadvertent failure to correct its mistake.  The correction shall be made in writing and shall be accompanied by substitute copies of each item, appropriately marked as Confidential Material.  Within five days of receipt of the substitute copies, the receiving party shall return or destroy the previously unmarked, or incorrectly marked, items and all copies thereof.

~~7.~~ **_6. Disclosure of Information Designated Confidential._**  Documents, materials, items, testimony or information designated "Confidential" pursuant to this Protective Order, or copies or extracts therefrom, and compilations and summaries thereof, and the information therein, may be given, shown, made available to or communicated in any way only to the following persons~~, provided that (1) such persons are not Patent Protected Persons for the receiving party, and (2) shall not during the pendency of this litigation and for two years after the conclusion thereof, including any appeals, participate in any Patenting for such party~~:

(a) Retained outside counsel of record to any party to this litigation, and the employees of such outside counsel (or such counsel's law firm) who work under the supervision of, support such counsel and assist such counsel in this litigation and who are not members, employees, officers, or directors of a party to this litigation; ~~,~~

(b) The contractors or vendors of retained outside counsel of record to any party to this litigation  (or such counsel's law firm)  who work under the supervision of, support such counsel and assist such counsel in this litigation and who are not members, employees, officers,

or directors of a party to this litigation, provided such contractors or vendors do not have an interest in the outcome of this litigation;

(c) Independent consultants or expert witnesses performing services in connection with the prosecution or defense of this litigation, provided that each such person is not a member, officer, director, or employee of or for any party to this litigation, and provided that each such person (i) executes a copy of the Certification attached to this Order; and (ii) has been previously approved pursuant to the procedure in paragraph 10(a)11(a) below.

(iii)    is not presently engaged in Patenting and shall not engage in any Patenting during the pendency of this litigation, including any appeals therefrom, and for a period of two years thereafter.

(d) Deposition witnesses, where at least one of the following conditions applies:

(i) The witness is an employee of the Designating Party when the disclosure is made;

(ii) the attorney taking the deposition and showing the witness the Confidential Material represents the Designating Party;

(iii) the witness's name appears on the Confidential Material as a person who has previously seen or received the Confidential Material, or it is otherwise established that the witness has previously seen, received, or had access to the Confidential Material or knows the information contained within it;

(iv) the Designating Party has consented on the record of the deposition to the showing of the Confidential Material to the witness; or

(v) at least ten days before the deposition, the party wishing to show the witness the Confidential Material notifies the Designating Party in writing of its intent to do so, with a specific listing of the Confidential Material to be shown, and the Designating Party fails to

provide, within ten (10) days of receipt of the notice or two business days prior to the deposition, whichever is later, written objection to this use of Confidential Material. If a timely written objection is provided, the Confidential Information listed in the written objection shall not be shown to the witness unless and until the objection is withdrawn or the party wishing to show that Confidential Material to the witness moves for and obtains appropriate relief from the Court. Witnesses being shown Confidential Material under this subsection must sign the Certification annexed to this Order before being shown the Confidential Material unless the witness's name appears on the Confidential Material as a person who has previously seen or received the Confidential Material, or it is otherwise established that the witness has previously seen, received, or had access to the Confidential Material or knows the information contained within it. Counsel defending the deponent to which Confidential Information is disclosed during deposition shall provide to counsel for the Designating Party, prior to witnesses being shown Confidential Material, a copy of the executed Certification.

(e) The Court in this proceeding, Court personnel, and Court reporters;

(f) Litigation support services, including independent document copiers, graphic artists and jury consultants who have an obligation to keep such information confidential;

(g) Any named party to the litigation, including any present or former employee thereof to whom it is necessary that the material be shown for purposes of this litigation, but only if such person is not involved, directly or indirectly, in Patenting (for example, an inventor for any party of any method, apparatus or other invention that is or could be the subject of a patent);

(h) Mock Jurors or Focus Group Members engaged by a jury consultant or counsel in preparation for trial, provided that

(i)  No such persons are officers, directors, or employees of any of the parties to this action;

(ii)  That any such persons shall first agree in writing to be bound by this Protective Order (by signing the nondisclosure agreement attached hereto as Exhibit B or other Certification with equivalent terms with redactions of the identity of some or all of the Parties);

(iii)  Such agreements be retained under the control of counsel until final termination of this action; and

(iv)  Upon final termination of this action and at the written request of the person or entity designating or producing such disclosed information, all such executed agreements by mock jurors and focus group members to whom such materials have been disclosed shall be provided upon request to counsel of record for the person or entity that designated or produced such materials;

(i) Any other person as to whom the Designating Party first agrees in writing;

(j) Brian E. Lewis; and

(k) Drummond S. Reed.

**8.  7. *Disclosure of Information Designated ~~Highly-~~Confidential—Outside Attorneys' Eyes Only*.**  Materials designated "~~Highly-~~Confidential—Outside Attorneys' Eyes Only" may be disclosed only to the persons described in paragraphs ~~7~~6(a), ~~7~~6(b), ~~7~~6(c), ~~7~~6(d), ~~7~~6(e), ~~7~~6(f), ~~7~~6(h), ~~or 7~~6(i), 6(j), or 6(k) .

**9.  8. *Protections For Parties' Source Code*.**  All electronic source code produced by a party to this suit pursuant to pretrial discovery shall be subject to the same restrictions as information designated as Highly-Confidential—Outside Attorneys' Eyes Only.  In addition, the

following restrictions shall apply to electronic source code designated by a party to this suit as Highly Confidential— Outside Attorneys' Eyes Only – Source Code:

(a)  Three electronic copies of source code or executable code shall be made available for inspection on three stand-alone computers;

(b)  The stand-alone computers shall be password protected and supplied by the source code provider;

(c)  The stand-alone computers shall be located at outside counsel's office or other location that the parties may agree upon or at offices of experts who have been approved under this protective order;

(d)  Access to the stand-alone computer shall be permitted, after notice to the provider and an opportunity to object, only to outside counsel representing the requesting party and experts retained by the requesting party, provided each such person has been approved under the protective order in place;

(e)  Excerpts of source code may be printed using printers attached to the stand-alone computers only for the purpose of facilitating the review thereof or for compiling deposition exhibits.  The parties shall endeavor to keep to a minimum the amount of source code that is so printed and shall promptly destroy any printed excerpts that are determined not to be relevant to any claim or defense of any party.  Every such printed page must be affixed with a legend Highly Confidential— Outside Attorneys' Eyes Only and shall be treated as such in accordance with the provisions of this protective order.  At no point may the entire source code, or any substantial portions thereof, be included in electronic documents such as legal memoranda, exhibits, reports, declarations, or other word processing or presentation documents;.

(f)  The source code provider shall provide a manifest of the contents of the stand-alone computer.  This manifest, will list the name, location, and MD5 checksum of every source and executable file being produced on the computer.;

(g)  The stand-alone ~~computer~~computers shall include software utilities which will allow counsel and experts to view, search, and analyze the source code.  At a minimum, these utilities should provide the ability to (i) view, search, and line-number any source file, (ii) search for a given pattern of text through a number of files, (iii) compare two files and display their differences, (iv) compute the MD5 checksum of a file, and (v) print copies of selected portions of the source code.; and

(h)  If the court determines that the issue of missing files needs to be addressed, the source code provider will include on the stand-alone computer the build scripts, compilers, assemblers, and other utilities necessary to rebuild the application from source code, along with instructions for their use.

***~~10.~~  9.  Protests of Designation of Confidential Material.***  Protests of the designation of Confidential Material will occur only as follows:

(a) If a party believes that material bearing a Confidential Designation is not in fact the proper subject for such designation, or should be reclassified or revealed to an individual not otherwise authorized to have access to such material under the terms of this Order, then such party shall provide to the Designating Party written notice of this disagreement with the designation.  The parties shall first try to resolve such dispute in good faith on an informal basis.

(b) If the parties are unable to resolve their dispute, then the party challenging the designation may request appropriate relief from the Court.  It shall be the burden of the Designating Party to establish that the contested material is confidential.  In any event, unless

and until a Court ruling is obtained changing a designation, or the parties agree otherwise, the material involved shall be treated according to its designation.

***H.*** ***10.*** ***Procedure for Qualifying Independent Experts and Consultants.*** In order for an independent expert or consultant to be permitted access to materials bearing a Confidential Designation the counsel of the party employing the expert or consultant must notify in writing the Designating Party or parties, at least ten (10) business days before allowing such access (or such shorter period to which the Designating Party agrees in writing). The identification of an expert or consultant pursuant to this Order shall not be construed as the identification of an expert trial witness under Federal Rule 26 (a)(2), and shall not constitute a waiver of attorney work-product protection or the attorney client privilege.

***(a) Contents of the Written Notification:*** Such written notice shall include the following: (i) The name of the expert or consultant; (ii) The present employer and title of the expert or consultant; (iii) a copy of a Certification (attached hereto as Exhibit A) signed by the expert or consultant that states that the expert or consultant has read and understood the terms of this Order and agrees to be bound by its terms; and (iv) a current curriculum vitae that lists all employers and clients to whom the expert or consultant has provided services in the past five (v) years (except where disclosure of employers or clients would be prohibited by a court order or nondisclosure agreement, in which case a copy of such court order or nondisclosure agreement shall be provided to opposing counsel to verify the existence of the non-disclosure obligations).

***(b) Objections by Disclosing Parties:*** Before the ten (10) day period from the receipt of the written notification has expired, a Designating Party may object in writing to the disclosure of materials bearing a Confidential Designation to the expert or consultant in question. Should a Designating Party so object, no material bearing a Confidential Designation that is the

subject of the Designating Party's objection shall be disclosed to the expert or consultant in question until the objection has been resolved by the parties or by the Court.

~~12.~~ **11.** *Use of Confidential Material by Designating Party.* Nothing in this Protective Order limits a party's ability to show materials which that party has designated with a Confidential Designation to whomever the Designating Party may deem appropriate. Further, nothing in this Protective Order limits a party's ability to show materials designated by another party with a Confidential Designation to that Designating Party, including any present officer, director, employee, or representative thereof.

~~13.~~ **12.** *Jurisdiction.* Each person receiving Confidential Material under the terms of this Protective Order hereby agrees to subject himself or herself to the jurisdiction of this Court for purposes of any proceedings relating to the performance under, compliance with, or violation of this Protective Order.

~~14.~~ **13.** *Protecting Confidential Materials.* Each person who receives any Confidential Material shall exercise due and proper care, in connection with the storage, custody, use, and dissemination of such material, to avoid any intentional or inadvertent disclosure to persons to whom disclosure is not permitted under this Protective Order.

~~15.~~ **14.** *Confidential Materials to Be Filed Under Seal.* Any Confidential Material designated with a Confidential Designation that is to be filed with a Court in connection with any proceedings herein, shall be filed with the clerk of the court in accordance with the Court's then subsisting procedures therefore. Unless proscribed, the heading, case caption, case number, and document title must be prominently marked on the front of a sealed envelope in addition to the following legend:

**CONFIDENTIAL – FILED UNDER SEAL**

**SUBJECT TO A PROTECTIVE ORDER**

*16.* *15. Information Protected by Privilege, Work Product, or Other Doctrine.*  The inadvertent production of any document or other disclosure of Confidential Material which the Designating Party contends is subject to the attorney-client privilege, work-product protection, or any other privilege or protection against discovery shall not necessarily be deemed a waiver in whole or in part of the claim of privilege or protection, either as to the specific document or the information disclosed or as to any other document or information relating thereto.  Within a reasonable time after the discovery of the inadvertent production, the Designating Party shall give notice to the receiving party that privileged documents or information have been inadvertently produced or disclosed and request the return of such documents.  Any document or portion of transcript, including all copies thereof, constituting or containing information as to which notice of inadvertent production is given shall be returned to the Designating Party within fifteen (15) days of such demand.  If the receiving party objects to the claim of privilege, the claim of inadvertent production and/or the reasonableness of the notice given, the receiving party and the Designating Party shall attempt to resolve the dispute.  If the dispute is not resolved, the receiving party may move the Court to compel the re-production of the document(s) at issue. From the time of the Designating Party's notification of inadvertent production, any documents or information as to which notice is given shall be deemed and treated as privileged and shall not be used for any purpose until the Court enters an order ruling otherwise, or until the receiving party and the Designating Party otherwise agree.   All communications between counsel and any expert approved under this protective order shall be treated as litigation work product for this litigation as well as for any other lawsuits or proceedings except to the extent that such expert relies on them for his or her opinions.

~~17.~~ **16. Conclusion of Litigation.** All provisions of this Protective Order restricting the communication or use of Confidential Material shall continue to be binding after the conclusion of this action, unless otherwise agreed by all the parties or ordered by the Court. Upon conclusion of the litigation, including the running of any time to appeal or to move for relief under Fed. R. Civ. P. 60(B)(1)-(3), a party in possession of Confidential Material, other than that which is contained in pleadings, correspondence, attorney files, and deposition transcripts and exhibits, shall either (a) return such documents, no later than 30 days after conclusion of this action, to counsel for the party or non-party who provided such information, or, upon consent of the Designating Party, (b) destroy the documents within that time period and certify in writing within that time period that the documents have been destroyed.

~~18.~~ **17. Use of Confidential Material During Court Proceedings.** If any Confidential Material is used in any Court pretrial proceeding in this litigation (including, but not limited to, conferences, oral arguments, and hearings), the Confidential Material shall not lose its status as Confidential Material through such use. The parties shall take all steps reasonably necessary to protect the confidentiality of the Confidential Material during any such use, including, but not limited to, requesting *in camera* proceedings. The terms of this Protective Order do not preclude, limit, restrict, or otherwise apply to the use of documents at trial. The parties agree to meet and confer in good faith prior to trial to establish procedures for the use of Confidential Material at trial.

~~19.~~ **18. Improper Disclosure of Confidential Materials.** If any Confidential Material is disclosed to any person to whom such disclosure is not authorized by this Protective Order, or other than in a manner authorized by this Protective Order, the party responsible for the disclosure shall, upon discovery of the disclosure, immediately inform the Designating Party of

all facts pertinent to the disclosure that, after due diligence and prompt investigation, are known

to the party responsible for the disclosure (including the name, address, telephone number, and

employer of the person to whom the disclosure was made), shall immediately take all reasonable

efforts to prevent further disclosure by each unauthorized person who received such information,

and shall immediately require each unauthorized person to return all Confidential Material that

was improperly disclosed to that person, all copies made of the improperly disclosed

Confidential Material, and all documents containing excerpts from or references to the

improperly disclosed Confidential Material.

      ~~20.~~ **19.** *No Admissions.*  Compliance with this Protective Order in no way constitutes an

admission by any party that any information designated pursuant to this Protective Order is or is

not proprietary, confidential, or a trade secret.

      ~~21.~~ **20.** *Modification of Protective Order.*  Each party reserves the right to request that

the Court modify the terms of this Protective Order in the event that the party believes that a

modification is necessary.  If such an application is made, all signatories of copies of the

Certification, as well as persons described herein, shall remain bound by this Protective Order

unless and until it is modified by the Court.


      SO STIPULATED**:**


DATED: _____, 2007          CORDANCE CORPORATION


                    By _____
                      Steven J. Balick
                      ASHBY & GEDDES
                      Attorneys for Plaintiffs

DATED: _____, 2007   CORDANCE CORPORATION


By _____
  Michael A. Albert
  WOLF, GREENFIELD & SACKS, P.C.

  Attorneys for Plaintiffs

DATED: _____, 2007   AMAZON.COM, INC.


By _____
  Richard L. Horwitz
  POTTER, ANDERSON & CORROON LLP

  Attorneys for Defendant

DATED: _____, 2007   AMAZON.COM, INC.


By _____
  Lynn H. Pasahow
  FENWICK & WEST LLP

  Attorneys for Defendant


  IT IS SO ORDERED.


Dated: _____  _____
          Mary Pat Thynge
          United States Magistrate Judge

**EXHIBIT A**

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

CORDANCE CORPORATION,

      Plaintiff,

  v.                          Civil Action No. 06-491- MPT

AMAZON.COM, INC.,

      Defendant.

**CONSENT TO BE BOUND BY STIPULATED PROTECTIVE ORDER**

      I, the undersigned, hereby acknowledge that I have read the Stipulated Protective Order in this case, understand its terms, agree to be bound by them, and consent to the jurisdiction of the United States District Court for the District of Delaware to enforce them.  I acknowledge that I will treat any Confidential Material I receive in this action strictly according to the terms of the Protective Order, and I understand that any unauthorized use of the Confidential Material I receive constitutes contempt of court.

Dated: _____           _____

**EXHIBIT B**

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| CORDANCE CORPORATION, | Civil Action No. 06-491- MPT |
| Plaintiff, | |
| v. | |
| AMAZON.COM, INC., | |
| Defendant. | |

**NONDISCLOSURE AGREEMENT
(FOR UNDERTAKING BY MOCK JURORS OR FOCUS GROUP MEMBERS)**

I hereby acknowledge that in the course of my activities in this case, I may receive confidential research, development, commercial, financial, marketing, or technical information; that such information is normally kept secret from the public at large, from the parties' competitors, and even from many or most employees of the party that owns that information; and that the disclosure of such information would be likely to harm the competitive position of the party that owns that information.

I hereby agree that any unauthorized use or disclosure of the Confidential Material I receive constitutes contempt of court, and shall be punishable as such; that I will exercise due and proper care in connection with the storage, custody, and use of such material; and that, at the conclusion of my activities in this case, I will promptly return all information that I have received from any party to this case or their attorney.

I hereby consent to the jurisdiction of the United States District Court for the District of Delaware to enforce this Agreement.

Dated: _____        _____

# EXHIBIT C

LEXSEE 2006 U.S. DIST. LEXIS 426, AT 7


Caution
As of: May 02, 2007

**AFP ADVANCED FOOD PRODUCTS LLC, Plaintiff v. SNYDER'S of HANOVER MANUFACTURING, INC Defendant**

**CIVIL ACTION, NO. 05-3006**

**UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

*2006 U.S. Dist. LEXIS 426*

**January 6, 2006, Filed; January 9, 2006, Entered**

**SUBSEQUENT HISTORY:** Complaint dismissed at *AFP Advanced Food Prods. LLC v. Snyder's of Hanover Mfg., 2006 U.S. Dist. LEXIS 35979 (E.D. Pa., May 31, 2006)*

**CASE SUMMARY:**

**PROCEDURAL POSTURE:** Plaintiff patent holder filed suit against defendant alleged infringer seeking a temporary injunction against defendant. Defendant filed for a protective order pursuant to *Fed. R. Civ. P. 26(c)* seeking an order preventing plaintiff's attorneys litigating this case from prosecuting new patents for plaintiff regarding similar art.

**OVERVIEW:** Through its motion for protective order, defendant sought to prevent plaintiff's attorneys from using information they would acquire during discovery of this case in their subsequent legal practice. Defendant was not alleging any ethical violations of established rules of confidentiality, but was worried about the inadvertent use of discovered material. The court found that threat of inadvertently using information obtained through discovery, standing alone, was not enough to justify a protective order barring plaintiff's attorneys from prosecuting similar patents for two years. The court reasoned that there was no reason for it to believe that plaintiff's attorneys would not strictly follow the adopted order and refrain from using, either inadvertently or intentionally, Confidential Attorney's Eyes Only information for the sole purpose of this litigation. The court also found that if, however, the misuse of discovered material

became an issue during the course of this litigation, the protective order, pursuant to section 17, may be amended accordingly.

**OUTCOME:** The request for a protective order was granted. Plaintiff's objections were granted and portions of defendant's proposed protective order would be removed.

**CORE TERMS:** protective order, disclosure, confidential, designated, inspection, non-party, discovery, designation, inadvertent, recipient, deposition, confidentiality, attorney-client, outside counsel, inadvertently, marked, patent, written notice, work product, termination, competitive, destroyed, proposing, disclose, lawsuit, good cause, personnel, falling, entity, deposition transcript

**COUNSEL:** [*1] For AFP ADVANCED FOOD PRODUCTS LLC, Plaintiff: ANTHONY S. VOLPE, RANDOLPH J. HUIS, VOLPE & KOENIG PC, PHILADELPHIA, PA.

For SNYDER'S OF HANOVER MANUFACTURING, INC., doing business as SNYDER'S OF HANOVER, INC., Defendant: JAMES H. LAUGHLIN, JR., JOHN P. MORAN, THOMAS S. VALENTE, HOLLAND & KNIGHT LLP, WASHINGTON, DC; MARNIE E. SIMON, STEVENS & LEE, PHILADELPHIA, PA.

For SNYDER'S OF HANOVER MANUFACTURING, INC., Counter Claimant: MARNIE E. SIMON, STEVENS & LEE, PHILADELPHIA, PA.

2006 U.S. Dist. LEXIS 426, *

**JUDGES:** LAWRENCE F. STENGEL, J.

**OPINION BY:** LAWRENCE F. STENGEL

**OPINION:**

    MEMORANDUM

**STENGEL, J.**

**January 6, 2006**

    Defendant Snyder's of Hanover Manufacturing, Inc., ("Synder's") filed for a protective order pursuant to *Fed. R. Civ. P. 26(c)* seeking, among other things, an order preventing the plaintiff's attorneys litigating this case from prosecuting new patents for the plaintiff regarding similar art. Both Snyder's and the plaintiff, AFP Advanced Foods Products ("AFP") agree on the necessity of a protective order generally, but disagree over two specific provisions.

## I. BACKGROUND of CASE

    AFP brings this patent infringement case seeking a temporary injunction against [*2] Snyder's. AFP avers that Snyder's is willfully infringing upon their valid patent ( # 6,893,675 filed on May 17, 2005 and named "Acidified Imitation Cheese Sauce and Pudding Compositions and Method for Producing Such Compositions") through its production and sale of "Eatsmart Salsa Con Queso." Snyder's counterclaims requesting a declaratory judgment that the AFP patent ("675") is invalid and unenforceable.

## II. STANDARD for PROTECTIVE ORDERS

    "Under *Federal Rule of Civil Procedure 26(c)*, a court "for good cause shown" may, in certain circumstances, enter a protective order in the context of discovery." *Shingara v. Skiles, 420 F.3d 301, 305-06 (3d Cir. 2005)*. *Fed. R. Civ. P. 26(c)* places the burden of persuasion on the party seeking the protective order to prove the good cause. *Cipollone v. Liggett Group, 785 F.2d 1108, 1114 (3d Cir. 1986)*. The party seeking the protective order must show that disclosure of the information sought to be protected would result in a "clearly defined, specific and serious injury." *Shingara at 306* (citing *Pansy v. Borough of Stroudsburg, 23 F.3d 772, 786-87 (3d Cir. 1994))*. [*3] "Broad allegations of harm are not specific to establish good cause." Id. Generally a Court will balance the interests of seven, non-exclusive, factors before issuing a protective order. *Id.* Those factors include:

1) whether disclosure will violate any privacy interests;

2) whether the information is being sought for a legitimate purpose or for an improper purpose;

3) whether disclosure of the information will cause a party embarrassment;

4) whether confidentiality is being sought over information important to public health and safety;

5) whether the sharing of information among litigants will promote fairness and efficiency;

6) whether a party benefitting from the order of confidentiality is a public entity or official; and

7) whether the case involves issues important to the public.

*Id.* (citing *Glenmede Trust Co. v. Thompson, 56 F.3d 476, 483 (3d Cir. 1995)*, and *Pansy, 23 F.3d 772 at 787-91*).

## III. DISCUSSION

    A. Contested Language

    The language at issue in this motion for protective order appears in section 1. (f) and section 3. of Snyder's proposed order. Under section 1. (f) [*4] Snyder's defines "CONFIDENTIAL-ATTORNEY'S EYES ONLY" as "personnel information or sensitive CONFIDENTIAL information that the Designating Party in good faith believes will harm its competitive position if the information becomes known to a party other that the Designating Party." (Underlines added to highlight the contested language.) While section 3 states:

    Information designated "CONFIDENTIAL-ATTORNEYS' EYES ONLY" may only be used for purposes of this litigation, and may only be disclosed to persons falling within the categories specified in Paragraphs 2(a), (b), (c) and (d)(ii)-(vi) of this Order, who are not currently engaged and shall not engage during the course of this litigation and for a period of two (2) years following final disposition of this litigation (whether by

2006 U.S. Dist. LEXIS 426, *

judgment including exhaustion of all appeals, settlement, or otherwise) in the preparation or prosecution of patent application(s) related to low protein containing products, including but not limited to, cheese dips, including direct supervision or assistance thereof, on behalf of any party or any of their corporate parents, predecessors in interest, successors in interest, subsidiaries, joint [*5] ventures, affiliates, or any other entities partially or wholly under their control or ownership, and only in accordance with the procedures established under this court.

The remaining language in the proposed order is uncontested by the parties.

B. Should the Two-Year Ban be Granted?

Through its motion for protective order, Snyder's is seeking to prevent AFP's attorneys from using information they will acquire during discovery of this case in their subsequent legal practice. Snyder's is not alleging any ethical violations of established rules of confidentiality, but is worried about the inadvertent use of discovered material. AFP argues that the entire underlined language in section three (3) should be stricken.

Many courts have addressed similar issues. See *Mikohn Gaming Corp. v. Acres Gaming, Inc., 1998 U.S. Dist. LEXIS 22251, 50 U.S.P.Q.2d 1783 (D. Nev. 1998), Interactive Coupon Marketing Group, Inc. v. H.O.T.! Coupons, LLC, 1999 U.S. Dist. LEXIS 12437, No. 98 C 7408, 1999 WL 618969, at *2 (N.D. Ill. Aug. 9, 1999), Motorola, Inc. v, Interdigital Technology Corp., No. 03-488-LON, 1994 U.S. Dist. LEXIS 20714 (D. Del. Dec. 19, 1994),* [*6] *Commissariat A L'Energie Atomique v. Dell Computer Corp., 2004 U.S. Dist. LEXIS 12782 (D. Del. May 25, 2004), In re Papst Licensing, 2000 U.S. Dist. LEXIS 6374, *11 (E.D. La. May 4, 2000),* and *Chan v. Intuit, Inc., 218 F.R.D. 659 (N.D. Ca. 2003).* None of their decisions is precedential nor has any applied the Third Circuit's standard for issuing a protective order in *Shingara.*

The threat of inadvertently using information obtained through discovery is not to be taken lightly.

Inadvertence, like the thief-in-the-night, is no respecter of its victims. Inadvertent or accidental disclosure may or may not be predictable. To the extent that it may be predicted, and cannot be adequately fore-

stalled in the design of a protective order, it may be a factor in the access decision.

*U.S. Steel Corp. v. United States,730 F.2d 1465, 1468 (Fed. Cir. 1984)* (deciding whether in-house patent attorneys should be given access to confidential information through discovery in patent infringement cases). However, that threat, standing alone, under *Shingara* and *U.S. Steel,* is not enough [*7] to justify a protective order barring AFP's attorneys from prosecuting similar patents for two years. As further explained in U.S. Steel, the decision to deny access to discovered materials shall be done on a case-by-case, and lawyer-by-lawyer basis. Id. In this case, there is no reason for the court to believe that AFP's attorneys will not strictly follow the adopted order and refrain from using, either inadvertently or intentionally, Confidential Attorney's Eyes Only information for the sole purpose of this litigation. Barring AFP's attorneys from prosecuting similar patents for two years following this suit, without some tangible reason or good cause other than the general threat of inadvertent misuse of discovered materials, is the exact type of overly broad and generalized fear rejected in *Shingara, U.S. Steel,* and *In re Sibia Neurosciences, Inc., Doc. No. 525, 1997 U.S. App. LEXIS 31828 (Fed. Cir. Oct. 22, 1997)* (unpublished). If, however, the misuse of discovered material becomes an issue during the course of this litigation, the protective order, pursuant to section 17, may be amended accordingly.

C. Should the Language in Section 1. (f) [*8] be Altered?

To the extent that it remains pertinent after this Court's ruling on the language above, I will adopt Snyder's original language regarding section 1. (f). The language suggested by AFP, "it or its employees or agents" instead of Snyder's proposed "its competitive position," appears overly broad. Limiting the distinction to the Designating Parties' competitive position, at this point in the litigation, is more in line with Snyder's showing of good cause that its competitive position is what's at stake, not the more broad "it or its employees or agents."

IV. CONCLUSION

Based upon the Third Circuit's strict requirement on the moving party to show good cause before a protective order is issued, and given that the basis of Snyder's perceived threat is the possible inadvertent use of information, I believe the two-year ban is burdensome and unnecessary. At this point in the litigation, there is no reason for the Court to believe that the information sought through discovery is for anything other than the specific and legitimate purpose of litigating this case. An appro-

2006 U.S. Dist. LEXIS 426, *

priate order adopting Snyder's proposed protective order without the two-year ban follows.

[*9] **ORDER**

**AND NOW**, this day of January, 2006, upon consideration of the defendant's motion for a protective order (Docket # 14) and the plaintiff's objections (Docket # 16), it is hereby **ORDERED** that the motion is granted in part and denied in part. The request for a protective order is granted; AFP's objections are granted as well and portions of Snyder's of Hanover's proposed protective order will be removed. The protective order approved by the Court will be ordered today as a separate docket entry.

BY THE COURT:

LAWRENCE F. STENGEL, J.

PROTECTIVE ORDER:

1. Definitions:

(a) "Discovery Material" means any and all documents, testimony, deposition transcripts, deposition exhibits, interrogatory responses, admissions, and any other information produced or otherwise provided by a party or non-party to another party or non-party in connection with discovery in this litigation.

(b) "Designating Party" means any person or entity, whether a party to this lawsuit or not, who has designated documents or information as either "CONFIDENTIAL" or "CONFIDENTIAL-ATTORNEYS' EYES ONLY" under this Order.

(c) "Producing Party" means any person or entity, whether [*10] a party to this lawsuit or not, who has produced documents or provided information in this litigation or from whom documents or information have been requested.

(d) "Receiving Party" means any party who has received documents or information in this litigation.

(e) "CONFIDENTIAL" information means information that the Producing Party in good faith believes to be "confidential research, development, or commercial information" within the meaning of *Fed. R. Civ. P. 26(c)*, including, but not limited to, financial information, security measures, nonpublic technical information, ongoing research and development projects, unpublished patent applications and file wrappers, patent license agreements, or other non-public information.

(f) "CONFIDENTIAL-ATTORNEYS' EYES ONLY" information means personnel information or sensitive CONFIDENTIAL information that the Designating Party in good faith believes will harm its competitive position if the information becomes known to a party other than the Designating Party.

(g) "Confidential Discovery Material" means any Discovery Material that is designated as "CONFIDENTIAL" or "CONFIDENTIAL-ATTORNEYS' [*11] EYES ONLY," in accordance with the procedures set forth below, including but not limited to:

(i) Information furnished pursuant to *Rule 26 of the Federal Rules of Civil Procedure.*

(ii) Information furnished or set forth in response to any discovery request made under *Fed. R. Civ. P. 31, 33*, or *36*, provided that, prior to disclosure to the Receiving Party, the information or responses are plainly marked or otherwise identified by the Designating Party on each page as "CONFIDENTIAL" or "CONFIDENTIAL-ATTORNEYS' EYES ONLY."

(iii) Information set forth in documents made available for inspection by the Producing Party voluntarily or under *Fed. R. Civ. P. 33(d)* or *34* and that are identified at the time of inspection as containing or comprising "Confidential Discovery Material." The party producing information for inspection need not designate the information by stamping or labeling it as "CONFIDENTIAL" or "CONFIDEN-TIAL-ATTORNEYS' EYES [*12] ONLY" until copies are delivered to the inspecting party in response to the inspecting party requesting copies of the information. Making documents and things available for inspection shall not constitute a waiver of any claim of confidentiality, attorney-client privilege, or work-product immunity.

(iv) Information set forth in any copies of documents produced to the discovering party voluntarily or under *Fed. R. Civ. P. 33(d)* or *34*, provided that, prior to delivery of the copies to the Receiving Party, the copies are physically or digitally marked, as feasible, by the Designating Party as "CONFIDENTIAL" or "CON-FIDENTIAL-ATTORNEYS' EYES

ONLY." Each page, unit, or thing should be individually marked with the appropriate designation, as feasible.

(v) Information revealed by inspection of things or premises voluntarily or under *Fed. R. Civ. P. 34*, provided that, prior to the inspection, the party permitting inspection states in writing that its Confidential Discovery Material will be disclosed by the inspection and specifies in writing those parts of the things [*13] or those areas of the premises in which its "CONFIDENTIAL" or "CONFIDENTIAL-ATTORNEYS' EYES ONLY" information will be revealed.

(vi) Information revealed during deposition upon oral examination under *Fed. R. Civ. P. 30* or pursuant to subpoena under *Fed. R. Civ. P. 45*, except that the information revealed during any particular deposition shall cease to be Confidential Discovery Material fifteen days after the deposition transcript is received by all parties (unless at the deposition or before the ten day period has expired, the witness, his employer, or his counsel states on the record at the deposition, or gives written notice before the ten day period expires that "CONFIDENTIAL" or "CONFIDENTIAL-ATTORNEYS' EYES ONLY" information of the witness or his employer is set forth in the transcript). In the case of non-party witnesses, either a party or the non-party witness may designate information revealed as its "CONFIDENTIAL" or

"CONFIDENTIAL-ATTORNEYS' EYES ONLY" information within fifteen days after the deposition transcript is received by all parties.

(vii) Any summary, digest, analysis, [*14] or comment on any Confidential Discovery Material identified in categories (i)-(vi) that is not immune from discovery due to attorney-client privilege or work product immunity.

(h) Confidential Discovery Material shall not include any information that:

(i) is or becomes publicly available without the Receiving Party's breach of any obligation owed to the Designating Party;

(ii) is lawfully in the possession of a party receiving such information without any confidentiality obligations at the time of disclosure; or

(iii) is lawfully disclosed by a third party that is not subject to any confidentiality obligations at the time of disclosure.

2. Confidential Discovery Material designated "CONFIDENTIAL" may only be disclosed to the persons falling within the categories specified in Paragraphs 2(a), (b), (c), and (d) below:

(a) the Court and Court personnel involved with this case under seal as mandated by the Court's Local Rules;

(b) the parties' respective outside counsel of record in this action, including counsel's legal support staff and outside copying and graphics services as reasonably necessary to perform such services under the supervision [*15] of outside counsel of record;

(c) outside stenographic court reporters and language translators (including support staff as reasonably necessary); and

(d) the additional individuals listed in categories (i) through (vi) immediately below, provided such additional individuals-except for those in category (iii) with respect to the Confidential Discovery Materials identified in category (iii)-have read this Protective Order in advance of disclosure and signed an Undertaking in the form attached as Exhibit A, which shall be retained in the files of outside counsel with whom the additional individual is associated:

(i) A total of two persons who may be an officer of, director of, or inhouse counsel to, each party, to the extent necessary to assist in the conduct of this litigation, and who are specifically designated by written notice to the other party identifying each such person by name and position;

(ii) any person retained by a party or its counsel of record as an independent con-

sultant or testifying expert for purposes of this action who has no continuing relationship, other than as an expert or consultant, with any of the parties hereto or their affiliates, [*16] or any of their competitors, and retained in accordance with the provisions set forth in Paragraph 5 below;

(iii) a deponent or other witness who is named as an author or recipient of, has previously seen the contents of, or has at any time been authorized to see the document or thing marked as Confidential Discovery Material that is to be disclosed to them;

(iv) paralegals, stenographic and clerical employees, and translators associated with the individuals enumerated in (d)(i)-(iii) above, but only as part of a disclosure to said individuals in accordance with this Protective Order;

(v) any person retained by a party to supervise the destruction of Confidential Discovery Material per Paragraph 14 below under the supervision of a party's outside counsel of record; and

(vi) such other individuals as the parties may agree to in writing or in a transcribed record.

(e) Any disclosure of "Confidential Discovery Material" to an individual listed in items (d)(i) through (iv) under Paragraph 2 above shall be limited to the information, documents and/or things that outside counsel believes are reasonably required for such individual to assist in this litigation. [*17]

3. Information designated "CONFIDENTIAL-ATTORNEYS' EYES ONLY" may only be used for purposes of this litigation, and may only be disclosed to persons falling within the categories specified in Paragraphs 2(a), (b), (c), and (d)(ii)-(vi) of this Order.

4. Counsel shall exert their best efforts to identify materials or information protected by the attorney-client privilege, the work product doctrine, and/or any other privilege, before its disclosure. The inadvertent production of any document or thing by any Producing Party shall be without prejudice to any claim by the Producing Party that such material is protected by the attorney-client

privilege, or protected from discovery as work product. No Producing Party shall be held to have waived any rights thereunder merely by inadvertent production made subsequent to the execution of this Order. If, within a reasonable time after materials are disclosed, a Producing Party asserts that such materials are protected by the attorney-client privilege, work product doctrine, or any other claim of privilege, and were inadvertently produced, the Receiving Party shall take immediate steps to ensure that all known copies of such material [*18] are returned promptly to the Producing Party. The cost, if any, for excising such materials by the Receiving Party shall be borne by the Producing Party. Any party may thereafter contest such claims of privilege or work product as if the materials had not been produced, but shall not assert that a waiver occurred as a result of the production if the Producing Party has complied with the provisions of this paragraph.

5. Prior to showing any Confidential Discovery Material of the Designating Party to any of the individuals identified in Paragraph 2(d)(i) and 2(d)(ii) above, the party proposing the disclosure shall serve on the Designating Party: (i) a written notice identifying such individual and stating such individual's present occupation, employer and position, and all other business affiliations for the past 10 years, (ii) the most up-to-date copy of such individual's curriculum vitae, and (iii) an Undertaking in the form attached hereto as Exhibit A executed by such individual. The Designating Party shall have ten (10) calendar days to object to the disclosure of its Confidential Discovery Material to such individual. If at the end of the 10-calendar-day period no written [*19] objection has been received by the party that wishes to disclose the information, then the individual may receive copies of such Confidential Discovery Material upon compliance with all applicable provisions of this Protective Order. Such an objection, however, shall stay disclosure to the proposed recipient. If the Designating Party and party proposing disclosure are unable to resolve a disagreement, the party proposing to make the disclosure may thereupon seek leave of the Court to make the disclosure, notwithstanding the objection, by a noticed motion.

6. Any information designated as Confidential Discovery Material may not be offered into evidence at trial or any other proceeding unless the Designating Party is given reasonable notice and an opportunity to object and to seek a protective order. For the purposes of trial, designation of information in the pre-trial order shall be considered sufficient notice to a party with respect to the information referenced therein.

7. Counsel shall exert their best efforts to identify Confidential Discovery Material. The inadvertent designation,

misdesignation, or non-designation of any document or thing by any party or non-party [*20] shall be without prejudice to any claim the party or non-party has to preserve the confidentiality of inadvertently disclosed information. Provided that efforts to retrieve inadvertently designated documents are commenced within a reasonable period of time after their production, no Producing Party shall be held to have waived any rights thereunder by inadvertent disclosure. If within a reasonable time after materials are disclosed, a Producing Party asserts that such materials should be designated as "CONFIDENTIAL" or "CONFIDENTIAL-ATTORNEYS' EYES ONLY," and were inadvertently produced with a different designation, the Receiving Party shall take immediate steps to ensure that all known copies of such material are appropriately disclosed according to the provisions of this Order. The cost, if any, for redesignating such materials by the Receiving Party shall be borne by the Producing Party.

8. This Protective Order shall not prevent any party from moving this Court for an order dedesignating or redesignating Confidential Discovery Materials. The information shall remain Confidential Discovery Material and under the status given by the Designating Party unless and until the Court [*21] rules to the contrary. It shall be the burden of the Designating Party to prove that its designation is appropriate. Further, a Receiving Party is not obligated to challenge the propriety of a designation as Confidential Discovery Material at the time of the designation.

9. In the event of any accidental or inadvertent disclosure of Confidential Discovery Material other than in a manner authorized by this Protective Order, counsel for any party who knows or becomes aware of such disclosure shall immediately notify counsel for the Designating Party of all of the pertinent facts, and make every effort to prevent further unauthorized disclosure, including retrieving all copies of any Confidential Discovery Material a party has improperly disclosed from the recipient(s) thereof and securing the agreement of the recipients in writing not to further disseminate the Confidential Discovery Material in any form.

10. Each recipient of any Confidential Discovery Material produced in this litigation hereby agrees to be subject to the jurisdiction of this Court for the purposes of the implementation and enforcement of this Protective Order.

11. Confidential Discovery Material shall [*22] not be used or disclosed by any recipient for any purpose other than in connection with the above-captioned action and shall not be disclosed by the recipient to anyone other than those persons as designated in the appropriate section of Paragraphs 2 and 3 herein, unless and until the restrictions herein are removed by order of the Court or by written stipulation of the parties and Designating Party, subject to the approval of the Court.

12. Nothing herein shall bar or restrict any attorney from rendering advice to his or her client regarding this litigation and, in the course thereof, relying upon his or her examination of Confidential Discovery Material, provided, however, that in rendering such advice and in otherwise communicating with his or her client, the attorney shall not disclose the content of any Confidential Discovery Material to anyone not authorized to receive such information in accordance with this Protective Order.

13. This Protective Order shall not be deemed a waiver of:

(a) any party's right to object to any discovery requests on any grounds;

(b) any party's right to seek an order compelling discovery with respect to any discovery request;

(c) [*23] any party's right in any proceeding in this litigation to object to the admission of any evidence on any ground;

(d) any party's right to use and disclose its own documents and its own Confidential Discovery Material in its sole and complete discretion; or

(e) the status of any information as a trade secret or other confidential information.

14. This Protective Order shall be valid throughout the course of this litigation (defined to include all proceedings herein, appeals, and/or remands) and shall survive the termination of this litigation. Within one hundred twenty (120) days of the final non-appealable termination of this litigation, all documents and copies of documents (including any copies created by optical scanning) produced by the parties or by nonparties designated as containing Confidential Discovery Material shall be returned to the Designating Party or destroyed, except that counsel for each party may retain a copy of any documents containing Confidential Discovery Material in this case, which shall be kept confidential in accordance with this Order. If destroyed pursuant to this provision, the person or persons who destroy such Confidential Discovery Material [*24] shall provide written certification to the Designating Party that such information has been properly destroyed. Notwithstanding the terms of this Paragraph 14, but subject to the terms of Paragraph 11,

the parties to this Order shall be under no obligation to delete Confidential Discovery Material from securely stored backup media. The terms of this Protective Order shall survive and remain in full force after the termination of this lawsuit and the Court shall have jurisdiction over the parties, their attorneys, and all persons to whom Confidential Discovery Material has been disclosed for the purpose of enforcing the terms of this Protective Order and/or redressing any violation thereof.

15. The terms of this Protective Order may be applied to the documents, information and things received by any party from a non-party, at the election of either the party or the non-party.

16. Counsel for the parties to whom Confidential Discovery Material has been furnished shall be responsible for restricting disclosure in accordance with the provisions of this Protective Order and for securing execution of and retaining the Undertaking attached as Exhibit A as and when required under [*25] the provisions of this Protective Order.

17. This Protective Order may be modified or amended either by agreement of the parties or by further order of the Court Upon good cause shown.

BY THE COURT:

LAWRENCE F. STENGEL, J.

**ORDER**

**AND NOW**, this   day of January, 2006, on motion of the defendant and for the reasons set forth in this court's Memorandum and Order filed today in this case, the court enters the following protective order:

PROTECTIVE ORDER:

1. Definitions:

(a) "Discovery Material" means any and all documents, testimony, deposition transcripts, deposition exhibits, interrogatory responses, admissions, and any other information produced or otherwise provided by a party or non-party to another party or non-party in connection with discovery in this litigation.

(b) "Designating Party" means any person or entity, whether a party to this lawsuit or not, who has designated documents or information as either "CONFIDENTIAL" or "CONFIDENTIAL-ATTORNEYS' EYES ONLY" under this Order.

(c) "Producing Party" means any person or entity, whether a party to this lawsuit or not, who has produced documents or provided information in this litigation

[*26]  or from whom documents or information have been requested.

(d) "Receiving Party" means any party who has received documents or information in this litigation.

(e) "CONFIDENTIAL" information means information that the Producing Party in good faith believes to be "confidential research, development, or commercial information" within the meaning of *Fed. R. Civ. P. 26(c)*, including, but not limited to, financial information, security measures, nonpublic technical information, ongoing research and development projects, unpublished patent applications and file wrappers, patent license agreements, or other non-public information.

(f) "CONFIDENTIAL-ATTORNEYS' EYES ONLY" information means personnel information or sensitive CONFIDENTIAL information that the Designating Party in good faith believes will harm its competitive position if the information becomes known to a party other than the Designating Party.

(g) "Confidential Discovery Material" means any Discovery Material that is designated as "CONFIDENTIAL" or "CONFIDENTIAL-ATTORNEYS' EYES ONLY," in accordance with the procedures set forth below, including but not limited to:  [*27]

(i) Information furnished pursuant to *Rule 26 of the Federal Rules of Civil Procedure.*

(ii) Information furnished or set forth in response to any discovery request made under *Fed. R. Civ. P. 31*, *33*, or *36*, provided that, prior to disclosure to the Receiving Party, the information or responses are plainly marked or otherwise identified by the Designating Party on each page as "CONFIDENTIAL" or "CONFIDENTIAL-ATTORNEYS' EYES ONLY."

(iii) Information set forth in documents made available for inspection by the Producing Party voluntarily or under *Fed. R. Civ. P. 33(d)* or *34* and that are identified at the time of inspection as containing or comprising "Confidential Discovery Material." The party producing information for inspection need not designate the information by stamping or labeling it as "CONFIDENTIAL" or "CONFIDEN-

TIAL-ATTORNEYS' EYES ONLY" until copies are delivered to the inspecting party in response to the inspecting party [*28] requesting copies of the information. Making documents and things available for inspection shall not constitute a waiver of any claim of confidentiality, attorney-client privilege, or work-product immunity.

(iv) Information set forth in any copies of documents produced to the discovering party voluntarily or under *Fed. R. Civ. P. 33(d)* or *34*, provided that, prior to delivery of the copies to the Receiving Party, the copies are physically or digitally marked, as feasible, by the Designating Party as "CONFIDENTIAL" or "CONFIDENTIAL-ATTORNEYS' EYES ONLY." Each page, unit, or thing should be individually marked with the appropriate designation, as feasible.

(v) Information revealed by inspection of things or premises voluntarily or under *Fed. R. Civ. P. 34*, provided that, prior to the inspection, the party permitting inspection states in writing that its Confidential Discovery Material will be disclosed by the inspection and specifies in writing those parts of the things or those areas of the premises in which its "CONFIDENTIAL" or "CONFIDENTIAL-ATTORNEYS' EYES [*29] ONLY" information will be revealed.

(vi) Information revealed during deposition upon oral examination under *Fed. R. Civ. P. 30* or pursuant to subpoena under *Fed. R. Civ. P. 45*, except that the information revealed during any particular deposition shall cease to be Confidential Discovery Material fifteen days after the deposition transcript is received by all parties (unless at the deposition or before the ten day period has expired, the witness, his employer, or his counsel states on the record at the deposition, or gives written notice before the ten day period expires that "CONFIDENTIAL" or "CONFIDENTIAL-ATTORNEYS' EYES ONLY" information of the witness or his employer is set forth in the transcript). In the case of non-party witnesses, either a party or the non-party witness may designate information revealed as its "CONFIDENTIAL" or

"CONFIDENTIAL-ATTORNEYS' EYES ONLY" information within fifteen days after the deposition transcript is received by all parties.

(vii) Any summary, digest, analysis, or comment on any Confidential Discovery Material identified in categories (i)-(vi) [*30] that is not immune from discovery due to attorney-client privilege or work product immunity.

(h) Confidential Discovery Material shall not include any information that:

(i) is or becomes publicly available without the Receiving Party's breach of any obligation owed to the Designating Party;

(ii) is lawfully in the possession of a party receiving such information without any confidentiality obligations at the time of disclosure; or

(iii) is lawfully disclosed by a third party that is not subject to any confidentiality obligations at the time of disclosure.

2. Confidential Discovery Material designated "CONFIDENTIAL" may only be disclosed to the persons falling within the categories specified in Paragraphs 2(a), (b), (c), and (d) below:

(a) the Court and Court personnel involved with this case under seal as mandated by the Court's Local Rules;

(b) the parties' respective outside counsel of record in this action, including counsel's legal support staff and outside copying and graphics services as reasonably necessary to perform such services under the supervision of outside counsel of record;

(c) outside stenographic court reporters and [*31] language translators (including support staff as reasonably necessary); and

(d) the additional individuals listed in categories (i) through (vi) immediately below, provided such addi-

tional individuals-except for those in category (iii) with respect to the Confidential Discovery Materials identified in category (iii)-have read this Protective Order in advance of disclosure and signed an Undertaking in the form attached as Exhibit A, which shall be retained in the files of outside counsel with whom the additional individual is associated:

(i) A total of two persons who may be an officer of, director of, or inhouse counsel to, each party, to the extent necessary to assist in the conduct of this litigation, and who are specifically designated by written notice to the other party identifying each such person by name and position;

(ii) any person retained by a party or its counsel of record as an independent consultant or testifying expert for purposes of this action who has no continuing relationship, other than as an expert or consultant, with any of the parties hereto or their affiliates, or any of their competitors, and retained in accordance with the provisions set [*32] forth in Paragraph 5 below;

(iii) a deponent or other witness who is named as an author or recipient of, has previously seen the contents of, or has at any time been authorized to see the document or thing marked as Confidential Discovery Material that is to be disclosed to them;

(iv) paralegals, stenographic and clerical employees, and translators associated with the individuals enumerated in (d)(i)-(iii) above, but only as part of a disclosure to said individuals in accordance with this Protective Order;

(v) any person retained by a party to supervise the destruction of Confidential Discovery Material per Paragraph 14 below under the supervision of a party's outside counsel of record; and

(vi) such other individuals as the parties may agree to in writing or in a transcribed record.

(e) Any disclosure of "Confidential Discovery Material" to an individual listed in items (d)(i) through (iv) under Paragraph 2 above shall be limited to the information, documents and/or things that outside counsel believes are reasonably required for such individual to assist in this litigation.

3. Information designated "CONFIDENTIAL-ATTORNEYS' EYES ONLY" may only be [*33] used for purposes of this litigation, and may only be disclosed to persons falling within the categories specified in Paragraphs 2(a), (b), (c), and (d)(ii)-(vi) of this Order.

4. Counsel shall exert their best efforts to identify materials or information protected by the attorney-client privilege, the work product doctrine, and/or any other privilege, before its disclosure. The inadvertent production of any document or thing by any Producing Party shall be without prejudice to any claim by the Producing Party that such material is protected by the attorney-client privilege, or protected from discovery as work product. No Producing Party shall be held to have waived any rights thereunder merely by inadvertent production made subsequent to the execution of this Order. If, within a reasonable time after materials are disclosed, a Producing Party asserts that such materials are protected by the attorney-client privilege, work product doctrine, or any other claim of privilege, and were inadvertently produced, the Receiving Party shall take immediate steps to ensure that all known copies of such material are returned promptly to the Producing Party. The cost, if any, for excising such [*34] materials by the Receiving Party shall be borne by the Producing Party. Any party may thereafter contest such claims of privilege or work product as if the materials had not been produced, but shall not assert that a waiver occurred as a result of the production if the Producing Party has complied with the provisions of this paragraph.

5. Prior to showing any Confidential Discovery Material of the Designating Party to any of the individuals identified in Paragraph 2(d)(i) and 2(d)(ii) above, the party proposing the disclosure shall serve on the Designating Party: (i) a written notice identifying such individual and stating such individual's present occupation, employer and position, and all other business affiliations for the past 10 years, (ii) the most up-to-date copy of such individual's curriculum vitae, and (iii) an Undertaking in the form attached hereto as Exhibit A executed by such individual. The Designating Party shall have ten (10) calendar days to object to the disclosure of its Confidential Discovery Material to such individual. If at the end of the 10-calendar-day period no written objection has been received by the party that wishes to disclose the information, [*35] then the individual may receive copies of

such Confidential Discovery Material upon compliance with all applicable provisions of this Protective Order. Such an objection, however, shall stay disclosure to the proposed recipient. If the Designating Party and party proposing disclosure are unable to resolve a disagreement, the party proposing to make the disclosure may thereupon seek leave of the Court to make the disclosure, notwithstanding the objection, by a noticed motion.

6. Any information designated as Confidential Discovery Material may not be offered into evidence at trial or any other proceeding unless the Designating Party is given reasonable notice and an opportunity to object and to seek a protective order. For the purposes of trial, designation of information in the pre-trial order shall be considered sufficient notice to a party with respect to the information referenced therein.

7. Counsel shall exert their best efforts to identify Confidential Discovery Material. The inadvertent designation, misdesignation, or non-designation of any document or thing by any party or non-party shall be without prejudice to any claim the party or non-party has to preserve the [*36] confidentiality of inadvertently disclosed information. Provided that efforts to retrieve inadvertently designated documents are commenced within a reasonable period of time after their production, no Producing Party shall be held to have waived any rights thereunder by inadvertent disclosure. If within a reasonable time after materials are disclosed, a Producing Party asserts that such materials should be designated as "CONFIDENTIAL" or "CONFIDENTIAL-ATTORNEYS' EYES ONLY," and were inadvertently produced with a different designation, the Receiving Party shall take immediate steps to ensure that all known copies of such material are appropriately disclosed according to the provisions of this Order. The cost, if any, for redesignating such materials by the Receiving Party shall be borne by the Producing Party.

8. This Protective Order shall not prevent any party from moving this Court for an order dedesignating or redesignating Confidential Discovery Materials. The information shall remain Confidential Discovery Material and under the status given by the Designating Party unless and until the Court rules to the contrary. It shall be the burden of the Designating Party to prove [*37] that its designation is appropriate. Further, a Receiving Party is not obligated to challenge the propriety of a designation as Confidential Discovery Material at the time of the designation.

9. In the event of any accidental or inadvertent disclosure of Confidential Discovery Material other than in a manner authorized by this Protective Order, counsel for any party who knows or becomes aware of such disclosure shall immediately notify counsel for the Designating Party of all of the pertinent facts, and make every effort to prevent further unauthorized disclosure, including retrieving all copies of any Confidential Discovery Material a party has improperly disclosed from the recipient(s) thereof and securing the agreement of the recipients in writing not to further disseminate the Confidential Discovery Material in any form.

10. Each recipient of any Confidential Discovery Material produced in this litigation hereby agrees to be subject to the jurisdiction of this Court for the purposes of the implementation and enforcement of this Protective Order.

11. Confidential Discovery Material shall not be used or disclosed by any recipient for any purpose other than in connection [*38] with the above-captioned action and shall not be disclosed by the recipient to anyone other than those persons as designated in the appropriate section of Paragraphs 2 and 3 herein, unless and until the restrictions herein are removed by order of the Court or by written stipulation of the parties and Designating Party, subject to the approval of the Court.

12. Nothing herein shall bar or restrict any attorney from rendering advice to his or her client regarding this litigation and, in the course thereof, relying upon his or her examination of Confidential Discovery Material, provided, however, that in rendering such advice and in otherwise communicating with his or her client, the attorney shall not disclose the content of any Confidential Discovery Material to anyone not authorized to receive such information in accordance with this Protective Order.

13. This Protective Order shall not be deemed a waiver of:

(a) any party's right to object to any discovery requests on any grounds;

(b) any party's right to seek an order compelling discovery with respect to any discovery request;

(c) any party's right in any proceeding in this litigation to object to the admission [*39] of any evidence on any ground;

(d) any party's right to use and disclose its own documents and its own Confidential Discovery Material in its sole and complete discretion; or

(e) the status of any information as a trade secret or other confidential information.

2006 U.S. Dist. LEXIS 426, *

14. This Protective Order shall be valid throughout the course of this litigation (defined to include all proceedings herein, appeals, and/or remands) and shall survive the termination of this litigation. Within one hundred twenty (120) days of the final non-appealable termination of this litigation, all documents and copies of documents (including any copies created by optical scanning) produced by the parties or by nonparties designated as containing Confidential Discovery Material shall be returned to the Designating Party or destroyed, except that counsel for each party may retain a copy of any documents containing Confidential Discovery Material in this case, which shall be kept confidential in accordance with this Order. If destroyed pursuant to this provision, the person or persons who destroy such Confidential Discovery Material shall provide written certification to the Designating Party that such information [*40] has been properly destroyed. Notwithstanding the terms of this Paragraph 14, but subject to the terms of Paragraph 11, the parties to this Order shall be under no obligation to delete Confidential Discovery Material from securely stored backup media. The terms of this Protective Order shall survive and remain in full force after the termination of this lawsuit and the Court shall have jurisdiction

over the parties, their attorneys, and all persons to whom Confidential Discovery Material has been disclosed for the purpose of enforcing the terms of this Protective Order and/or redressing any violation thereof.

15. The terms of this Protective Order may be applied to the documents, information and things received by any party from a non-party, at the election of either the party or the non-party.

16. Counsel for the parties to whom Confidential Discovery Material has been furnished shall be responsible for restricting disclosure in accordance with the provisions of this Protective Order and for securing execution of and retaining the Undertaking attached as Exhibit A as and when required under the provisions of this Protective Order.

17. This Protective Order may be modified [*41] or amended either by agreement of the parties or by further order of the Court Upon good cause shown.

BY THE COURT:

LAWRENCE F. STENGEL, J.

# EXHIBIT D

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

CORDANCE CORPORATION,            )
                                 )
        Plaintiff,               )
                                 )
    v.                           )        C.A. No. 06-491-MPT
                                 )
AMAZON.COM, INC.,                )
                                 )
        Defendant.               )

## AUGUST 26, 2007 DECLARATION OF DRUMMOND S. REED

I, Drummond S. Reed, declare and state:

1.      I am a board member and technical advisor of Cordance Corporation

("Cordance"), the plaintiff in the above-captioned case.

2.      I am the named inventor on U.S. Patent Number 6,757,710 ("the '710

patent"), which is assigned to Cordance Corporation and is being asserted against

Amazon.com, Inc. ("Amazon") in this case. The '710 patent issued on June 29, 2004. I

have not been involved in the preparation, filing, or prosecution any patent applications,

for Cordance or otherwise, since that time.

3.      I am not currently participating the design, development, or

implementation of any e-commerce system. I also have no plans to participate in the

design, development, or implementation of any e-commerce system at any point in the

future.

4.      Cordance is a provider of digital addressing technology based on an open

standard. In a nutshell, that technology allows a person or organization to obtain a digital

address, consisting of both a human-friendly "i-name" and a permanent "i-number", and to use these identifiers to assert and protect a digital identity in any system or environment that is configured to allow for such use. Because it is based on an open standard, other businesses can support i-names/i-numbers and provide services based on them much as they can with domain names and telephone numbers.

5.      Amazon and Cordance are not competitors. From a competitive standpoint, Cordance has nothing to gain by being allowed to access any information that Amazon might produce. Amazon's proprietary technology related to selling items on the Internet would not be of any use to Cordance in implementing its open standard for identity management. Cordance is not in the e-commerce business and has no intentions of getting involved in that business or employing any technologies relating to it.

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge and belief.

Date: August 26, 2007

Drummond S. Reed

2

# EXHIBIT E

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

CORDANCE CORPORATION,                    )
                                         )
                    Plaintiff,           )
                                         )
        v.                               )        C.A. No. 06-491-MPT
                                         )
AMAZON.COM, INC.,                        )
                                         )
                    Defendant.           )

## AUGUST 26, 2007 DECLARATION OF BRIAN E. LEWIS

I, Brian E. Lewis, declare and state:

1.      I am General Counsel  of Cordance Corporation ("Cordance"), the plaintiff in the above-captioned case.

2.      U.S. Patent Number 6,757,710 ("the '710 patent"), which is assigned to Cordance Corporation and is being asserted against Amazon.com, Inc. ("Amazon") in this matter, issued on June 29, 2004.  No one at Cordance Corporation has been involved in the preparation, filing, or prosecution any patent applications for Cordance since that time.

3.      Cordance does not have any pending patent applications and thus would lack the ability to seek additional or different patent claims directed to Amazon's business, even if it wanted to do so.

4.      Cordance also does not have any plans to file any new patent applications on any subject matter whatsoever.

5.     I am not currently participating the design, development, or implementation of any e-commerce system.  I also have no plans to participate in the design, development, or implementation of any e-commerce system at any point in the future.

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge and belief.

Date: August 26, 2007

_____
Brian E. Lewis

# EXHIBIT F

FOCUS - 3 of 7 DOCUMENTS

**R.R. DONNELLEY & SONS COMPANY, Plaintiff, v. QUARK, INC., CREO, INC., EASTMAN KODAK COMPANY, and KODAK GRAPHIC COMMUNICATIONS COMPANY, Defendants.**

**Civil Action No. 06-032-JJF**

**UNITED STATES DISTRICT COURT FOR THE DISTRICT OF DELAWARE**

*2007 U.S. Dist. LEXIS 424*

**January 4, 2007, Decided**

**CORE TERMS:** protective order, inadvertent, competitive, disclosure, outside counsel, discovery, patent, decision-making, software, in-house, confidential, advise, appearance, tangible, printing, variable, weighs, initiatives, strategic, manage, access to information, processing, digital, misuse, amend

**COUNSEL:** [*1] For R.R. Donnelley & Sons Company, Plaintiff: Rodger Dallery Smith, II, LEAD ATTORNEY, Morris, Nichols, Arsht & Tunnell LLP, Wilmington, DE; Jack B. Blumenfeld, Morris, Nichols, Arsht & Tunnell, Wilmington, DE.

For Creo Inc., Defendant: Frederick L. Cottrell, III, LEAD ATTORNEY, Richards, Layton & Finger, Wilmington, DE; Alyssa M. Schwartz, Gregory Erich Stuhlman, Richards, Layton & Finger, Wilmington, DE; Amy Elizabeth Evans, Cross & Simon, LLC, Wilmington, DE; Brian M. Koide, Pro Hac Vice; Clyde Findley, Pro Hac Vice; David M. Schnorrenberg, Pro Hac Vice; Jeffrey D. Sanok, Pro Hac Vice; Nathaniel Grow, Pro Hac Vice; Rodger Dallery Smith, II, Morris, Nichols, Arsht & Tunnell LLP, Wilmington, DE.

For Eastman Kodak Company, Kodak Graphic Communications Company, Defendants: Frederick L. Cottrell, III, LEAD ATTORNEY, Richards, Layton & Finger, Wilmington, DE; Alyssa M. Schwartz, Gregory Erich Stuhlman, Richards, Layton & Finger, Wilmington, DE; Amy Elizabeth Evans, Cross & Simon, LLC, Wilmington, DE; Amy W. Ray, Pro Hac Vice; David M. Schnorrenberg, Pro Hac Vice; Rodger Dallery Smith, II, Morris, Nichols, Arsht & Tunnell, Wilmington, DE.

For Creo Inc., Eastman Kodak [*2] Company, Kodak Graphic Communications Company, Counter Claimants: Amy Elizabeth Evans, Cross & Simon, LLC, Wilmington, DE.

For R.R. Donnelley & Sons Company, Counter Defendant: Rodger Dallery Smith, II, Morris, Nichols, Arsht & Tunnell LLP, Wilmington, DE.

**JUDGES:** Joseph J. Farnan, Jr., United States District Judge.

**OPINION BY:** Joseph J. Farnan, Jr.

**OPINION:**

### MEMORANDUM ORDER

Pending before the Court is Plaintiff's Motion for Protective Order. (D.I. 35.). The parties have attempted to reach an agreement on a proposed protective order, but three issues remain in dispute: whether two of Plaintiffs' in-house employees should be granted access to information designated "Attorneys' Eyes Only;" the scope of the **patent prosecution bar** that will be imposed upon Plaintiff's outside counsel; and the scope of discovery that will be allowed. Plaintiff has submitted the pending Motion suggesting full access for its in-house employees, and a restricted **patent prosecution bar.** For the reasons discussed, the Court will grant in part and deny in part Plaintiff's Motion.

### I. Whether Plaintiff's In-House Employees Should Have Access to Information Designated "Attorneys' Eyes Only."

A party's [*3] designation as "in-house counsel" cannot serve to automatically deny that party access to information deemed confidential. *U.S. Steel Corp. v. United States, 730 F.2d 1465, 1467 (Fed. Cir. 1984).* Rather, "[t]he factual circumstances surrounding each individual counsel's activities, association or relationship with a party . . . must govern any concern for inadvertent

or accidental disclosure." Id. Specifically, the court should consider "whether the attorneys are involved in competitive decision making of the company and should examine the risks and safeguards surrounding inadvertent disclosure of the protected information." *Affymetrix, Inc. v. Illumina, Inc., 2005 U.S. Dist. LEXIS 15482, at *6-7 (D. Del., July 28, 2005).*

In this case, one of the R.R. Donnelley employees for whom access is requested, Mr. Pasternak, is the company's Chief Patent Counsel, and the other, Mr. Theophilos, is the President of the Corporate Strategic Initiatives group. Plaintiff claims that both require access in order to be able to effectively "manage outside counsel and advise their client." (D.I. 35 at 4.) However, the risk of inadvertent disclosure cannot be overcome [*4] by the mere contention that access to confidential information is necessary for case management. *Intel Corp. v. VIA Tech., Inc., 198 F.R.D. 525, 528 (N.D. Ca. 2000).* Thus, unless in-house counsel's lack of access would impede a party's ability to litigate through outside counsel, the relevant inquiry remains whether the employee in question "is in a position that creates a high risk of inadvertent disclosure." *Id.; Commissariat A L'Energie Atomique v. Dell Computer Corp., 2004 U.S. Dist. LEXIS 12782 (D. Del. 2004).*

### A. Mr. Pasternek

In the case of R.R. Donnelley's Chief Patent Counsel, Mr. Pasternak, n1 the balance weighs in favor of permitting his access to "Attorneys' Eyes Only" information. Mr. Pasternak has declared the role of Chief Patent Counsel is strictly to "supervise the legal decision-making related to R.R. Donnelley's intellectual property portfolio and its enforcement." (D.I. 35, Ex. C at 2.) Moreoever, this position does not "report directly to any business person with direct responsibility for competitive decision-making." Id.

n1 In its reply brief, Plaintiff informs the Court that Mr. Pasternak has left its employ and that a replacement for him will be named as soon as possible. Provided that the new Chief Patent Counsel has substantively the same role as Mr. Pasternak, he or she will be permitted access pursuant to this Order.

[*5]

Generally, "unrebutted statements made by counsel asserting that he does not participate in competitive decisionmaking, which the court has no reason to doubt, form a reasonable basis to conclude that counsel is isolated from competitive decisionmaking." *Intel, 198*

*F.R.D. at 529.* Accordingly, Mr. Pasternek will be afforded access to the information in question. *Affymetrix, 2005 U.S. Dist. LEXIS 15482, at *7.*

### B. Mr. Theophilos

In contrast to the Chief Patent Counsel, Mr. Theophilos, in his role as President of Corporate Strategic Initiatives, advises R.R. Donnelley "on company-wide business initiatives and opportunities for growth," serving in a supervisory role in "research and development and applications engineering and other strategic initiatives of R.R. Donnelley." (D.I. 35, Ex. B at 2.) This competitive decision-making is the sort of disclosure risk that weighs heavily against granting access. n2 *Motorola, Inc. v. Interdigital Tech. Corp., 1994 U.S. Dist. LEXIS 20714, at *10-11 (D. Del., Dec. 19, 1994).* Furthermore, the only reason stated for allowing Mr. Theophilos access to attorneys' eyes only information is to enable [*6] him to manage outside counsel and advise R.R. Donnelley.

n2 Plaintiff argues that this factor is negated, or at least tempered, by the fact that the parties in this case are not direct competitors in the sale of software for variable digital printing. Plaintiff does not deny, however, that Defendants' trade secrets and other sensitive information could potentially be of value to Plaintiff.

The Court concludes that the reasons offered for access are insufficient to overcome the risk of inadvertent disclosure inherent in permitting access. In the case of Mr. Theophilos, who is routinely engaged in strategic and competitive decision-making, inadvertent disclosure is a sufficiently tangible and specific threat to Defendants' interests to merit the issuance of a protective order under Shingara. Accordingly, the Court will deny Plaintiff's motion with respect to Mr. Theophilos.

## II. The Scope of the Prosecution Bar

Defendants argue that a broad protective order preventing the firm of Plaintiff's [*7] outside counsel from prosecuting any **patents** involving any aspect of "variable digital printing" is necessary to protect Defendants from economic injury. Defendants contend that such a protective order is especially necessary considering certain tactics used by Plaintiff's patent prosecution firm, McCracken & Frank. In particular, Defendants note that McCracken & Frank employ a technical specialist, Riyaz M. Asaria, who, according to Defendants, "poses a significant economic threat all by himself, as both an applicant of pending patent applications and a former RDD

2007 U.S. Dist. LEXIS 424, *

employee with questionable 'outside' credentials." (D.I. 38).

Plaintiff responded that McCracken & Frank will not have access to any sensitive material related to this litigation. Plaintiff further offered to amend its proffered Protective Order to permit access to confidential and attorneys' eyes only information only to "outside counsel employed by the parties with responsibility for this action who have entered an appearance" in the litigation. (D.I. 39 at 2.)

The Court agrees with Plaintiff that the risk to Defendants' economic interests is not such as would justify placing such a broad, and potentially onerous, **patent** [*8] **prosecution bar** on Plaintiffs' counsel. Given Plaintiff's offer to amend the Protective Order to exclude McCracken & Frank from access to any confidential or Attorneys' Eyes Only information, there is no tangible risk of injury to Defendants, aside from the general threat of inadvertent misuse of discovered information.

A prosecution bar issued "without some tangible reason or good cause other than the general threat of inadvertent misuse of discovered materials is the exact type of overly broad and generalized fear rejected in Shingara . . . ." *AFP Advanced Food Prods. LLC v. Snyder's of Hanover Mfg., Inc., 2006 U.S. Dist. 426, at *7 (E.D. Pa., Jan. 9, 2006).* Accordingly, the Court concludes that the balance of the Shingara factors weighs against issuing such a broad protective order.

### III. The Scope Of Discovery

The Court will not limit discovery in this action to "systems and methods for processing imaging data before the data is actually printed by a press, e.g., software for processing or preparing variable printing data," as Defendant requests. (D.I. 38 at 1.) Plaintiff has been forthright regarding the type of discovery it intends to seek and the purposes [*9] for which it plans to seek that discovery. (D.I. 39 at 1-2.) If, during the course of discovery, Defendants encounter inappropriate, irrelevant or overbroad discovery requests from Plaintiff, they can file for an amendment to the Protective Order. Therefore, the Court will issue the protective order with the "software for" and "who have entered an appearance" language included.

NOW THEREFORE, IT IS HEREBY ORDERED that:

1. The parties shall, within **five (5) days** from the date of this Order, submit a Proposed Protective Order employing the "software for" and "who have entered an appearance" language and granting Thomas G. Pasternak access to Attorneys' Eyes Only information.

2. If Plaintiff wishes to substitute a different corporate officer for Thomas G. Pasternak in the Protective Order, Plaintiff shall submit a Declaration within **five (5) days** from the date of this Order affirming that the new officer performs substantially the same duties as Mr. Pasternak and is not involved in competitive decision-making before such substitution may be effected.

January 4, 2007

DATE

Joseph J. Farnan, Jr.

UNITED STATES DISTRICT JUDGE

# EXHIBIT G

LEXSEE 1994 US DIST LEXIS 20714



Warning
As of: May 31, 2007

**MOTOROLA, INC., Plaintiff, vs. INTERDIGITAL TECHNOLOGY CORPORA-TION, Defendant.**

**Civil Action No. 93-488-LON**

**UNITED STATES DISTRICT COURT FOR THE DISTRICT OF DELAWARE**

*1994 U.S. Dist. LEXIS 20714*

**December 19, 1994, Decided**

**CASE SUMMARY:**

**PROCEDURAL POSTURE:** In a consolidation of two actions regarding patent claims, plaintiff moved to amend the protective order prohibiting counsel for defendant patent infringement claimant from using information from the present action in prosecuting future patent applications.

**OVERVIEW:** Plaintiff's declaratory action against defendant patent infringement claimant and defendant's patent infringement action against plaintiff, both arising out of patent claims, were consolidated. Defendant was represented by the same counsel who prosecuted patent applications for the Patent and Trademarks Office. Due to said counsel's dual roles, plaintiff requested that the court amend the protective order to prohibit any of said counsel who received confidential plaintiff information from prosecuting patents for defendant. The court granted the request, so amending the protective order for a term of one year from the conclusion of the subject litigation, and ordered defendant's counsel to set up Chinese walls to prevent patent application counsel from accessing said confidential information. Noting that the key inquiry was whether counsel was in a position creating a high risk of inadvertent disclosure, the court held that defendant's counsel was in such a position, that a remedy was necessary to prevent such disclosure, and that said remedy did not work unnecessary hardship on defendant, though any hardship was created by defendant by hiring said counsel.

**OUTCOME:** The court granted plaintiff's request to amend the protective order. The court amended said protective order to prohibit counsel of defendant patent infringement claimant who had already received information about plaintiff from prosecuting patent applications for defendant for one year after litigation ended, and ordered that Chinese walls be set up at said counsel's firm.

**CORE TERMS:** patent, confidential information, protective order, in-house, prosecute, outside counsel's, prosecuting, disclosure, inadvertent, subject matter, hardship, technology, trial counsel, present litigation, pendency, gained, dual, scientific research, confidential, involvement, competitive, prosecuted, ethical, attorneys of record, civil action, present case, gain access, compartmentalize, disqualified, bright-line

**COUNSEL:** [*1] Jeffrey B. Bove, Esquire of Connolly, Bove, Lodge & Hutz, Wilmington, Delaware; Of Counsel: Gary M. Hoffman, Esquire and Howard N. Feldman, Esquire of Dickstein, Shapiro & Morin, Washington, D.C.; Attorneys for Plaintiff.

Richard K. Herrmann, Esquire of Bayard, Handelman & Murdoch, Wilmington, Delaware; Of Counsel: Robert G. Krupka, Esquire and Linda S. Resh, Esquire of Kirkland & Ellis, Chicago, Illinois; Attorneys for Defendant.

**JUDGES:** Joseph J. Longobardi, D.J.

**OPINION BY:** Joseph J. Longobardi

**OPINION**

1994 U.S. Dist. LEXIS 20714, *

*MEMORANDUM OPINION*

December 19, 1994

Wilmington, Delaware

Joseph J. Longobardi

## I. NATURE AND STAGE OF THE PROCEEDINGS

This suit involves patent claims relating to the mobile telephone industry. On October 8, 1993, Motorola filed a civil action seeking declaratory relief, *Motorola, Inc., v. Interdigital Technology Corporation,* Civil Action ("C.A.") No. 93-488- *LON, 1994 U.S. Dist. LEXIS 20714.* On October 12, 1993 Interdigital Technology Corporation, ("ITC"), filed a patent infringement claim arising out of the same patents, *Interdigital Technology Corporation v. Motorola, Inc.,* C.A. No. 93-5430, in the Eastern District of Pennsylvania. On February 17, 1994, the Eastern District case was [*2] transferred to this Court and designated C.A. No. 94-73. On September 22, 1994, the two actions were consolidated, with 93-488 designated as the lead case.

Presently before the court is Motorola's letter of September 21, 1994, ("Motorola letter") and ITC's response letter of September 23, 1994, regarding the dual roles performed by the firm Dickstein, Shapiro & Morin ("DS&M"). DS&M is lead trial counsel for ITC in this action, and as such is entitled by the protective order to receive Motorola's confidential information. DS&M also prosecutes patents for ITC in the PTO. Motorola seeks to amend the protective order in this case to ensure that no DS&M attorneys who prosecute patent applications for ITC in the patents in suit have access to Motorola's confidential information. On September 28, 1994, both parties argued this issue before the Court.

## II. FACTS

On October 8, 1993, Motorola filed its claim in this present action. Docket Item ("D.I.") 1. One week later, on October 15, 1993, DS&M became attorneys of record for several ITC patent applications, "including four United States continuation or divisional applications which take their parentage from the patents in suit." [*3] D'Amico Affidavit, at 2-3. Prior to October 15, 1993, Kenyon & Kenyon had been attorney of record for these patent applications.

On March 4, 1994, a protective order was entered in this case. D.I. 35. The protective order provided that DS&M was to have access to Motorola's confidential information. [1] The protective order did not specifically deny access to DS&M attorneys who prosecuted patent applications for ITC. The Court accepts as true Mr. D'Amico's representation that to date, none of the DS&M

attorneys who have drafted claim revisions to any of the four continuation/divisional applications had access to Motorola's confidential information while preparing those revisions. D'Amico Affidavit P 6.

> 1　"Confidential Information shall be given, shown, disclosed, made available or communicated only to: . . . (a). . . (i) Partners and associates of Dickstein, Shapiro & Morin, and stenographic, clerical, and/or paralegal employees of those attorneys whose functions require access to Confidential Information."

[*4] Motorola claims that, at the time the protective order was entered, Motorola "reasonably believed" that Kenyon & Kenyon was the law firm responsible for prosecuting any patent applications in this case. Motorola letter at 3. Moreover, Motorola alleges that on at least two occasions, DS&M concealed the fact that they were prosecuting patents for ITC. On February 9, 1994, both parties argued the issue of whether Mr. Bramson, in-house counsel for ITC, should have access to Motorola's confidential information under the protective order. Motorola implies that DS&M should have disclosed its patent prosecution representation at that time. Later, on August 10, 1994, ITC and Motorola entered into a stipulation which enabled two lawyers from Cushman, Darby & Cushman ("CD&C") (co-counsel for ITC) to obtain access to confidential information under the protective order. As a condition for this access, the two CD&C attorneys agreed "to refrain from prosecution of patent applications directed to mobile digital telephone communication equipment and processes during the pendency of this case and until one year after the conclusion of this litigation." D.I. 69. Again, Motorola implies that ITC should [*5] have disclosed its patent prosecution representation at this time.

ITC denies these allegations of improper concealment. Mr. Hoffman of DS&M states, "during the course of the parties' negotiations over Robert Bramson's access to certain Motorola documents, I believe I told counsel for Motorola that DS&M was prosecuting patents for ITC." Hoffman Affidavit at 4, P7. With respect to the CDC stipulation, Mr. Hoffman states that ITC consented to the stipulation in order to save time and expense, not because it agreed with Motorola's position. Hoffman Affidavit at 4-5, P8. [2] Moreover, counsel for ITC seem to have been guided at all times by their belief that no restriction exists on an outside counsel's ability to prosecute patent applications involving the technology related to the patents at issue. D'Amico Affidavit P9; Hoffman Affidavit P3; D.I. 86, at 109 (Mr. Bove stating that in his mind, there was always a clear distinction between inside and outside counsel).

1994 U.S. Dist. LEXIS 20714, *

2   Mr. Hoffman's statement is supported by Mr. Bove's letter of August 8, 1994 to Mr. Hermann of Bayard, Handelman & Murdoch (local counsel for Motorola): "So the record is clear, we are providing this [CD&C] Stipulation at Motorola's request in order to avoid burdening the Court with what we perceive is a improper position taken by Motorola." ITC letter, Exhibit G.

[*6]  For purposes of this opinion, the Court accepts as true the representations by ITC's various attorneys that there was no intentional concealment of DS&M's dual role. Nevertheless, an important issue is now before the Court which the Court is compelled to resolve.

### III. Discussion

In a patent case, maintaining the integrity of the protective order is an especially serious concern. "Courts dress technical information with a heavy cloak of judicial protection because of the threat of serious economic injury to the discloser of scientific information." *Safe Flight Instrument Corp. v. Sundstrand Data Control, Inc., 682 F. Supp. 20 (D. Del. 1988).* Motorola argues that its confidential information will be inadequately protected if DS&M attorneys who have access to the confidential information also prosecute ITC patents. Motorola fears that it is impossible for DS&M attorneys to compartmentalize the knowledge gained from reviewing Motorola's confidential documents and that the confidential knowledge gained will inevitably be used in prosecuting ITC's patent applications. Such use would violate the protective order's prohibition against use of the confidential information for [*7]  any use other than the present litigation.

To supports its contention that there is no prohibition against outside counsel performing these dual roles, ITC relies upon *In re Certain Amorphous Metal Alloys,* No. 337-TA-143 (U.S.I.T.C. 1983)., and its progeny, *In re Certain Magnetic Switches,* 1993 ITC LEXIS 143 (U.S.I.T.C. 1993). *Amorphous Metal* is factually similar to the present case. Two firms were acting as trial counsel for respondents and each firm had access to complainant's confidential information. The first firm assisted their client's in-house patent agents in preparing patent applications. The second firm did not prosecute their client's patent applications, but prosecuted patents for other clients in the same subject matter. *Amorphous Metal* at 1 n.2. Complainant argued that these firms could not possibly respect the protective order and still zealously prosecute the patent applications.

The International Trade Commission allowed both firms to gain access to the confidential information. The Commission based its decision upon the following factors: an in-house/outside counsel distinction, faith in the

attorneys ability to respect the protective order while [*8]  pursuing future patent prosecutions, the lack of a present conflict, and the burden to the clients if the attorney's were disqualified from the litigation. While *Amorphous Metal* formulates and addresses the important issues present in this dispute, the Court declines to reach the Commission's result. To some extent this is due to factual differences between *Amorphous Metals* and the present case, and to some extent the Court simply disagrees with and declines to follow the Commission's reasoning.

"The goals of full disclosure of relevant information and reasonable protection against economic injury 'are in tension and each must be fairly balanced against the other.'" *Safe Flight, 682 F. Supp. at 23* (quoting *E.I. Du Pont de Nemours & Company v. Phillips Petroleum Company, 219 U.S.P.Q. 37 (D. Del. 1982)* (Latchum, J.)). After carefully weighing the relevant factors, which are discussed below, the Court holds that the DS&M attorneys who have received confidential information from Motorola under the protective order shall not prosecute any ITC patent applications relating to the broad subject matter of the patents in suit during the pendency of this case and until one year [*9]  after the conclusion of the present litigation, including appeals.

### A. The In-house/Outside Counsel Distinction

In their letter and at argument, Counsel for ITC present the Court with a general rule: courts split on whether inside counsel may receive confidential information while at the same time continue to prosecute patents, but outside counsel are always able to do both. In *Amorphous Metal,* the Commission gave its reasons for viewing in-house counsel differently from outside counsel:

Traditionally and in the instant investigation, in-house counsel have been excluded from protective orders not because of an inherent untrustworthiness, but because of their close ties with the corporate client. Although in-house counsel serve as legal advisors, their employment often intimately involves them in the management and operation of which they are a part. The two roles of legal advisor and corporate official will often merge; when they do, the efficacy of the protective order is greatly diminished. Furthermore, because they are in regular contact with technical personnel, in-house counsel are in a significantly different position with regard to opportunities for inadvertent [*10]  transmission of confidential information than are outside counsel.

*Amorphous Metal* at 5.

The Court declines to rest its decision upon a bright-line distinction between "in-house" and "outside" counsel. Access to confidential information "should be denied or granted on the basis of each individual counsel's actual activity and relationship with the party represented, without regard to whether a particular counsel is in-house or retained." *U.S. Steel Corp. v. United States, 730 F.2d 1465, 1469 (Fed. Cir. 1984)*. *U.S. Steel* was decided eight months after the Commission's opinion in *Amorphous Metal,* and involved a CIT decision which had relied upon a bright-line distinction to deny in-house counsel access to confidential information. The Federal Circuit held that "status as in-house counsel cannot alone create that probability of serious risk to confidentiality and cannot therefore serve as the sole basis for denial of access." *U.S. Steel, 730 F.2d at 1469.*

The critical inquiry is whether the attorney in question is in a position that creates a high risk of inadvertent disclosure. In discussing access for in-house counsel, courts look for involvement in competitive [*11] decision making or scientific research in determining whether an individual would have a difficult time compartmentalizing his knowledge. *Carpenter Technology Corp. v. Armco, Inc., 132 F.R.D. 24, 27-28 (E.D. Pa. 1990)* (granting access to one individual and denying access to another individual based upon involvement in competitive decision making and scientific research); *U.S. Steel Corp. v. United States, 730 F.2d 1465, 1468 (Fed. Cir. 1984)* (discussing the need to retain outside counsel to gain access to confidential information if in-house counsel is involved in competitive decision making). These are activities which define the scope and emphasis of a client's research and development efforts. The process of prosecuting patent applications also involves decisions of scope and emphasis, as was argued by Mr. Krupka at the September 28 hearing: "They can make the claims read on new products and new directions where we project sales to be most critical. And they can forget about the ones that relate to products that are going to die." D.I. 86, at 126. [3]

> 3  *Amorphous Metal* did not address this aspect of the patent prosecution process. The Commission was satisfied that no danger existed because the outside counsel had no direct contact with the client's technical personnel. *Amorphous Metal* at 6.

[*12] Moreover, this court has implied in the past that prosecution of patents could be grounds for denying access. In *Safe Flight Instrument Corp. v. Sundstrand Data Control Inc., 682 F. Supp. 20 (D. Del. 1988)* (Roth, J.), the Court denied plaintiff's request that defendant's in-house counsel be denied access: "The defendant has represented to this Court that its in-house counsel neither conduct scientific research *nor prosecute patents.* These attorneys simply do not face [plaintiff's president's] prospect of having to distil one's own thoughts from a competitor's thoughts during the course of future . . . work." [4] *Id.* The court also relied upon the fact that defendant's in-house counsel would be segregated to avoid "the possibility of conscious or unconscious abuse of confidential information." *Id. at 23.*

> 4  The Court had previously denied Plaintiff's request that Plaintiff's President be granted access because of the President's heavy involvement in research and decision making. *Safe Flight, 682 F. Supp. at 22.*

[*13] There can be no question that DS&M attorneys who receive confidential information and then later prosecute patents will have to distil and compartmentalize the confidential knowledge they have gained. The inquiry must shift, therefore, to the dangers of inadvertent disclosure and the possible protections that may exist against such disclosure.

**B. Inadvertent Disclosure**

DS&M attorneys are prosecuting patents that are directly at issue in the present litigation. DS&M does not deny that it is theoretically possible for them to abuse the confidential information received, but argue that they understand their ethical duty and will act in conformance with it. The Commission adopted this position in *In re Certain Amorphous Metal Alloys,* No. 337-TA-143, at 3 (U.S.I.T.C. 1983): "In the event that a conflict is posed as a result of knowledge gained under a protective order, we would expect that counsel would refer the matter to other counsel. We therefore believe that it is appropriate to presume that respondents' counsel will respect the integrity of the confidential information released under a protective order."

The Court does not question the ethics of the DS&M attorneys, [*14] nor does it doubt that DS&M attorneys would respond appropriately if a conflict were "posed" to them. The issue is not deliberate disclosure, however, but *inadvertent* disclosure. In *Safe Flight,* the Court denied Plaintiff's President access to defendant's confidential information because of the dangers posed by inadvertent disclosure. "Accepting that [plaintiff's president] is a man of great moral fiber, we nonetheless question his human ability during future years of research to separate the applications he has extrapolated from [defendant's] documents from those he develops from his own ideas." *Safe Flight, 682 F. Supp. at 22.*

"Inadvertence, like the thief-in-the-night, is no respecter of its victims. Inadvertent or accidental disclosure may or may not be predictable. To the extent that it may be predicted, and cannot be adequately forestalled in the design of a protective order, it may be a factor in the access decision." *U.S. Steel Corp., 730 F.2d at 1468.* DS&M is currently prosecuting applications relating to the very patents at issue in this litigation. Attorneys who were to view Motorola's voluminous confidential information and then later prosecute the [*15] patents would have to constantly challenge the origin of every idea, every spark of genius. This would be a sisyphean task, for as soon as one idea would be stamped "untainted", another would come to mind. The level of introspection that would be required is simply too much to expect, no matter how intelligent, dedicated, or ethical the DS&M attorneys may be.

**C. Hardship to Client**

Courts have also considered the hardship to the client if counsel is disqualified or restricted in some manner. *See U.S. Steel Corp. v. United States, 730 F.2d 1465, 1469 (Fed. Cir. 1984)* ("forcing USS to rely on newly retained counsel would create an extreme and unnecessary hardship"); *Safe Flight Instrument Corp. v. Sundstrand Data Control, 682 F. Supp. 20, 22 (D. Del. 1988)* (denying access to Plaintiff's president would not unduly hamper plaintiff ability to assess litigation); *In re Certain Amorphous Metal Alloys,* No. 337-TA-143, at 3 (U.S.I.T.C. 1983) ("disqualification imposes too great a burden on respondents in this case"). ITC has urged the Court to consider the cost it will incur if DS&M's representation is limited in any way. *See* D.I. 86, at 110 (representations by Mr. [*16] Bove regarding ITC's concern regarding costs). ITC's hardship is certainly a factor to be balanced against Motorola's need to protect its confidential information, but it is just one factor.

It is important to note that DS&M has not been prosecuting these particular ITC patent applications for a long period of time. This is not a situation where a client decided that it would be efficient to retain trial counsel who had prosecuted the particular patent in the past. In fact, DS&M did not become attorney of record for these particular patent applications until one week after the filing of Motorola's suit. This creates the appearance of a situation where a client felt it would be efficient to have trial counsel prosecute the patent application in the future. This creates far too great a risk that any efficiency will be to some extent the result of inadvertent use of confidential information.

This conflict was created by ITC after the initiation of litigation, and could have been avoided altogether by ITC. Under these circumstances, the Court will take hardship into account in fashioning its remedy, but does not consider the hardship severe enough to deny relief altogether.

[*17] **D. Timing of the Remedy**

In *Amorphous Metal,* the Commission recognized that a danger existed, but decided that there was not a present conflict, only a mere possibility of future conflict. *Amorphous Metals* at 8. As a result of this conclusion, the Commission chose not to deny access, but rather indicated that it would investigate in the future if the complainant could "show that subject matter directly related to the confidential information appeared in a patent application after release under a protective order." *Amorphous Metal* at 6 n.13. In effect, the Commission promised to remedy the injury after it occurred, while complainant was asking the Commission to prevent the injury from occurring. Given the voluminous information supplied to date by Motorola under the protective order, the ongoing dual role of the DS&M attorneys, and the need to closely guard confidential information in the patent area, this Court believes a conflict exists at the present time and will act to prevent the possibility of injury to Motorola.

**E. Scope of the Remedy**

All DS&M attorneys or employees who have received confidential information from Motorola under the protective order [*18] in this case shall not prosecute any patent application for ITC relating to the broad subject matter of the patents in suit during the pendency of this case and for one year after the conclusion of this litigation, including appeals.

This remedy is broad enough to protect Motorola's confidential information, yet seeks to minimize the hardship to both ITC and DS&M. The prohibition applies only to ITC patent applications that are the subject matter of this litigation, not all ITC patent applications. The prohibition applies only to patent prosecutions for ITC, not for all other clients. [5] Finally, there is a time limit on the prohibition similar to the limit requested by Motorola for the CDC attorneys. *See* D.I. 69.

> 5  The Court presumes that DS&M's ethical duty to its client, ITC, would prevent DS&M from prosecuting patent applications for other clients that are of similar subject matter as ITC's patents in this case. Therefore, Motorola's confidential information should not be threatened by any representation of a third party which DS&M may undertake.

[*19] DS&M has represented that to date, only Mr. D'Amico has worked on patent application matters and then subsequently reviewed confidential information. *See*

D'Amico Affidavit. Because he has had access to Motorola's confidential information, he is subject to the Court's prohibition. Going forward, DS&M shall set up a Chinese Wall to separate the ITC patent application attorneys from the Motorola litigation attorneys who have received confidential information. This shall ensure that, with the exception of Mr. D'Amico, ITC shall continue to receive the same services from the same DS&M attorneys that ITC has received in the past.

### ORDER

NOW, THEREFORE, for all the reasons stated by the Court in its Memorandum Opinion of December 19, 1994, IT IS ORDERED that:

1. The protective order, Docket Item 35, shall be amended to provide that any Dickstein, Shapiro & Morin ("DS&M") attorneys who have received confidential information from Motorola under the protective order shall not prosecute any InterDigital Technology Corporation patent applications relating to the broad subject matter of the patents in suit during the pendency of this case and until one year after the conclusion [*20] of the present litigation, including appeals.

2. DS&M shall set up a Chinese wall to ensure that the Court's order is effectively enforced.

Joseph J. Longobardi, D.J.

12/19/94

# EXHIBIT H

LEXSEE 2004 US DIST LEXIS 12782



Caution
As of: May 31, 2007

**COMMISSARIAT A L'ENERGIE ATOMIQUE, Plaintiff, v. DELL COMPUTER CORPORATION; SAMSUNG ELECTRONICS CO., LTD.; SAMSUNG ELECTRONICS AMERICA, INC.; SAMSUNG ELECTRONICS CANADA, INC.; SAMSUNG INTERNATIONAL, INC.; SUN MICROSYSTEMS, INC.; and VIEWSONIC CORPORATION, Defendants.**

**Civil Action No. 03-484-KAJ**

**UNITED STATES DISTRICT COURT FOR THE DISTRICT OF DELAWARE**

*2004 U.S. Dist. LEXIS 12782*

**May 25, 2004, Decided**

**SUBSEQUENT HISTORY:** Motion granted by, Sub nomine at *Commissariat a L'Energie Atomique v. Samsung Elecs. Co., 2006 U.S. Dist. LEXIS 27098 (D. Del., Apr. 18, 2006)*

**PRIOR HISTORY:** *Commissariat a L'Energie Atomique v. Dell Computer Corp., 2004 U.S. Dist. LEXIS 9107 (D. Del., May 13, 2004)*

**DISPOSITION:** [*1] Plaintiff's motion for expedited entry of protective order denied.

**CASE SUMMARY:**

**PROCEDURAL POSTURE:** Plaintiff corporation filed a motion for an expedited entry of protective order in its patent infringement action against defendant corporations. Plaintiff alleged that defendants were infringing two of its patents, which claimed certain liquid crystal display (LCD) technology. Both parties sought protective orders but reached an impasse in their negotiations over the scope of the protective order that should be entered.

**OVERVIEW:** The parties disagreed over whether three of the attorneys who were on plaintiff's trial team and also prosecuted patents for plaintiff should have access to discovery designated as "highly confidential." Plaintiff argued that its attorneys needed access to all discovery in order to continue to represent it effectively. Defendants sought entry of a protective order that barred plaintiff's

attorneys from accessing defendants' highly confidential information. Defendants argued that giving plaintiff's attorneys access created an unacceptable risk of inadvertent disclosure or misuse of their highly confidential research, technical, and proprietary information, especially because plaintiff's attorneys prosecuted patents for one of defendants' major competitors. The court was persuaded that plaintiff's attorneys should not have unfettered access to defendants' highly confidential information. There was a substantial risk of inadvertent disclosure of such information, given that plaintiff's attorneys were prosecuting and would continue to prosecute patents in the field of LCD technology, including patents for defendants' competitors.

**OUTCOME:** The court denied plaintiff's motion and adopted a portion of defendants' draft stipulated protective order.

**CORE TERMS:** patent, confidential information, technology, prosecuting, prosecute, protective order, subject matter, confidential, discovery, inadvertent, disclosure, one year, liquid, competitive, competitors, technical information, patent infringement, high risk, expedited, patents-in-suit, non-testifying, consultants, crystal, birefringence, designated, supervise, colleagues, team

**COUNSEL:** For COMMISSARIAT -A L'ENERGIE ATOMIQUE, plaintiff: Richard D. Kirk, Morris, James, Hitchens & Williams, Wilmington, DE.

For DELL COMPUTER CORP, SAMSUNG ELEC-
TRONICS CO., LTD., SAMSUNG ELECTRONICS
AMERICA INC., SAMSUNG ELECTRONICS CAN-
ADA INC., SAMSUNG INTERNATIONAL INC., SUN
MICROSYSTEMS INC, VIEWSONIC CORP., defen-
dants: Richard L. Horwitz, Potter Anderson & Corroon,
LLP, Wilmington, DE.

For FUJITSU DISPLAY TECHNOLOGIES CORPO-
RATION, defendant: Robert H. Richards, III, Richards,
Layton & Finger, Wilmington, DE.

For TOTTORI SANYO ELECTRIC CO. LTD., defen-
dant: M. Duncan Grant, Pepper Hamilton LLP, Wilming-
ton, DE.

For SHARP CORPORATION, defendant: Josy W. Ing-
ersoll, Young, Conaway, Stargatt & Taylor, Wilmington,
DE.

For SUN MICROSYSTEMS INC, counter-claimant:
Richard L. Horwitz, Potter Anderson & Corroon, LLP,
Wilmington, DE.

For COMMISSARIAT [*2] -A L' ENERGIE ATOMI-
QUE, counter-defendant: Richard D. Kirk, Morris,
James, Hitchens & Williams, Wilmington, DE.

JUDGES: Kent A. Jordan, UNITED STATES DIS-
TRICT JUDGE.

OPINION BY: Kent A. Jordan

OPINION:

### MEMORANDUM ORDER

This is a patent infringement case. Jurisdiction is
proper under 28 U.S.C. § 1331. Presently before me is a
Motion for Expedited Entry of Protective Order filed, on
April 13, 2004, by plaintiff Commissariat a L'Energie
Atomique ("CEA"). (Docket Item ["D.I."] 172; the "Mo-
tion".) For the reasons that follow, CEA's Motion will be
denied.

CEA alleges that Defendants n1 are infringing its
U.S. Patent No. 4,701,028 (issued October 20, 1987)
("the '028 patent") and U.S. Patent No. 4,889,412 (issued
December 26, 1989) ("the '412 patent"), both of which
claim certain liquid crystal display ("LCD") technology.
(See D.I. 1.) CEA filed a motion for a preliminary in-
junction against Samsung on October 28, 2003 (D.I. 58,
59) and, on March 3, 2004, I granted CEA's request for
limited expedited discovery in connection with that mo-
tion (D.I. 138). Samsung provided some responsive in-
formation to CEA's expedited discovery requests, and

both sides want some form [*3] of protective order in
place to protect confidential information, but CEA and
the Defendants have reached an impasse in their negotia-
tions over the scope of the protective order that should be
entered. n2 (See D.I. 173 at 1; D.I. 199 at 2.)

n1 On May 13, 2004, I issued a Memoran-
dum Order granting in part and denying in part
CEA's Motions to Consolidate this case with sev-
eral others. (D.I. 209.) Any reference herein to
the "Defendants" means the module manufactur-
ers against whom this action is now proceeding,
namely, Samsung Electronics ("Samsung"), Fu-
jitsu Display Technologies Corporation ("Fu-
jitsu"), and Tottori Sanyo Electric Co., Ltd.
("Tottori Sanyo"). (Id. at 8.) The Defendants have
each submitted formal or letter briefing in re-
sponse to CEA's Motion. (See D.I. 182, 183, 196,
198, 199.)

n2 The Defendants, recognizing that these
protective order issues will impact them equally
as this case moves forward, share a common po-
sition in response to CEA's proposed protective
order. (See D.I. 182 at 1 n.2; D.I. 183; D.I. 196.)

[*4]

The parties disagree over whether three of the attor-
neys who are on CEA's trial team and also prosecute
patents for CEA - namely, Song Jung, Rebecca Rudich,
and Yonggyu Kim (collectively referred to as "CEA's
patent prosecution attorneys") - should have access to
discovery designated as "highly confidential." (D.I. 173
at 1; D.I. 198 at 3; D.I. 199 at 2.) CEA argues that Mr.
Jung, CEA's lead attorney in this case, and his col-
leagues, Ms. Rudich and Mr. Kim, need access to all
discovery in order to continue to represent CEA effec-
tively. n3 (D.I. 173 at 2, 12.) The Defendants are seeking
entry of a protective order that bars CEA's patent attor-
neys from accessing the Defendants' highly confidential
information. (D.I. 199 at 9-10.) The Defendants argue
that giving CEA's patent prosecution attorneys access
creates an unacceptable risk of inadvertent disclosure or
misuse of their highly confidential research, technical,
and proprietary information, especially since Mr. Jung
and his colleagues prosecute patents for LG.Philips LCD
Co., Ltd. ("LG.Philips"), one of the Defendants' major
competitors. (D.I. 198 at 4; D.I. 199 at 3.) CEA responds
that, just because their patent prosecution attorneys [*5]
render legal advice with respect to patent prosecution,
does not necessarily mean that they are involved in com-
petitive decision making and thus warrant denying them
access to highly confidential information. (D.I. 203 at 1.)
The Defendants say, in the alternative, that if the patent

prosecution attorneys are given access to confidential information, they should be barred from prosecuting patents in the LCD field for a minimum of one year. (D.I. 198 at 3; D.I. 199 at 21.) CEA asserts that any restriction on those attorneys' patent prosecution should be more narrow, and, specifically, "should be limited to the VA-mode birefringence compensation technology at issue or, at most, VA-mode LCD technology generally." (*Id.* at 1-2.)

> n3 CEA also argues that it need not identify its non-testifying experts and consultants who may have access to confidential information prior to the end of this case. (D.I. 173 at 3.) I heard argument from CEA and the Defendants on this point during an April 21, 2004 teleconference, and ruled that, if CEA wanted to show "confidential and what's asserted to be highly sensitive information" to non-testifying experts and consultants, CEA had to "tell [the Defendants] who they are before ... divulging it." (D.I. 197 at 16:5-11.)

[*6]

*Federal Rule of Civil Procedure 26(c)* provides that, "for good cause shown, ... the court ... may make any order which justice requires to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense, including ... that a trade secret or other confidential research, development, or commercial information not be revealed or be revealed only in a designated way ...." *Fed. R. Civ. P. 26(c)(7)* (2004). This court has routinely recognized the importance of protecting technical information, particularly in patent cases. *See Motorola, Inc. v. Interdigital Tech. Corp., 1994 U.S. Dist. LEXIS 20714 at *6 (D. Del. Dec. 19, 1994)* ("In a patent case, maintaining the integrity of the protective order is an especially serious concern."); *Safe Flight Instrument Corp. v. Sundstrand Data Control, Inc., 682 F. Supp. 20, 22 (D. Del 1988)* ("Courts dress technical information with a heavy cloak of judicial protection because of the threat of serious economic injury to the discloser of scientific information."). Access to confidential information "should be [*7] denied or granted on the basis of each individual counsel's actual activity and relationship with the party represented ... " *U.S. Steel Corp. v. U.S., 730 F.2d 1465, 1469 (Fed. Cir. 1984).* "The critical inquiry is whether the attorney in question is in a position that creates a high risk of inadvertent disclosure" of highly confidential information. *Motorola, 1994 U.S. Dist. LEXIS 20714 at *10.*

I think it is appropriate to deny CEA's patent prosecution attorneys access to the Defendants' highly confidential information or, if they are permitted to have access to such information, to prevent them from prosecut-

ing patents in the field of LCD technology for one year after the conclusion of this litigation, including appeals. Central to my determination is the Defendants' assertion, unrebutted by CEA, that CEA's patent prosecution attorneys - and Mr. Jung, in particular - prosecute patents in the field of LCD technology for LG.Philips, one of the Defendants' major competitors. (D.I. 198 at 3; D.I. 199 at 4.) I disagree with CEA's assertion that those attorneys' activities do not rise to the level of "competitive decision making" that is necessary to [*8] restrict their access to highly confidential information. (D.I. 173 at 2 (citing *U.S. Steel, 730 F.2d at 1468*).) Prosecuting patent applications "involves decisions of scope and emphasis" that implicate competitive decision making, as claims may be drafted to "read on new products and new directions where [a party] project[s] sales to be most critical." *Motorola, 1994 U.S. Dist. LEXIS 20714 at *11.* In this case, as in *Motorola,* "there can be no question" that CEA attorneys who receive highly confidential information and then later prosecute patents in the field of LCD technology "will have to distill and compartmentalize the confidential knowledge they have gained." *1994 U.S. Dist. LEXIS 20714 at *12.* This creates a high risk of inadvertent disclosure of the Defendants' highly confidential information. *See Motorola, 1994 U.S. Dist. LEXIS 20714 at *13.* CEA's patent prosecution attorneys are currently prosecuting patent applications related to the subject matter of the patents-in-suit. (*See* D.I. 198, Ex. A (U.S. Patent Application No. 10/437,982 entitled "Liquid Crystal Display Device With Wide Viewing Angle, [*9] " listing Mr. Jung as the corresponding attorney).) Those CEA patent prosecution attorneys who, if given access,

> were to view [the Defendants'] voluminous confidential information and then later prosecute the patents would have to constantly challenge the origin of every idea, every spark of genius. This would be a sisyphean task, for as soon as one idea would be stamped "untainted", another would come to mind. The level of introspection that would be required is simply too much to expect, no matter how intelligent, dedicated, or ethical the ... attorneys may be.

*Motorola, 1994 U.S. Dist. LEXIS at *14-*15.* In sum, I am persuaded that CEA's patent prosecution attorneys should not have unfettered access to the Defendants' highly confidential information. There is a substantial risk of inadvertent disclosure of such information, given that CEA's patent attorneys are prosecuting and will con-

tinue to prosecute patents in the field of LCD technology, including patents for the Defendants' competitors.

As previously noted, CEA argues that there are many different categories of LCD technology, n4 and that, because the subject matter of the patents-in-suit pertains to the [*10] field of VA-mode birefringence compensation, any restriction on its patent prosecution attorneys' prosecution activities should be limited to that narrow area. (D.I. 203 at 2.) However, I will not pick and choose which categories of LCD technology are fair game for CEA's patent prosecution attorneys and those which are not. If CEA's patent prosecution attorneys have access to the Defendant's highly confidential information, they will be barred from prosecuting patents "relating to the broad subject matter of the patents in suit," that is, LCD technology, for one year after the conclusion of this lawsuit, including all appeals. n5 *See Motorola, 1994 U.S. Dist. LEXIS 20714 at \*8-\*9.*

n4 *E.g.,* vertical alignment ("VA"), in plane switching, twisted nematic, and ferroelectric liquid crystal LCD technologies.

n5 CEA also argues that it will be unduly prejudiced in prosecuting this case if its patent prosecution attorneys are not allowed access to the Defendants' highly confidential information. (D.I. 173 at 12-13.) While this is "a factor to be balanced against [the Defendants'] need to protect [their] confidential information ... it is just one factor." *Motorola, 1994 U.S. Dist. LEXIS 20714 at \*16.* As the Defendants point out, CEA fails to explain why Mr. Jung cannot continue to direct this litigation without access to the Defendants' highly confidential information, or why the many other attorneys on CEA's litigation team are incapable of handling this case as it moves forward. (D.I. 198 at 11.)

[*11]

If CEA wants Mr. Jung, Ms. Rudich, and Mr. Kim to continue in their current roles as litigation counsel, and to have access to the Defendants' highly confidential information, then either these three individuals, who also prosecute patents in the field of LCD technology, must be barred from having access to the Defendants' highly

confidential information, or they must be prohibited from prosecuting patents in the field of LCD technology for one year following the conclusion of this litigation, including all appeals. This, I think, strikes the proper balance between "the goals of full disclosure of relevant information and reasonable protection against economic injury" that are implicated in patent infringement cases generally, and certainly in this one. *Safe Flight, 682 F. Supp. at 23.*

For these reasons, I will adopt the Defendant's proposed section 4.1(a) of the draft Stipulated Protective Order submitted as Exhibit D to Docket Item 174. n6 The parties are ORDERED to submit a Stipulated Protective Order containing this language to the court within five days of the date of this Memorandum Order.

n6 This language provides, in relevant part, that "attorneys shall not be provided access to HIGHLY SENSITIVE CONFIDENTIAL information if such attorneys ... currently participate in, direct or supervise any patent prosecution activity involving (i) LCD technology or (ii) technology directed to increasing the wide-angle viewing of LCD products (collectively, "the Subject Matter"). During the pendency of this litigation and for one year after the full and final conclusion of this litigation, including all appeals, those attorneys ... who are provided access to HIGHLY SENSITIVE CONFIDENTIAL materials covered by this order will not participate in, direct or supervise any patent prosecution activity ... involving the Subject Matter ...." (D.I. 174, Ex. D at 5.) This provision gives CEA the option of deciding whether to give their patent prosecution attorneys access to the Defendants' highly confidential information, while also giving effect to the restrictions described herein, if CEA does decide to continue using their patent prosecution attorneys as litigation counsel in this case.

[*12]

Kent A. Jordan

UNITED STATES DISTRICT JUDGE

May 25, 2004
Wilmington, Delaware