IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| CORDANCE CORPORATION, | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | Civil Action No. 06-491-MPT |
| | : | |
| AMAZON.COM, INC., | : | |
| Defendant. | : | |

**MEMORANDUM ORDER**

**1. INTRODUCTION**

In this patent matter, Cordance Corporation ("Cordance") alleges that Amazon.com, Inc. ("Amazon") infringes U.S. Patent No. 6,757,710 ("the '710 patent"). Amazon counterclaimed for declaratory judgment that Cordance infringes its U.S. Patent No. 6,269,369 ("the '369 patent"). Cordance moved to dismiss the counterclaim, for lack of subject matter jurisdiction on the basis of no actual controversy. This memorandum order addresses whether there is an actual case or controversy within the meaning of the Declaratory Judgment Act, 28 U.S.C. § 2201(a).

**2. BACKGROUND**

The parties develop software and own patents pertaining to on-line internet based transaction infrastructures.[1] Cordance claims to have invented and

---

[1] Amazon.com Inc. is an internet retailer. Cordance is a software company engaged in the development and commercialization of digital addressing and automated data interchange technology.

commercialized a general purpose identity platform and communications protocol, XRI/XDI, that resellers[2] use to unify contact information on the internet. This technology allows internet users to simplify the process of entering personal information into a website by creating an individual or group "i-name" account.[3] Cordance claims to be the original innovator of XRI technology, and it provides registration services under contract to XDI.org, a not-for-profit industry oversight organization. Cordance also provides technical assistance for its XRI/XDI product and is paid for registering I-brokers who, in turn, profit by signing up individuals and organizations for the service. On June 20, 2006, Cordance and NeuStar, Inc. started the i-name Global Registry Service ("GRS") which provides users with a single permanent unified internet communication address. Cordance acts as corporate administrator and NeuStar supplies i-name communications services. The '710 patent covers i-name technology.

Amazon provides an interactive website that sells goods either directly or through third-party vendors. Amazon's trademarked "1-Click®" purchasing interface is featured throughout its website. Cordance claims that this interface infringes the '710 patent. Amazon's counterclaim alleges that Cordance's promotion of i-names, including its "Contact Service" or "Unified Address Book" ("UAB")[4] services infringe the '369 patent. That patent, entitled "Networked Personal Contact Manager" covers software which links users and their respective personal "address book" information.

---

[2] Resellers include: NeuStar, Inc., 1id.com LLC, 2idi Corp., EnCira Inc., and EZibroker.com.

[3] An "i-name" is a digital address namespace that provides a privacy-protecting alternative to disclosing email addresses or telephone numbers.

[4] Cordance denies selling UAB services and maintains that it only provided technical assistance to CeLiberate, a software company who is developing that service.

2

## 3. LEGAL STANDARD

"A party seeking to base jurisdiction on the Declaratory Judgment Act bears the burden of proving that the facts alleged, 'under all the circumstances, show that there is a substantial controversy, between the parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.'"[5] Prior to *MedImmune*, declaratory judgment actions required that there be "both (1) an explicit threat or other action by the patentee, which creates a reasonable apprehension on the part of the declaratory plaintiff that it will face an infringement suit, and (2) present activity which could constitute infringement or concrete steps taken with the intent to conduct such activity."[6] However, "[t]he Supreme Court's opinion in *MedImmune* represents a rejection of [the] reasonable apprehension of suit test."[7] Jurisdiction over a declaratory judgment action requires:

> the dispute be definite and concrete, touching the legal relations of parties having adverse legal interests; and that it be real and substantial and admit of specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts. Basically, the question in each case is whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory

---

[5] *Benitec Austl., Ltd. v. Nucleonics, Inc.*, 495 F.3d 1340, 1343 (Fed. Cir. 2007) (quoting *MedImmune, Inc., v. Genentech, Inc.*, 127 S.Ct. 764, 771 (2007)).

[6] *BP Chems. Ltd. v. Union Carbide Corp.*, 4 F.3d 975, 978 (Fed. Cir. 1993).

[7] *SanDisk Corp. v. STMicroelectronics, Inc.*, 480 F.3d 1372, 1380 (Fed. Cir. 2007). "We need not define the outer boundaries of declaratory judgment jurisdiction, which will depend on the application of the principles of declaratory judgment jurisdiction to the facts and circumstances of each case. We hold only that where a patentee asserts rights under a patent based on certain identified ongoing or planned activity of another party, and where that party contends that it has the right to engage in the accused activity without license, an Article III case or controversy will arise and the party need not risk a suit for infringement by engaging in the identified activity before seeking a declaration of its legal rights." *Id.* at 1381.

3

judgment.[8]

Evidence of marketing products or services and entering into licensing agreements supports an actual controversy as they are "directed toward making, selling or using subject to an infringement charge or making meaningful preparation for such activities."[9] In addition, "[i]f . . . a party has actually been charged with infringement of the patent, there is, *necessarily*, a case or controversy adequate to support jurisdiction" at that time.[10] The burden is on the party claiming declaratory judgment jurisdiction to establish that jurisdiction existed when the action was filed and has since continued.[11] Once the initial burden has been met, absent contrary facts, jurisdiction remains.[12]

## 4. POSITIONS OF THE PARTIES

Cordance challenges the legal sufficiency of Amazon's fourth counterclaim which seeks a declaratory judgment of infringement of Amazon's '369 patent. Cordance argues that Amazon fails to show an actual controversy, and the counterclaim must be dismissed for lack of jurisdiction.

Cordance contends that Amazon failed to satisfy the two-pronged test; the alleged infringing acts are immediate and real, which place one in reasonable

---

[8] *MedImmune, Inc., v. Genentech, Inc.*, 127 S. Ct. 764, 771 (2007) (internal citation and quotations omitted).

[9] *Interdigital Tech. Corp. v. OKI Am., Inc.*, 845 F. Supp. 276, 286 (E.D. Pa. 1994).

[10] *Cardinal Chem. Co. v. Morton Int'l, Inc.*, 508 U.S. 83, 96 (1993) (emphasis in original).

[11] *Benitec Austl., Ltd.*, 495 F.3d at 1344.

[12] *Cardinal Chem. Co.*, 508 U.S. at 98.

apprehension of suit by the patentee.[13]  Cordance argues that it is not actively promoting or developing an address book product and there is no UAB service currently on the market; therefore, there is no infringing act that can be "immediate" and "real."[14]  Cordance denies any reasonable apprehension of litigation because Amazon failed to advise of alleged infringement, or threatened litigation, thus there was no refusal to desist.  Cordance purports that those elements are necessary for a case and controversy.

Cordance also maintains that the counterclaim is vague and fails to state a claim upon which relief may be granted.  It argues that Amazon fails to sufficiently identify which products allegedly infringe and to adequately plead inducement of infringement.  According to Cordance, it is only involved in i-name technology and not the Contract or UAB services.  Further, because Amazon does not identify any alleged direct infringer, Cordance posits that neither inducement nor contributory infringement exist.

Finally, Cordance proposes that the court in its discretion decline to exercise

---

[13] Cordance relies on the legal standard in *Lang v. Pacific Marine Supply Co.*, 895 F.2d 761, 764 (Fed. Cir. 1990).  It distinguishes *Lang* from *MedImmune*, by asserting that *Lang* applies to declaratory judgment of infringement while *MedImmune* is limited to declaratory judgment of non-infringement.  *Lang* held that "[t]o meet the controversy requirement in a declaratory judgment suit by a patentee against an alleged future infringer, two elements must be present:  (1) the defendant must be engaged in an activity directed toward making, selling, or using subject to an infringement charge under 35 U.S.C. § 271(a) (1982), or be making meaningful preparation for such activity; and (2) acts of the defendant must indicate a refusal to change the course of its actions in the face of acts by the patentee sufficient to create a reasonable apprehension that a suit will be forthcoming." *Lang*, 895 F.2d at 764.  In *MedImmune*, the Supreme Court determined that a party seeking jurisdiction through the Declaratory Judgment Act has the burden "under all the circumstances, [to] show that there is a substantial controversy, between the parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *MedImmune*, 127 S. Ct. at 771.

[14] *Lang*, 895 F.2d 761 (Fed. Cir. 1990) (finding that the immediacy prong of the actual controversy requirement was not met when an infringing hull was not finished until at least nine months after the declaratory judgment action as initiated.  The boat was neither marketed, sold nor ready for release at the time of filing of the complaint).

jurisdiction over the declaratory judgment action. It maintains that no useful purpose would be achieved by allowing Amazon's premature counterclaim, since the UAB service has not been released, or might substantially change prior to release. It purports that Amazon's claims are retaliatory.

Amazon contends that its counterclaim meets the controversy requirement, and would eliminate future uncertainty. It notes that the counterclaim complies with Fed. R. Civ. P. 8(a), sufficiently identifies products accused of infringement, and adequately states a claim of indirect patent infringement .

Amazon maintains that a real and immediate controversy exists between the parties, particularly since Cordance's offensive claim and Amazon's counterclaim concern the same subject matter, i-name technology. Amazon's counterclaim alleges that the accused products and services "will soon be made available to the public, if not already so available," and accuses Cordance of "standardizing, promoting, commercializing, and/or operating the accused products and services."[15] Because Cordance has created and marketed a standard covering the accused i-name technology, Amazon posits that the acts of standardization constitute infringement.[16] It also contends that selling i-name services through I-brokers is evidence of indirect infringement.

## 5. DISCUSSION

To succeed in its motion to dismiss, Cordance must show that there is a lack of a

---

[15] D.I. 11.

[16] See Sony Elecs. Inc., v. Soundview Techs., Inc., 157 F. Supp. 2d 190 (D. Conn. 2001) (where promotion of an industry standard was found to support a claim of inducement).

substantial controversy and that Amazon does not have an adverse legal interest of "sufficient immediacy and reality to warrant the issuance of a declaratory judgment."[17] As noted previously herein, the Supreme Court rejected the element of reasonable apprehension; therefore, neither reasonable apprehension of being sued nor threatened legal action are required.

The evidence shows that Cordance advertised its venture with CeLiberate and promoted the expected introduction of UAB services. Although Cordance removed the UAB reference from its website, the basic architecture and fundamental support for i-name's link to a secure source of personal information on the internet continues. Assuming Cordance only provided technical assistance for UAB services with CeLiberate introducing the allegedly infringing product, those facts are sufficient to support Amazon's declaratory judgment action. In addition, Cordance's other activities support an actual case and controversy. It developed the architecture by which other companies are able to allegedly infringe Amazon's patent. It created and standardized the XRI/XDI protocol and partnered in creating the XDI.org registry. Cordance promotes i-name technology and receives licensing fees for registering I-brokers, who in turn, enlist individual and corporate users for the i-name technology. Amazon's counterclaim alleges that Cordance presently engages in conduct or has taken concrete steps intending to engage in activities, which would infringe the '369 patent.

A declaratory judgment action is appropriate when "(1) the judgment will serve a useful purpose in clarifying and settling the legal relations in issue, and (2) when it will

---

[17] *MedImmune*, 127 S. Ct. at 771.

7

terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding."[18] By exercising jurisdiction, the parties' rights and obligations will be resolved concerning the development and future deployment of the accused related products and services.

Cordance argues that Amazon's pleading fails because it incorrectly identifies UAB as an infringing product or service. Under the Fed. R. Civ. P. 8(a)(2), a plaintiff is required only to make "a short and plain statement of the claim showing that the pleader is entitled to relief." Therefore, Amazon need not identify, in its counterclaim, specific products by name, so long as they are sufficiently described in some way.[19] Amazon describes Cordance services with adequate specificity.

Cordance maintains that since it removed all UAB references from its website, a controversy between the parties no longer exists. Once a controversy is shown, subsequent events may divest the trial court of jurisdiction; however, no information regarding cessation of other services that may be directly or indirectly infringing has been provided.

## 6. CONCLUSION

For the reasons contained herein, Cordance's motion to dismiss Amazon's counterclaim four (D.I. 27) is DENIED.

November 20, 2007
Wilmington, Delaware

Honorable Mary Pat Thynge
U.S. Magistrate Judge

---

[18] *Minn. Mining and Mfg. Co. v. Norton Co.*, 929 F.2d 670, 672-73 (Fed. Cir. 1991).

[19] *Interdigital Tech. Corp. v. OKI Am., Inc.*, 845 F. Supp. 276, 283 (E.D. Pa. 1994).