

**David E. Moore**
Attorney at Law
dmoore@potteranderson.com
302 984-6147 Direct Phone
302 658-1192 Fax

1313 North Market Street
P.O. Box 951
Wilmington, DE 19899-0951
302 984 6000

www.potteranderson.com

May 21, 2008

**VIA ELECTRONIC FILING**

The Honorable Mary Pat Thynge
United States Magistrate Judge
United States District Court
  for the District of Delaware
844 N. King Street
Wilmington, Delaware 19801

       Re:    *Cordance Corporation v. Amazon.com, Inc.*, C.A. No. 06-491-MPT

Dear Judge Thynge:

      The dispute raised by this letter arises out of Cordance's refusal to run certain search terms against its set of electronic data to locate relevant information. The search terms at issue are XRI, XDI, and i-names (and some non-substantive variations of i-names). XRI and XDI are the names of the technology upon which Cordance's i-names product/service is based.

      These terms are directed at returning relevant documents for two primary reasons. First, Cordance has for years contended that this technology implements the patents-in-suit. Indeed, Cordance has licensed its asserted patents to a standards setting body and expressly stated in that license that its asserted patents are "embodied … in the the XRI specifications published by the OASIS XRI Technical Committee, and the XDI specifications published by the OASIS XDI Technical Committee." *See* Exhibit A (¶ 2.2). Given that XRI and XDI are the foundation of i-names, and that this technology is Cordance's purported implementation of the asserted patents, documents regarding such technology is likely to reveal information that is relevant to Cordance's asserted patent infringement claims. For example documents by Cordance or its inventors about the XRI/XDI functionality contemporaneous with assertions that the patents are essential to practice the standard are relevant to show the scope of prior art, marking, and their respective value and other damages issues, including Cordance's licensing practices.

      Second, the terms are directly related to Amazon.com's counterclaim for a declaratory judgment of patent infringement based on Cordance's development, use, and promotion of i-names in conjunction with several i-services related to identity and address management. Amazon.com has identified these services in its counterclaim and in its infringement contentions. *See* Exhibits B (¶ 39) and C (pp. 5-7). This Court recognized in its Order denying Cordance's motion to dismiss Amazon.com's counterclaim that Cordance's development of the i-names architecture, Cordance's creation and standardization of the XRI/DI protocol, Cordance's

The Honorable Mary Pat Thynge
May 21, 2008
Page 2

partnership in creating the XDI.org registry, and Cordance's promotion of the i-name technology are all highly relevant to Amazon.com's counterclaim. D.I. 82, Memorandum Order at 7. To locate this relevant information, Cordance must use search terms "XDI," "XRI," and "i-names" against its data.

Confoundingly, Cordance claims that XRI, XDI, and i-names are not relevant or are just of marginal relevance and therefore do not warrant the burden of reviewing all such documents for production. Yet, Cordance requested that Amazon.com, when searching for relevant and responsive electronic information, use these very search terms. *See* Exhibit D. Additionally in its document request, Cordance called for Amazon.com to produce all documents concerning XRI, XDI, and i-names. *See* Exhibit E (Request No. 25).

Amazon.com first requested Cordance run the XDI and i-names terms against Cordance's data on June, 1 2007. *See* Exhibit F. Cordance refused to run the search terms at that time arguing that the searches are only relevant to Amazon.com's counterclaim and since the Court had not decided whether Amazon.com's counterclaim should be dismissed, the searches were premature. *See* Exhibit G. The Court denied Cordance's motion to dismiss Amazon.com's counterclaim six months ago, and Cordance still refuses to search for and provide such documents.

Cordance's position is untenable. On the one hand, it demands that Amazon.com run XDI, XRI, and i-names against its own data set and produce all documents concerning such technology, and on the other hand, it refuses to take reciprocal action.

Cordance has acknowledged the relevance of this material, is the plaintiff in this case, and must provide this relevant material.

Respectfully,

*/s/ David E. Moore*

David E. Moore

DEM/nmt/865824/30763
Enclosures
cc:    Clerk of the Court (via hand delivery)
       Steven J. Balick (via electronic mail)
       Robert M. Abrahamsen (via electronic mail)

# EXHIBIT

# A

**Infrastructure for accountable networks**

**Home**

**About XDI.ORG**
FAQ
History
Organizing Principles
Trustees
Licenses and Agreements
Privacy Policy
Contact Us

**EGS Program**
Introduction to EGS
EGS Terms of Service
XNS Name Conversion
Dispute Resolution
I-Name Policies

**Technical Protocols**
OASIS XRI Specs
OASIS XDI Specs

**Community**
Participants
Mailing Lists
Press and Events

**Tutorials**
I-Names Explained
XRI & XDI Explained

**XDI.ORG Wiki**

**XDI.ORG GSS Wiki**

# XDI.ORG Intellectual Propery Rights Agreement

- **This Version:**
  http://www.xdi.org/docref/legal/xdi-org-ipr-agreement-v2-2004-10-20.html
- **Latest Version:**
  http://www.xdi.org/docref/legal/xdi-org-ipr-agreement.html
- **Previous Versions:**
  http://www.xdi.org/docref/legal/xdi-org-ipr-agreement-v1-2004-06-08.html

## 1. Parties.

THIS AGREEMENT, dated September 13, 2004 (the "Effective Date") is made by and between OneName Corporation, a Washington corporation dba Cordance ("CORDANCE"), with its principal place of business in Seattle, Washington, and XDI.ORG, a nonprofit corporation ("XDI.ORG").

## 2. Background.

2.1 CORDANCE has the exclusive right to certain technology (the "Patent Rights"), which are the subject of earlier agreements between the Parties. This Agreement supersedes all prior agreements, including the XNS™ INTELLECTUAL PROPERTY RIGHTS AGREEMENT dated July 9, 2002 between OneName Corporation and XNS Public Trust Organization and the XDI.ORG INTELLECTUAL PROPERTY RIGHTS AGREEMENT dated June 8, 2004 between OneName Corporation and XDI.ORG.

2.2 As a result of earlier agreements between the parties, the Patent Rights have been embodied in a set of evolving Technical Specifications for practicing the

Patent Rights using open, interoperable technical standards. These Technical Specifications include but are not limited to the XNS specifications published by XDI.ORG, the XRI specifications published by the OASIS XRI Technical Committee, and the XDI specifications published by the OASIS XDI Technical Committee.

2.3 CORDANCE desires to make the Patent Rights necessary to implement the Technical Specifications available and accessible to the Internet community.

2.4 The underlying purpose of this agreement is to facilitate and promote the widespread adoption of XDI infrastructure by making it available as an Open Standard, and also to ensure that said Open Standard is protected from "embrace and enhance" strategies.

2.5 The parties believe that XDI infrastructure should be governed by the users and providers of such an infrastructure (the "XDI Community").

2.6 The parties believe that XDI.ORG, as an independent non-profit international organization acting in the XDI Community interest, can best serve in this capacity.

2.7 XDI.ORG is committed to perform the activities necessary to serve the XDI Community in this capacity.

2.8 XDI.ORG requires certain rights and permissions from CORDANCE in order to carry out these activities.

NOW THEREFORE, in consideration of the above premises, which are hereby incorporated by this reference, and the mutual covenants and agreements set forth herein, CORDANCE and XDI.ORG also AGREE AS FOLLOWS:

# 3. Definitions.

All terms presented that are capitalized in this Agreement and not otherwise defined are defined in Exhibit A attached hereto and incorporated herein. The Definitions contained in this Agreement supersede any previous definitions in any previous Agreements between the parties.

# 4. Intellectual Property Rights Grants.

4.1 Patent License: Effective as of the Effective Date of

this Agreement, CORDANCE hereby grants to XDI.ORG a fully paid-up, royalty-free, worldwide, exclusive license to and under the Patent Rights within the Field of Use to make, have made, use, import, sell, offer to sell, and otherwise distribute or dispose of products and services, and to sublicense others to do so as further specified in section 7 below; provided that CORDANCE retains the right to take legal action against any infringer. CORDANCE does not grant XDI.ORG a license to any Patent Rights outside the Field of Use. XDI.ORG grants to CORDANCE a fully paid-up, royalty-free, worldwide, non-exclusive license to and under the Patent Rights within the Field of Use to make, have made, use, import, sell, offer to sell, and otherwise distribute or dispose of CORDANCE products and services, subject to the same sublicensing terms and conditions set forth for third parties in section 7, below.

4.2 Copyright Assignment: CORDANCE hereby assigns to XDI.ORG any and all interest in the copyrights for the Technical Specifications created by CORDANCE.

4.3 Trademark Assignment: CORDANCE hereby assigns to XDI.ORG any and all rights to the marks: XNS, I-NAME, I-NUMBER, and I-BROKER including any registration rights and all associated goodwill. During the Term, XDI.ORG shall use commercially reasonable efforts to register, maintain, police, and enforce its rights in such marks.

# 5. Performance Obligations.

In consideration of the grants above, the continuing exploitation by XDI.ORG or its delegate of the rights and licenses under this License Agreement is expressly conditioned upon the performance of the following material obligations:

5.1 XDI.ORG or its authorized delegate ("Delegate") shall publish and maintain the Technical Specifications and ensure interoperability between the Technical Specifications and the Global Service Specifications. Said Technical Specifications shall include a mechanism for sublicensees to make Conformance Attestations that ensure that consumers of XDI products and services may use XDI infrastructure itself to easily, quickly, and transparently discover said Conformance Attestations and evaluate the reputations of said products and services for interoperability.

5.2 XDI.ORG shall establish and manage XDI Global Services to facilitate interoperability between the members of the XDI Community, including:

5.2.1 Publishing and maintaining the Global Services Specifications;

5.2.2 Publishing and maintaining the General Dictionary;

5.2.3 Drafting, executing, implementing and enforcing third party agreements with GSPs (Global Service Providers) and Registrars in order to provide Global Services to the XDI Community;

5.2.4 Performing its material obligations under the Global Services Provider Agreement between XDI.ORG and CORDANCE (attached as Exhibit B hereto).

5.3 Subject to any lawful restrictions on sublicensing, XDI.ORG and any of its Delegates shall have the obligation to sublicense any and all of XDI.ORG's Intellectual Property Rights (including Intellectual Property Rights obtained from CORDANCE hereunder, Intellectual Property Rights obtained from third parties, and Intellectual Property Rights within the Field of Use developed independently by XDI.ORG or its Delegates) to implementers, GSPs, Registrars, Registrants, and others as required to implement the Technical Specifications, provide Global Services, and otherwise facilitate and maintain an open, interoperable XDI infrastructure.

5.4 XDI.ORG shall reimburse CORDANCE for its reasonable costs associated with maintenance fees for the Patent Rights within thirty (30) days of verification by CORDANCE of said costs. If such costs have not been reimbursed and CORDANCE owes amounts to XDI.ORG, CORDANCE may deduct such costs from such amounts due. If XDI.ORG or third-party licensees fail to reimburse said costs within ninety (90) days, CORDANCE may in its sole discretion allow the relevant patent to lapse. If CORDANCE elects not to maintain any patent under the Patent Rights, XDI.ORG shall have right to maintain such patent, and CORDANCE will take commercially reasonable steps (at the expense of XDI.ORG) to assist XDI.ORG in exercising this right.

5.5 XDI.ORG shall at all times act in the best interests of the XDI Community, and shall specifically act to ensure interoperability of the Technical Specifications and Global Services among members of this community, including:

5.5.1 Adopting a governance model and methods of operation that reasonably represent the interests of all major constituents of the XDI Community, including implementers of the Technical Specifications, GSPs, Registrars, and Registrants;

5.5.2 Wherever possible, employing XDI technology and infrastructure itself to enable distributed self-governance, including delegating decisionmaking to the most relevant and affected parties;

5.5.3 Wherever possible, employing XDI-based feedback mechanisms to establish and maintain reputations and facilitate trust decisions;

5.5.4 Not discriminating against any members of the XDI Community who are in compliance with the terms and intent of this Agreement and any applicable sublicense;

5.5.5 Conducting its governance and operations transparently so as to maximize accountability and responsiveness to the XDI Community.

5.6 XDI.ORG and any of its Delegates shall remain non-profit organizations and shall not engage in the commercial exploitation of software or services related to the Patent Rights.

# 6. Delegation.

XDI.ORG shall not delegate its obligations except as follows:

6.1 XDI.ORG may delegate its obligations under section 5.1 in whole or in part to one or more other qualified non-profit standards organizations provided such delegation can be reasonably shown to be in the best interests of the XDI Community.

6.2 XDI.ORG may delegate its obligations in 5.2.2 in whole or in part to one or more qualified non-profit organizations (including academic institutions) provided such delegation can be reasonably shown to be in the best interests of the XDI Community.

6.3 XDI.ORG may delegate its obligations under section 5.3 but only to the same entities to which it delegates its obligations under section 5.1 or 5.2.2.

In no event shall the delegation of obligations under this Agreement relieve XDI.ORG of the duty to perform such obligations.

# 7. Sublicensing.

The licenses granted to XDI.ORG by CORDANCE shall include the right to grant sublicenses to third parties

include the right to grant sublicenses to third parties under the Patent Rights within the Field of Use to make, have made, use, import, sell, offer to sell, and otherwise distribute or dispose of products and services, only under the following conditions:

7.1 All sublicenses shall be granted on a fully paid-up, royalty free, worldwide, non-exclusive basis.

7.2 All sublicenses shall be valid only for implementations of the Patent Rights conformant with the Technical Specifications in effect at the time of said implementation.

7.3 All sublicenses for products not distributed under an Open Source or Free Software License shall require that the licensee make a Conformance Attestation in a manner specified by XDI.ORG in the Technical Specifications.

7.4 All sublicenses granted by XDI.ORG or its Delegate shall require said sublicensee to grant a reciprocal irrevocable, fully paid-up, royalty-free, worldwide, non-exclusive license (including the right to grant sublicenses within the Field of Use) to XDI.ORG or its Delegate to any of said sublicensees' existing and future Intellectual Property Rights covering subject matter essential to implement the Technical Specifications in effect at the time of such sublicense.

7.5 Any termination of the license granted by CORDANCE to XDI.ORG hereunder shall not affect any sublicenses granted in accordance with the terms hereof that are in effect as of the date of any such termination, which sublicenses shall remain in effect and be automatically assigned to CORDANCE or, as delegated by CORDANCE, to another similarly situated non-profit organization operating solely for the benefit of the XDI Community as provided in section 13.3. below.

7.6 Upon entry of a final judgment of infringement of the Patent Rights, any sublicense granted to the entity determined to have infringed shall be immediately void. Reversal on appeal of the judgment of infringement shall result in reinstatement of the sublicense. The sublicense may otherwise be reinstated on conditions mutually acceptable as between XDI.ORG, the licensor and the infringer with the express purpose of preventing future infringement, preventing "embrace and enhance" tactics, and promoting the widespread deployment of XDI infrastructure.

7.7 All sublicenses shall contain a provision that the sublicense is not a defense to a claim of infringement of the Patent Rights if some but not all of the material

the Patent Rights if some but not all of the material elements of an asserted patent claim are covered by the sublicense.

7.8 All sublicenses granted hereunder shall be consistent with the terms of this Agreement, and no sublicense shall purport to grant to any sublicensee rights that are broader than those permitted to be granted to all sublicensees hereunder.

7.9 XDI.ORG shall take all steps reasonably necessary to procure prompt performance by any sublicensee of its obligations as set forth in any applicable sublicense, including, without limitation, promptly taking all commercially reasonable steps to enforce the terms of such sublicense and/or, if so requested by CORDANCE, assigning to CORDANCE its rights to enforce the terms of any such sublicense and providing all commercially reasonable assistance requested by CORDANCE in connection with such enforcement.

# 8. Infringement.

In the event of any actual or potential infringement of the Patent Rights and other intellectual property rights licensed to XDI.ORG hereunder by any third party, CORDANCE or its assignee shall have the first right, but not the obligation, to institute suit against such actual or potential infringer and XDI.ORG shall reasonably cooperate with CORDANCE or its assignee in any such action. Any recovery as a result of such action or proceeding shall be paid over to CORDANCE or its assignee. In the event that XDI.ORG believes the Patent Rights are infringed by a third party, it shall provide written notice to CORDANCE, identifying the alleged infringer and articulating with reasonable specificity the nature of the infringement. If, after ninety days after receipt of such notice, CORDANCE (either directly or through its assignee) fails to notify XDI.ORG that CORDANCE intends to institute suit against an actual or potential infringer, XDI.ORG may do so at its own election and expense, and any recovery as a result of such action or proceeding shall be divided and paid over in equal shares to CORDANCE and XDI.ORG, after the deduction of any expenses actually incurred by XDI.ORG in connection therewith.

# 9. Transferability.

CORDANCE acknowledges that XDI.ORG is in the process of reincorporating in another jurisdiction. XDI.ORG may assign and transfer the rights and obligations of this Agreement in whole to the newly reincorporated

Agreement, in whole, to the newly reincorporated organization upon substantially the same conditions as stated below for the transfer of rights and obligations to a non-profit standards body. XDI.ORG may also assign or transfer the licenses and assignments granted to it herein to another similarly situated non-profit standards body operating solely for the benefit of the general public, and only on the following conditions:

9.1 Such standards body assumes all of the obligations of XDI.ORG hereunder, including, without limitation, all existing sublicenses, contracts, and agreements, and other obligations of XDI.ORG.

9.2 Such transfer does not alter or affect any of the rights of CORDANCE, or any of XDI.ORG's obligations (financial or otherwise) to CORDANCE under any agreements with XDI.ORG.

9.3 Such transfer does not materially alter or affect the rights of any sublicensees of XDI.ORG.

9.4 XDI.ORG is not in breach of any material obligation to CORDANCE under any agreement, unless CORDANCE waives this condition in writing.

9.5 Such standards body is financially solvent and has the resources and wherewithal to perform the obligations of XDI.ORG.

# 10. Warranties.

XDI.ORG warrants that:

10.1 It shall perform its obligations under this Agreement with due care and diligence.

10.2 It has the right and authority to enter into this Agreement and grant the rights conveyed hereunder and that doing so does not conflict with any obligation it has or shall undertake.

10.3 Except as expressly stated herein, the parties make no other warranties, express or implied, including but not limited to any implied warranty of merchantability or fitness for a particular purpose, or implied warranty arising from course of performance, course of dealing, or usage of trade. Specifically CORDANCE makes these licenses and assignments "AS IS" and makes no warranty on merchantability or furthermore for a particular purpose.

# 11. Indemnification.

XDI.ORG shall defend, indemnify and hold CORDANCE harmless from and against any and all actions, suits, or proceedings ("Claims"), resulting in any losses, damages, judgments, awards, settlements, or expenses (including reasonable attorney's fees) (collectively, "Liabilities") arising from:

11.1 Any breach of XDI.ORG's obligations under this Agreement

11.2 Any Claim, which if true, would constitute a breach of such obligations

11.3 Sublicenses made by XDI.ORG resulting from this Agreement.

# 12. Term.

The license granted herein shall commence on the Effective Date and thereafter continue in each jurisdiction throughout the world for the statutory duration of the Patent Rights in any such jurisdiction, unless earlier terminated in accordance with the terms hereof.

# 13. Termination.

13.1 CORDANCE may terminate the license granted herein, effective upon written notice to XDI.ORG: (1) if XDI.ORG becomes insolvent, is generally not paying its debts as such debts become due, makes an assignment for the benefit of creditors, is the subject of any voluntary or involuntary case commenced under the federal bankruptcy laws, as now constituted or hereinafter amended, or of any other proceeding under other applicable laws of any jurisdiction regarding bankruptcy, reorganization, adjustment of debt or other forms of relief for debtors, has a receiver, trustee, liquidator, assignee, custodian or similar official appointed for it or for any substantial part of its property, or is the subject of any dissolution or liquidation proceeding; or (2) if XDI.ORG ceases to conduct business as a going concern.

13.2 Either party may terminate the license granted herein, if (1) the other party is in breach or default of any of the material terms and conditions of this Agreement, provided that the party in breach shall not

have cured (if capable of being cured) such breach or default within thirty (30) cumulative days after receipt of such notice; or (2) as otherwise expressly set forth in this Agreement.

13.3 If the license is terminated by either party as provided in this Section, in addition to any remedies available to the parties: (1) all rights and the license granted herein to XDI.ORG shall immediately terminate and all such rights and license shall immediately revert back to CORDANCE or CORDANCE's delegate as provided for in clause (2), and (2) CORDANCE shall exercise commercially reasonable efforts thereafter to transfer all rights necessary to the performance of XDI.ORG's obligations to another similarly situated non-profit public trust or standards organization.

13.4 XDI.ORG agrees that in the event of termination of this Agreement by CORDANCE, (1) XDI.ORG shall assign to CORDANCE or CORDANCE's delegate as provided for in clause (2) any trademarks, copyrights or other intellectual property owned by it including those assigned herein, and (2) CORDANCE shall exercise commercially reasonable efforts thereafter to assign all rights necessary to the performance of XDI.ORG's obligations to another similarly situated non-profit public trust or standards organization.

# 14. General Terms.

14.1 Governing Law: This License shall be construed and controlled by the laws of the State of Washington without reference to conflict of laws principles.

14.2 Jurisdiction: The parties agree that all disputes arising in any way out of this License shall be heard exclusively in, and all parties irrevocably consent to jurisdiction and venue in the United States District Court for the Western District of Washington or, if that court lacks jurisdiction, in King County Superior Court. In the interest of assuring federal jurisdiction, XDI.ORG will exercise its best efforts to assign its rights and obligations under this Agreement to a corporate body established under the laws of a jurisdiction other than Washington within 90 days after the Effective Date of this Agreement.

14.3 Notices: All notices and other communications required hereunder shall be in writing and shall be sent by personal delivery, telecopy, registered or certified mail (postage prepaid and return receipt requested) or by reputable overnight courier to the principal or primary address, unless notification of a change of address is

given in writing. Notice shall be deemed effective when so personally delivered or telecopied, or, if mailed, three (3) business days following the date the notice is mailed (one (1) business day in the case of express mail or overnight courier service).

14.4 Not Partners: The parties hereto are independent entities and are not partners or joint venturers with each other.

14.5 Exhibits: The following Exhibits are attached hereto and incorporated by reference: Exhibit A – Definitions, and Exhibit B - XDI.ORG GSP Agreement.

XDI.ORG

By - Name: Bill H. Washburn

Its: Chairman

Signed

CORDANCE CORPORATION

By - Name: Vince Caluori

Its: President and CEO

Signed

# EXHIBIT A - DEFINITIONS

1. Conformance Attestation – As specified in the Technical Specifications, a collection of assertions in machine-readable XDI format (and including or linked to an equivalent human-readable format) by a licensee of conformance to the Technical Specifications, including identification of the version(s) of the Technical Specifications implemented, the features implemented, the interoperability testing performed, or other such assertions as may be determined from time to time by XDI.ORG to be in the best interests of the XDI Community to ensure the interoperability and integrity of XDI infrastructure.

2. Designated Global Services – I-Name Services, I-Number Services, Directory Services, Reputation Services, and Public Resolver Services as defined herein.

3. Directory Services - The Global Service of cross-referencing XRIs and XDI Resources in order to facilitate discovery, identification, and location of an XDI Resource

by its associated XDI Resources. There are three Global Directory Services: Personal Directory Service, Organizational Directory Service, and General Directory Service.

4. Field of Use - The development and exploitation of computer programs to the extent that they conform to the Technical Specifications as first delivered and/or subsequently modified.

5. General Dictionary - The collection of XDI Resources representing General Resources and their definitions and relationships in taxonomies and ontologies as established and maintained by XDI.ORG to facilitate global data sharing by all members of the XDI Community.

6. General Resource - An XDI Resource that represents a generic concept, subject, or topic whose identity is defined by linguistic, cultural, or scientific convention.

7. General Service - A Global Service for General Resources identified using the Global Context Symbol "+".

8. Global Context Symbols (GCS) - As defined in the XRI Specifications, the XRI syntax characters specified to represent abstract global context of an identifier, specifically "=" for personal identifiers, "@" for organizational identifiers, "+" for general identifiers, "$" for specification identifiers, and "!" for independent identifiers.

9. Global Service Provider (GSP) - An entity authorized by XDI.ORG to provide and to contract for the provision of Global Services.

10. Global Service Specifications - The specifications published by XDI.ORG governing the operation of each Global Service, including the specifications for Conformance Attestations and other mechanisms for ensuring interoperability, to be initially provided to XDI.ORG, in each case, by the primary GSP for the applicable Global Service prior to the commencement of such Global Service, and to be maintained by XDI.ORG as a service to the XDI Community.

11. Global Services - The set of XDI interactions that shall be offered by XDI.ORG to all members of the XDI Community to facilitate interoperability of XDI infrastructure, including but not limited to the Designated Global Services.

12. I-Broker - A provider of XDI services.

13. I-Name Services - The Global Service of registering, reserving, reassigning, and resolving reassignable XRIs via Registries represented by the Global Context Symbols as defined by the XRI specifications. There are three Global I-Name Services: Personal I-Name Service, Organizational I-Name Service, and General I-Name Service.

14. Independent I-Number - A persistent XRI assigned to identify an XDI Resource independent of another GCS context.

15. Independent I-Number Service - An I-Number Service for Independent I-Numbers assigned using the Global Context Symbol "!".

16. Intellectual Property Rights - All rights in patent, trademark, copyright, trade secret and know-how.

17. I-Number Services - The Global Service of registering, resolving, and retiring persistent XRIs via Registries represented by the Global Context Symbols as defined by the XRI specifications. There are four Global I-Number Services: Personal I-Number Service, Organizational I-Number Service, General I-Number Service, and Independent I-Number Service.

18. OASIS - The Organization for the Advancement of Structured Information Standards, a non-profit standards body for XML e-business standards. See http://www.oasis-open.org.

19. Open Source or Free Software License - A license certified by the Open Source Initiative or the Free Software Foundation or any equivalent license that does not restrict the open public review, modification, distribution, and evolution of the source code of a product or service.

20. Open Standard -- As defined on September 13, 2004 at http://www.perens.com/OpenStandards/Definition.html, a specification whose licensing ensures that it is publicly available to implement, that it maximizes end-user choice of vendors and implementations, that it does not require a royalty or fee to implement with the potential exception of compliance certification, that it does not discriminate against vendors or implementations, and that it permits extensions or subsets that are consistent with the standard yet may preclude predatory "embrace and enhance" practices.

21. Organizational Resource - An XDI Resource representing any legal entity or mark that does not

represent a Personal Resource or a General Resource.

22. Organizational Service – A Global Service for Organizational Resources identified using the Global Context Symbol "@".

23. Patent Rights - (1) United States letter of patent issued under numbers 5,862,325; 6,044,205; 6,088,717, 6,345,288, and 6,757,710; (2) any and all United States or foreign letter of patent, utility models and/or application therefore, claiming priority, in whole or in part, from any of the letters of patent identified herein in (1) of this definition; (3) any and all divisionals, continuations, continuations in part, continued prosecution applications, reexamination, reissues, additional or extension of any of the letters of patent or utility models identified herein in (1) and (2) of this definition.

24. Personal Resource – An XDI Resource representing a natural-born person.

25. Personal Service – A Global Service for Personal Resources identified using the Global Context Symbol "=".

26. Public Resolver Services – The Global Service of providing XRI resolution of globally-registered XRIs via one or more publicly available network endpoints. There are two Global Public Resolver Services: Standard Public Resolver Service, which provides resolution service conformant to the XRI Generic Syntax and Resolution Specification, and Trusted Public Resolver Service, which provides resolution service conformant to the XRI Trusted Resolution Specification.

27. Registrant - A member (individual or organization) of the XDI Community that enrolls with a Registrar to obtain Global Services.

28. Registrar - An I-Broker registered with a Global Service Provider to provide the service of enrolling Registrants to obtain Global Services for which registration is required.

29. Registry - The XDI Resource maintained by a Global Service Provider to provide Global Services requiring registration and resolution of XRIs.

30. Reputation Services – The Global Service of aggregating feedback on XDI Resources by other XDI Resources to enable discovery, identification, location, and evaluation of a Resource by its reputation. There are three Global Reputation Services: Personal Reputation

Service, Organizational Reputation Service, and General Reputation Service.

31. Resource - As defined in the OASIS XRI Generic Syntax and Resolution Specification 1.0, "anything that can be named or described."

32. Technical Specifications - The specifications defining and governing the interoperability and integrity of XDI infrastructure, including the XDI Specifications, the specifications for Conformance Attestations, and any other specifications designated from time to time by XDI.ORG and subsequently modified, amended, revised or enhanced in accordance with the terms set forth in this Agreement.

33. XDI – XRI Data Interchange as defined by the XDI Specifications.

34. XDI Community – The users and providers of XDI infrastructure.

35. XDI Resource – A Resource identified with at least one XRI that supports interactions via XDI.

36. XDI Specifications – The Open Standard specifications for a generalized, extensible service for identifying, addressing, sharing, linking, and synchronizing XDI Resources as designated from time to time by XDI.ORG; currently the specifications published by the OASIS XDI Technical Committee.

37. XNS – Extensible Name Service, the name used for the first set of Technical Specifications submitted by OneName (predecessor to CORDANCE) to XNSORG (predecessor to XDI.ORG).

38. XNS Public Trust Organization (XNSORG) - The original legal name for XDI.ORG and its successors in interest.

39. XRI – An Extensible Resource Identifier as defined by the XRI Specifications.

40. XRI Specifications – The Open Standard specifications for abstract identifiers used by XDI technology as designated from time to time by XDI.ORG; currently the specifications published by the OASIS XRI Technical Committee.

---

Copyright XDI.ORG - 2004 - All rights reserved

# EXHIBIT
# B

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| CORDANCE CORPORATION, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 06-491-MPT |
| | ) | |
| AMAZON.COM, INC., | ) | **JURY TRIAL DEMANDED** |
| | ) | |
| Defendant. | ) | |

## ANSWER AND SECOND AMENDED COUNTERCLAIMS OF DEFENDANT AMAZON.COM, INC

### I.

### ANSWER

Defendant Amazon.com, Inc., ("Amazon.com"), by and through its undersigned counsel, answers the Second Amended Complaint for Patent Infringement ("Complaint") of plaintiff Cordance Corporation, ("Plaintiff" or "Cordance"), as follows:

### THE PARTIES

1.    Amazon.com admits that Plaintiff purports to be a Washington corporation having a principal place of business at 3020 Issaquah-Pinelake Road #74, Sammamish, Washington 98075.

2.    Amazon.com lacks sufficient information to form a belief as to the truth or falsity of the averments in paragraph 2 of the Complaint and therefore denies them.

3.    Amazon.com admits that it is a Delaware corporation with a principal place of business at 1200 12th Avenue South, Suite 1200, Seattle, Washington 98144.

4.    Amazon.com admits that a variety of items are available for ordering via parts of the Amazon.com website and denies any remaining averments contained in paragraph 4 of the Complaint.

## JURISDICTION AND VENUE

5.      Amazon.com admits that Plaintiff purports to invoke subject matter jurisdiction via 35 U.S.C. § 1 et seq. and 28 U.S.C. §§ 1331 and 1338(a).

6.      Amazon.com admits that Plaintiff purports to aver that personal jurisdiction is proper over Amazon.com in this Court. Amazon.com admits that it is incorporated in Delaware and users within Delaware access Amazon.com.

7.      Amazon.com admits that Plaintiff purports to aver that venue is proper in this district pursuant to 28 U.S.C. §§ 1391, 1400.

## COUNT ONE – ALLEGED INFRINGEMENT OF U.S. PATENT NO. 6,757,710

8.      In response to paragraph 8 of the Complaint, Amazon.com incorporates by reference its responses to paragraphs 1 through 7 of the Complaint.

9.      Amazon.com admits the document attached as Exhibit A appears on its face to be a copy of United States Patent No. 6,757,710 ("the '710 Patent"). Amazon.com denies every remaining averment contained in paragraph 9 of the Complaint.

10.     Amazon.com denies the averments contained in paragraph 10 of the Complaint.

11.     Amazon.com denies the averments contained in paragraph 11 of the Complaint.

12.     Amazon.com denies the averments contained in paragraph 12 of the Complaint.

## COUNT TWO – ALLEGED INFRINGEMENT OF U.S. PATENT NO. 6,044,205

13.     In response to paragraph 13 of the Complaint, Amazon.com incorporates by reference its responses to paragraphs 1 through 7 of the Complaint.

14.     Amazon.com admits the document attached as Exhibit B appears on its face to be a copy of United States Patent No. 6,044,205 ("the '205 Patent"). Amazon.com denies every remaining averment contained in paragraph 14 of the Complaint.

2

15.    Amazon.com denies the averments contained in paragraph 15 of the Complaint.

16.    Amazon.com denies the averments contained in paragraph 16 of the Complaint.

17.    Amazon.com denies the averments contained in paragraph 17 of the Complaint.

## COUNT THREE – ALLEGED INFRINGEMENT OF U.S. PATENT NO. 5,862,325

18.    In response to paragraph 18 of the Complaint, Amazon.com incorporates by reference its responses to paragraphs 1 through 7 of the Complaint.

19.    Amazon.com admits the document attached as Exhibit C appears on its face to be a copy of United States Patent No. 5,862,325 ("the '325 Patent"). Amazon.com denies every remaining averment contained in paragraph 19 of the Complaint.

20.    Amazon.com denies the averments contained in paragraph 20 of the Complaint.

21.    Amazon.com denies the averments contained in paragraph 21 of the Complaint.

22.    Amazon.com denies the averments contained in paragraph 22 of the Complaint.

## COUNT FOUR – ALLEGED INFRINGEMENT OF U.S. PATENT NO. 6,088,717

23.    In response to paragraph 23 of the Complaint, Amazon.com incorporates by reference its responses to paragraphs 1 through 7 of the Complaint.

24.    Amazon.com admits the document attached as Exhibit D appears on its face to be a copy of United States Patent No. 6,088,717 ("the '717 Patent"). Amazon.com denies every remaining averment contained in paragraph 24 of the Complaint.

25.    Amazon.com denies the averments contained in paragraph 25 of the Complaint.

26.    Amazon.com denies the averments contained in paragraph 26 of the Complaint.

27.    Amazon.com denies the averments contained in paragraph 27 of the Complaint.

## RELIEF REQUESTED BY PLAINTIFF

Amazon.com denies that Plaintiff is entitled to the relief it seeks or any relief at all for the averments made in the Complaint.

## II.

## DEFENSES

For its Defenses to the Complaint, Amazon.com avers as follows:

### FIRST DEFENSE – NON-INFRINGEMENT

1.      Amazon.com has not infringed, and currently does not infringe, the '710 Patent, the '205 Patent, the '325 Patent, or the '717 Patent (collectively, the "patents-in-suit") directly, contributorily, by inducement, or in any other manner.

### SECOND DEFENSE - INVALIDITY

2.      The patents-in-suit are invalid for failure to satisfy one or more of the conditions for patentability specified in Title 35 of the United States Code, § 1, et seq.

### THIRD DEFENSE – ESTOPPEL

3.      Amazon.com is informed and believes, and thereon avers, that the relief sought by Plaintiff is barred under the doctrine of prosecution history estoppel.

### FOURTH DEFENSE – PROSECUTION LACHES

4.      Amazon.com is informed and believes, and thereon avers, that the relief sought by Plaintiff is barred under the doctrine of prosecution laches.

### FIFTH DEFENSE – LIMITATION ON DAMAGES

5.      Plaintiff's claim for damages is barred, in whole or in part, by 35 U.S.C. § 287 and/or Plaintiff's failure to plead notice thereunder.

## SIXTH DEFENSE – LACHES

6.      The doctrine of laches bars Plaintiff from obtaining all, or part, of the relief it seeks.

## SEVENTH DEFENSE – COSTS BARRED IN ACTION FOR INFRINGEMENT OF A PATENT CONTAINING AN INVALID CLAIM

7.      Pursuant to 35 U.S.C. § 288, Plaintiff is barred from recovering any costs.

## RESERVATION OF ADDITIONAL AFFIRMATIVE DEFENSES

8.      Amazon reserves any and all additional affirmative defenses available to it under Title 35, U.S.C., or the rules, regulations, and law related thereto, the Federal Rules of Civil Procedure, the Rules of this Court, or otherwise in law or equity, now existing, or later arising, as may be discovered..

### III.

### SECOND AMENDED COUNTERCLAIMS

For its Counterclaims against Plaintiff, defendant and counterclaimant Amazon.com avers as follows:

1.      Amazon.com counterclaims against Plaintiff pursuant to the patent laws of the United States, Title 35 of the United States Code, and laws authorizing actions for declaratory judgment in the courts of the United States, 28 U.S.C. §§ 2201 and 2202, and Federal Rule of Civil Procedure 13.

### THE PARTIES

2.      Amazon.com is a Delaware corporation with its principal place of business at 1200 12th Avenue South, Suite 1200, Seattle, Washington 98144.

3.      Upon information and belief, Plaintiff is a Washington corporation with a place of business at 3020 Issaquah-Pinelake Road #74, Sammamish, Washington 98075.

## JURISDICTION AND VENUE

4.    This Court has jurisdiction over these counterclaims pursuant to 28 U.S.C. §§ 1331, 1338(a), 2201(a), and 2202.

5.    This Court has personal jurisdiction over the Plaintiff by virtue, *inter alia*, of its filing of complaints in this Court.

6.    Venue is proper in this District pursuant to 28 U.S.C. §§ 1391 and 1400.

7.    By virtue of the averments of Plaintiff's Complaint in this action and Amazon.com's Answer thereto, an actual controversy exists between Amazon.com and Plaintiff as to whether the patents-in-suit are invalid, and/or not infringed by Amazon.com.

## FIRST COUNTERCLAIM

### DECLARATION OF NON-INFRINGEMENT OF THE '710 PATENT

8.    Amazon.com restates and incorporates by reference each of the averments of paragraphs 1 through 7 of Section III of this Answer and Counterclaim.

9.    Plaintiff claims to be the owner of the '710 patent and claims to have the right to enforce the '710 patent.

10.    Plaintiff in this action alleges infringement of the '710 patent by Amazon.com.

11.    Amazon.com is not infringing and has not infringed any valid claim of the '710 patent, and Plaintiff is entitled to no relief for any Claim in the Complaint for, *inter alia*, the reasons in paragraphs 1–8 of Section II of this Answer and Counterclaim.

## SECOND COUNTERCLAIM

### DECLARATION OF NON-INFRINGEMENT OF THE '205 PATENT

12.    Amazon.com restates and incorporates by reference each of the averments of paragraphs 1 through 7 of Section III of this Answer and Counterclaim.

13.    Plaintiff claims to be the owner of the '205 patent and claims to have the right to enforce the '205 patent.

14.    Plaintiff in this action alleges infringement of the '205 patent by Amazon.com.

15.    Amazon.com is not infringing and has not infringed any valid claim of the '205 patent, and Plaintiff is entitled to no relief for any Claim in the Complaint for, *inter alia*, the reasons in paragraphs 1–8 of Section II of this Answer and Counterclaim.

### THIRD COUNTERCLAIM

#### DECLARATION OF NON-INFRINGEMENT OF THE '325 PATENT

16.    Amazon.com restates and incorporates by reference each of the averments of paragraphs 1 through 7 of Section III of this Answer and Counterclaim.

17.    Plaintiff claims to be the owner of the '325 patent and claims to have the right to enforce the '325 patent.

18.    Plaintiff in this action alleges infringement of the '325 patent by Amazon.com.

19.    Amazon.com is not infringing and has not infringed any valid claim of the '325 patent, and Plaintiff is entitled to no relief for any Claim in the Complaint for, *inter alia*, the reasons in paragraphs 1–8 of Section II of this Answer and Counterclaim.

### FOURTH COUNTERCLAIM

#### DECLARATION OF NON-INFRINGEMENT OF THE '717 PATENT

20.    Amazon.com restates and incorporates by reference each of the averments of paragraphs 1 through 7 of Section III of this Answer and Counterclaim.

21.    Plaintiff claims to be the owner of the '717 patent and claims to have the right to enforce the '717 patent.

22.    Plaintiff in this action alleges infringement of the '717 patent by Amazon.com.

7

23.    Amazon.com is not infringing and has not infringed any valid claim of the '717 patent, and Plaintiff is entitled to no relief for any Claim in the Complaint for, *inter alia*, the reasons in paragraphs 1–8 of Section II of this Answer and Counterclaim.

## FIFTH COUNTERCLAIM

### DECLARATION OF INVALIDITY OF THE '710 PATENT

24.    Amazon.com restates and incorporates by reference each of the averments of paragraphs 1 through 11 of Section III of this Answer and Counterclaim.

25.    The '710 patent is invalid for failure to satisfy one or more of the conditions for patentability set forth in 35 U.S.C. § 1, *et seq.*

## SIXTH COUNTERCLAIM

### DECLARATION OF INVALIDITY OF THE '205 PATENT

26.    Amazon.com restates and incorporates by reference each of the averments of paragraphs 1 through 7 and 12 through 15 of Section III of this Answer and Counterclaim.

27.    The '205 patent is invalid for failure to satisfy one or more of the conditions for patentability set forth in 35 U.S.C. § 1, *et seq.*

## SEVENTH COUNTERCLAIM

### DECLARATION OF INVALIDITY OF THE '325 PATENT

28.    Amazon.com restates and incorporates by reference each of the averments of paragraphs 1 through 7 and 16 through19 of Section III of this Answer and Counterclaim.

29.    The '325 patent is invalid for failure to satisfy one or more of the conditions for patentability set forth in 35 U.S.C. § 1, *et seq.*

## EIGHTH COUNTERCLAIM

### DECLARATION OF INVALIDITY OF THE '717 PATENT

30.    Amazon.com restates and incorporates by reference each of the averments of paragraphs 1 through 7 and 20 through 23 of Section III of this Answer and Counterclaim.

31.    The '717 patent is invalid for failure to satisfy one or more of the conditions for patentability set forth in 35 U.S.C. § 1, *et seq.*

## NINTH COUNTERCLAIM

### CORRECTION OF INVENTORSHIP ON U.S. PATENT NO. 6,269,369 UNDER U.S.C. § 256

32.    Amazon.com restates and incorporates by reference each of the averments of paragraphs 1 through 7 of Section III of this Answer and Counterclaim.

33.    Warren W. Adams contributed to, and was a joint inventor with the named inventor Brain D. Robertson of, subject matter claimed in United States Patent 6,269,369 (the "'369 patent"), entitled "Networked Personal Contact Manager."

34.    The omission of Warren W. Adams as a named inventor on the '369 Patent was the result of error.

35.    The omission of Warren W. Adams as a named inventor on the '369 Patent arose without deceptive intent on the part of Warren W. Adams.

36.    Pursuant to 35 U.S.C. § 256, the '369 Patent should be corrected to name Warren W. Adams as an inventor.

## TENTH COUNTERCLAIM

### DECLARATION OF INFRINGEMENT OF U.S. PATENT NO. 6,269,369

37.    Amazon.com restates and incorporates by reference each of the averments of paragraphs 1 through 7 of Section III of this Answer and Counterclaim.

9

38.     On July 31, 2001, United States Letters Patent 6,269,369 duly and legally issued, listing inventor Brian D. Robertson. Amazon.com owns by assignment the '369 patent. A true and correct copy of the '369 patent is attached as Exhibit A.

39.     Plaintiff and Counterclaim-Defendant Cordance is in the business of standardizing, promoting, commercializing, and/or operating "iNames" and/or related services, including the "Contact Service" and/or "Unified Address Book Service," collectively "the Cordance Services."

40.     Amazon.com is informed and believes, and thereon alleges, that the "Unified Address Book Service," is used in conjunction with the "Contact Service," and will soon be made available to the public, if not already so available.

41.     By standardizing, promoting, commercializing, and/or operating "iNames" and/or the Cordance Services, Plaintiff and Counterclaim-Defendant Cordance has engaged in present activity and/or taken concrete steps with the intent to conduct such activity, which would constitute infringement of one or more claims of the '369 patent directly, as inducement of infringement and/or as contributory infringement.

42.     By virtue of Cordance's activities in connection with the Cordance Services, a real and substantial controversy exists between Amazon.com and Cordance as to the past, present, and/or future infringement of one or more claims of the '369 Patent.

43.     Cordance's acts of infringement are likely to cause, and unless restrained and enjoined, will continue to cause, irreparable injury and damage to Amazon.com for which there is no adequate remedy at law.

44.     As a result of the acts of infringement by Cordance, Amazon.com has suffered and/or will continue to suffer substantial damages in an amount to be proven at trial.

10

## PRAYER FOR RELIEF

WHEREFORE, Amazon.com prays for judgment with respect to Cordance's Complaint and Amazon.com's Defenses and the above Counterclaims as follows:

a.      this Court enter judgment against Cordance and in favor of Amazon.com on the claims set forth in the Complaint filed by Plaintiff and that such claims be dismissed with prejudice;

b.      this Court find and declare that the claims of the patents asserted by Cordance are not infringed by Amazon.com and that Amazon.com is not liable as an infringer;

c.      this Court find and declare that the claims of the patents-in-suit are invalid and unenforceable;

d.      this Court order that Warren W. Adams be added as an inventor on the '369 Patent;

e.      this Court declare and enter judgment that Cordance's present and/or future activity, *inter alia*, in connection with the Cordance Services, constitutes infringement of the '369 patent directly, by inducement, as contributory infringement, and/or otherwise;

f.      this Court temporarily, preliminary and permanently enjoin Cordance, its parents, subsidiaries, affiliates, divisions, officers, agents, servants, employees, directors, partners, representatives and all parties in active concert and/or participation with them, from engaging in the aforesaid unlawful acts of infringement, contributory infringement, inducement of infringement, or otherwise of the '369 patent;

g.      this Court order Cordance to account for and pay to Amazon.com all damages caused to Amazon.com by Cordance's infringement, contributory infringement, inducement of

11

infringement, or otherwise, pursuant to 35 U.S.C. § 284, and award Amazon.com any and all

other compensatory damages available by law;

       h.      this Court award Amazon.com increased damages and attorney's fees pursuant to

35 U.S.C. §§ 284-285 or otherwise; and

       i.      this Court award Amazon.com prejudgment and postjudgment interest and its

costs incurred in this action; and

       j.      this Court grant Amazon.com such other and further relief as the Court shall

deem just and proper.

## IV.

## DEMAND FOR JURY TRIAL

      Amazon.com demands trial by jury on all issues so triable.


                       Respectfully submitted,

                       POTTER ANDERSON & CORROON LLP

OF COUNSEL:

| | |
|---|---|
| Lynn H. Pasahow | By:  */s/ David E. Moore* |
| J. David Hadden |      Richard L. Horwitz |
| Darren E. Donnelly |      David E. Moore |
| Saina S. Shamilov |      Hercules Plaza, 6th Floor |
| Ryan Marton |      1313 N. Market Street |
| FENWICK & WEST LLP |      Wilmington, Delaware 19801 |
| 801 California Street |      Tel: (302) 984-6000 |
| Mountain View, CA 94041 |      rhorwitz@potteranderson.com |
| Tel: (650) 988-8500 |      dmoore@potteranderson.com |

Dated: January 2, 2008               *Attorneys for Defendant and Counterclaim*
840283 / 30763                     *Plaintiff Amazon.com, Inc.*

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

### CERTIFICATE OF SERVICE

I, David E. Moore, hereby certify that on January 2, 2008, the attached document was electronically filed with the Clerk of the Court using CM/ECF which will send notification to the registered attorney(s) of record that the document has been filed and is available for viewing and downloading.

I further certify that on January 2, 2008, I have Electronically Mailed the document to the following person(s):

Steven J. Balick
John G. Day
Tiffany Geyer Lydon
Ashby & Geddes
500 Delaware Avenue, 8th Floor
Wilmington, DE 19899
sbalick@ashby-geddes.com
jday@ashby-geddes.com
tlydon@ashby-geddes.com

Michael A. Albert
Robert M. Abrahamsen
Adam J. Kessel
Wolf, Greenfield & Sacks, P.C.
600 Atlantic Avenue
Boston, MA  02210-2206
malbert@wolfgreenfield.com
rabrahamsen@wolfgreenfield.com
akessel@wolfgreenfield.com

By: /s/ David E. Moore
      Richard L. Horwitz
      David E. Moore
      Hercules Plaza, 6th Floor
      1313 N. Market Street
      Wilmington, Delaware 19899-0951
      (302) 984-6000
      rhorwitz@potteranderson.com
      dmoore@potteranderson.com

757320 / 30763

# EXHIBIT

# C

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

CORDANCE CORPORATION,                )
                                     )
         Plaintiff,                  )
                                     )        C.A. No. 06-491-MPT
     v.                              )
                                     )        **JURY TRIAL DEMANDED**
AMAZON.COM, INC.,                    )
                                     )
         Defendant.                  )

## DEFENDANT AND COUNTERCLAIMANT AMAZON.COM, INC.'S
## FIRST SUPPLEMENTAL RESPONSES AND OBJECTIONS TO
## PLAINTIFF'S SECOND SET OF INTERROGATORIES

Defendant Amazon.com, Inc. ("Amazon.com"), by counsel and pursuant to Rules 26 and

33 of the Federal Rules of Civil Procedure, hereby provides its first supplemental objections and

responses to plaintiff Cordance Corporation's ("Cordance") Second Set of Interrogatories:

### GENERAL OBJECTIONS

Amazon.com makes the following general objections to each and every definition,

instruction, and interrogatory made in this set of interrogatories, and these general objections are

hereby incorporated into Amazon.com's response to each and every interrogatory.  To the extent

that any of the general objections are not raised in any particular response, Amazon.com does not

waive those objections.

1.       Amazon.com further objects to each and every interrogatory herein, and to the

definitions and instructions contained within Cordance's interrogatories, to the extent that they

are vague, ambiguous, unintelligible, or seek to impose obligations on Amazon.com that are

broader than, or inconsistent with, the Federal Rules of Civil Procedure or the local rules of this

Court.  Unless indicated otherwise, Amazon.com shall give the terms of these interrogatories

their ordinary and plain meanings.  Amazon.com shall not be held responsible where its

reasonable interpretation of these interrogatories does not comport with Cordance's intentions.

2.     Amazon.com further objects to each and every interrogatory herein, and to the

definitions and instructions contained within Cordance's interrogatories to the extent they seek

electronically-stored information that is not reasonably accessible by Amazon.com because of

undue burden or cost.

3.     Amazon.com objects to each interrogatory to the extent the burden or expense of

the discovery sought outweighs its likely benefit.

4.     Amazon.com objects to all definitions, instructions, and interrogatories to the

extent they seek identification and disclosure of information that is irrelevant and immaterial, or

is not relevant to a claim or defense of a party.

5.     Amazon.com objects to all definitions, instructions, and interrogatories to the

extent that they seek discovery that is not limited to a relevant time period.

6.     Amazon.com objects to each interrogatory to the extent that it is compound and/or

is comprised of subparts constituting more than one interrogatory.

7.     Amazon.com objects to the extent any interrogatory seeks discovery that is

unreasonably cumulative or duplicative or is obtainable from some other source that is more

convenient, less burdensome, or less expensive.

8.     Amazon.com objects to all definitions, instructions, and interrogatories to the

extent they seek information outside Amazon.com's direct knowledge, custody or control.

9.     Amazon.com objects to all definitions, instructions, and interrogatories to the

extent that they seek to impose upon Amazon.com an obligation to investigate or discover

information or things from third parties or services that are more or equally accessible to

Cordance. Amazon.com does not intend to produce information that is not in the possession, custody or control of Amazon.com.

10.    Amazon.com objects to all definitions, instructions, and interrogatories, as unduly burdensome and oppressive to the extent that they purport to require Amazon.com to search Amazon.com's facilities and inquire of Amazon.com employees other than those facilities and employees that could reasonably be expected to have responsive information.

11.    Amazon.com objects to all definitions, instructions, and interrogatories to the extent they seek disclosure of information protected by the attorney-client privilege, attorney work-product doctrine, or any other privilege or protection as provided by any applicable law.

12.    Amazon.com objects to all definitions, instructions, and interrogatories to the extent that they purport to require Amazon.com to disclose private or personally-identifiable information of its users. Amazon.com does not intend to provide such information without the consent of the relevant persons or a court order.

13.    Amazon.com objects to all definitions, instructions, and interrogatories to the extent that they purport to require Amazon.com to disclose information that is subject to any protective order, privacy interest, contractual obligation, or other confidentiality obligation owed to any third party. Amazon.com will not provide such information without the consent of the relevant third party or a court order.

14.    Amazon.com's responses are made solely for the purpose of this case. Each response is subject to all objections as to competency, relevance, materiality, propriety, and admissibility, each of which objections are expressly reserved and may be interposed at any other proceeding in this case or any other action.

15.    No incidental or implied admissions are intended by any response by Amazon.com to any interrogatory.  That Amazon.com has responded to any interrogatory is not an admission that Amazon.com accepts or admits the existence of any alleged facts set forth in or assumed by such interrogatory, or that the making of the response constitutes admissible evidence.

## SPECIFIC OBJECTIONS AND RESPONSES

Subject to the foregoing General Objections, which are incorporated by reference as though set forth fully in each response herein, Amazon.com responds to Cordance's interrogatories as follows:

## INTERROGATORY NO. 14

State the basis for your allegation that Cordance has infringed or will infringe the '369 patent including, without limitation, an identification of the specific acts by Cordance that form the basis for your allegation that Cordance has infringed or will infringe the '369 patent either directly or indirectly, and a claim chart for each asserted claim identifying how each claim limitation is met by an accused structure or method and also identifying the person or entity that practices or will practice such limitation.

## RESPONSE TO INTERROGATORY NO. 14

Amazon.com incorporates by reference each of its General Objections.  Amazon.com objects to the interrogatory to the extent it seeks disclosure of information protected by the attorney-client privilege, attorney work-product doctrine, or any other applicable privilege or protection as provided by any applicable law.  Amazon.com further objects to this interrogatory to the extent that it is compound and/or is comprised of subparts constituting more than one interrogatory.  Amazon.com further objects to this Interrogatory as premature, and therefore

unduly burdensome and harassing, to the extent that it seeks each basis for Amazon.com's

allegation prior to any opportunity for meaningful discovery. *See, e.g., In re Convergent Tech.*

*Sec. Litig.*, 108 F.R.D. 328 (N.D. Cal. 1985). Amazon.com objects to this interrogatory as

premature in that it seeks discovery dependant on claim construction and expert opinion analysis.

Amazon.com further objects to this interrogatory to the extent it seeks information in

contravention of the timetable contemplated by the Federal Rules and Amended Scheduling

Order. Amazon.com will supplement its responses at the appropriate time.

       Subject to Amazon.com's General and Specific Objections, Amazon.com responds as

follows:

| Claim 9 | Cordance's i-name technology |
|---|---|
| A networked personal contact management system, comprising: | Cordance provides technology that is the basis for a networked personal contact management system.<br><br>Cordance is a corporate administrator of the global i-names registry. In addition, Cordance "actively" works with its i-brokers to deploys i-services, which include the unified address book service. Unified address book is "a single consolidated way" to manage user's contacts and communications across all user's devices and applications using i-names. Users login into their i-name accounts through i-brokers via a network.<br><br>http://inames.net/service_address.html<br>http://cordance.net<br>http://www.cordance.net/press/inames_global-2006-6-20.html |
| a database which contains personal data records of a plurality of users, at least some of the data records including contact information of respective users; and | Cordance maintains a database which contains personal data records of users, at least some of the data records include contact information of respective users.<br><br>Cordance maintains the global i-names registry database that contains personal records of |

| | users. For example, when a user registers his/her i-name with an i-broker, the user is required to enter his/her contact information, which may include name, telephone number(s), physical address, and email address(es). This information is stored in the registry. In the registry, the personal record of the user includes the user's i-name and contact information.

Global Services Specification V1.0, Appendix C at 9. |
| --- | --- |
| a server system which provides restricted access to the database through an interface that provides functions for each user to at least (a) directly modify the user's own respective [sic] personal data record within the database, (b) select other users from the database to add to a virtual personal address book of the user, and (c) specify, on a user-by-user basis, permissions for other users to view the personal data record of the user through virtual virtual personal address books of such other users; | Cordance and/or its i-brokers and partners with whom Cordance actively works maintain a server system which provides restricted access to the global i-name registry database through an interface.

A server supporting the global i-name registry and the unified address book i-service provides restricted access to the registry through an interface. Users may login to their i-name accounts through i-brokers. The login provides the restricted access to the database containing personal data records of i-name registrants.

Cordance and/or its i-bokers and partners with whom Cordance actively and jointly works further provide each user with an ability to directly modify the user's personal data record within the registry, to select other users from the registry to add to the user's virtual address book, and to specify permissions for other users to view the user's personal data record.

With the unified address book service, an i-name registrant may modify or update his/her contact information. In addition, the i-name registrant may maintain his/her contact list. The contacts on the list are identified by i-names that represent users in the global registry. The contacts may also be added to the registrant's address book by automatically capturing i-names from calls, emails or SMSs. The links between i-names of contacts is maintained as long as each user wants to keep |

6

| | the link. Every i-name registrant controls his/her own information and relationships with contacts.<br><br>http://inames.net/service_address.html |
|---|---|
| wherein users directly view the data records of other users through the virtual address books according to said permissions, so that updates by users to their own respective personal records are reflected automatically within the virtual personal address books of other users. | Cordance through its i-names technology provides users with an ability to directly view data records of other users through their address books according to their permissions. Updates by users to their personal data records are automatically reflected in the address books of the user's contacts.<br><br>The unified address book service provides the users with an ability to associate their contact information with their i-name. This "dramatically simplifies the task of managing constantly changing directories of member, employee, student, and volunteer information." Changes made to an i-registrant's contact information are automatically reflected in his/her contacts' address books, as new information is associated with the registrant's i-name that is present in the address books of the contacts.<br><br>http://inames.net/service_address.html |
| **Claim 10** | **Cordance i-name technology** |
| The networked personal contact management system as in claim 9, further comprising synchronization software which sychronizes a personal digital assistant (PDA) device with a user's virtual personal address book over a computer network. | Cordance i-names technology further allows synchronization of personal digital assistant (PDA) device with a user's virtual personal address book over a computer network.<br><br>All user devices can share the user's address book.<br><br>http://inames.net/service_address.html |

## SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 14

Cordance is or will be liable as an infringer for its acts which do, or will, induce and/or contribute to infringement. Cordance promotes and encourages others to use its i-name technology through which the accused i-services operate and profits thereby. It operates i-

names.net through which it encourages people to purchase i-names by promoting various i-services. Cordance has developed and continues to develop the i-names architecture by which others are able to infringe the asserted patent. It has created and standardized the XRI/DI protocol and actively participated in creation of the XDI.org registry. Through its activities within XDI.org, Cordance actively induces others to use address book services with i-names. It actively promotes the adoption of i-name technology through marketing i-services (such as the UAB) as beneficial uses of i-names technology. Further, it actively promotes and registers i-brokers that sell Cordance's i-names and i-services and Cordance receives licensing fees from registered i-brokers. In turn, and per Cordance's direction, i-brokers actively promote Cordance's i-name technology, including its use for i-services. Cordance also actively works with i-brokers worldwide to develop and deploy i-services.

## SUPPLEMENTATION

Discovery in this case is not complete and Amazon.com's investigation is ongoing. The responses herein are based upon Amazon.com's present understanding and analysis. Further independent discovery, independent investigation, legal research and analysis by Amazon.com, its counsel, and/or its experts or consultants may supply additional information and/or add meaning to known information. The responses hereinafter set forth are given without prejudice to Amazon.com's right to introduce evidence of any additional information or compiled facts or interpretation thereof, or to supplement, modify, or otherwise change these responses. Much of the discovery sought in these Interrogatories is speculative or moot prior to, or, in practice, contingent on, Plaintiff providing substantive explication of its contentions and/or bases for its claims which it has chosen not to do in connection with these Interrogatories or elsewhere. Amazon.com anticipates that the discovery sought by these Interrogatories will be developed

subsequent to Plaintiff providing such information, the Court construing terms in the claims

asserted, and other events in the litigation.

POTTER ANDERSON & CORROON LLP

OF COUNSEL:

Lynn H. Pasahow
J. David Hadden
Darren E. Donnelly
Saina S. Shamilov
Ryan Marton
FENWICK & WEST LLP
801 California Street
Mountain View, CA 94041
Tel: (650) 988-8500

Dated: April 21, 2008
861099 / 30763

By:    /s/ Richard L. Horwitz
       Richard L. Horwitz (#2246)
       David E. Moore (#3983)
       Hercules Plaza, 6th Floor
       1313 N. Market Street
       Wilmington, Delaware  19801
       Tel:  (302) 984-6000
       rhorwitz@potteranderson.com
       dmoore@potteranderson.com

*Attorneys for Defendant and Counterclaim
Plaintiff Amazon.com, Inc.*

9

## CERTIFICATE OF SERVICE

I, Richard L. Horwitz, hereby certify that on April 21, 2008, true and correct copies of the

within document were served on the following counsel of record at the addresses and in the

manner indicated:

### VIA HAND DELIVERY & ELECTRONIC MAIL

Steven J. Balick
John G. Day
Tiffany Geyer Lydon
Ashby & Geddes
500 Delaware Avenue, 8th Floor
Wilmington, DE 19899
sbalick@ashby-geddes.com
jday@ashby-geddes.com
tlydon@ashby-geddes.com

### VIA ELECTRONIC MAIL

Michael A. Albert
Robert M. Abrahamsen
Wolf, Greenfield & Sacks, P.C.
600 Atlantic Avenue
Boston, MA 02210-2206
malbert@wolfgreenfield.com
rabrahamsen@wolfgreenfield.com


_/s/ Richard L. Horwitz_____
Richard L Horwitz


770560 / 30763

# EXHIBIT

# D

**From:** O'Neill, Jeffrey C. [Jeffrey.ONeill@WolfGreenfield.Com]
**Sent:** Tuesday, July 10, 2007 2:31 PM
**To:** Ryan Marton
**Subject:** search terms for Amazon's production

Dear Ryan,

I am writing in response to your email of June 29, 2007, in which you suggested search terms that Amazon would use for its production. Below, Cordance lists additional search terms for Amazon's production. Of course, notwithstanding the search terms, Amazon is required to produce responsive documents in its possession. Such documents would include documents produced by either party in the Amazon v. Barnes and Noble litigation.

best regards,
Jeff O'Neill

| Amazon's Suggested Terms | Cordance's Additional Terms |
|---|---|
| *1-click* or *1click* | *1-click* or *1click* or "*1 click*" |
| *one-click* or *oneclick* | *one-click* or *oneclick* or "*one click*" |
|  | "single-action" or "singleaction" or "single action" |
|  | "one-step" or "onestep" or "one step" |
| CHO or "confirm holding orders" | CHO or "confirm holding orders" |
| "initiate and confirm" | initiate w/20 confirm |
|  | order w/20 confirm |
| "session id" | session-id or sessionid or "session id" |
| "customer id" | customer-id or customerid or "customer id" |
| "session list" | session-list or sessionlist or "session list" |
| "session items" | session-item* or session-item* or "session item*" |
| UBID* | *UBID* |
| *x-main* | *x-main* |
| *XDI.org | *XDI* or "XRI data interchange" |
| "XRI" | *XRI* or "extensible resource identifier" |
|  | *XNS* or "extensible name service" |
| iname* or i-name* or i name* | *iname* or *i-name* or "*i name*" |
| "Drummond Reed" | Drummond and Reed |
|  | Peter and Heyman* |
|  | Steven and Mushero |
|  | "Kevin Jones" or "Kevin Bernard Jones" |
|  | Jeffrey and Oberlander |
|  | Dan and Banay |
| '710 | *710* |

| '411 | *411* |
|---|---|
| "extensible resource identifier*" | "extensible resource identifier*" |
| Cordance | *Cordance* or *OneName* or *Intermind* or *SoftPages* |
| | 5,862,325 or 5862325 or *722,314 or *722314 |
| | 6,044,205 or 6044205 or *609,115 or *609115 |
| | 6,088,717 or 6088717 or *143,888 or *143888 |
| | 6,345,288 or 6345288 or *570,675 or *570675 |
| | 6,757,710 or 6757710 or *068,341 or *068341 |
| | abandon and "shopping cart" |
| | friction and "shopping cart" |
| | cookie and "shopping cart" |
| | persistent and "shopping cart" |
| | state and "shopping cart" |
| | session and "shopping cart" |
| | xml and object |
| | metadata or "meta data" |
| | "communications object" |
| | preserv* w/5 state |
| | CompuServe |
| | "America Online" |
| | FirstClass |
| | Prodigy |
| | (wiseman and 446) or 5,168,446 or 5168446 |
| | Broadvision or chelliah or 5,710,887 or 5710887 |
| | (joseph and 034) or 5,819,034 or 5819034 |
| | openmarket or "open market" or (payne and 314) or 5,715,314 or 5,715,314 |
| | SpiegelConnect |
| | softcart or "soft cart" or mercantec |
| | cdnow* |
| | "netscape merchant system" |

**Jeffrey C. O'Neill, Ph.D.**
joneill@wolfgreenfield.com
Direct Dial 617.646.8390

**Wolf Greenfield**
*Specialists in Intellectual Property Law*
Wolf, Greenfield & Sacks, P.C.
600 Atlantic Avenue
Boston, Massachusetts 02210-2206
617.646.8000  |  617.646.8646 fax

For more information about Wolf Greenfield, please visit us at http://www.wolfgreenfield.com

*This e-mail message and any attachments may contain confidential or privileged information. If you are not the intended recipient, please notify me immediately by replying to this message. Please destroy all copies of this message and any attachments. Thank you.*

# EXHIBIT

# E

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

|  |  |  |
|---|---|---|
| CORDANCE CORPORATION, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 06-491-*** (MPT) |
| | ) | |
| AMAZON.COM, INC., | ) | |
| | ) | |
| Defendant. | ) | |

## CORDANCE'S FIRST SET OF REQUESTS TO AMAZON

Pursuant to Fed. R. Civ. P. 34, Plaintiff, Cordance Corporation ("Plaintiff" or "Cordance"), serves the following requests for the production of documents, things, and electronically stored information, on Defendant, Amazon.com, Inc. ("Defendant" or "Amazon").

## INSTRUCTIONS AND DEFINITIONS

1.    The "'710 Patent" means United States Patent No. 6,757,710.

2.    The "Cordance Patents" means United States Patent Nos. 5,862,325, 6,044,205, 6,088,717, 6,345,288, and 6,757,710.

3.    "Prior Art" includes, by way of example and without limitation, the subject matter described in 35 U.S.C. §§ 102, 103.

4.    "Electronically stored information" or "ESI" means information created, manipulated, communicated, stored, or utilized in digital form.  ESI includes, without limitation, data stored on or in computer servers, computer desktops, laptops, handheld or tablet computers, portable digital media, backup media, CD-ROMs, DVD-ROMs, floppy discs, non-volatile memory including flash memory devices, external hard drives, personal digital assistants such as Palm or Blackberry devices, cell phones, electronic voicemail systems, text messages, instant

messages, emails and attachments to emails, or any other device or medium capable of storing data in any format.

5. ESI comprising email shall be produced in unencrypted native format if the email is stored in Microsoft Outlook, Microsoft Exchange, Microsoft Outlook Express, or any standard email format such as mbox files or Maildir files. All other email shall be produced in an electronically searchable format that preserves all metadata contained in email headers and that preserves the connection between each email and its attachments, if any. ESI comprising word processor documents or spreadsheets shall be produced in native format. ESI comprising Microsoft Access databases shall also be produced in native format. All other ESI shall be produced in a reasonably usable electronic format.

6. All requests shall be deemed to include ESI, paper documents, and other things.

7. If Amazon objects to producing responsive matter because of an asserted privilege or protection, the responsive matter must still be described in sufficient detail for Cordance to assess the applicability of the asserted privilege or protection, as set forth in Fed. R. Civ. P. 26(b)(5). Accordingly, without limitation, the date, type, author, recipient and general subject matter of any such matter must be identified.

8. The ESI, documents, and things requested herein are to be produced at the offices of Wolf, Greenfield & Sacks, P.C., 600 Atlantic Avenue, Boston, Massachusetts 02210, or at such other location upon which counsel may agree.

9. This Request for Production shall be deemed to be continuing; if, after producing documents, things, or ESI, Amazon becomes aware of further matter responsive to this request,

such matter shall be produced whether such matter is newly discovered, newly created or otherwise.

## REQUESTS

1.    All documents, things, or ESI identified or referenced in your responses to Cordance's First Set of Interrogatories to Amazon.

2.    All documents, things, or ESI reviewed or considered in preparing your responses to Cordance's First Set of Interrogatories to Amazon or in preparing your responses to these Requests.

3.    All documents, things, or ESI concerning the conception, design, development, or reduction to practice of Amazon's 1-Click purchasing system, including, without limitation, sketches, drafts, models, prototypes, drawings, memoranda and test results.

4.    All source code for Amazon's 1-Click purchasing system.

5.    All memoranda, reports, studies, prospectuses, correspondence, sales, revenue, or profit projections, and presentations concerning any business, financial, or marketing planning or budgeting for the 1-Click purchasing system.

6.    All agreements, licenses, and other contracts to which Amazon is or was a party concerning any patent or technology.

7.    Documents, things, or ESI sufficient to show the organizational structure of Amazon from 2004 to the present.

8.    All documents, things, or ESI concerning any opinions of counsel concerning Cordance or the Cordance Patents. Without limitation of the foregoing, all drafts of such opinions, all documents, things, or ESI referenced or prepared in connection with the

development of such opinions, and all documents, things, or ESI supporting, negating, or otherwise concerning a contention that any infringement of the '710 Patent by Amazon was not willful.

9.    All documents, things, or ESI concerning any of Amazon's Affirmative Defenses or Counterclaims.

10.    All documents, things, or ESI concerning any harm that Amazon alleges it would suffer if it were enjoined from using the 1-Click purchasing system.

11.    All documents, things, or ESI, including all Prior Art, concerning your contention that any claim of the '710 Patent is invalid.

12.    All documents, things, or ESI, including all Prior Art, concerning your contention that Amazon does not infringe any claim of the '710 Patent.

13.    All documents, things, or ESI concerning any attempt by Amazon to design around, or otherwise avoid infringement of, the '710 Patent, including any prior art searches.

14.    All data and projections, whether internal to Amazon or from an outside source, concerning revenues, growth, market share, competition or trends concerning the use of the 1-Click purchasing system, from 2004 to the present.

15.    All witness statements obtained by Amazon concerning this litigation.

16.    All documents, things, or ESI concerning Amazon's intra-company communications, or any communications between Amazon and any other person or entity, concerning this action or the '710 Patent.

17.    All documents, things, or ESI concerning any contribution or participation by any insurance company, or any other non-party, to Amazon's defense of this litigation.

18.  For each person Amazon intends to call as an expert witness in this case:

    (a)  all publications, articles, books, and/or papers authored, co-authored, edited, co-edited, or otherwise generated by such person;

    (b)  all transcripts, including all exhibits thereto, of any trial and/or deposition testimony of such person in any prior litigation;

    (c)  all documents, things, or ESI reviewed and/or consulted by or on behalf of such person as a part of his or her participation in this case;

    (d)  all documents, things, or ESI provided to such person in connection with this case; and

    (e)  all documents, things, or ESI (including resumes and curricula vitae) concerning the education, experience, and/or training of such person.

19.  All minutes and other records of any discussion by Amazon's Board of Directors concerning Cordance or the Cordance Patents.

20.  All business plans, marketing plans, analyses or studies concerning the 1-Click purchasing system.

21.  All documents, things, or ESI concerning the licensing of U.S. Patent No. 5,960,411.

22.  Documents, things, or ESI sufficient to show Amazon's policies regarding document retention and/or destruction from 1997 to the present.

23.  All documents, things, or ESI concerning Cordance.

24.  All documents, things, or ESI concerning the Cordance Patents.

25.  All documents, things, or ESI concerning i-names, Extensible Resource Identifiers (XRI), XRI Data Interchange (XDI), or XDI.ORG.

26.  All income and profit and loss statements from June 2004 to present.

27.    All documents, things, or ESI concerning revenue derived through use of Amazon's 1-Click ordering system.

28.    All documents, things, or ESI concerning profitability of the use of Amazon's 1-Click ordering system.

29.    All marketing materials concerning Amazon's 1-Click ordering system.

30.    All documents, things, or ESI concerning the success of Amazon's 1-Click ordering system.

31.    All pleadings, motions, memoranda, declarations, affidavits, transcripts, orders, and correspondence concerning any litigation in which Amazon has been involved relating to U.S. Patent No. 5,960,411.

32.    All correspondence Amazon has had with other entities concerning U.S. Patent No. 5,960,411.

33.    All correspondence with third parties relating to this litigation, the '710 patent, Cordance, Drummond Reed, i-names, Extensible Resource Identifiers (XRI), XRI Data Interchange (XDI), or XDI.ORG.

ASHBY & GEDDES

_____
Steven J. Balick (I.D. #2114)
John G. Day (I.D. #2403)
Tiffany Geyer Lydon (I.D. #3950)
500 Delaware Avenue, 8th Floor
P.O. Box 1150
Wilmington, DE 19899
Telephone: (302) 654-1888
Facsimile: (302) 654-2067
sbalick@ashby-geddes.com
jday@ashby-geddes.com
tlydon@ashby-geddes.com

*Attorneys for Plaintiff Cordance Corporation*

*Of Counsel:*

Michael A. Albert
Robert M. Abrahamsen
Adam J. Kessel
WOLF, GREENFIELD & SACKS, P.C.
600 Atlantic Avenue
Boston, Massachusetts 02210
Telephone: (617) 646-8000
Facsimile: (617) 646-8646
malbert@wolfgreenfield.com
rabrahamsen@wolfgreenfield.com
akessel@wolfgreenfield.com

Dated: January 5, 2006
176623.1

- 7 -

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that on the 5th day of January, 2007, the attached **CORDANCE'S FIRST**

**SET OF REQUESTS TO AMAZON** was served upon the below-named counsel of record at

the addresses and in the manner indicated:


Richard L. Horwitz, Esquire                             <u>HAND DELIVERY</u>
Potter Anderson & Corroon LLP
Hercules Plaza, 6th Floor
1313 North Market Street
Wilmington, DE  19801

Lynn H. Pasahow, Esquire                                <u>VIA FEDERAL EXPRESS</u>
Fenwick & West LLP
801 California Street
Mountain View, CA  94041


_____
Tiffany Geyer Lydon

174753.1

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| CORDANCE CORPORATION, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 06-491-*** |
| | ) | |
| AMAZON.COM, INC., | ) | |
| | ) | |
| Defendant. | ) | |

## NOTICE OF SERVICE

The undersigned hereby certifies that on the 5th day of January, 2007, copies of

**CORDANCE'S FIRST SET OF REQUESTS TO AMAZON** were served upon the following

counsel of record at the address and in the manner indicated:

Richard L. Horwitz, Esquire                          HAND DELIVERY
Potter Anderson & Corroon LLP
Hercules Plaza, 6th Floor
1313 North Market Street
Wilmington, DE 19801

Lynn H. Pasahow, Esquire                          VIA FEDERAL EXPRESS
Fenwick & West LLP
801 California Street
Mountain View, CA 94041

ASHBY & GEDDES

/s/ Tiffany Geyer Lydon
_____
Steven J. Balick (I.D. # 2114)
John G. Day (I.D. # 2403)
Tiffany Geyer Lydon (I.D. # 3950)
500 Delaware Avenue, 8th Floor
P.O. Box 1150
Wilmington, DE 19899
(302) 654-1888
sbalick@ashby-geddes.com
jday@ashby-geddes.com
tlydon@ashby-geddes.com

*Attorneys for Plaintiff*

*Of Counsel:*

Michael A. Albert
Robert M. Abrahamsen
Adam J. Kessel
WOLF, GREENFIELD & SACKS, P.C.
600 Atlantic Avenue
Boston, Massachusetts 02210
Tel.: 617-646-8000
Fax: 617-646-8646

Dated:  January 5, 2007
174754.1

## CERTIFICATE OF SERVICE

I hereby certify that on the 5th day of January, 2007, the attached **NOTICE OF**

**SERVICE** was served upon the below-named counsel of record at the addresses and in the

manner indicated:


Richard L. Horwitz, Esquire                                    HAND DELIVERY
Potter Anderson & Corroon LLP
Hercules Plaza, 6th Floor
1313 North Market Street
Wilmington, DE  19801

Lynn H. Pasahow, Esquire                                    VIA FEDERAL EXPRESS
Fenwick & West LLP
801 California Street
Mountain View, CA  94041



*/s/ Tiffany Geyer Lydon*
_____
Tiffany Geyer Lydon

## Discovery Documents

<u>1:06-cv-00491-*** Cordance Corporation v. Amazon.com Inc.</u>
MEDIATION, PATENT, PaperDocuments

### U.S. District Court

### District of Delaware

### Notice of Electronic Filing

The following transaction was entered by Lydon, Tiffany on 1/5/2007 at 5:14 PM EST and filed on 1/5/2007

**Case Name:**       Cordance Corporation v. Amazon.com Inc.
**Case Number:**     <u>1:06-cv-491</u>
**Filer:**           Cordance Corporation
**Document Number:** <u>31</u>

**Docket Text:**
NOTICE OF SERVICE of First Set of Requests to Amazon by Cordance Corporation.(Lydon, Tiffany)

### 1:06-cv-491 Notice has been electronically mailed to:

Robert M. Abrahamsen    rabrahamsen@wolfgreenfield.com, litigation@wolfgreenfield.com

Michael A. Albert    Malbert@wolfgreenfield.com, dpefine@wolfgreenfield.com, Litigation@wolfgreenfield.com

Steven J. Balick    sbalick@ashby-geddes.com, dfioravanti@ashby-geddes.com, dharker@ashby-geddes.com, jday@ashby-geddes.com, lmaguire@ashby-geddes.com, mkipp@ashby-geddes.com, nlopez@ashby-geddes.com, rgamory@ashby-geddes.com, tlydon@ashby-geddes.com

John G. Day    jday@ashby-geddes.com, dfioravanti@ashby-geddes.com, dharker@ashby-geddes.com, lmaguire@ashby-geddes.com, mkipp@ashby-geddes.com, nlopez@ashby-geddes.com, sbalick@ashby-geddes.com, tlydon@ashby-geddes.com

Darren E. Donnelly    ddonnelly@fenwick.com

J. David Hadden    dhadden@fenwick.com

Adam J. Kessel    akessel@wolfgreenfield.com, litigation@wolfgreenfield.com

Tiffany Geyer Lydon    tlydon@ashby-geddes.com, dfioravanti@ashby-geddes.com

Ryan J. Marton    rmarton@fenwick.com

Gaurav Mathur    gmathur@fenwick.com

David Ellis Moore    dmoore@potteranderson.com, ntarantino@potteranderson.com

Lynn Pasahow    lpasahow@fenwick.com

Saina S. Shamilov    sshamilov@fenwick.com

**1:06-cv-491 Notice has been delivered by other means to:**

The following document(s) are associated with this transaction:

**Document description:**Main Document
**Original filename:**n/a
**Electronic document Stamp:**
[STAMP dcecfStamp_ID=1079733196 [Date=1/5/2007] [FileNumber=324173-0]

[62bc8a9b8dfe92f383d9a7c46f6d149d6edbe2c35e892ba4121800faffec907e4d510
1357ba88b6f6fedfc048c84a4d300f21625864ad799562d38ae1d5b67d7]]

# EXHIBIT

# F

**From:** Saina Shamilov
**Sent:** Friday, June 01, 2007 5:14 PM
**To:** 'Abrahamsen, Robert'
**Cc:** David Hadden; Darren Donnelly; Ryan Marton
**Subject:** RE: Electronic Document Search Terms

Bob,

Thank you for providing us with the terms. Below please find additional terms that Amazon.com believes would locate additional responsive and relevant information. Nothing in this email changes Cordance's obligation to produce all relevant and responsive information and Amazon.com's search terms provided below do not constitute an exhaustive list of terms that Cordance should use to satisfy its obligation. Amazon.com expects Cordance to fully comply with the obligations imposed on it by the Federal Rules and produce all responsive and relevant documents which are not immune from discovery. Moreover, as Cordance knows its documents better than Amazon.com, some of the terms provided below may need to be modified or expanded to capture all the relevant and responsive information. Feel free to contact me should you have any questions.

In addition, we have not received any documents responsive to the subpoena served on Mr. Reed three months ago. Please advise on when we can expect to receive documents in response to the subpoena.

I will get back to you with respect to the protective order dispute early next week.

**Additional terms:**

"Drummond Reed" or Reed or Drummond
XDI*
OneName
Intermind
Lloyds
Name of the independent patent counsel whose opinion was submitted to Lloyds
"Peter Heymann" or Heymann
"Steven Mushero" or Mushero
"Kevin Jones" or Jones
"Jeffrey Oberlander" or Oberlander
"Dan Banay" or Banay
data exchange
"on-line purchase" or "online purchase"
 object*
i-names
SoftPages
names of the two witnesses who purportedly signed Appendix A to Declaration of Drummond Reed under 37 C.F.R. 1.131.
"one click" or "1Click"
"barnes and noble" or "barnesandnoble" or "barnes & noble"
cookie*
automat*
alpha
beta
Minitel
CompuServe

America Online
FirstClass
Prodigy
license
Hyperconnector
SpiegelConnect
provider
consumer
"shopping cart"
"session id" or "SessionID"

The following are additional search terms relating to Amazon.com's counterclaim pursuant to Judge's Thynge's order compelling discovery from Cordance relating to the real and substantial controversy between the parties:

6,269,369 or 6269369
*962,997 or 962997
CeLiberate
Unified Address Book
i-Brokers
PlanetAll

Regards,
Saina

**Saina S. Shamilov**
Fenwick & West LLP
Tel 650.335.7694

**From:** Abrahamsen, Robert [mailto:Robert.Abrahamsen@WolfGreenfield.com]
**Sent:** Friday, May 25, 2007 7:16 AM
**To:** Saina Shamilov
**Cc:** Albert, Michael; O'Neill, Jeffrey C.
**Subject:** Electronic Document Search Terms

Saina - We have endeavored to obtain from Cordance all paper and electronic documents that could potentially be responsive to Amazon's requests and/or relevant to the case. We have completed our review of the paper documents and plan on producing a responsive, non-objected to subset of those materials shortly.

Pursuant to Rule 5 of the Default Standard for Discovery of Electronic Documents in the District of Delaware, we plan on producing electronic documents based on the following set of search terms:

5,862,325 or 5862325
*722,314 or *722314 (for 08/722,314)
6,044,205 or 6044205
*609,115 or *609115 (for 08/609,115)
6,088,717 or 6088717
*143,888 or *143888 (for 09/143,888)
6,345,288 or 6345288
*570,675 or *570675 (for 09/570,675)
6,757,710 or 6757710

*068,341 or *068341 (for 10/068,341)
"communication system"
"service object"
"partner server"
metadata
"meta data"
"control structure"
Amazon*
"1-click"

Where * represents a wildcard character that will match any group of 0 or more characters.

If you would like for us to consider additional search terms, please contact us within the next week.

Thanks,
Bob

**Robert M. Abrahamsen**
rabrahamsen@wolfgreenfield.com
direct dial 617.646.8256
Wolf, Greenfield & Sacks, P.C.
600 Atlantic Avenue
Boston, Massachusetts 02210-2206
617.646.8000 | 617.646.8646 fax
*This e-mail message and any attachments may contain confidential or privileged information. If you are not the intended recipient, please notify me immediately by replying to this message. Please destroy all copies of this message and any attachments. Thank you.*

# EXHIBIT
# G

**From:** Abrahamsen, Robert [mailto:Robert.Abrahamsen@WolfGreenfield.com]
**Sent:** Wednesday, June 20, 2007 12:57 PM
**To:** Saina Shamilov
**Cc:** Albert, Michael; O'Neill, Jeffrey C.
**Subject:** RE: Electronic Document Search Terms

Saina - We believe several of the terms you proposed are far too broad.  For instance, the name of the company or an employee of the company would produce mostly irrelevant documents.  Generic terms, such as "object," would also produce mostly irrelevant documents.  We do not plan on requesting that you employ search terms such as "Amazon" or "Bezos."

We plan on narrowing your suggested queries as shown below.  Should you believe, after reviewing our initial production, that further search terms should be employed, we expect that you will let us know.

Bob

| Amazon's Proposal | Cordance's Counter-proposal | Explanation |
| --- | --- | --- |
| (drummond reed) or reed or drummond | (drummond OR reed) AND patent | Overbroad |
| xdi* | | Relevant only to counterclaim |
| onename | onename AND patent | Overbroad |
| intermind | intermind AND patent | Overbroad |
| (peter heymann) or heymann | heymann AND patent | Overbroad |
| (steven mushero) or mushero | mushero AND patent | Overbroad |
| (kevin jones) or jones | jones AND patent | Overbroad |
| (jeffrey oberlander) or oberlander | oberlander AND patent | Overbroad |
| (dan banay) or banay | banay AND patent | Overbroad |
| object* | object* AND automat* | Overbroad |
| inames | | Relevant only to counterclaim |
| automat* | object* AND automat* | Overbroad |
| license | license AND patent | Overbroad |
| provider | provider AND consumer | Overbroad |
| consumer | provider AND consumer | Overbroad |

**From:** Saina Shamilov [mailto:sshamilov@fenwick.com]
**Sent:** Friday, June 01, 2007 8:14 PM
**To:** Abrahamsen, Robert
**Cc:** David Hadden; Darren Donnelly; Ryan Marton
**Subject:** RE: Electronic Document Search Terms

Bob,

Thank you for providing us with the terms. Below please find additional terms that Amazon.com believes would locate additional responsive and relevant information. Nothing in this email changes Cordance's obligation to produce all relevant and responsive information and Amazon.com's search terms provided below do not constitute an exhaustive list of terms that Cordance should use to satisfy its obligation. Amazon.com expects Cordance to fully comply with the obligations imposed on it by the Federal Rules and produce all responsive and relevant documents which are not immune from discovery. Moreover, as Cordance knows its documents better than Amazon.com, some of the terms provided below may need to be modified or expanded to capture all the relevant and responsive information. Feel free to contact me should you have any questions.

In addition, we have not received any documents responsive to the subpoena served on Mr. Reed three months ago. Please advise on when we can expect to receive documents in response to the subpoena.

I will get back to you with respect to the protective order dispute early next week.

**Additional terms:**

"Drummond Reed" or Reed or Drummond
XDI*
OneName
Intermind
Lloyds
Name of the independent patent counsel whose opinion was submitted to Lloyds
"Peter Heymann" or Heymann
"Steven Mushero" or Mushero
"Kevin Jones" or Jones
"Jeffrey Oberlander" or Oberlander
"Dan Banay" or Banay
data exchange
"on-line purchase" or "online purchase"
 object*
i-names
SoftPages
names of the two witnesses who purportedly signed Appendix A to Declaration of Drummond Reed under 37 C.F.R. 1.131.
"one click" or "1Click"
"barnes and noble" or "barnesandnoble" or "barnes & noble"
cookie*
automat*
alpha
beta
Minitel
CompuServe
America Online
FirstClass
Prodigy

license
Hyperconnector
SpiegelConnect
provider
consumer
"shopping cart"
"session id" or "SessionID"


The following are additional search terms relating to Amazon.com's counterclaim pursuant to Judge's Thynge's order compelling discovery from Cordance relating to the real and substantial controversy between the parties:

6,269,369 or 6269369
*962,997 or 962997
CeLiberate
Unified Address Book
i-Brokers
PlanetAll


Regards,
Saina

**Saina S. Shamilov**
Fenwick & West LLP
Tel 650.335.7694


**From:** Abrahamsen, Robert [mailto:Robert.Abrahamsen@WolfGreenfield.com]
**Sent:** Friday, May 25, 2007 7:16 AM
**To:** Saina Shamilov
**Cc:** Albert, Michael; O'Neill, Jeffrey C.
**Subject:** Electronic Document Search Terms

Saina - We have endeavored to obtain from Cordance all paper and electronic documents that could potentially be responsive to Amazon's requests and/or relevant to the case. We have completed our review of the paper documents and plan on producing a responsive, non-objected to subset of those materials shortly.

Pursuant to Rule 5 of the Default Standard for Discovery of Electronic Documents in the District of Delaware, we plan on producing electronic documents based on the following set of search terms:

5,862,325 or 5862325
*722,314 or *722314 (for 08/722,314)
6,044,205 or 6044205
*609,115 or *609115 (for 08/609,115)
6,088,717 or 6088717
*143,888 or *143888 (for 09/143,888)
6,345,288 or 6345288
*570,675 or *570675 (for 09/570,675)
6,757,710 or 6757710
*068,341 or *068341 (for 10/068,341)
"communication system"
"service object"

"partner server"
metadata
"meta data"
"control structure"
Amazon*
"1-click"
Where * represents a wildcard character that will match any group of 0 or more characters.
If you would like for us to consider additional search terms, please contact us within the next week.
Thanks,
Bob

**Robert M. Abrahamsen**
rabrahamsen@wolfgreenfield.com
direct dial 617.646.8256
Wolf, Greenfield & Sacks, P.C.
600 Atlantic Avenue
Boston, Massachusetts 02210-2206
617.646.8000 | 617.646.8646 fax
*This e-mail message and any attachments may contain confidential or privileged information. If you are not the intended recipient, please notify me immediately by replying to this message. Please destroy all copies of this message and any attachments. Thank you.*

-------------------------------------------
IRS Circular 230 Disclosure: To ensure compliance with requirements imposed by the IRS, we inform you that any U.S. federal tax advice in this communication (including attachments) is not intended or written by Fenwick & West LLP to be used, and cannot be used, for the purpose of (i) avoiding penalties under the Internal Revenue Code or (ii) promoting, marketing, or recommending to another party any transaction or matter addressed herein.
-------------------------------------------

ATTENTION:
The information contained in this message may be legally privileged and confidential.  It is intended to be read only by the individual or entity to whom it is addressed or by their designee. If the reader of this message is not the intended recipient, you are on notice that any distribution of this message, in any form, is strictly prohibited.

If you have received this message in error, please immediately notify the sender and/or Fenwick & West LLP by telephone at (650) 988-8500 and delete or destroy any copy of this message.