**Potter**
**Anderson**
**& Corroon LLP**

1313 North Market Street
P.O. Box 951
Wilmington, DE 19899-0951
302 984-6000

www.potteranderson.com

David E. Moore
Attorney at Law
dmoore@potteranderson.com
302 984-6147  Direct Phone
302 658-1192  Fax

May 22, 20088

**VIA ELECTRONIC FILING**

The Honorable Mary Pat Thynge
United States Magistrate Judge
United States District Court
  for the District of Delaware
844 N. King Street
Wilmington, Delaware 19801

Re:    *Cordance Corporation v. Amazon.com, Inc.*, C.A. No. 06-491-MPT

Dear Judge Thynge:

This is in response to Cordance's letter of May 21, 2008 requesting the Court to find Amazon in contempt of the last Court Order and enter a supplemental protective order with the prosecution bar provision proposed by Cordance.

**I.    Amazon complied with this Court's April 1, 2008 Order**

Amazon is not in "contempt" of this Court's April 1, 2008 Order, and Cordance has brought this motion asking for relief it has never raised with the Court or Amazon—to have a two-hour deposition that it asked to take by telephone (and is ready to do so) not occur and the witness be ordered to fly across country to be deposed for those two hours. Amazon provided the discovery it was obligated to pursuant to April 1, 2008 Order, and, when Cordance has asked for supplementation, Amazon has provided that.

At the April 1, 2008 hearing, Cordance was ordered to provide supplemental infringement contentions illuminating its accusations related to Amazon's S3 system and its "Feedback Systems" within five days, and Amazon was to produce documents related to the operation of the systems accused in the supplemental infringement contentions within 10 days after receipt and on a rolling basis thereafter. *See* Exhibit A at 8:17-9:19. At the hearing, the Court also expressed concern that Cordance may not have a complete infringement theory. *Id* at p. 8:5-8.

That concern was prescient as Cordance's supplemental contentions provided little, if any, substantive guidance as to its theory of infringement. *See* Exhibit B (*e.g.* p.5). The best Amazon could glean from these contentions was that Cordance contended Amazon's data management technology in which "feedback" data is stored or replicated was the infringing aspect of the "Feedback System." Amazon calls that technology TOPPS, and on April 22, 2008, Amazon produced, *inter alia*, the source code for TOPPS and other systems and other technical documentation. This TOPPS system underlies both the customer product reviews system as well

The Honorable Mary Pat Thynge
May 22, 2008
Page 2

as the buyer and seller feedback system.  Since then, Amazon has continued to collect and has produced more than 30,000 pages of documentation and dozens of source code packages.

Thus, Cordance's assertion that Amazon did not produce a single page of technical documentation for the Feedback System until May 12, 2008 is incorrect.  It produced the core TOPPS design documentation and later several hundred more technical documents related to its "Feedback System."  Indeed, the May 12, 2008 production which Cordance claims included "only a handful of documents related to the Feedback System" was actually a production which consisted of 27,100 pages of developer email.

In any event, when Cordance wanted additional documentation and a two-hour telephonic deposition with an additional witness, Amazon agreed to provide both[1].

Its motion is a distraction, as its actions demonstrate.  *See* Exhibit C – L.  On May 19, 2008, Cordance's counsel demanded "a couple of key documents (e.g. system design documents) concerning the collection and processing of feedback about buyers and sellers" and a 2-3 hour telephone deposition of a witness knowledgeable on that topic.  *See* Exhibit C.  After identifying a witness and checking on his availability, Amazon agreed to provide the documents and make the witness available.  *See* Exhibit H.  In the meantime, Cordance scheduled the hearing for the parties' cross-motions, but said it would cancel the hearing if the discovery was forthcoming.  *See* Exhibit E.  Amazon agreed to provide the documents and "telephone deposition ... first thing Tuesday morning" that Cordance requested.  *See* Exhibit H.  Cordance's counsel has indicated that it is prepared, and intends, to take the telephonic deposition it requested on Tuesday, May 27, at 1:00 PM (PDT).  *See* Exhibit L.  Having received assurances that the documents and telephonic deposition it requested would be provided on the schedule it requested, and having already received a supplemental interrogatory response, Cordance raised new grounds (that the witness be flown to Boston for his two-hour deposition) to continue its cross-motion at the same time as Amazon's motion.  *See* Exhibit K.  The substantive discovery already is taking place and Cordance's newly-requested relief is not justified.

## II.  Supplemental Protective Order Issue

In its latest amended pleading, Cordance added three more patents to this suit.  The new patents, as alleged by Cordance, cover technologies different than the ones purportedly covered by the originally asserted patent.  Cordance accuses Amazon's 1-Click purchasing system of infringing the originally asserted patent, but accuses Amazon's Simple Storage System and "Feedback System" of infringing the newly asserted patents.  The parties agree that the prosecution bar provision of the protective order already entered in this case must limit patent prosecution activities in three distinct technological categories in order to protect Amazon's confidential information relating to the accused 1-Click, Simple Storage System and "Feedback Systems."  The parties disagree on the definition of the category that is designed to protect Amazon's feedback technology.

---

[1]Cordance's other purported justification—that it needs the relief it seeks to supplement its asserted claims before claim construction exchanges being—does not withstand scrutiny. Cordance served a supplemental interrogatory response on May 21st in which it asserted over 100 new claims.

The Honorable Mary Pat Thynge
May 22, 2008
Page 3

Cordance proposes the following language:

*Confidential systems and techniques, for collecting and processing electronic feedback information such as sellers' and buyers' feedback regarding each other or items for purchase online, which are not learned by the receiving individual from a source other than the Confidential or Highly-Confidential information received from Amazon.com in this litigation, **configured** for use in a multi-tier distributed on-line purchasing environment.*

Cordance's language, however, does not eliminate a risk of inadvertent misuse or disclosure of confidential information that patent prosecution bars are designed to eliminate. By including the word "configured" in its proposal, Cordance would narrowly limit the bar to only apply to those patents and patent applications that expressly were designed "for use in a multi-tier distributed on-line purchasing environment." But patent applications can incorporate and apply technology from one purpose for another, and more problematically, can cast an invention in general terms without specifically mentioning "a multi-tier distributed on-line purchasing environment." For example, such systems can be used in conjunction with sites like MySpace, which is not a "purchasing environment" but allows users to leave feedback about other users. Cordance's proposal would allow Amazon's technology to be incorporated (however unintentionally) into a patent with generic claims that can then be asserted against Amazon. That possibility presents an unacceptable risk, and the appropriate scope includes those patent applications which could be used in such a way. Thus, the appropriate field of technology is a feedback system that is "applicable" for use in a "multi-tier distributed online purchasing" and not the one that is specifically configured for use in such a narrow environment.

The parties also dispute whether an individual with access to Amazon's confidential information should keep records of what information it accesses if it participates in patent prosecuting activities prohibited by the patent prosecution bar. This dispute arose because Cordance requested modification of the Order of the Court previously entered. Specifically, because the prosecution bar limits patent prosecution activities in three technological categories, Cordance requested that the bar should not prevent an individual who only has knowledge of confidential information in one technological category from prosecuting patents in the other categories. Amazon agreed it would accommodate the change Cordance requested, but indicated that if Cordance wanted to make that change, in order for this category-by-category approach to work, there has to be a mechanism that will allow courts to determine what confidential information the individual had accessed in order to resolve disputes that may arise from allegations that the individual participated in patent prosecuting activities in violation of the patent prosecution bar. Amazon proposed the language in Exhibit M, which provides for reasonable recordkeeping if Cordance wants to pursue its category-by-category approach.[2] With millions of pages of information that will be produced in this case, it will be impossible for any human to remember and accurately describe what information he or she had accessed and whether that information related to the technological category in which patent prosecution activities occurred.

---

[2] Amazon also agrees with the non category-by-category approach in the Court's current Order.

The Honorable Mary Pat Thynge
May 22, 2008
Page 4

Respectfully,

/s/ David E. Moore

David E. Moore

DEM/msb
866005 / 30763

Enclosures
cc:     Clerk of the Court (via hand delivery)
        Steven J. Balick (via electronic mail)
        Robert M. Abrahamsen (via electronic mail)

# EXHIBIT A

1

```
 1                    IN THE UNITED STATES DISTRICT COURT

 2                    IN AND FOR THE DISTRICT OF DELAWARE

 3                              - - -
       CORDANCE CORPORATION,
 4                                    :     CIVIL ACTION
                   Plaintiff,         :
 5     v                              :
                                      :
 6     AMAZON.COM,                    :
                                      :     NO. 06-491 (MPT)
 7             Defendant.
                                   - - -
 8
                           Wilmington, Delaware
 9              Tuesday, April 1, 2008 at 1:03 p.m.
                        TELEPHONE CONFERENCE
10
                              - - -
11
       BEFORE:  HONORABLE MARY PAT THYNGE, U.S. MAGISTRATE JUDGE
12
                              - - -
13     APPEARANCES:

14
                   ASHBY & GEDDES
15                 BY:  JOHN G. DAY, ESQ.

16                     and

17                 WOLF GREENFIELD & SACKS, P.C.
                   BY:  MICHAEL C. ALBERT, ESQ.,
18                      ROBERT M. ABRAHAMSEN, ESQ., and
                        JEFFREY C. O'NEILL, ESQ.
19                 (Boston, Massachusetts)

20                     Counsel for Cordance Corporation

21
                   POTTER ANDERSON & CORROON, LLP
22                 BY:  RICHARD L. HORWITZ, ESQ.

23                     and

24
                                    Brian P. Gaffigan
25                                  Registered Merit Reporter
```

2

```
 1    APPEARANCES: (Continued)

 2

 3              FENWICK & WEST, LLP
                BY:  RYAN J. MARTON, ESQ., and
 4                   DARREN E. DONNELLY, ESQ.
                     (Mountain View, California)
 5
                          Counsel for Amazon.com
 6

 7

 8

 9

10

11

12                        - oOo -

13                  P R O C E E D I N G S

14              (REPORTER'S NOTE:  The following telephone

15    conference was held in chambers, beginning at 1:03 p.m.)

16              THE COURT:  Good afternoon, counsel.  This is

17    Judge Thynge.  Before we begin, I'd like to take a roll call

18    as to who is on for each of the parties.

19              Who is on the line, please, on behalf of

20    Cordance?

21              MR. DAY:  Good afternoon, Your Honor.  On behalf

22    of Cordance, you have John Day at Ashby & Geddes locally;

23    and with me on the line are Michael Albert, Robert

24    Abrahamsen and Jeff O'Neill from Wolf Greenfield & Sacks in

25    Boston.
```

3

1          MR. ABRAHAMSEN:  Good afternoon, Your Honor.

2          THE COURT:  Good afternoon, all.

3          MR. HORWITZ:  Good afternoon, Your Honor.  It's

4     Rich Horwitz on the line for Amazon here in Wilmington.

5          THE COURT:  Thank you.

6          MR. HORWITZ:  With me are Darren Donnelly and

7     Ryan Marton from Fenwick & West.

8          MR. MARTON:  Good afternoon.

9          THE COURT:  Good afternoon.  I'm sorry.  I am

10    missing some names.  Mr. Abrahamsen, your first name,

11    please?

12         MR. ABRAHAMSEN:  Robert.

13         THE COURT:  Thank you.  And I did not get the

14    last person who was on the line with Mr. Horwitz.

15         MR. HORWITZ:  Ryan Marton.

16         THE COURT:  Thank you.  I understand there are

17    competing discovery issues by both sides.  Why don't we take

18    the Cordance discovery issues, and they may overlap to a

19    large degree from what I recall from the reading.  So why

20    don't we start off with Cordance's position.

21         MR. ABRAHAMSEN:  Okay.  Your Honor, this is

22    Robert Abrahamsen.  Cordance scheduled this conference

23    because we were unable to get documents that we need very

24    much to advance the ball in our case.  More than four months

25    ago, we served document requests that asked for documents

4

1    from Amazon simple storage service and feedback system.  And

2    over the last couple months, we've been asking Amazon to

3    commit to a date certain when we're going to have those

4    documents; and they kept telling us repeatedly that they

5    were diligently collecting the documents, and that we would

6    have them in short time or soon; and that is why we

7    scheduled this hearing; and now I guess they're telling us

8    that they're not going to send us anything at all.

9          MR. MARTON:  Judge, this is Ryan Marton for

10    Amazon.

11          If you want to start with this issue, our

12    position on it is we have not received infringement

13    contentions related to the patents that have been asserted

14    against the feedback systems.  Back in November of 2007,

15    Cordance added three patents to this lawsuit and, sort of

16    without giving much clarity, accused us three, which is a

17    large scalable storage service that Amazon offers and a

18    number of feedback services that were not very clearly

19    identified.

20          Amazon propounded an interrogatory requesting

21    detailed contentions outlining how the asserted patents

22    mapped to these technologies.  And to date, we have not

23    received any meaningful response, particularly with regard

24    to S3 and the '205 patent that is asserted against it.  We

25    received no response.  And with regard to the '325 patent

5

1    and the '717 patent, both asserted against the "feedback
2    services," we received only a response that parrots the
3    language of the asserted claims and cites to no Amazon
4    services with any particularity.  It just says Amazon
5    feedback services perform these elements.
6                Without that information, it is virtually
7    impossible to determine what exactly it is we're to produce.
8    We're placed in a situation here where Cordance has
9    essentially reversed the standard order of discovery or is
10   attempting to reverse the standard order of discovery that
11   is followed in patent cases whereby the plaintiff
12   articulates a reasonably clear theory of their infringement
13   and identifies with particularity what it is they're
14   accusing and then the defendants are to provide discovery as
15   to what has been accused.  As it stands now, Amazon.com
16   cannot ascertain exactly what it is to provide.
17               THE COURT:  What information do you need from
18   them?
19               MR. MARTON:  What information does Cordance
20   need?
21               THE COURT:  No, what information does Amazon
22   need.
23               MR. MARTON:  We need to know exactly what it is
24   they're accusing.  I can start with S3.  S3 is a scalable
25   storage service that is a fairly large enterprise at Amazon.

6

1    It involves a number of access applications and has many

2    components that are certainly broader than anything found in

3    the '205 patent claims.  What we need to know is what parts

4    of that service are they accusing, and what is their general

5    theory.

6            There is a lot of information that is available

7    to the public about this service, including source code and

8    developer application guides that they can rely on and

9    provide some kind of infringement theories, so we could at

10   least narrow what it is we're to be collecting.

11           With regard to the feedback services, what we

12   need are clear identifications of what web pages they're

13   accusing.

14           THE COURT:  I'm sorry.  What?

15           MR. MARTON:  What web pages, specific screen

16   shots that they are accusing.  If they could direct us to

17   what they're accusing and point to elements in the claims

18   and mapped out together to give us a theory, that would be

19   the guide that we need.

20           The problem we're facing with the feedback

21   services, as articulated, it's a system for providing

22   comments on other people's reviews of products, a system

23   for providing feedback on products, a system for a buyer

24   providing feedback on a seller and a system for a seller

25   providing feedback on a buyer.

7

1           Now, that is a broad set of information that

2    crosses a number of groups at Amazon and incorporates a lot

3    of technology, including things that just absolutely could

4    not be encompassed or implicated by the asserted patent.

5    What we would like to see is some idea of what their theory

6    was when they brought these patents into the case.  And from

7    that, we could then more clearly figure out what we need to

8    provide.

9           THE COURT:  All right.  Thank you.

10          Does Cordance have a response?

11          MR. ABRAHAMSEN:  Your Honor, with respect to the

12   screen shots, and the identification of the web pages, that

13   stuff is all apparent just by looking at Amazon's primary

14   web pages.  That there are links that you click on to leave

15   feedback about buyers, about sellers, about products.  We

16   don't need to explain that to them.  That is one of the

17   primary features of their user interface for the website.

18          As far as the details of what happens once that

19   request or the form is submitted with the feedback, it's a

20   black box system, Your Honor.  We have no way of knowing for

21   sure what happens inside until we get some discovery about

22   that.  What is going to happen is that a feedback form, with

23   feedback about a seller, for example, will be submitted.

24   That form will be processed by the web server and then

25   grouped into another part of the system, stored and then

8

1   processed there, retrieved somewhere else.  Tracing the

2   form and that feedback information should not be that

3   difficult for Amazon, to give us documents sufficient to

4   identify how that takes place inside of its system.

5            THE COURT:  Well, that is interesting because

6   you just told me that you basically accused the system

7   because you are not certain 100 percent that it infringes

8   your patent.

9            MR. ABRAHAMSEN:  We made reasonable assumptions,

10  Your Honor, and we think it's very likely that it infringes.

11  But as far as mapping the limitations, the claim limitations

12  to specific components and specific actions, we don't have

13  the information we need at this point to do that.  When we

14  get the discovery, we agreed to update our interrogatories

15  to give them more detail.  We need discovery before we can

16  do that.

17           THE COURT:  What you are going to do before you

18  get the document discovery is you are going to provide them

19  with the following information:

20           What you presently know or are aware of or

21  assumed that you knew, you will provide them on the S3,

22  which is what parts of the services are accused and, as best

23  as you can tell, your infringement theory, that is, how it

24  infringes.  And on the feedback series, you will identify

25  the specific screen shots and/or what web pages are involved

9

 1    with some theory of infringement as to how you think it

 2    infringes, understanding that under Rule 26, both sides have

 3    the obligation to update their discovery answers once they

 4    get more information to be more specific.  Then once you

 5    provide that information, Amazon shall have ten days in

 6    which to produce the documents.

 7              MR. MARTON:  Your Honor, ten days would be

 8    rather quick turnaround time for meeting with everyone we

 9    would need to meet with and collecting everything.

10              THE COURT:  Well, do your best to get it done in

11    ten days, because this apparently has been festering for a

12    little while, and there have been some representations

13    indicated that you were making efforts to get documents

14    together.

15              MR. MARTON:  There has been some effort to get

16    documents together.  That is certainly not a completed

17    process.  We can complete a rolling production after ten

18    days; and we'll make our best efforts to get it done as

19    shortly thereafter as possible.

20              THE COURT:  Thank you.

21              MR. ABRAHAMSEN:  Your Honor, with respect to the

22    S3 system?

23              THE COURT:  Yes.

24              MR. ABRAHAMSEN:  We would like to consult with

25    our client who will be signing the interrogatory response,

10

```
1    giving this information, just to make sure he is on board
2    with all of our theories.
3              THE COURT:  And which client is that,
4    particularly?
5              MR. ABRAHAMSEN:  That is Cordance.
6              THE COURT:  I understand that is Cordance, but
7    is there a particular individual you want to consult with?
8    Because I know there is a problem now with the protective
9    order.
10             MR. ABRAHAMSEN:  That would be Drummond Reed.
11             THE COURT:  Yes, I understand.  He is the CTO.
12             MR. ABRAHAMSEN:  We want to make sure he is
13   onboard, and then we're happy to an articulate our
14   infringement theories in more detail with respect to S3.  We
15   just haven't been able to because we haven't been able to
16   consult with our client yet.
17             THE COURT:  Well, we will address that issue.
18   And since you brought it up, we will go into the next point
19   of that.  There is a problem with having -- is Mr. Reed
20   presently on the protective order?
21             MR. ABRAHAMSEN:  He is allowed to see highly
22   confidential information under the protective order, yes.
23             THE COURT:  So what is the problem on the part
24   of Amazon of having him see, having him review the theories
25   of infringement with counsel?  And that is a question asked
```

1    of Amazon.

2              MR. MARTON:  Okay.  Your Honor, Drummond Reed is

3    the primary inventor on the asserted patents in this case.

4    He, in fact, was the drafter of those patents, the primary

5    drafter and is the current CTO of Cordance.

6              THE COURT:  Back up a little bit before you

7    begin.  Cordance had originally brought an action that

8    raised a couple patents against you; right?

9              MR. MARTON:  That's correct.  Actually, the

10   initial lawsuit was only one patent.

11             THE COURT:  Fine.  It was one patent.  Was he

12   the inventor on that patent?

13             MR. MARTON:  He was the sole inventor on that

14   patent.

15             THE COURT:  Okay.  I just wanted to make sure I

16   understood when you were talking about it, you were

17   including what had originally been.

18             MR. MARTON:  Yes.

19             THE COURT:  Okay.  And --

20             MR. MARTON:  And he is a co-inventor on the

21   newly asserted patents.  So he is a critical player in this

22   lawsuit and a critical player for Cordance.  There was great

23   hesitation on the part of Amazon to share their confidential

24   information with Mr. Reed as he apparently is targeting them

25   and prosecutes patents in the space in which they operate.

1    In response to him being allowed to have access to

2    confidential Amazon information, the importance of the scope

3    of the prosecution bar was raised; and this court has

4    recognized that a prosecution bar is appropriate for him.

5              After the initial lawsuit began and we produced

6    documents related to the '710 patent and the accused

7    technology there, the 1-click feature, after Cordance was

8    able to review that information, they then, as we've

9    discussed, amended their complaint adding new accusations

10   related to other Drummond Reed patents.  The concern is that

11   he is taking Amazon information and expanding this lawsuit,

12   and so we have serious concern about his access to Amazon

13   confidential information.

14             THE COURT:  Well, let me back up a little bit.

15   There are really two points to the question.  The issue that

16   has been problematic, at least what is being said to me by

17   Cordance, they can't talk to him about the basis of their

18   infringement arguments against you initially on this point

19   for them to even give you an understanding or a better

20   understanding of how your particular operations, whether

21   it's the S3 or the feedback feature, infringe.  I'm assuming

22   you don't have a problem with them talking to him to be able

23   to disclose that information to you.

24             MR. MARTON:  That is absolutely correct.  As

25   long as there is no disclosure of Amazon confidential

1    information, they can consult with Drummond Reed all they

2    want.  In fact, they have another expert that they could

3    consult with, with regard to confidential information.

4           The reason this is an issue now is because

5    Cordance has taken the deposition of an ex-Amazon employee,

6    David Barth, who is one of the key developers of the S3

7    system, and so that Cordance's lawyers have in their

8    possession confidential Amazon information which they would

9    like to share with Drummond Reed.  Amazon objects to the

10   sharing of that information with Drummond Reed unless he

11   subjects himself to an appropriately drafted prosecution

12   bar.  That is where we're at.

13          We did not expect that this issue would be

14   raised in the motion.  We thought the parties were working

15   out this issue amongst themselves and didn't see it as a

16   gaining issue for the discovery that we sought regarding

17   infringement contentions, particularly in light of

18   Delaware's Local Rule 26.2 which implements an "attorney's

19   eyes only" confidentiality designation until the entry of an

20   appropriate protective order and also given that Cordance

21   has agreed to an interim protective order that would bar

22   Drummond Reed's access to the David Barth deposition unless

23   he subjected himself to a broad prosecution bar.

24          THE COURT:  My feeling on this is in light of

25   the deposition that has been taken by Mr. Barth, in light

14

1    of the ability to consult with a separate expert, Cordance

2    is in the position, because Cordance certainly raised

3    these patents, of being able to augment and provide some

4    additional information concerning their position on

5    infringement, albeit, and I recognize, that it may be

6    somewhat limited and may not be complete.  That, they will

7    do in any event without consulting with Mr. Reed.

8              I want the parties to go back and try to work

9    out their problem on the issue about the protective order

10   and give you another couple weeks to try to work that one

11   out.  You have gotten some direction from me previously.  I

12   do think that both suggestions that were made independently

13   by the parties that were attached to these submissions

14   aren't recognizing some of the spirit of what I directed you

15   before.

16             So I'm going to different give you some

17   additional time to do it, but I do think in the interim,

18   Cordance, who raised these particular patents and said that

19   Amazon infringes, has to have a basis more than just

20   spouting back the claims.

21             MR. ABRAHAMSEN:  Your Honor, with respect to the

22   S3 system, certainly we had a Rule 11 basis.  The problem is

23   now we are able to articulate our theory in more detail, we

24   want to make sure our client is on board with respect to

25   those theories at this point.

15

1          THE COURT:  Well, I think that you are going to

2     have to use some judgment of your own in that regard.  I

3     mean that is what attorneys are hired for, too.

4          MR. ABRAHAMSEN:  Okay.  And, forgive me, but how

5     does this work when the client has to sign the interrogatory

6     responses or verify them?

7          THE COURT:  Well, I understand what you are

8     saying, that they have to be verified and accepted.

9          Let me ask what is Amazon is going to find

10    acceptable under those circumstances since they are the ones

11    that are saying there is no one to sign them.

12         MR. MARTON:  The attorney can sign them and that

13    would be fine.  Drummond Reed, no one from Cordance needs to

14    verify these.

15         THE COURT:  I guess that answers your question.

16    Based upon somewhat of the limitations that you have

17    expressed, I think it can be done appropriately.  And I'm

18    just saying to you to work out, as best you can, the

19    protective order issue.  I'm not going to go as far as

20    Amazon wants, and I'm not going to go as far as what

21    Cordance suggested necessarily either.

22         MR. ABRAHAMSEN:  Okay.

23         THE COURT:  Are there any other issues?

24         MR. ABRAHAMSEN:  There is one more issue, Your

25    Honor, concerning license agreements.

16

```
 1              THE COURT:  Yes.

 2              MR. ABRAHAMSEN:  We have requested that Amazon

 3    produce technology license agreements pursuant to which a

 4    royalty rate or a payment amount is specified in exchange

 5    for the right to practice a particular technology.

 6              THE COURT:  Is the technology directly related

 7    to the patents that are involved in this litigation?

 8    Because the reason I got from Amazon is that they were not,

 9    that you were asking for everything.

10              MR. ABRAHAMSEN:  We don't know what agreements

11    they have, honestly, Your Honor.  We want to give our expert

12    an opportunity to review the agreements, to determine for

13    himself whether they're relevant or not.

14              THE COURT:  Well, I think actually there should

15    be some input from counsel, too, not just the expert by

16    himself.

17              MR. ABRAHAMSEN:  But the problem is we don't

18    know what the agreements are unless they're given to us.

19              THE COURT:  Okay.  But I think what Amazon said

20    was that the request was broad, and I'm trying to understand

21    what Amazon's arguments are in that regard.

22              MR. ABRAHAMSEN:  Okay.

23              THE COURT:  But, wait a minute.  I'll let

24    Cordance continue on if you have not completed your thought.

25              MR. ABRAHAMSEN:  Your Honor, I guess they're
```

17

```
 1    trying to limit this to something or just the patent
 2    licenses, but our view is that any IT gives a person a right
 3    to exclude others from practicing their technology; and
 4    whether it's a trade secret, license, a patent license, a
 5    patent application, license to practice within a patent
 6    application, you know, whatever, that royalty rate for the
 7    right to practice the technology could be relevant.  We're
 8    just looking for their licenses.
 9              We actually suggested that if the volume is too
10    much large on a number of licenses, they could give us a
11    list stating the technology, the royalty rate; and then we
12    could go back and say, well, we'd like this one, this one
13    and this one.  We haven't heard that there is too much
14    burden collecting these licenses.  It's just a matter of it
15    sounds like they don't want to bother doing it.
16              MR. MARTON:  If I may respond?
17              THE COURT:  Yes.
18              MR. MARTON:  This is Ryan Marton for Amazon.
19    Their request is for every license that Amazon has ever
20    entered into regardless of the technology at issue in that
21    license; and Amazon's position is that is just overbroad.
22    What we have offered to provide are patent licenses and
23    licenses with terms specific to the technology at issue in
24    this case.  I think that is all we're obligated to provide.
25              MR. ABRAHAMSEN:  Your Honor --
```

18

1          THE COURT:  Well, hold on for one moment.  Keep

2     your thought, please.  Let me just ask Amazon one question

3     so I don't lose my thought.

4          What about the fact of asking for the listing of

5     each license in the patent and trade secret arena, and a

6     very brief description of the license, what technology it

7     covered?  What was the problem with that type of request?

8          MR. MARTON:  The request is for us to prepare

9     a special document outlining every license that we have

10    entered into.

11         THE COURT:  Well, I limited my question to

12    patent licenses and patent applications.

13         MR. MARTON:  Okay.  Patent licenses and patent

14    applications?  We can do that.

15         THE COURT:  Why don't we start off with --

16         MR. ABRAHAMSEN:  Your Honor, we think because

17    there is software involved here, it would be important to

18    put copyright licenses on the list as well.

19         THE COURT:  Why don't we try first with patent

20    licenses and patent applications, see what that list

21    develops, and I'll consider about copyright; but I've got

22    some concern that -- copyright licenses can be quite

23    different, and we are dealing with a patent case; but let's

24    see what patent application and patent licenses do first

25    because it may be that you have a substantial amount there

19

1   that will give you a broad understanding, and then we'll

2   where we go.

3           Does Amazon have any idea how many copyright

4   licenses it has?

5           MR. MARTON:  Not at this time.

6           THE COURT:  Do you know whether you have

7   copyright licenses in technologies that are involved in

8   this matter?

9           MR. MARTON:  Copyright licenses for technology

10  involved in this matter?  I don't believe we do, but I would

11  have to ascertain that for sure with the client.

12          THE COURT:  Why don't you do that, too.  Because

13  we may be arguing much about nothing.  How many days are you

14  going to need in which to get that particular document

15  prepared and sent over to Cordance, counsel?  Ten days?  Ten

16  working days?

17          MR. MARTON:  Sure.

18          THE COURT:  Okay.

19          MR. MARTON:  That works.

20          THE COURT:  The other one, by the way, when I

21  said ten days, was ten working days.  I was not counting

22  weekends and holidays.

23          MR. MARTON:  Okay.

24          THE COURT:  Okay?

25          MR. MARTON:  Thank you.

20

```
 1              THE COURT:  Is there anything else that the
 2   court needs to discuss with counsel concerning the issues
 3   that were raised in the submissions?
 4              MR. MARTON:  Are we moving on to Amazon's
 5   motion?
 6              THE COURT:  Well, I didn't know if there was
 7   anything left on Cordance.  I can't remember.
 8              MR. ABRAHAMSEN:  I think that covers everything,
 9   Your Honor.
10              THE COURT:  For your information, when I said
11   that I want you to take roughly two weeks, I want you to
12   make an effort in those two weeks to get the protective
13   order done.  I didn't ask Cordance how much time they were
14   going to need to be able to get some updated, more
15   information concerning the infringement issues.
16              MR. ABRAHAMSEN:  I think we should be able to
17   come up with the screen shots and web page examples, maybe
18   five days, five working days.
19              THE COURT:  And what about the S3?
20              MR. ABRAHAMSEN:  S3, I think five days is
21   reasonable as well.
22              THE COURT:  All right.  You can take your five
23   working days to get that done, and then we'll be on a
24   schedule with Amazon responding within two weeks.
25              MR. ABRAHAMSEN:  Okay.
```

1            THE COURT:  Two weeks, again, ten working days;

2    and in that same time period, you are going to be working on

3    trying to get the protective order resolved.

4            All right.  What are Amazon's concerns?

5            MR. MARTON:  Sorry, Your Honor.  I didn't hear

6    that last bit.

7            THE COURT:  I'm sorry.  What are your "Amazon's"

8    concerns?

9            MR. MARTON:  Okay.  So we addressed the first

10   one with regard to the infringement contentions.  And the

11   only remaining issue relates to Amazon's interrogatories

12   three and four which together call for the details

13   surrounding the conception and reduction to practice of the

14   invention claimed in the '710 patent -- the '710 patent

15   being the first patent being asserted in this case.

16           As it stands now, Cordance is taking the

17   position that it cannot provide this information absent a

18   claim construction ruling.  What it has done is it has given

19   some dates for conception and reduction to practice and

20   said as early as these dates, pointed to 920 pages of

21   documents that don't appear to have much to do with an

22   online purchasing system, if anything at all, and also don't

23   reach back to the date of conception that they are claiming

24   they might be working under.  Then, they also say that

25   conception will be established through the testimony of

1   Drummond Reed.

2           What we're interested in is dates that at least

3   as of now, under their own claim construction, that they can

4   commit to as well as what Drummond Reed testimony they're

5   referring to regarding conception and reduction to practice.

6   It's our position that claim construction should not be a

7   barrier to getting this information.  We do understand that

8   claim construction could have an impact on the date of

9   conception and reduction to practice but also understand

10  that if claim construction did have such an impact, Cordance

11  would be able to amend its response or supplement its

12  response.

13          MR. ABRAHAMSEN:  Your Honor?

14          THE COURT:  Yes.

15          MR. ABRAHAMSEN:  Under the court's current

16  scheduling order, the parties are not required to exchange

17  even their preliminary claim construction positions until

18  May 30th.

19          THE COURT:  Yes.

20          MR. ABRAHAMSEN:  So what we've done is we

21  pointed to all the evidence that may be used to establish

22  conception and reduction to practice, depending on how the

23  claims were construed, but we have given them all of our

24  nonprivileged evidence at this point.  There is not much

25  more we can do.  All they're asking us to do is construe the

23

1   claims and apply them to these systems, and we just think

2   it's premature at this point to have us do that.

3           THE COURT:  What is it, was there a particular

4   deposition, though, of Mr. Reed that you were relying upon?

5   I didn't understand that comment by Amazon.  Was there a

6   particular deposition of Mr. Reed that you were relying upon

7   to support your conception and reduction to practice dates?

8           MR. ABRAHAMSEN:  We don't have any particular

9   testimony in mind other than relating to what is described

10  in the documents that we already disclosed.  Those speak for

11  themselves.  They are what they are.

12          THE COURT:  So if you made reference to his

13  deposition, has he been deposed yet?

14          MR. ABRAHAMSEN:  He has not been deposed.

15          THE COURT:  So you are making reference to what

16  you expect his testimony to be on that particular point, on

17  those particular points?

18          MR. ABRAHAMSEN:  Yes.  The interrogatory asked

19  us to identify individuals with knowledge related to

20  conception so we identified him.

21          THE COURT:  Okay.

22          MR. MARTON:  The interrogatory also asked for

23  the information that the individuals might have, and so

24  Amazon's position is that this reference to future testimony

25  is inappropriate.  The interrogatory calls for the

24

```
 1    information that he will provide in the form of testimony in
 2    the future but we want it now in the interrogatory response.
 3              THE COURT:  And, specifically, what are you --
 4              MR. MARTON:  Specifically, this reference to
 5    nonprivileged information is also a concerning issue that is
 6    reflected in their interrogatory response.  In addition to
 7    the 920 pages of documents they refer to, they also point
 8    to documents off a privilege log that will support their
 9    position.  And we haven't even received a privilege log.
10              MR. ABRAHAMSEN:  Your Honor --
11              MR. MARTON:  I'm just not sure.
12              MR. ABRAHAMSEN:  The parties have not agreed
13    upon a date to exchange privilege logs.  We're certainly
14    willing to do that as soon as both sides agree that now is
15    the time to do it.
16              THE COURT:  Well, I think it should be a
17    rolling continuous process, personally, once you start
18    taking, exchanging discovery, particularly written forms of
19    discovery.  It should start off right from the bat.
20              MR. ABRAHAMSEN:  In our situation, Your Honor,
21    it's a relatively massive undertaking.  We have been working
22    on it.  We expect to reach agreement with Amazon pretty soon
23    as far as the date for exchanging that.
24              THE COURT:  I would have expected it would have
25    been an ongoing process for both sides to have been doing
```

25

1    this, and that it would have been an ongoing process of

2    updating it, that you start off with that right off the bat

3    as soon as you have got -- this is my maybe uneducated and

4    wishful thinking approach to litigation, whether it's a

5    patent case or another type of case:  That when you

6    have privileged documents, that both sides start making a

7    privilege document list consistent with what is required in

8    this court, and that it's a continuous updating process

9    because as you go through documents and feel that they are

10   privileged, there is an obligation there on both sides to

11   identify what those documents are with sufficient enough

12   information.  So I'm kind of surprised that you have to come

13   across a specific date where the two of you are going to

14   make that exchange.  I would have thought it started

15   already.

16         MR. ABRAHAMSEN:  Yes.  At least at this point,

17   Your Honor, it's a work in process.  And we do intend to

18   provide a privilege log.  It's just not quite ready to go at

19   this point.

20         THE COURT:  Well, I'm having a little bit of a

21   problem understanding what specific information is Amazon

22   trying to seek that they have not yet received that they

23   feel that the interrogatory responses were incomplete?

24         MR. MARTON:  Sure.  First, we want a date, a

25   date specific for conception and a date specific for

1    reduction to practice.  As it stands now, they say it's as

2    early as.  And we pointed in our papers to at least one

3    case, though it's here from the Northern District of

4    California, where even in the absence of claim construction

5    that sort of ambiguous language as to what date the

6    plaintiff was relying on was found to be not enough.  They

7    needed to provide a date that they contended was the actual

8    date of conception and the actual date of reduction to

9    practice.

10              MR. ABRAHAMSEN:  Your Honor, in that case, the

11   parties had already committed to claim construction and

12   fully briefed the issue for the court.  In our case, we're

13   not even required to exchange preliminary contentions until

14   May.

15              THE COURT:  All right.

16              MR. MARTON:  I actually wasn't finished, Bob.

17              MR. ABRAHAMSEN:  I'm sorry.

18              MR. MARTON:  But beyond the dates that we're

19   interested in, we want to know essentially the details of

20   when and how the invention was conceived and who was

21   involved in the conception and who was involved in the

22   reduction to practice and what their involvement was.

23              The bottom line is Cordance's lawyers represent

24   every inventor on these patents.  They are in a better

25   position than anyone to provide this information.  And to be

27

1    quite honest, 920 pages of documents that they've pointed to

2    have little, if anything, to do with conception or reduction

3    to practice of the '710 patent.

4              MR. ABRAHAMSEN:  Your Honor, we had given them

5    what we have.  The 1993 document is a conception document.

6    It's witnessed by a couple of folks.  Those signatures are

7    on there.  That is what we have.  That is our evidence.

8              MR. MARTON:  Whether the claim can be supported

9    by that or reads on that, that is a matter that the courts

10    can decide.

11              THE COURT:  So you are willing to live with,

12    right now, based upon the status of the case, with the

13    November 1st, 1993 conception date.

14              MR. ABRAHAMSEN:  I'm sorry?

15              THE COURT:  You are willing to live with the

16    1993, November 1st, 1993 conception date?

17              MR. ABRAHAMSEN:  Your Honor, I guess depending

18    on how the claims are construed, that document may be

19    sufficient to establish conception.

20              THE COURT:  Well, let's hold -- what I said to

21    you, based upon what information you have to date, you are

22    willing to live with a November 1st, 1993 conception date.

23    Is that correct?

24              MR. ABRAHAMSEN:  That is the earliest we think

25    we can get, yes.

1              THE COURT:  Okay.  What about reduction to

2    practice?

3              MR. ABRAHAMSEN:  That would be the, possibly,

4    the filing date of the first of the series of applications.

5              THE COURT:  All right.  Again, with the same

6    limitation that you don't have the claim construction from

7    the court.

8              MR. ABRAHAMSEN:  Correct.

9              THE COURT:  But beyond those dates, can't you

10   provide the details of when and how the invention was

11   conceived and reduced to practice and who was involved in

12   that and what that person's involvement was?  Based upon the

13   fact that it's limited, you have already put a prefaced

14   caveat as to the fact that that could change.

15             MR. ABRAHAMSEN:  Well, I'm a little confused.

16   The reduction to practice would be a constructive reduction

17   to practice.

18             THE COURT:  I mean based upon conception date.

19             MR. ABRAHAMSEN:  In the conception date, the

20   details of how the inventors thought about this?  I just

21   don't know how to answer.

22             THE COURT:  Okay.

23             MR. ABRAHAMSEN:  The inventor thought of the

24   idea, wrote it down.  It's documented.

25             THE COURT:  And that's a document that you are

29

1    relying upon.

2              MR. ABRAHAMSEN:  Correct.

3              MR. MARTON:  The documents that he is relying on

4    doesn't say that the inventor thought of it and wrote it

5    down on a particular date.  It says that he thought of it

6    and wrote it down before a particular date.  We would just

7    like that fleshed out.  There are more details surrounding

8    that document that Amazon is interested in and this inventor

9    who signed the document is Drummond Reed who Cordance has

10   acknowledged is central to their preparation of this case.

11   It just seems to me that they could meet with him and

12   prepare, gather this information and provide it.

13             THE COURT:  I think that is true.  I think that

14   the inventor, particularly if it's not a document that has

15   all the necessary writing on it, can flesh -- it can be

16   fleshed out a bit.

17             MR. ABRAHAMSEN:  I'm a little confused, Your

18   Honor.  The document is a very detailed description of what

19   his ideas were at the time.

20             THE COURT:  Well, I'm getting another read from

21   the other side.  And considering, -- I can't recall if I've

22   got the document in front of me.  I don't think I do.  Do I?

23             MR. ABRAHAMSEN:  You don't, but that would have

24   been -- we would have had to have filed that under seal; and

25   we chose not to do that, Your Honor.

30

```
 1            THE COURT:  Yes, I didn't think I saw anything
 2    under seal.
 3            MR. ABRAHAMSEN:  We would be happy to submit it
 4    to you for your review, if you would like to look at it.
 5            THE COURT:  Well, my preference would be to
 6    avoid that as much as possible.
 7            MR. ABRAHAMSEN:  Okay.
 8            THE COURT:  I mean it really would, because what
 9    I'm getting is a he said/he said argument here that the
10    document that you are relying upon does not flesh out or
11    provide information of the inventor's conception.
12            MR. MARTON:  Your Honor, I can web study the
13    document pretty carefully -- this is Ryan Marton speaking --
14    and it's a declaration that came about in the prosecution of
15    the '710 patent whereby Drummond Reed swore behind some
16    prior art that was presented and said as of November 1993, I
17    had conceived of this invention before November 1993, as is
18    reflected by this document, the details of the invention.
19    And it's a document that is dated November 1st, 1993.  That
20    document is probably not -- nowhere in the declaration does
21    it state that is the first time that he conceived of the
22    invention.  And to give a little broader context to this,
23    the specification in this application is 100 columns long,
24    is extraordinarily difficult to parse.
25            THE COURT:  Please keep that in mind when you
```

1    decide what you want for claim construction.  We may be

2    having a discussion later, counsel, as to how many claims

3    you are going to be allowed, period.

4              MR. ABRAHAMSEN:  Your Honor, as far as the date,

5    again, we're not going to trying to behind that 1993

6    document.  So what he thought of before then is really

7    somewhat irrelevant to this discussion.

8              MR. MARTON:  But that document that he is

9    referring to is a tiny 15-or-20 page document.  It doesn't

10   flesh out 100 columns for the specification.  I mean it's

11   just not complete.

12             MR. ABRAHAMSEN:  Your Honor, the claims here

13   focus on a particular aspect of that massive specification.

14   The whole thing doesn't describe this one invention.  And

15   based on what is described there, it may or may not support

16   a conception date.  Again, the claims are going to have to

17   be construed.  Then we're going to have to compare the claim

18   what has been described as a, yes, it was conceived as of

19   that date or, no, he didn't.  But that is the evidence we

20   have, and there is not much more we can say about it.

21             THE COURT:  I think we're going to leave it as

22   is right now.

23             MR. MARTON:  Okay.

24             THE COURT:  I think a 15-20 page document or 15

25   page document that goes into some of the claims, that goes

32

1    into the claims at issue is probably adequate for the

2    purposes of at least today's discussion.

3                    MR. MARTON:  Okay.  Thank you, Your Honor.

4                    THE COURT:  Is there anything else, counsel?

5                    MR. MARTON:  Nothing from -- I'm sorry?

6                    THE COURT:  I'm sorry.  That was my fault.

7                    Counsel for Cordance, is there anything else

8    that needs to be discussed for Cordance's concern that were

9    raised in the submissions to the court?

10                   MR. ABRAHAMSEN:  I think we covered everything,

11   Your Honor.

12                   THE COURT:  And from Amazon's counsel, is there

13   anything that the court needs to further address that were

14   raised in the various submissions that were under discussion

15   today?

16                   MR. MARTON:  No, there is not.

17                   THE COURT:  All right.  Thank you, counsel.

18   Have a great day.

19                   (The attorneys respond, "Thank you, Your

20   Honor.")

21                   THE COURT:  Take care.  Good-bye now.

22                   (Telephone conference ends at 1:45 p.m.)

23

24

25

# EXHIBIT B

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

CORDANCE CORPORATION,

Plaintiff,

v.

AMAZON.COM, INC.,

Defendant.

C.A. No. 06-491-MPT

## CORDANCE'S FIRST SUPPLEMENTAL RESPONSES TO AMAZON'S THIRD SET OF INTERROGATORIES

Pursuant to Rule 26(e), Plaintiff Cordance Corporation ("Cordance") supplements its response to Amazon.com's ("Amazon") Interrogatory No. 14 as follows:

## INTERROGATORY NO. 14

For every **Accused Product, identify** the **Accused Product** and **identify** your **Infringement Contentions** for such **Accused Product.**

## ANSWER TO INTERROGATORY NO. 14

The specific objections, general objections, and substantive responses stated in Cordance's original response to this interrogatory, served on February 27, 2008, are incorporated herein by reference. Subject to the stated objections, Cordance further states that the following claim charts illustrate Cordance's preliminary views as to how certain of the Accused Products may meet the limitations of some of the claims of the Cordance patents, depending upon how such claims are construed by the Court. Cordance specifically reserves its right to identify other acts of infringement by Amazon and other claims infringed by Amazon after discovery has progressed. Pursuant to Fed. R. Civ. P. 33(d), Cordance further identifies the materials found at

http://aws.amazon.com/s3, U.S. Patent Application Publication 2007/0156842, and the documents

included in Appendix A from which information responsive to this interrogatory may be derived.

| Claim 19 of the '205 Patent | Amazon's Simple Storage Service ("S3") |
|---|---|
| 19. A computer-based method for communicating updated information comprising the steps of: | Amazon's S3 communicates updated information at least between (1) two keymap instances, (2) two DFDD instances, (3) a DFDD instance and an application instance being monitored by the DFDD instance, and (4) a DFDD instance and a client of the DFDD instance.<br><br>A web page describing some aspects of Amazon's S3 may be found at http://aws.amazon.com/s3. Further details about how Amazon's S3 operates appear to be described in U.S. Patent Application Publication No. 2007/0156842. |
| creating metadata defining a control structure in a provider memory, said control structure including associations with portions of said information in a provider memory, said control structure defining a process to transfer an associated portion of said information associated with said control structure to a consumer memory; and | The computers in Amazon's S3 have memory in which information may be stored or processed. The information stored or processed includes information about users, about user data stored in S3, about keymaps, and about the status and functioning of S3. Amazon creates metadata to describe and access information in its computer memories. Amazon also creates metadata that is used by keymap instances, DFDD instances, application instances, and DFDD clients to control the transfer of information. |
| transferring a copy of the associated portion of said information, and said control structure, from the provider memory to the consumer memory; and | Upon creating a keymap instance, a DFDD instance, an application instance, or a DFDD client, Amazon's S3 transfers information and metadata to the keymap instance, the DFDD instance, the application instance, or the DFDD client.<br><br>Keymap entry PUT operations are communicated to or between keymap instances to propagate updates to keymap information.<br><br>FINGERPRINT, FILTER, REQUEST and DATA operations are communicated between keymap instances to maintain coherency between the information therein.<br><br>Operations are communicated between DFDD instances, between DFDD instances and monitored applications, and between DFDD instances and DFDD clients to maintain coherency between the information therein. |
| determining when the associated portion of said information in said | Pursuant to an "update propagation protocol," an update to a keymap instance is complete when a quorum number of |

| provider memory has been updated based upon processing of said control structure; and | replicas have been written to that keymap instance.<br><br>Pursuant to an "anti-entropy protocol," updates to information in a keymap instance are identified using exchanged FINGERPRINT, FILTER, HASH, REQUEST and DATA operations.<br><br>Pursuant to a "gossip protocol," updates to information in DFDD instances are identified using exchanged messages and hash values.<br><br>Updates to applications monitored by DFDD instances are identified based upon received heartbeat messages.<br><br>A DFDD client processes the information and metadata stored within it to subscribe to a publish/subscribe channel provided by a DFDD instance. In subscribing, the DFDD client specifies the type of updates it wishes to receive from the DFDD instance. The DFDD instance notifies the DFDD client of updates through the publish/subscribe channel. |
| processing said information, including said control structure at least at said consumer memory, to transfer a copy of said associated portion of said information from said provider memory to said consumer memory when the associated portion of information in said provider memory has been determined to have been updated. | Keymap entry PUT operations are processed by keymap instances that receive them and, upon completion of the updates effected thereby, the keymap entry PUT operations are forwarded to other keymap instances to propagate the updated information thereto.<br><br>FINGERPRINT, FILTER, REQUEST and DATA operations are processed by keymap instances that receive them to identify and propagate updates to the information in the various keymap instances.<br><br>Operations and messages are processed by DFDD instances, application instances, and DFDD clients that receive them to identify and propagate updates amongst such entities. |

| Claim 109 of the '325 Patent | Amazon's Feedback System |
|---|---|
| 109. A computer-based communication method, comprising operating one or more computers to communicate by performing the steps of: | Amazon has one or more systems relating to feedback (collectively hereafter "Amazon's Feedback System"). For example, Amazon has one or more systems for (1) collecting feedback from a buyer about a product, (2) collecting feedback from a buyer about a seller from whom the buyer has purchased a product, (3) collecting feedback from a seller about a buyer to whom the seller has sold a product, (4) collecting feedback on the helpfulness of reviews or feedback left by others, (5) collecting feedback about the |

| | |
|---|---|
| | usefulness Amazon's feedback system, e.g., by allowing customers to "rate this page," (6) allowing users to review feedback about a product, (7) allowing users to review feedback about a seller, (8) allowing users to review feedback about a buyer, and (9) allowing users to review feedback about other feedback.  Amazon's Feedback System comprises multiple computers (e.g., one or more web servers and/or database servers) that communicate among each other and/or with computers of users that submit and/or review feedback to implement the Amazon Feedback System. Screen shots showing illustrative examples of the user experience in interacting with the Amazon Feedback System are attached in appendix A, along with "step by step procedures" explaining the user actions that resulted in navigating through each screen shot in the sequence. |
| in a provider memory, storing information including provider information; | The computers in Amazon's Feedback System include (and/or have access to) memories (e.g., one or more databases) that store information that can be provided to other computers in the system and/or the computers of users of the system, and that is used in implementing, and/or is collected and managed by, the Amazon Feedback System. The information that can be provided to other computers in the system includes, for example:  information about customers; information about products; information about sellers; information about prior sales; feedback about sellers, buyers, products and other feedback; metadata and processes that implement the Amazon Feedback System, etc.  Some examples of this information is the information presented to a user of the Amazon Feedback System as illustrated by the screenshots in Appendix A, but it is believed that the Amazon Feedback System also stores other information used in implementing the system. |
| in a consumer memory, storing information including consumer information; | The computers in Amazon's Feedback System include (and/or have access to) memories (e.g., one or more databases) that store information that can be received from other computers in the system and/or the computers of users of the system, and that is used in implementing, and/or is collected and managed by, the Amazon Feedback System. The information that can be received from other computers in the system includes, for example:  information about customers; information about products; information about sellers; information about prior sales; feedback about sellers, buyers, products and other feedback; metadata and processes that implement the Amazon Feedback System, etc.  Some examples of this information is the information presented to a user of the Amazon Feedback System as illustrated by the screenshots in Appendix A, but it is believed that the |

| | Amazon Feedback System also stores other information used in implementing the system. |
|---|---|
| creating metadata describing associations with portions of said information and defining a control structure which is processed at least at said consumer memory to associate one or more processes for controlling communications of said associated information, said metadata including data exchange metadata associating a process for controlling the transfer of feedback information, said feedback information including at least a portion of said consumer information, to said provider memory; | It is believed that Amazon necessarily creates metadata that describes associations between the information that is collected and managed by the Amazon Feedback System, and/or the information that implements the Amazon Feedback System (e.g., to associate customers with products purchased, to associate buyers with products sold, to associate buyers with sellers to whom they've sold and sellers with buyers from whom they've bought, to associate feedback with a buyer, seller, and/or product to which it pertains, to associate feedback with the person or entity that submitted it, to control the presentation and/or collection of feedback, etc.). It is believed that Amazon also defines one or more control structures that, when processed at least by a computer that receives it/them, associates one or more processes for controlling the communication of the information that is collected and managed by, and/or that implements, the Amazon Feedback System. For example, metadata may be used to describe and access information in databases or other computer memories and/or to create or associate macros, JavaScript, Java, Perl, form processing, or other processes with one or more feedback templates and/or other information that is collected and managed by, or that implements, the Amazon Feedback System. Processes associated by the metadata control the transfer of feedback information between the computer of a user submitting and/or reviewing feedback (e.g., via one or more web pages and/or templates presented by Amazon's Feedback System) and/or Amazon's web server(s), and/or among Amazon's web server(s) and the other computers in the Amazon Feedback System (e.g., database servers). |
| transferring said information, including said metadata defining said control structure, from said provider memory to said consumer memory; | It is believed that metadata defining one or more control structures is transferred among Amazon's computers that implement the Feedback System and/or between Amazon's web server(s) and the computer of a user submitting or reviewing feedback at various times (e.g., when a user submitting or reviewing feedback accesses the Amazon Feedback System and/or navigates through the System (e.g., in any of the ways shown in the attached screenshots), and/or when the Amazon Feedback System creates data structures that may be used to support and/or implement the Feedback System). |
| processing said metadata to execute instructions external to said control structure to perform said processes; | A computer that receives the control structure(s) (e.g., a computer of a user submitting or reviewing feedback or otherwise navigating through the Amazon Feedback System, |

5

| | |
|---|---|
| and | an Amazon web server, and/or one of the other computers that implements the Amazon Feedback System) executes instructions external to the control structure(s) (e.g., one or more processes referenced by the control structure(s)) to perform the processes referenced above, including controlling the transfer of feedback information between computers in the Feedback System and/or between one or more Amazon web servers and the computer of a user submitting or reviewing feedback (e.g., as shown in the attached screenshots). |
| communicating said feedback information from said consumer memory to said provider memory. | Feedback information is transferred among the one or more computers in Amazon's Feedback System (e.g., database servers and web servers) and/or between one or more of Amazon's web servers and the computer of a user submitting or reviewing feedback (e.g., as shown in the attached screenshots).<br><br>In addition to the foregoing, as reflected in Appendix A, Amazon sends e-mails to Merchants that tout Merchant Feedback as being a "critical metric" and indicate that such feedback is "regularly reviewed" by Amazon in a manner that may meet the limitations of this claim. |

| Claim 50 of the '717 Patent | Amazon's Feedback System |
|---|---|
| 50. A method for use at a node of a computer-based communications system which includes multiple nodes arranged and adapted to intercommunicate via a communications network, said method characterized by the steps of: | Amazon has one or more systems relating to feedback (collectively hereafter "Amazon's Feedback System"). For example, Amazon has one or more systems for (1) collecting feedback from a buyer about a product, (2) collecting feedback from a buyer about a seller from whom the buyer has purchased a product, (3) collecting feedback from a seller about a buyer to whom the seller has sold a product, (4) collecting feedback on the helpfulness of reviews or feedback left by others, (5) collecting feedback about the usefulness Amazon's feedback system, e.g., by allowing customers to "rate this page," (6) allowing users to review feedback about a product, (7) allowing users to review feedback about a seller, (8) allowing users to review feedback about a buyer, and (9) allowing users to review feedback about other feedback. Amazon's Feedback System comprises multiple computers (e.g., one or more web servers and/or database servers) that communicate among each other and/or with computers of users that submit and/or review feedback to implement the Amazon Feedback System. Screen shots showing illustrative examples of the user experience in interacting with the Amazon Feedback System |

6

| | are attached in appendix A, along with "step by step procedures" explaining the user actions that resulted in navigating through each screen shot in the sequence. |
|---|---|
| (A) providing storage means for storing information; | The computers in Amazon's Feedback System include (and/or have access to) storage devices (e.g., one or more databases) that store information that is used in implementing, and/or is collected and managed by, the Amazon Feedback System. For example, the Amazon Feedback System stores: information about customers; information about products; information about sellers; information about prior sales; feedback about sellers, buyers, products and other feedback; metadata and processes that implement the Amazon Feedback System, etc. Some examples of this information is the information presented to a user of the Amazon Feedback System as illustrated by the screenshots in Appendix A, but it is believed that the Amazon Feedback System also stores other information used in implementing the system. |
| (B) associating portions of said information with metadata, said metadata defining a control structure; | It is believed that Amazon necessarily creates metadata that describes associations between the information that is collected and managed by the Amazon Feedback System, and/or the information that implements the Amazon Feedback System (e.g., to associate customers with products purchased, to associate buyers with products sold, to associate buyers with sellers to whom they've sold and sellers with buyers from whom they've bought, to associate feedback with a buyer, seller, and/or product to which it pertains, to associate feedback with the person or entity that submitted it, to control the presentation and/or collection of feedback, etc.). It is believed that Amazon also defines one or more control structures that, when processed at least by a computer that receives it/them, associates one or more processes for controlling the communication of the information that is collected and managed by, and/or that implements, the Amazon Feedback System. For example, metadata may be used to describe and access information in databases or other computer memories and/or to create or associate macros, JavaScript, Java, Perl, form processing, or other processes with one or more feedback templates and/or other information that is collected and managed by, or that implements, the Amazon Feedback System. Processes associated by the metadata control the transfer of feedback information between the computer of a user submitting and/or reviewing feedback (e.g., via one or more web pages and/or templates presented by Amazon's Feedback System) and/or Amazon's web server(s), and/or among Amazon's web server(s) and the other computers in the Amazon |

| | Feedback System (e.g., database servers). |
|---|---|
| (C) transferring said metadata in at least one direction between said node and a second node of said system to associate with said associated information one or more processes which execute instructions external to said control structure to control communications of said associated information, said metadata including at least one of<br><br>(1) update metadata which associates a process for determining when said portions of said information associated by said metadata have been updated and transfer metadata which associates a process for controlling the transfer at least a portion of said updated information,<br><br>(2) data exchange metadata which associates a process for controlling the transfer of feedback information, said feedback information including at least a portion of said information stored at the receiving node, and<br><br>(3) receipt processing metadata which associates a process for determining the processing of said associated information by comparison to an associated version of said control structure; and | It is believed that metadata defining one or more control structures is transferred among Amazon's computers that implement the Feedback System and/or between Amazon's web server(s) and the computer of a user submitting or reviewing feedback at various times (e.g., when a user submitting or reviewing feedback accesses the Amazon Feedback System and/or navigates through the System (e.g., in any of the ways shown in the attached screenshots), and/or when the Amazon Feedback System creates data structures that may be used to support and/or implement the Feedback System).   The metadata associates one or more processes with the above-noted associated information which execute instructions external to the control structure(s)  (e.g., one or more processes referenced by the control structure(s)) to control communications of the associated information.<br><br>It is believed that the metadata includes one or more of:<br><br>(1)  metadata that associates (e.g., references, points to, calls, etc.) one or more processes for determining when any of the above-discussed types of information have been updated and that associates one or more processes for transferring at least some of the updated information among the computers in Amazon's Feedback System and/or between one or more of Amazon's web servers and a computer of a user providing or reviewing feedback.  For example, when new feedback of any of the types described above is submitted, the Amazon Feedback system updates the stored feedback information (e.g., in one or more databases) to include the new feedback, and also updates stored information to reflect that the collected feedback on the subject product, seller, buyer, feedback, etc. has been updated with the new feedback, and may update information that summarizes or characterizes the totality of feedback received for the subject of the feedback (e.g., as shown in the attached screenshots) to reflect the impact of the newly provided feedback.<br><br>(2) metadata that associates (e.g., references points to, calls, etc.) one or more processes for controlling the transfer of at least some of the feedback  information  among the computers in Amazon's Feedback System and/or between one or more of Amazon's web servers and a computer of a user providing or reviewing feedback.  For example, when new feedback of any of the types described above is submitted, the new feedback information is transferred from |

8

| | a computer of the user submitting the feedback to one of Amazon's web servers, and from the web server to one or more other computers in Amazon Feedback System that store the new feedback information (e.g., in a database). In addition, information that summarizes or characterizes the totality of feedback received for the subject of the new feedback (e.g., the "At a Glance" screen for Screenshot #3 at page 15 of Appendix A) to reflect the impact of the newly provided feedback may be updated and transferred from one computer to another in Amazon's Feedback System (e.g., from a processor that generates the new summary information to a database server that stores it). Similarly, when a user reviews any of the types of feedback described above or navigates through the Amazon Feedback System (e.g., as shown in the attached screenshots), feedback information is transferred from one or more computers in the Amazon Feedback System (e.g., a database server), either directly or through one or more additional computers, to one or more Amazon web servers and to the computer of the user navigating through the Feedback System.<br><br>(3) metadata that associates (e.g., references points to, calls, etc.) one or more processes for determining the processing of the associated information by comparison to one or more control structures. For example, metadata may be used to describe and access information in databases or other computer memories and/or to create or associate macros, JavaScript, Java, Perl, form processing, or other processes with one or more feedback templates and/or other information that is collected and managed by, or that implements, the Amazon Feedback System. Processes associated by the metadata control the transfer of feedback information between the computer of the user submitting or reviewing feedback (e.g., via one or more web pages and/or templates presented by Amazon's Feedback System) and/or among the computers in the Amazon Feedback System. Amazon processes templates and/or otherwise creates web pages that are presented to the user that is submitting or reviewing feedback, and also processes feedback to create summaries of a collection of feedback received for a given subject (e.g., product, buyer, seller, etc.). |
|---|---|
| (D) at least one of<br><br>(1) transferring said information, including said metadata defining said control structure, to said second node to | As described above, it is believed that metadata defining one or more control structures is transferred among Amazon's computers that implement the Feedback System and/or between Amazon's web server(s) and the computer of a user submitting or reviewing feedback at various times (e.g., when a user submitting or reviewing feedback accesses the |

control at least one of
    (a) transferring said updated information to said second node,
    (b) receiving said feedback information from said second node, and
    (c) processing said feedback information, and

(2) receiving said information, including said metadata defining said control structure, from said second node to control at least one of
    (a) receiving said updated information from said second node,
    (b) processing said updated information, and
    (c) transferring said feedback information to said second node.

Amazon Feedback System and/or navigates through the System (e.g., in any of the ways shown in the attached screenshots), and/or when the Amazon Feedback System creates data structures that may be used to support and/or implement the Feedback System).   In such exchanges between any two computers, the functions performed can be viewed from the perspective of one of the computers or the other.

When viewed from the perspective of the computer that transfers the metadata to a second computer, the metadata may control one or more of the following:

(a)  transferring the updated information to the second computer.  For example, when the second node is a computer that manages storage of the feedback information (e.g., raw feedback and/or information that summarizes or characterizes raw feedback), it may receive updated information and a control structure that controls its transfer;

(b)  receiving the feedback from the second computer by controlling the transfer of the feedback information from the second computer.  For example, when a user is navigating through the Amazon Feedback System (e.g., in any of the ways show in the screenshots attached in Appendix A) and/or when the Amazon system creates data structures that may be used to support and/or implement the Feedback System, computers in the Amazon Feedback System (e.g., computers that store the feedback information, computers that process the feedback information, etc.) may transfer a control structure to another computer to control the transfer of feedback information from that other computer (e.g., so that it can be processed, stored, presented to the user, etc).

(c)  processing the feedback information.  For example, computers in the Amazon Feedback System may process the feedback information in any of numerous ways, e.g., to store and manage it; associate it with the subject product, buyer, seller, other feedback, etc. to which it pertains; to create and/or update summary information impacted by the feedback, etc.

When viewed from the perspective of the computer that receives the metadata from a second computer, the metadata may control one or more of the following:

(a)  receiving the updated information from the second

computer. For example, when the second node is a
computer that manages storage of the feedback information
(e.g., raw feedback and/or information that summarizes or
characterizes raw feedback), it may receive updated
feedback information from an Amazon web server or
another computer in the Amazon Feedback System;

(b) processing the feedback information. For example,
computers in the Amazon Feedback System may process the
feedback information in any of numerous ways, e.g., to store
and manage it; associate it with the subject product, buyer,
seller, other feedback, etc. to which it pertains; to create
and/or update summary information impacted by the
feedback, etc.

(c) transferring the feedback to the second computer. For
example, when a user is navigating through the Amazon
Feedback System (e.g., in any of the ways show in the
screenshots attached in Appendix A) and/or when the
Amazon system creates data structures that may be used to
support and/or implement the Feedback System, computers
in the Amazon Feedback System (e.g., computers that store
the feedback information, computers that process the
feedback information, etc.) may transfer feedback
information to another computer (e.g., so that it can be
processed, stored, presented to the user, etc).

In addition to the foregoing, as reflected in Appendix A,
Amazon sends e-mails to Merchants that tout Merchant
Feedback as being a "critical metric" and indicate that such
feedback is "regularly reviewed" by Amazon in a manner
that may meet the limitations of this claim.

ASHBY & GEDDES

Steven J. Balick (I.D. #2114)
John G. Day (I.D. #2403)
Lauren E. Maguire (I.D. #4261)
500 Delaware Avenue, 8th Floor
P.O. Box 1150
Wilmington, DE 19899
(302) 654-1888
sbalick@ashby-geddes.com
jday@ashby-geddes.com
lmaguire@ashby-geddes.com

*Attorneys for Plaintiff Cordance Corporation*

*Of Counsel:*

Michael A. Albert
Robert M. Abrahamsen
Jeffrey C. O'Neill
WOLF, GREENFIELD & SACKS, P.C.
600 Atlantic Avenue
Boston, Massachusetts 02210
(617) 646-8000

Dated: April 8, 2008

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that on the 8th day of April, 2008, the attached **CORDANCE'S FIRST**

**SUPPLEMENTAL RESPONSES TO AMAZON'S THIRD SET OF**

**INTERROGATORIES** was served upon the below-named counsel of record at the addresses

and in the manner indicated:


Richard L. Horwitz, Esquire                          <u>HAND DELIVERY</u>
Potter Anderson & Corroon LLP
Hercules Plaza, 6th Floor
1313 North Market Street
Wilmington, DE  19801

Lynn H. Pasahow, Esquire                             <u>VIA ELECTRONIC MAIL</u>
Fenwick & West LLP
801 California Street
Mountain View, CA  94041



Lauren E. Maguire

174753.1

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

CORDANCE CORPORATION,                    )
                                         )
            Plaintiff,                   )
                                         )
      v.                                 )      C.A. No. 06-491-MPT
                                         )
AMAZON.COM, INC.,                        )
                                         )
            Defendant.                   )

## NOTICE OF SERVICE

The undersigned hereby certifies that on the 8th day of April, 2008, **CORDANCE'S**

**FIRST SUPPLEMENTAL RESPONSES TO AMAZON'S THIRD SET OF**

**INTERROGATORIES** was served upon the following counsel of record at the address and in

the manner indicated:


Richard L. Horwitz, Esquire                          HAND DELIVERY
Potter Anderson & Corroon LLP
Hercules Plaza, 6th Floor
1313 North Market Street
Wilmington, DE  19801

Lynn H. Pasahow, Esquire                             VIA ELECTRONIC MAIL
Fenwick & West LLP
801 California Street
Mountain View, CA  94041

ASHBY & GEDDES

*/s/ Lauren E. Maguire*

Steven J. Balick (I.D. #2114)
John G. Day (I.D. #2403)
Lauren E. Maguire (I.D. #4261)
500 Delaware Avenue, 8th Floor
P.O. Box 1150
Wilmington, DE 19899
(302) 654-1888
*sbalick@ashby-geddes.com*
*jday@ashby-geddes.com*
*lmaguuire@shby-geddes.com*

*Attorneys for Plaintiff*
*Cordance Corporation*

*Of Counsel:*

Michael A. Albert
Robert M. Abrahamsen
Jeffrey C. O'Neill
WOLF, GREENFIELD & SACKS, P.C.
600 Atlantic Avenue
Boston, Massachusetts 02210
(617) 646-8000

Dated:  April 8, 2008
174754.1

## CERTIFICATE OF SERVICE

I hereby certify that on the 8th day of April, 2008, the attached **NOTICE OF SERVICE**

was served upon the below-named counsel of record at the addresses and in the manner

indicated:


Richard L. Horwitz, Esquire                                   HAND DELIVERY
Potter Anderson & Corroon LLP
Hercules Plaza, 6th Floor
1313 North Market Street
Wilmington, DE  19801

Lynn H. Pasahow, Esquire                                   VIA ELECTRONIC MAIL
Fenwick & West LLP
801 California Street
Mountain View, CA  94041


                                              */s/ Lauren E. Maguire*

                                              _____

                                              Lauren E. Maguire

## Discovery Documents

<u>1:06-cv-00491-MPT Cordance Corporation v. Amazon.com Inc.</u>
MEDIATION, PATENT, PaperDocuments

### U.S. District Court

### District of Delaware

## Notice of Electronic Filing

The following transaction was entered by Maguire, Lauren on 4/8/2008 at 10:59 PM EDT and filed on 4/8/2008

**Case Name:**       Cordance Corporation v. Amazon.com Inc.
**Case Number:**   1:06-cv-491
**Filer:**              Cordance Corporation
**Document Number:** 132

## Docket Text:
**NOTICE OF SERVICE of Cordance's First Supplemental Responses to Amazon's Third Set of Interrogatories by Cordance Corporation.(Maguire, Lauren)**

**1:06-cv-491 Notice has been electronically mailed to:**

Robert M. Abrahamsen    rabrahamsen@wolfgreenfield.com, litigation@wolfgreenfield.com

Michael A. Albert    Malbert@wolfgreenfield.com, dpefine@wolfgreenfield.com, Litigation@wolfgreenfield.com

Steven J. Balick    sbalick@ashby-geddes.com, dfioravanti@ashby-geddes.com, jday@ashby-geddes.com, lmaguire@ashby-geddes.com, mkipp@ashby-geddes.com, nlopez@ashby-geddes.com, rgamory@ashby-geddes.com, tlydon@ashby-geddes.com

John G. Day    jday@ashby-geddes.com, dfioravanti@ashby-geddes.com, lmaguire@ashby-geddes.com, mkipp@ashby-geddes.com, nlopez@ashby-geddes.com, rgamory@ashby-geddes.com, sbalick@ashby-geddes.com, tlydon@ashby-geddes.com

Darren E. Donnelly    ddonnelly@fenwick.com

J. David Hadden    dhadden@fenwick.com

Tiffany Geyer Lydon    tlydon@ashby-geddes.com, dfioravanti@ashby-geddes.com

Ryan J. Marton    rmarton@fenwick.com

Gaurav Mathur    gmathur@fenwick.com

David Ellis Moore    dmoore@potteranderson.com, ntarantino@potteranderson.com

Jeffrey C. O'Neill    joneill@wolfgreenfield.com

Lynn Pasahow    lpasahow@fenwick.com

Saina S. Shamilov    sshamilov@fenwick.com

**1:06-cv-491 Notice has been delivered by other means to:**

The following document(s) are associated with this transaction:

**Document description:**Main Document
**Original filename:**n/a
**Electronic document Stamp:**
[STAMP dcecfStamp_ID=1079733196 [Date=4/8/2008] [FileNumber=546851-0]
[ac44cbdf9c50b24aa6d90aa7996c22c92817b435d0547a9387e37926f818d712496c1
9021ee318023eb2c984409cf6fd99f8ce3ae9ece58f5f55cc89baa9985a]]

# EXHIBIT C

# Ryan Marton

**From:** Robert Abrahamsen [Robert.Abrahamsen@WolfGreenfield.com]
**Sent:** Monday, May 19, 2008 10:45 AM
**To:** Darren Donnelly
**Cc:** Ryan Marton; Albert, Michael; O'Neill, Jeffrey C.
**Subject:** Cordance v. Amazon

Darren - As we just discussed, we expect to hear back from you by the end of the day today (4 pm EST) as to whether you will agree to produce a couple of key documents (e.g., system design documents) concerning the collection and processing of feedback about buyers and sellers, and a knowledgeable witness on those topics for a 2-3 hour telephone deposition, by Wednesday of this week. It became evident at Friday's deposition that, in spite of the Court's order, you have yet to produce even a single document (source code or otherwise) on these topics. As I noted during our phone call, we need this discovery to allow us to identify the full set of claims we will be asserting in this matter. Friday's deposition gave us some of the information we need to accomplish that objective, but we need at least some discovery concerning the accused systems for collecting and processing feedback information about buyers and sellers in order to complete our analysis.

We look forward to your response.

Regards,
Bob

## Robert M. Abrahamsen
rabrahamsen@wolfgreenfield.com
direct dial 617.646.8256
Wolf, Greenfield & Sacks, P.C.
600 Atlantic Avenue
Boston, Massachusetts 02210-2206
617.646.8000 | 617.646.8646 fax
*This e-mail message and any attachments may contain confidential or privileged information. If you are not the intended recipient, please notify me immediately by replying to this message. Please destroy all copies of this message and any attachments. Thank you.*

# EXHIBIT D

## Ryan Marton

**From:**    Ryan Marton
**Sent:**    Monday, May 19, 2008 6:57 PM
**To:**    'Robert Abrahamsen'; Darren Donnelly
**Cc:**    Albert, Michael; O'Neill, Jeffrey C.
**Subject:** RE: Cordance v. Amazon

Bob,

We are evaluating your request but haven't completed the communication on the issue.  We expect to get back to you as soon possible on this.

Regards,
Ryan

---

**From:** Robert Abrahamsen [mailto:Robert.Abrahamsen@WolfGreenfield.com]
**Sent:** Monday, May 19, 2008 10:45 AM
**To:** Darren Donnelly
**Cc:** Ryan Marton; Albert, Michael; O'Neill, Jeffrey C.
**Subject:** Cordance v. Amazon

Darren - As we just discussed, we expect to hear back from you by the end of the day today (4 pm EST) as to whether you will agree to produce a couple of key documents (e.g., system design documents) concerning the collection and processing of feedback about buyers and sellers, and a knowledgeable witness on those topics for a 2-3 hour telephone deposition, by Wednesday of this week.  It became evident at Friday's deposition that, in spite of the Court's order, you have yet to produce even a single document (source code or otherwise) on these topics.  As I noted during our phone call, we need this discovery to allow us to identify the full set of claims we will be asserting in this matter.  Friday's deposition gave us some of the information we need to accomplish that objective, but we need at least some discovery concerning the accused systems for collecting and processing feedback information about buyers and sellers in order to complete our analysis.

We look forward to your response.

Regards,
Bob

## Robert M. Abrahamsen
rabrahamsen@wolfgreenfield.com
direct dial 617.646.8256
Wolf, Greenfield & Sacks, P.C.
600 Atlantic Avenue
Boston, Massachusetts 02210-2206
617.646.8000 | 617.646.8646 fax
*This e-mail message and any attachments may contain confidential or privileged information. If you are not the intended recipient, please notify me immediately by replying to this message. Please destroy all copies of this message and any attachments. Thank you.*

# EXHIBIT E

## Ryan Marton

**From:**  Robert Abrahamsen [Robert.Abrahamsen@WolfGreenfield.com]
**Sent:**  Tuesday, May 20, 2008 9:50 AM
**To:**  Ryan Marton; Darren Donnelly
**Cc:**  Albert, Michael; O'Neill, Jeffrey C.
**Subject:** RE: Cordance v. Amazon

Ryan - We continue to be willing to take the approach stated below to get the information we require to meet next Friday's deadline, rather than taking this issue to the judge. We were left with no choice but to schedule a hearing so as to avoid possible prejudice to our client.  If you can commit to getting us a couple of key documents and allowing us to take a 2-3 hour telephone deposition of a knowledgeable witness in the next couple of days (and can also commit to getting us a complete response to Interrogatory No. 21 --which we need to comply with the June 6 deadline-- immediately) , then we would be willing to cancel next week's hearing.  Please advise.

Thanks,
Bob

> **From:** Ryan Marton [mailto:RMarton@fenwick.com]
> **Sent:** Monday, May 19, 2008 9:57 PM
> **To:** Abrahamsen, Robert; Darren Donnelly
> **Cc:** Albert, Michael; O'Neill, Jeffrey C.
> **Subject:** RE: Cordance v. Amazon
>
> Bob,
>
> We are evaluating your request but haven't completed the communication on the issue.  We expect to get back to you as soon possible on this.
>
> Regards,
> Ryan
>
> **From:** Robert Abrahamsen [mailto:Robert.Abrahamsen@WolfGreenfield.com]
> **Sent:** Monday, May 19, 2008 10:45 AM
> **To:** Darren Donnelly
> **Cc:** Ryan Marton; Albert, Michael; O'Neill, Jeffrey C.
> **Subject:** Cordance v. Amazon
>
> Darren - As we just discussed, we expect to hear back from you by the end of the day today (4 pm EST) as to whether you will agree to produce a couple of key documents (e.g., system design documents) concerning the collection and processing of feedback about buyers and sellers, and a knowledgeable witness on those topics for a 2-3 hour telephone deposition, by Wednesday of this week.  It became evident at Friday's deposition that, in spite of the Court's order, you have yet to produce even a single document (source code or otherwise) on these topics.  As I noted during our phone call, we need this discovery to allow us to identify the full set of claims we will be asserting in this matter.  Friday's deposition gave us some of the information we need to accomplish that objective, but we need at least some discovery concerning the accused systems for collecting and processing feedback information about buyers and sellers in order to complete our analysis.

We look forward to your response.

Regards,
Bob

**Robert M. Abrahamsen**
rabrahamsen@wolfgreenfield.com
direct dial 617.646.8256
Wolf, Greenfield & Sacks, P.C.
600 Atlantic Avenue
Boston, Massachusetts 02210-2206
617.646.8000 | 617.646.8646 fax
*This e-mail message and any attachments may contain confidential or privileged information. If you are not the intended recipient, please notify me immediately by replying to this message. Please destroy all copies of this message and any attachments. Thank you.*

-------------------------------------------

IRS Circular 230  Disclosure:  To ensure compliance with requirements imposed by the IRS, we inform you that any U.S. federal tax advice in this communication (including attachments) is not intended or written by Fenwick & West LLP to be used, and cannot be used, for the purpose of (i) avoiding penalties under the Internal Revenue Code or (ii) promoting, marketing, or recommending to another party any transaction or matter addressed herein.

-------------------------------------------

ATTENTION:
The information contained in this message may be legally privileged and confidential.  It is intended to be read only by the individual or entity to whom it is addressed or by their designee. If the reader of this message is not the intended recipient, you are on notice that any distribution of this message, in any form, is strictly prohibited.

If you have received this message in error, please immediately notify the sender and/or Fenwick & West LLP by telephone at (650) 988-8500 and delete or destroy any copy of this message.

# EXHIBIT F

**Ryan Marton**

| | |
|---|---|
| **From:** | Ryan Marton |
| **Sent:** | Tuesday, May 20, 2008 4:52 PM |
| **To:** | 'Robert Abrahamsen'; Darren Donnelly |
| **Cc:** | Albert, Michael; O'Neill, Jeffrey C. |
| **Subject:** | RE: Cordance v. Amazon |

Bob, you should have received the supplemental response to interrogatory number 21 today. As to the buyer and seller feedback documents, we should be getting those documents by tomorrow and expect to produce them as quickly as possible.

Regards,
Ryan

**From:** Robert Abrahamsen [mailto:Robert.Abrahamsen@WolfGreenfield.com]
**Sent:** Tuesday, May 20, 2008 9:50 AM
**To:** Ryan Marton; Darren Donnelly
**Cc:** Albert, Michael; O'Neill, Jeffrey C.
**Subject:** RE: Cordance v. Amazon

Ryan - We continue to be willing to take the approach stated below to get the information we require to meet next Friday's deadline, rather than taking this issue to the judge. We were left with no choice but to schedule a hearing so as to avoid possible prejudice to our client. If you can commit to getting us a couple of key documents and allowing us to take a 2-3 hour telephone deposition of a knowledgeable witness in the next couple of days (and can also commit to getting us a complete response to Interrogatory No. 21 --which we need to comply with the June 6 deadline-- immediately) , then we would be willing to cancel next week's hearing. Please advise.

Thanks,
Bob

**From:** Ryan Marton [mailto:RMarton@fenwick.com]
**Sent:** Monday, May 19, 2008 9:57 PM
**To:** Abrahamsen, Robert; Darren Donnelly
**Cc:** Albert, Michael; O'Neill, Jeffrey C.
**Subject:** RE: Cordance v. Amazon

Bob,

We are evaluating your request but haven't completed the communication on the issue. We expect to get back to you as soon possible on this.

Regards,
Ryan

**From:** Robert Abrahamsen [mailto:Robert.Abrahamsen@WolfGreenfield.com]
**Sent:** Monday, May 19, 2008 10:45 AM

**To:** Darren Donnelly
**Cc:** Ryan Marton; Albert, Michael; O'Neill, Jeffrey C.
**Subject:** Cordance v. Amazon

Darren - As we just discussed, we expect to hear back from you by the end of the day today (4 pm EST) as to whether you will agree to produce a couple of key documents (e.g., system design documents) concerning the collection and processing of feedback about buyers and sellers, and a knowledgeable witness on those topics for a 2-3 hour telephone deposition, by Wednesday of this week.  It became evident at Friday's deposition that, in spite of the Court's order, you have yet to produce even a single document (source code or otherwise) on these topics.  As I noted during our phone call, we need this discovery to allow us to identify the full set of claims we will be asserting in this matter.  Friday's deposition gave us some of the information we need to accomplish that objective, but we need at least some discovery concerning the accused systems for collecting and processing feedback information about buyers and sellers in order to complete our analysis.

We look forward to your response.

Regards,
Bob

**Robert M. Abrahamsen**
rabrahamsen@wolfgreenfield.com
direct dial 617.646.8256
Wolf, Greenfield & Sacks, P.C.
600 Atlantic Avenue
Boston, Massachusetts 02210-2206
617.646.8000 | 617.646.8646 fax
*This e-mail message and any attachments may contain confidential or privileged information. If you are not the intended recipient, please notify me immediately by replying to this message. Please destroy all copies of this message and any attachments. Thank you.*

--------------------------------------------

IRS Circular 230  Disclosure:  To ensure compliance with requirements imposed by the IRS, we inform you that any U.S. federal tax advice in this communication (including attachments) is not intended or written by Fenwick & West LLP to be used, and cannot be used, for the purpose of (i) avoiding penalties under the Internal Revenue Code or (ii) promoting, marketing, or recommending to another party any transaction or matter addressed herein.
--------------------------------------------

ATTENTION:
The information contained in this message may be legally privileged and confidential.  It is intended to be read only by the individual or entity to whom it is addressed or by their designee. If the reader of this message is not the intended recipient, you are on notice that any distribution of this message, in any form, is strictly prohibited.

If you have received this message in error, please immediately notify the sender and/or Fenwick & West LLP by telephone at (650) 988-8500 and delete or destroy any copy of this message.

# EXHIBIT G

**Ryan Marton**

| | |
|---|---|
| **From:** | Robert Abrahamsen [Robert.Abrahamsen@WolfGreenfield.com] |
| **Sent:** | Tuesday, May 20, 2008 6:03 PM |
| **To:** | Ryan Marton; Darren Donnelly |
| **Cc:** | Albert, Michael; O'Neill, Jeffrey C. |
| **Subject:** | RE: Cordance v. Amazon |

Ryan - What about our request for a telephone deposition of a witness knowledgeable about the collection and processing of feedback about buyers and sellers? We must be certain that our client will not be prejudiced by your client's violation of the Court's April 1 order. We need to identify the full complement of asserted claims (and provide proposed constructions of terms we believe need to be construed) by the end of next week and we need the requested deposition (which we could have taken earlier had your client complied with the Court's order) to achieve that objective. I believe we can meet that schedule if you can commit to producing the promised documents by Thursday and making a witness available first thing Tuesday morning. If you can't do that, then we will be left with no choice but to ask the Court to find Amazon in contempt and to grant Cordance appropriate relief. Please let us know by tomorrow morning whether you will agree to produce a knowledgeable witness, in addition to the documents, as requested. Thanks, Bob

**From:** Ryan Marton [mailto:RMarton@fenwick.com]
**Sent:** Tuesday, May 20, 2008 7:52 PM
**To:** Abrahamsen, Robert; Darren Donnelly
**Cc:** Albert, Michael; O'Neill, Jeffrey C.
**Subject:** RE: Cordance v. Amazon

Bob, you should have received the supplemental response to interrogatory number 21 today. As to the buyer and seller feedback documents, we should be getting those documents by tomorrow and expect to produce them as quickly as possible.

Regards,
Ryan

**From:** Robert Abrahamsen [mailto:Robert.Abrahamsen@WolfGreenfield.com]
**Sent:** Tuesday, May 20, 2008 9:50 AM
**To:** Ryan Marton; Darren Donnelly
**Cc:** Albert, Michael; O'Neill, Jeffrey C.
**Subject:** RE: Cordance v. Amazon

Ryan - We continue to be willing to take the approach stated below to get the information we require to meet next Friday's deadline, rather than taking this issue to the judge. We were left with no choice but to schedule a hearing so as to avoid possible prejudice to our client. If you can commit to getting us a couple of key documents and allowing us to take a 2-3 hour telephone deposition of a knowledgeable witness in the next couple of days (and can also commit to getting us a complete response to Interrogatory No. 21 --which we need to comply with the June 6 deadline-- immediately) , then we would be willing to cancel next week's hearing. Please advise.

Thanks,
Bob

**From:** Ryan Marton [mailto:RMarton@fenwick.com]
**Sent:** Monday, May 19, 2008 9:57 PM
**To:** Abrahamsen, Robert; Darren Donnelly
**Cc:** Albert, Michael; O'Neill, Jeffrey C.
**Subject:** RE: Cordance v. Amazon

Bob,

We are evaluating your request but haven't completed the communication on the issue.  We expect to get back to you as soon possible on this.


Regards,
Ryan


**From:** Robert Abrahamsen [mailto:Robert.Abrahamsen@WolfGreenfield.com]
**Sent:** Monday, May 19, 2008 10:45 AM
**To:** Darren Donnelly
**Cc:** Ryan Marton; Albert, Michael; O'Neill, Jeffrey C.
**Subject:** Cordance v. Amazon

Darren - As we just discussed, we expect to hear back from you by the end of the day today (4 pm EST) as to whether you will agree to produce a couple of key documents (e.g., system design documents) concerning the collection and processing of feedback about buyers and sellers, and a knowledgeable witness on those topics for a 2-3 hour telephone deposition, by Wednesday of this week.  It became evident at Friday's deposition that, in spite of the Court's order, you have yet to produce even a single document (source code or otherwise) on these topics.  As I noted during our phone call, we need this discovery to allow us to identify the full set of claims we will be asserting in this matter.  Friday's deposition gave us some of the information we need to accomplish that objective, but we need at least some discovery concerning the accused systems for collecting and processing feedback information about buyers and sellers in order to complete our analysis.

We look forward to your response.


Regards,
Bob

## Robert M. Abrahamsen

rabrahamsen@wolfgreenfield.com
direct dial 617.646.8256
Wolf, Greenfield & Sacks, P.C.
600 Atlantic Avenue
Boston, Massachusetts 02210-2206
617.646.8000 | 617.646.8646 fax
*This e-mail message and any attachments may contain confidential or privileged information. If you are not the intended recipient, please notify me immediately by replying to this message. Please destroy all copies of this message and any attachments. Thank you.*


--------------------------------------------

IRS Circular 230  Disclosure:  To ensure compliance with requirements imposed by the IRS,

we inform you that any U.S. federal tax advice in this communication (including attachments) is not intended or written by Fenwick & West LLP to be used, and cannot be used, for the purpose of (i) avoiding penalties under the Internal Revenue Code or (ii) promoting, marketing, or recommending to another party any transaction or matter addressed herein.

--------------------------------------------

ATTENTION:
The information contained in this message may be legally privileged and confidential.  It is intended to be read only by the individual or entity to whom it is addressed or by their designee. If the reader of this message is not the intended recipient, you are on notice that any distribution of this message, in any form, is strictly prohibited.

If you have received this message in error, please immediately notify the sender and/or Fenwick & West LLP by telephone at (650) 988-8500 and delete or destroy any copy of this message.

# EXHIBIT H

## Ryan Marton

**From:**      Ryan Marton
**Sent:**      Wednesday, May 21, 2008 11:43 AM
**To:**        'Robert Abrahamsen'; Darren Donnelly
**Cc:**        Albert, Michael; O'Neill, Jeffrey C.
**Subject:**   RE: Cordance v. Amazon

Bob, we expect to get you the documents by tomorrow or Friday.  We can also make a witness available on Tuesday for a telephonic deposition but prefer the afternoon given the holiday. Please let us know what works for you and also let us know about any other logistics for the deposition.

Also, we would like some further clarity with regard to Cordance's commitment to produce source code from its backup tapes.  We need Cordance to stipulate that it is producing all of the source code from the backup tapes related to the implementation of the Cordance patents by this Friday.  Please advise.

Thanks,
Ryan

**From:** Robert Abrahamsen [mailto:Robert.Abrahamsen@WolfGreenfield.com]
**Sent:** Tuesday, May 20, 2008 6:03 PM
**To:** Ryan Marton; Darren Donnelly
**Cc:** Albert, Michael; O'Neill, Jeffrey C.
**Subject:** RE: Cordance v. Amazon

Ryan - What about our request for a telephone deposition of a witness knowledgeable about the collection and processing of feedback about buyers and sellers?  We must be certain that our client will not be prejudiced by your client's violation of the Court's April 1 order.  We need to identify the full complement of asserted claims (and provide proposed constructions of terms we believe need to be construed) by the end of next week and we need the requested deposition (which we could have taken earlier had your client complied with the Court's order) to achieve that objective. I believe we can meet that schedule if you can commit to producing the promised documents by Thursday and making a witness available first thing Tuesday morning.  If you can't do that, then we will be left with no choice but to ask the Court to find Amazon in contempt and to grant Cordance appropriate relief.  Please let us know by tomorrow morning whether you will agree to produce a knowledgeable witness, in addition to the documents, as requested.  Thanks, Bob

**From:** Ryan Marton [mailto:RMarton@fenwick.com]
**Sent:** Tuesday, May 20, 2008 7:52 PM
**To:** Abrahamsen, Robert; Darren Donnelly
**Cc:** Albert, Michael; O'Neill, Jeffrey C.
**Subject:** RE: Cordance v. Amazon

Bob, you should have received the supplemental response to interrogatory number 21 today. As to the buyer and seller feedback documents, we should be getting those documents by tomorrow and expect to produce them as quickly as possible.

Regards,
Ryan

**From:** Robert Abrahamsen [mailto:Robert.Abrahamsen@WolfGreenfield.com]
**Sent:** Tuesday, May 20, 2008 9:50 AM
**To:** Ryan Marton; Darren Donnelly
**Cc:** Albert, Michael; O'Neill, Jeffrey C.
**Subject:** RE: Cordance v. Amazon

Ryan - We continue to be willing to take the approach stated below to get the information we require to meet next Friday's deadline, rather than taking this issue to the judge. We were left with no choice but to schedule a hearing so as to avoid possible prejudice to our client. If you can commit to getting us a couple of key documents and allowing us to take a 2-3 hour telephone deposition of a knowledgeable witness in the next couple of days (and can also commit to getting us a complete response to Interrogatory No. 21 --which we need to comply with the June 6 deadline-- immediately) , then we would be willing to cancel next week's hearing. Please advise.

Thanks,
Bob

**From:** Ryan Marton [mailto:RMarton@fenwick.com]
**Sent:** Monday, May 19, 2008 9:57 PM
**To:** Abrahamsen, Robert; Darren Donnelly
**Cc:** Albert, Michael; O'Neill, Jeffrey C.
**Subject:** RE: Cordance v. Amazon

Bob,

We are evaluating your request but haven't completed the communication on the issue. We expect to get back to you as soon possible on this.

Regards,
Ryan

**From:** Robert Abrahamsen [mailto:Robert.Abrahamsen@WolfGreenfield.com]
**Sent:** Monday, May 19, 2008 10:45 AM
**To:** Darren Donnelly
**Cc:** Ryan Marton; Albert, Michael; O'Neill, Jeffrey C.
**Subject:** Cordance v. Amazon

Darren - As we just discussed, we expect to hear back from you by the end of the day today (4 pm EST) as to whether you will agree to produce a couple of key documents (e.g., system design documents) concerning the collection and processing of feedback about buyers and sellers, and a knowledgeable witness on those topics for a 2-3 hour telephone deposition, by Wednesday of this week. It became evident at Friday's deposition that, in spite of the Court's order, you have yet to produce even a single document (source code or otherwise) on these topics. As I noted during our phone call, we need this discovery to allow us to identify the full set of claims we will be asserting in this matter. Friday's deposition gave us some of the information we need to accomplish that objective, but we need at least some discovery concerning the accused systems for collecting and processing feedback information about buyers and sellers in order to complete our analysis.

We look forward to your response.

Regards,
Bob

**Robert M. Abrahamsen**
rabrahamsen@wolfgreenfield.com
direct dial 617.646.8256
Wolf, Greenfield & Sacks, P.C.
600 Atlantic Avenue
Boston, Massachusetts 02210-2206
617.646.8000 | 617.646.8646 fax
*This e-mail message and any attachments may contain confidential or privileged information. If you are not the intended recipient, please notify me immediately by replying to this message. Please destroy all copies of this message and any attachments. Thank you.*


---------------------------------------------

IRS Circular 230  Disclosure:  To ensure compliance with requirements imposed by the IRS, we inform you that any U.S. federal tax advice in this communication (including attachments) is not intended or written by Fenwick & West LLP to be used, and cannot be used, for the purpose of (i) avoiding penalties under the Internal Revenue Code or (ii) promoting, marketing, or recommending to another party any transaction or matter addressed herein.
---------------------------------------------
ATTENTION:
The information contained in this message may be legally privileged and confidential.  It is intended to be read only by the individual or entity to whom it is addressed or by their designee. If the reader of this message is not the intended recipient, you are on notice that any distribution of this message, in any form, is strictly prohibited.

If you have received this message in error, please immediately notify the sender and/or Fenwick & West LLP by telephone at (650) 988-8500 and delete or destroy any copy of this message.

# EXHIBIT I

# Ryan Marton

| | |
|---|---|
| **From:** | Ryan Marton |
| **Sent:** | Wednesday, May 21, 2008 2:51 PM |
| **To:** | Ryan Marton; 'Robert Abrahamsen'; Darren Donnelly |
| **Cc:** | 'Albert, Michael'; 'O'Neill, Jeffrey C.' |
| **Subject:** | RE: Cordance v. Amazon |

Bob, can you get back to me on these issues asap as I need to set the witness' schedule. Also, I need to know if the source code issue should be included in today's filing. Thanks, Ryan

**From:** Ryan Marton
**Sent:** Wednesday, May 21, 2008 11:43 AM
**To:** 'Robert Abrahamsen'; Darren Donnelly
**Cc:** Albert, Michael; O'Neill, Jeffrey C.
**Subject:** RE: Cordance v. Amazon

Bob, we expect to get you the documents by tomorrow or Friday. We can also make a witness available on Tuesday for a telephonic deposition but prefer the afternoon given the holiday. Please let us know what works for you and also let us know about any other logistics for the deposition.

Also, we would like some further clarity with regard to Cordance's commitment to produce source code from its backup tapes. We need Cordance to stipulate that it is producing all of the source code from the backup tapes related to the implementation of the Cordance patents by this Friday. Please advise.

Thanks,
Ryan

**From:** Robert Abrahamsen [mailto:Robert.Abrahamsen@WolfGreenfield.com]
**Sent:** Tuesday, May 20, 2008 6:03 PM
**To:** Ryan Marton; Darren Donnelly
**Cc:** Albert, Michael; O'Neill, Jeffrey C.
**Subject:** RE: Cordance v. Amazon

Ryan - What about our request for a telephone deposition of a witness knowledgeable about the collection and processing of feedback about buyers and sellers? We must be certain that our client will not be prejudiced by your client's violation of the Court's April 1 order. We need to identify the full complement of asserted claims (and provide proposed constructions of terms we believe need to be construed) by the end of next week and we need the requested deposition (which we could have taken earlier had your client complied with the Court's order) to achieve that objective. I believe we can meet that schedule if you can commit to producing the promised documents by Thursday and making a witness available first thing Tuesday morning. If you can't do that, then we will be left with no choice but to ask the Court to find Amazon in contempt and to grant Cordance appropriate relief. Please let us know by tomorrow morning whether you will agree to produce a knowledgeable witness, in addition to the documents, as requested. Thanks, Bob

**From:** Ryan Marton [mailto:RMarton@fenwick.com]
**Sent:** Tuesday, May 20, 2008 7:52 PM
**To:** Abrahamsen, Robert; Darren Donnelly

**Cc:** Albert, Michael; O'Neill, Jeffrey C.
**Subject:** RE: Cordance v. Amazon

Bob, you should have received the supplemental response to interrogatory number 21 today. As to the buyer and seller feedback documents, we should be getting those documents by tomorrow and expect to produce them as quickly as possible.

Regards,
Ryan

---

**From:** Robert Abrahamsen [mailto:Robert.Abrahamsen@WolfGreenfield.com]
**Sent:** Tuesday, May 20, 2008 9:50 AM
**To:** Ryan Marton; Darren Donnelly
**Cc:** Albert, Michael; O'Neill, Jeffrey C.
**Subject:** RE: Cordance v. Amazon

Ryan - We continue to be willing to take the approach stated below to get the information we require to meet next Friday's deadline, rather than taking this issue to the judge. We were left with no choice but to schedule a hearing so as to avoid possible prejudice to our client.  If you can commit to getting us a couple of key documents and allowing us to take a 2-3 hour telephone deposition of a knowledgeable witness in the next couple of days (and can also commit to getting us a complete response to Interrogatory No. 21 –which we need to comply with the June 6 deadline-- immediately) , then we would be willing to cancel next week's hearing.  Please advise.

Thanks,
Bob

---

**From:** Ryan Marton [mailto:RMarton@fenwick.com]
**Sent:** Monday, May 19, 2008 9:57 PM
**To:** Abrahamsen, Robert; Darren Donnelly
**Cc:** Albert, Michael; O'Neill, Jeffrey C.
**Subject:** RE: Cordance v. Amazon

Bob,

We are evaluating your request but haven't completed the communication on the issue.  We expect to get back to you as soon possible on this.

Regards,
Ryan

---

**From:** Robert Abrahamsen [mailto:Robert.Abrahamsen@WolfGreenfield.com]
**Sent:** Monday, May 19, 2008 10:45 AM
**To:** Darren Donnelly
**Cc:** Ryan Marton; Albert, Michael; O'Neill, Jeffrey C.
**Subject:** Cordance v. Amazon

Darren - As we just discussed, we expect to hear back from you by the end of the day today (4 pm EST) as to whether you will agree to produce a couple of key documents (e.g., system design documents) concerning the collection and processing of feedback about buyers and sellers, and a knowledgeable witness on those topics for a 2-3 hour telephone

deposition, by Wednesday of this week.  It became evident at Friday's deposition that, in spite of the Court's order, you have yet to produce even a single document (source code or otherwise) on these topics.  As I noted during our phone call, we need this discovery to allow us to identify the full set of claims we will be asserting in this matter.  Friday's deposition gave us some of the information we need to accomplish that objective, but we need at least some discovery concerning the accused systems for collecting and processing feedback information about buyers and sellers in order to complete our analysis.

We look forward to your response.

Regards,
Bob

**Robert M. Abrahamsen**
rabrahamsen@wolfgreenfield.com
direct dial 617.646.8256
Wolf, Greenfield & Sacks, P.C.
600 Atlantic Avenue
Boston, Massachusetts 02210-2206
617.646.8000 | 617.646.8646 fax
*This e-mail message and any attachments may contain confidential or privileged information. If you are not the intended recipient, please notify me immediately by replying to this message. Please destroy all copies of this message and any attachments. Thank you.*

---------------------------------------------

IRS Circular 230  Disclosure:  To ensure compliance with requirements imposed by the IRS, we inform you that any U.S. federal tax advice in this communication (including attachments) is not intended or written by Fenwick & West LLP to be used, and cannot be used, for the purpose of (i) avoiding penalties under the Internal Revenue Code or (ii) promoting, marketing, or recommending to another party any transaction or matter addressed herein.

---------------------------------------------

ATTENTION:
The information contained in this message may be legally privileged and confidential.  It is intended to be read only by the individual or entity to whom it is addressed or by their designee. If the reader of this message is not the intended recipient, you are on notice that any distribution of this message, in any form, is strictly prohibited.

If you have received this message in error, please immediately notify the sender and/or Fenwick & West LLP by telephone at (650) 988-8500 and delete and destroy any copy of this message.

# EXHIBIT J

**Ryan Marton**

**From:**    Robert Abrahamsen [Robert.Abrahamsen@WolfGreenfield.com]
**Sent:**    Wednesday, May 21, 2008 3:26 PM
**To:**    Ryan Marton; Darren Donnelly
**Cc:**    Albert, Michael; O'Neill, Jeffrey C.
**Subject:** RE: Cordance v. Amazon

Ryan - We would like to take the deposition on Tuesday afternoon.  You should be aware, however, that part of the relief we are asking for in our letter is for a witness be brought to Boston for a deposition on these topics.

As for the source code, as indicated previously, <u>all</u> source code on the back up tapes will be produced by Friday.

Bob

> **From:** Ryan Marton [mailto:RMarton@fenwick.com]
> **Sent:** Wednesday, May 21, 2008 5:51 PM
> **To:** Ryan Marton; Abrahamsen, Robert; Darren Donnelly
> **Cc:** Albert, Michael; O'Neill, Jeffrey C.
> **Subject:** RE: Cordance v. Amazon
>
> Bob, can you get back to me on these issues asap as I need to set the witness' schedule. Also, I need to know if the source code issue should be included in today's filing. Thanks, Ryan
>
> **From:** Ryan Marton
> **Sent:** Wednesday, May 21, 2008 11:43 AM
> **To:** 'Robert Abrahamsen'; Darren Donnelly
> **Cc:** Albert, Michael; O'Neill, Jeffrey C.
> **Subject:** RE: Cordance v. Amazon
>
> Bob, we expect to get you the documents by tomorrow or Friday.  We can also make a witness available on Tuesday for a telephonic deposition but prefer the afternoon given the holiday. Please let us know what works for you and also let us know about any other logistics for the deposition.
>
> Also, we would like some further clarity with regard to Cordance's commitment to produce source code from its backup tapes.  We need Cordance to stipulate that it is producing all of the source code from the backup tapes related to the implementation of the Cordance patents by this Friday. Please advise.
>
> Thanks,
> Ryan
>
> **From:** Robert Abrahamsen [mailto:Robert.Abrahamsen@WolfGreenfield.com]
> **Sent:** Tuesday, May 20, 2008 6:03 PM
> **To:** Ryan Marton; Darren Donnelly
> **Cc:** Albert, Michael; O'Neill, Jeffrey C.

**Subject:** RE: Cordance v. Amazon

Ryan - What about our request for a telephone deposition of a witness knowledgeable about the collection and processing of feedback about buyers and sellers? We must be certain that our client will not be prejudiced by your client's violation of the Court's April 1 order. We need to identify the full complement of asserted claims (and provide proposed constructions of terms we believe need to be construed) by the end of next week and we need the requested deposition (which we could have taken earlier had your client complied with the Court's order) to achieve that objective. I believe we can meet that schedule if you can commit to producing the promised documents by Thursday and making a witness available first thing Tuesday morning. If you can't do that, then we will be left with no choice but to ask the Court to find Amazon in contempt and to grant Cordance appropriate relief. Please let us know by tomorrow morning whether you will agree to produce a knowledgeable witness, in addition to the documents, as requested. Thanks, Bob

**From:** Ryan Marton [mailto:RMarton@fenwick.com]
**Sent:** Tuesday, May 20, 2008 7:52 PM
**To:** Abrahamsen, Robert; Darren Donnelly
**Cc:** Albert, Michael; O'Neill, Jeffrey C.
**Subject:** RE: Cordance v. Amazon

Bob, you should have received the supplemental response to interrogatory number 21 today. As to the buyer and seller feedback documents, we should be getting those documents by tomorrow and expect to produce them as quickly as possible.

Regards,
Ryan

**From:** Robert Abrahamsen [mailto:Robert.Abrahamsen@WolfGreenfield.com]
**Sent:** Tuesday, May 20, 2008 9:50 AM
**To:** Ryan Marton; Darren Donnelly
**Cc:** Albert, Michael; O'Neill, Jeffrey C.
**Subject:** RE: Cordance v. Amazon

Ryan - We continue to be willing to take the approach stated below to get the information we require to meet next Friday's deadline, rather than taking this issue to the judge. We were left with no choice but to schedule a hearing so as to avoid possible prejudice to our client. If you can commit to getting us a couple of key documents and allowing us to take a 2-3 hour telephone deposition of a knowledgeable witness in the next couple of days (and can also commit to getting us a complete response to Interrogatory No. 21 --which we need to comply with the June 6 deadline-- immediately) , then we would be willing to cancel next week's hearing. Please advise.

Thanks,
Bob

**From:** Ryan Marton [mailto:RMarton@fenwick.com]
**Sent:** Monday, May 19, 2008 9:57 PM
**To:** Abrahamsen, Robert; Darren Donnelly
**Cc:** Albert, Michael; O'Neill, Jeffrey C.
**Subject:** RE: Cordance v. Amazon

Bob,

We are evaluating your request but haven't completed the communication on the issue.  We expect to get back to you as soon possible on this.

Regards,
Ryan

**From:** Robert Abrahamsen [mailto:Robert.Abrahamsen@WolfGreenfield.com]
**Sent:** Monday, May 19, 2008 10:45 AM
**To:** Darren Donnelly
**Cc:** Ryan Marton; Albert, Michael; O'Neill, Jeffrey C.
**Subject:** Cordance v. Amazon

Darren - As we just discussed, we expect to hear back from you by the end of the day today (4 pm EST) as to whether you will agree to produce a couple of key documents (e.g., system design documents) concerning the collection and processing of feedback about buyers and sellers, and a knowledgeable witness on those topics for a 2-3 hour telephone deposition, by Wednesday of this week.  It became evident at Friday's deposition that, in spite of the Court's order, you have yet to produce even a single document (source code or otherwise) on these topics.  As I noted during our phone call, we need this discovery to allow us to identify the full set of claims we will be asserting in this matter.  Friday's deposition gave us some of the information we need to accomplish that objective, but we need at least some discovery concerning the accused systems for collecting and processing feedback information about buyers and sellers in order to complete our analysis.

We look forward to your response.

Regards,
Bob

## Robert M. Abrahamsen
rabrahamsen@wolfgreenfield.com
direct dial 617.646.8256
Wolf, Greenfield & Sacks, P.C.
600 Atlantic Avenue
Boston, Massachusetts 02210-2206
617.646.8000 | 617.646.8646 fax
*This e-mail message and any attachments may contain confidential or privileged information. If you are not the intended recipient, please notify me immediately by replying to this message. Please destroy all copies of this message and any attachments. Thank you.*

--------------------------------------------
IRS Circular 230  Disclosure:  To ensure compliance with requirements imposed by the IRS, we inform you that any U.S. federal tax advice in this communication (including attachments) is not intended or written by Fenwick & West LLP to be used, and cannot be used, for the purpose of (i) avoiding penalties under the Internal Revenue Code or (ii) promoting, marketing, or recommending to another party any transaction or matter addressed herein.
--------------------------------------------
ATTENTION:

The information contained in this message may be legally privileged and confidential.  It is intended to be read only by the individual or entity to whom it is addressed or by their designee. If the reader of this message is not the intended recipient, you are on notice that any distribution of this message, in any form, is strictly prohibited.

If you have received this message in error, please immediately notify the sender and/or Fenwick & West LLP by telephone at (650) 988-8500 and delete or destroy any copy of this message.

# EXHIBIT K

**Ryan Marton**

| | |
|---|---|
| **From:** | Ryan Marton |
| **Sent:** | Wednesday, May 21, 2008 3:29 PM |
| **To:** | 'Robert Abrahamsen'; Darren Donnelly |
| **Cc:** | Albert, Michael; O'Neill, Jeffrey C. |
| **Subject:** | RE: Cordance v. Amazon |

Bob, I am confused. This is the first time you have mentioned the deposition take place in Boston. Previously, you asked for a telephone deposition which is what I have arranged for.  Should I cancel the Tuesday deposition?

-Ryan

**From:** Robert Abrahamsen [mailto:Robert.Abrahamsen@WolfGreenfield.com]
**Sent:** Wednesday, May 21, 2008 3:26 PM
**To:** Ryan Marton; Darren Donnelly
**Cc:** Albert, Michael; O'Neill, Jeffrey C.
**Subject:** RE: Cordance v. Amazon

Ryan - We would like to take the deposition on Tuesday afternoon.  You should be aware, however, that part of the relief we are asking for in our letter is for a witness be brought to Boston for a deposition on these topics.

As for the source code, as indicated previously, all source code on the back up tapes will be produced by Friday.

Bob

> **From:** Ryan Marton [mailto:RMarton@fenwick.com]
> **Sent:** Wednesday, May 21, 2008 5:51 PM
> **To:** Ryan Marton; Abrahamsen, Robert; Darren Donnelly
> **Cc:** Albert, Michael; O'Neill, Jeffrey C.
> **Subject:** RE: Cordance v. Amazon
>
> Bob, can you get back to me on these issues asap as I need to set the witness' schedule. Also, I need to know if the source code issue should be included in today's filing. Thanks, Ryan

> **From:** Ryan Marton
> **Sent:** Wednesday, May 21, 2008 11:43 AM
> **To:** 'Robert Abrahamsen'; Darren Donnelly
> **Cc:** Albert, Michael; O'Neill, Jeffrey C.
> **Subject:** RE: Cordance v. Amazon
>
> Bob, we expect to get you the documents by tomorrow or Friday.  We can also make a witness available on Tuesday for a telephonic deposition but prefer the afternoon given the holiday. Please let us know what works for you and also let us know about any other logistics for the deposition.

Also, we would like some further clarity with regard to Cordance's commitment to produce source code from its backup tapes. We need Cordance to stipulate that it is producing all of the source code from the backup tapes related to the implementation of the Cordance patents by this Friday. Please advise.

Thanks,
Ryan

---

**From:** Robert Abrahamsen [mailto:Robert.Abrahamsen@WolfGreenfield.com]
**Sent:** Tuesday, May 20, 2008 6:03 PM
**To:** Ryan Marton; Darren Donnelly
**Cc:** Albert, Michael; O'Neill, Jeffrey C.
**Subject:** RE: Cordance v. Amazon

Ryan - What about our request for a telephone deposition of a witness knowledgeable about the collection and processing of feedback about buyers and sellers? We must be certain that our client will not be prejudiced by your client's violation of the Court's April 1 order. We need to identify the full complement of asserted claims (and provide proposed constructions of terms we believe need to be construed) by the end of next week and we need the requested deposition (which we could have taken earlier had your client complied with the Court's order) to achieve that objective. I believe we can meet that schedule if you can commit to producing the promised documents by Thursday and making a witness available first thing Tuesday morning. If you can't do that, then we will be left with no choice but to ask the Court to find Amazon in contempt and to grant Cordance appropriate relief. Please let us know by tomorrow morning whether you will agree to produce a knowledgeable witness, in addition to the documents, as requested. Thanks, Bob

**From:** Ryan Marton [mailto:RMarton@fenwick.com]
**Sent:** Tuesday, May 20, 2008 7:52 PM
**To:** Abrahamsen, Robert; Darren Donnelly
**Cc:** Albert, Michael; O'Neill, Jeffrey C.
**Subject:** RE: Cordance v. Amazon

Bob, you should have received the supplemental response to interrogatory number 21 today. As to the buyer and seller feedback documents, we should be getting those documents by tomorrow and expect to produce them as quickly as possible.

Regards,
Ryan

**From:** Robert Abrahamsen [mailto:Robert.Abrahamsen@WolfGreenfield.com]
**Sent:** Tuesday, May 20, 2008 9:50 AM
**To:** Ryan Marton; Darren Donnelly
**Cc:** Albert, Michael; O'Neill, Jeffrey C.
**Subject:** RE: Cordance v. Amazon

Ryan - We continue to be willing to take the approach stated below to get the information we require to meet next Friday's deadline, rather than taking this issue to the judge. We were left with no choice but to schedule a hearing so as to avoid possible prejudice to our client. If you can commit to getting us a couple of key documents and allowing us to take a 2-3 hour telephone deposition of a knowledgeable witness in the next couple of days (and can also commit to getting us a complete response to Interrogatory No. 21 --which we need

to comply with the June 6 deadline-- immediately) , then we would be willing to cancel next week's hearing.  Please advise.

Thanks,
Bob

> **From:** Ryan Marton [mailto:RMarton@fenwick.com]
> **Sent:** Monday, May 19, 2008 9:57 PM
> **To:** Abrahamsen, Robert; Darren Donnelly
> **Cc:** Albert, Michael; O'Neill, Jeffrey C.
> **Subject:** RE: Cordance v. Amazon
>
> Bob,
>
> We are evaluating your request but haven't completed the communication on the issue.  We expect to get back to you as soon possible on this.
>
> Regards,
> Ryan
>
> > **From:** Robert Abrahamsen [mailto:Robert.Abrahamsen@WolfGreenfield.com]
> > **Sent:** Monday, May 19, 2008 10:45 AM
> > **To:** Darren Donnelly
> > **Cc:** Ryan Marton; Albert, Michael; O'Neill, Jeffrey C.
> > **Subject:** Cordance v. Amazon
> >
> > Darren - As we just discussed, we expect to hear back from you by the end of the day today (4 pm EST) as to whether you will agree to produce a couple of key documents (e.g., system design documents) concerning the collection and processing of feedback about buyers and sellers, and a knowledgeable witness on those topics for a 2-3 hour telephone deposition, by Wednesday of this week.  It became evident at Friday's deposition that, in spite of the Court's order, you have yet to produce even a single document (source code or otherwise) on these topics.  As I noted during our phone call, we need this discovery to allow us to identify the full set of claims we will be asserting in this matter.  Friday's deposition gave us some of the information we need to accomplish that objective, but we need at least some discovery concerning the accused systems for collecting and processing feedback information about buyers and sellers in order to complete our analysis.
> >
> > We look forward to your response.
> >
> > Regards,
> > Bob
> >
> > **Robert M. Abrahamsen**
> > rabrahamsen@wolfgreenfield.com
> > direct dial 617.646.8256
> > Wolf, Greenfield & Sacks, P.C.
> > 600 Atlantic Avenue
> > Boston, Massachusetts 02210-2206
> > 617.646.8000 | 617.646.8646 fax
> > *This e-mail message and any attachments may contain confidential or privileged*

*information. If you are not the intended recipient, please notify me immediately by replying to this message. Please destroy all copies of this message and any attachments. Thank you.*

---------------------------------------------

IRS Circular 230  Disclosure:  To ensure compliance with requirements imposed by the IRS, we inform you that any U.S. federal tax advice in this communication (including attachments) is not intended or written by Fenwick & West LLP to be used, and cannot be used, for the purpose of (i) avoiding penalties under the Internal Revenue Code or (ii) promoting, marketing, or recommending to another party any transaction or matter addressed herein.

---------------------------------------------

ATTENTION:
The information contained in this message may be legally privileged and confidential.  It is intended to be read only by the individual or entity to whom it is addressed or by their designee. If the reader of this message is not the intended recipient, you are on notice that any distribution of this message, in any form, is strictly prohibited.

If you have received this message in error, please immediately notify the sender and/or Fenwick & West LLP by telephone at (650) 988-8500 and delete or destroy any copy of this message.

# EXHIBIT L

## Ryan Marton

**From:** Robert Abrahamsen [Robert.Abrahamsen@WolfGreenfield.com]
**Sent:** Thursday, May 22, 2008 10:29 AM
**To:** Ryan Marton
**Cc:** O'Neill, Jeffrey C.; Albert, Michael; Darren Donnelly; Saina Shamilov
**Subject:** RE: Cordance v. Amazon.com

Ryan - For the reasons stated in our letter to the Court yesterday, we believe the deposition should take place in Boston.  If the Court is unwilling to grant us that relief, however, then we will be available to take the deposition by telephone on Tuesday afternoon as soon as possible following the hearing.  A start time of 10:00 am Seattle time would work for us.

As an FYI, I will be traveling this evening and out of touch most of the day tomorrow, so please direct any further time-sensitive questions you may have this week to Jeff or Michael's attention.

Regards,
Bob

> **From:** Ryan Marton [mailto:RMarton@fenwick.com]
> **Sent:** Thursday, May 22, 2008 12:44 PM
> **To:** Abrahamsen, Robert
> **Cc:** O'Neill, Jeffrey C.; Albert, Michael; Darren Donnelly; Saina Shamilov
> **Subject:** Cordance v. Amazon.com
>
> Bob,
>
> Does Cordance plan on taking the deposition on Tuesday?  Please let me know asap and provide logistical details if the deposition is to go forward.
>
> Thanks,
> Ryan
>
> _____
>
> **Ryan J. Marton |  Fenwick & West LLP**
> 555 California Street, 12th Floor | San Francisco, CA 94104
> (415) 875-2332 | Fax: (415) 281-1350 | rmarton@fenwick.com
> -------------------------------------------
> IRS Circular 230  Disclosure:  To ensure compliance with requirements imposed by the IRS, we inform you that any U.S. federal tax advice in this communication (including attachments) is not intended or written by Fenwick & West LLP to be used, and cannot be used, for the purpose of (i) avoiding penalties under the Internal Revenue Code or (ii) promoting, marketing, or recommending to another party any transaction or matter addressed herein.
> -------------------------------------------
> ATTENTION:
> The information contained in this message may be legally privileged and confidential.  It is intended to be read only by the individual or entity to whom it is addressed or by their designee. If the reader of this message is not the intended recipient, you are on notice that any distribution of this message, in any form, is strictly prohibited.
>
> If you have received this message in error, please immediately notify the sender and/or Fenwick & West LLP by telephone at (650) 988-8500 and delete or destroy any copy of this message.

# EXHIBIT M

Designating Party in good faith believes could be likely to harm the Designating Party's
competitive position.

4.    ***Patenting and Patent Protected Persons***

(a)    "Patenting" shall mean and include any of the following acts by an
individual after that individual has personally viewed or otherwise acquired knowledge of
information in Confidential Materials describing the technical details of the other party's
technology:

(i)    preparing and/or prosecuting any patent application (or portion
thereof), whether design or utility, and either in the United States or abroad (and including
applications filed under the Patent Cooperation Treaty) that relates to the Confidential or Highly
Confidential information that the individual has personally viewed or otherwise acquired
knowledge of and that is directed to the particular field of the other party's technology described
in the Confidential or Highly Confidential information that the individual has personally viewed
or otherwise acquired knowledge of (the field of Amazon.com's technologies being the
following (1) a multi-tier distributed system and technique of processing web user requests to
order an item for generating purchase orders and for causing payment to be effectuated using
customer-specific payment information stored in a database; (2) confidential systems and
techniques, for collecting and processing electronic feedback information such as sellers' and
buyers' feedback regarding each other or items for purchase online, which are not learned by the
receiving individual from a source other than the Confidential or Highly-Confidential
information received from Amazon.com in this litigation, applicable for use in a multi-tier
distributed on-line purchasing environment; and (3) confidential systems and techniques, which
are not learned by the receiving individual from a source other than the Confidential or Highly-
Confidential information received from Amazon.com in this litigation, used by an on-line data
storage system, such as the accused S3 service, that includes multiple indexes that map user-
supplied values to identifiers that specify locations of stored data, and that employs an update
propagation protocol and/or an anti-entropy protocol to update information in the indexes and to

transfer the updated information between the indexes; and the field of Cordance's technology being a system and technique for managing digital identities and communications by registering digital addresses and certain affiliated identity records for the addressee with a server and, to the extent authorized by the addressee, either returning identity data affiliated with a particular digital address or enabling communications to be exchanged with the addressee in response to a request to the server); and

(ii)    assisting, advising, consulting with, supervising, and/or providing counsel to anyone in connection with any of the foregoing.;

(iii)    should an individual with access to Confidential or Highly-Confidential information under this protective order participate in the foregoing prosecution activities during the pendency of this litigation and for one (1) year after the conclusion thereof, including any appeals, and contend that he/she personally viewed or otherwise acquired knowledge of Confidential or Highly-Confidential information only in technological categories not related to the prosecution activities, upon request from the other party, it is the burden of the individual to establish via documented evidence created contemporaneously with general review of Confidential or Highly-Confidential information that the individual did not personally view or otherwise acquire knowledge of Confidential or Highly-Confidential information in technological categories related to the prosecution activities.

5.    ***Designating and Marking Confidential Material.***  Confidential Material shall be designated and marked as follows:

(a)    <u>Paper Documents</u>.  A document is to be designated as Confidential Material by stamping or writing on it one of the following legends, or an equivalent thereof: "Confidential" or "Highly Confidential."  Such legend shall be placed on the first page of the document and on each page that the Designating Party claims to contain Confidential Material.

(b)    <u>Electronic Document</u>.  Information or material produced digitally, e.g., on a magnetic or optical medium or by network communication, is to be designated as Confidential Material by marking the medium, container or communication with one of the legends specified