# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

CORDANCE CORPORATION,

        Plaintiff,

        v.

AMAZON.COM, INC. and
AMAZON WEB SERVICES, LLC,

        Defendants.

C.A. No. 06-491-MPT

**JURY TRIAL DEMANDED**

## AMAZON.COM AND AMAZON WEB SERVICES' ANSWER, DEFENSES AND COUNTERCLAIMS TO PLAINTIFF CORDANCE'S THIRD AMENDED COMPLAINT

### I.

### ANSWER

Defendants Amazon.com, Inc., ("Amazon.com") and Amazon Web Services, LLC ("AWS") (collectively "Amazon"), by and through their undersigned counsel, answer the Third Amended Complaint for Patent Infringement ("TAC") of plaintiff Cordance Corporation ("Plaintiff" or "Cordance"), as follows:

### THE PARTIES

1.      Amazon admits that Plaintiff purports to be a Washington corporation having a principal place of business at 3020 Issaquah-Pinelake Road, #74, Sammamish, Washington 98075.

2.      Amazon lacks sufficient information to form a belief as to the truth or falsity of the averments in paragraph 2 of the TAC and therefore denies them.

3.      Amazon admits that Amazon.com is a Delaware corporation with a principal place of business at 1200 12th Avenue South, Suite 1200, Seattle, Washington 98144.

4.      Amazon admits that Amazon.com is an online retailer that sells a variety of items and denies any remaining averments contained in paragraph 4 of the TAC.

5.      Amazon admits that AWS is a Delaware corporation with a principal place of business at 1200 12th Avenue South, Suite 1200, Seattle, Washington 98144.

6.      AWS admits that it provides web services including one called the Simple Storage Service.

## JURISDICTION AND VENUE

7.      Amazon admits that Plaintiff purports to invoke subject matter jurisdiction via 35 U.S.C. § 1 *et seq.* and 28 U.S.C. §§ 1331 and 1338(a).

8.      Amazon admits that Plaintiff purports to aver that personal jurisdiction is proper over Amazon in this court.  Amazon admits that Amazon.com and AWS are incorporated in Delaware and have users within Delaware.

9.      Amazon admits that Plaintiff purports to aver that venue is proper in this district pursuant to 28 U.S.C. §§ 1391, 1400.

## COUNT ONE – ALLEGED INFRINGEMENT OF U.S. PATENT NO. 6,757,710

10.      In response to paragraph 10 of the TAC, Amazon incorporates by reference its responses to paragraphs 1 through 9 of the TAC.

11.      Amazon admits that the document attached as Exhibit A appears on its face to be a copy of United States Patent No. 6,757,710 ("the '710 Patent").  Amazon denies every remaining averment contained in paragraph 11 of the TAC.

12.      Amazon denies the averments contained in paragraph 12 of the TAC.

13.      Amazon denies the averments contained in paragraph 13 of the TAC.

14.      Amazon denies the averments contained in paragraph 14 of the TAC.

**COUNT TWO – ALLEGED INFRINGEMENT OF U.S. PATENT NO. 6,044,205**

15.    In response to paragraph 15 of the TAC, Amazon incorporates by reference its responses to paragraphs 1 through 9 of the TAC.

16.    Amazon admits that the document attached as Exhibit B appears on its face to be a copy of United States Patent No. 6,044,205 ("the '205 Patent"). Amazon denies every remaining averment contained in paragraph 16 of the TAC.

17.    Amazon denies the averments contained in paragraph 17 of the TAC.

18.    Amazon denies the averments contained in paragraph 18 of the TAC.

19.    Amazon denies the averments contained in paragraph 19 of the TAC.

**COUNT THREE – ALLEGED INFRINGEMENT OF U.S. PATENT NO. 5,862,325**

20.    In response to paragraph 20 of the TAC, Amazon incorporates by reference its responses to paragraphs 1 through 9 of the TAC.

21.    Amazon admits that the document attached as Exhibit C appears on its face to be a copy of United States Patent No. 5,862,325 ("the '325 Patent"). Amazon denies every remaining averment contained in paragraph 21 of the TAC.

22.    Amazon denies the averments contained in paragraph 22 of the TAC.

23.    Amazon denies the averments contained in paragraph 23 of the TAC.

24.    Amazon denies the averments contained in paragraph 24 of the TAC.

25.    Amazon denies the averments contained in paragraph 25 of the TAC.

**COUNT FOUR – ALLEGED INFRINGEMENT OF U.S. PATENT NO. 6,088,717**

26.    In response to paragraph 26 of the TAC, Amazon incorporates by reference its responses to paragraphs 1 through 9 of the TAC.

27.    Amazon admits that the document attached as Exhibit D appears on its face to be a copy of United States Patent No. 6,608,717 ("the '717 Patent"). Amazon denies every remaining averment contained in paragraph 26 of the TAC.

28.    Amazon denies the averments contained in paragraph 28 of the TAC.

29.    Amazon denies the averments contained in paragraph 29 of the TAC.

30.    Amazon denies the averments contained in paragraph 30 of the TAC.

### RELIEF REQUESTED BY PLAINTIFF

Amazon denies that Plaintiff is entitled to the relief it seeks or any relief at all for the averments made in the TAC..

### II.

### DEFENSES

For its Defenses to the Third Amended Complaint, Amazon avers as follows:

### FIRST DEFENSE – NON-INFRINGEMENT

1.    Amazon has not infringed, and does not infringe, and is not liable for any infringement of the '710 Patent, the '205 Patent, the '325 Patent, or the '717 Patent (collectively, the "patents-in-suit") directly, contributorily, by inducement, or in any other manner.

### SECOND DEFENSE – INVALIDITY

2.    The patents-in-suit are invalid for failure to meet one or more of the conditions for patentability specified in Title 35, U.S.C., or the rules, regulations, and law related thereto, including, without limitation, in 35 U.S.C. §§ 101, 102, 103, and 112.

### THIRD DEFENSE – ESTOPPEL

3.    Amazon is informed and believes, and thereon avers, that the relief sought by Plaintiff is barred under the doctrine of prosecution history estoppel.

### FOURTH DEFENSE – PROSECUTION LACHES

4.      Amazon is informed and believes, and thereon avers, that the relief sought by

Plaintiff is barred under the doctrine of prosecution laches.

### FIFTH DEFENSE – LIMITATION ON DAMAGES

5.      Plaintiff's claim for damages is barred, in whole or in part, by 35 U.S.C. § 287

and/or Plaintiff's failure to plead notice thereunder.

### SIXTH DEFENSE - LACHES

6.      The doctrine of laches bars Plaintiff from obtaining all, or part, of the relief it

seeks.

### SEVENTH DEFENSE – COSTS BARRED IN ACTION FOR INFRINGEMENT OF A PATENT CONTAINING AN INVALID CLAIM

7.      Pursuant to 35 U.S.C. § 288, Plaintiff is barred from recovering any costs.

### EIGHTH DEFENSE – PATENT MISUSE

8.      On information and belief, Plaintiff has falsely indicated that the patents-in-suit

are embodied in one or more of standards relating to XRI/XDI specifications and included such

indications in specifications and/or related documents with XDI.ORG.  Such indication is

reflected in at least an agreement between Plaintiff and XDI.org dated September 13, 2004 titled

"XDI.org Intellectual Property Rights Agreement."

9.      On information and belief, Plaintiff made such indication and/or assertions of the

patents in suit being embodied in standards in an effort to wrongfully extend its patent rights to

exploit and profit from the promulgation and adoption of the XRI/XDI standards and

or/agreements relating to operation thereof.  This is reflected at least in an agreement between

Plaintiff and XDI.org dated September 13, 2004 titled "XDI.org Global Service Provider

Agreement."

10.    Accordingly, the relief sought by Plaintiff is barred in whole or in part under the doctrine of Patent Misuse.

## RESERVATION OF ADDITIONAL DEFENSES

11.    Amazon reserves the right to assert additional defenses in the event that discovery or other analysis indicates that additional defenses are appropriate.

## III.

## COUNTERCLAIMS

For its Counterclaims against Plaintiff, defendants and counterclaimants Amazon.com and AWS aver as follows:

1.    Amazon counterclaims against Plaintiff pursuant to the patent laws of the United States, Title 35 of the United States Code, and laws authorizing actions for declaratory judgment in the courts of the United States, 28 U.S.C. §§ 2201 and 2201, and Federal Rule of Civil Procedure 13.

## THE PARTIES

2.    Amazon is a Delaware corporation with its principal place of business at 1200 12th Avenue South, Suite 1200, Seattle, Washington 98144.

3.    AWS is a Delaware corporation with a principal place of business at 1200 12th Avenue South, Suite 1200, Seattle, Washington 98144.

4.    Upon information and belief, Plaintiff is a Washington corporation with a place of business at 3020 Issaquah-Pinelake Road, # 74, Sammamish, Washington 98075.

## JURISDICTION AND VENUE

5.    This Court has jurisdiction over these counterclaims pursuant to 28 U.S.C. §§ 1331, 1338(a), 2201(a), and 2202.

6.    This Court has personal jurisdiction over the Plaintiff by virtue, *inter alia,* of its filing of complaints in this Court.

7.    Venue is proper in this District pursuant to 28 U.S.C. §§ 1391 and 1400.

8.    By virtue of the averments of Plaintiff's TAC in this action and Amazon's Answer thereto, an actual controversy exists between Amazon and Plaintiff as to whether the patents-in-suit are invalid, and/or not infringed by Amazon.

## FIRST COUNTERCLAIM

### DECLARATION OF NON-INFRINGEMENT OF THE '710 PATENT

9.    Amazon restates and incorporates by reference each of the averments of paragraphs 1 through 8 of Section III of this Answer and Counterclaim.

10.    Plaintiff claims to be the owner of the '710 Patent and claims to have the right to enforce the '710 Patent.

11.    Plaintiff in this action alleges infringement of the '710 Patent by Amazon.com.

12.    Amazon.com is not infringing, has not infringed, and is not liable for any infringement of any valid claim of the '710 Patent, and Plaintiff is entitled to no relief for any Claim in the TAC for, *inter alia*, the reasons in paragraphs 1-11 of Section II of this Answer and Counterclaim.

## SECOND COUNTERCLAIM

### DECLARATION OF INVALIDITY OF THE '710 PATENT

13.    Amazon restates and incorporates by reference each of the averments of paragraphs 1 through 12 of Section III of this Answer and Counterclaim.

14.    The '710 Patent is invalid for failure to meet one or more of the conditions for patentability specified in Title 35, U.S.C., or the rules, regulations, and law related thereto, including, without limitation, in 35 U.S.C. §§ 101, 102, 103, and 112..

### THIRD COUNTERCLAIM

#### DECLARATION OF NON-INFRINGEMENT OF THE '205 PATENT

15.    Amazon restates and incorporates by reference each of the averments of paragraphs 1 through 8 of Section III of this Answer and Counterclaim.

16.    Plaintiff claims to be the owner of the '205 Patent and claims to have the right to enforce the '205 Patent.

17.    Plaintiff in this action alleges infringement of the '205 Patent by Amazon.

18.    Amazon is not infringing, has not infringed, and is not liable for any infringement of any valid claim of the '205 Patent, and Plaintiff is entitled to no relief for any Claim in the TAC for, *inter alia*, the reasons in paragraphs 1 through 11 of Section II of this Answer and Counterclaim.

### FOURTH COUNTERCLAIM

#### DECLARATION OF INVALIDITY OF THE '205 PATENT

19.    Amazon restates and incorporates by reference each of the averments of paragraphs 1–8 and 15-18 of Section III of this Answer and Counterclaim.

20.    The '205 Patent is invalid for failure to meet one or more of the conditions for patentability specified in Title 35, U.S.C., or the rules, regulations, and law related thereto, including, without limitation, in 35 U.S.C. §§ 101, 102, 103, and 112.

## FIFTH COUNTERCLAIM

### DECLARATION OF NON-INFRINGEMENT OF THE '325 PATENT

21.    Amazon restates and incorporates by reference each of the averments of paragraphs 1 through 8 of Section III of this Answer and Counterclaim.

22.    Plaintiff claims to be the owner of the '325 Patent and claims to have the right to enforce the '325 Patent.

23.    Plaintiff in this action alleges infringement of the '325 Patent by Amazon.

24.    Amazon is not infringing, has not infringed, and is not liable for any infringement of any valid claim of the '325 Patent, and Plaintiff is entitled to no relief for any Claim in the TAC for, *inter alia*, the reasons in paragraphs 1 through 11 of Section II of this Answer and Counterclaim.

## SIXTH COUNTERCLAIM

### DECLARATION OF INVALIDITY OF THE '325 PATENT

25.    Amazon restates and incorporates by reference each of the averments of paragraphs 1-8 and 21-24 of Section III of this Answer and Counterclaim.

26.    The '325 Patent is invalid for failure to meet one or more of the conditions for patentability specified in Title 35, U.S.C., or the rules, regulations, and law related thereto, including, without limitation, in 35 U.S.C. §§ 101, 102, 103, and 112.

## SEVENTH COUNTERCLAIM

### DECLARATION OF NON-INFRINGEMENT OF THE '717 PATENT

27.    Amazon restates and incorporates by reference each of the averments of paragraphs 1 through 8 of Section III of this Answer and Counterclaim.

28.    Plaintiff claims to be the owner of the '717 Patent and claims to have the right to enforce the '710 Patent.

29.    Plaintiff in this action alleges infringement of the '717 Patent by Amazon.com.

30.    Amazon.com is not infringing, has not infringed, and is not liable for any infringement of any valid claim of the '717 Patent, and Plaintiff is entitled to no relief for any Claim in the TAC for, *inter alia*, the reasons in paragraphs 1 through 11 of Section II of this Answer and Counterclaim.

### EIGHTH COUNTERCLAIM

#### DECLARATION OF INVALIDITY OF THE '717 PATENT

31.    Amazon restates and incorporates by reference each of the averments of paragraphs 1-8 and 27-30 of Section III of this Answer and Counterclaim.

32.    The '717 Patent is invalid for failure to meet one or more of the conditions for patentability specified in Title 35, U.S.C., or the rules, regulations, and law related thereto, including, without limitation, in 35 U.S.C. §§ 101, 102, 103, and 112

### NINTH COUNTERCLAIM

#### DECLARATION OF UNENFORCEABILITY

33.    Amazon restates and incorporates by reference each of the averments of paragraphs 1-8 of Section III and 8 -11 of Section II of this Answer and Counterclaim.

34.    Amazon.com seeks a declaration from the Court that the patents-in-suit are unenforceable because Plaintiff committed patent misuse, and/or came to the Court with unclean hands.

### TENTH COUNTERCLAIM

#### CORRECTION OF INVENTORSHIP ON U.S. PATENT NO. 629,269,369 UNDER U.S.C. § 256

35.     Amazon restates and incorporates by reference each of the averments of paragraphs 1 through 8 of Section III of this Answer and Counterclaim.

36.     Warren W. Adams contributed to, and was a joint inventor with the named inventor Brian D. Robertson of, subject matter claimed in United States Patent 6,269,369 (the "'369 Patent"), entitled "Networked Personal Contact Manager." A true and correct copy of the '369 Patent is attached as Exhibit A hereto.

37.     The omission of Warren W. Adams as a named inventor on the '369 Patent was the result of error.

38.     The omission of Warren W. Adams as a named inventor on the '369 Patent arose without deceptive intent on the part of warren W. Adams.

39.     Pursuant to 35 U.S.C. § 256, the '369 Patent should be corrected to name Warren W. Adams as an inventor.

### ELEVENTH COUNTERCLAIM

#### DECLARATION OF INFRINGEMENT OF U.S. PATENT NO. 6,269,369

40.     Amazon restates and incorporates by reference each of the averments of paragraphs 1 through 8 of Section III of this Answer and Counterclaim.

41.     On July 31, 2001, United States Letters Patent 6,269,369 duly and legally issued, listing inventor Brian D. Robertson. Amazon.com owns by assignment the '369 Patent. A true and correct copy of the '369 Patent is attached as Exhibit A hereto.

42.     Plaintiff and Counterclaim-Defendant Cordance is in the business of standardizing, promoting, commercializing and/or operating "iNames" and/or related services,

including the "Contact Service" and/or "Unified Address Book Service," collectively "the Cordance Services."

43.    Amazon is informed and believes, and thereon alleges, that the "United Address Book Service," is used in conjunction with the "Contact Service," and will soon be made available to the public, if not already so available.

44.    By standardizing, promoting, commercializing, and/or operating "iNames" and/or the Cordance Services, Plaintiff and Counterclaim-Defendant Cordance has engaged in present activity and/or taken concrete steps with the intent to conduct such activity, which would constitute infringement of one or more claims of the '369 Patent directly, as inducement of infringement and/or as contributory infringement.

45.    By virtue of Cordance's activities in connection with the Cordance Services, a real and substantial controversy exists between Amazon and Cordance as to the past, present, and/or future infringement of one or more claims of the '369 Patent.

46.    Cordance's acts of infringement are likely to cause, and unless restrained and enjoined, will continue to cause, irreparable injury and damage to Amazon for which there is no adequate remedy at law.

47.    As a result of the acts of infringement by Cordance, Amazon has suffered and/or will continue to suffer substantial damages in an amount to be proven at trial.

## PRAYER FOR RELIEF

WHEREFORE, Amazon prays for judgment with respect to Cordance's TAC and Amazon's Defenses and the above Counterclaims as follows:

a.    this Court enter judgment against Cordance and in favor of Amazon on the claims set forth in the Complaint filed by Plaintiff and that such claims be dismissed with prejudice;

b.      this Court find and declare that the claims of the patents asserted by Cordance are not infringed by Amazon and that Amazon is not liable for any infringement;

c.      this Court find and declare that the claims of the patents-in-suit are invalid and unenforceable;

d.      this Court find and declare that Plaintiff is guilty of patent misuse and/or unclean hands, and that the patents-in-suit are unenforceable;

e.      this Court order that Warren W. Adams be added as an inventor on the '369 Patent;

f.      this Court declare and enter judgment that Cordance's present and/or future activity, *inter alia*, in connection with the Cordance Services, constitutes infringement of the '369 patent directly, by inducement, as contributory infringement, and/or otherwise;

g.      this Court temporarily, preliminary and permanently enjoin Cordance, its parents, subsidiaries, affiliates, divisions, officers, agents, servants, employees, directors, partners, representatives and all parties in active concert and/or participation with them, from engaging in the aforesaid unlawful acts of infringement, contributory infringement, inducement of infringement, or otherwise of the '369 patent;

h.      this Court order Cordance to account for and pay to Amazon all damages caused to Amazon by Cordance's infringement, contributory infringement, inducement of infringement, or otherwise, pursuant to 35 U.S.C. § 284, and award Amazon any and all other compensatory damages available by law;

i.      this Court award Amazon increased damages and attorney's fees pursuant to 35 U.S.C. §§ 284-285 or otherwise;

j.      this Court award Amazon prejudgment and postjudgment interest and its costs incurred in this action; and

k.      this Court grant Amazon such other and further relief as the Court shall deem just and proper.

## IV.

## <u>DEMAND FOR JURY TRIAL</u>

Amazon demands trial by jury on all issues so triable.

POTTER ANDERSON & CORROON LLP

OF COUNSEL:

Lynn H. Pasahow
J. David Hadden
Darren E. Donnelly
Saina S. Shamilov
Ryan Marton
FENWICK & WEST LLP
801 California Street
Mountain View, CA 94041
Tel: (650) 988-8500

Dated: June 23, 2008
871124 / 30763

By:    */s/ David E. Moore*
      Richard L. Horwitz (#2246)
      David E. Moore (#3983)
      Hercules Plaza, 6th Floor
      1313 N. Market Street
      Wilmington, Delaware  19801
      Tel:  (302) 984-6000
      rhorwitz@potteranderson.com
      dmoore@potteranderson.com

*Attorneys for Defendants and Counterclaim
Plaintiffs Amazon.com, Inc. and Amazon Web
Services, LLC*

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

### CERTIFICATE OF SERVICE

I, David E. Moore, hereby certify that on June 23, 2008, the attached document was electronically filed with the Clerk of the Court using CM/ECF which will send notification to the registered attorney(s) of record that the document has been filed and is available for viewing and downloading.

I further certify that on June 23, 2008, the attached document was Electronically Mailed to the following person(s):

Steven J. Balick
John G. Day
Tiffany Geyer Lydon
Ashby & Geddes
500 Delaware Avenue, 8th Floor
Wilmington, DE 19899
sbalick@ashby-geddes.com
jday@ashby-geddes.com
tlydon@ashby-geddes.com

Michael A. Albert
Robert M. Abrahamsen
Wolf, Greenfield & Sacks, P.C.
600 Atlantic Avenue
Boston, MA 02210-2206
malbert@wolfgreenfield.com
rabrahamsen@wolfgreenfield.com

By:  /s/ David E. Moore
        Richard L. Horwitz
        David E. Moore
        Hercules Plaza, 6th Floor
        1313 N. Market Street
        Wilmington, Delaware 19899-0951
        (302) 984-6000
        rhorwitz@potteranderson.com
        dmoore@potteranderson.com

757320 / 30763

# EXHIBIT A

US006269369B1

(12) **United States Patent**
Robertson

(10) **Patent No.:**     **US 6,269,369 B1**
(45) **Date of Patent:**     **Jul. 31, 2001**

(54) **NETWORKED PERSONAL CONTACT MANAGER**

(75) Inventor: **Brian D. Robertson**, Cambridge, MA (US)

(73) Assignee: **Amazon.Com Holdings, Inc.**, Seattle, WA (US)

( * ) Notice: Subject to any disclaimer, the term of this patent is extended or adjusted under 35 U.S.C. 154(b) by 0 days.

(21) Appl. No.: **08/962,997**

(22) Filed: **Nov. 2, 1997**

(51) Int. Cl.[7] ........................................ **G06F 3/00**

(52) **U.S. Cl.** .......................... **707/10**; 709/201; 709/202; 709/203; 709/300; 709/217; 709/218; 709/219; 707/1; 707/104; 707/501; 707/513; 707/201; 345/327; 345/331

(58) **Field of Search** ................................... 709/300, 201, 709/202, 203, 217, 218, 219; 707/1, 104, 501, 513, 10, 201; 345/327, 331

(56) **References Cited**

U.S. PATENT DOCUMENTS

| | | | |
|---|---|---|---|
| 5,133,075 | * 7/1992 | Risch | 707/201 |
| 5,539,813 | * 7/1996 | Jonsson et al. | 379/202 |
| 5,737,726 | 4/1998 | Cameron et al. | 705/7 |
| 5,794,210 | * 8/1998 | Goldhaber et al. | 717/513 |
| 5,796,395 | * 8/1998 | De Hond | 345/331 |
| 5,831,611 | 11/1998 | Kennedy et al. | 345/335 |
| 5,835,087 | * 11/1998 | Herz et al. | 345/327 |
| 5,918,227 | * 6/1999 | Polnerow et al. | 707/10 |

OTHER PUBLICATIONS

"1997 Edition GS Lotus Organizer/Exploring Organizer/ Windows 95 edition", pp. iii–vii and 8–1 – 8–6.
"Applications Handbook for the Palm III™ Organizer", 3Com, pp. iii–v and 1–12, Apr. 1998.
"Symantec ACT! User's Guide and Reference, Version 2.0 For Windows", pp. ix–xvi and 3–1 – 3–26.

"Information about Lotus Notes from the Lotus Web Site (www.Lotus.com)", pp. 1–13, Apr. 1998.
"Domino 4.6 Features Overview", Jul. 1997, 2 pages, www.lotus.com/domino.
"Yahoo! White Pages", Copyright 1994–1998, Yahoo!, http://www.yahoo.com/.
"WhoWhere?", Copyright 1995–1998, WhoWhere? Inc., http://www.whowhere.com/.
Randall A. Tamura et al "Lotus Notes 4" pp. 39, 64–65, and 176, 1996.*

* cited by examiner

*Primary Examiner*—Dung C. Dinh
*Assistant Examiner*—Hieu C. Le
(74) *Attorney, Agent, or Firm*—Knobbe, Martens, Olson & Bear, LLP.

(57) **ABSTRACT**

A network-computer-based personal contact manager system is disclosed wherein users of networked clients maintain and update a set of user information which is stored in a relational database on a networked server. The personal contact manager system allows each user to specify on an individual basis which of their contacts are permitted to access respective datums of their user information. In some cases, and assuming permission is granted, the system will issue notifications (e.g., by e-mail) to a user's contacts when the user changes his information or when a preset event, such as a birthday, as defined by the user, is to occur. The system also allows users to find contacts based on common group affiliations and notifies users when there are coincidences in their data (e.g., travel plans, astrological compatibility). The personal contact manager system supports the retrieval of information on the contacts of contacts, assuming such as permission has been granted by the contacts and their contacts, and can also be used to synchronize the server database with a PIM database of the user and any contacts of the user whose have the appropriate permissions.

**16 Claims, 14 Drawing Sheets**





*FIG. 1*
*(PRIOR ART)*



*FIG. 2*
*(PRIOR ART)*

USER DEFINED PERMISSIONS — 204

| USER INFORMATION — 202 | |
|---|---|
| HOME PHONE | CLASS A AND B CAN SEE BUT NOT CLASS C |
| WORK PHONE | ALL CAN SEE |
| HOME ADDRESS | CALSS A AND B CAN SEE BUT NOT CLASS C |
| WORK ADDRESS | ALL CAN SEE |
| JOB TITLE | ONLY CLASS A CAN SEE |
| BIRTHDAY | NONE CAN SEE |
| GROUP AFFILIATIONS | ONLY CLASS A CAN SEE |
| EMAIL ADDRESS | ALL CAN SEE |

FIG. 3
(PRIOR ART)



*FIG. 4*
*(PRIOR ART)*



*FIG. 5*



FIG. 6

*560* 

PSEUDO REGISTRATION FORM

Name                    [        ] *560— 2*

HomeAddress             [        ] *560— 4*

Home Phone              [        ] *560— 6*

Work Address            [        ] *560— 8*

Work Phone              [        ] *560— 10*

Birthday                [        ] *560— 12*

Your High School        [        ] *560— 14*

*560— 16*                           *560— 18*

Year of Enrollment  [ ]    Graduation Year  [ ]

*560— 20*

Your College            [        ]

*560— 22*                           *560— 24*

Year of Enrollment  [ ]    Graduation Year  [ ]

*560— 26*

( Submit )

*FIG.   7*



*580*

PSEUDO GROUP LIST FORM

*580—2*

Following are the other members who went to your college at about the same time.

*580—4*

Click on the boxes next to the names of the people you'd like to add to your Address Book.

*580—6*   *580—8*

State University, 1982—1986

*580—14*   *580—10*   *580—12*

☒  John Doe (Graduated 1985)

☐  Robert Johnson (Graduated 1986)

☐  Jane Smith (Graduated 1986)

*580—16*

( Submit )

FIG. 8





FIG. 9



*FIG. 10*


*650*

## PSEUDO MEMBER UPDATE

Member Update — *650—2*
December 7, 1998

*650—4*

The following of your contacts have upcoming birthdays:
- Avery Rogers (Dec. 11)
- Jane Bigelow (Dec. 14)  } *650—6*

*650—8*

Your contacts have registered the following address changes:
- Tom Kohn

New work address:
1000 Wilson Boulevard } *650—10*
Arlington, Va 22229

New work phone: } *650—12*
703—558—3312

*650—14*

The following new members have affiliated with the same groups as you:
- Gary Clayton (State College, 1985) — *650—16*

*650—18*

The following members have linked to you and have requested that you reciprocate:
- Jun Ohama
- Lee Rogers  } *650—20*

*650—22*

You have scheduled a trip to Phoenix on December 14. The following of your contacts live in Phoenix or will be in Phoenix on that date:
- Andrew Kress
- Taylor Pierce  } *650—24*

*650—26*

According to Astrology, the following of your contacts are compatible with you today (Libras)
- Bryan Jamieson
- Anne Thierry  } *650—28*

*FIG. 11*



*FIG. 12*



FIG. 13



*FIG. 14*

US 6,269,369 B1

1

# NETWORKED PERSONAL CONTACT MANAGER

The present invention relates generally to computer software used to manage contact information—such as mailing addresses, e-mail addresses, phone numbers, and birthdays—and more specifically to a method of creating links between members over a network and providing information to each member based on levels of permission maintained by the other members to which they are linked.

## BACKGROUND OF THE INVENTION

Several types of prior art for managing contact information exist, including Personal Information Management software applications, Groupware Applications, and Internet-based "White Pages" and e-mail services.

Personal Information Management Software

As represented generally in FIG. 1, in a typical prior art Personal Information Management (PIM) software application (e.g., Lotus Organizer, Microsoft Outlook, or U.S. Robotics Palm Pilot), a PIM software application 120, 124 that stores contact information in a database resides on a workstation or handheld computer 100 having a central processing unit 102, a display 108, a keyboard and/or mouse 110, a primary memory 104 (e.g., random access memory) for program execution, a secondary memory 106 (e.g., a hard disc) for program storage, and peripheral devices 112. As is well known, programs, such as the PIM software 120, are executed in the RAM 104 by the CPU 102 under control of the operating system software 122, 126.

In the prior art, users themselves enter the contact information that they want to store in the PIM software. A variety of methods exist for entering this contact information. It may be entered manually using the keyboard, imported from an existing file on their computer, or imported via a peripheral device such as a business card scanner. The defining characteristic of this class of prior art is that the input of the contact information is performed by the user of the software and, when the information changes, the user must modify the information himself. What this class of prior art lacks is a means for information to be shared between multiple users and a means for a given user to post changes to his own information for the benefit of others.

Groupware Applications

As generally represented in FIG. 2, in a typical prior art Groupware application. (e.g., Lotus Notes), a user workstation 160 accesses information stored on a central server computer 130 over a computer network 150, such as a Local Area Network or Intranet. The server system consists of a central processing unit 132, a primary memory 134 (e.g., random access memory) for program execution, a secondary storage device 136 (e.g., a hard disc) for program storage, and a modem 138 or other device for connecting to the computer network. The user workstation 160 is the same as the user workstation 100 described in reference to FIG. 1 with the addition of a modem 162 or other device for connecting to the computer network. The file server or database contains data files 148 that can be accessed only by authorized users. The user uses client software 174, 176 running on the user workstation 160 to access the files 148 under the mediation of server software 140, 144 running on the server 130.

Typically, in such a system a central system administrator organizes users into classes and the creator of a file 148 determines what classes of users may view the file. The rules governing which individual users or classes of users have the authorization to view a particular file 148 may be stored as part of the file itself. Alternatively, these rules are based upon the hierarchical directory structure of the file server in which the file is stored. That is, a particular user may view files in one directory but not another.

FIG. 3 represents a common deployment of a contact management system based on Groupware. Each user enters information 202 about himself and specifies a set of permissions 204 that define what classes of users are able to view various pieces of the information 202. What this deployment of the prior art lacks is the ability to authorize viewing privileges on a user-by-user basis rather than on a class-by-class basis. For instance, a user would be able to grant access to his home phone number 206 to the Human Resources department of his employer (e.g., Class A) while denying access to the same information to his co-workers (e.g., Class C). The user would not be able to give access to his home phone number selectively to a first co-worker while denying it to a second co-worker if both co-workers were part of the same class of users as organized by the central system administrator. Furthermore, such a system would lack a practical notification methodology. There would be no way for a user to specify "notify me when the first co-worker changes his information but not when the second co-worker changes his information."

Internet-Based "White Pages" and E-Mail Directory Services

In a typical prior art "white pages" or e-mail service, client computers and a server computer are connected via the World Wide Web as depicted in FIG. 4. A user subscribes to a White Pages or E-Mail service via a client computer 270 operating a web browser 282 or other software application residing in memory 274 that allows it to display information downloaded from a server computer 230 over the World Wide Web 260. The server computer system accesses a database 240 containing contact information entered by registered users. The service enables users to view contact information entered by other users. The authorization scheme may allow all users to limit certain classes of users from viewing certain parts of their user record as represented in FIG. 3. However, there are no linkages between individual users and thus users cannot restrict the viewing of their information on a user-by-user basis. Furthermore, users cannot be notified when information for particular users has changed.

## SUMMARY OF THE INVENTION

The present invention is a computer-network-based contact management system that allows members to create and maintain contact with other members and determine on a person-by-person basis what information to share or withhold. The system is based on a relational database scalable to millions of users that resides on a server computer.

The invention was developed shortly after the advent of the World Wide Web, which promoted millions of people worldwide to connect their computers with a standard protocol, a phenomenon which made the invention practical and beneficial.

When a user becomes a member of the system, the member associates himself with any number of affinity groups and creates a data record for himself by entering information in specific data fields. Based on the affinity groups with which the user has associated himself, the system then informs the user of other members in the same groups and allows the user to establish a link to any of those members on an individual basis.

For each second user to which a first user has established a link, the second user can specify which data fields in his

**3**

data record can be viewed by the first user. Each second user to which the first user has established a link is informed that a link has been established. The second user can in turn decide whether or not to establish a link to the first user. If the second user chooses to establish a link to the first user, he can specify which data fields in his personal data record can be viewed by the first user. In addition, each time a new user associates himself with a group with which an existing user has associated himself, the present invention informs the existing user that the new user has joined that group and allows the existing member to establish a link to the new user.

For each first user, the present invention maintains a database of information about the second users to whom the first user has established a link. The personal address book of the first user contains the information in the data fields that the second users have given the first user permission to view. Whenever a second user changes any information in any data field of his data record, the information in that field is automatically updated in the information database of each first user whom he has given permission to view the information in that data field.

In addition, if a first user has given a second user the proper form of data field permission for the personal data record of the first user, the present invention will inform the second user whenever first user's birthday or anniversary is approaching, whenever the first user will be travelling in the vicinity of the second user, and whenever the astrological sign of the first user is compatible with the astrological sign of the second user.

## BRIEF DESCRIPTION OF THE DRAWINGS

The accompanying drawings, which are incorporated in and form a part of this specification, illustrate embodiments of the invention and, together with the description, serve to explain the principles of the invention, wherein:

FIG. **1** depicts a computer loaded with Personal Information Management software;

FIG. **2** generally depicts the data schema of a category of prior art known as groupware applications;

FIG. **3** shows a common scheme for authorizing permission to view information in the prior art;

FIG. **4** depicts two computers interconnected via the Internet, one of which is a server connected to a database and the other of which represents a user's client workstation, both of which are configured according to the prior art;

FIG. **5** depicts two computers interconnected via the Internet, one of which is a server connected to a database and the other of which represents a user's client workstation, both of which are configured according to the present invention;

FIG. **6** represents an object model of the key tables in the relational database maintained on the server computer in the preferred embodiment of the present invention;

FIG. **7** represents a pseudo graphical user interface in which a user enters information in specific data fields to create a personal data record;

FIG. **8** represents a pseudo graphical user interface for listing other users with the same group affiliation as that specified by a first user;

FIG. **9** represents a pseudo graphical user interface for specifying what type of data fields from a first user's personal data record to which the first user wishes to grant a specific second user access;

FIG. **10** represents a pseudo graphical user interface that displays the information stored in a user's personal address book;

**4**

FIG. **11** represents a pseudo graphical user interface that provides a first user with specific information that has changed about the other users to which the first user is linked;

FIG. **12** represents a pseudo graphical user interface that allows a first user to enter travel information and find out which contacts have overlapping travel schedules;

FIG. **13** represents a pseudo graphical user interface that allows a first user to gather information about the contacts of his contacts; and

FIG. **14** is a data flow diagram of an alternative embodiment of the present invention where a personal digital assistant is synchronized with a server database of user information.

## DESCRIPTION OF THE PREFERRED EMBODIMENT

Reference will now be made in detail to the preferred embodiments of the invention, examples of which are illustrated in the accompanying figures. While the invention will be described in conjunction with the preferred embodiments, it will be understood that they are not intended to limit the invention to those embodiments. On the contrary, the invention is intended to cover alternatives, modifications and equivalents, which may be included within the spirit and scope of the invention as defined by the appended claims.

As represented in FIG. **5**, the preferred embodiment follows a standard Internet architecture, in which client computers **370** and a server computer **330** are connected via the World Wide Web **360** and modems **338**, **378** or other communications channels. A user accesses the server **360** via a client computer **370** operating a web browser **382** or other software application residing in memory **374** that allows it to display information downloaded from a server computer **330**. The server computer system **330** runs server software **342**, including the network-computer-based personal contact manager **343** of the present invention, which interacts with the client computers **370** and a user information database **340**. In a commercial embodiment of the present invention, the personal contact manager **343** is the heart of a Web-based personal contact management service called PlanetAll. The database **340** contains contact information entered by registered users. The personal contact manager **343** in some situations will notify a set of users of updates made to the database **340** by another user to whom the notified set is related.

A distinction over the prior art is that the database **340** in the present invention is necessarily a relational database built from a set of relational tables **350**. In the conventional manner, both the server **330** and the clients **370** include respective storage devices, such as hard disks **336** and **376** and operate under the control of operating systems **344**, **384** executed in RAM **334**, **374** by the CPUs **332**, **372**. The server storage device **336** stores program files **346** and the operating system **348**. Similarly, the client storage devices **376** store the web browser software **386** and the operating systems **388**. In an alternative configuration, in which the client is a personal information manager (PIM), such as the U.S. Robotics Palm Pilot, the disc **376** can also include a local PIM database **390** and PIM software, which performs data management and synchronization functions.

FIG. **6** outlines the data structure of the relational database **340** in the preferred embodiment, in which seven tables **350** are employed to enable most of the functionality of the present invention:

(1) Customer Table **440**;

(2) Friend Table **460**;

(3) Group Table **400**;

US 6,269,369 B1

5

(4) Affinity Table **420**;

(5) Address Table **480**;

(6) Phone Table **500**; and

(7) Travel Event Table **520**;

The Customer Table **440** contains one record for each unique user. The key field in this table is CustomerID **440-2**. All information stored in the various database tables relating to a particular member is linked together by a unique number in this field. Other important fields in this table include information used by users to login to the system (Username **440-6** and Password **440-8**), information which helps users identify each other (First Name **440-10**, Last Name **440-12**, and E-mail **440-20**), information required to provide Birthday Notification (Birthday **440-16**) and information required to provide Crossing Paths notification (CityID **440-14**). Each record in the Customer Table **440** is time-stamped via the RecordDate field **440-4**. Other fields **440-22** can also be included in the Customer Table **440** (and the other tables as well).

The Friend Table **460** is a key to the present invention because it relates users to each other. Each record in the table represents a relationship between one user, identified by CustomerID **460-4**, and another, identified by FriendID **460-6**, with a certain level of permissions **460-10**. The user interface of the present invention provides a multitude of ways for users to view information about other users, and every one of these ways relies on a database query of the Friend Table **460** to determine the list of other users whose information a particular user may see. Each record is time-stamped via the RecordDate field **460-8** so that users may be notified when their contacts'records change. Each record is uniquely identified by a RelationID **460-2**.

The Group Table **400** contains one record for each unique group with which users may affiliate. Each group is identified by a GroupName **400-4** and GroupType **400-6**. Examples of these groups would be GroupName **400-4**= "Massachusetts Institute of Technology" (GroupType= "University") and GroupName **400-4**="Sigma Chi" (GroupType="Fraternity"). Each record has a time-stamp **400-8** and a unique identifier **400-2**.

Each record of the Affinity Table **420** relates a user, identified by CustomerID **420-4**, to a group, identified by GroupID **420-6**. If a user affiliates with six groups, there would be six records in the Affinity Table **420**. This table stores information about the time period of a user's affiliation with a particular group in the FromYear and ToYear fields **420-8**, **420-10** so that the system may help users find their contemporaries. Each record is time-stamped **420-12** so that the system may report to users when other users join the group, has a unique identifier **420-2** and can include additional fields **420-14**.

The Address Table **480** stores information for any number and kind of addresses for a particular user, identified by CustomerID **480-4**. For instance, if a user wants to make his home address, work address and summer home address available to his contacts, there would be three records for that user in the Address Table **480**, each being identified in part by an appropriate AddressType **480-8** (e.g., home, work, summer home). Each record is time-stamped **480-16** so that the system can notify users when their contacts have added or modified address information and has a unique identifier **480-2**. Address information is conventional, including street Address **480-8**, CityID **480-10**, Postal code **480-12**, and military Base **480-14** fields.

The Phone Table **500** is directly analogous to the Address Table **480**, but it stores telephone and fax number information instead of address information. Each record is identified

6

by a unique PhoneRecordID **500-2** and includes the CustomerID **500-4** of the user whose phone information is contained in the record, a phone type ID **500-6** indicating, e.g., whether the record is for a telephone or fax, the phone number **500-8** and a time-stamp **500-10**.

The Travel Event Table **520** stores information about users'travel plans. This table is required to notify users when their travel plans intersect with the travel plans of their contacts. A record in the Travel Event Table **520** includes the CustomerID **520-4** of the user whose travel information is contained in the record, arrival and departure dates **520-6**, **520-8** and a CityID **520-10** identifying the travel destination. Each record is uniquely identified by a Travel_EventID **520-2** and is time-stamped with a RecordDate **520-14**.

In the preferred embodiment, a multitude of other tables **540** are used to enable a variety of user services. The Permission Type Table **542** contains one record for each of the varieties of permission levels the system allows members to assign to their contacts in the Friend Table **460**. In the preferred embodiment, as illustrated in FIG. **9**, permission information is grouped into five categories for the purpose of user interface simplicity (crossing paths notification permission **600-6**, personal information **600-8**, work information **600-10**, birthday notification **600-12**, and friends of friends information **600-14**). However, the Permission Type table **542** could just as easily be structured to allow members to grant and deny access to information on a field by field basis.

The City Table **550** stores latitude and longitude information for two million cities to enable the system to notify users when their contacts travel within a defined geographical radius. The Zodiac Table **552** allows the system to associate birthdays with signs of the Zodiac and thereby notify which of their contacts have compatible astrological signs on a particular day. The AddressType, PhoneType and GroupType tables **544**, **546**, **548** define the types of address, phone and group that can be defined in the respective Address, Group and Phone tables **480**, **400**, **500**. The advantage of this normalized relational database architecture is that it permits scaling and speed far in excess of any embodiment of the prior art.

FIGS. **7** through **12** display pseudo software graphical user interfaces (GUIs). In the preferred embodiment, the web server software **342** on the server computer **330** displays these GUIs via the computer communications interface **360** on the user interface **380** of the user workstation computer **370**. The database and communications operations necessary to perform the described functions are controlled by the personal contact manager **343**, which employs where necessary the services of the web server software **342**. For example, the personal contact manager **343** updates the database tables **350** when a user submits a new home address and then determines whether any of that user's contacts need to be notified of the change. If so, the personal contact manager **343** will issue the notifications via the web server software **342**. It should be assumed, unless a statement to the contrary is made, that all of the operations described herein which are aspects of the present invention are embodied by the personal contact manager **343**.

Referring now to FIG. **7**, a pseudo GUI **560** is shown that allows members to enter information about themselves in order to create a personal data record. Users can enter information in this GUI in various data fields. In the preferred embodiment, these fields include: Name **560-2**, Home Address **560-4**, Home Phone **560-6**, Work Address **560-8**, Work Phone **560-10**, Birthday **560-12**, High School **560-14**, Year of High School Enrollment **560-16**, High School Graduation Year **560-18**, College **560-20**, Year of College Enrollment **560-22**, and College Graduation Year **560-24**.

US 6,269,369 B1

7

In certain of these data fields, the user can specify groups with which he wishes to affiliate himself, and the beginning and ending dates of the affiliation. In the preferred embodiment, the data fields High School **560-14** and College **560-20** represent categories of groups. In the data field Year of High School Enrollment **560-16**, the user enters the beginning date of the affiliation with the group specified in the data field High School **560-14**. In the data field High School Graduation Year **560-18**, the user enters the ending date of the affiliation with the group specified in the data field High School **560-14**. In the data field Year of College Enrollment **560-22**, the user enters the beginning date of the affiliation with the group specified in the data field College **560-20**. In the data field College Graduation Year **560-24**, the user enters the ending date of the affiliation with the group specified in the data field College **560-20**. In both of these cases, the beginning date and ending date establish a date range during which time the user was affiliated with the group in question.

Once the user of the client computer **370** (FIG. **5**) enters information in each data field in the GUI **560** shown in FIG. **7**, he clicks the Submit button **560-26** (or performs some equivalent action) and the information entered is transferred via the computer communications network **360** (FIG. **5**) to the server computer **330**, where the server personal contact manager software **343** stores the information in the appropriate tables **350** of a database **340**.

Referring now to FIG. **8**, a pseudo GUI **580** is shown that allows a first user to select other users they wish to add to their personal address book. The list of contacts is created based on the group affiliation information the first user enters in the data fields College **560-20**, Year of College Enrollment **560-22**, and College Year of Graduation **560-24** in the Pseudo Registration GUI **560** shown in FIG. **7**. A similar GUI **580** would exist for the group specified in the data field High School **560-14** in the pseudo **560** GUI shown in FIG. **7**.

In each version of the GUI **580** shown in FIG. **8**, a text description **580-2** at the top of the GUI explains to the first user that other members have been found who had the same affiliation as the first user during the same period of time as the first user. The name **580-6** of the group in which the first and second users share an affiliation is displayed and the date range **580-8** of the first user's affiliation with that group is displayed.

If a second user whose personal information is stored in the tables **350** of the database **340** on the server computer **330** has specified the same group affiliation as that specified by the first user in the College **560-20** data field, and that second user has specified a date range for that affiliation that intersects with the date range specified by the first user in the Year of College Enrollment **560-22** and College Graduation Year **560-24** data fields, the Name **580-10** of the second user and the ending date **580-12** of the second user's affiliation with that group are displayed.

A second text description **580-4** at the top of the GUI **580** instructs the first user to select any of the second users listed whom the first user wishes to add to his personal address book. If the first user wishes to add a second user to his personal address book, the first user clicks the checkbox **580-14** to the left of the Name **580-10** (e.g., "John Doe") for that second user. Once the first user has finished specifying the users he wants to add to his address book, he clicks the Submit button **580-16**, and the information entered is transferred via the computer communications network **360** to the server computer **330** where it is stored in the appropriate tables **350** of the database **340**.

8

A pseudocode description of the actions performed by the personal contact manager software **343** to display the group member list is shown in Appendix A. This pseudocode fragment (and the others that follow) is written in a structured English that is similar to computer languages such as Pascal, FORTRAN and C. The pseudocode fragments are not described herein as they are self-explanatory. The tables and fields referred to in the pseudocode fragments correspond to the tables and fields described in reference to FIG. **6**.

Referring now to FIG. **9**, a pseudo GUI **600** is shown allowing a first user to specify which types of data fields from the first user's personal data record to grant a specific second user permission to view. If a first user specifies a second user whom the first user would like to add to his personal address book, as explained in the description of FIG. **8**, the second user will receive notification (issued by the contact manager program **343**—FIG. **5**) that the first user has "linked" to him. If the second user chooses to return the link to the first user, the preferred embodiment of the present invention will display the pseudo GUI **600** shown in FIG. **9** with the name of the first user **600-5**, allowing the second user to set data field permissions for the first user. Unlike the prior art, which does not allow the first user to specify data field permissions for individual other users, the preferred embodiment of the present invention allows the first user to specify permissions separately for each individual other user in whose personal database the first user has chosen to be included.

A text description **600-2** at the top of the pseudo GUI in FIG. **9** instructs the first user to specify which types of data fields from the first user's personal data record to allow to appear in the personal address book of the second user, whose name **600-4** is shown below. Several types of data field permission are listed, each with a check box to the left enabling the first user to select or deselect the permission type. For example, to grant the second user **600-4** permission to view the information from the first user's personal data record indicated by the permission type denoted "Crossing Paths Notification Permission," the first user would check the box **600-7** to the left of the permission type Crossing Paths Notification Permission **600-6**. To deny the second user **600-4** permission to view the information from the first user's personal data record indicated by the permission type denoted "Personal Information," the first user would uncheck the box **600-9** to the left of the permission type Personal Information **600-8**.

In the preferred embodiment of the present invention, the levels of permission are as follows: Crossing Paths Notification Permission **600-6**, Personal Information **600-8**, Work Information **600-10**, Birthday Notification **600-12**, and Friends of Friends Information **600-14**. However, the present invention is not limited to the levels of permission shown in the preferred embodiment. The present invention is flexible to allow permission categories to be modified as needed.

Each permission type allows the second user to view information from the first user's personal data record in specific data fields, according to a specific set of rules. In the preferred embodiment of the present invention, these permission rules are as follows:

If member A links to member B, member A can grant any of the permissions discussed below to member B.

Even if member B does not reciprocate the link to member A, an e-mail forwarding address for member B will be included in the Virtual Address Book for member A. For example, the e-mail address

US 6,269,369 B1

9

"memberB@planetall.com," which maps to the actual e-mail address that member B has entered into his/her own record, will appear in member A's Virtual Address Book, but nothing else.

When member A first links to member B, member B is notified on the Web site and in an e-mail.

If member B elects not to grant any permissions to member A, member A will not appear in member B's Virtual Address Book.

If member B grants any permissions to member A, a listing in member B's Virtual Address Book will be created for member A, and the listing will contain whatever information member A has given permission for member B to see.

If member B grants Personal Information **600-8** permission to member A, member B's home address and phone number (if available) will appear in member A's Virtual Address Book and member A will be informed when member B changes the relevant information in his/her own listing.

If member B grants Work Information **600-10** permission to member A, member B's work address and phone number (if available) will appear in member A's Virtual Address Book and member A will be informed when member B changes the relevant information in his/her own listing.

If member B grants Crossing Paths Notification Permission **600-6** to member A, member A will be able to be informed when member B will be in the same city as member A. If member A and member B are both based in the same city, member A will only be informed when member A and member B are traveling to the same destination.

If member B grants Birthday Notification **600-12** permission to member A, member B's birthday and anniversary (if available) will appear in member A's Virtual Address Book and member A will be notified when member B's birthday or anniversary are approaching.

If member B grants Friends of Friends Information **600-14** permission to member A, if member A searches for information about the contacts of his/her contacts, such as who lives in a particular city or is associated with a particular group, information from member B's circle of contacts will be included in the search results, if applicable.

Either member can modify permissions at any time. Either member can delete the other member as a contact at any time.

Pseudocode descriptions of the actions performed by the personal contact manager software **343** to display address information of contacts and to perform birthday and address change notifications are shown in Appendices B, C and D, respectively. Each of these operations depends on which permissions respective users have been granted by the owner of the information.

Once the first user has finished specifying the data field permissions for the second user **600-4**, he clicks the Submit button **600-16** and the information entered is transferred via the computer communications network **360** to the server computer **330** where it is stored in the appropriate tables **350** of the database **340** (see FIG. **5**). A pseudocode description of the actions performed by the personal contact manager software **343** to enable a user to change the permissions of contacts is shown in Appendix H.

Referring now to FIG. **10**, a pseudo GUI **618** that displays the information stored in a user's personal address

10

book is shown. The information in a user's personal address book is stored in the appropriate tables **350** of the database **340** on the server computer **330**, to which the client computer **370** is connected via the world wide web **360** (see FIG. **5**). The information in each user's personal address book is customized for that user, as described below. Each first user's personal address book contains information about each second user who has given the first user permission to view information in the second user's personal data record **636**. Which categories of each second user's information are displayed in the first user's personal address book is controlled completely by the second user, as explained in the description of FIG. **9**. In addition, each second user's information is entered and maintained completely by the second user (e.g., "Donald Tully"), as explained in the description of FIG. **7**.

FIG. **10** illustrates the Address Book pseudo GUI **620** at three levels, in which each next level allows the user to view progressively more detail about the contacts in his personal address book.

In level 1 **620** of the pseudo address book GUI **618**, each letter of the alphabet is shown **622**. By clicking on any letter of the alphabet **622**, a first user can display a listing of the contacts whose last names begin with the letter of the alphabet selected, and about whom information is stored in the first user's personal address book. This information is displayed in the level 2 **626** of the pseudo address book GUI. For example, if the first user clicks on the letter "T" **624** in level 1 **620** of the pseudo address book interface, all contacts whose last names begin with the letter T and about whom information is stored in the first user's personal address book will be displayed **628** in level 2 **626** of the pseudo address book GUI.

In level 2 **626** of the pseudo address book GUI, a listing of the second users whose last names begin with the letter of the alphabet selected in level 1 **620** of the pseudo address book GUI, and about whom information is stored in the first user's personal address book, is shown. By clicking on any second user's name, the first user can display the information about that second user stored in the first user's personal address book. This information is displayed in level 3 **632** of the pseudo personal address book GUI. For example, if the first user clicks on the second user name "Tully, Donald" **630**, the information pertaining to Donald Tully stored in the first user's personal address book will be displayed in level 3 **632** of the pseudo personal address book GUI.

In level 3 **632** of the pseudo address book GUI, information **634** is shown about a specific second user that is stored in a first user's personal address book. Only the categories of information from the second user's personal data record that the second user gave the first user permission to view are displayed. The second user's information is entered and maintained completely by the second user.

In the preferred embodiment of the present invention, the second user's e-mail address **634-2** is displayed if the second user gave the first user any type of data field permission. The second user's work address and phone number **634-4** are displayed only if the second user gave the first user Work Information permission. The second user's home address and phone number **634-6** are displayed only if the second user gave the first user Personal Information permission. The second user's birthday and birth year **634-8** are displayed only if the second user gave the first user Birthday Notification permission. These permission rules are simply examples from the preferred embodiment. The present invention is not limited to the permission rules used in the preferred embodiment.

11

12

A pseudocode description of the actions performed by the personal contact manager software **343** to display the address book listing is shown in Appendix B.

Referring now to FIG. **11**, a member update pseudo GUI **650** is shown. This pseudo GUI **650** provides a first user with specific information that has changed about the other users to which the first user is linked, plus new information about contacts to whom the first user may wish to link. The information displayed in a user's member update is stored in the appropriate tables **350** of the database **340** on the server computer **330**, to which the client computer **370** is connected via the world wide web **360**. The member update pseudo GUI **650** is automatically displayed on the user interface **380** of the user workstation **370**, at an interval preset by the user. For example, FIG. **11** displays a hypothetical member update **650-2** released on Dec. 7, 1998. The information displayed in the data fields below is information that has changed between Dec. 7, 1998 and the date of the previous update, the interval between which has been previously specified by the user. The information shown in each user's member update is customized for that user, as described below.

In a first portion of the member update pseudo GUI **650** shown in FIG. **11**, if one or more of the second users who have linked to a first user and have provided Birthday Notification permission to the first user have upcoming birthdays, a text description **650-4** alerts the first user of the upcoming birthday(s). The names and birthdays **650-6** for those second users are listed below. In the preferred embodiment of the present invention, the first user will receive this notification 2 weeks, 1 week, 2 days, and 1 day in advance of a particular upcoming birthday, and on the actual date of the birthday. The first user does not need to collect and input the birthday dates for each second user who has linked to the first user. Each second user's birthday information is entered and maintained completely by the second user, as shown in the Birthday field **560-12** of FIG. **7**, the registration form pseudo GUI **560**.

In another portion of the member update pseudo GUI shown in FIG. **11**, if one or more of the second users who have linked to the first user and have provided Personal Information permission or Work Information permission to the first user have changed their work or home address, a text description **650-8** alerts the first user. If a second user has changed his work address information and has given the first user Work Information permission, the second user's new work address information **650-10**, **650-12** is displayed. If a second user has changed his home address information and has given the first user Personal Information permission, the second user's new home address information is displayed.

Each second user's address information is entered and maintained completely by the second user, as shown in the registration form pseudo GUI **560** of FIG. **7**. After changing his address information in his personal data record, the second user does not need to specify that the new address information be provided to each first user to whom he has linked and given the proper form of data field permission. The new address information is provided to each first user quickly and automatically. In addition, the architecture of the present invention is scalable to include millions of users.

In another portion of the member update pseudo GUI **650** shown in FIG. **11**, if one or more members has affiliated with a group with which the first user is also affiliated, a text description **650-14** will alert the first user. The name of the second user, the name of the group in which the first and second users share an affiliation, and the ending date of the second user's affiliation with that group are displayed **650-16**.

This portion of the registration form pseudo GUI **650** functions similarly to the group list form pseudo GUI shown in FIG. **8**. If a new second user who fills out a registration form such as the pseudo GUI in FIG. **7**, and therefore whose personal information is stored in the tables **350** of the database **340** on the server computer **330** has specified the same group affiliation as that specified by the first user in the College **560-20** data field, and that second user has specified a date range for that affiliation that intersects with the date range specified by the first user in the Year of College Enrollment **560-22** and College Graduation Year **560-24** data fields, the Name of the second user and the ending date of the second user's affiliation with that group **650-16** are displayed. Similarly, if the first user and the new second user were affiliated during an intersecting period of time with the group specified in the data field High School **560-14** in the pseudo GUI **560** shown in FIG. **7**, the Name of the second user and the ending date of the second user's affiliation with that group **650-16** are displayed.

A pseudocode description of the actions performed by the personal contact manager software **343** to display a list of service members who have recently joined a user's groups (i.e., members who are not current contacts of the user) is shown in Appendix E.

If the first user wishes to add contact information to his personal address book for any of the second users listed **650-16**, the first user can do so in a GUI similar to the group list form pseudo GUI **580** shown in FIG. **8**. Each second user to whom the first user has initiated a link will then be informed of the link, and can then return the link and specify data field permissions for the first user, if any, as explained in the description of FIG. **9**.

A pseudocode description of the actions performed by the personal contact manager software **343** to identify people who have linked to a particular user are shown in Appendix F.

In another portion of the member update pseudo GUI **650** shown in FIG. **11**, if a second user has initiated a link to a first user, the first user will be automatically notified **650-18** that a link has been made. For each second user that has initiated a link, the user's name **650-20** is shown. If the first user wishes, the first user can then return the link and specify data field permissions for the second user, if any, as explained in the description of FIG. **9**.

Another section **650-22** of the member update pseudo GUI **650** shown in FIG. **11** is used to inform a first user when the travel plans he has entered into the system overlap with the travel plans that any of his contacts has entered into the system, as long as the contact has granted the first user Crossing Paths Notification permission.

This system, termed "Crossing Paths Notification" in the preferred embodiment of the present invention, operates as follows. The home city or "base city" for each user is determined from information entered by that user in the Home Address data field **560-4**, as explained in the description of FIG. **7**. The "City" table **550** (FIG. **6**) stored on the server computer **330** includes 1.7 million names of cities around the world. Each of these cities is associated with a precise latitude and longitude. If the user's base city cannot be matched to a city in the "City" table, the user can add the new city to the "City" table by giving the name of another city that is already in the "City" table that is nearby the user's base city. The user's base city is assigned the same latitude and longitude as the existing city. This information is used to associate each user with a precise longitude and latitude, and determine all cities within a 29-mile radius of the user's base city.

Whenever a user is planning to travel, he can specify the dates during which he will be away and the city he will be visiting. If a second user has granted a first user Crossing Paths Notification permission, and the first user has entered a Travel Event to a city that is within a 29-mile radius of the base city of the second user, the first user will be notified **650-22** (FIG. **11**) that he will be crossing paths with the second user **650-24** (e.g., "Andrew Kress"), as long as the second user has not also scheduled a travel event for the same time period. In another scenario, if a second user has granted a first user Crossing Paths Notification permission, and the first user has entered a travel event to a city that is within a 25-mile radius of a city to which the second user has scheduled a travel event during the same time period, the first user will be notified **650-22** that he will be crossing paths with the second user **650-24**. Travel events are described more fully in reference to FIG. **12**.

The Crossing Paths Notification system is able to handle multiple cities in a single day. For instance, if a first user lives in Boston but is traveling to New York on March 5, then the first user will be informed if any contacts will be crossing paths on that day in either city. In addition, this system is scalable to millions of users. A pseudocode description of the actions performed by the personal contact manager software **343** to enable a user to receive crossing paths notification is shown in Appendix I.

The final section **650-26** of the member update pseudo GUI **650** shown in FIG. **11** is used to inform a first user which of his contacts has an astrological sign compatible with that of the first user on the date of the member update. Each member is associated with one of the twelve astrological signs based on the information he entered in the Birthday data field **560-12** in the registration form pseudo GUI **560** shown in FIG. **7**. Each day of the year is mapped to one of these twelve signs. This information is stored in the appropriate table **350** in the database **340** on the server computer **330**. On a given day, all of a member's contacts who are associated with "sign of the day" are deemed to be compatible with the member. Only the names of contacts who have given the first user Birthday Notification permission will be shown in the member update pseudo GUI for the first user. A pseudocode description of the actions performed by the personal contact manager software **343** to enable a user to receive notification of compatible contacts is shown in Appendix J.

The permission rules used in reference to FIG. **11** are simply examples from the preferred embodiment. The present invention is not limited to the permission rules used in the preferred embodiment.

Referring now to FIG. **12**, a pseudo Add Travel Form GUI **660** and a pseudo Crossing Paths List GUI **670** are shown. These two screens are used in the Crossing Paths Notification System. If a first member is planning a trip, the first member can use the pseudo Add Travel Form GUI **660** to add a Travel Event, in which he specifies the location **660-2**, **660-4**, **660-6**, the dates **660-8**, **660-10**, and contact information **660-20** for the intended trip. In the pseudo Crossing Paths List GUI **670**, the first member is informed which of the second members to whom he is linked and who have granted him Crossing Paths Permission will be in the vicinity of the city to which the first user is travelling, during the time period of the specified Travel Event. The first user can then use the pseudo Crossing Paths List GUI **670** to select which of the displayed second users the first user would like to inform of the first user's specified Travel Event.

The pseudo Add Travel Form **660** is displayed on the user interface **380** (FIG. **5**) of a user's client computer **370** when the user chooses to schedule a Travel Event. The user enters information about his scheduled trip in the data fields shown. In the Traveling To City field **660-2**, the user enters the name of the city to which he is traveling. In the State field **660-4**, the user enters the name of the state in which is located the city to which he is traveling. In the Country **660-6** field, the user enters the name of the country in which the city to which he is traveling is located. The information entered in these three fields **660-2**, **660-4**, **660-6** is used to locate the city for the Travel Event in the City table **550** on the server computer **330**. The exact latitude and longitude of the Travel Event city is then determined and a list is created of all cities located within a 25-mile radius of the Travel Event city. In the Arrive in City on Date field **660-8**, the user enters the first date on which he will be in the Travel Event city. In the Leave City on Date field **660-10**, the user enters the date beginning on which he will no longer be in the Travel Event city. The information entered in these two fields **660-8**, **660-10** is used to determine the date range for the Travel Event. Finally, in the How to Get in Touch While in This City data field **660-20**, the user enters the method for contacting him during the Travel Event. After the user has finished entering information in the pseudo Add Travel Form GUI **(12-1)**, the information entered is stored by the personal contact manager **343** in the Travel_Event table **520** on the server computer **330**.

The pseudo Crossing Paths List **670** is displayed on the user interface **380** of the first user's client computer **370** after a first user has scheduled a Travel Event user the pseudo Add Travel Form **660**. A text message **670-2** issued by the personal contact manager **330** informs the first user that one or more of his contacts will be in the same city as the first user during the first user's scheduled Travel Event. Those contacts (e.g., Scott Ulem, Taylor Pierce, Betsy Klein) who live in the city of the first user's scheduled Travel Event are listed **670-6**, as well as those contacts (e.g., Tania Gutsche) who will be visiting the city of the first user's scheduled Travel Event **670-8**. The contacts listed in the field **670-6** are those second users who have granted the first user Crossing Paths Permission, and who have listed in the Home Address field **560-4** (FIG. **7**) of their Personal Data Record the city of the first user's scheduled Travel Event, or any city within a 25-mile radius of the first user's scheduled Travel Event. The contacts listed in the field **670-8** are those second users who have granted the first user Crossing Paths Permission, and who have scheduled a Travel Event to the city of the first user's scheduled Travel Event, or any city within a 25-mile radius of the first user's scheduled Travel Event, during the date range of the first user's scheduled Travel Event. For each contact name listed in both fields **670-6**, **670-8**, the first user can choose to inform that contact of the first user's scheduled Travel Event by clicking on the checkbox to the left of that contacts name. When the first user is finished selecting contacts, he then clicks the Submit button **670-10**, which copies the information entered to the server computer **(5-45)** to be stored in the tables **350** by the networked personal contact manager **343**. For each second user whom the first user selected, the second user is informed, in a screen similar to the pseudo Member Update GUI shown in FIG. **11**, of the first user's Travel Event and the means of contacting the first user **660-20** during the Travel Event.

Referring now to FIG. **13**, a diagram illustrating the Friends of Friends system is shown. The Friends of Friends system allows a first member to search for the names of contacts of their contacts who live in the same city as the first member are affiliated with a group with which the first member is also affiliated. When a user performs a Friends of

US 6,269,369 B1

15                                                                16

Friends search, the personal contact manager **343** displays, via the web server software **342**, the results of the search on the user interface **380** (FIG. **5**) of the first user's client computer **370** in a GUI similar to a pseudo Friends of Friends report GUI **688**. After locating a second member with a friend of a friend, the first member can then link to that second member in order to add the second member to the first user's Personal Address Book, as explained in the descriptions of FIG. **8** and FIG. **9** above.

In the preferred embodiment of the personal contact manager **343**, the Friends of Friends system operates as follows. If a Member A **680** is linked to a Member B **682** with any level of permissions **681** and the Member B **682** is linked to a Member C **684** with any level of permissions **685**, then if Member C **684** grants to Member B **682** Friends of Friends permissions **687** and Member B **682** also grants to Member A **680** Friends of Friends permissions **683**, then Member A is eligible to receive Friends of Friends notification about Member C. When a first user performs a Friends of Friends search, the results of the search will include all second users who have affiliated themselves with a group with which the first user is affiliated and all second users who live in the same city in which the first user lives, so long as the first user is eligible to receive Friends of Friends notification about those second users, as described above. For example, if Member A and Member C both belong to Group A **686**, and Member A is eligible to receive Friends of Friends notification about Member C, then the result of Member A's Friends of Friends search **688** generated by the personal contact manager **343** will include Member C **690**.

A pseudocode description of the actions performed by the personal contact manager software **343** to perform a search for friends and friends of friends in a specific city is shown in Appendix G.

The present invention is not limited to the search criteria or levels of separation in the preferred embodiment. The database architecture in the present invention is flexible to allow searches to be extended to more than one degree of separation. For instance, it would be possible to add a Friends of Friends of Friends search feature. The architecture is also flexible to allow new search criteria to be added.

Referring to FIG. **5**, in each of the embodiments described above, the user information is stored on the server **330** and all user access to the user information mediated by a client web browser **382**, the web server software **342** and the server personal contact manager software **343**. In an alternative embodiment, which is configured for personal information managers (PIMs), such as the U.S. Robotics Palm Pilot, a user is able to synchronize their user information and their PIM database **390** through an importation/synchronization function performed by the personal contact manager software **343**. The synchronization operation can be performed in either direction (i.e., client to server or server to client). The server personal contact manager software **343** will then use the web server software **342** to communicate with the PIM software **392** of the user's contacts, if applicable, and, in accordance with the permission scheme already described, synchronize the databases **390** in the contacts' PIMs. All database, personal contact management and linking operations already described are operable in the alternative embodiment, except the GUIs might be different, depending on the graphical capabilities of the client **370** running the PIM program **392**. Thus, the alternative embodiment allows full synchronization of PIMs and the server database **340**.

A data flow diagram illustrating the operation of the alternative embodiment is shown in FIG. **14**. In the illus-trated situation a user A submits an address change from their client computer **370A**. In response to the update, the personal contact manager **343** running on the server **330** updates user A's address information in the server database **340** (not shown) and issues an update notification to the client computer **370B** used by user B, who is a contact of user A. This alternative embodiment assumes that user B has a PIM (also referred to as a personal digital assistant or PDA) that they would like to synchronize with the server database **340**. In such a case PIM Software **392** running on the client **370B** performs the synchronization operation based on the user A address update information provided by the server **330**. Following the synchronization operation, the PDA database **390** has the same information for user A as the server database **340**. Alternatively, the PDA **750** can be coupled directly to the Internet (indicated by the dashed line), in which case it operates substantially as a typical client computer **370** described in reference to FIG. **5**. However, one difference is that the PDA **750** maintains its own database **390** instead of relying solely on the server database **340**.

While the present invention has been described with reference to a few specific embodiments, the description is illustrative of the invention and is not to be construed as limiting the invention. Various modifications may occur to those skilled in the art without departing from the true spirit and scope of the invention as defined by the appended claims.

APPENDIX

Display Group Member List

Submit group name.

Match group name to GroupID in Group table.

Join Affinity table to Customer table and CustomerPrefs table based on CustomerID.

Show contact information from Customer and Customer-Prefs tables when the the Affinity table contains a record matching the CustomerID to the specified GroupID.

APPENDIX B

Display Address Book Listing

if MemberFriend AND a Reciprocated Link then
If have Personal or Professional Permissions then
    Show person's real email address.
else
    Show person's PlanetAll address.
end if
If have Personal Permission and Biography Exists then
    Show Biography.
end if
If (have Personal or Professional Permissions) AND uni-
    versal resource locator (URL) exists then
    Show URL.
end if
If (Person is visible in group and Group Perms>0) AND
    you have Common Groups then
    Show the groups you have in common.
end if
If Person is in one of more of your personal email lists
    then
    Show the lists the person belongs to.
end if

US 6,269,369 B1

| 17 | 18 |

If have Personal Permissions and Phone Type is one of personal phone types then
   Show phone.
end if

If have Professional Permissions and phone type is one of professional phone types then
   Show phone.
end if

If have Personal Permissions and address Type is one of personal address types then
   Show address.
   if address is in USA then
      Show map link.
   end if
end if

If have Professional Permissions and address type is one of professional address types then
   Show address.
   if address is in USA then
      Show map link.
   end if
end if

If have Professional Permissions and Professional Info Exists then
   Show the professional info the person has entered.
end if

If have Occasions Permissions and Birthday exists then
   Show the contact's birthday.
end if

If have Occasions Permissions and Anniversary exists then
   Show the contact's Anniversary.
end if

If contact has entered spouse's name then
   Show spouse's name.
end if

If contact has entered self description then
   Show self description.
end if

else if MemberFriend AND a Non-Reciprocated Link then
   Show message person has not linked back and give link so person can email the unlinked person to tell them they have linked to them. (after com/ASP rewrite will not show email so spammers can't make lists).
end if

### APPENDIX C

#### Birthday Notification

Birthdays are determined by the DayOfYear field in the customers table.
Create a list of all my contacts:
   Go to the Friend table and select all Customers where FriendID=my CustomerID.
For each of my contacts, check to see if the DayOfYear is within seven days of the current DayOfYear.
Select the DayOfYear from the Customers table for all of the customers in my list of contacts.
If the DayOfYear is within seven days of the current DayOfYear, then select the name of the customer.

Display the names of all my contacts who have birthdays in the next seven days.

### APPENDIX D

#### Address Change Notification

To determine which of a member's contacts' addresses have changed:
Create a list of all my contacts:
   Go to the Friend table and select all Customers where FriendID=my CustomerID.
Find out which of these contacts have changed their addresses:
   Link the Customers table and find records for my contacts where AddressID is greater than the lowest Address ID having a date greater than the date on which my last email update was sent.
Find out which of these contacts have given me permission to see the address information that has changed:
   Make sure that the appropriate permission appears in the record in the friend table linking me to the contact.
Display information for these contacts.

### APPENDIX E

#### Show New Group Members

Create a list of all my groups:
   Go to the affinity table and select all the records for my CustomerID Select the GroupID for each of the records.
   Do not include other customers'private groups to which I have been added For each of my affinity records, check to see that Group Perms are>0.
Create a list of all my contacts:
   Go to the Friend table and select all Customers where FriendID=my CustomerID.
Create a list of people who joined my groups:
   Go to the affinity table and select all the affinity records for my groups. Select only affinity records for customers who joined the group after I joined.
   Select affinity records where the date of the record is after the date for my affinity record in the same group.
   Select only affinity records for people who joined the groups after my last email was sent.
   Select affinity records where the date of the record is after my Sent date in the Email table.
   Do not include people that are in my list of contacts:
   Select only affinity records where the CustomerID is not included in the list of all my contacts.
   Select the CustomerID from each affinity record in the list of people who joined my groups.
   Go to the Customers table to find the name of each customer who joined my groups.

### APPENDIX F

#### People Who Have Linked To You

Linking the Friends table and the Customers table based on the CustomerID field, select the following information from the two tables:
   CustomerID from the Friends table.

US 6,269,369 B1

**19**

First Name from the Customers table.
Last Name from the Customers table.
Record Date from the Friends table.
Permission level from the Friends table.
Where my CustomerID is not among the CustomerIDs
found in the following search:
CustomerID in the Friends Table is my CustomerID
AND the Record Date from the Friends table is within
the last 30 days
AND I haven't already linked to the person

## APPENDIX G

Search for Friends of Friends in a Particular City

Specify City. Match to CityID in City table.
Create a list of all my contacts
Go to the Friend table and select all Customers where
FriendID=my CustomerID
Make a temporary table linking the Friends table to itself
called Friend_1 and establish the following relation-
ships:
CustomerIDs for the contacts of my contacts appear in
the Customer field of the Friends table
CustomerIDs for my contacts appear in the Friend field
of the Friends table
CustomerIDs for my contacts also appear in the Cus-
tomer field of the Friends_1 table (this is how the
tables are joined)
My Customer ID appears in the Friend field of the
Friend_1 table
The Friend and Friend_1 tables are joined on t
Show information for the contacts of my contacts (i.e.
the Customers from the
Friends table) where the following conditions are true:
The Friends of Friends permission was granted from
the contacts of my contacts to my contacts.
The Friends of Friends permission was granted from
my contacts to me.
The contact does not already appear in the list of all
my contact created above.
The city for the contact of my contact matches the
specified city.

## APPENDIX H

Change Permissions

Join the Customer table to the Friend table based on
CustomerID.
Create a list of all my contacts:
Go to the Friend table and select all Customers where
FriendID=my CustomerID.
Show First Name and Last Name for my contacts from the
Customer table.
Allow me to pick a name from this list as the contact
whose permissions I would like to change.
Display the permission level that I have given this contact.
It is stored as the PermissionType field in the Friend
table.
Allow access to the PermissionType for this record in the
Friend table.

## APPENDIX I

Crossing Paths Notification

Create a list of all my contacts:
Go to the Friend table and select all Customers where
FriendID=my CustomerID.

**20**

Create a list of all my contacts' travel events:
Go to the Queue Travel Event table and select all
QueueIds where the CustomerID is in my list of
contacts.
Do not include trips for people who linked to me but
did not give me crossing paths permission:
Check the permissions field in the Friend table for
each of my contacts to see if I have crossing paths
permissions.
Do not include trips if my contact specified that I
should not be informed:
For each of my contacts' trips, check the Travel
Exception table to see if my CustomerID is
included in the list of people who should not be
informed of the trip.
Create a list of my location for the next seven days:
Select the arrival date, departure date, and city for all
my trips in Queue Travel Event for the next seven
days.
For days when I am not travelling, select my city from
the customers table.
Select from the list of my friends' trips, all the trips to
cities that are within 3000 latitude and 3000 longitude
to my location for each of the next seven days.
Go to the Customers table and find the names of all the
people with whom I will be crossing paths.
Select first name and last name from the customers table
for all the CustomerIDs in the list of my contacts trips

## APPENDIX J

Compatible Contacts

Create a list of all my contacts:
Go to the Friend table and select all Customers where
FriendID=my CustomerID.
Determine my Zodiac sign:
Select my DayOfYear from the Customers table.
Select the Zodiac sign from the Zodiac table where my
DayOfYear is between the DayFrom and DayTo
fields.
Determine my compatible Zodiac sign for today:
Go to the Horoscope table and select the Compatible
field from the row for my Zodiac sign and today's
date.
Find my compatible contacts for today:
Select the DayFrom and DayTo fields from the Zodiac
table for my compatible zodiac sign.
Select my contacts from the list of all my contacts
whose DayOfYear is between the DayFrom and
DayTo fields for my compatible sign.
What is claimed is:
1. A networked contact management system, comprising:

a database which contains personal records of multiple
users, each record including multiple fields, including
fields for storing personal contact information; and

contact manager software which provides restricted
access to the database through an interface in which (1)
users select other users from the database to include in
their own, respective virtual personal address books
without the need to enter information for such users, (2)
if a first user selects a second user to include in the first
user's virtual personal address book, the second user is
provided an option to specify the types of information

US 6,269,369 B1

21

of the second user's personal record to be viewable by the first user, (3) users directly update their own respective personal records within the database, and (4) the personal records stored within the database are at least partially viewable as virtual address book entries, so that updates made by users to their own respective personal records are reflected automatically within the virtual personal address books of other users without the need to propagate or separately apply the updates to individual address books.

**2**. The networked contact management system as in claim **1**, wherein the interface further provides the second user an option to grant permission to the first user to be notified of at least one type of occasion.

**3**. The networked contact management system as in claim **2**, wherein the at least one type of occasion includes at least one of the following: (a) a birthday of the second user, (b) an anniversary of the second user, and (c) a correspondence in schedules of the first and second users.

**4**. The networked contact management system as in claim **1**, wherein the database contains information about a plurality of affinity groups, and the contact manager software implements functions for (a) allowing the multiple users to select and join individual affinity groups, (b) notifying a new member of an affinity group of existing members of the affinity group, and (c) presenting the new member an option to select individual members of the affinity group to add to the new member's personal address book.

**5**. The networked contact management system as in claim **4**, wherein the contact manager software automatically notifies existing members of the affinity group of new members.

**6**. The networked contact management system as in claim **1**, wherein the contact manager software receives and stores information about travel plans of individual users, and uses the information about travel plans to detect that a user and a contact of the user will be in the same location at the same time.

**7**. The networked contact management system as in claim **1**, wherein the contact manager software automatically notifies the first user when the second user modifies a datum of the second user's personal record that the first user is permitted to view.

**8**. The networked contact management system as in claim **1**, further comprising synchronization software which synchronizes a personal digital assistant (PDA) device with a user's virtual personal address book over a computer network.

**9**. A networked personal contact management system, comprising:

a database which contains personal data records of a plurality of users, at least some of the data records including contact information of respective users; and

a server system which provides restricted access to the database through an interface that provides functions

22

for each user to at least (a) directly modify the user's own respective personal data record within the database, (b) select other users from the database to add to a virtual personal address book of the user, and (c) specify, on a user-by-user basis, permissions for other users to view the personal data record of the user through virtual virtual personal address books of such other users;

wherein users directly view the data records of other users through the virtual address books according to said permissions, so that updates by users to their own respective personal records are reflected automatically within the virtual personal address books of other users.

**10**. The networked personal contact management system as in claim **9**, wherein the interface allows each user to grant said permissions separately for each of a plurality of data types.

**11**. The networked personal contact management system as in claim **9**, wherein the server system notifies the user of at least one of the following types of occasions associated with a contact of the user: (a) a birthday of the contact, (b) an anniversary of the contact, and (c) a correspondence in schedules of the user and the contact.

**12**. The networked personal contact management system as in claim **9**, wherein the database contains information about a plurality of affinity groups, and the server system implements functions for (a) allowing the plurality of users to select and join individual affinity groups, (b) notifying a new member of an affinity group of existing members of the affinity group, and (c) presenting the new member an option to select individual members of the affinity group to add to the new member's virtual personal address book.

**13**. The networked personal contact management system as in claim **12**, wherein the server system automatically notifies existing members of the affinity group of new members.

**14**. The networked personal contact management system as in claim **9**, wherein the server system receives and stores information about travel plans of individual users, and uses the travel plans to detect that the user and a contact of the user will cross paths.

**15**. The networked personal contact management system as in claim **9**, wherein the server system automatically notifies the user when contacts recorded within the user's virtual personal address book modify their respective contact information displayed within the virtual personal address book.

**16**. The networked personal contact management system as in claim **9**, further comprising synchronization software which sychronizes a personal digital assistant (PDA) device with a user's virtual personal address book over a computer network.

* * * * *