## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| CORDANCE CORPORATION, | : |
| | : |
| Plaintiff, | : |
| | : |
| v. | : Civil Action No. 06-491-MPT |
| | : |
| AMAZON.COM, INC. and, | : |
| AMAZON WEB SERVICES, LLC, | : |
| | : |
| Defendants. | : |

## **MEMORANDUM ORDER**

### **INTRODUCTION**

In this patent matter, Cordance Corporation ("Cordance") alleges that

Amazon.com Inc. and Amazon Web Services, LLC (collectively, "Amazon") infringe

U.S. Patent Nos. 6,757,710 ("the '710 patent"), 6,044,205 ("the '205 patent), 5,862,325

("the '325 patent"), and 6,088,717 ('the '717 patent").[1]  Amazon counterclaimed for

declaratory judgment that Cordance infringes its U.S. Patent No. 6,269,369 ("the '369

patent").

### **THE COURT'S CLAIM CONSTRUCTION**

At Wilmington, this 5th day of December, 2008, having reviewed the papers

submitted with the parties' proposed claim constructions, heard oral argument, and

having considered all of the parties arguments (whether specifically discussed or not);

IT IS ORDERED, ADJUDGED, and DECREED that the disputed claim language

---

[1] The Cordance patents are in the same patent family–three of them have the same specification (the '710, '325, and '717 patents), and one has a shorter specification (the '205 patent).

1

in asserted claims of the patents-in-suit, as identified by the parties, shall be construed

consistent with the tenets of claim construction set forth by the United States Court of

Appeals for the Federal Circuit in *Phillips v. AWH Corp.*,[2] as follows:

**Cordance Patents**

1.    "metadata" ('710, '205, '325, '717 patents)

Cordance's proposed construction is "data that describes or associates other

data."

Amazon's proposed construction is "information used to structure and automate

the bidirectional exchange of data."

The court adopts Cordance's proposed construction and determines this phrase

means:  "data that describes or associates other data."[3]

The court disagrees with Amazon that the intrinsic record demonstrates that

"metadata" was either redefined from its plain and ordinary meaning or that the

meaning was disclaimed during prosecution.  Citation by Amazon to the specification,

for instance, to the statement that "[t]he metadata is the information used to structure

and automate the communications relationship,"[4] recites a use of metadata, it does not

change the plain and ordinary meaning of that term.

---

[2] 415 F.3d 1303 (Fed. Cir. 2005).

[3] *See, e.g.,* D.I. 176 at 121540 (Information Disclosure Statement ("IDS") stamped received Sept. 18, 1998 in prosecution of the '205 patent at 11) ("The common thread in all these examples is the use of *metadata – data describing or associating other data* – to create the associations necessary for automated, intelligent processing.  However none of this art uses this metadata to create a communications control structure as is required in the claimed communications object system and portions thereof." (emphasis added); *see also* J. Rumbaugh, et al., *Object-Oriented Modeling and Design* 39 (1991) (defining metadata as "data that describes other data") (incorporated by reference in the '710 patent at 16:57-58).  Amazon acknowledges that "[i]n the Web context, metadata is data that describes or associates other data."

[4] '205 patent, 34:27-29.

2

2.    "providing customer data storing information for a customer"; "providing information provider data storing information for an information provider" ('710 patent)[5]

Cordance's proposed construction is "making available for use data about a customer that is stored in a data storage medium."

Amazon's proposed construction is "supplying information about a customer from the customer's computers."

The court adopts Cordance's proposed construction and determines that "providing customer data storing information for a customer" means:  "making available for use data about a customer that is stored in a data storage medium." Substituting the court's construction of "information provider," below, the court determines that "providing information provider data storing information for an information provider" means:  "making available for use data about a provider of information that is stored in a data storage medium."

Claim 1 does not specify the location of the stored customer information.  Also, the specification does not require that the customer's data be stored only on the customer's computer but, rather describes providing customer data from the seller's computer, the customer's computer, or a third party's computer.[6]  The doctrine of claim

---

[5] The parties stipulate that these phrases should be given the same construction with appropriate substitutions.  D.I. 171 at 17 (Joint Claim Construction Chart).

[6] See, e.g., '710 patent, 119:65-120:3 ("Because many of these elements 143 are commonly required items of data, such as the provider's name, contact data, financial account data, credit references, and so on, they will already be present in the provider database 11 and can be automatically accessed by the payment service object 1310."); '710 patent, 121:42-48 ("The payment service object's receipt method 141 will then initiate the process to create a customer account (step 4444).  This process is identical to the merchant payment account creation process shown in Fig. 37, except the final result is that the customer is issued a customer account certificate stored in the consumer database 21 as an element 143 of the payment service object 1310."); '710 patent, 128:47-129:6 ("It has been explained how in an embodiment of the present invention the functions of the provider and consumer programs 12, 22 and databases 11, 21 can be combined because they use identical database structures and similar

differentiation indicates that claim 1 is not limited Amazon suggests.[7]  Dependent claim 4 adds the sole limitation:  "[t]he method of claim 1 wherein the customer data is retrieved from a computer of the customer," thereby indicating that claim 1 is not limited to customer information stored on a customer's computer.  Likewise, claim 5 adds the limitation:  "[t]he method of claim 1 wherein the customer data is retrieved from a computer of the seller" and claim 6 recites: "[t]he method of claim 1 wherein the customer data is retrieved from a third party's computer."  Inventor Reed's non-limiting conception document is not a clear disavowal of instances where the customer information is stored at locations other than the customer's computer.

3.     "metadata associating said customer data with said transaction"; "metadata associating said information with said transaction." ('710 patent)[8]

Cordance's proposed construction is "data that is used to identify the stored customer data as data to be used in completing the transaction."

Amazon's proposed construction is "metadata defining the relationship between customer information stored at the customer computer and a purchase transaction."

---

operations.  In another embodiment of the present invention, the functions of either or both the programs 12, 22 and databases 11, 21 can be combined with a partner server 1302 and a partner server database 1301.  This is again because identical database structures and similar operations are used.  All programs can also employ the same HTML and HTTP interface operations as described above.  This means that a communications object system user may fully access the capabilities of a provider program 12, a consumer program 22, and a partner server 1302 all from a single web server 32 using a single web browser 50.  One of the additional benefits of combining the provider program 12 with a distribution server 32 is that providers do not have to transmit new and updated communications objects 110 to a separate distribution server 32 for distribution via the pull technique.  Nor do they require the services of a distribution service object 1310.  Rather pull updating from a consumer program 22 can take place directly from the combined provider program 12 and partner server 1302.  This saves time and reduces the potential for transmission errors.  A provider is also able to more easily apply distribution control by specifying distribution control methods 141 directly in the combined database 100.").

[7] See Phillips, 415 F.3d at 1315 ("[T]he presence of a dependent claim that adds a particular limitation gives rise to a presumption that the limitation in question is not present in the independent claim.").

[8] The parties stipulate that these phrases should be given the same construction with appropriate substitutions.  D.I. 171 at 17.

4

The court adopts Cordance's proposed construction and determines these phrases mean: "data that is used to identify the stored customer data as data to be used in completing the transaction." Amazon's proposed construction requires that customer information be stored at the customer's computer, which proposal was rejected in the previous claim term and is likewise rejected with regard to these disputed phrases.

4. "processing said metadata associating said customer data so as to complete the purchase transaction." ('710 patent)

Cordance's proposed construction is "using the metadata to retrieve the stored customer data and using the retrieved customer data to complete the purchase transaction."[9]

Amazon's proposed construction is "executing instructions contained in the metadata to complete the purchase transaction."

The court adopts Cordance's modified proposed construction and determines this phrase means: "processing the metadata to retrieve the stored customer data and processing the retrieved customer data to complete the purchase transaction."

Recitation in the specification of "data, metadata and instructions" indicates each are separate concepts and instructions are not necessarily contained in the metadata as a plain reading of Amazon's proposed construction requires. The court has determined, above, that "metadata" merely means "data that describes or associates other data." Also, contrary to Amazon's position that the '710 patent does not disclose

---

[9] In its answering brief, Cordance states that it is amenable to replacing "using" with "processing" in its construction, i.e., "processing the metadata to retrieve the stored customer data and processing the retrieved customer data to complete the purchase transaction."

using the customer account certificate to retrieve the customer data, Cordance cites

disclosures supporting such use and its proposed construction.[10]

5.    "information provider" ('710 patent)

Cordance's proposed construction is "a customer in an on-line transaction."

Amazon's proposed construction is "provider of information."

The court adopts Amazon's proposed construction and determines this phrase

means: "provider of information."[11]

6.    "information consumer" ('710 patent)

Cordance's proposed construction is "a seller in an on-line transaction."

Amazon's proposed construction is "user of information."

For the same reasons discussed with respect to "information provider," the court

adopts Amazon's proposed construction and determines this phrase means: "user of

information."

---

[10] Citing '710 patent, 116:61-62; 119:41-120:54; 121:42-48; 121:21-33;121:27-33; Fig. 38; 122:9-13; 122:27-31; 119:65-120:3; 121:42-48; 122:31-35.

[11] *See, e.g.,* '710 patent, abstract ("An automated communications system operates to transfer data, metadata and methods from a provider computer to a consumer computer through a communications network."); '710 patent, 1:22-28 ("All communications consist of a mechanism for exchanging information between one entity, a provider, and another, a consumer. The terms 'provider' and 'consumer' are used to designate separate functions in information transfers. Typically an entity, at various times, operates as both a provider and a consumer in any communication relationship."). Claim 7 of the '710 patent, which includes the disputed phrase, recites, in part, "providing information provider data storing information for an *information provider* . . . providing the *information provider* with information from an *information consumer* with respect to a proposed transaction." '710 patent, 144:66-145:6 (claim 7) (emphasis added). Claim 1 of the '710 patent, recites, in part, "providing a customer data storing information for a *customer* . . . providing the *customer* with information from the *seller* with respect to an item." '710 patent, 144:39-43 (claim 1) (emphasis added). The differing claim language demonstrates that the drafter of the claims understood that parties to a transaction could be referred to as "customers" and "sellers" or "information providers" and "information consumers." Having chosen to use different terms for those parties in claims 1 and 7, the court rejects Cordance's argument that the terms "information provider" and "information consumer" are interchangeable with "customer" and "seller."

6

7.      "control structure" ('206, '325, '717, and '325 patents)

Cordance's proposed construction is "a set of data that specifies how information

is to be processed or transferred."

Amazon's proposed construction is "a combination of data, metadata, and

instructions used to control the origination of outgoing communications and the

processing of incoming communications between provider and consumer."

The court finds Amazon's proposed construction to be unduly narrow and,

therefore, adopts Cordance's proposed construction and determines this phrase

means: "a set of data that specifies how information is to be processed or

transferred."[12]

8.      "processing of said control structure" ('205 patent)

Cordance's proposed construction is "using the control structure to perform one

or more operations."

Amazon's proposed construction is "executing computer instructions defined in

_____

[12] *See, e.g.*, '710 patent, 16:41-46; 16:59-63 ("The use of software objects and object-oriented databases, and in particular their ability to encapsulate data and methods for operating on that data in a single structure, provide certain degrees of functionality which are useful in the storage, transfer, and processing of information." "[T]he following description of a preferred embodiment will discuss the use of objects. However, other methods for storing, transferring, and processing information, such as relational databases, binary files, or procedural programs, could be used."); '710 patent, 21:18-32 ("Instances of the method class 141 may implement communications object methods in several ways. The method can simply be a call to execute a system method included in the consumer program 22. The method can be actual instructions included in the object as program code in an executable format or an interpretable format, such as a script format. The method can be a call to the methods of another communications object located in the provider database 11 or consumer database 21. The method can also be a remote procedure call to another object or application located elsewhere on the consumer's computer or a communications network 3 accessible from the consumer program. This remote procedure call can be executed at the remote computer, or it can be downloaded by the consumer program for local execution."); '710 patent, 59:18-22 ("As with any other object method, an update method may be a reference to a system method, an [sic] method carried internally in the object, or a call to a remote method stored on another computer accessible via communications network 3."); '325 patent (claim 109) ("processing said metadata *to execute instructions external to said control structure* . . . ." (emphasis added)).

the control structure."

The court adopts Cordance's proposed construction, and determines this phrase

means: "using the control structure to perform one or more operations." This

construction is consistent with the court's construction of "control structure" as allowing

instructions to be external to the control structure.[13]

9.    "feedback information" ('325 patent)

Cordance's proposed construction is "information that includes an evaluative

review and may also include information related to the review such as its subject or the

evaluator."

Amazon's proposed construction is "evaluation attributes and corresponding

value choices."

The court adopts Amazon's proposed construction and determines this phrase

means: "evaluation attributes and corresponding value choices."[14]

10.   "processing said metadata to execute instructions external to said control
      structure" ('325 patent)

Cordance's proposed construction is "using the metadata to cause instructions

external to the control structure to be executed."[15]

---

[13] *See also, e.g.*, '710 patent, 21:18-35; 59:18-22.

[14] *See, e.g.*, '717 patent, 125:47-62 ("Now a data exchange method 141 in the feedback service object 1310 generates a feedback input form (step 4606). *This input form consists of the category attribute and value choices obtained from the feedback category object* 110 . . . . [T]he feedback input form for a feedback category object 110 representing minivans might include attributes for dealer satisfaction, fit and finish, gas mileage, maintenance costs, repurchase plans, and so on. The appropriate value choices for each of these attributes would be displayed as drop-down lists, radio buttons, and so on." (emphasis added)). The "evaluative review" of Cordance's proposed construction is not found in the specification.

[15] In its answering brief, Cordance states that it is amenable to replacing "using" with "processing" in its construction, i.e., "processing the metadata to cause instructions external to the control structure to be executed."

8

Amazon's proposed construction is "processing instructions identified in said

metadata, the instructions are external to said control structure."[16]

Amazon argues that Cordance's proposed construction "is wrong in one critical

way–it equates 'processing' with 'using.'  The word 'processing,' however, requires the

performance of some actions on the target of the processing.  Processing is not merely

using and this is not what the specification contemplates."[17]  As Cordance has

represented that it is amenable to changing "using" to "processing" in its construction,

*and* that modified construction is consistent with the claim language, the court adopts

Cordance's modified proposed construction and determines this phrase means:

"processing the metadata to cause instructions external to the control structure to be

executed."

11.      "storage means for storing" ('717 patent)

The parties agree this is a means-plus-function limitation governed by 35 U.S.C.

§ 112 ¶ 6.  A means-plus-function claim limitation "recites a function to be performed

rather than definite structure or materials for performing that function."[18]

> Application of § 112, ¶ 6 requires identification of the structure in the
> specification which performs the recited function.  Therefore, § 112, ¶ 6
> requires both identification of the claimed function and identification of the
> structure in the written description necessary to perform that function. The
> statute does not permit limitation of a means-plus-function claim by
> adopting a function different from that explicitly recited in the claim. Nor
> does the statute permit incorporation of structure from the written

---

[16] This claim construction adds "the instructions are external to said control structure" to Amazon's construction contained in the parties' joint claim construction chart.  *See* D.I. 171 at 12 (reciting Amazon's proposed construction as "processing instructions identified in said metadata").  Because Amazon briefed, and argued, the construction quoted above, with the additional language, that is the construction the court will consider to be Amazon's proposed construction of this term.

[17] D.I. 200 at 29.

[18] *Lockheed Martin Corp. v. Space Sys./Loral, Inc.*, 324 F.3d 1308, 1318 (Fed. Cir. 2003).

9

description beyond that necessary to perform the claimed function.[19]

The parties agree that the function is "storing information."

Cordance's proposed structure is "one or more data storage mediums disclosed

in the '710 patent including a computer, server computer, database, hard disk, floppy

disk, magnetic media, optical media, CD-ROM, or tape cartridge."

Amazon's proposed structure is "a database."

The court adopts Amazon's proposed construction and determines that the only

structure clearly linked with performing the function is:  "a database"[20]

12.  "association means for creating metadata associating portions of said
     information and defining a control structure for processing at least at said
     consumer memory to associate with said metadata processes for controlling the
     communication of said information, said metadata including data exchange
     metadata associating a process for controlling the transfer of feedback
     information, said feedback information including at least a portion of said
     consumer information, to said provider" ("association means") ('325 patent)

The parties agree this is a means-plus-function limitation governed by 35 U.S.C.

§ 112 ¶ 6.

The parties agree that the function needs no construction beyond that given to

the disputed terms within it.

A primary difference in the parties' proposed structures for the means-plus-

function limitations of the '325 patent is Cordance's contention that the specifications

disclose the collection of feedback information (collection of new feedback) *as well as*

---

[19] *See Micro Chem., Inc. v. Great Plains Chem. Co.*, 194 F.3d 1250, 1257-58 (Fed. Cir. 1999)
(citations omitted).  The parties are in substantial agreement with regard to the meaning of the recited
functions.
[20] *See, e.g.*, '710 patent, 1:16-20 ("The present invention relates to data communications systems.
More particularly, it relates to an automated communications system which coordinates the transfer of
data, metadata, and instructions between databases in order to control and process communications.").

the display or use of feedback information (use of previously collected feedback used by a customer considering a purchase). Cordance criticizes Amazon's proposed construction as including structure that is not necessary to perform the recited function in that the claim relates to a single control structure and Amazon's proposed structure includes three different types of objects (a feedback category object, a communications object, and a link component object). Cordance also maintains that Amazon's proposed structure does not provide any structure corresponding to the embodiments relating to the display or use of feedback information. Because the court agrees with these criticisms, and because Cordance's proposed structures identify the structure disclosed in the specification as being necessary for performing the recited function, the court adopts Cordance's proposed structures for the means-plus-function limitations of the '325 patent.

The court determines the structures for the "association means" disclosed in the patent are:[21]

(1) The feedback partner server 1302 creates metadata defining a control structure (e.g., a feedback service object 1310) that is processed by the consumer program 22 to generate a feedback input form. ('710 patent, 16:38-63; 22:6-36; 32:12-34:56; 95:14-99:60; 125:45-62; and figures referenced therein).

(2) The consumer program 22 executed by the consumer computer 2 creates metadata defining a control structure (e.g., a message object 110) containing a query that is

---

[21] The adopted structures follow the format recited in Cordance's briefing in that the structures relating to the collection of feedback information are denoted with "(1)" and the structures relating to the display or use of feedback information are denoted with "(2)."

11

processed by the feedback partner server 1302. ('710 patent, 16:38-63; 22:6-36;

32:12-34:56; 42:49-44:23; 116:29-33; 127:26-128:7; and figures referenced therein).

13.    "transfer means for transferring said information, including said metadata
       defining said control structure from said provider memory to said consumer
       memory" ("transfer means") ('325 patent)

       The parties agree this is a means-plus-function limitation governed by 35 U.S.C.

§ 112 ¶ 6.

       Amazon contends that the "transfer means" function needs no separate

construction beyond that given to the disputed terms within it. Amazon's proposed

construction of the function is: "transferring provider information and said metadata

defining said control structure (including data exchange metadata associating a process

for controlling the transfer of feedback information) from said provider memory to said

consumer memory."

       Claim 20 of the '325 patent recites, in part, "a provider memory storing

information including provider information; a consumer memory storing information

including consumer information." The means-plus-function elements then refer to "said

information." Therefore, "said information" may refer to either "provider information" or

"consumer information." Amazon's proposed function is unduly narrow in that it limits

"said information" to "provider information." Cordance states that the portion of

Amazon's proposed function explicitly reciting that the metadata being transferred

includes data exchange metadata is accurate but unnecessary. Cordance does not

object to adding that language from Amazon's proposed function.

       Consequently, the court determines that the function of this term is: "transferring

said information, including said metadata defining said control structure (including data

12

exchange metadata associating a process for controlling the transfer of feedback information), from said provider memory to said consumer memory." Terms within this phrase that have been previously construed necessarily retain those constructions.

The court determines the structures for the "transfer means" disclosed in the patent are:

(1) The feedback partner server 1302 transfers a control structure (e.g., a feedback service object 1310) to the consumer program 22. ('710 patent, 12:54-13:14; 16:38-63; 23:63-24:28; 32:12-34:56; 125:45-62; and figures referenced therein).

(2) The consumer program 22 executed by the consumer computer 2 transfers a control structure (e.g., a message object 110) containing a query to the feedback partner 1302. ('710 patent, 12:54-13:14; 16:38-63; 23:63-24:28; 32:12-34:56; 42:49-44:23; 116:29-33; 127:26-128:7; and figures referenced therein).

14. "feedback transfer means for transferring said feedback information from said consumer memory to said provider memory" ("feedback transfer means") ('325 patent)

The parties agree this is a means-plus-function limitation governed by 35 U.S.C. § 112 ¶ 6.

The parties agree that the function needs no construction beyond that given to the disputed terms within it.

The court determines the structures for the "feedback transfer means" disclosed in the patent are:

(1) The consumer program 22 executed by the consumer computer 2 transfers a data structure (e.g., a message object 110) containing the feedback data from the input form

and the UID (unique ID) of a data structure (e.g., a communications object)

representing a subject about which the feedback relates from the consumer program 22

to the feedback partner server 1302. ('710 patent, 12:54-13:14;16:38-63; 32:12-34:56;

38:6-40:51; 42:49-44:23; 125:62-126:5; and figures referenced therein).

(2) The feedback partner server 1302 transfers a data structure (e.g., a message object

110) containing feedback information satisfying the query to the consumer program 22.

('710 patent, 12:54-13:14; 32:12-34:56; 42:49-44:23; 116:42-48; 127:26-128:7; and

figures referenced therein).

15.     "processing means for executing instructions external to said control structure to

        perform said processes to control communication of said information."

        ("processing means") ('325 patent)

        The parties agree this is a means-plus-function limitation governed by 35 U.S.C.

§ 112 ¶ 6.

        The parties agree that the function needs no construction beyond that given to

the disputed terms within it.

        The court determines the structures for the "processing means" disclosed in the

patent are:

(1) The consumer program 22 executed by the consumer computer 2 includes a Web

browser that executes instructions external to the received control structure to control

the acquisition and transfer of the feedback information to the feedback partner server

1302. ('710 patent, 16:38-63; 28:48-29:20; 38:6-40:51; 42:49-44:23; 67:63-68:9; 73:40-

74:22; 115:2-23; 125:47-53; and figures referenced therein).

(2) The feedback partner server 1302 executes instructions external to the received

14

control structure to process the specified query and transfer responsive feedback information. ('710 patent, 16:38-63; 32:12-34:56; 42:49-44:23; 116:33-48; 127:26-128:7; and figures referenced therein).

## Amazon Patent[22]

16.    "directly modify the user's own repective [sic] personal data record within the database" ('369 patent)

During the *Markman* hearing, the parties agreed that this term should be construed as meaning "modify user's own respective personal data records solely himself/herself."[23] The court adopts the parties' agreed-upon construction.

17.    "virtual personal address book" ('369 patent)

Cordance's proposed construction is "a web site on a server system and available to a user that stores a collection of links to personal data records previously selected by the user, displays a web page to the user with an alphabetically-ordered index of the personal data records selected by the user, and that allows a user to select a link to a personal data record and retrieve a web page that presents the contents of the personal data record."

Amazon's proposed construction is "a network-computer-based personal address book comprising permissions to view personal data records of the associated users."

---

[22] On November 20, 2007, the court denied Cordance's motion to dismiss Amazon's counterclaim for declaratory judgment of infringement of Amazon's '369 patent. As of the *Markman* hearing, discovery was not completed with regard to that counterclaim. Consequently, the court disagrees with Cordance that construction of the terms briefed and argued at the *Markman* hearing would constitute an impermissible advisory opinion and the court will construe the disputed claim terms presented by the parties.
[23] D.I. 204 at 140.

15

The court adopts Amazon's proposed construction and determines this phrase means: "a network-computer-based personal address book comprising permissions to view personal data records of the associated users."[24]

Cordance's proposed construction is primarily based on figure 10 of the '369 patent and a statement regarding that figure in an amendment after final action amendment that "Figure 10 of the application shows a (virtual) personal address book as displayed to a user according to *a preferred embodiment* of the invention." (emphasis added). Amazon's proposed construction is supported by the intrinsic evidence and the court rejects Cordance's proposed construction is based on a preferred embodiment. The specification states that the embodiments disclosed therein are not limitations on the claims of the patent.[25]

18.    "directly view the data records" ('369 patent)

Cordance's proposed construction is "view the data records from the database and not from a personal copy of the data record."

Amazon contends that "no construction is necessary as the rest of the claim language defines the phrase."

---

[24] *See, e.g.*, '369 patent, Abstract ("A network-computer-based personal contact manager system is disclosed wherein users of networked clients maintain and update a set of user information which is stored in a relational database on a networked server."); '369 patent, 2:47-51 ("The present invention is a computer-network-based contact management system that allows members to create and maintain contact with other members and determine on a person-by-person basis what information to share or withhold."); '369 Amendment After Final Action, received Dec. 4, 2000 (Under the heading "*Definition of 'virtual address book*,'" the amendment explains that "[t]he modifier 'virtual' is used–both in the specification . . . and the claims–to emphasize that an address book entry or 'listing' comprises a permission to view the personal data record of the associated user." (emphasis added)).

[25] *See, e.g.*, '369 patent, 4:20-26 ("While the invention will be described in conjunction with the preferred embodiments, it will be understood that they are not intended to limit the invention to those embodiments. On the contrary, the invention is intended to cover alternatives, modifications and equivalents, which may be included within the spirit and scope of the invention as defined by the appended claims.").

The court agrees with Amazon that no construction of this term is necessary and that the claim language following the disputed phase defines the phrase. The section of the claim containing the disputed phrase reads: "[w]herein users directly view the data records of other users through the virtual address books according to said permissions, so that updates by users to their own respective personal records are reflected automatically within the virtual personal address books of other users."[26] Cordance's proposed construction would read out an embodiment recited in the specification.[27] The court disagrees with Cordance that Amazon disclaimed that embodiment during prosecution.

UNITED STATES MAGISTRATE JUDGE

---

[26] '369 patent, 22:9-13 (claim 9).

[27] See, e.g., '369 patent, 15:41-16:21 (describing "an alternative embodiment, which is configured for personal information managers (PIMs, such as the U.S. Robotics Palm Pilot . . . ."); '369 patent, 16:19-21 ("[O]ne difference is that the PDA 750 maintains its own database 390 instead of relying solely on the server database 340."). Further, claim 16 of the '369 patent refers to that alternative embodiment: "[t]he networked personal contact management system as in claim 9, further comprising synchronization software which synchronizes a personal digital assistant (PDA) device with a user's virtual personal address book over a computer network."

17