IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| CORDANCE CORPORATION, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) C.A. No. 06-491-MPT |
| | ) |
| AMAZON.COM, INC., and | ) |
| AMAZON WEB SERVICES, LLC, | ) |
| | ) |
| Defendants. | ) |

## CORDANCE'S MOTION FOR PARTIAL SUMMARY JUDGMENT

ASHBY & GEDDES
Steven J. Balick (I.D. #2114)
John G. Day (I.D. #2403)
Tiffany Geyer Lydon (I.D. #3950)
500 Delaware Avenue, 8th Floor
P.O. Box 1150
Wilmington, DE 19899
302-654-1888
sbalick@ashby-geddes.com
jday@ashby-geddes.com
tlydon@ashby-geddes.com

*Attorneys for Plaintiff Cordance Corporation*

*Of Counsel:*

Michael A. Albert
Robert M. Abrahamsen
Jeffrey C. O'Neill
WOLF, GREENFIELD & SACKS, P.C.
600 Atlantic Avenue
Boston, Massachusetts 02210
617-646-8000

Dated: January 23, 2009

{00268528;v1}

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................... iii

I.  NATURE AND STAGE OF THE PROCEEDINGS ....................................................... 1

II. SUMMARY OF ARGUMENT ........................................................................................ 2

III. CONCISE STATEMENT OF FACTS ............................................................................. 4

    A.    Prosecution Laches ................................................................................................ 4

    B.    Patent Misuse ......................................................................................................... 4

    C.    Marking Requirement ........................................................................................... 5

    B.    Barring Costs ......................................................................................................... 5

III. ARGUMENT .................................................................................................................... 5

    A.    Prosecution Laches ................................................................................................ 6

    B.    Patent Misuse ......................................................................................................... 9

    C.    Marking Requirement ......................................................................................... 12

    B.    Barring Costs ....................................................................................................... 13

III. CONCLUSION ............................................................................................................... 14

## TABLE OF AUTHORITIES

**Cases**

Ariad Pharms., Inc. v. Eli Lilly & Co.,
    529 F. Supp. 2d 106 (D. Mass. 2007) ............................................................................ 8

Bayer Ag v. Housey Pharms.,
    288 F. Supp. 2d 467 (D. Del. 2002) ........................................................................ 6, 12

Bradford Co. v. Jefferson Smurfit Corp.,
    No. 00-1511, 2001 U.S. App. LEXIS 25205 (Fed. Cir. Oct. 30, 2001) ......................... 14

Gart v. Logitech, Inc.,
    254 F.3d 1334 (Fed. Cir. 2001) .................................................................................... 12

Intuitive Surgical, Inc. v. Computer Motion, Inc.
    No. 01-203, 2002 WL 31833867 (D. Del. 2002) ................................................... 6, 7, 8

Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,
    475 U.S. 574 (1986) ....................................................................................................... 6

Maxwell v. J. Baker, Inc.,
    86 F.3d 1098 (Fed. Cir. 1996) ...................................................................................... 12

National Lockwasher Co. v. George K. Garrett Co.,
    137 F.2d 255 (3d Cir. 1943) .......................................................................................... 11

Stambler v. RSA Security, Inc.,
    243 F. Supp. 2d 74 (D. Del. 2003) ............................................................................. 7, 8

Symbol Tech., Inc. v. Lemelson Med., Educ. & Research Found., L.P.,
    277 F.3d 1361 (Fed. Cir. 2002) .................................................................................. 6, 8

Symbol Tech., Inc. v. Lemelson Med., Educ. & Research Found., L.P.,
    422 F.3d 1378 (Fed. Cir. 2005) ............................................................................... 6-7, 8

United States Gypsum Co. v. National Gypsum Co.,
    352 U.S. 457 (1957) ....................................................................................................... 9

Virginia Panel Corp. v. MAC Panel Co.,
    133 F.3d 860 (Fed. Cir. 1997) ............................................................................ 9, 10, 11

**Statutes**

35 U.S.C. § 287 ................................................................................................... 2, 3, 12, 13, 14

35 U.S.C. § 288 ......................................................................................................... 2, 3, 13, 14

**Other**

6-19 Chisum on Patents § 19.04 ....................................................................................... 10, 11

Pursuant to Federal Rule of Civil Procedure 56, Plaintiff Cordance Corp. ("Cordance") respectfully submits this Motion for Partial Summary Judgment. This patent infringement case raises hotly contested disputes of fact regarding the operation of Amazon's one-click and feedback systems and their use of the inventions claimed in Cordance's patents. These issues are likely to turn ultimately on conflicting technical expert testimony. The core issues of infringement and validity in this case, accordingly, are not amenable to summary judgment, and Cordance does not ask the Court to involve itself at this time in weighing the conflicting contentions and evidence. In the interests of streamlining the trial, however, Cordance seeks dismissal upon summary judgment of several subsidiary defenses asserted in Amazon's Answer, which do not find any plausible basis in the record or are otherwise untenable as a matter of law.

## I. NATURE AND STAGE OF THE PROCEEDINGS

Cordance filed suit against Amazon on August 8, 2006 (D.I. 1), asserting claims of patent infringement. In its Answer (D.I. 11), filed on October 23, 2006, Amazon asserted numerous counterclaims and defenses, including a counterclaim of patent infringement. The parties have each amended their pleadings, and the pleadings currently before the Court are Cordance's Third Amended Complaint (D.I. 156) and Amazon's Answer (D.I. 158) to Cordance's Third Amended Complaint. Less than one month ago, Amazon moved to further amend its pleadings (D.I. 289), although the deadline to amend pleadings had expired seven months before. Cordance has opposed Amazon's untimely motion to amend (D.I. 310).

Cordance and Amazon have stipulated to a dismissal of claims and counterclaims relating to infringement of Cordance's U.S. Patent No. 6,044,205 patent and Amazon's U.S. Patent No. 6,269,369. (D.I. 301.) The remaining patents-in-suit are Cordance's U.S. Patent Nos. 5,862,325, 6,088, 717, and 6,757,710.

Non-expert discovery is now closed (D.I. 259), except that Amazon has been ordered to provide additional discovery to remedy its failures to provide certain documents and Rule 30(b)(6) deposition testimony (D.I. 302). The deadlines for expert discovery are contingent upon Amazon's compliance with its discovery obligations. (D.I. 302.)

The pretrial conference is set for June 24, 2009, and a twelve-day jury trial is scheduled to begin on August 3, 2009. (D.I. 90.)

## II. SUMMARY OF ARGUMENT

Aside from its contentions regarding infringement and validity, Amazon has included the following subsidiary defenses in its Answer (D.I. 158): (1) prosecution laches, (2) patent misuse, (3) limitation on damages for failure to mark under 35 U.S.C. § 287, and (4) costs barred in action for infringement of a patent containing an invalid claim under 35 U.S.C. § 288.

Amazon has failed to set forth a factual basis to establish a genuine issue of material fact as to any of these purported defenses. Accordingly, Cordance should be granted summary judgment as to each of these defenses.

1. Amazon has no factual basis to support its purported defense of prosecution laches, an equitable doctrine applied only in rare and extreme cases involving abusive delays of the patenting process. Cordance owns five patents, several of which were prosecuted simultaneously and all of which issued within eight and a half years of Cordance's first date of filing. There is no indication that Cordance unreasonably or inexplicably delayed the prosecution of any of its patents and indeed, several of these patents issued within two and a half years of filing. As several cases (including in this District) have held upon summary judgment on similar fact patters, there was no prosecution laches.

2.      Amazon has not pled facts showing a defense of patent misuse and the undisputed facts show that Amazon has no such defense.  Cordance voluntarily provided a royalty-free licensing opportunity to a non-profit entity in order to promote digital identity standards for the Internet community.  These royalty-free licenses do not contain any provisions that remotely resemble patent misuse, and Amazon has ignored the substance of these licenses entirely.

3.      Amazon has no factual basis to support its allegation that Cordance's damages for patent infringement should be limited by a failure to mark a patented article under 35 U.S.C. § 287(a).  As the undisputed evidence shows, Cordance has marked its products with its patent numbers at all relevant times.  Further, Amazon has failed to produce any evidence calling into question or otherwise giving rise to a genuine issue of material fact as to whether Cordance has complied with the marking requirement.

4.      Amazon has no factual basis to support its defense that Cordance should be precluded from recovering costs under 35 U.S.C. § 288.  This statute only applies where a claim of plaintiff's patent was found invalid prior to the initiation of a lawsuit for patent infringement.  As no claim of any of Cordance's patents has ever been found invalid (nor indeed has ever been the subject of a prior lawsuit), Amazon has no factual basis to allege that Cordance is barred from collecting costs under 35 U.S.C. § 288.

III. **CONCISE STATEMENT OF FACTS**

Set forth below are the material facts with respect to each argument advanced by Cordance in its motion for summary judgment.

A. **Prosecution Laches**

Cordance owns five U.S. patents, which are all part of the same patent family (Reed Decl. ¶ 2.)[1]:

- Cordance's first application was filed on February 29, 1996 and issued as U.S. Patent No. 6,044,205 on March 28, 2000. (Reed Decl. ¶ 3.)

- Cordance's second patent application was a continuation in part of the first application, was filed on September 27, 1996, and issued as U.S. Patent No. 5,862,325 on January 19, 1999. (Reed Decl. ¶ 4.)

- Cordance's third patent application was a continuation of the second application, was filed on August 31, 1998, and issued as U.S. Patent No. 6,088,717 on July 11, 2000. (Reed Decl. ¶ 5.)

- Cordance's fourth patent application was a continuation of the third application, was filed on May 15, 2000, and issued as U.S. Patent No. 6,345,288 on February 5, 2002. (Reed Decl. ¶ 6.)

- Cordance's fifth patent application was a continuation of the fourth application, was filed on February 5, 2002, and issued as U.S. Patent No. 6,757,710 on June 29, 2004. (Reed Decl. ¶ 7.)

B. **Patent Misuse**

Through a non-profit organization called XDI.org, Cordance offers a royalty-free license to all of its patents in the field of use defined by the XRI and XDI standards ("the XDI licenses"). (See Exs. B, D.) The first license is between Cordance and XDI.org (Ex. D), and the second license is a sub-license from XDI.org to any licensee who implements the XRI and XDI standards so long as they meet certain requirements such as providing reciprocal patent licenses. (Ex. B.) From the plain language of these licenses, it is clear that the licenses are royalty free,

---

[1] The Declaration of Drummond Reed is attached hereto as Exhibit A.

are not conditioned on the purchase of any other goods, do not seek post-expiration royalties, do not prohibit the production or sale of competing goods, do not condition the license upon another license, and otherwise have no anti-competitive effect recognized by the courts as "patent misuse." (See Exs. B, D.)

C.   **Marking Requirement**

Since the issuance of its first patent, Cordance has been involved in the development of two products that are covered by its patents: the Extensible Name Service Platform and the OneName Identity Server. (Reed Decl. ¶ 9.) It is undisputed that Cordance marked each of these products with its U.S. patent numbers. (Reed Decl. ¶ 9.) Cordance has not had any involvement in the development of any other products covered by its patents. (Reed Decl. ¶ 9.)

As described above, Cordance offers a royalty-free license to all of its patents in the field of use defined by the XRI and XDI standards ("the XDI licenses"). (See Exs. B, D.) Although people have implemented portions of the XRI and XDI standards, there has not yet been any implementation of the XRI and XDI standards that would be covered by Cordance's patents (Reed Decl. ¶ 10), so no issue arises with regard to the marking of any such product.

D.   **Barring Costs**

Cordance owns five patents. (Reed Decl. ¶ 2.) No claim of any of Cordance's five patents has ever been found invalid in any prior litigation. (Reed Decl. ¶ 8.) Indeed, the patents have never even been the subject of any prior litigation.

IV.   **ARGUMENT**

The Court should grant summary judgment where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter

of law." Fed. R. Civ. P. 56(c). The moving party bears the burden of proving that no genuine issue of material fact exists. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 n.10 (1986). Once the moving party has demonstrated no genuine issue of material fact exists, the nonmoving party then "must come forward with 'specific facts showing that there is a genuine issue for trial.'" Matsushita, 475 U.S. at 587 (quoting Fed. R. Civ. P. 56(e)). "The mere existence of some evidence in support of the nonmoving party, however, will not be sufficient for denial of a motion for summary judgment; there must be enough evidence to enable a jury reasonably to find for the nonmoving party on that issue." Bayer Ag v. Housey Pharms. Inc., 228 F. Supp. 2d 467, 469 (D. Del. 2002). "If the nonmoving party fails to make a sufficient showing on an essential element of its case with respect to which it has the burden of proof, the moving party is entitled to judgment as a matter of law." Id.

### A. Prosecution Laches

Prosecution laches is an equitable doctrine imposed only in extreme cases to bar enforcement of a patent that issued after an unreasonable and unexplained delay in prosecution. Symbol Techs., Inc. v. Lemelson Med., Educ. & Research Found., L.P., 277 F.3d 1361, 1363 (Fed. Cir. 2002) ("Symbol I"). A determination as to the applicability of prosecution laches must rely on two fundamental precepts. First, a threshold inquiry is to be undertaken as to whether a patent "was obtained after an unreasonable and unexplained delay in prosecution" with a central focus being on the unreasonableness of the delay. Intuitive Surgical, Inc. v. Computer Motion, Inc., No. 01-203, 2002 WL 31833867, at *3 (D. Del. 2002). Second, a review of the record as to whether the delay was unreasonable and unexplained must proceed in light of the fact that prosecution laches is an equitable tool "that should be used sparingly" and "only in egregious cases of misuse of the statutory patent system." Symbol Techs., Inc. v. Lemelson Medical, Educ.

& Research Found., L.P., 422 F.3d 1378, 1385 (Fed. Cir. 2005) ("Symbol II") (finding that the doctrine applied to patents for which there had been prosecution delays of 18 to 39 years).

In recent years, the District of Delaware has twice granted summary judgment of no prosecution laches. In Stambler v. RSA Security, Inc., the court found that "seven years [did] not represent an unreasonable delay" for the prosecution of a family of seven patents. 243 F. Supp. 2d 74, 76 (D. Del. 2003). In support of its ruling, the court noted the patent applicant's need to prosecute a series of continuation and divisional applications and the fact that each application was completed within two and a half years of its own filing date. Id.

In Intuitive Surgical, Inc. v. Computer Motion, Inc., there was a delay of almost nine years between patent issuance and the first application. No. 01-203, 2002 WL 31833867, at *4 (D. Del. 2002). There, the patent applicant had filed numerous divisional applications and the PTO had misplaced one of the applications. Id. Four years and four months later, after apparently deciding that it wished to continue prosecution of the lost application, the applicant notified the PTO of the misplaced application so that it could expand its patent rights. Id. at *5. Despite noting its discomfort with the business strategies employed by the patentee, the court relied on the partial explanation for the delay by the PTO mistake and did not find the facts to be "sufficiently egregious to warrant application of prosecution laches." Id.

Amazon does not have any evidence of an unreasonable or unexplained delay in prosecution by Cordance. Indeed, Cordance prosecuted its first three patents simultaneously and its five patents all issued within eight years and four months of the earliest filing date. As noted by the court in Stambler, simultaneity of prosecution weighs in favor of a finding that, on the whole, prosecution spanning several years will not constitute unreasonable delay. 243 F.Supp. 2d at 76.

The total time for prosecution of Cordance's patents was thus less than in <u>Intuitive Surgical</u> where the court found a nine-year prosecution period to be reasonable and granted summary judgment of no prosecution laches. 2002 WL 31833867, at *4. Cordance's last three patents – the '710, '288, and '717 patents – each issued approximately two years after filing, which was more quickly than in <u>Stambler</u> where this Court found no unreasonable delay. 243 F. Supp. 2d at 76. These delays do not even approach the "extreme" or "unreasonable" – indeed, they are typical of the patent prosecution process. For example, in 2006 the average pendency of a patent application was 31 months. <u>Ariad Pharms., Inc. v. Eli Lilly & Co.</u>, 529 F. Supp. 2d 106, 136-37 (D. Mass. 2007).

Even if Amazon could show an unreasonable or unexplained delay, it would still have to show that Cordance's delay was among "the most egregious of cases." <u>Symbol II</u>, 422 F.3d at 1385. As the prosecution period of the Cordance patents is similar to both <u>Stambler</u> and <u>Intuitive Surgical</u>, where this court found that such delays were reasonable, Amazon certainly cannot show that such delays are egregious. As a practical matter, the doctrine is applied so sparingly that in the eight years since it was revived[2] by <u>Symbol I</u>, Cordance is not aware of any other court that has rendered a patent unenforceable on account of prosecution laches.

Considering the prosecution history as a whole, eight and a half years for the issuance of five patents does not represent an unreasonable, unexplained or otherwise egregious situation for which prosecution laches should be imposed. Accordingly, Amazon's defense of prosecution laches should be dismissed as a matter of law.

---

[2] Prior to <u>Symbol I</u>, it was unclear whether a 1952 change in the patent law had eliminated the doctrine, and non-precedential opinions indicated that it had been. <u>Symbol I</u>, 277 F.3d at 1365.

{00268528;v1}

### B. Patent Misuse

The affirmative defense of patent misuse is "is an extension of the equitable doctrine of 'unclean hands' to the patent field." United States Gypsum Co. v. National Gypsum Co., 352 U.S. 457, 465 (1957). Establishing the defense "requires that the alleged infringer show that the patentee has impermissibly broadened the physical or temporal scope of the patent grant with anticompetitive effect." Virginia Panel Corp. v. MAC Panel Co., 133 F.3d 860, 868-69 (Fed. Cir. 1997) (internal quotation marks omitted and emphasis added).

In its Answer, Amazon pleads the following allegations in support of its defense of patent misuse:

- "On information and belief, Plaintiff has falsely indicated that the patents-in-suit are embodied in one or more of the standards relating to XRI/XDI specifications and included such indications in specifications and/or related documents with XDI.ORG." (D.I. 158 at 5.)

- "On information and belief, Plaintiff made such indication and/or assertions of the patents in suit being embodied in standards in an effort to wrongfully extend its patent rights to exploit and profit from the promulgation and adoption of the XRI/XDI standards and or/agreements [sic] relating to operation thereof." (D.I. 158 at 5.)

These pleadings do not state any legally cognizable theory of patent misuse. First, Cordance cannot discern what Amazon means by "Plaintiff has falsely indicated that the patents-in-suit are embodied in one or more of the standards," and even if this statement were correct (it is not), it does not relate to any anti-competitive effect, which is required to show patent misuse. See Virginia Panel, 133 F.3d at 868-69. Furthermore, Amazon's conclusory statement that Cordance has made "an effort to wrongfully extend its patent rights" has no factual support. Amazon does not plead any anti-competitive effect and fails even to allege – let alone provide evidence – that Cordance has sought to extend the temporal scope or the physical scope of its patents.

Furthermore, the undisputed facts show that Amazon cannot succeed on a defense of patent misuse. Through XDI.ORG, Cordance offers a <u>royalty-free license</u> to all of its patents in the field of use defined by the XRI and XDI standards ("the XDI licenses"). (<u>See</u> Exs. B, D.)

Patent misuse generally arises through licensing practices, yet Amazon fails to mention the substance of the XDI licenses in its pleadings – presumably because the substance plainly shows that there is no anti-competitive effect.

Certain practices constitute per se patent misuse, for example, "tying arrangements in which a patentee conditions a license under the patent on the purchase of a separable, staple good, and arrangements in which a patentee effectively extends the term of its patent by requiring post-expiration royalties." <u>Virginia Panel</u>, 133 F.3d at 868 (internal quotation marks and citation omitted).

The XDI licenses do not constitute per se misuse. Certain tying arrangements may constitute per se misuse, for example where "patent owners conditioned a license to use a patented combination, machine, or process upon purchase of unpatented supplies or components." <u>See</u> 6-19 Chisum on Patents § 19.04[1][a]. The XDI licenses do not require licensees to make payments of any kind and thus do not require the purchase of unpatented supplies or components. Attempts to collect post-expiration royalties may also constitute per se misuse, but as Cordance does not collect any royalties at all, it certainly is not seeking to collect post-expiration royalties.

Although there are many different factual situations that could create an anti-competitive effect, Chisum has described the "three classic acts of misuse [as] (1) requiring the purchase of unpatented goods for use with patented apparatus or processes, (2) prohibiting production or sale

of competing goods, and (3) conditioning the granting of a license under one patent upon the acceptance of another and different license." 6-19 Chisum on Patents § 19.04[3].

The XDI licenses also do not contain any requirements that even remotely resemble the three classic acts of patent misuse described by Chisum. First, as just noted, the XDI licenses do not require the purchase of anything and thus do not require the purchase of unpatented goods. The second classic act of misuse prohibits the sale of competing goods, such as a license that states "while this agreement is in force, [licensee] will make and sell no form of non-entangling Spring Washers except such as are covered by said patent." National Lockwasher Co. v. George K. Garrett Co., 137 F.2d 255 (3d Cir. 1943). The XDI licenses do not even refer to any competing goods, let alone prohibit licensees from producing or selling competing goods. The third classic act of misuse prohibits coercive licensing, where to obtain a license for one patent the licensee is required to also pay for a license for another patent. 6-19 Chisum on Patents § 19.04[3][c]. The XDI licenses are royalty-free and are not conditioned upon the taking of any other license.

Other acts may constitute patent misuse where "the practice has the effect of extending the patentee's statutory rights and does so with an anti-competitive effect." Virginia Panel, 133 F.3d at 868-69. Where the court finds an anti-competitive effect, "that practice must then be analyzed in accordance with the 'rule of reason.'" Id. Under the rule of reason, only certain anti-competitive effects will constitute patent misuse: "the finder of fact must decide whether the questioned practice imposes an unreasonable restraint on competition, taking into account a variety of factors, including specific information about the relevant business, its condition before and after the restraint was imposed, and the restraint's history, nature, and effect." Id.

Amazon has not provided any contention – or evidence – as to how any acts by Cordance could constitute patent misuse or create an anti-competitive effect. As described above, the XDI licenses are royalty free and do not contain any provisions that even remotely resemble the three classic acts of patent misuse. Courts (including in this District) grant summary judgment of no patent misuse where the defendant fails to identify any such acts of patent misuse. See, e.g., Bayer AG v. Housey Pharms., 228 F. Supp. 2d 467, 474 (D. Del. 2002).

### C. Marking Requirement

As set forth in 35 U.S.C. § 287, a patentee is entitled to damages from the time it provided constructive notice by marking its product, or when it actually notified the accused infringer of its infringement, whichever is earlier. Maxwell v. J. Baker, Inc., 86 F.3d 1098, 1111 (Fed. Cir. 1996). Compliance with the marking requirement of this statute is a question of fact; however, where there are no material facts in dispute and no reasonable jury could find that the patentee has not provided notice to the defendants, notice may be decided on a motion for summary judgment. Gart v. Logitech, Inc., 254 F.3d 1334, 1339 (Fed. Cir. 2001).

Since the issuance of Cordance's first patent, Cordance has marked with its patent numbers all products with which it has been involved that are covered by any claim of its patents. In its response to Amazon's Interrogatory No. 24 , Cordance explained that it was involved in developing two products, the Extensible Name Service Platform and the OneName Identity Server, both of which were undisputedly marked with the patent numbers of the patents in suit. (See Ex. C.) Cordance's response further cited to numerous documents showing that these two products were marked with the patent numbers of the patents in suit. (Id.) Since the issuance of Cordance's first patent, Cordance has not been involved in the development of any other products that would be covered by its patents.

Cordance has no knowledge of any licensee who has developed a product that would be covered by any of its patents. Cordance is involved in promoting two standards for digital addressing called XRI and XDI. As Cordance would like to encourage the adoption of the XRI and XDI standards, Cordance has granted a royalty free license to its patents to anyone who implements the XRI or XDI standards, subject to certain terms and conditions. (See Ex. B.) Several entities and individuals have developed implementations of the XRI or XDI standards, but none of these implementations are covered by any of Cordance's patents. (Reed Decl. ¶ 10.)

Furthermore, Amazon has failed to put forth any evidence calling into question or otherwise challenging the sufficiency of Cordance's marking practices. Amazon has not identified a single instance where Cordance's patents have been implemented without proper marking.

Accordingly, the Court should grant Cordance summary judgment that Cordance has complied with the marking requirement of 35 U.S.C. § 287.

### D.      Barring Costs

Another defense Amazon inexplicably includes in its Answer is based on a statute, 35 U.S.C. § 288, whose predicate facts simply have not occurred and are not even alleged by Amazon to have occurred. The statute applies to patents that have been found invalid *in a previous case*. As Amazon well knows, there has never been a previous case involving these patents. Amazon's persistence in asserting this and similar unfounded defenses is puzzling.[3]

Under 35 U.S.C. § 288, a patent-infringement plaintiff may, in some instances, be prohibited from recovering costs upon the conclusion of the litigation:

---

[3] Prior to filing this motion, Cordance approached Amazon to learn whether Amazon intended to pursue each and every one of the defenses addressed in this motion, or was prepared to waive one or more of them. Amazon's counsel responded: "Amazon continues to assert these defenses."

> Whenever, without deceptive intention, a claim of a patent is invalid, an action may be maintained for the infringement of a claim of the patent which may be valid. The patentee shall recover no costs unless a disclaimer of the invalid claim has been entered at the Patent and Trademark Office <u>before the commencement of the suit</u>.

35 U.S.C. § 288 (emphasis added). In order for the statute to apply, the following sequence of actions must occur: (1) a claim of plaintiff's patent must be found invalid, (2) plaintiff must thereafter fail to enter a disclaimer of the invalid claim with the PTO, and (3) plaintiff must then file suit against defendant. <u>Bradford Co. v. Jefferson Smurfit Corp.</u>, No. 00-1511, 2001 U.S. App. LEXIS 25205, at *20 (Fed. Cir. Oct. 30, 2001) (holding that in order for this statutory provision to apply, "there must have been a prior determination of invalidity before the patent-infringement suit for which costs are now sought"). Where there has been no determination of invalidity of a claim of plaintiff's patent prior to filing a lawsuit against the defendant, § 288 does not apply. <u>Id.</u>

No claim of any of Cordance's patents has ever been found invalid – nor indeed has ever been involved in any prior litigation. Thus, § 288 provides no basis for limiting costs. Cordance requests that the Court grant summary judgment that Amazon has no defense under 35 U.S.C. § 288.

## V.   **CONCLUSION**

Cordance respectfully requests that the Court enter partial summary judgment that (1) Amazon does not have a defense of prosecution laches to infringement of Cordance's patents; (2) Amazon does not have a defense of patent misuse to infringement of Cordance's patents; (3) Cordance has complied with the requirements of 35 U.S.C. § 287; and (4) Cordance is not barred from recovering costs under 35 U.S.C. § 288.

ASHBY & GEDDES

/s/ *Tiffany Geyer Lydon*
_____
Steven J. Balick (I.D. #2114)
John G. Day (I.D. #2403)
Tiffany Geyer Lydon (I.D. #3950)
500 Delaware Avenue, 8th Floor
P.O. Box 1150
Wilmington, DE 19899
(302) 654-1888
sbalick@ashby-geddes.com
jday@ashby-geddes.com
tlydon@ashby-geddes.com

*Attorneys for Plaintiff Cordance Corporation*

*Of Counsel:*

Michael A. Albert
Robert M. Abrahamsen
Jeffery C. O'Neill
WOLF, GREENFIELD & SACKS, P.C.
600 Atlantic Avenue
Boston, Massachusetts 02210
(617) 646-8000
malbert@wolfgreenfield.com
rabrahamsen@wolfgreenfield.com
joneill@wolfgreenfield.com

Dated: January 23, 2009