# EXHIBIT A

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

CORDANCE CORPORATION,

Plaintiff,

v.

AMAZON.COM, INC. and AMAZON
WEB SERVICES, LLC,

Defendants.

Civil Action No. 06-491-MPT

## JANUARY 23, 2009 DECLARATION OF DRUMMOND S. REED

I, Drummond Reed, declare and state:

1.    I am a board member and technical advisor of Cordance Corporation ("Cordance"), the plaintiff in the above-captioned case.

2.    Cordance has five United States patents, which are all part of the same patent family: U.S. Patent No. 6,044,205; U.S. Patent No. 5,862,325; U.S. Patent No. 6,088,717; U.S. Patent No. 6,345,288; and U.S. Patent No. 6,757,710.

3.    Cordance's first application was filed on February 29, 1996 and issued as U.S. Patent No. 6,044,205 on March 28, 2000.

4.    Cordance's second patent application was a continuation in part of the first application, was filed on filed on September 27, 1996, and issued as U.S. Patent No. 5,862,325 on January 19, 1999.

5.     Cordance's third patent application was a continuation of the second application, was filed on August 31, 1998, and issued as U.S. Patent No. 6,088,717 on July 11, 2000.

6.     Cordance's fourth patent application was a continuation of the third application, was filed on May 15, 2000, and issued as U.S. Patent No. 6,345,288 on February 5, 2002.

7.     Cordance's fifth patent application was a continuation of the fourth application, was filed on February 5, 2002, and issued as U.S. Patent No. 6,757,710 on June 29, 2004.

8.     No claim of any of Cordance's five patents has ever been found invalid.

9.     Since the issuance of Cordance's first patent, Cordance has not had any involvement in the development of any products that would be covered by its patents other than the Extensible Name Service Platform and the OneName Identity Server. The Extensible Name Service Platform and the OneName Identity Server were marked with the numbers of the Cordance patents during development and through the lifetime of the products.

10.     To my knowledge, no one has implemented any product under license from Cordance that would be covered by any of Cordance's patents.

I declare under penalty of perjury that the foregoing is true and correct to the best

of my knowledge and belief.

Date: January 23, 2009

_____

Drummond S. Reed

# EXHIBIT B

# XDI.ORG LICENSE

This Work (the Technical Specifications, Global Services Specifications, and any associated software, documents, and other related items provided to you with notice of this License) is protected by patent, copyright, trademark, and other intellectual property rights ("IPRs") owned or licensed by XDI.ORG (www.xdi.org). XDI.ORG provides the Work under the following license ("License"). By obtaining, using, or copying any portion of this Work, you (the "Licensee") agree that you have read and will comply with the following terms and conditions:

1. **Background**

   1.1. XDI is a set of Open Standard specifications as designated from time to time by XDI.ORG for a generalized, extensible service for identifying, addressing, sharing, linking, and synchronizing XDI Resources; currently the specifications published by the OASIS XDI Technical Committee.

   1.2. XDI.ORG is a nonprofit international public trust organization to which the rights to XDI technology have been contributed in order to facilitate and promote the widespread adoption of XDI as an open trusted data sharing infrastructure.

   1.3. XDI.ORG provides the patented technology and associated specifications, documents, and other related items on an Open Standards basis to encourage the further development, implementation, and deployment of XDI software, services, and infrastructure.

2. **Definitions.** All terms that are capitalized in the License, and not otherwise defined in the text, are defined in Exhibit A and incorporated herein.

3. **Ownership**

   3.1. XDI.ORG has a license from OneName Corporation dba Cordance ("Cordance", www.cordance.net) with respect to the Patent Rights, including the right to sublicense.

   3.2. XDI.ORG holds other IPRs for the Technical Specifications, Global Service Specifications, and other software, documents, and related items included or referenced in this Work, except where otherwise indicated.

   3.3. Marks owned by XDI.ORG or third parties are so indicated in the Work.

4. **Permission Granted by XDI.ORG**
   XDI.ORG grants Licensee a fully paid-up, irrevocable, royalty-free, worldwide license, on a non-exclusive basis, under the Patent Rights within the Field of Use, to make, have made, use, import, sell, offer to sell, and otherwise distribute or dispose of

Copyright © 2004 XDI.ORG. All rights reserved.

CORD141238

**Confidential**

products and services, and also to copy, modify, and distribute the portions of this Work protected by copyright, trademark, and other Intellectual Property Rights apart from the Patent Rights, provided that Licensee either

(a) distributes such works under an Open Source or Free Software License or

(b) includes in such works a Conformance Attestation in a manner specified by XDI.ORG in the Technical Specifications.

5. **Reciprocal licensing.** Licensee shall grant XDI.ORG or its delegate a reciprocal, fully paid-up, irrevocable, royalty-free, worldwide, non-exclusive license (including the right to grant sublicenses) to make, have made, use, import, sell, offer to sell, and otherwise distribute or dispose of works patented by Licensee, and to use, copy, modify, and distribute any works covered by Licensee's copyright or other Intellectual Property Rights apart from patents, to the extent that such works are necessary to implement the Technical Specifications or the Global Service Specifications. Licensees that grant XDI.ORG reciprocal licenses under this section shall be entitled to notice from XDI.ORG in the event that XDI.ORG decides not to pay maintenance fees on the Patent Rights as they come due or otherwise allow the Patent Rights to lapse.

6. **Assignment and succession.** This License is intended to bind successors and assigns, and XDI.ORG and Licensee shall take commercially reasonable steps to ensure that their respective successors and assigns are notified of their rights and obligations under this License.

7. **Sublicensing.** Licensees shall be permitted to sublicense the rights granted hereunder to third parties on the condition that said third party is provided with a copy of this license and agrees to the same terms and conditions.

8. **Notice to third parties.** In the event that Licensee distributes to third parties a copy of all or a portion of this Work, separately or incorporated into another work, Licensee shall conspicuously include the following with every copy:

8.1. The IPR notices found on the Work as published by XDI.ORG.

8.2. The full text of this License (or a hyperlink to the full text of this License, if the copy is distributed by Internet).

8.3. Attribution, in a derivative work, of XDI.ORG as a source of software, documents, or other items, with a URL or hyperlink to XDI.ORG's website (currently found at www.xdi.org).

8.4. A Conformance Attestation if required per section (4).

Copyright © 2004 XDI.ORG. All rights reserved.

CORD141239

**Confidential**

9. **Disclaimer of warranties and liabilities.**

9.1. THIS WORK IS PROVIDED "AS IS," AND XDI.ORG MAKES NO REPRESENTATIONS OR WARRANTIES, EXPRESS OR IMPLIED, INCLUDING BUT NOT LIMITED TO WARRANTIES OF MERCHANTABILITY OR FITNESS FOR ANY PARTICULAR PURPOSE, WARRANTIES OF SYSTEM INTEGRATION, DATA ACCURACY, OR QUIET ENJOYMENT, OR WARRANTIES THAT THE USE OF THE WORK WILL NOT INFRINGE ANY THIRD-PARTY PATENTS, COPYRIGHTS, TRADEMARKS, OR OTHER RIGHTS.

9.2. XDI.ORG WILL NOT BE LIABLE FOR ANY DIRECT, INDIRECT, SPECIAL, OR CONSEQUENTIAL DAMAGES ARISING OUT OF ANY USE OF OR RELIANCE ON THE WORK.

10. **Trademark and publicity.** Apart from the notices required herein, Licensee shall not use the XDI.ORG name and trademarks in advertising or publicity without specific, written prior permission.

11. **Indemnification.** Licensee shall defend, indemnify and hold XDI.ORG harmless from and against any and all actions, suits, or proceedings ("Claims") resulting in any losses, damages, judgments, awards, settlements, or expenses (including reasonable attorney's fees) (collectively, "Liabilities") arising from any breach of Licensee's obligations under this License.

12. **Term.** The license granted herein shall commence when licensee first obtains this Work and thereafter continue in each jurisdiction throughout the world for the statutory duration of the Patent Rights or other IPRs covered by this License in any such jurisdiction, unless earlier terminated in accordance with the terms hereof.

13. **Termination.** In addition to any other available legal or equitable remedies, XDI.ORG may terminate the license granted herein if Licensee is in breach or default of any of the material terms and conditions of this Agreement, provided that Licensee shall not have cured (if capable of being cured) such breach or default within thirty (30) cumulative days after receipt of such notice. Please note that under the terms of XDI.ORG's license from Cordance under the Patent Rights, any termination of XDI.ORG's license shall not affect XDI.ORG's sublicenses, which are to be automatically assigned to Cordance or to a non-profit organization operating for the benefit of the XDI Community.

14. **General Terms.**

14.1.   *Governing Law*:  This License shall be construed and controlled by the laws of the State of Washington without reference to conflict of laws principles.

14.2.   *Jurisdiction*:  The parties agree that all disputes arising in any way out of this License shall be heard exclusively in, and all parties irrevocably consent to

Copyright © 2004 XDI.ORG. All rights reserved.

CORD141240

**Confidential**

jurisdiction and venue in, the United States District Court for the Western District of Washington or in King County Superior Court.

14.3.     *Not Partners:*   The parties hereto are independent entities and are not partners or joint venturers with each other.

*Exhibits:* The following Exhibits are attached hereto and incorporated by reference:
Exhibit A (Definitions).

Copyright © 2004 XDI.ORG.  All rights reserved.

CORD141241

Confidential

**EXHIBIT A - DEFINITIONS**

1. <u>Conformance Attestation</u> – As specified in the Technical Specifications, a collection of assertions in machine-readable XDI format (and including or linked to an equivalent human-readable format) by a licensee of conformance to the Technical Specifications, including identification of the version(s) of the Technical Specifications implemented, the features implemented, the interoperability testing performed, or other such assertions as may be determined from time to time by XDI.ORG to be in the best interests of the XDI Community to ensure the interoperability and integrity of XDI infrastructure.

2. <u>Designated Global Services</u> – I-Name Services, I-Number Services, Directory Services, Reputation Services, and Public Resolver Services as defined herein.

3. <u>Directory Services</u> – The Global Service of cross-referencing XRIs and XDI Resources in order to facilitate discovery, identification, and location of an XDI Resource by its associated XDI Resources. There are three Global Directory Services: Personal Directory Service, Organizational Directory Service, and General Directory Service.

4. <u>Field of Use</u> - The development and exploitation of computer programs to the extent that they conform to the Technical Specifications as first delivered and/or subsequently modified.

5. <u>General Dictionary</u> - The collection of XDI Resources representing General Resources and their definitions and relationships in taxonomies and ontologies as established and maintained by XDI.ORG to facilitate global data sharing by all members of the XDI Community.

6. <u>General Resource</u> – An XDI Resource that represents a generic concept, subject, or topic whose identity is defined by linguistic, cultural, or scientific convention.

7. <u>General Service</u> – A Global Service for General Resources identified using the Global Context Symbol "+".

8. <u>Global Context Symbols (GCS)</u> – As defined in the XRI Specifications, the XRI syntax characters specified to represent abstract global context of an identifier, specifically "=" for personal identifiers, "@" for organizational identifiers, "+" for general identifiers, "$" for specification identifiers, and "!" for independent identifiers.

9. <u>Global Service Provider (GSP)</u> - An entity authorized by XDI.ORG to provide and to contract for the provision of Global Services.

10. <u>Global Service Specifications</u> - The specifications published by XDI.ORG governing the operation of each Global Service, including the specifications for Conformance Attestations and other mechanisms for ensuring interoperability, to be initially provided to XDI.ORG, in each case, by the primary GSP for the applicable Global

Copyright © 2004 XDI.ORG. All rights reserved.

CORD141242

**Confidential**

Service prior to the commencement of such Global Service, and to be maintained by XDI.ORG as a service to the XDI Community.

11. Global Services - The set of XDI interactions that shall be offered by XDI.ORG to all members of the XDI Community to facilitate interoperability of XDI infrastructure, including but not limited to the Designated Global Services.

12. I-Broker – A provider of XDI services.

13. I-Name Services – The Global Service of registering, reserving, reassigning, and resolving reassignable XRIs via Registries represented by the Global Context Symbols as defined by the XRI specifications. There are three Global I-Name Services: Personal I-Name Service, Organizational I-Name Service, and General I-Name Service.

14. Independent I-Number – A persistent XRI assigned to identify an XDI Resource independent of another GCS context.

15. Independent I-Number Service – An I-Number Service for Independent I-Numbers assigned using the Global Context Symbol "!".

16. Intellectual Property Rights - All rights in patent, trademark, copyright, trade secret and know-how.

17. I-Number Services – The Global Service of registering, resolving, and retiring persistent XRIs via Registries represented by the Global Context Symbols as defined by the XRI specifications. There are four Global I-Number Services: Personal I-Number Service, Organizational I-Number Service, General I-Number Service, and Independent I-Number Service.

18. OASIS – The Organization for the Advancement of Structured Information Standards, a non-profit standards body for XML e-business standards. See http://www.oasis-open.org.

19. Open Source or Free Software License - A license certified by the Open Source Initiative (www.opensource.org) or the Free Software Foundation (www.fsf.org) or any equivalent license that does not restrict the open public review, modification, distribution, and evolution of the source code of a product or service.

20. Open Standard — As defined on September 13, 2004 at http://www.perens.com/OpenStandards/Definition.html, a specification whose licensing ensures that it is publicly available to implement, that it maximizes end-user choice of vendors and implementations, that it does not require a royalty or fee to implement with the potential exception of compliance certification, that it does not discriminate against vendors or implementations, and that it permits extensions or subsets that are consistent with the standard yet may preclude predatory "embrace and enhance" practices.

Copyright © 2004 XDI.ORG.  All rights reserved.

CORD141243

Confidential

21. <u>Organizational Resource</u> - An XDI Resource representing any legal entity or mark that does not represent a Personal Resource or a General Resource.

22. <u>Organizational Service</u> – A Global Service for Organizational Resources identified using the Global Context Symbol "@".

23. <u>Patent Rights</u> -  (1) United States letter of patent issued under numbers 5,862,325; 6,044,205; 6,088,717, 6,345,288, and 6,757,710; (2) any and all United States or foreign letter of patent, utility models and/or application therefore, claiming priority, in whole or in part, from any of the letters of patent identified herein in (1) of this definition; (3) any and all divisionals, continuations, continuations in part, continued prosecution applications, reexamination, reissues, additional or extension of any of the letters of patent or utility models identified herein in (1) and (2) of this definition.

24. <u>Personal Resource</u> – An XDI Resource representing a natural-born person.

25. <u>Personal Service</u> – A Global Service for Personal Resources identified using the Global Context Symbol "=".

26. <u>Public Resolver Services</u> – The Global Service of providing XRI resolution of globally-registered XRIs via one or more publicly available network endpoints. There are two Global Public Resolver Services: Standard Public Resolver Service, which provides resolution service conformant to the XRI Generic Syntax and Resolution Specification, and Trusted Public Resolver Service, which provides resolution service conformant to the XRI Trusted Resolution Specification.

27. <u>Registrant</u> - A member (individual or organization) of the XDI Community that enrolls with a Registrar to obtain Global Services.

28. <u>Registrar</u> - An I-Broker registered with a Global Service Provider to provide the service of enrolling Registrants to obtain Global Services for which registration is required.

29. <u>Registry</u> – The XDI Resource maintained by a Global Service Provider to provide Global Services requiring registration and resolution of XRIs.

30. <u>Reputation Services</u> – The Global Service of aggregating feedback on XDI Resources by other XDI Resources to enable discovery, identification, location, and evaluation of a Resource by its reputation. There are three Global Reputation Services: Personal Reputation Service, Organizational Reputation Service, and General Reputation Service.

31. <u>Resource</u> – As defined in the OASIS XRI Generic Syntax and Resolution Specification 1.0, "anything that can be named or described."

32. <u>Technical Specifications</u> - The specifications defining and governing the interoperability and integrity of XDI infrastructure, including the XDI Specifications, the specifications for Conformance Attestations, and any other specifications

Copyright © 2004 XDI.ORG. All rights reserved.

CORD141244

**Confidential**

designated from time to time by XDI.ORG and subsequently modified, amended, revised or enhanced in accordance with the terms set forth in this Agreement.

33. XDI – XRI Data Interchange as defined by the XDI Specifications.

34. XDI Community – The users and providers of XDI infrastructure.

35. XDI Resource – A Resource identified with at least one XRI that supports interactions via XDI.

36. XDI Specifications – The Open Standard specifications for a generalized, extensible service for identifying, addressing, sharing, linking, and synchronizing XDI Resources as designated from time to time by XDI.ORG; currently the specifications published by the OASIS XDI Technical Committee.

37. XNS – Extensible Name Service, the name used for the first set of Technical Specifications submitted by OneName (predecessor to CORDANCE) to XNSORG (predecessor to XDI.ORG).

38. XNS Public Trust Organization (XNSORG) – The original legal name for XDI.ORG and its successors in interest.

39. XRI – An Extensible Resource Identifier as defined by the XRI Specifications.

40. XRI Specifications – The Open Standard specifications for abstract identifiers used by XDI technology as designated from time to time by XDI.ORG; currently the specifications published by the OASIS XRI Technical Committee.

Copyright © 2004 XDI.ORG. All rights reserved.

CORD141245

**Confidential**

# EXHIBIT C

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| CORDANCE CORPORATION, | ) | |
| | ) | |
| Plaintiff | ) | C.A. No. 06-491-MPT |
| | ) | |
| v. | ) | |
| | ) | |
| AMAZON.COM, INC. and | ) | |
| AMAZON WEB SERVICES, LLC, | ) | |
| | ) | |
| Defendants. | ) | |

## CORDANCE'S RESPONSES TO
## AMAZON'S FOURTH SET OF INTERROGATORIES

Plaintiff Cordance Corporation ("Cordance" or Plaintiff) hereby responds to Amazon.com, Inc.'s and Amazon Web Services, LLC's ("Amazon" or Defendant) Fourth Set of Interrogatories.

## GENERAL OBJECTIONS

Cordance objects to the Interrogatories to the extent that they:

1.      Are directed to matters which are not relevant to the subject matter at issue in this action and not reasonably calculated to lead to the discovery of admissible evidence;

2.      Seek information and/or identification of documents that are subject to the attorney-client privilege, constitute work product, or are otherwise immune from discovery; if and to the extent that any documents or information are identified, disclosed, or produced which are so privileged or immune, said identification, disclosure, or production is inadvertent, and is made without any waiver of or intent to waive any privilege or immunity, and the return and non-use of said materials is requested;

3.      Seek information and/or identification of documents already known to Defendant, in Defendant's possession, or available from public sources;

4.      Seek information not within the possession, custody or control of Plaintiff or that has not been located after a reasonable search;

5.      Are overly broad, unduly burdensome and/or oppressive, and/or seek documents already in Defendant's possession; or

6.      Impose a burden beyond that imposed by the Federal Rules or the Delaware Local Rules.

These general objections are hereby explicitly incorporated by reference into each of the following responses.

## INTERROGATORIES

INTERROGATORY NO. 20

To the extent that you contend that any **Asserted Claim** of any of the **Patents-in-suit** is not anticipated by or rendered obvious by the **Prior Art References,** provide the full factual and legal basis for your contention, including for each **Asserted Claim**; (i) identify each claim limitation you contend is not present in the **Prior Art References,** alone or in combination, (ii) identify all differences which you contend are present and on which you intend to rely between each of the **Prior Art References,** alone or in combination, and each asserted claim of each of the **Patents-in-suit,** (iii) for each combination of **Prior Art References** which you contend is not a valid combination for purposes of 35 U.S.C. § 103 ("Section 103"), and for which you intend to rely on an argument that such **Prior Art References** are not properly combined under Section 103, describe in detail your contentions regarding why said prior art references cannot be properly combined under Section 103; and (iv) for each **Asserted Claim** you contend is non-

obvious under Section 103, provide the full factual and legal basis for such contention, including identifying the full factual and basis for any contention you have that a person of ordinary skill in the field would not have been prompted to combine the elements or concepts from the prior art in the same way as in such **Asserted Claim,** any contention you have that market forces or other design incentives would not have led to any difference you contend exist between such **Asserted Claim** and the prior art; any contention you have that any change you contend the **Asserted Claim** represents from the prior art was not the predictable result of using prior art elements according to their known functions.

ANSWER TO INTERROGATORY NO. 20

     Cordance objects to this interrogatory as overbroad and unduly burdensome.  Amazon has identified a large number of prior art references, but Amazon has provided only a superficial explanation as to how any of the references purportedly invalidate any of Cordance's claims in its invalidity contentions.  Additionally, Amazon has only alleged obviousness generally and has not identified any particular combination of references that would purportedly render obvious any of Cordance's claims.  Until Amazon identifies the prior art references that it will be relying on in support of its invalidity allegations and until Amazon provides a detailed explanation as to how this prior art purportedly invalidates any of Cordance's claims, it is unduly burdensome for Cordance to review the large number of prior art references identified by Amazon.

     Cordance further objects to this interrogatory as Amazon bears the burden of proof to show by clear and convincing evidence that any of Cordance's claims are invalid, which analysis Amazon has not yet performed, and Cordance does not bear any burden to show the validity of its claims.

Cordance will supplement its response once Amazon has identified the prior art on which it intends to rely and provides a detailed explanation as to how the prior art purportedly invalidates any of Cordance's claims. Should Amazon first provide detailed invalidity allegations in an expert report, Cordance will provide a rebuttal expert report concerning the validity of Cordance's claims over the prior art identified by Amazon.

INTERROGATORY NO. 21

For each **Asserted Claim** of each of the **Patents-in-suit** you contend was non-obvious, identify what you contend was the scope and content of the prior art to such claim, identify what you contend was the level of skill in the art for such claim, and, if you contend that there are any objective indicia of non-obviousness of such **Asserted Claim** identify all facts, testimony, documents, or other evidence on which you intend to rely in support of such contention, specifically identifying for each of the foregoing to whether **you** contend (and the full factual and legal basis for such contention) it indicates (1) commercial success of a product due to the merits of the claimed invention, (2) a long felt need for the solution provided by the claimed invention, (3) unsuccessful attempts by others to find the solution provided by the claimed invention, (4) copying of the claimed invention by others, (5) unexpected and superior results from the claimed invention, (6) acceptance by others of the claimed invention as shown by praise from others in the field or from the licensing of the claimed invention, (7) other evidence tending to show nonobviousness.

ANSWER TO INTERROGATORY NO. 21

Cordance objects to this interrogatory as vague and ambiguous as the meaning of "the scope and content of the prior art to such claim" is unclear. Amazon is apparently asking

Cordance to identify the content of all prior art to Cordance's claims, which is an impossible task.

Cordance objects to this interrogatory as overbroad and unduly burdensome. Amazon has identified a large number of prior art references, but Amazon has provided only a superficial explanation as to how any of the references purportedly invalidate any of Cordance's claims in its invalidity contentions. Additionally, Amazon has only alleged obviousness generally and has not identified any particular combination of references that would purportedly render obvious any of Cordance's claims. Until Amazon identifies the prior art references that it will be relying on in support of its invalidity allegations and until Amazon provides a detailed explanation as to how this prior art purportedly invalidates any of Cordance's claims, it is unduly burdensome for Cordance to review the large number of prior art references identified by Amazon.

Cordance further objects to this interrogatory as Amazon bears the burden of proof to show by clear and convincing evidence that any of Cordance's claims are invalid, which analysis Amazon has not yet performed, and Cordance does not bear any burden to show the validity of its claims.

Cordance will supplement its response once Amazon has identified the prior art on which it intends to rely and provides a detailed explanation as to how the prior art purportedly invalidates any of Cordance's claims. Should Amazon first provide detailed invalidity allegations in an expert report, Cordance will provide a rebuttal expert report concerning the validity of Cordance's claims over the prior art identified by Amazon.

INTERROGATORY NO. 22

Provide the full basis for why the **Asserted Claims** in the '710 Patent were not presented for examination in both February 1996 and September 1996, and for all periods after each of

these dates until such claims were presented for examination, provide the full factual and legal

basis for any contention you have for excusing the delay in presenting such claims, including for

every portion of such periods, an explanation of a reason or reasons for the delay in such portion

and the basis for any contention you have why delay in such portion was reasonable.

ANSWER NO. 22

Cordance objects to this interrogatory as vague and ambiguous as the meaning of "all

periods after each of these dates" and "portion of such periods" is unclear.  The interrogatory

does not explain what such "periods" are and as no other dates are mentioned, there is apparently

only one time period after September 1996.

Cordance objects to this interrogatory as vague and ambiguous as the meaning of "the

full factual and legal basis for any contention you have for excusing the delay in presenting such

claims" is unclear.  The interrogatory does not state any legal principle so Cordance cannot

provide a legal basis for any action, and also cannot specify any factual basis as it relates to some

unspecified legal principle.

Cordance objects to this interrogatory as vague and ambiguous as the meaning of

"excusing the delay in presenting such claims" and "reasonable" is unclear.  The interrogatory

implies that Cordance is somehow culpable for the date of filing the claims of the '710 Patent,

but does not provide any legal theory as to how Cordance is at fault.  Cordance does not

understand what it needs to excuse and under what standard its actions would be reasonable.

INTERROGATORY NO. 23

Describe any license, offer to license or any other transfer of rights related to any of the

**patents-in-suit** and/or the invention(s) described and claimed therein, including without

limitation the term of such license or other transfer, the royalty rate contained in such license or

other transfer, the circumstances and facts surrounding and relating to any such license, offer or transfer including but not limited to the persons or entities to whom such license or transfer was offered or granted.

ANSWER NO. 23

Cordance objects to this interrogatory as unduly burdensome to the extent it asks Cordance to describe any and all offers relating to its patents.

Documents relating to an offer to license or transfer rights relating to Cordance's patents include at least the document beginning with production number CORD119189. Documents relating to licenses to Cordance's patents include at least the documents beginning with the following production numbers: CORD149375, CORD035593, CORD080478, CORD046270, CORD046272, CORD046274, CORD80498, CORD060458, CORD123487, and CORD146742. Cordance reserves the right to provide additional evidence of any license, offer to license or any other transfer of rights related to any of its patents.

INTERROGATORY NO. 24

**Identify** each product that has ever been marked with the patent numbers of any of the **patents-in-suit**, including the date when such marking was first made, the date on which such marking stopped (whether temporarily or permanently), and the patent number or numbers marked, identify all documents or things that you contend provide evidence of such marking, and identify all persons with knowledge concerning such facts (specifically identifying the person or persons most knowledgeable).

ANSWER NO. 24

Cordance objects to this interrogatory as overbroad and unduly burdensome to the extent that it asks that Cordance identify all documents or things that provide evidence of marking and all persons with knowledge of the marking.

The Extensible Name Service Platform and the OneName Identity Server were marked with the patent numbers of at least U.S. Patent Nos. 6,044,205, 5,862,325, and 6,088,717. Evidence of the marking includes the documents beginning with the following production numbers: CORD041407, CORD041493, CORD041519, CORD041530, CORD060438, CORD060458, CORD060515, CORD080478, CORD141400, CORD141731, CORD141732, CORD141741, CORD146841, CORD147313, CORD147418, CORD147466, CORD148478, CORD149375, CORD149582, CORD149612, CORD149785, CORD149837, CORD149880, CORD149925, CORD149974, CORD150019, CORD150064, CORD150111, CORD150158, CORD150206, CORD150394, CORD150636, CORD150748, CORD150796, CORD150844, CORD151033, CORD151097, CORD152024, CORD152043, CORD152062, CORD153126, CORD153148, CORD155070, CORD155222, CORD155345, CORD155359, CORD155372, CORD155379, CORD155434, CORD155584, CORD155736, CORD155925, CORD156131, CORD156251, CORD156307, CORD156459, CORD156494, CORD156531, CORD156773, and CORD156895.  Cordance reserves the right to provide additional evidence concerning the marking of any product with the patent numbers of the Cordance patents.

The Extensible Name Service Platform and the OneName Identity Server were marked with the patent numbers during development and marking continued through the lifetime of the products.

Persons with knowledge of the facts concerning the marking of products with the patent numbers of any of Cordance's patents include Drummond Reed and former employees of OneName and XNSORG.

INTERROGATORY NO. 25

Describe in detail the basis for **your** contention that **you** are entitled to a permanent injunction, including all facts, evidence and support upon which **you** intend to rely to support **your** contention.

ANSWER NO. 25

Cordance objects to this interrogatory as overbroad and unduly burdensome to the extent that it asks that Cordance identify all facts and evidence that support a finding that Cordance is entitled to a permanent injunction against Amazon. Cordance also objects to this interrogatory on the ground that Amazon has failed to produce documents relating to the value or importance of its 1-click and feedback technologies despite being under a court order to do so. Cordance reserves the right to supplement the factual and legal basis for its contention that it is entitled to a permanent injunction.

Amazon's own experience with 1-click technology demonstrates the value of exclusivity in the ability to practice the invention. Amazon has acted aggressively to prevent its competitors from implementing a 1-click shopping method, and by preventing its competitors from doing so, Amazon has been able grow its business faster than its competitors. If Amazon is allowed to continue practicing the invention, Cordance will be unable to grant an exclusive license, and Cordance will inevitably see a decreased market value for patent licensing. The fact that Cordance may not currently have a product that is covered by its patents does not prevent it from obtaining injunctive relief. eBay Inc. v. MercExchange, L.L.C., 547 U.S. 388, 393 (2006)

(finding that non-practicing entities may be entitled to a permanent injunction); <u>see also</u>

<u>Commonwealth Scientific and Indus. Research Org. v. Buffalo Tech.</u>, 492 F. Supp. 2d 600, 604

(E.D. Tex. 2007) (hereafter "CSIRO") (granting a permanent injunction to a non-practicing

entity); <u>Novozymes A/S v. Genencor Int'l., Inc.</u>, 474 F. Supp. 2d 592, 612 (D. Del. 2007)

(finding irreparable harm because of value of exclusive license; <u>Trading Techs. Int'l. v. eSpeed,</u>

<u>Inc.</u>, 2008 WL 4531371, at *4 (N.D. Ill. 2008) (stating "that if an injunction is not issued [the

patentee] will be forced into a compulsory licensing agreement ..., one that does not contain the

myriad protections that a licensing agreement would normally possess").

Further, Cordance's current business is providing identity services through what are

called "i-names." The services available to users of i-names include a single sign-on service that

allows a customer to use a single i-name and password to log into many different web sites. As

Amazon requires users to sign-on to its website but does not allow the use of i-names, Amazon's

website interferes with the ability of Cordance to promote its i-names services. Patentees suffer

irreparable harm when the appropriation of the patented invention interferes with their business

in related markets, even when the patentee is not practicing the invention. <u>See Broadcom Corp.</u>

<u>v. Qualcomm Inc.</u>, 543 F.3d 683, 702-03 (Fed. Cir. 2008).

Violation of a patentee's statutory right to exclude cannot be quantified in money

damages and weighs in favor of an injunction. <u>Martek Biosciences Corp. v. Nutrinove Inc.</u>, 520

F. Supp. 2d 537, 558-59 (D. Del. 2007). In addition to giving up exclusivity, a compulsory

license does not include the nonmonetary terms that are essential to protecting a patentee's

rights. <u>See CSIRO</u>, 492 F. Supp. 2d at 606. In addition, Amazon took Cordance's rightful

recognition as an innovator by claiming one-click technology as its own invention. The loss of

recognition as an innovator and the business opportunities that flow therefrom cannot be

compensated with money damages.  See Trueposition Inc. v. Andrew Corp, 568 F.Supp.2d 500, 532 (D. Del. 2008).

The District of Delaware has recognized the serious hardship imposed upon a patentee through the loss of the right to exclude.  Callaway Golf Co. v. Acushnet Co., 2008 WL 4850755, at *16 (D. Del. 2008).  Amazon can easily disable its infringing features, and in any event the courts do not bend over backwards to make life easy for infringers.  See id.  After all, "one who elects to build a business on a product found to infringe cannot be heard to complain if an injunction against continuing infringement destroys the business so elected."  Broadcom, 543 F.3d at 704, quoting Windsurfing Int'l, Inc. v. AMF, Inc., 782 F.2d 995, 1003 n.12 (Fed. Cir. 1986).

The public interest is served by the enforcement of patent rights.  Indeed, "it is almost redundant to note the substantial interest in enforcing valid United States patents."  Martek Biosciences, 520 F. Supp. 2d at 559.  In the absence of evidence of harm to the public, this factor favors an injunction.  Novozymes, 474 F. Supp. 2d at 613.  Purported "harms" such as customer disappointment or inconvenience are inadequate to counter the "strong public policy favoring the enforcement of patent rights."  Callaway Golf, 2008 WL 4850755, at *16.

ASHBY & GEDDES

Steven J. Balick (I.D. #2114)
John G. Day (I.D. #2403)
Tiffany Geyer Lydon (I.D. #3950)
Lauren E. Maguire (I.D. #4261)
500 Delaware Avenue, 8th Floor
P.O. Box 1150
Wilmington, DE 19899
Telephone: (302) 654-1888
Facsimile: (302) 654-2067

*Attorneys for Plaintiff Cordance Corporation*

*Of Counsel:*

Michael A. Albert
Robert M. Abrahamsen
Jeffrey C. O'Neill
WOLF, GREENFIELD & SACKS, P.C.
600 Atlantic Avenue
Boston, Massachusetts 02210
Telephone: (617) 646-8000
Facsimile: (617) 646-8646
malbert@wolfgreenfield.com
rabrahamsen@wolfgreenfield.com
joneill@wolfgreenfield.com

Dated: December 3, 2008

## JURAT

On behalf of the Plaintiff, I have read the foregoing responses to interrogatories. Said responses were prepared by or with the assistance of agents, employees, and/or representatives of Plaintiff and/or others believed to have relevant information, and with the assistance and advice of counsel, upon which I have relied. The responses set forth herein, subject to inadvertent or undiscovered errors or omissions, are based on and therefore necessarily limited by the records and information still in existence, presently recollected, thus far discovered in the course of the preparation of these responses, and currently available to Plaintiff. Consequently, Plaintiff reserves the right to make any changes in or additions to any of these responses if it appears at any time that errors or omissions have been made therein or that more accurate or complete information has become available. Subject to the limitations set forth herein, the said responses are true to the best of my present knowledge, information and belief. I certify under penalty of perjury on behalf of Plaintiff that the foregoing is true and correct.

Signed:

Drummond Reed, CTO
Cordance Corporation
3020 Issaquah – Pine Lake Rd. SE, No. 74
Sammamish, WA 98075

13

## CERTIFICATE OF SERVICE

I hereby certify that on the 3rd day of December, 2008, the attached **CORDANCE'S**

**RESPONSES TO AMAZON'S FOURTH SET OF INTERROGATORIES** was served upon

the below-named counsel of record at the addresses and in the manner indicated:

Richard L. Horwitz, Esquire                              HAND DELIVERY
Potter Anderson & Corroon LLP
Hercules Plaza, 6th Floor
1313 North Market Street
Wilmington, DE  19801

Lynn H. Pasahow, Esquire                              VIA ELECTRONIC MAIL
Fenwick & West LLP
801 California Street
Mountain View, CA  94041

Lauren E. Maguire

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| CORDANCE CORPORATION, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 06-491-MPT |
| | ) | |
| AMAZON.COM, INC. and | ) | |
| AMAZON WEB SERVICES, LLC, | ) | |
| | ) | |
| Defendants. | ) | |

## NOTICE OF SERVICE

The undersigned hereby certifies that on the 3rd day of December, 2008, **CORDANCE'S**

**RESPONSES TO AMAZON'S FOURTH SET OF INTERROGATORIES** was served upon

the following counsel of record at the address and in the manner indicated:

Richard L. Horwitz, Esquire                           HAND DELIVERY
Potter Anderson & Corroon LLP
Hercules Plaza, 6th Floor
1313 North Market Street
Wilmington, DE  19801

Lynn H. Pasahow, Esquire                              VIA ELECTRONIC MAIL
Fenwick & West LLP
801 California Street
Mountain View, CA  94041

ASHBY & GEDDES

/s/ Lauren E. Maguire
_____
Steven J. Balick (I.D. #2114)
John G. Day (I.D. #2403)
Tiffany Geyer Lydon (I.D. #3950)
Lauren E. Maguire (I.D. #4261)
500 Delaware Avenue, 8th Floor
P.O. Box 1150
Wilmington, DE 19899
(302) 654-1888
sbalick@ashby-geddes.com
jday@ashby-geddes.com
tlydon@ashby-geddes.com
lmaguire@ashby-geddes.com

*Attorneys for Plaintiff*
*Cordance Corporation*

*Of Counsel:*

Michael A. Albert
Robert M. Abrahamsen
Jeffrey C. O'Neill
WOLF, GREENFIELD & SACKS, P.C.
600 Atlantic Avenue
Boston, Massachusetts 02210
(617) 646-8000

Dated: December 3, 2008

## CERTIFICATE OF SERVICE

I hereby certify that on the 3rd day of December, 2008, the attached **NOTICE OF SERVICE** was served upon the below-named counsel of record at the addresses and in the manner indicated:

Richard L. Horwitz, Esquire                          BY HAND DELIVERY
Potter Anderson & Corroon LLP
Hercules Plaza, 6th Floor
1313 North Market Street
Wilmington, DE 19801

Lynn H. Pasahow, Esquire                             VIA ELECTRONIC MAIL
Fenwick & West LLP
801 California Street
Mountain View, CA 94041


/s/ Lauren E. Maguire
_____
Lauren E. Maguire

# EXHIBIT D

# XDI.ORG  INTELLECTUAL PROPERTY RIGHTS AGREEMENT

1. Parties.

THIS AGREEMENT, dated September 13, 2004 (the "Effective Date") is made by and between OneName Corporation, a Washington corporation dba Cordance ("CORDANCE"), with its principal place of business in Seattle, Washington, and XDI.ORG, a nonprofit corporation ("XDI.ORG").

2. Background.

    2.1 CORDANCE has the exclusive right to certain technology (the "Patent Rights"), which are the subject of earlier agreements between the Parties.  This Agreement supersedes all prior agreements, including the XNS™ INTELLECTUAL PROPERTY RIGHTS AGREEMENT dated July 9, 2002 between OneName Corporation and XNS Public Trust Organization and the XDI.ORG INTELLECTUAL PROPERTY RIGHTS AGREEMENT dated June 8, 2004 between OneName Corporation and XDI.ORG.

    2.2 As a result of earlier agreements between the parties, the Patent Rights have been embodied in a set of evolving Technical Specifications for practicing the Patent Rights using open, interoperable technical standards. These Technical Specifications include but are not limited to the XNS specifications published by XDI.ORG, the XRI specifications published by the OASIS XRI Technical Committee, and the XDI specifications published by the OASIS XDI Technical Committee.

    2.3 CORDANCE desires to make the Patent Rights necessary to implement the Technical Specifications available and accessible to the Internet community.

    2.4 The underlying purpose of this agreement is to facilitate and promote the widespread adoption of XDI infrastructure by making it available as an Open Standard, and also to ensure that said Open Standard is protected from "embrace and enhance" strategies.

    2.5 The parties believe that XDI infrastructure should be governed by the users and providers of such an infrastructure (the "XDI Community").

    2.6 The parties believe that XDI.ORG, as an independent non-profit international organization acting in the XDI Community interest, can best serve in this capacity.

    2.7 XDI.ORG is committed to perform the activities necessary to serve the XDI Community in this capacity.

CORD141208

**Confidential**

2.8  XDI.ORG requires certain rights and permissions from CORDANCE in order to carry out these activities.

NOW THEREFORE, in consideration of the above premises, which are hereby incorporated by this reference, and the mutual covenants and agreements set forth herein, CORDANCE and XDI.ORG also AGREE AS FOLLOWS:

3.  Definitions.

All terms presented that are capitalized in this Agreement and not otherwise defined are defined in Exhibit A attached hereto and incorporated herein.  The Definitions contained in this Agreement supersede any previous definitions in any previous Agreements between the parties.

4.  Intellectual Property Rights Grants.

4.1  Patent License: Effective as of the Effective Date of this Agreement, CORDANCE hereby grants to XDI.ORG a fully paid-up, royalty-free, worldwide, exclusive license to and under the Patent Rights within the Field of Use to make, have made, use, import, sell, offer to sell, and otherwise distribute or dispose of products and services, and to sublicense others to do so as further specified in section 7 below; provided that CORDANCE  retains the right to take legal action against any infringer.  CORDANCE does not grant XDI.ORG a license to any Patent Rights outside the Field of Use.  XDI.ORG grants to CORDANCE a fully paid-up, royalty-free, worldwide, non-exclusive license to and under the Patent Rights within the Field of Use to make, have made, use, import, sell, offer to sell, and otherwise distribute or dispose of CORDANCE products and services, subject to the same sublicensing terms and conditions set forth for third parties in section 7, below.

4.2  Copyright Assignment: CORDANCE hereby assigns to XDI.ORG any and all interest in the copyrights for the Technical Specifications created by CORDANCE.

4.3  Trademark Assignment: CORDANCE hereby assigns to XDI.ORG any and all rights to the marks: XNS, I-NAME, I-NUMBER, and I-BROKER including any registration rights and all associated  goodwill.  During the Term, XDI.ORG shall use commercially reasonable efforts to register, maintain, police, and enforce its rights in such marks.

5.  Performance Obligations.

In consideration of the grants above, the continuing exploitation by XDI.ORG or its delegate of the rights and licenses under this License Agreement is expressly conditioned upon the performance of the following material obligations:

CORD141209

Confidential

5.1 XDI.ORG or its authorized delegate ("Delegate") shall publish and maintain the Technical Specifications and ensure interoperability between the Technical Specifications and the Global Service Specifications. Said Technical Specifications shall include a mechanism for sublicensees to make Conformance Attestations that ensure that consumers of XDI products and services may use XDI infrastructure itself to easily, quickly, and transparently discover said Conformance Attestations and evaluate the reputations of said products and services for interoperability.

5.2 XDI.ORG shall establish and manage XDI Global Services to facilitate interoperability between the members of the XDI Community, including:

> 5.2.1   Publishing and maintaining the Global Services Specifications;

> 5.2.2   Publishing and maintaining the General Dictionary;

> 5.2.3   Drafting, executing, implementing and enforcing third party agreements with GSPs (Global Service Providers) and Registrars in order to provide Global Services to the XDI Community;

> 5.2.4   Performing its material obligations under the Global Services Provider Agreement between XDI.ORG and CORDANCE (attached as Exhibit B hereto).

5.3 Subject to any lawful restrictions on sublicensing, XDI.ORG and any of its Delegates shall have the obligation to sublicense any and all of XDI.ORG's Intellectual Property Rights (including Intellectual Property Rights obtained from CORDANCE hereunder, Intellectual Property Rights obtained from third parties, and Intellectual Property Rights within the Field of Use developed independently by XDI.ORG or its Delegates) to implementers, GSPs, Registrars, Registrants, and others as required to implement the Technical Specifications, provide Global Services, and otherwise facilitate and maintain an open, interoperable XDI infrastructure.

5.4 XDI.ORG shall reimburse CORDANCE for its reasonable costs associated with maintenance fees for the Patent Rights within thirty (30) days of verification by CORDANCE of said costs. If such costs have not been reimbursed and CORDANCE owes amounts to XDI.ORG, CORDANCE may deduct such costs from such amounts due. If XDI.ORG or third-party licensees fail to reimburse said costs within ninety (90) days, CORDANCE may in its sole discretion allow the relevant patent to lapse. If CORDANCE elects not to maintain any patent under the Patent Rights, XDI.ORG shall have right to maintain such patent, and CORDANCE will take commercially reasonable steps (at the expense of XDI.ORG) to assist XDI.ORG in exercising this right.

CORD141210

**Confidential**

5.5  XDI.ORG shall at all times act in the best interests of the XDI Community, and shall specifically act to ensure interoperability of the Technical Specifications and Global Services among members of this community, including:

>   5.5.1    Adopting a governance model and methods of operation that reasonably represent the interests of all major constituents of the XDI Community, including implementers of the Technical Specifications, GSPs, Registrars, and Registrants;

>   5.5.2    Wherever possible, employing XDI technology and infrastructure itself to enable distributed self-governance, including delegating decisionmaking to the most relevant and affected parties;

>   5.5.3    Wherever possible, employing XDI-based feedback mechanisms to establish and maintain reputations and facilitate trust decisions;

>   5.5.4    Not discriminating against any members of the XDI Community who are in compliance with the terms and intent of this Agreement and any applicable sublicense;

>   5.5.5    Conducting its governance and operations transparently so as to maximize accountability and responsiveness to the XDI Community.

5.6  XDI.ORG and any of its Delegates shall remain non-profit organizations and shall not engage in the commercial exploitation of software or services related to the Patent Rights.

## 6.  Delegation.

XDI.ORG shall not delegate its obligations except as follows:

6.1  XDI.ORG may delegate its obligations under section 5.1 in whole or in part to one or more other qualified non-profit standards organizations provided such delegation can be reasonably shown to be in the best interests of the XDI Community.

6.2  XDI.ORG may delegate its obligations in 5.2.2 in whole or in part to one or more qualified non-profit organizations (including academic institutions) provided such delegation can be reasonably shown to be in the best interests of the XDI Community.

6.3  XDI.ORG may delegate its obligations under section 5.3 but only to the same entities to which it delegates its obligations under section 5.1 or 5.2.2.

In no event shall the delegation of obligations under this Agreement relieve XDI.ORG of the duty to perform such obligations.

CORD141211

**Confidential**

7. Sublicensing.

The licenses granted to XDI.ORG by CORDANCE shall include the right to grant sublicenses to third parties under the Patent Rights within the Field of Use to make, have made, use, import, sell, offer to sell, and otherwise distribute or dispose of products and services, only under the following conditions:

7.1  All sublicenses shall be granted on a fully paid-up, royalty free, worldwide, non-exclusive basis.

7.2  All sublicenses shall be valid only for implementations of the Patent Rights conformant with the Technical Specifications in effect at the time of said implementation.

7.3  All sublicenses for products not distributed under an Open Source or Free Software License shall require that the licensee make a Conformance Attestation in a manner specified by XDI.ORG in the Technical Specifications.

7.4  All sublicenses granted by XDI.ORG or its Delegate shall require said sublicensee to grant a reciprocal irrevocable, fully paid-up, royalty-free, worldwide, non-exclusive license (including the right to grant sublicenses within the Field of Use) to XDI.ORG or its Delegate to any of said sublicensees' existing and future Intellectual Property Rights covering subject matter essential to implement the Technical Specifications in effect at the time of such sublicense.

7.5  Any termination of the license granted by CORDANCE to XDI.ORG hereunder shall not affect any sublicenses granted in accordance with the terms hereof that are in effect as of the date of any such termination, which sublicenses shall remain in effect and be automatically assigned to CORDANCE or, as delegated by CORDANCE, to another similarly situated non-profit organization operating solely for the benefit of the XDI Community as provided in section 13.3. below.

7.6  Upon entry of a final judgment of infringement of the Patent Rights, any sublicense granted to the entity determined to have infringed shall be immediately void.   Reversal on appeal of the judgment of infringement shall result in reinstatement of the sublicense.  The sublicense may otherwise be reinstated on conditions mutually acceptable as between XDI.ORG, the licensor and the infringer with the express purpose of preventing future infringement, preventing "embrace and enhance" tactics, and promoting the widespread deployment of XDI infrastructure.

CORD141212

Confidential

7.7  All sublicenses shall contain a provision that the sublicense is not a defense to a claim of infringement of the Patent Rights if some but not all of the material elements of an asserted patent claim are covered by the sublicense.

7.8  All sublicenses granted hereunder shall be consistent with the terms of this Agreement, and no sublicense shall purport to grant to any sublicensee rights that are broader than those permitted to be granted to all sublicensees hereunder.

7.9  XDI.ORG shall take all steps reasonably necessary to procure prompt performance by any sublicensee of its obligations as set forth in any applicable sublicense, including, without limitation, promptly taking all commercially reasonable  steps to enforce the terms of such sublicense and/or, if so requested by CORDANCE, assigning to CORDANCE its rights to enforce the terms of any such sublicense and providing all commercially reasonable assistance requested by CORDANCE in connection with such enforcement.

8.  Infringement.

In the event of any actual or potential infringement of the Patent Rights and other intellectual property rights licensed to XDI.ORG hereunder by any third party, CORDANCE or its assignee shall have the first right, but not the obligation, to institute suit against such actual or potential infringer and XDI.ORG shall reasonably cooperate with CORDANCE or its assignee in any such action.  Any recovery as a result of such action or proceeding shall be paid over to CORDANCE or its assignee.  In the event that XDI.ORG believes the Patent Rights are infringed by a third party, it shall provide written notice to CORDANCE, identifying the alleged infringer and articulating with reasonable specificity the nature of the infringement.  If, after ninety days after receipt of such notice, CORDANCE (either directly or through its assignee) fails to notify XDI.ORG that CORDANCE intends to institute suit against an actual or potential infringer, XDI.ORG may do so at its own election and expense, and any recovery as a result of such action or proceeding shall be divided and paid over in equal shares to CORDANCE and XDI.ORG, after the deduction of any expenses actually incurred by XDI.ORG in connection therewith.

9.  Transferability.

CORDANCE acknowledges that XDI.ORG is in the process of reincorporating in another jurisdiction.  XDI.ORG may assign and transfer the rights and obligations of this Agreement, in whole, to the newly reincorporated organization upon substantially the same conditions as stated below for the transfer of rights and obligations to a non-profit standards body.  XDI.ORG may also assign or transfer the licenses and assignments granted to it herein to another similarly situated non-profit standards body operating solely for the benefit of the general public, and only on the following conditions:

CORD141213

Confidential

9.1  Such standards body assumes all of the obligations of XDI.ORG hereunder, including, without limitation, all existing sublicenses, contracts, and agreements, and other obligations of XDI.ORG.

9.2  Such transfer does not alter or affect any of the rights of CORDANCE, or any of XDI.ORG's obligations (financial or otherwise) to CORDANCE under any agreements with XDI.ORG.

9.3  Such transfer does not materially alter or affect the rights of any sublicensees of XDI.ORG.

9.4  XDI.ORG is not in breach of any material obligation to CORDANCE under any agreement, unless CORDANCE waives this condition in writing.

9.5  Such standards body is financially solvent and has the resources and wherewithal to perform the obligations of XDI.ORG.

10.  Warranties.

XDI.ORG warrants that:

10.1  It shall perform its obligations under this Agreement with due care and diligence.

10.2  It has the right and authority to enter into this Agreement and grant the rights conveyed hereunder and that doing so does not conflict with any obligation it has or shall undertake.

10.3  Except as expressly stated herein, the parties make no other warranties, express or implied, including but not limited to any implied warranty of merchantability or fitness for a particular purpose, or implied warranty arising from course of performance, course of dealing, or usage of trade. Specifically CORDANCE makes these licenses and assignments "AS IS" and makes no warranty on merchantability or furthermore for a particular purpose.

11.  Indemnification.

XDI.ORG shall defend, indemnify and hold CORDANCE harmless from and against any and all actions, suits, or proceedings ("Claims"), resulting in any losses, damages, judgments, awards, settlements, or expenses (including reasonable attorney's fees) (collectively, "Liabilities") arising from:

11.1  Any breach of XDI.ORG's obligations under this Agreement

11.2  Any Claim, which if true, would constitute a breach of such obligations

CORD141214

Confidential

11.3  Sublicenses made by XDI.ORG resulting from this Agreement.

## 12.  Term.

The license granted herein shall commence on the Effective Date and thereafter continue in each jurisdiction throughout the world for the statutory duration of the Patent Rights in any such jurisdiction, unless earlier terminated in accordance with the terms hereof.

## 13.  Termination.

13.1  CORDANCE may terminate the license granted herein, effective upon written notice to XDI.ORG: (1) if XDI.ORG becomes insolvent, is generally not paying its debts as such debts become due, makes an assignment for the benefit of creditors, is the subject of any voluntary or involuntary case commenced under the federal bankruptcy laws, as now constituted or hereinafter amended, or of any other proceeding under other applicable laws of any jurisdiction regarding bankruptcy, reorganization, adjustment of debt or other forms of relief for debtors, has a receiver, trustee, liquidator, assignee, custodian or similar official appointed for it or for any substantial part of its property, or is the subject of any dissolution or liquidation proceeding; or (2) if XDI.ORG ceases to conduct business as a going concern.

13.2  Either party may terminate the license granted herein, if (1) the other party is in breach or default of any of the material terms and conditions of this Agreement, provided that the party in breach shall not have cured (if capable of being cured) such breach or default within thirty (30) cumulative days after receipt of such notice; or (2) as otherwise expressly set forth in this Agreement.

13.3  If the license is terminated by either party as provided in this Section, in addition to any remedies available to the parties: (1) all rights and the license granted herein to XDI.ORG shall immediately terminate and all such rights and license shall immediately revert back to CORDANCE or CORDANCE's delegate as provided for in clause (2), and (2) CORDANCE shall exercise commercially reasonable efforts thereafter to transfer all rights necessary to the performance of XDI.ORG's obligations to another similarly situated non-profit public trust or standards organization.

13.4  XDI.ORG agrees that in the event of termination of this Agreement by CORDANCE, (1) XDI.ORG shall assign to CORDANCE or CORDANCE's delegate as provided for in clause (2) any trademarks, copyrights or other intellectual property owned by it including those assigned herein, and (2) CORDANCE shall exercise commercially reasonable efforts thereafter to assign all rights necessary to the performance of XDI.ORG's obligations to another similarly situated non-profit public trust or standards organization.

CORD141215

**Confidential**

14. <u>General Terms.</u>

14.1 Governing Law:  This License shall be construed and controlled by the laws of the State of Washington without reference to conflict of laws principles.

14.2 Jurisdiction:  The parties agree that all disputes arising in any way out of this License shall be heard exclusively in, and all parties irrevocably consent to jurisdiction and venue in the United States District Court for the Western District of Washington or, if that court lacks jurisdiction, in King County Superior Court. In the interest of assuring federal jurisdiction, XDI.ORG will exercise its best efforts to assign its rights and obligations under this Agreement to a corporate body established under the laws of a jurisdiction other than Washington within 90 days after the Effective Date of this Agreement.

14.3 Notices:   All notices and other communications required hereunder shall be in writing and shall be sent by personal delivery, telecopy, registered or certified mail (postage prepaid and return receipt requested) or by reputable overnight courier to the principal or primary address, unless notification of a change of address is given in writing.  Notice shall be deemed effective when so personally delivered or telecopied, or, if mailed, three (3) business days following the date the notice is mailed (one (1) business day in the case of express mail or overnight courier service).

14.4 Not Partners:  The parties hereto are independent entities and are not partners or joint venturers with each other.

14.5 Exhibits:  The following Exhibits are attached hereto and incorporated by reference:  Exhibit A – Definitions, and Exhibit B - XDI.ORG GSP Agreement.

CORDANCE CORPORATION                    XDI.ORG

By:                                     By:
Name: Vince Caluori                     Name: Bill H. Washburn
Its:    President and CEO               Its:    Chairman
Date:                                   Date:

CORD141216

Confidential

# EXHIBIT A - DEFINITIONS

1. <u>Conformance Attestation</u> – As specified in the Technical Specifications, a collection of assertions in machine-readable XDI format (and including or linked to an equivalent human-readable format) by a licensee of conformance to the Technical Specifications, including identification of the version(s) of the Technical Specifications implemented, the features implemented, the interoperability testing performed, or other such assertions as may be determined from time to time by XDI.ORG to be in the best interests of the XDI Community to ensure the interoperability and integrity of XDI infrastructure.

2. <u>Designated Global Services</u> – I-Name Services, I-Number Services, Directory Services, Reputation Services, and Public Resolver Services as defined herein.

3. <u>Directory Services</u> – The Global Service of cross-referencing XRIs and XDI Resources in order to facilitate discovery, identification, and location of an XDI Resource by its associated XDI Resources. There are three Global Directory Services: Personal Directory Service, Organizational Directory Service, and General Directory Service.

4. <u>Field of Use</u> - The development and exploitation of computer programs to the extent that they conform to the Technical Specifications as first delivered and/or subsequently modified.

5. <u>General Dictionary</u> - The collection of XDI Resources representing General Resources and their definitions and relationships in taxonomies and ontologies as established and maintained by XDI.ORG to facilitate global data sharing by all members of the XDI Community.

6. <u>General Resource</u> – An XDI Resource that represents a generic concept, subject, or topic whose identity is defined by linguistic, cultural, or scientific convention.

7. <u>General Service</u> – A Global Service for General Resources identified using the Global Context Symbol "+".

8. <u>Global Context Symbols (GCS)</u> – As defined in the XRI Specifications, the XRI syntax characters specified to represent abstract global context of an identifier, specifically "=" for personal identifiers, "@" for organizational identifiers, "+" for general identifiers, "$" for specification identifiers, and "!" for independent identifiers.

9. <u>Global Service Provider (GSP)</u> - An entity authorized by XDI.ORG to provide and to contract for the provision of Global Services.

10. <u>Global Service Specifications</u> - The specifications published by XDI.ORG governing the operation of each Global Service, including the specifications for Conformance Attestations and other mechanisms for ensuring interoperability, to be initially provided to XDI.ORG, in each case, by the primary GSP for the applicable Global

CORD141217

**Confidential**

Service prior to the commencement of such Global Service, and to be maintained by XDI.ORG as a service to the XDI Community.

11. <u>Global Services</u> - The set of XDI interactions that shall be offered by XDI.ORG to all members of the XDI Community to facilitate interoperability of XDI infrastructure, including but not limited to the Designated Global Services.

12. <u>I-Broker</u> – A provider of XDI services.

13. <u>I-Name Services</u> – The Global Service of registering, reserving, reassigning, and resolving reassignable XRIs via Registries represented by the Global Context Symbols as defined by the XRI specifications. There are three Global I-Name Services: Personal I-Name Service, Organizational I-Name Service, and General I-Name Service.

14. <u>Independent I-Number</u> – A persistent XRI assigned to identify an XDI Resource independent of another GCS context.

15. <u>Independent I-Number Service</u> – An I-Number Service for Independent I-Numbers assigned using the Global Context Symbol "!".

16. <u>Intellectual Property Rights</u> - All rights in patent, trademark, copyright, trade secret and know-how.

17. <u>I-Number Services</u> – The Global Service of registering, resolving, and retiring persistent XRIs via Registries represented by the Global Context Symbols as defined by the XRI specifications. There are four Global I-Number Services: Personal I-Number Service, Organizational I-Number Service, General I-Number Service, and Independent I-Number Service.

18. <u>OASIS</u> – The Organization for the Advancement of Structured Information Standards, a non-profit standards body for XML e-business standards. See http://www.oasis-open.org.

19. <u>Open Source or Free Software License</u> - A license certified by the Open Source Initiative (www.opensource.org) or the Free Software Foundation (www.fsf.org) or any equivalent license that does not restrict the open public review, modification, distribution, and evolution of the source code of a product or service.

20. <u>Open Standard</u> — As defined on September 13, 2004 at http://www.perens.com/OpenStandards/Definition.html, a specification whose licensing ensures that it is publicly available to implement, that it maximizes end-user choice of vendors and implementations, that it does not require a royalty or fee to implement with the potential exception of compliance certification, that it does not discriminate against vendors or implementations, and that it permits extensions or subsets that are consistent with the standard yet may preclude predatory "embrace and enhance" practices.

CORD141218

**Confidential**

21. Organizational Resource - An XDI Resource representing any legal entity or mark that does not represent a Personal Resource or a General Resource.

22. Organizational Service – A Global Service for Organizational Resources identified using the Global Context Symbol "@".

23. Patent Rights -  (1) United States letter of patent issued under numbers 5,862,325; 6,044,205; 6,088,717, 6,345,288, and 6,757,710; (2) any and all United States or foreign letter of patent, utility models and/or application therefore, claiming priority, in whole or in part, from any of the letters of patent identified herein in (1) of this definition; (3) any and all divisionals, continuations, continuations in part, continued prosecution applications, reexamination, reissues, additional or extension of any of the letters of patent or utility models identified herein in (1) and (2) of this definition.

24. Personal Resource – An XDI Resource representing a natural-born person.

25. Personal Service – A Global Service for Personal Resources identified using the Global Context Symbol "=".

26. Public Resolver Services – The Global Service of providing XRI resolution of globally-registered XRIs via one or more publicly available network endpoints. There are two Global Public Resolver Services: Standard Public Resolver Service, which provides resolution service conformant to the XRI Generic Syntax and Resolution Specification, and Trusted Public Resolver Service, which provides resolution service conformant to the XRI Trusted Resolution Specification.

27. Registrant - A member (individual or organization) of the XDI Community that enrolls with a Registrar to obtain Global Services.

28. Registrar - An I-Broker registered with a Global Service Provider to provide the service of enrolling Registrants to obtain Global Services for which registration is required.

29. Registry – The XDI Resource maintained by a Global Service Provider to provide Global Services requiring registration and resolution of XRIs.

30. Reputation Services – The Global Service of aggregating feedback on XDI Resources by other XDI Resources to enable discovery, identification, location, and evaluation of a Resource by its reputation. There are three Global Reputation Services: Personal Reputation Service, Organizational Reputation Service, and General Reputation Service.

31. Resource – As defined in the OASIS XRI Generic Syntax and Resolution Specification 1.0, "anything that can be named or described."

32. Technical Specifications - The specifications defining and governing the interoperability and integrity of XDI infrastructure, including the XDI Specifications, the specifications for Conformance Attestations, and any other specifications

CORD141219

Confidential

designated from time to time by XDI.ORG and subsequently modified, amended, revised or enhanced in accordance with the terms set forth in this Agreement.

33. <u>XDI</u> – XRI Data Interchange as defined by the XDI Specifications.

34. <u>XDI Community</u> – The users and providers of XDI infrastructure.

35. <u>XDI Resource</u> – A Resource identified with at least one XRI that supports interactions via XDI.

36. <u>XDI Specifications</u> – The Open Standard specifications for a generalized, extensible service for identifying, addressing, sharing, linking, and synchronizing XDI Resources as designated from time to time by XDI.ORG; currently the specifications published by the OASIS XDI Technical Committee.

37. <u>XNS</u> – Extensible Name Service, the name used for the first set of Technical Specifications submitted by OneName (predecessor to CORDANCE) to XNSORG (predecessor to XDI.ORG).

38. <u>XNS Public Trust Organization (XNSORG)</u> – The original legal name for XDI.ORG and its successors in interest.

39. <u>XRI</u> – An Extensible Resource Identifier as defined by the XRI Specifications.

40. <u>XRI Specifications</u> – The Open Standard specifications for abstract identifiers used by XDI technology as designated from time to time by XDI.ORG; currently the specifications published by the OASIS XRI Technical Committee.

CORD141220

**Confidential**