## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| CORDANCE CORPORATION, | ) | |
| | ) | C.A. No. 06-491-MPT |
| Plaintiff, | ) | |
| | ) | **JURY TRIAL DEMANDED** |
| v. | ) | |
| | ) | **PUBLIC VERSION** |
| AMAZON.COM, INC. and | ) | |
| AMAZON WEB SERVICES, LLC, | ) | |
| | ) | |
| Defendants. | ) | |

---

### DEFENDANTS' OPENING MEMORANDUM IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT RE LACK OF WRITTEN DESCRIPTION AND PROSECUTION LACHES FOR U.S. PATENT 6,757,710 B2

Richard L. Horwitz (#2246)
David E. Moore (#3983)
D. Fon Muttamara-Walker (#4646)
POTTER ANDERSON & CORROON LLP
Hercules Plaza, 6th Floor
1313 N. Market Street
Wilmington, DE 19801
Tel: (302) 984-6000
rhorwitz@potteranderson.com
dmoore@potteranderson.com
fmuttamara-walker@potteranderson.com

*Attorneys for Defendants*
*Amazon.com, Inc. and*
*Amazon Web Services, LLC*

OF COUNSEL:

Lynn H. Pasahow
J. David Hadden
Darren E. Donnelly
Saina S. Shamilov
Ryan Marton
FENWICK & WEST LLP
801 California Street
Mountain View, CA 94041
Tel: (650) 988-8500

Dated: January 23, 2009
Public Version Dated: January 30, 2009

900704 / 30763

# TABLE OF CONTENTS

**Page**(s)

I.   NATURE AND STAGE OF THE PROCEEDINGS ..................................... 1

II.  SUMMARY OF ARGUMENT .................................................... 1

III. STATEMENT OF FACTS ...................................................... 3

    A.   The '205 Patent and Related Applications.................................... 3

    B.   Cordance's Conduct During the Six Year Prosecution Delay Between the
        Filing of the '205 Patent to the Filing of the '710 Patent ...................... 4

    C.   Prosecution of the '710 Patent .......................................... 5

IV.  LEGAL STANDARD........................................................... 6

    A.   Summary Judgment Standard ............................................ 6

    B.   Legal Standard for the Written Description Requirement ..................... 7

    C.   Legal Standard for Prosecution Laches ................................... 8

V.   THE '710 PATENT IS INVALID FOR FAILURE TO MEET THE WRITTEN
    DESCRIPTION REQUIREMENT ................................................ 9

    A.   The On-line Purchasing Process Claimed in the '710 Patent Is Not
        Described in the '205 Patent Specification................................ 10

    B.   The On-line Purchasing Process Claimed in the '710 Patent Is Not
        Described in the '710 Patent Specification................................ 13

VI.  THE '710 PATENT IS UNENFORCEABLE DUE TO PROSECUTION
    LACHES .................................................................. 16

    A.   Unexplained Gaps in Prosecution....................................... 16

    B.   Steps Taken to Limit Awareness of the Inventions Sought to Be Patented......... 17

    C.   Changes in Prosecution that Coincide With or Directly Follow Evolutions
        in the Field ......................................................... 19

VII. CONCLUSION.............................................................. 20

# TABLE OF AUTHORITIES

**Page(s)**

Cases

*Anderson v. Liberty Lobby, Inc.,*
477 U.S. 242 (1986) .................................................................................................. 7

*Crown Packaging Tech., Inc. v. Rexam Beverage Can Co.,*
531 F. Supp. 2d 629 (D. Del. 2008) ...................................................................... 11

*Gentry Gallery, Inc. v. Berkline Corp.,*
134 F.3d 1473 (Fed. Cir. 1998) ............................................................................... 7

*Hyatt v. Boone,*
146 F.3d 1348 (Fed. Cir. 1998) ............................................................................. 13

*Intuitive Surgical, Inc. v. Computer Motion, Inc.,*
C.A. No. 01-203-SLR, 2002 U.S. Dist. LEXIS 24808 (D. Del. Dec. 10, 2002) ......... 8, 16, 19

*Lockwood v. Am. Airlines, Inc.,*
107 F.3d 1565 (Fed. Cir. 1997) ......................................................................... 7, 14

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,*
475 U.S. 574 (1986) .................................................................................................. 7

*Novo Nordisk Pharm, Inc. v. Bio-Technology General Corp.,*
C.A. No. 02-332-SLR, 2004 LEXIS 14960 (D. Del. Aug. 3, 2004), *aff'd in
part and rev'd in part,* 424 F.3d 1347 (Fed. Cir. 2005) ......................................... 8

*O'Reilly v. Morse,*
56 U.S. 62 (1953) ..................................................................................................... 7

*Pandrol USA, LP v. Airboss Ry. Prods. Inc.,*
424 F.3d 1161 (Fed. Cir. 2005) ............................................................................... 2

*PowerOasis, Inc. v. T-Mobile USA, Inc.,*
522 F.3d 1299 (Fed. Cir. 2008) ........................................................................... 2, 7

*Reiffin v. Microsoft Corp.,*
270 F. Supp. 2d 1132 (N.D. Cal. 2003) ...................................................... 2, 8, 9, 20

*Stambler v. RSA Security Inc.,*
243 F. Supp. 2d 74 (D. Del. 2003) ......................................................................... 8

*Symbol Tech. v. Lemelson Medical,*
277 F.3d 1361 (Fed. Cir. 2002) ............................................................................... 8

*TurboCare Div. of Demag Delaval Turbomachinery Corp. v. General Elec. Co.,*
264 F.3d 1111 (Fed. Cir. 2001) ............................................................................. 14

*University of Rochester v. G.D. Searle & Co., Inc.,*
358 F.3d 916 (Fed. Cir. 2004) ............................................................................... 14

*Vas-Cath Inc. v. Mahurkar,*
935 F.2d 1555 (Fed. Cir. 1991) ......................................................................... 7, 10

**TABLE OF AUTHORITIES**
**(continued)**

**Page(s)**

*Woodbridge v. United States,*
   263 U.S. 50 (1923) .................................................................................................................. 20

<u>Statutes</u>

35 U.S.C. § 112 ............................................................................................................... 10, 14

35 U.S.C. § 120 ............................................................................................................... 16, 19

<u>Rules</u>

Fed. R. Civ. P. 56(c) ................................................................................................................ 7

Fed. R. Civ. P. 56(e) ................................................................................................................ 7

## I.   NATURE AND STAGE OF THE PROCEEDINGS

In this lawsuit, Cordance accuses Amazon of infringing United States Patent Nos. 6,757,710 ("the '710 Patent"), 5,862,325 ("the '325 Patent"), and 6,088,717 ("the '717 Patent") (collectively the "patents-in-suit").  Amazon counterclaims for non-infringement, invalidity, and unenforceability of the patents-in-suit.

Per the Court's December 11, 2007 Amended Scheduling Order, written discovery closed on December 1, 2008.  Opening case dispositive motions are due on January 23, 2009. Oppositions to case dispositive motions are due February 23, 2009, and replies in support of case dispositive motions are due on March 9, 2009.  Trial is set to begin on August 3, 2009.  The present motion is a dispositive motion seeking partial summary judgment of unenforceability and invalidity of the '710 Patent.

## II.   SUMMARY OF ARGUMENT

In this litigation, Cordance argues that its '710 Patent covers "one-click" "automatic" purchasing.  But for the six years it was prosecuting related patents before the 2002 filing of the '710 Patent, Cordance was telling the PTO and the public it had a different "communications object" invention.  In 1999, it even was ████████████████████████████████████ ████████████████████████████████████████████████████ ██████████████████████████████████

Cordance waited until 2002, years after telling the public that Amazon invented 1-click, to apply to the PTO for claims to "automatically completing the purchase of an item," claims that Cordance is now asserting against Amazon's 1-click invention.  Cordance filed those claims with the PTO after studying Amazon's own 1-click patent. ████████████████████████████ ████████████████████████████████████████████████ ██████████████████████████████████

These patent claims are invalid.  They are invalid because you cannot claim what you did not invent.  *Pandrol USA, LP v. Airboss Ry. Prods. Inc.*, 424 F.3d 1161, 1165 (Fed. Cir. 2005) (stating that the written description requirement is intended to "prevent an applicant from later asserting that he invented that which he did not").  Cordance did not invent one-click purchasing.  It is not described in Cordance's 1993 "conception document," it is not described in the 49 columns of Cordance's original parent patent, and it is not described in the 146 columns of the '710 Patent specification.  Cordance's claims to Amazon's invention, therefore, violate the written description requirement which "operates as a timing mechanism to ensure fair play in the presentation of claims after the original filing date and to guard against manipulation of the process by the patent applicant."  *PowerOasis, Inc. v. T-Mobile USA, Inc.*, 522 F.3d 1299, 1306 (Fed. Cir. 2008) (internal citations omitted).  Cordance did not play fair.

Cordance's conduct also renders the '710 Patent unenforceable because, without any reasonable explanation, Cordance waited until 2002, six years after filing the original parent application, to file its '710 Patent claims with the PTO.  During those six years Amazon went from a start-up in Jeff Bezos's garage to the most successful e-commerce site on the World Wide Web.  By 1999, Amazon received a patent on its 1-Click invention and successfully enforced it against its direct competitor, Barnesandnoble.com, in a highly publicized preliminary injunction proceeding – ██████████████████████████████████████████████ ████████████████   At no point during those six years did Cordance tell anyone that it, and not Amazon, invented 1-click ordering.  After lying in wait, Cordance should not now be allowed to enforce the '710 Patent to profit from Amazon's innovations while Cordance delayed prosecution and represented to the world that it had a different invention.  *See Reiffin v. Microsoft Corp.*, 270 F. Supp. 2d 1132, 1154 (N.D. Cal. 2003) (stating that a goal of prosecution

2

laches is to block patent applicants from unreasonably delaying issuance of a patent for the purposes of maximizing its commercial value).

## III.   STATEMENT OF FACTS

### A.   The '205 Patent and Related Applications

The '710 Patent is the last in a family of patents that originated with the filing of the '205 Patent in February 1996. In the '205 Patent, Cordance describes its invention as one in which "software programs being executed by a provider computer and consumer computer communicate directly in order to provide an automated transfer of information, including data, metadata, and instructions." '205 Patent at 6:8-11.[1] In response to the PTO's request to change the title to describe the invention more accurately, Cordance told the PTO that its communications system was one that "transferred information between computers *according to processes transferred with the information*." '205 Patent; Exh. 7[2] at AMZC121417; Exh. 8 at AMZC121425, AMZC121438 (stating that the title is now "clearly indicative of the claimed invention").

While distinguishing prior art during prosecution, Cordance emphasized to the PTO that its invention was not just about the automated exchange or replication of information between computers, but the use of "a special type of control structure – communications object – that is exchanged from the provider to the consumer to define and control the replication." Exh. 12 at AMZC121533, AMZC121538 (also describing invention as "control object that completely defines the communications relationship between any two nodes"). Cordance continued to make this same representation to the PTO when prosecuting the related continuation-in-part

---

[1] Patent Numbers 5,862,325, 6,044,205, and 6,088,717 cited herein refer to D.I. 174 and Patent Numbers 6,345,288 B1 and 6,757,710 B2 refer to D.I. 175.
[2] All exhibits cited herein refer to exhibits contained in the Appendix in Support of Defendants' Motions for Summary Judgment filed concurrently herewith.

applications (that ultimately led to the '710 Patent). Exh. 11 at AMZC121031; Exh. 13 at

AMZC122250. Consistent with these representations, the '205 Patent and each of the related

patents that issued from the continuation-in-part application claim a computer-based

communications system that includes the "communications object" or "control structure"

Cordance described to the PTO as the key aspect of its invention. *See generally* '205 Patent,

'325 Patent, '717 Patent, and '288 Patent claims and Abstract.

**B.    Cordance's Conduct During the Six Year Prosecution Delay Between the Filing of the '205 Patent to the Filing of the '710 Patent**

Cordance went into business to try to commercialize this "communications object"

invention, which it marketed as "hypercommunications." Exh. 3 at 332:1-12. In 1996, Cordance

introduced its "hypercommunications" technology to the public, explaining that central to its

invention were "software objects" that automatically control future communications between the

providers and consumer. Exh. 5 at CORD075013 (describing technology as "software objects

that can be stored on the reader's machine and relied upon to perform future communications

tasks"). Its website included an ████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████ Exh.

16 at CORD126154-155. In a document titled, ████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████ Exh. 9 at CORD071175, *see also* Exh. 16 at CORD126155.

Cordance continued making these statements even after it first learned about Amazon in

1996. At that time, ████████████████████████████████████████████

████████████████████ Ex. 6. In 1997, Amazon launched its 1-click purchasing feature.

Cordance knew about it, but continued to market its "communications object" "hypercommunications" technology. ████████████████████████

████████████████████████████████████████████████ Exh. 14 at CORD001052. It made no claims to that technology, but instead distinguished its invention as something that allows ████████████████████████████████████

████████████████████████████████████████ Exh. 14 at CORD001035; Exh. 2 at 77:19-79:14, 80:4-9; Exh. 17 at CORD033688. While Cordance was making these representations, Amazon grew from a small start-up to a hugely successful e-commerce provider, and became a company that resonated with investors. Exh. 2 at 106:24-107:18. Yet, Cordance did not tell potential investors that it believed Amazon was using its invention. *Id.*

Internally, however, ████████████████████████████████████

████████████████████████ Exh. 2 at 104:12-106:9; Exh. 18. In 2000, ████████

████████████████████████████████████████████████

████████████████████ Exh. 19. Publicly, however, it made no indication to Amazon or anyone else that it invented one-click. Exh. 2 at 101:4-103:3, 108:11-16. In fact, in an October 2001 interview, just months before filing the '710 Patent, Cordance was still telling the world that its patents were "based on exchanging objects to control and automate communications." Exh. 20 at CORD063238.

## C.   <u>Prosecution of the '710 Patent</u>

Cordance's business continued to struggle financially and by 2002, it was reducing staff and minimizing projects to reduce its burn rate. Exh. 23 at AMZC641193. It was in this economic climate that Cordance finally filed for the '710 Patent in February 2002 – six years after filing the original parent application. *See* '710 Patent. Cordance would eventually file for bankruptcy in September 2003 while the '710 Patent was still pending before the PTO. Exh. 23

at AMZC641183.

As originally filed, the '710 Patent application did not recite any claims to on-line purchasing transactions, automatically completing an on-line purchase, or any one-click method of completing a transaction. D.I. 183-184 at 239-240. Only in response to a double-patenting rejection did Cordance in December 2002 first present claims that recited "automatically complet[ing] an on-line purchase." Exh. 21 at AMZC122923. The PTO originally rejected these claims based on a patent filed in 1995 and issued to Chelliah, et al. ("Chelliah patent") that disclosed two-click purchasing using an electronic shopping cart. Exh. 22; Exh. 10. Cordance did not tell the PTO that its claim to "automatically completing the purchase of an item" was different because it was a one-click invention. Exh. 37 at AMZC122937-939. Instead, it submitted a declaration to the PTO, referencing a "conception document" to explain that it invented a *two-click* method of "automatically completing the purchase" back in 1993, before the Chelliah patent. Exh 4; Exh. 2 at 169:7-170:4, 176:11-17. By telling the PTO it was the first to invent two-click purchasing, Cordance was able to overcome the rejection.

Only in this litigation has  Exh. 2 at 123:14-25. In August 2003, before it had any issued claims to sue on, Exh. 24 at 3, ¶ 9. In June 2004, eight years after filing the original parent application, the '710 Patent issued. And although it told the PTO during prosecution it had a two-click invention to secure patent issuance, Cordance now tells the Court its '710 Patent is directed to a one-click invention.

## IV.   LEGAL STANDARD

### A.   Summary Judgment Standard

Summary judgment "is appropriate when there is no genuine issue as to any material fact

and the moving party is entitled to judgment as a matter of law." *Gentry Gallery, Inc. v. Berkline Corp.*, 134 F.3d 1473, 1476 (Fed. Cir. 1998); Fed. R. Civ. P. 56(c). Once the moving party for summary judgment demonstrates the absence of a material fact, the nonmoving party must "set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986); Fed. R. Civ. P. 56(e). The responding party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Here, Cordance cannot come forth with evidence sufficient to survive summary judgment regarding prosecution laches or the written description requirement.

### B.    Legal Standard for the Written Description Requirement

The written description requirement requires the patent specification to describe an invention and do so in sufficient detail that one skilled in the art can clearly conclude that "the inventor invented the claimed invention." *Lockwood v. Am. Airlines, Inc.*, 107 F.3d 1565, 1571-72 (Fed. Cir. 1997). In other words, the patent specification must "convey with reasonable clarity to those skilled in the art that, as of the filing date sought, he or she was in possession of the invention." *Vas-Cath Inc. v. Mahurkar*, 935 F.2d 1555, 1563-64 (Fed. Cir. 1991); *PowerOasis,*, 522 F.3d at 1306 . Indeed, a patentee "can lawfully claim only what he has invented and described, and if he claims more his patent is void." *O'Reilly v. Morse*, 56 U.S. 62, 121 (1953).

Here, where Cordance claims priority to the original February 1996 parent application, the claims of the '710 Patent must be supported by the description in the original application. *See PowerOasis*, 522 F.3d at 1301, 1306. Because Cordance drafted claims to read upon Amazon's 1-click feature years after filing its original application, none of the passages Cordance now points to as support for its '710 Patent claims would convey to one of ordinary

skill in the art that Cordance had possession of an invention for "automatically complet[ing] an on-line purchase" as required by each of the asserted claims. Accordingly, summary judgment of invalidity for failure to meet the written description requirement is appropriate.

## C.    <u>Legal Standard for Prosecution Laches</u>

Prosecution laches is an equitable defense that may be applied to bar enforcement of patent claims. *Symbol Tech. v. Lemelson Medical*, 277 F.3d 1361, 1363 (Fed. Cir. 2002). The key inquiry in a prosecution laches analysis is whether the delay in prosecution was unreasonable. *Reiffin*, 270 F. Supp. 2d at 1154; *Stambler v. RSA Security Inc.*, 243 F. Supp. 2d 74, 76 (D. Del. 2003), *citing Intuitive Surgical, Inc. v. Computer Motion, Inc.*, C.A. No. 01-203-SLR, 2002 U.S. Dist. LEXIS 24808, at *9-10 (D. Del. Dec. 10, 2002). Thus, summary judgment barring enforcement of a patent due to prosecution laches is appropriate upon a showing by a preponderance of the evidence that there was an unreasonable and unexplained delay in prosecution. *Reiffin*, 270 F. Supp. 2d at 1152, 1155 (listing district court cases deciding motions of summary judgment due to prosecution laches, and applying a preponderance of the evidence standard); *Intuitive Surgical*, 2002 U.S. Dist. LEXIS 24808, at *16 n.4 (agreeing that a preponderance of the evidence standard applies to prosecution laches).[3]

In determining whether any delay "can be explained by reference to the legitimate considerations and/or expectations of a reasonable patent applicant," courts consider:

> whether (1) the prosecution history of plaintiff's patent was typical of patents in that field or patents generally; (2) any unexplained gaps exist in the prosecution history; (3) plaintiff took any unusual steps to speed or delay the application process; (4) the PTO or other reviewing body took any unusual steps to speed or delay the

---

[3] *But see Novo Nordisk Pharm, Inc. v. Bio-Technology General Corp.*, C.A. No. 02-332-SLR, 2004 LEXIS 14960, at *99 (D. Del. Aug. 3, 2004), *aff'd in part and rev'd in part*, 424 F.3d 1347 (Fed. Cir. 2005), noting in dicta a clear and convincing standard for prosecution laches. The undisputed evidence in this case supports a prosecution laches summary judgment under either standard of proof.

> application process; (5) plaintiff took any steps to limit public
> awareness of his pending applications or the inventions he sought
> to patent over the course of the prosecution; (6) any changes in
> plaintiff's prosecution of the application coincide with or directly
> follow evolutions in the field that relate to the claimed invention;
> and (7) legitimate grounds can be identified for the abandonment
> of prior applications.

*Reiffin*, 270 F. Supp. 2d at 1155.

Applying the undisputed facts to this analytic framework, the evidence establishes that

Cordance's six-year delay was not caused by legitimate patent considerations or expectations,

but an inappropriate attempt to capture the successful innovation of others within the scope of

claims it delayed filing for almost a decade.

## V.   THE '710 PATENT IS INVALID FOR FAILURE TO MEET THE WRITTEN DESCRIPTION REQUIREMENT

The result of Cordance's delayed and deliberate drafting of patent claims to cover

Amazon's 1-click feature is that Cordance now claims a one-click invention it never had, and

certainly one it never described in its patent disclosures.

In its *ex post facto* attempt to identify some written support for the patent claims,

Cordance has wavered inconsistently between various disclosures. To maintain its claim to the

February 1996 priority date, Cordance asserts – as it must – that its claims to a one-click on-line

purchasing invention are supported by disclosures in the parent application (*i.e.*, the '205 Patent

specification). Exh. 25 at 7-9 (Response to Interrogatory No. 8). But when it first submitted the

claims for prosecution, Cordance told the PTO that the claims were supported by disclosures in

the '710 Patent specification. Exh. 21 at AMZC122924, *citing* pp. 142-143, 189-203 of the

application (*i.e.*, '710 Patent at 86:11-87:43 and 114:40-123:28). Neither of these disclosures,

however, describes to one of ordinary skill in the art one-click purchasing, providing data "to

automatically complete an on-line purchase," or the general process of "automatically

9

completing the purchase of an item" as is required by Cordance's construction of each of the

asserted claims of the '710 Patent.[4]  *See e.g.,* '710 Patent, claims 1 and 7.  One of the skill in the

art of the '710 Patent would have experience in building distributed computing systems, or have

equivalent academic training.  Declaration of Dr. Lorenzo Alvisi in Support of Defendants'

Motions for Summary Judgment ("Alvisi Decl.") ¶ 16.

### A.  The On-line Purchasing Process Claimed in the '710 Patent Is Not Described in the '205 Patent Specification

To maintain priority to the earlier February 1996 filing date of the '205 Patent, the '710

Patent claims must be described in the '205 Patent specification.  *Vas-Cath*, 935 F.2d at 1566

("Application sufficiency under § 112 first paragraph, must be judged as of the filing date.").

The '205 Patent specification describes "[a]n automated communications system [that]

operates to transfer data, metadata and methods from a provider computer to a consumer

computer through a communications network." '205 Patent Abstract.  Alvisi Decl. ¶¶ 10–15.  It

explains that "communications objects" are what "encapsulate data, metadata, and methods for

automating communications with the provider of the object." *Id.* at 42:52-54; *see also Id.* at

16:55-57, 12:42-52; 6:52-54.  Thus, central to the invention described in the '205 Patent

specification is this "communications object." *Id.* at 13:31-34 ("Communications objects are the

core data structure transmitted from the provider program to the consumer program to control

communications between the provider and consumer"); *see also* Figs. 3, 7-8, 11-13B, and 16

(and related discussions).  None of the '710 Patent claims, all of which are directed to a method

_____

[4] While other elements of the asserted claims of the '710 Patent also lack support (*see* Alvisi Decl. ¶¶ 31–43), this Motion focuses on the claims elements that require a merchant to automatically complete a purchase.  Amazon reserves the right to raise additional arguments at trial.  In addition, Cordance fails in its response to interrogatories to identify any patent disclosures to support claim 6 of the '710 Patent.  Exh. 25 at 7-9.  Therefore, the additional limitations of dependent claim 6 are also not described in any of Cordance's patent disclosures and claim 6 should be found invalid for that reason as well.

to automatically complete an on-line purchase of an item, require a "communications object" or other control structure, however. Therefore, what is claimed in the '710 Patent is not the invention described in the '205 Patent specification. *Crown Packaging Tech., Inc. v. Rexam Beverage Can Co.*, 531 F. Supp. 2d 629, 634-639 (D. Del. 2008) (granting partial summary judgment of invalidity for failure to comply with written description requirement where patent claims did not recite limitation that the specification described as key inventive feature).

Moreover, there is nothing in the earlier '205 Patent specification that describes automatically completing an on-line purchase, let alone doing so with one-click. Not one of the passages Cordance identifies in its interrogatory responses as supporting the "usable to automatically complete an on-line purchase" and "automatically completing the purchase of an item" elements of the '710 Patent claims even discusses on-line purchasing transactions. *See* Exh. 25 at 7-9 (Response to Interrogatory No. 8); Alvisi Decl. ¶ 24. Consistent with the fact that the invention described in the '205 Patent specification is really about "communications objects," each of the passages that Cordance points to describes the transfer of data – and the type of data transferred – between two computers that can then be used to control future communications between them. Exh. 25 at 7-9; Alvisi Decl. ¶¶ 25–30. None, however, discusses how that data is "usable to automatically complete an on-line purchase of an item" as is required by each of the asserted '710 Patent claims. Alvisi Decl. ¶ 28.

The only passage in the 42-column specification that even alludes to product ordering or on-line purchasing are the six lines that state:

> Or the provider can also include special forms to be processed by the consumer program 22 that allow the consumer to automatically or semi-automatically transfer data from the consumer database 21 back to the provider. Examples include product order forms, survey forms, customer service request forms, scheduling forms, etc.

'205 Patent at 10:48-54; *see also* D.I. 176 at 22:15-19 (08/609115 Application); Exh. 2 at 216:19-217:17. While Cordance argues that this statement supports its '710 Patent claims, there is no further indication in the specification that the form is used to "automatically complete an online purchase" or that in response to receiving a completed product form from the consumer the step of "automatically completing the purchase of an item from the seller" would be performed. Alvisi Decl. ¶ 26. ███████████████████████

███████████████████████████████████████

████████████████████████████████

████████████

Cordance instead argues that "automatically completing the purchase of an item from the seller by processing said metadata associating said customer data" is supported by the "Response and Response Acknowledgment Processing" section of the '205 Patent specification. Exh. 2 at 223:7-225:5, 225:21-229:12; '205 Patent at 40:59-41:55. The section generally concludes that receipt of a form by the provider can trigger an automatic response or processing. '205 Patent at 40:59-41:55; Alvisi Decl. ¶ 30. But the only description of the automatic response process is the statement:

> When the transmission containing the form data is received by the provider program 12, the transmission can indicate the system ID of the originating communications object. It can also indicate the name of the response processing method associated with this object which can be used to automate the processing of the form data for the provider.

'205 Patent at 41:48-54; Alvisi Decl. ¶ 30; Exh. 2 at 228:19-229:12. This statement does not describe the processing for "automatically completing the purchase of an item," or even the completion of a purchase transaction in general. Alvisi Decl. ¶ 30.

Nothing in the '205 Patent supports the '710 Patent claims, and thus, the '710 Patent

cannot claim priority to the '205 Patent's February 1996 filing date. *Hyatt v. Boone*, 146 F.3d

1348, 1354 (Fed. Cir. 1998) ("It is insufficient as written description, for purposes of establishing

priority of invention, to provide a specification that does not unambiguously describe all

limitations of the count").

**B.    The On-line Purchasing Process Claimed in the '710 Patent Is Not Described in the '710 Patent Specification**

Despite trying to claim priority to the '205 Patent filing date, Cordance essentially

conceded that the '205 Patent specification is devoid of any description of the automatic

completion of on-line purchase transactions when it told the PTO and the Court during claim

construction that support for '710 Patent claims is found not in the parent '205 Patent

application, but in the "Payment Service Objects and Partner Servers" section of the '710 Patent

specification (new matter not included in the '205 Patent disclosures). *See* Exh. 21 at

AMZC122924; *see e.g.,* Cordance's Opening Claim Construction Brief (D.I. 192) at 12; *see

generally* '710 Patent at 119:26-123:38.

The Payment Service Objects and Partner Servers section generally describes using

communications objects in the context of payment transactions. Alvisi Decl. ¶ 31. But the only

statement that relates to *completing* a purchase transaction (something required by all the '710

Patent claims) is the section that reads:

> Now a data exchange method 141 on the payment partner server
> 1302 can carry out the purchase order transaction using the verified
> purchase order data, the verified customer account certificate, and
> the verified merchant account certificate (step 4466).

'710 Patent at 122:27-31. Even assuming the customer certificate could be the required

"metadata associating said customer data," this conclusory statement does not convey to one of

ordinary skill the processing of the customer certificate, using the customer certification to

retrieve customer information, or using the retrieved customer information to complete the

purchasing transaction. Alvisi Decl. ¶¶ 41–43. The only thing the specification says is that "[t]his may involve *any sequence of steps* between the payment partner server 1302 and other payment servers or data processing systems[.]" '710 Patent at 122:31-35. A statement that "any sequence of steps" may be used does not describe to one of ordinary skill an invention for "completing the purchase of an item." Alvisi Decl. ¶ 34. Nor does it describe an invention for "*automatically* completing the purchase of an item." "Any sequence of steps" does not suggest any limitation to the number of clicks or other user actions that may be required to order an item and certainly would not suggest to one of ordinary skill that Cordance had an invention covering one-click, or any particular number of clicks. *Id.* ¶ 35. Conclusory statements that leave one of ordinary skill to guess at what the invention may be have repeatedly been found insufficient to meet the written description requirement. *Lockwood*, 107 F.3d at 572 ("It is not sufficient for purposes of the written description requirement of § 112 that the disclosure . . . would lead one to speculate as to modifications that the inventor might have envisioned, but failed to disclose"); *University of Rochester v. G.D. Searle & Co., Inc.*, 358 F.3d 916, 922-23 (Fed. Cir. 2004) ("generalized language may not suffice if it does not convey the detailed identity of an invention"); *TurboCare Div. of Demag Delaval Turbomachinery Corp. v. General Elec. Co.*, 264 F.3d 1111, 1119 (Fed. Cir. 2001) (concluding that although a certain embodiment may have been obvious from a "vague reference" in the specification, this was insufficient to meet the written description requirement).

The '710 Patent also does not describe its claimed requirement of "automatically completing the purchase of an item *from the seller.*"[5] The '710 Patent's description of

---

[5] Claims 1-6 of the '710 Patent require "automatically completing the purchase of an item *from the seller*," while claims 7-9 require "automatically completing the purchase of an item *from the information consumer.*" While the arguments focus on the requirement that the item be

purchasing transactions is limited to transmitting purchase orders to the payment partner server, the intermediary between a seller and a buyer. '710 Patent at 122:9-13. It does not describe how the purchase order is transmitted to the seller to complete the purchase of an item *from the seller*. Alvisi Decl. ¶ 37. In an attempt to fill this gap, Cordance points to a single statement in the specification that the payment partner server can be combined with other functionality to suggest that the '710 Patent disclosed combining seller functionalities with the functionality of the payment partner server:

> In another embodiment of the present invention, the functions or both the programs 12, 22 and databases 11, 21 can be combined with a partner server 1302 and a partner server database 1301.

*See* Cordance's Answering Claim Construction Brief (D.I. 199) at 17, *citing* '710 Patent at 128:51-54. But this one sentence does not describe combining the functions of the seller with the payment partner server. Alvisi Decl. ¶¶ 38–39. Indeed, combining the seller and payment partner server functionalities would defeat the stated purpose of having a trusted third party entity (the payment partner server) mediate the interactions between multiple buyers and sellers. Id.

Piecing together random disjoint statements from a 146-column patent to devise an after-the-fact description of patent claims is not sufficient to meet the written description requirement. Cordance cannot now assert that it invented one-click automatic completion of on-line purchases when there is no description of that process in any of its patent disclosures. By copying Amazon's 1-click patent claims without regard to what it previously disclosed to be its invention, Cordance is trying to do exactly what the written description requirement was intended to preclude. Cordance cannot claim what it did not invent, and the '710 Patent should be found

---

purchased from the seller, the arguments are equally applicable to claims requiring purchase from the information consumer.

15

invalid for failure to meet the written description requirement.

## VI.     THE '710 PATENT IS UNENFORCEABLE DUE TO PROSECUTION LACHES

Cordance waited more than six years after filing the parent patent application to tell the

PTO it had claims to "automatically complet[ing] an on-line purchase." This delay is

unreasonable not just because of the passage of time, but it also is unreasonable because during

those years – years in which Internet developments were growing exponentially – Cordance kept

its claims to a process for automatically completing on-line purchases hidden from the public.  It

is unreasonable because while Cordance was keeping its '710 Patent claims hidden, it

represented to the world it had a different invention and that Amazon pioneered one-click

purchasing.  And it is unreasonable because, after waiting for Amazon to build a successful e-

commerce business during those years, Cordance only finally presented the '710 Patent for

prosecution ███████████████████████████████████████, though to get the '710

Patent claims issued, it told the PTO they were directed to a two-click purchasing system.

### A.     Unexplained Gaps in Prosecution

Despite claiming that it conceived of the "on-line transaction infrastructure" invention of

the '710 Patent as early as 1993, Cordance did not file the parent application until February

1996.  Despite the fact that Cordance could have filed a continuation application any time after

February 1996 (*see* 35 U.S.C. § 120), it did not do a thing with respect to claiming an on-line

purchasing invention until six years later, and almost ten years after its alleged "invention."

This period of unilateral prosecution inactivity is unreasonable.  In *Intuitive Surgical*, this

Court found a delay of four years and four months during prosecution to be unreasonable.  2002

U.S. Dist. LEXIS 24808, at *14-15.  In that case, the applicant actually timely filed the patent

application but waited over four years to re-submit the application (with an amendment adding

new claims) after the PTO had misplaced the application.  *Id.* at *12-13.  The Court found the

delay in correcting the PTO's mistake was unreasonable even though the applicant was diligently prosecuting two other related applications during that time. *See id.* at *4, *14-15. The Court ultimately declined to enter summary judgment of prosecution laches because the unreasonable delay was explained, in part, by the PTO's mistake. *Id.* at *15.

There is no such explanation in this case, however. During Cordance's six-year delay, there was no mistake, or even any involvement, by the PTO. When asked for an explanation, Cordance refused to provide any justification. Exh. 26 at 6 (Response to Interrogatory No. 22).

**B.   Steps Taken to Limit Awareness of the Inventions Sought to Be Patented**

Cordance's six-year failure to take action is particularly suspect and unreasonable in light of its other conduct during that time, conduct which establishes that Cordance did not invent and was not claiming one-click automatic completion of on-line purchases.

None of the '710 Patent's related applications are directed to on-line transactions or any type of e-commerce. Consistently throughout the prosecution of the related applications, Cordance emphasized to the PTO that what it invented was using communications objects to automatically transfer information between computers and to control and define that communication. *See* Section III.A.

When Cordance finally did present the '710 Patent claims for prosecution, it still did not tell the PTO it invented one-click. To overcome the Chelliah two-click electronic shopping cart patent and ensure issuance of its claims, Cordance told the PTO it invented two-click purchasing first. Exh. 22; Exh. 5. ███████████████████████████████████

███████████████████████████████████████████████████

████████████████████████ Exh. 2 at 169:7-170:4, 176:11-17.

Now in litigation, to avoid Amazon's prior art electronic shopping cart system, Cordance takes the contrary position that its "invention" covers one-click on-line purchasing. *See*

17

Defendants' Motion for Summary Judgment of Invalidity of the '710 Patent, filed concurrently. But not once did Cordance suggest to anyone before Amazon's 1-click feature was released in 1997 that it had an invention covering one-click automatic purchasing. Exh. 3 at 268:19-270:4.



Exh. 2 at 29:8-24.

Exh. 14 at CORD001052

Exh. 2 at 101:4-103:11, 108:11-16.

*Id.* at 79:5-80:9.

From 1996 to 2002, all of Cordance's statements to the outside world made clear that its invention did not cover automatically completing the on-line purchase of an item with one-click. And its failure to present such claims to the PTO earlier effectively limited the public's awareness of Cordance's claim to such an invention. Indeed, Cordance had ample opportunity between 1996 and 2002 to disclose its claims to one-click on-line purchasing, and would have had ample incentive to do so had it truly conceived of the invention.

Exh. 2 at 98:22-99:3; 104:12-106:9; Exh. 18. In a public interview in 2001, Cordance suggested that the Internet community would stand up to e-commerce patents like Amazon's 1-click patent. Exh. 20 at CORD063239.

Exh. 2 at 104:12-106:9.

*See id.* at 101:6-22. Instead, Cordance was content to remain silent for six years, keeping Amazon and the rest of

the public unaware of any potential claims.

**C.      Changes in Prosecution that Coincide With or Directly Follow Evolutions in the Field**

Though Cordance remained publicly silent, internally it was engaging in a different

strategy. ████████████████████████████████████████████████████████

████████████████████ Exh. 19. It, however, made no public indication that it was intending to

sue Amazon and in fact, had no pending or issued patent claims that read on Amazon's 1-click

feature. By 2002, the last of Cordance's related patents was issuing, and it could wait no longer

to file a new continuation application if it wanted to maintain its February 1996 priority date. 35

U.S.C. § 120; '288 patent. Thus, Cordance waited to submit the '710 Patent on the last day it

could file any additional continuations, at a time when Cordance was floundering financially and

would most benefit from asserting claims over Amazon's success and technology. Exh. 23 at

AMZC641183; Exh. 2 at 106:24-107:18.

This is the type of conduct this Court found "especially troublesome" in *Intuitive

Surgical*. There, the Court expressed discomfort with the fact that the patent applicant – after a

more than four-year delay – was only motivated to pursue its patent rights after the defendant

had committed its resources to developing the accused device having had no notice that the

plaintiff would be laying claims to that invention. *Intuitive Surgical*, 2002 U.S. Dist. LEXIS at

*15. Thus, the delay in prosecution and resulting lack of notice effectively enabled the plaintiff

to divest the defendant of its product and development efforts. *Id.*

████████████████████████████████████████████████████████

████████████████ Exh. 2 at 123:14-25. ████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████  *Id.* at 121:16-123:11.  But whether Cordance independently reviewed Amazon's 1-click

patent in either drafting or reviewing the '710 Patent claims during prosecution is not an inquiry

that would elicit privileged information.  Indeed, the '710 Patent claims closely track the claims

in Amazon's 1-click patent.  Exh. 27; *comparing* '710 Patent and '411 Patent (Exh 15).

███████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████

████████████████████████████████████  Cordance rushed to submit a notice of claims

under its policy to fund litigation against Amazon.  Exh. 24 at 3 ¶ 9; Exh. 19.

One of the main goals of prosecution laches is to prevent a patent applicant from

"unreasonably delaying the issuance of a patent and attendant publication . . . for the purpose of

maximizing its commercial value."  *Reiffin*, 270 F. Supp. 2d at 1154, *citing Woodbridge v.*

*United States*, 263 U.S. 50, 58, 60 (1923).  That is what Cordance has done here.  For more than

six years from its first patent filing, Cordance's conduct suggested to Amazon and to the world

that it did not have an invention for one-click purchasing.  It allowed Amazon to use the 1-click

feature and even touted it to its own investors, all the while hoping to one day capitalize on

Amazon's success.  That is an abuse of the patent process and this Court should grant summary

judgment barring enforcement of the '710 Patent for prosecution laches.

## VII.   CONCLUSION

For the foregoing reasons, Defendants respectfully requests that this Court enter partial

summary judgment of invalidity of the '710 Patent for failure to meet the written description

requirement.  Defendants further request that the Court hold the '710 Patent unenforceable under

the doctrine of prosecution laches due to Cordance's delay in prosecuting the '710 Patent claims.

POTTER ANDERSON & CORROON LLP

OF COUNSEL:

Lynn H. Pasahow
J. David Hadden
Darren E. Donnelly
Saina S. Shamilov
Ryan Marton
FENWICK & WEST LLP
801 California Street
Mountain View, CA 94041
Tel: (650) 988-8500

Dated:  January 23, 2009
Public Version Dated: January 30, 2009
900704 / 30763

By:   */s/ D. Fon Muttamara-Walker*
       Richard L. Horwitz (#2246)
       David E. Moore (#3983)
       D. Fon Muttamara-Walker (#4646)
       Hercules Plaza, 6th Floor
       1313 N. Market Street
       Wilmington, DE  19801
       Tel:  (302) 984-6000
       rhorwitz@potteranderson.com
       dmoore@potteranderson.com
       fmuttamara-walker@potteranderson.com

*Attorneys for Defendants*
*Amazon.com, Inc. and*
*Amazon Web Services, LLC*

21

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

### CERTIFICATE OF SERVICE

I, D. Fon Muttamara-Walker, hereby certify that on January 30, 2009, the attached

document was electronically filed with the Clerk of the Court using CM/ECF which will send

notification to the registered attorney(s) of record that the document has been filed and is

available for viewing and downloading.

I further certify that on January 30, 2009, the attached document was Electronically

Mailed to the following person(s):

Steven J. Balick
John G. Day
Tiffany Geyer Lydon
Ashby & Geddes
500 Delaware Avenue, 8th Floor
Wilmington, DE 19899
sbalick@ashby-geddes.com
jday@ashby-geddes.com
tlydon@ashby-geddes.com

Michael A. Albert
Robert M. Abrahamsen
Jeffrey O'Neill
Chelsea A. Loughran
Wolf, Greenfield & Sacks, P.C.
600 Atlantic Avenue
Boston, MA  02210-2206
malbert@wolfgreenfield.com
rabrahamsen@wolfgreenfield.com
jeffrey.oneill@wolfgreenfield.com
cloughran@wolfgreenfield.com

By:  /s/ D. Fon Muttamara-Walker
        Richard L. Horwitz
        David E. Moore
        D. Fon Muttamara-Walker
        POTTER ANDERSON & CORROON LLP
        (302) 984-6000
        rhorwitz@potteranderson.com
        dmoore@potteranderson.com
        fmuttamara-walker@potteranderson.com

757320 / 30763