## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

CORDANCE CORPORATION,     )
     )   C.A. No. 06-491-MPT
    Plaintiff,     )
     )   **JURY TRIAL DEMANDED**
   v.     )
     )   **PUBLIC VERSION**
AMAZON.COM, INC. and     )
AMAZON WEB SERVICES, LLC,     )
     )
    Defendants.     )

### DEFENDANTS' OPENING MEMORANDUM IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT OF INVALIDITY OF U.S. PATENT 6,757,710 B2

Richard L. Horwitz (#2246)
David E. Moore (#3983)
D. Fon Muttamara-Walker (#4646)
POTTER ANDERSON & CORROON LLP
Hercules Plaza, 6th Floor
1313 N. Market Street
Wilmington, DE  19801
Tel:  (302) 984-6000
rhorwitz@potteranderson.com
dmoore@potteranderson.com
fmuttamara-walker@potteranderson.com

*Attorneys for Defendants*
*Amazon.com, Inc. and*
*Amazon Web Services, LLC*

OF COUNSEL:

Lynn H. Pasahow
J. David Hadden
Darren E. Donnelly
Saina S. Shamilov
Ryan Marton
FENWICK & WEST LLP
801 California Street
Mountain View, CA 94041
Tel: (650) 988-8500

Dated:  January 23, 2009
Public Version Dated: January 30, 2009
900707 / 30763

# TABLE OF CONTENTS

**Page**(s)

I.   NATURE AND STAGE OF PROCEEDINGS ................................................ 1

II.  SUMMARY OF ARGUMENT ....................................................................... 1

III. STATEMENT OF FACTS ............................................................................. 2

    A.   The Claims Of the '710 Patent ............................................................ 2

    B.   Prior art ............................................................................................... 5

        1.   Amazon's Prior Art Shopping Cart ............................................ 5

        2.   First Virtual Holdings' eCommerce System ............................... 5

IV.  ARGUMENT ................................................................................................ 5

    A.   Legal Standard for Summary Judgment of Anticipation ...................... 5

    B.   The Claims Of the '710 Patent Are Invalid In Light Of Amazon's Online Purchasing System Available In 1995 ..................................... 7

        1.   Overview of Amazon's Online Purchasing System Available in 1995 ........................................................................................ 7

        2.   Amazon's Online Purchasing System Available in 1995 on Amazon's Website Constitutes Prior Art Pursuant to 35 U.S.C. § 102 (b) ....................................................................................... 8

            a.   The Amazon Prior Art System Performed Every Limitation of the Independent Claims ................................ 9

                (1)   "providing a customer data storing information for a customer ..." ....................................................... 10

                (2)   "providing the customer with information from the seller ..." ............................................................... 10

                (3)   "receiving from the customer an indication to initiate a purchase transaction for purchasing the item ..." ............................................................. 11

                (4)   "... automatically completing the purchase ..." .............. 11

            b.   Amazon System Performed Every Limitation of the Other Asserted Claims .......................................................... 12

    C.   The '710 Patent Is Invalid In Light Of First Virtual Electronic Purchasing System That Was Publicly Available In 1994 ..................... 12

        1.   The Prior Art:  First Virtual Electronic Purchasing System .................... 13

        2.   First Virtual System Constitutes prior Art Pursuant to 35 U.S.C. § 102 (b) ....................................................................................... 15

**TABLE OF CONTENTS**
(continued)

3.   First Virtual System Performed Every Limitation of Asserted Claims in as early as 1994 .................................................................. 16

a.   First Virtual Performed Every Limitation of the Independent Claim 1 .................................................................. 16

(1)   "providing a customer data storing information for a customer ..." .................................................................. 16

(2)   "providing the customer with information from the seller ..." .......................................................................... 17

(3)   "receiving from the customer an indication to initiate a purchase transaction for purchasing the item ..." ........................................................................ 17

(4)   "... automatically completing the purchase ..." .............. 18

b.   First Virtual Performed Every Limitation of the Other Asserted Claims .......................................................................... 19

V.   CONCLUSION ................................................................................. 19

# TABLE OF AUTHORITIES

**Page**

<u>Cases</u>

*Amazon.com v. BarnesandNoble.com,*
    239 F.3d 1343 (Fed. Cir. 2001)...............................................................1-2, 3, 6, 9

*Am. Hoist & Derrick Co. v. Sowa & Sons, Inc.,*
    725 F.2d 1350 (Fed. Cir. 1984)...................................................................... 7

*Apotex USA, Inc. v. Merck & Co.,*
    254 F.3d 1031 (Fed. Cir. 2001)...................................................................... 8

*Chiron Corp., v. Genentech, Inc.,*
    363 F.3d 1247 (Fed. Cir. 2004)...................................................................... 4

*EWP Corp. v. Reliance Universal, Inc.,*
    755 F.2d 898 (Fed. Cir. 1985)........................................................................ 6

*In Re Klopfenstein,*
    380 F.3d 1345 (Fed. Cir. 2004)...................................................................... 6

*New Railhead Mfg. L.L.C. v. Vermeer Mfg. Co.,*
    298 F.3d 1290 (Fed. Cir. 2002)...............................................................6, 8, 15

*Schering Corp. v. Geneva Pharms., Inc.,*
    339 F.3d 1373 (Fed. Cir. 2003)....................................................................5-6

*Tech. Licensing Corp. v. Videotek, Inc.,*
    545 F.3d 1316 (Fed. Cir. 2008)...................................................................... 7

<u>Rules</u>

Fed. R. Civ. P. 56(c) ........................................................................................ 5

<u>Codes</u>

35 U.S.C. 102(b) .......................................................................................5, 15

35 U.S.C. 112............................................................................................... 4

## I.     NATURE AND STAGE OF PROCEEDINGS

In this lawsuit, Cordance has accused Amazon of infringing United States Patent Nos.

6,757,710 ("the '710 Patent"), 5,862,325 ("the '325 Patent"), and 6,088,717 ("the '717 Patent")

(collectively the "patents-in-suit").[1]   Amazon has brought counterclaims for non-infringement,

invalidity, and unenforceability of the patents-in-suit.  The present motion is a motion for

Summary Judgment of Invalidity of the '710 patent based on prior art that was available more

than a year before Cordance filed its patents.

Per the Court's December 11, 2007 Amended Scheduling Order, opening case dispositive

motions are due on January 23, 2009.  Expert discovery closes on February 13, 2009.

Oppositions to case dispositive motions are due February 23, 2009, and replies in support of case

dispositive motions are due on March 9, 2009.  Trial is set to begin on August 3, 2009.

## II.    SUMMARY OF ARGUMENT

Cordance drafted its claims to "automatically completing" an on-line purchase in 2002 to

sue Amazon for its then five-year-old 1-Click purchasing feature.  ████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

The claims of the '710 patent, however, closely track the claims of Amazon's patent.  But Mr.

Reed left out a key limitation that the Federal Circuit found distinguished Amazon's 1-Click

invention from prior art on-line purchasing systems (including Amazon's own).  That limitation

is that the item is purchased "without using a shopping cart ordering model."  *Amazon.com v.*

---

[1] Patent Numbers 5,862,325, 6,044,205, and 6,088,717 cited herein refer to D.I. 174 and Patent
Number 6,757,710 B2 refers to D.I. 175.

*BarnesandNoble.com*, 239 F.3d 1343, 1348 (Fed. Cir. 2001).[2]

That omission from the '710 patent claims is fatal. In July 1995, more than a year before Cordance filed its patent with the Payment Service Objects description that Cordance told the Patent Office and this Court describes the claims, Amazon launched its website. The Amazon site allowed users to purchase items automatically with an on-line shopping cart that used previously stored customer billing and shipping information and included all the elements of Cordance's claims.

In addition, more than a year before any Cordance patent application, First Virtual Holdings ("First Virtual") launched an automatic on-line e-commerce system.



Exh. 28, at CORD285805.[3]

## III.   STATEMENT OF FACTS

### A.   The Claims Of the '710 Patent

Cordance alleges that Amazon's 1-Click functionality infringes claims 1, 2, 3, 5, 6, 8, and 9 of U.S. Patent 6,757,710 (the '710 patent). Amazon's 1-Click allows customers to place an order for an item without first placing it in a "shopping cart" by clicking on a "Buy with 1-Click"

---

[2] "We recognize that under this construction, claim 1 would appear to read on the prior art shopping cart model (because the final page of a shopping cart model both displays the item to be purchased in a list of selected products and sends the order request in response to the single next action of clicking on the confirm purchase icon). However, the shopping cart model is expressly excluded from the claim 1 by the whereby clause at the end of the claim."

[3] Unless specified otherwise, all exhibits cited herein refer to exhibits contained in the Appendix in Support of Defendants' Motions for Summary Judgment filed concurrently herewith.

button.



Exh. 2 at 123:14-25.

Exh. 2 at 121:16-123:11.  But, the '710 patent claims closely track the claims in Amazon's 1-Click

patent.  *See,* generally, Defendants' Opening Memorandum In Support of Their Motion for

Summary Judgment re Prosecution Laches and Lack of Written Description for the '710 Patent,

filed concurrently herewith (hereinafter the "Concurrent Motion") and Exh. 27.  When copying

Amazon's 1-Click claims, however, Cordance made a mistake and omitted the key feature of

Amazon's 1-Click invention that the Federal Circuit found distinguished Amazon's 1-Click from

prior art on-line purchasing system, including Amazon's own system available in 1995.  This key

feature, according to the Federal Circuit, is the requirement that items are purchased "without

using a shopping cart ordering model."  *Amazon.com*, 239 F.3d at 1348.  Thus, the claims of the

'710 patent cannot be distinguished from prior art online shopping carts.

The asserted independent claims 1 and 7 are of similar scope and Cordance alleges in its

interrogatory responses that the claims correspond to the identical Amazon functionality.  *See,*

*e.g.*, Cordance's Fifth Supplemental Response to First Set of Interrogatories (Interrogatory 1).

Exh. 33.  Both claims address a computer implemented method for automatically completing

online purchase transactions.  Claim 1 includes the following four steps:

- "providing a customer data storing information for a customer usable to
  automatically complete an on-line purchase of an item from a seller;"

- "providing the customer with information from the seller with respect to an item;"

- "receiving from the customer an indication to initiate a purchase transaction for purchasing the item including metadata associating said customer data with said transaction;" and

- "in response to the received indication, automatically completing the purchase of an item from the seller by processing said metadata associating said customer data so as to complete the purchase transaction."[4]

Although the '710 patent claims priority to several prior applications, it is not entitled to a priority of the earliest of them, U.S. Patent No. 6,044,205, filed on February 29, 1996. A later filed continuation-in-part application, to which the '710 patent claims priority and shares specification, added approximately 100 patent-columns of new matter on September 27, 1996. *Compare* '205 patent and '325 patent. During prosecution of the '710 patent Cordance represented to the Patent Office that the claims were supported by portions of the '710 patent specification that were newly added in the continuation-in-part. *See* Exh. 21. Indeed, as described in detail in the Concurrent Motion, none of the portions of the '205 specification that Cordance now maintains support the claims of the '710 patent, provides sufficient written description for the claims. *Chiron Corp., v. Genentech, Inc.*, 363 F.3d 1247, 1255 (Fed. Cir. 2004) (only applications that meet the written description requirement of 35 U.S.C.§112 can provide priority to claims of the later filed application). Thus, the '710 patent cannot claim

---

[4] The elements of claim 7 are nearly identical. '710 Patent, compare claims 1 and 7. One distinction is that claim 1 uses the terms "customer" and "seller" to refer to the parties of a "purchase transaction" and claim 7 refers to "information provider" and "information consumer" to refer to the parties of an "on-line transaction." In its infringement contentions, however, Cordance does not draw any distinction between these terms and treats "information provider" as a "customer," and "information consumer" as a "seller." *See, e.g.*, Cordance's Fifth Supplemental Response To First Set of Interrogatories (Interrogatory 1). Cordance further equates "on-line transaction" of claim 7 to the "purchase transaction" of claim 1. *Id.*

priority to the filing date of the '205 patent and its earliest possible priority date is September 27, 1996.

**B.**   **Prior art**

    **1.**   **Amazon's Prior Art Shopping Cart**

Amazon launched its site in the summer of 1995 with its online purchasing technology that invalidates the claims of the '710 Patent.



This system was conceived, reduced to practice, publicly known, and used more than a year before the '710 patent application was filed. Thus, the asserted claims are invalid at least under 35 U.S.C. § 102(b).

    **2.**   **First Virtual Holdings' eCommerce System**

In October of 1994, online payment innovator First Virtual Holdings launched its service that allowed users to purchase items online. The First Virtual system was conceived, reduced to practice, on sale and in public use more than a year before any Cordance patent application was filed and invalidates the asserted claims under 35 U.S.C. § 102(b).

**IV.**   **ARGUMENT**

**A.**   **Legal Standard for Summary Judgment of Anticipation**

Summary judgment in a patent case, as in any other case, is appropriate where there is "no genuine issue as to any material fact and … the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); *see also Schering Corp. v. Geneva Pharms., Inc.*, 339 F.3d 1373

(Fed. Cir. 2003) (affirming grant of summary judgment of invalidity). "A patent is invalid for anticipation if a single prior art reference discloses each and every limitation of the claimed invention." *Id.* at 1377 (citations omitted). A reference constitutes prior art if it was "described in a printed publication in this or a foreign country … more than one year prior to the date of the application of the patent." 35 U.S.C.§ 102 (b). The statutory phrase "printed publication" means that the reference "must have been sufficiently accessible to the public." *In Re Klopfenstein*, 380 F.3d 1345, 1348 (Fed. Cir. 2004); *see, e.g., Amazon.com, Inc. v. Barnesandnoble.com, Inc.*, 239 F.3d 1343, 1365 (Fed. Cir. 2001) (noting that "a print-out from a web page" can constitute a prior art reference); *see also*, MPEP § 2128. A reference also constitutes prior art if it was "in public use or on sale in this country, more than one year prior to the date of the application for patent." 35 U.S.C. § 102. The statutory phrase "public use" "includes any use of the claimed invention by a person other than the inventor who is under no limitation, restriction, or obligation of secrecy to the inventor." *New Railhead Mfg. L.L.C. v. Vermeer Mfg. Co.*, 298 F.3d 1290, 1297 (Fed. Cir. 2002). Here, Amazon's prior system and First Virtual's system are invalidating prior art to the '710 patent.

Although the claims of an issued patent are presumed to be valid, and must be found invalid by clear and convincing evidence, the presumption of validity is not conclusive. In particular, where a prior art reference—such as Amazon's prior art system or the First Virtual system in the instant case—was not cited to the Patent and Trademark Office during the patent's prosecution, the movant may more easily carry its burden. *See EWP Corp. v. Reliance Universal, Inc.*, 755 F.2d 898, 905 (Fed. Cir. 1985). In fact, "prior art not before the PTO may so clearly invalidate a patent that the burden is fully sustained merely by proving [the] existence

[of the prior art] and applying the proper law." *Am. Hoist & Derrick Co. v. Sowa & Sons, Inc.*, 725 F.2d 1350, 1359-60 (Fed. Cir. 1984).

Once Amazon sets forth anticipating prior art, Cordance must show that the prior art does not anticipate or that it is entitled to the benefit of a filing date prior to the alleged prior art, which requires proof of the existence of the earlier application and that the written description in the earlier application supports the claim. *See, e.g., Tech. Licensing Corp. v. Videotek, Inc.*, 545 F.3d 1316, 1327 (Fed. Cir. 2008).

**B.** **The Claims Of the '710 Patent Are Invalid In Light Of Amazon's Online Purchasing System Available In 1995**

Amazon reduced to practice and publicly used its shopping cart ordering system by July, 1995, before the September 26, 1995 "critical date" for the claims in the '710 patent. The system performed every limitation of the asserted '710 patent claims.

**1.** **Overview of Amazon's Online Purchasing System Available in 1995**

By July of 1995, Amazon had launched its prior art system at the www.amazon.com website it still uses today. ███████████████████████████

████████████████ Declaration of Lorenzo Alvisi in Support of Defendants' Motions For Summary Judgment at ¶¶ 48-49. ████████████████████████████

███████████████████████████████████████

███████████████████████████████████ *Id.* at ¶ 48.

█████████████████████████████████ *Id.* at ¶ 49 █████████████████████████████████████

*Id.* at ¶¶ 52, 59-60. ████████████████████████████

███████████████████████████████████████

███████████████████████████████████████

7



*Id.* at ¶¶ 48-51, 57.

*Id.* at ¶¶ 52, 59.

*Id.* at ¶¶ 52, 60.

*Id.*

### 2.   Amazon's Online Purchasing System Available in 1995 on Amazon's Website Constitutes Prior Art Pursuant to 35 U.S.C. § 102 (b)

Amazon's website was publicly operating by July 1995, ███████████████ ████████████████████████████████ Exh. 29 at 350:1-4. This constitutes a public use under § 102 (b).[5] *New Railhead Mfg. L.L.C. v. Vermeer Mfg. Co.*, 298 F.3d 1290, 1297 (Fed. Cir. 2002). The software from the 1995 website ████████████ ████████████ remains to this day, in the timestamped, version controlled, source code repositories that Amazon maintains specifically for managing its site source code. Declaration of Craig Kulfan In Support of Defendants' Opening Memorandum In Support of Their Motion For Summary Judgment Of Invalidity Of U.S. Patent 6,757,710 B2 ("Kulfan Decl.") at ¶¶ 6-10. As Dr. Alvisi explains in his declaration, █████████████████████████████ ██████████████████████ Alvisi Decl., ¶ 46.

---

[5] The code and Amazon prior art system that it ran also invalidated the claims under § 102(g). *Apotex USA, Inc. v. Merck & Co.*, 254 F.3d 1031, 1035 (Fed. Cir. 2001) because a person is not entitled to a patent if the invention was made previously "in this country by another inventor who had not abandoned, suppressed, or concealed the invention.")

### a. The Amazon Prior Art System Performed Every Limitation of the Independent Claims

Amazon's prior art on-line purchasing included all of the material aspects of the current system that Cordance is accusing. The Federal Circuit's prior decision interpreting when ordering occurs in a shopping cart system precludes Cordance from distinguishing the prior art based on whether the purchase is initiated by the user clicking a "1-Click" button on a product page or on a "confirm" button on a shopping cart confirmation page. *Amazon.com*, 239 F.3d at 1343. The Court there found that both the confirmation of a shopping cart and Amazon's 1-Click ordering, order items with only one action. *Id.* ███████████████████

███████████████████████████████████████████

███ Alvisi Decl., at ¶¶ 52, 59-60. The customer's intentions and actions, including the number of mouse clicks, in getting to the ordering step are of no legal import, as the Federal Circuit found. *Amazon.com*, 239 F.3d at 1343. Because the '710 patent claims do not distinguish or exclude pre-ordering actions, or the use of a shopping cart ordering model they are anticipated and invalidated by Amazon's prior art system.

Furthermore, during prosecution of the '710 patent, Mr. Reed, the purported sole inventor, declared under oath that the independent claims of the '710 patent describe a method that requires customers to click more than once to initiate a purchase. In order to establish an earlier conception date and, thus, obtain the patent, Mr. Reed swore under oath to the Patent Office that a two-click process met the requirements of this element:

> Said document further describes at least at page 11, entry 1, third paragraph, ordering a product by *clicking a product ordering button*, such that a screen is produced including all necessary ordering information from the database. Additionally, said document describes at page 11, entry 1, fourth paragraph, that a customer may *click to confirm and order* an item.

9

Exh. 4 at AMZC122957 (emphasis added). The Patent Office relied on Mr. Reed's sworn testimony in issuing the patent, and Cordance cannot now assert a position contrary to that laid out in the declaration. Clicking on a confirm ordering button on a screen showing necessary ordering information (as described in Mr. Reed's declaration) is exactly what users of Amazon's prior art system did to initiate a purchase.

    **(1)**    **"providing a customer data storing information for a customer ..."**

The first element of independent claim 1 requires: "providing a customer data storing information for a customer usable to automatically complete an on-line purchase of an item from a seller." '710 Patent at 144:39-41. This Court has determined that "providing a customer data storing information for a customer" means "making available for use data about a customer that is stored in a data storage medium." D.I. 279 at 3.



Alvisi Decl., at ¶¶ 50-51.

*Id.*

    **(2)**    **"providing the customer with information from the seller ..."**

Claim 1 also requires: "providing the customer with information from the seller with respect to an item." '710 Patent at 42-43.

Alvisi Decl., at ¶¶ 48, 58

████████████ *Id.* at ¶¶ 48-49, 58.  There cannot be a genuine dispute that the Amazon prior art

system provided the customer with information about books available for purchase from

Amazon, the seller.

> **(3)** **"receiving from the customer an indication to initiate a purchase transaction for purchasing the item ..."**

Claim 1 additionally requires: "receiving from the customer an indication to initiate a

purchase transaction for purchasing the item including metadata associating said customer data

with said transaction." '710 Patent at 144:44-47.  This Court has construed "metadata

associating said customer data with said transaction" to mean "data that is used to identify the

stored customer data to be used in completing the transaction." D.I. 279 at 4–5.

Cordance cannot genuinely dispute that in the Amazon prior art system, ████████



████████████████████████████████████████ Alvisi Decl., at ¶¶

49, 52, 59. ████████████████████████████████████████

████████████████████ *Id.*, at 52, 59-60. ██████████████

████████████████████████████████████████████

████████████ *Id.* at ¶¶ 50, 52, 57, 59-60.

> **(4)** **"... automatically completing the purchase ..."**

Lastly, claim 1 requires: "in response to the received indication, automatically

completing the purchase of an item from the seller by processing said metadata associating said

customer data so as to complete the purchase transaction." '710 Patent at 144:48-51.  This Court

has construed the phrase "processing said metadata associating said customer data so as to

complete the purchase transaction" to mean "processing the metadata to retrieve the stored

customer data and processing the retrieved customer data to complete the purchase transaction."

D.I. 279 at 5.

There cannot be a genuine dispute that the Amazon prior art system, 

Alvisi Decl., at ¶ 52, 59-60.

*Id.*

*Id.*

*Id.*

**b.   Amazon System Performed Every Limitation of the Other Asserted Claims**

In addition to claim 1, Cordance also accuses Amazon's 1-Click technology of infringing independent claim 7 of the '710 patent.  Claim 7 includes nearly identical limitations as claim 1. '710 Patent, *compare* claims 1 and 7.  Cordance draws no distinction between the elements of claims in its infringement theories.

Alvisi Decl., at ¶¶ 61-65.

Cordance also asserts several dependent claims of the '710 patent in this litigation.

Alvisi Decl., at ¶¶ 66-69.

**C.   The '710 Patent Is Invalid In Light Of First Virtual Electronic Purchasing System That Was Publicly Available In 1994**

The claims are also invalid in light of an electronic purchasing system made available in 1994 by First Virtual Holdings, Incorporated.

1.      **The Prior Art: First Virtual Electronic Purchasing System**

On October 16, 1994—more than a year before Cordance filed its first patent

application—First Virtual Holdings launched its electronic purchasing system. Declaration of

Dr. Darren New in Support of Defendants' Opening Memorandum in Support of Their Motion

for Summary Judgment of Invalidity of U.S. Patent 6,757,710 B2 ("New Decl.") at ¶ 6. The

system is an implementation of the general idea of the "payment partner server" architecture that

Cordance described, but never implemented, ███████████████████████████████████

████████████████ Exh. 28, CORD285805-807; Alvisi Decl., at ¶ 71.

First Virtual users had accounts with information such as name, address telephone

number, and a email address. For buyers, the account information also included payment

information, such as Visa or Master Card account number that should be charged for purchased

information. New Decl., Exh. B at AMZC645612. For sellers, the account information also

included payout information, such as a checking account from a US bank into which funds

should be deposited for sold items. New Decl., Exh. B at AMZC645612. Each user account was

assigned a unique account number and stored on First Virtual computers. New Decl., at ¶ 11.

First Virtual used its system as part of its online shopping mall called Infohaus. *Id.*, at

AMZC645592. Shoppers could browse price and descriptions of the items merchants were

offering via the Infohaus mall, or the merchant' own websites. New Decl., at Ex. B. In the latter

case, the merchant used First Virtual's system to automatically complete purchase transactions

made by buyers registered with First Virtual by transferring funds charged to buyer's credit cards

to checking accounts specified in merchants' First Virtual accounts. Exh. B at *Id.* at AMZC

645560-561.

Once a buyer had an established First Virtual account, the buyer could purchase

13

information on the Internet, either through Infohaus or through merchants' websites, using the account. *Id.*, Exh. B at AMZC645556. Before the buyer was required to purchase an electronic information product, the First Virtual system allowed buyers to access the product so that the buyer could evaluate it before paying for it. *Id.*, at ¶ 11; Exh. B at AMZC645560-645565. The First Virtual called this policy "try before you buy." *Id.* At the time a buyer requested to evaluate a particular product, the system prompted the buyer for his or her First Virtual account number. *Id.* The account number was used by First Virtual to send the buyer an email requesting confirmation that the customer wanted to purchase the viewed information product. *Id.* The email included description of the item the buyer viewed, along with the item's price and currency. *Id.*, Exh. B at AMZC645560-65.

To purchase the item, the buyer had only to reply to the email with the word "yes." *Id.*, Exh. B at AMZ645556, AMZC654447, AMZC645560-62. Upon receipt of the response from the buyer, the system automatically completed the purchase transaction without any further action from the buyer. Alvisi Decl., at ¶ 75, New Decl. at ¶ 11. The reply email was required to included a transaction code. New Decl., at Ex. B at AMZC645557. The code was used to identify a transaction record stored at First Virtual's computers that included buyer's account number. *Id.* The system automatically retrieved the transaction code from the email, looked up the corresponding transaction record using the code, retrieved buyer's account number from the record and used the retrieved account number to lookup buyer's information in the account. *Id.* The system automatically charged the credit card specified in the buyer's account to complete the purchase. *Id.*, New Decl., at ¶ 11.

### 2. First Virtual System Constitutes prior Art Pursuant to 35 U.S.C. § 102 (b)

The asserted claims of the '710 patent are invalid in light of the First Virtual system.

There cannot be a genuine dispute that the First Virtual System was publicly launched on October 16, 1994—more than a year before Cordance filed its patent applications in 1996. New Decl., at ¶ 6. Detailed information about the First Virtual System was publicly disclosed and posted on First Virtual's website www.fv.com on October 16, 1994—more than a year before the filing date of the '205 patent. *Id.*, at ¶ 7. The author of these Internet publications, Dr. Darren New who was the Senior Software Architect at First Virtual at the time the system was deployed, explains that on October 16, 1994, the First Virtual System was on sale and in public use and a detailed description of the operations and functionality of the system became publicly available without any restrictions on First Virtual's website. *Id.*, at ¶¶ 6-10. Indeed, Drummond Reed— the inventor of the '710 patent and founder of Cordance— ████████████████ ████████████████████████ Exh. 28 at CORD285806.

Thus, it cannot be genuinely disputed that the detailed information published about the First Virtual System on First Virtual's website publicly accessible via the Internet without any restrictions constitutes prior art to the '710 patent under 35 U.S.C. 102(b). *In Re Klopfeistein,* (Fed. Cir. 2004). In addition, there cannot be a dispute that the First Virtual system was in public use and on sale as early as October 16, 1994—a year before the '205 patent was filed—when First Virtual launched it and offered it for use on the Internet. New Decl., at ¶ 10; *New Railhead Mfg.*, 298 F.3d at 1297 (Fed. Cir. 2002).

The First Virtual System is prior art to the '710 patent and because, as explained below, it performed each and every limitation of the asserted claims, the asserted claims of the '710 patent are invalid.

### 3.    First Virtual System Performed Every Limitation of Asserted Claims in as early as 1994

The First Virtual system automatically completed purchase transactions in a manner

claimed in the '710 patent.  Indeed, the First Virtual system performed each and every limitation of the asserted independent claims 1 and 7 and dependent claims 2, 3, 5, 6, 8 and 9.

### a.   First Virtual Performed Every Limitation of the Independent Claim 1

The First Virtual System performed each and every limitation of claim 1.  In addition, unrestricted publication on First Virtual's website described each and every limitation of claim 1 more than a year before the earliest possible priority date of the '710 patent—the filing date of the '205 patent.

### (1)   "providing a customer data storing information for a customer ..."

The first element of claim 1 "providing a customer data storing information for a customer usable to automatically complete an on-line purchase of an item from a seller" was construed by the Court to mean "making available for use data about a customer that is stored in a data storage medium."  '710 Patent at 144:39-41, D.I. 279 at 3.  First Virtual system did just that.  The system made available for use data about a customer that was stored in a data storage medium at First Virtual computers.  New Decl., at ¶ 11;, Exh. B at AMZC645553, AMZC645612.  Cordance cannot genuinely dispute that in 1994, First Virtual's publications described that before the buyer could use the system, the buyer had to open an account with First Virtual and provide personal information such as name, address, credit card number to the system.  New Decl., Exh. B at AMZC645553, AMZC645612.  The system stored this information in a data storage medium of a secure First Virtual computer.  *Id.*  The stored buyer information was then used to automatically complete purchases of electronic documents or other information offered by First Virtual or independent sellers.  New Decl., at ¶ 11.

<blockquote>

(2)    **"providing the customer with information from the seller ..."**

</blockquote>

The second element of claim 1 is "providing the customer with information from the seller with respect to an item." '710 Patent at 144:42-43.  There cannot be a genuine dispute that the First Virtual system provided buyers with information about electronic products available for sale through Infohaus.  Alvisi Decl., at ¶ 73.  The First Virtual website described that "[i]nformation for sale will always be presented with a description (provided by the seller) and a price (set by the seller)." New Decl., Exh. B at AMZC645556.  Using the First Virtual system, a buyer was allowed to browse information available for sale through Infohaus to find information that may be of interest to the buyer.  *Id.,* at AMZC645556.  In addition, it cannot be genuinely disputed that in the First Virtual system, after the buyer viewed an item under the "letting buyers try before they buy" policy, the buyer received an email seeking whether the buyer wanted to purchase the viewed item.  New Decl., at ¶ 11; Exh. B at AMZC645560-AMZC645565.  The email included the description of the item viewed by the buyer, the item's price and price currency.  New Decl., Exh. B at AMZC645560-AMZC645565.

<blockquote>

(3)    **"receiving from the customer an indication to initiate a purchase transaction for purchasing the item ..."**

</blockquote>

The third element of Claim 1 "receiving from the customer an indication to initiate a purchase transaction for purchasing the item including metadata associating said customer data with said transaction" was construed as "receiving from the customer an indication to initiate a purchase transaction for purchasing the item including data that is used to identify the stored customer data as data to be used in completing the transaction." '710 Patent at 144:44-47; D.I. 279 at 5.  The First Virtual system performed this element.  Alvisi Decl., at ¶ 74.

After the buyer accessed a document or other information available for sale under "letting

buyers try before they buy" policy, the buyer could purchase the item by responding to an email received from First Virtual seeking whether the buyer desired to purchase the viewed product. New Decl., Exh. B at ¶ 11; Exh. B at 64556, AMZC654447, AMZC645560-62. The "yes" response to the email indicated that the buyer wanted to purchase the product. The "yes" reply email—an indication to initiate a purchase transaction—received from the customer, included a transaction code that was used by the system to identify buyer information, such as buyer's credit card number, as information to use to complete the purchase. *Id.* at ¶ 11.

**(4)    "... automatically completing the purchase ..."**

The last element of Claim 1 is "in response to the received indication, automatically completing the purchase of an item from the seller by processing said metadata associating said customer data so as to complete the purchase transaction." '710 Patent at 144:48-51. As construed by the Court, the term means "in response to the received indication, automatically completing the purchase of an item from the seller by processing the metadata to retrieve the stored customer data and processing the retrieved customer data to complete the purchase transaction." D.I. 279 at 5.

The First Virtual system, in response to the received "yes" response from the customer, completed the purchase of the document or other information without any further input or interaction from the customer.[6] Alvisi Decl., at ¶ 75. The system automatically completed the transaction by using the transaction code retrieved from the "yes" response, identifying the transaction record including the buyer's account number, which was used by the system to

---

[6] Cordance maintains that the "payment partner server" in the '710 patent supports the claims. As described in the Concurrent Motion, that section does not include sufficient detail to comply with the written description requirement. But, should the Court agree with Cordance that effectuating of a payment is enough to support "automatically" completing a purchase transaction as claimed, the First Virtual did just that—effectuated payment for purchase transactions.

identify buyer's information, such as buyer's credit card, and used it to complete the transaction. New Decl., ¶ 11; Exh. B at AMZC645557.

      **b.**    **First Virtual Performed Every Limitation of the Other Asserted Claims**

The First Virtual system also performed each and every limitation of claim 7 as the claim includes nearly identical limitations as claim 1. Alvisi Decl., at ¶ 76-81. The system also performed limitations included in the asserted dependent claims and thus renders those claims invalid. *Id.*, at ¶¶ 82-85.

## V.    <u>CONCLUSION</u>

For the foregoing reasons, Amazon respectfully requests that the Court grant summary judgment of invalidity, finding at least claims 1, 2, 3, 5, 6, 7, 8, and 9 of the '710 patent invalid for anticipation based on the public use of Amazon's system in 1995 and First Virtual system in 1994.

OF COUNSEL:

Lynn H. Pasahow
J. David Hadden
Darren E. Donnelly
Saina S. Shamilov
Ryan Marton
FENWICK & WEST LLP
801 California Street
Mountain View, CA 94041
Tel: (650) 988-8500

Dated: January 23, 2009
Public Version Dated: January 30, 2009
900707 / 30763

POTTER ANDERSON & CORROON LLP

By:   */s/ D. Fon Muttamara-Walker*
      Richard L. Horwitz (#2246)
      David E. Moore (#3983)
      D. Fon Muttamara-Walker (#4646)
      Hercules Plaza, 6th Floor
      1313 N. Market Street
      Wilmington, DE 19801
      Tel: (302) 984-6000
      rhorwitz@potteranderson.com
      dmoore@potteranderson.com
      fmuttamara-walker@potteranderson.com

*Attorneys for Defendants*
*Amazon.com, Inc. and*
*Amazon Web Services, LLC*

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

## CERTIFICATE OF SERVICE

I, D. Fon Muttamara-Walker, hereby certify that on January 30, 2009, the attached

document was electronically filed with the Clerk of the Court using CM/ECF which will send

notification to the registered attorney(s) of record that the document has been filed and is

available for viewing and downloading.

I further certify that on January 30, 2009, the attached document was Electronically

Mailed to the following person(s):

Steven J. Balick
John G. Day
Tiffany Geyer Lydon
Ashby & Geddes
500 Delaware Avenue, 8th Floor
Wilmington, DE 19899
sbalick@ashby-geddes.com
jday@ashby-geddes.com
tlydon@ashby-geddes.com

Michael A. Albert
Robert M. Abrahamsen
Jeffrey O'Neill
Chelsea A. Loughran
Wolf, Greenfield & Sacks, P.C.
600 Atlantic Avenue
Boston, MA  02210-2206
malbert@wolfgreenfield.com
rabrahamsen@wolfgreenfield.com
jeffrey.oneill@wolfgreenfield.com
cloughran@wolfgreenfield.com

By:  /s/ D. Fon Muttamara-Walker
      Richard L. Horwitz
      David E. Moore
      D. Fon Muttamara-Walker
      POTTER ANDERSON & CORROON LLP
      (302) 984-6000
      rhorwitz@potteranderson.com
      dmoore@potteranderson.com
      fmuttamara-walker@potteranderson.com

757320 / 30763