**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| CORDANCE CORPORATION, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | Civil Action No. 06-491-MPT |
| | : | |
| AMAZON.COM, INC., | : | |
| | : | |
| Defendant. | : | |

**MEMORANDUM ORDER**

**Introduction**

In this patent matter, Cordance Corporation ("Cordance") alleges that

Amazon.com Inc. and Amazon Web Services, LLC (collectively, "Amazon") infringe

U.S. Patent Nos. 6,757,710 ("the '710 patent"), 6,044,205 ("the '205 patent), 5,862,325

("the '325 patent"), and 6,088,717 ('the '717 patent").[1]  Amazon counterclaimed for

declaratory judgment that Cordance infringes its U.S. Patent No. 6,269,369 ("the '369

patent").  Cordance initiated this action on August 8, 2006.  On September 9, 2006,

Cordance filed its first amended complaint.  Amazon responded on October 23, 2006

by answering and counterclaiming against Cordance.  In its initial counterclaims,

Amazon requested declaratory relief of noninfringement and invalidity of the Cordance

patent and infringement of the '369 patent.

The somewhat tortured procedural history of this matter continues as follows.

---

[1] Cordance initially sued Amazon on the '710 patent.  The other three patents
were added in its second amended complaint.

On December 6, 2006, the first of multiple scheduling orders were entered.  The original cut-off date for amendments to the pleadings was August 31, 2007. Subsequently, on December 11, 2006, Amazon amended its counterclaims to add a claim for correction of inventorship of the '369 patent under 35 U.S.C. § 256.  On August 6, 2007, the parties filed a stipulation to amend the scheduling order changing the final date for amendment of pleadings to October 8, 2007.  The court granted the stipulation the following day.  Roughly a month later, as a result of a prior telephonic status conference, an amended scheduling order changing all dates was filed.  In that amendment, the due date for amended pleadings was December 7, 2007.

On November 16, 2007, the parties stipulated to the filing of Cordance's second amended complaint.  On December 11, 2007, the scheduling order was amended again, which changed the date for amendments to the pleading to June 6, 2008. Amazon filed its answer and second amended counterclaims on January 2, 2008. None of the counterclaims raised unenforceability by inequitable conduct.

On June 6, 2008, Cordance filed its third amended complaint, to which Amazon responded on June 23, 2008.  In its filing, Amazon added a counterclaim for unenforceability based on patent misuse and unclean hands.

The discovery schedule was again amended on November 13, 2008.

During a status conference on October 15, 2008, Amazon advised of its intent to amend its answer to add inequitable conduct claims.  The parties apparently could not reach agreement and Amazon filed a motion for leave to file its original first amended answer, defenses and counterclaims to Cordance's third amended complaint.  A day before Cordance's opposition was to be filed, Amazon advised that it intended to further

2

amend its answer.[2]  Amazon provided Cordance with a copy of its proposed further amended answer on December 24, 2008, and on December 29, 2008, Amazon re-filed its motion for leave to amend.  Briefing on the motion was completed on January 29, 2009.  Of note, the discovery schedule was again amended on January 15, 2009.  This memorandum order addresses Amazon's motion to amend its answer to add claims of inequitable conduct.

**The Parties's Contentions**

Amazon contends that its motion to amend is properly and timely filed pursuant to Fed. R. Civ. P. 15(a) and maintains that Cordance would not be prejudiced by the addition of new inequitable conduct counterclaims which are based on two general grounds:  the failure to disclosure material prior art, of which the inventors were aware, to the PTO during the prosecution of the Cordance patents; and, the submission of a false declaration by Reed and petition to change inventorship during the prosecution of the '710 patent which Amazon claims occurred to overcome a prior art rejection.  It denies that the motion is brought in bad faith and was unduly delayed since it was only through the recent inventor depositions[3] that the details of the alleged inequitable conduct were learned.  Amazon reasons that the proposed amendment is not futile since it has plead the requirements of inequitable conduct.  It further argues that Cordance is not unfairly prejudiced by the proposed amended pleading since it was

_____

[2] Amazon asserts that the need to further amend its counterclaim for inequitable conduct resulted from the deposition of Drummond Reed, one of the inventors.  The depositions of the inventors did not occur until the November-December 2008 time frame.

[3] Amazon accuses Cordance of delaying the depositions of and other discovery from the inventors until recently.

made aware of Amazon's intent and adequate time remains for Cordance to prepare its case in response.

Not surprisingly, Cordance disagrees with Amazon's position.  It contends that since Amazon's motion to amend is untimely under the scheduling order, the motion should be judged under the heightened "good cause" standard of Rule 16(b). Cordance points out that Amazon failed to address the requirements of Rule 16(b), which authorizes the scheduling order to be modified only for good cause and by consent of the court.  It maintains that Amazon has not shown good cause because it failed to actively pursue discovery which it needed prior to the deadline and filed its motion to amend seven months after the June 6, 2008 deadline without any legitimate explanation for its delay.  It relies on the following to show lack of diligence:

•      Amazon possessed the documents that form the basis of its inequitable conduct pleadings for more than a year and at least six months before the deadline to amend pleadings.

•      Amazon never attempted to depose any of the six inventors prior to the deadline to amend the pleadings, with its first efforts to depose not occurring until October 2008.[4]  Amazon allegedly never requested that the inventors be made available earlier.

•      Even after the deposition of one of the inventors (Heymann) who lives in Asia, was scheduled for October 7, Amazon cancelled the deposition without

---

[4] Cordance emphasizes that four of the six inventors are located in Seattle and could have been subpoenaed to be deposed at anytime.  Although the other two inventors live in Asia, Cordance notes that it agreed to accept service for those two inventors and arranged their travel.

explanation a couple days before it was originally to occur.

• Although Amazon argues that the inventors' depositions establish the basis for its inequitable conduct claim, its proposed amended answer does not rely upon their deposition testimony.

• Amazon never requested an extension to the deadline or moved to compel the appearance of the inventors.

Cordance also contends that the motion should be denied under Rule 15, based, in part, on Amazon's failures previously noted herein, which prove undue delay, bad faith and dilatory motive.  It further submits that the motion is futile because:  a specific individual who committed the purported inequitable conduct is not identified;[5] averments amounting to materiality have not been alleged;[6] and, no facts have been alleged which show intent.[7]

Cordance asserts that the proposed amendment is prejudicial because with discovery now closed, it cannot obtain the evidence which it needs to defend against the new inequitable conduct allegations.  It notes that it cannot obtain deposition testimony from the six inventors because five no longer have any relationship to Cordance and two live in Asia.  Further, it maintains that to reopen discovery would require Cordance to expend significant sums to respond to Amazon's newly revealed

---

[5]Cordance maintains that the "specific individual who is accused of committing the fraud" must be identified.

[6] Cordance argues that Amazon just used "boilerplate language" and did not plead materiality with particularity since it cannot be determine how or why the prior art is material.  Cordance further contends that Amazon mischaracterizes an inventor's deposition (Mushero) to support its purported false inventorship argument.

[7] Cordance posits that Amazon cannot rely "on information and belief," but must plead facts showing an intent to deceive.

theories.

**Discussion**

### Rules 15(a) and 16(b)

The court ordinarily considers motions to amend the pleadings under Rule 15(a) which provides that "leave shall be freely given when justice so requires."  Although the determination of whether to grant or deny a motion to amend is within the discretion of the court, under *Foman v. Davis*,[8] the Supreme Court has instructed that leave to amend should be freely granted "in the absence of . . . undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of the amendment, etc."[9]

Generally, "[d]elay alone is not sufficient to justify denial of leave to amend."[10] The more dispositive factor in determining whether leave should be granted is prejudice to the non-moving party.[11]  In proving prejudice, the non-moving party "must do more than merely claim prejudice; it must show that it was unfairly disadvantaged or deprived of the opportunity to present facts or evidence which it would have offered had the amendments been timely."[12]

---

[8] 371 U.S. 178 (1962).

[9] *Foman*, 371 at 182.  *See also*, *Arthur v. Maersk, Inc.*, 434 F.3d 196, 203 (3d Cir. 2006)

[10] *Arthur*, 434 F.3d at 204 (wherein the Third Circuit noted that "only one appellate court . . . has approved . . . denial of leave to amend based on a delay of less than one year."

[11] *Id*.

[12] *Bechtel v. Robinson*, 886 F.2d 644,652 (3d Cir. 1989) (internal citations omitted); *Kiser v. Gen. Elec. Co.*, 831 F.2d 423, 427-28 (3d Cir. 1987).

Balanced with Rule 15(a) is Rule 16(b), which governs modification to the court's scheduling order.  Under Rule 16(b), a more stringent standard is applied which requires a showing of good cause by the movant and consent of the judge.  This jurisdiction recognizes that motions to amend which, in effect, operate to change the scheduling order, are controlled by 16(b).[13]  The good cause element requires the movant to demonstrate that, despite diligence, the proposed claims could not have been reasonably sought in a timely manner.[14]  In contrast to Rule 15(a), the good cause standard under Rule 16(b) hinges on diligence of the movant, and not on prejudice to the non-moving party.[15]

### Rules 8 and 9(b) and the Standard for Inequitable Conduct

Because the patent application process is *ex parte*, patent applicants and their counsel, or those involved in the preparation and prosecution of patent applications, owe a duty of candor, honesty and good faith to the PTO.  The duty of candor, good faith and honesty includes the obligations to submit truthful information and to disclose to the PTO information known to the patent applicants or their attorneys which is material to the examination of the patent application.[16]  Information is deemed material if there is a substantial likelihood that a reasonable examiner would have considered the material important in deciding whether to issue the application as a patent.[17]

---

[13] *E. Minerals & Chems. Co. v. Mahan*, 225 F.3d 330, 340 & n. 18 (3d Cir. 2000).
[14] *Samick Music Corp. v. Delaware Music Indus., Inc.*, 1992 WL 39052, at * 6-7 (D. Del. Feb. 12, 1992).
[15] *Slip Track Sys., Inc. v. Metal Lite, Inc.*, 304 F.3d 1256, 1270 (Fed. Cir. 2002).
[16] *Elk Corp. of Dallas v. GAF Bldg. Materials Corp.*, 168 F.3d 28, 30 (Fed. Cir. 1999).
[17] *Elk Corp.*, 168 F.3d at 31.

Breach of the duty of candor may render a patent unenforceable for inequitable

conduct.[18]  To *prove* unenforceability by inequitable conduct, "the alleged infringer must

provide clear and convincing evidence of (1) affirmative misrepresentations of a

material fact, the failure to disclosure material information, or submission of false

material information and (2) an intent to deceive."[19]  When analyzing whether

inequitable conduct occurred, the court balances the levels of materiality and intent.

        Since inequitable conduct is a claim sounding in fraud, Rule 9(b) applies.  Under

that rule, the elements of inequitable conduct must be pled with particularity.  The

purpose of the heightened pleadings requirements of Rule 9(b) are intended to "deter

the filing of charges of fraud as a pretext for discovery of unknown wrongs."[20]

Inequitable conduct allegations, however, "remain subject to the liberal pleading

standard of Rule 8, which requires  only a 'short and plain' statement of a claim or

defense," the purpose of which is to place the opposition on notice of the misconduct

charged.[21]  Therefore, "'pleadings that disclose the name of [the allegedly withheld]

relevant prior art and disclose the acts of the alleged fraud fulfill the requirements of

Rule 9(b).'"[22]  Further, the particularity requirement does not mandate that a party

---

[18] *M. Eagles Tool Warehouse, Inc. v. Fisher Tolling Co.*, 439 F.3d 1335, 1339
(Fed. Cir. 2006); 37 CFR § 1.56.
    [19] *Impax Labs., Inc. v. Aventis Pharms., Inc.*, 468 F.3d 1366, 1374 (Fed. Cir.
2006).
    [20] *Stowe Woodward L .L.C. v. Sensor Products, Inc.*, 230 F.R.D. 463, 466 (W.D.
Va. 2005).
    [21] *McKesson Information Solutions LLC v. The Trizetto Group, Inc.*, 2005 WL
914776, at *3 (D. Del. Apr. 20, 2005); *TruePosition, Inc. v. Allen Telecom, Inc.*, 2003
WL 151227, at *5 (D. Del. Jan 21, 2003).
    [22] *France Telecom, S.A. v. Novell, Inc.*, 2002 WL 31355255, at *3 (D. Del. Oct.
17, 2002) (quoting *EMC Corp. v. Storage Tech. Corp.*, 921 F. Supp. 1261, 1263 (D.
Del. 1996).

plead the date, time, or place of the alleged fraud, if that party uses "an alternative means of injecting precision and some measure of substantiation into [its] allegations of fraud."[23]  Thus, "courts still must apply Rule 9(b) with some flexibility so that a party is not required to plead issues which may have been concealed by an adverse party."[24]

**Analysis**

**Rules 8(a), 9(b) and 15(a)**

On the record presented, the court finds that Amazon is pleading new legal theories based on additional information which was recently provided and confirmed through the depositions of the inventors.  Although Cordance maintains that Amazon possessed the documents which form the basis of its inequitable conduct pleadings for more than a year,[25] in light of the "pleading with particularity requirement of Rule 9(b)," it was appropriate for Amazon to confirm the factual allegations through discovery.  Cordance also asserts that Amazon never attempted to depose the inventors prior to the deadline to amend pleadings.  The record is not entirely clear on what completely transpired between the parties' counsel regarding the inventors depositions, with each side pointing the finger at the other as to who is to blame for any delay in completing the necessary discovery of the inventors.  What is clear is that as early as March 2007,

---

[23] *Martek Biosciences Corp. v. Nutrinova Inc.*, 2004 WL 2297870, at *3 (D. del. Oct. 8, 2004).

[24] *Mars Inc. v. JCM American Corp.*, 2006 WL 1704469, at *5 (D.N.J. June 14, 2006) (citing *Rolo City Investing Co. Liquidation Trust* , 155 F.3d 644, 658 (3d Cir. 1998).

[25] Amazon notes that Cordance only produced all the documents from inventors Heymann and Mushero and the "vast majority" of documents from inventor Jones, respectively, until September and November 2008.

9

Amazon subpoenaed inventor Reed, which Cordance's counsel[26] opposed as being duplicitous of the document production requested of Cordance.  Further, Amazon noticed the depositions of the inventors for at least record depositions in the January-February 2008 time frame.  As evidenced by the email exchange beginning in May 2008, Amazon continued to attempt to schedule the depositions of Mushero and Heymann, the inventors living in Asia, before the end of August 2008.[27]  Also in late May, it attempted to coordinate the deposition of inventor Banay for the early June 2008 time frame with the deposition of an Amazon witness in Seattle.[28]  Although the cancelling of the Heymann's deposition for October 7, 2008 is not fully explained, the deposition was finally taken in November 2008.  The court concludes that efforts were made by Amazon before the amended pleadings cut-off date to elicit relevant information from the inventors.

Further, Amazon did not unduly delay in the filing of its motion to amend because: 1) the inventors' depositions occurred in November-December 2008, with Reed's deposition being completed on December 16, 2008;[29] 2) it provided a proposed amended answer on November 25, 2008 to Cordance, to which Cordance refused to stipulate; 3) Amazon filed the original motion for leave to amend on December 1, 2008;

---

[26] Cordance's counsel acknowledged in a letter dated March 15, 2007 that it represented Reed "in all matters relating to the above-captioned lawsuit."

[27] Before either inventor would agree to voluntarily appear for deposition, they requested certain conditions for payment of travel and other related expenses, and location and dates of the depositions be met, to which Amazon generally agreed. Cordance also advised that the schedules for those inventors had not been finalized for the summer.

[28] According to the emails, this time frame was not convenient to Cordance's counsel.

[29] Reed is the only inventor named on all Cordance's patents-in-issue.

4) following Reed's deposition and before Cordance opposition was due, Amazon advised that it would be further amending its answer and provided Cordance with the redrafted proposed amended answer on December 24, 2008.  Cordance did not consent to the redrafted proposed amendment; and, 5) on December 29, 2008, Amazon filed a motion for leave to amend.

Cordance reliance on *Venetec Int'l., Inc v. Nexus Medical, LCC*[30] and *Inline Connection Corp v. AOL Time Warner Inc.*[31] is misplaced and both cases are distinguishable.  In *Venetec*, defendant attempted to add seven new claims of false marketing as a knee jerk response to plaintiff's assertion of similar claims against it. Further, defendant admittedly had knowledge of the facts underlying those additional claims and made no attempt to investigate the proposed defense until after plaintiff amended its complaint.

Similarly, in *Inline Connection Corp.*, the defendants admittedly had all the information necessary to plead with particularity new inequitable conduct allegations at least three years before the proposed amendments were filed.  Moreover, in *E Minerals & Chems. Co v. Mahan*,[32] another case upon which Cordance relies, denial of the motion to amend was upheld because the moving party provided an insufficient basis for why the new claims could not be filed before the deadline.

As noted herein, prejudice to the non-moving party is the "touchstone for the denial of an amendment."[33]  Cordance's arguments regarding prejudice primarily rest on

---

[30] 541 F. Supp. 2d 612 (D. Del. 2008)
[31] 237 F.R.D. 361(D. Del. 2006).
[32] 225 F.3d 330, 340 (3d Cir. 2000).
[33] *Boileau v. Bethlehem Steel Corp.*, 730 F.2d 929, 938 (3d Cir. 1984).

11

the fact that discovery is now closed and the unavailability of the inventors.  It also

contends that it relied on Amazon's pleading in preparing its litigation strategy and the

"significant costs" it would incur to adequately respond to Amazon's new theories.  The

court has doubts that the inventors are "unavailable" (i.e. non-communicative or non-

cooperative) since Cordance's counsel represented each in their depositions.

Moreover, because inequitable conduct is a matter tried to the court rather than the jury,

case dispositive motions are generally not allowed by this judge on such issues no

matter when they are pled.  Further, the availability of the information regarding

inequitable conduct is primarily within the control of Cordance.

Cordance argues that Amazon's proposed pleadings do not meet the

requirements of 9(b).  As noted previously herein, Amazon need only to disclose the

relevant material information and the acts of alleged fraud to apprise Cordance of

"'what is being alleged in a manner sufficient to permit responsive pleadings.'"[34]  In

paragraphs 11 through 28 and 30 through 40, Amazon's proposed counterclaim on

inequitable conduct discloses that the inventors and/or patent counsel intentionally and

with the intent to deceive failed to disclose the Groupmaster Offering, Backweb

technology and the Broadvision Whitepaper, which are prior art references allegedly

recognized by the inventors as potentially material to the patents-in suit.  The

allegations maintain that such prior art was reviewed, studied and/or known to the

inventors and not disclosed to the PTO.  Regarding the Open Market Patents, inventor

Reed is accused of being aware that those three patents are relevant to an ecommerce

---

[34] *France Telecom.*, 2002 WL 31355255, at *3 (quoting 5 *Wright & Miller* § 1296 (1990)); *see also McKesson*, 2005 WL 914776, at *3.

system, including shopping carts, session identifiers and "instant payments," processes related to the subject matter of the '710 patent.  Similar accusations are raised against Reed regarding the IBM reference of which he had been informed as being very similar to the then pending '205 and '325 patents.  In reference to the proposed false inventorship allegations, Amazon outlines the alleged false statements made by Reed in his declaration to circumvent the critical date set by the PTO in its February 28, 2003 rejection of the '710 patent application and points to testimony of certain inventors in their depositions which allegedly refute Reed's representations to the PTO, including their claims to have contributed to the development of the payment partner server, which is part of the '710 patent.  While Cordance disagrees with Amazon's characterization of the testimony, including Reed's sworn statements, Amazon's proposed amendment suffices to place Cordance on notice of the misconduct with which it is charged.

Further, at this juncture, the court cannot conclude that the proposed amendment would be futile since the allegations are sufficient to "raise a right to relief above the speculative level, on the assumption that all the allegations in the [proposed amendment] are true,"[35] and  Amazon provided "the 'grounds' of [its] 'entitle[ment] to relief' beyond labels and conclusions,"[36] with "enough facts to state a claim to relief that is plausible on its face."[37]

---

[35] *Bell Atlantic Corporation v. Twombly*, 127 S. Ct. 1955, 1965 (2007) (outlining the standard for a motion to dismiss under 12(b)(6)); *see also Victaulic Co. v. Tieman*, 499 F.3d 227, 234 (3d Cir. 2007).
[36] *Twombly*, 127 S. Ct. at 1965.
[37] *Id.* at 1974.

**Rule 16(b)**

Cordance maintains that Amazon has unduly delayed in moving to amend to add its inequitable conduct claims and has failed to establish its diligence in seeking to add such claims.   In light of the previous findings herein, the court determines that Amazon has demonstrated good cause to amend its answer and counterclaims to add the inequitable conduct claims.  The history of this matter shows that the scheduling order has been modified several times to serve the interests of the parties.[38]  The court finds that Amazon filed its amendment shortly after it was able to satisfy the pleading requirements of Rule 9(b).  Moreover, the court has already determined that there was no undue delay or a likelihood of prejudice to Cordance.  As a result, Amazon has satisfied the "good cause" requirement of Rule 16.  Accordingly, Amazon's motion for leave to amend should be granted.

THEREFORE, for the reasons contained in the Memorandum Order,

IT IS ORDERED that Amazon's motion for leave to amend (D.I. 286) specifically paragraphs 11 through 28 and 30 through 40  is GRANTED.  Paragraph 29, captioned "Other Prior Art," fails to meet the requirements of Rule 8(a) and does not come close to pleading with particularity under Rule 9(b).  Therefore, Amazon's motion to amend to include paragraph 29 is DENIED.

IT IS FURTHER ORDERED that although Amazon's motion to amend has been granted, it does not mean that inequitable conduct will be tried with the rest of the

---

[38] The court estimates various modifications of the scheduling order occurred approximately seven times.  Obviously, neither side, properly or improperly, viewed the scheduling dates as written in stone.

14

issues in the case, and the court will consider how to accommodate the inequitable conduct claims in the current pretrial management order.

IT IS FURTHER ORDERED that a telephonic status conference will be conducted on **Monday, March 2, 2008 at 10:30 a.m.** to discuss proposed changes to the scheduling order.  Amazon's counsel shall initiate the call.

February 18, 2009                                         /s/ Mary Pat Thynge
                                                          UNITED STATES MAGISTRATE JUDGE