IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| CORDANCE CORPORATION, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 06-491-MPT |
| | ) | |
| AMAZON.COM, INC., | ) | |
| | ) | |
| and | ) | |
| | ) | |
| AMAZON WEB SERVICES, LLC, | ) | |
| | ) | |
| Defendants. | ) | |

**CORDANCE'S MEMORANDUM IN OPPOSITION TO AMAZON'S
MOTION FOR SUMMARY JUDGMENT RE LACK OF WRITTEN
DESCRIPTION AND PROSECUTION LACHES FOR U.S. PATENT 6,757,710 B2**

ASHBY & GEDDES
Steven J. Balick (I.D. #2114)
John G. Day (I.D. #2403)
Tiffany Geyer Lydon (I.D. #3950)
500 Delaware Avenue, 8th Floor
P.O. Box 1150
Wilmington, DE 19899
302-654-1888
sbalick@ashby-geddes.com
jday@ashby-geddes.com
tlydon@ashby-geddes.com

*Attorneys for Plaintiff Cordance Corporation*

*Of Counsel:*

Michael A. Albert
Robert M. Abrahamsen
Jeffrey C. O'Neill
WOLF, GREENFIELD & SACKS, P.C.
600 Atlantic Avenue
Boston, Massachusetts 02210
617-646-8000

Dated: February 23, 2009

{00276392;v1}

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................ iii

I.  SUMMARY OF ARGUMENT ................................................................................ 1

II.  CONCISE STATEMENT OF FACTS. ................................................................... 2

    A.  Written Description .......................................................................................... 2

    B.  Prosecution Laches .......................................................................................... 3

III.  LEGAL STANDARD ............................................................................................ 3

    A.  Summary Judgment Legal Standard ................................................................. 3

    B.  Written Description Legal Standard ................................................................. 4

    C.  Prosecution Laches Legal Standard ................................................................. 5

IV.  ARGUMENT .......................................................................................................... 5

    A.  The Level of Ordinary Skill is a Disputed Question of Fact ........................... 6

    B.  A Reasonable Jury Could Find that the
        '710 Patent Adequately Describes its Claims .................................................. 7

        1.  Amazon's Expert's Analysis is Incomplete ......................................... 7

        2.  The '710 Patent Describes "Completing a Purchase Transaction .............. 8

        3.  The '710 Patent Describes "Automatically
            Completing the Purchase of an Item" ................................................ 10

        4.  The '710 Patent Describes "Automatically
            Completing the Purchase of an Item from the Seller" ....................... 12

        5.  The '710 Patent Describes all of its Claims ...................................... 13

    C.  A Reasonable Jury Could Find that the '205 Patent
        Adequately Describes the Claims of the '710 Patent ...................................... 14

        1.  A Communications Object is not Essential or Critical ...................... 14

i

2.    The '205 Patent Describes "Automatically Completing an On-line Purchase" ..................................................................15

3.    The '205 Patent Describes all of the Claims of the '710 Patent ...............17

D.    Amazon does not have a Prosecution Laches Defense as a Matter of Law...........17

V.    CONCLUSION...................................................................................................20

## TABLE OF AUTHORITIES

Amgen Inc. v. Hoechst Marion Roussel, Inc.,
    314 F.3d 1313 (Fed. Cir. 2003) ........................................................................11

Ariad Pharms., Inc. v. Eli Lilly & Co.,
    529 F. Supp. 2d 106 (D. Mass. 2007)...............................................................17

Chiron Corp. v. Genentech, Inc.,
    363 F.3d 1247 (Fed. Cir. 2004) .....................................................4, 10, 13, 17

Falkner v. Inglis,
    448 F.3d 1357 (Fed. Cir. 2006) .........................................................................4

Graham v. John Deere Co. of Kan. City,
    383 U.S. 1 (1966) ...............................................................................................6

Intuitive Surgical, Inc. v. Computer Motion, Inc.,
    No. 01-203, 2002 WL 31833867 (D. Del. 2002) .....................................5, 18, 19

Invitrogen Corp. v. Clontech Laboratories, Inc.,
    429 F.3d 1052 (Fed. Cir. 2005) .........................................................................4

Kingsdown Med. Consultants v. Hollister, Inc.,
    863 F.2d 867 (Fed. Cir. 1988) .........................................................................20

Pharmacia & Upjohn Co. v. Sicor Inc.,
    447 F. Supp. 2d 363 (D. Del. 2006) ..................................................................4

PowerOasis, Inc. v. T-Mobile USA, Inc.,
    522 F.3d 1299 (Fed. Cir. 2008) .........................................................................3

Reiffin v. Microsoft Corp.,
    214 F.3d 1342 (Fed. Cir. 2000) ..................................................................4, 6, 20

Rockwell Intern. Corp. v. U.S.,
    147 F.3d 1358 (Fed. Cir. 1998) .........................................................................4

Stambler v. RSA Security, Inc.,
    243 F.Supp. 2d 74 (D. Del. 2003) ...............................................................18, 19

Suntiger, Inc. v. Scientific Research Funding Group,
    189 F.3d 1327 (Fed. Cir. 1999) .......................................................................4, 7

Symbol Techs., Inc. v. Lemelson Med., Educ. & Research Found., L.P.,
    422 F.3d 1378 (Fed. Cir. 2005) ........................................................5, 17, 18, 19

Tronzo v. Biomet, Inc.,
    156 F.3d 1154 (Fed. Cir. 1998) ..............................................................4, 14

Union Oil Co. of California v. Atlantic Richfield Co.,
    208 F.3d 989 (Fed. Cir. 2000) .......................................................................6

Vas-Cath, Inc. v. Mahurkar,
    935 F.2d 1555 (Fed. Cir. 1991) ....................................................................4

**Statutes**

35 U.S.C. § 112(1) ..............................................................................2, 6, 14, 20

35 U.S.C. § 282....................................................................................................4

Cordance herewith opposes Amazon's Motion for Summary Judgment Re Lack of Written Description Support and Prosecution Laches (D.I. 316). Whether a patent contains adequate written description support is a question of fact. As Cordance's declarations establish, there is support for each disputed claim. Amazon's contrary contentions create at most a fact dispute. As for Amazon's defense of prosecution laches, Amazon has cited no case where any court has found a patent unenforceable for prosecution laches on facts even remotely similar to these, while several have granted summary judgment of <u>no</u> prosecution laches in situations very much like this one. Amazon's motion on this issue should be denied, and Cordance's granted.

## I.   **SUMMARY OF ARGUMENT**

Whether a patent contains an adequate written description under 35 U.S.C. § 112 is a question of fact. Amazon, through its expert, argues that the '710 Patent does not adequately describe three aspects of the claims: (1) "completing a purchase transaction"; (2) "automatically completing the purchase of an item"; and (3) "automatically completing the purchase of an item from the seller." Cordance, through declarations from its expert, Dr. Shamos, and the inventor, Mr. Reed, shows that these three aspects of the claims are adequately described, as are all of the limitations. The competing declarations create a factual dispute for the jury.

The declaration of Amazon's expert, Dr. Alvisi, is critically flawed for two reasons. First, Dr. Alvisi improperly limited his analysis to only one section of the '710 Patent. Despite Cordance's interrogatory responses that indicated that support may be found throughout the patent, Dr. Alvisi limited his search to only one section of the patent, the one titled "Payment Service Objects and Partner Servers." Dr. Alvisi does not state that the **entire** '710 Patent fails to describe the claims. Rather he states only that "[t]he 'Payment Service Objects and Partner Servers' section … does not describe the steps of claim 1 or 7. . . ." (Alvisi Decl. ¶ 31) Because Dr. Alvisi did not look for support in the remainder of the patent, his analysis fails to provide

even a prima facie case in support of Amazon's motion. Secondly, Dr. Alvisi does not meet the level of ordinary skill in the art, and thus is not qualified to opine as to whether the '710 Patent adequately describes the claims. A person of ordinary skill in the art of the '710 Patent would have experience in e-commerce. Dr. Alvisi does not list any experience with e-commerce on his resume or in his declaration.

Prosecution laches is an equitable doctrine imposed only in extreme cases to bar enforcement of a patent that issued after an unreasonable and unexplained delay in prosecution, such as delays of 18 to 39 years. By contrast, Cordance's prosecution was well within the range of the ordinary – indeed, on the fast side. Cordance was simultaneously prosecuting three applications; its last three patents issued within three years of filing; and the total duration of prosecution was eight years. This Court has recently found, on two occasions, no prosecution laches as a matter of law in similar factual situations. Amazon has not made any attempt to distinguish those cases. Amazon itself is currently prosecuting applications that claim priority to applications filed twelve years ago, and surely would not suggest that its own actions constitute prosecution laches. Amazon has no factual or legal basis for its defense of prosecution laches. The Court should deny Amazon's motion for summary judgment and grant Cordance's.

## II.    CONCISE STATEMENT OF FACTS[1]

### A.    Written Description

Amazon argues that the claims of the '710 Patent are invalid because the claims are not adequately described as required by 35 U.S.C. § 112(1). In support of its argument, Amazon cites the declaration of its expert, Dr. Alvisi. Cordance provides the declarations of its expert, Dr. Shamos, and the inventor, Mr. Reed, to establish the contrary position, i.e. that the '710 Patent does adequately describe its claims.

---

[1] The nature and stage of the proceedings has been set forth in other Oppositions filed herewith.

**B.**     **Prosecution Laches**

Cordance has five patents, which are all part of the same patent family:

- Cordance's first patent application was filed on February 29, 1996 and issued as U.S. Patent No. 6,044,205 on March 28, 2000.  (Reed 2nd Decl. ¶ 5.)

- Cordance's second patent application was a continuation-in-part of the first application, was filed on filed on September 27, 1996, and issued as U.S. Patent No. 5,862,325 on January 19, 1999.  (Id. ¶ 6.)

- Cordance's third patent application was a continuation of the second application, was filed on August 31, 1998, and issued as U.S. Patent No. 6,088,717 on July 11, 2000.  (Id. ¶ 7.)

- Cordance's fourth patent application was a continuation of the third application, was filed on May 15, 2000, and issued as U.S. Patent No. 6,345,288 on February 5, 2002.  (Id. ¶ 8.)

- Cordance's fifth patent application was a continuation of the fourth application, was filed on February 5, 2002, and issued as U.S. Patent No. 6,757,710 on June 29, 2004.  (Id. ¶ 9.)

As indicated above, from 1996 to 1999, Cordance was simultaneously prosecuting three applications.  The final three applications each issued about two years after they were filed, which is significantly faster than the average 2006 pendency of 31 months.  See Ariad Pharms., Inc. v. Eli Lilly & Co., 529 F. Supp. 2d 106, 136-37 (D. Mass. 2007).

## III.     LEGAL STANDARD

### A.     Summary Judgment Legal Standard

Summary judgment is inappropriate "if the dispute about a material fact is 'genuine', that is, if the evidence is such that a reasonable jury could return a verdict for the non-moving party."  PowerOasis, Inc. v. T-Mobile USA, Inc., 522 F.3d 1299, 1303 (Fed. Cir. 2008).  In a summary judgment motion, the moving party bears the burden of showing the absence of a genuine issue of material fact, and all reasonable inferences must be resolved in the nonmovants's favor."

Rockwell Intern. Corp. v. U.S., 147 F.3d 1358, 1361-62 (Fed. Cir. 1998). Amazon has failed to put forth evidence demonstrating an absence of dispute over material facts.

### B.     Written Description Legal Standard

The issue of compliance with the written description requirement is a question of fact. Tronzo v. Biomet, Inc., 156 F.3d 1154, 1158 (Fed. Cir. 1998). Conflicting expert declarations concerning the written description support is "an old-fashioned factual dispute" that creates grounds for denying summary judgment. Suntiger, Inc. v. Scientific Research Funding Group, 189 F.3d 1327, 1334 (Fed. Cir. 1999); Pharmacia & Upjohn Co. v. Sicor Inc., 447 F. Supp. 2d 363 (D. Del. 2006) (holding that on summary judgment the Court "may not make credibility determinations or weigh the evidence," and denying summary judgment for lack of written description based on conflicting expert testimony). Because a patent is presumed valid under 35 U.S.C. § 282, the evidentiary burden for "invalidating a claim requires a showing by clear and convincing evidence that the written description requirement has not been satisfied." Invitrogen Corp. v. Clontech Laboratories, Inc., 429 F.3d 1052, 1072 (Fed. Cir. 2005).

To meet the written description requirement, "the applicant does not have to describe exactly the subject matter claimed, [rather] the description must clearly allow persons of ordinary skill in the art to recognize that he or she invented what is claimed." Vas-Cath, Inc. v. Mahurkar, 935 F.2d 1555, 1563 (Fed. Cir. 1991) (internal punctuation omitted). "A claim will not be invalidated on § 112 grounds simply because the embodiments of the specification do not contain examples explicitly covering the full scope of the claim language." Falkner v. Inglis, 448 F.3d 1357, 1366 (Fed. Cir. 2006). The sufficiency of the description is measured from the point of view of one of ordinary skill in the art as of the time the description is filed. Reiffin v. Microsoft Corp., 214 F.3d 1342, 1346 (Fed. Cir. 2000). For this reason, "a patentee preferably omits from the disclosure any routine technology that is well known at the time of application." Chiron Corp. v. Genentech, Inc., 363 F.3d 1247, 1254 (Fed. Cir. 2004).

C. **Prosecution Laches Legal Standard**

Prosecution laches is an equitable doctrine imposed only in extreme cases to bar

enforcement of a patent that issued after an unreasonable and unexplained delay in prosecution.

Symbol Techs., Inc. v. Lemelson Med., Educ. & Research Found., L.P., 422 F.3d 1378, 1385

(Fed. Cir. 2005). A determination as to the applicability of prosecution laches must rely on two

fundamental precepts. First, a threshold inquiry is to be undertaken as to whether a patent "was

obtained after an unreasonable and unexplained delay in prosecution" with a central focus being

on the unreasonableness of the delay. Intuitive Surgical, Inc. v. Computer Motion, Inc., No. 01-

203, 2002 WL 31833867, at *3 (D. Del. 2002). Second, any conclusions must be viewed in light

of the fact that prosecution laches is an equitable tool "that should be used sparingly" and "only

in egregious cases of misuse of the statutory patent system." Symbol Techs., 422 F.3d at 1385

(applying the doctrine to patents for which there had been prosecution delays of 18 to 39 years).

This is a high standard. "Taken singly, the delay in the prosecution on any one particular

application will surely not appear to merit relief by the courts in equity," but "multiple examples

of repetitive refilings that demonstrate a pattern of unjustifiably delayed prosecution may be held

to constitute [prosecution] laches." Id. at 1385-86.

Congress addressed this potential for abuse by changing the law to measure patent

duration from the date of application rather than date of issuance, which "effectively eliminates

the issue of prosecution laches for patent applications [such as Cordance's] filed after June 7,

1995." Ariad Pharms., Inc. v. Eli Lilly & Co., 529 F. Supp. 2d 106, 136 n.46 (D. Mass. 2007).

IV. **ARGUMENT**

Amazon's brief tells a long and complicated story that is largely irrelevant to either of the

two issues – written description or prosecution laches – on which it has moved. Of its twenty-

page brief, only three pages argue that the '710 Patent is invalid for failing to meet the written description requirement, and only one page argues that it is unenforceable for prosecution laches.

Amazon also argues that the '205 Patent (a parent of the '710 Patent) fails to provide written description support for the claims of the '710 Patent. This has no bearing whatsoever on the two issues on which Amazon is seeking summary judgment in this motion. Whether the '205 Patent provides written description support for the claims of the '710 Patent relates only to whether the claims of the '710 Patent are entitled to the earlier filing date of the '205 Patent.

A.    **The Level of Ordinary Skill is a Disputed Question of Fact.**

A preliminary question in determining whether the '710 Patent meets the written description requirement of 35 U.S.C. § 112(1) is determining the level of ordinary skill in the art of the '710 Patent. The reason is that the sufficiency of the description is measured from the point of view of one of ordinary skill in the art as of the time the description was filed. Reiffin v. Microsoft Corp., 214 F.3d 1342, 1346 (Fed. Cir. 2000). The level of ordinary skill in the art for the application as of the date it was filed is a question of fact. Graham v. John Deere Co. of Kan. City, 383 U.S. 1, 17 (1966); Union Oil Co. of California v. Atlantic Richfield Co., 208 F.3d 989, 996 (Fed. Cir. 2000) ("The primary consideration is factual and depends on the nature of the invention and the amount of knowledge imparted to those skilled in the art by the disclosure.").

Amazon's expert, Dr. Alvisi, states that one of skill in the art "would have experience building distributed computing systems, or equivalent academic training." (Alvisi Decl. ¶ 16.) Dr. Alvisi is describing himself, as his field is distributed computing. (Id. ¶ 3 & Ex. A.)

Cordance's expert, Dr. Shamos, testifies to the contrary, stating: "While client/server systems of the type used on the Internet are by their nature distributed, skill in building distributed systems is not called for in the patents, and 'distributed system' is never mentioned." (Shamos Decl. ¶ 13.) Based on his review of the Cordance patents, Dr. Shamos explains that one of ordinary skill in the art "would have a bachelor's degree in computer science (or equivalent

work experience) and experience in computer network communication protocols, including Internet protocols, object-oriented programming, and developing software for electronic commerce transactions." (Id. ¶ 14.)

Dr. Alvisi does not meet the level of ordinary skill in the art. A search of Dr. Alvisi's qualifications does not reveal any experience whatsoever in the field of electronic commerce. (See Alvisi Decl. ¶ 3 & Ex. A.) Cordance's expert, on the other hand, was a founder and Co-Director of the Institute for eCommerce at Carnegie Mellon and now directs a graduate degree program in eBusiness Technologies. (Shamos Decl. ¶ 3.) Because Dr. Alvisi does not meet the level of ordinary skill, he is not qualified to opine as to the sufficiency of the written description support for the '710 Patent. At a minimum, these are fact disputes for the jury.

### B.    A Reasonable Jury Could Find that the '710 Patent Adequately Describes its Claims.

Amazon argues that undisputed facts establish the lack of written description in the patent for "completing a purchase transaction"; "automatically completing the purchase of an item"; and "automatically completing the purchase of an item from the seller."

The declarations of Dr. Alvisi, on Amazon's side, and Dr. Shamos and Mr. Reed, on Cordance's side, create classic factual disputes from which a reasonable jury could find that the '710 Patent adequately describes its claims. Suntiger, 189 F.3d at 1334.

### 1.    Amazon's Expert's Analysis is Incomplete

In its Second Supplemental Response to Amazon's Interrogatory No. 8, Cordance explained in detail how the application for the '710 Patent describes the claims, on a limitation-by-limitation basis. (Ex. JJ.)[2] In doing so, Cordance identified support for the claims throughout the application and did not limit the support to any one section. In particular, Cordance did not limit the support to only the Payment Service Object and Partner Servers section. This section of

---

[2] Unless otherwise indicated, all citations to Exhibits refer to the O'Neill Declaration.

the patent spans pages 197-203 of the application, but Cordance cited portions of the application on page 19, on page 213, and on many pages in between.

Despite this clear indication that support may be found throughout the application, Dr. Alvisi **looked for support in only one section of the '710 Patent**.[3] Dr. Alvisi does not state that the '710 Patent fails to support the claims. Rather, he states only that "[t]he [Payment Service Object and Partner Servers] section does not describe the steps of claim 1 or 7 or provide sufficient description such that one skilled in the art would understand that Cordance, Mr. Reed, or the authors of these sections envisioned the use of communications objects in completing purchase transactions." (Alvisi Decl. ¶ 31.)

Whether or not Dr. Alvisi read the whole patent (cf. Shamos Decl. ¶ 52), he looked for support in only one section. By so limiting his analysis, Dr. Alvisi's declaration fails to meet a threshold requirement needed to make his opinions relevant to the motion. Written description support must be based on a review of the entire patent. Koito Mfg. Co., Ltd. v. Turn-Key-Tech, LLC, 381 F.3d 1142, 1154-55 (Fed. Cir. 2004) (holding that an expert's testimony was "insufficient to show failure of written description" because he ignored part of the disclosure). Dr. Alvisi's opinion accordingly fails to provide even a prima facie basis for Amazon's motion.

## 2.   The '710 Patent Describes "Completing a Purchase Transaction"

Amazon argues that only one portion of the '710 Patent describes "completing a purchase transaction":

> Now a data exchange method 141 on the payment partner server 1302 can carry out the purchase order transaction using the verified purchase order data, the verified customer account certificate, and the verified merchant account certificate (step 4466). This may involve any sequence of steps between the payment partner server 1302 and other payment servers or data processing systems, such as

---

[3] In its interrogatory responses, Cordance demonstrated the support for the '710 claims by citing to page and line number of the application. In its brief, however, Amazon has instead cited to the column and line numbers of the patent.

the consumer's bank or credit clearinghouse, a credit card processor, a cybercash
server, and so on.

('710 Patent at 122:27-35; Alvisi Decl. ¶32; Amazon Br. at 13-14.)  Amazon's entire argument,

through its expert, is the following:

> [T]his conclusory statement does not convey to one of ordinary skill the
> processing of the customer certificate, using the customer certification to retrieve
> customer information, or using the retrieved customer information to complete the
> purchasing transaction.  Alvisi Decl. ¶¶ 41-43.  The only thing the specification
> says is that "[t]his may involve any sequence of steps between the payment
> partner server 1302 and other payment servers or data processing systems[.]" '710
> Patent at 122:31-35. A statement that "any sequence of steps" may be used does
> not describe to one of ordinary skill an invention for "completing the purchase of
> an item."  Alvisi Decl. ¶ 34.

(Amazon Br. at 13-14.)

Amazon's arguments are both factually and legally incorrect.  First, Dr. Alvisi states that

the '710 Patent does not disclose the "processing of the customer certificate," but this is wrong.

The '710 Patent describes in detail the authentication and verification of certificates.  It does so

in one of the portions of the patent that Dr. Alvisi did not examine. (Shamos Decl. ¶¶ 52-53

(citing '710 Patent at 108:67-109:17, 109:42-57).)  The '710 Patent further describes the

processing of certificates in the form of customer account certifications in the context of payment

transactions.  (Id. ¶¶ 54-55 (citing '710 Patent at 121:65-122:7).)  The '710 also describes in

detail what is contained in a customer account certificate, how the customer unique ID is

retrieved from the customer account certificate, and how this unique ID "identifies the stored

customer data to be used to complete the transaction."  (Id. ¶ 67-69.)  Finally, the '710 Patent

gives specific examples of how one of ordinary skill in the art could complete a purchase, stating

expressly that the payment partner server could use "other payment servers or data processing

systems, consumer's bank or credit clearinghouse, a credit card processor, a cybercash server,

and so on," which were well known in the art.  (Id. ¶ 59.)

Second, Dr. Alvisi's argument is legally incorrect in that the patentee is not required to describe details known to a person of ordinary skill. Indeed, "a patentee preferably omits from the disclosure any routine technology that is well known at the time of application." <u>Chiron</u>, 363 F.3d at 1254. Because Dr. Alvisi himself does not meet the requirements of the level of ordinary skill, he is not qualified to state what technology was well known to a person of ordinary skill. Dr. Shamos, who does meet the level of ordinary skill, explains that "[m]erchants selling on the Internet know exactly what is necessary to carry out a purchase transaction, or they would not be able to remain in business." (Shamos Decl. ¶ 56.) Persons of ordinary skill would know how "to use digital certificates to authenticate parties to a transaction," how to "exchange … private information over the Internet, particularly for credit card transactions," and "how to use purchase orders to carry out a purchase transactions." (<u>Id.</u> ¶¶ 56-57.) Furthermore, "[m]erchants know how to fill orders when they are received. The fact that the patents claim the conventional step of completing an order does not mean that the applicants were required to spell out the details of those conventional steps." (<u>Id.</u> ¶ 40.)

A person of ordinary skill in the art would thus recognize that the '710 Patent describes "completing a purchase transaction." (<u>Id.</u> ¶¶ 51-59; Reed 2nd Decl. Ex. A.)

### 3.    The '710 Patent Describes "Automatically Completing the Purchase of an Item."

Amazon next argues that the '710 Patent does not disclose "automatically completing the purchase of an item." Amazon's entire argument is the following:

> "Any sequence of steps" does not suggest any limitation to the number of clicks or other user actions that may be required to order an item and certainly would not suggest to one of ordinary skill that Cordance had an invention covering one-click, or any particular number of clicks. <u>Id.</u> ¶ 35. Conclusory statements that leave one of ordinary skill to guess at what the invention may be have repeatedly been found insufficient to meet the written description requirement.

(Amazon's Br. at 13-14.) Amazon's argument is incorrect because it misapprehends the '710 claims in two ways.

First, the act of "automatically completing the purchase of an item" is not performed by the customer. As shown in claim 1, a seller or third party receives an "indication to initiate" from the customer, and then **the seller or third party** performs the act of "automatically completing the purchase of an item." ('710 Patent, claim 1.) As Dr. Shamos explains, "[o]ne of skill in the art would have understood that once an order is received, no more action is required on the part of the customer and thus the purchase is completed 'automatically' from the customer's point of view." (Shamos Decl. ¶ 40.) The specification does not describe any clicks in "automatically completing a purchase" because no clicks take place. The act is performed by the seller or third party using "other payment servers or data processing systems, consumer's bank or credit clearinghouse, a credit card processor, a cybercash server, and so on." (Id. ¶ 59.)

Second, Dr. Alvisi is wrong because the patent need not describe any number of clicks at all, as the claims are not limited to using clicks. (Id. ¶ 60.) Claim 1 recites an "indication to initiate" and "automatically completing the purchase of an item" in response to that indication. The patent need only describe these actions, which it does. It is of no importance whether the specification discusses mouse clicks. See Amgen Inc. v. Hoechst Marion Roussel, Inc., 314 F.3d 1313, 1331-32 (Fed. Cir. 2003) ("The written description inquiry . . . focuses on a comparison between the specification and the invention referenced by the terms of the claim.").

As explained by Dr. Shamos and Mr. Reed, the '710 Patent clearly describes "automatically completing the purchase of an item." (See Shamos Decl. ¶¶ 60-61, 64-66; Reed 2nd Decl. ¶¶ 27-36 & Ex. A.) For example, the '710 Patent explains that a "payment service object ... operates ... to provide secure financial transaction services." ('710 Patent at 119:27-31.) These "[p]ayment service objects allow such common payment services as credit card transactions, debit card transactions, electronic funds transfers, and cybercash transactions to take place **easily, automatically, and securely**." (Id. at 119:36-39 (emphasis added).) A merchant can use links to the payment service object and "can indicate the services of such

payment service objects 1310 by using the names or logos of the appropriate credit cards, debit cards, and so on in a product ordering input form." (<u>Id.</u> at 121:21-32.) When a customer selects the link, "the payment service object 1310 is used **automatically**." (<u>Id.</u> at 121:32-34 (emphasis added.) The automated sequence of events is shown in Figure 38, including "carry[ing] out the purchase order transaction," which involves clearing payment with "other payment servers or data processing systems, such as the consumer's bank or credit clearinghouse, a credit card processor, [or] a cybercash server." (<u>Id.</u> at 122:24-35.) "When the transaction has been completed … a unique receipt number can … be used to verify the transaction with both the customer and the merchant." (<u>Id.</u> at 122:35-40.)

A person of ordinary skill in the art would thus recognize that the '710 Patent describes "automatically completing the purchase of an item." (Shamos Decl. ¶ 60; Reed 2nd Decl. Ex. A.)

### 4. The '710 Patent Describes "Automatically <u>Completing the Purchase of an Item from the Seller"</u>

Amazon's final theory is that the '710 Patent does not describe "automatically completing the purchase of an item from the seller." As the Payment Partner Sever section of the '710 Patent describes in detail the purchase of an item by a customer from a seller through a payment partner server (<u>Id.</u> at 119:26-123:28), it is difficult to understand precisely what Amazon's argument is. Amazon seems to be suggesting that the '710 Patent does not describe (1) how the payment partner server informs the seller that a transaction has been completed, or (2) how the seller fulfills the order by sending the item to the customer.

First, in the '710 Patent "there is no doubt over how the seller receives the order," which "is fully described in the specification":

> From this point the receipt acknowledgment process can take several paths. The payment partner server 1302 can return receipt acknowledgments to both the consumer program 22 and the provider program 12. Each of these programs can in turn send receipt acknowledgments to the other to complete full three-way acknowledgment.

(Shamos Decl. ¶ 61; '710 Patent at 122:41-46.)

Second, Dr. Shamos explains that "[t]he fact that a purchase may be made through an intermediary does not imply that the ultimate seller would be confused about how to fill an incoming order." (Shamos Decl. ¶ 61.) How a seller fulfills an order is a conventional step that would be well known to a person of ordinary skill. (Id.) Accordingly, Cordance had no obligation to describe it. See Chiron, 363 F.3d at 1254.

Although the foregoing is clearly sufficient, the '710 Patent further describes combining the functions of the payment partner server and the functions of the seller into a single entity. (Shamos Decl. ¶¶ 62-63.) By eliminating the third party, all communications occur directly between the customer and the seller. (Id.) Dr. Alvisi admits that the '710 Patent describes combining partner servers with a provider or consumer. His only complaint is that this description should have occurred in the Payment Partner Server section of the patent. (Id.) Dr. Alvisi has no legal basis for this argument. (See Alvisi Decl. ¶ 39.) Dr. Alvisi also states that allowing the combination "would defeat the very purpose of using payment partner servers as an intermediaries [sic] between buyers and sellers" (id.), but no such purpose appears in the patent.

A person of ordinary skill in the art would thus recognize that the '710 Patent describes "automatically completing the purchase of an item from the seller." (Shamos Decl. ¶¶ 60-63; Reed 2nd Decl. Ex. A.)

### 5. The '710 Patent Describes all of its Claims

Amazon does not argue that the '710 Patent fails to describe any other claim limitations, so any other arguments concerning written description are waived. In any event, Dr. Shamos and Mr. Reed have provided in their declarations a detailed explanation of how each limitation of the '710 claims is described. (See Shamos Decl. ¶¶ 51-70; Reed 2nd Decl. Ex. A.)

**C.    A Reasonable Jury Could Find that the '205 Patent
Adequately Describes the Claims of the '710 Patent.**

As noted above, Amazon spends four pages of its brief making an argument that has no

bearing on the validity of the '710 Patent under 35 U.S.C. § 112, and no bearing on this motion.

Whether the '205 Patent provides written description support for the claims of the '710

Patent relates only to whether the claims of the '710 Patent are entitled to the earlier filing date

of the '205 Patent.  This relates to an argument in another Amazon brief ("Anticipation Brief")

that its 1995 Shopping Cart anticipates the claims of the '710 Patent.  The Court, however, need

not address whether the '205 Patent describes the '710 claims, because Cordance has shown in

its opposition to Amazon's Anticipation Brief that the 1995 Shopping Cart does not anticipate

the claims of the '710 Patent regardless of which priority date the '710 Patent is entitled to.

Whether the '205 Patent adequately describes the '710 claims is a question of fact.

Tronzo, 156 F.3d at 1158.  Amazon makes only two arguments – first, that there is no support

because the '205 Patent only describes claims that recite a "communications object"; and second,

that the '205 Patent does not describe automatically completing an online purchase.  As

Cordance explains below, disputed facts exist concerning both of these issues.

**1.    A Communications Object is not Essential or Critical**

Amazon argues that a "communications object" is so "essential or critical" to the

description of the '205 Patent, that any claims that do not recite a "communications object"

cannot be supported by the '205 Patent.  Amazon's only evidence in support of this argument is

its expert's conclusory statement that "the key aspect of Cordance's invention described in the

patent specifications is the use of a 'communications object' or 'control structure.'"  (Alvisi

Decl. ¶ 15.)  But Cordance never described a "communications object," a "control structure" or

anything else as an "essential" or "critical" feature of the invention; and indeed they are not.  As

the specification states:

> The use of software objects and object-oriented databases ... are useful in the storage, transfer, and processing of information. ... Thus, the following description of a preferred embodiment will discuss the use of objects. However, **other methods for storing, transferring, and processing information, such as relational databases, binary files, or procedural programs, could be used**.

('205 Patent at 12:39-63; '710 Patent at 16:38-63) (emphasis added). As Dr. Shamos explains, "nowhere does either specification state or imply that [a communications object or control structure] are 'critical' or 'essential' to the claimed inventions." (Shamos Decl. ¶ 36.) Dr. Shamos further explains that "communications objects and control structures can be used to implement embodiments of the inventions but that they are not required." (Id.)

### 2. The '205 Patent Describes "Automatically Completing an On-line Purchase."

Amazon, through its expert, argues that the '205 Patent does not disclose "automatically completing an on-line purchase." Cordance's expert, Dr. Shamos, and inventor, Mr. Reed, show that the '205 Patent does describe such automatic completion.

First, the '205 Patent is directed to automating many different types of transactions, of which purchase transactions are just one example. (Shamos Decl. ¶¶ 37-38; Reed 2nd Decl. ¶ 30.) The abstract itself states that the patent provides methods "to automate many common communications services and transactions." ('205 Patent: Abstract.) The very first column of the '205 Patent states that the transactions include "data and records exchanged in the context of the communications relationship, e.g. **orders, receipts, product numbers, invoice numbers**, [and] **customer numbers**." (Id. at 1:35-41 (emphasis added).) These data records "all refer to electronic ordering, which is an electronic purchase transaction." (Shamos Decl. ¶ 38.) And the second column "expressly states that automated sales transactions are contemplated" (Id. ¶ 41):

> For example, **to order a product**, the consumer must place a telephone call, locate a salesperson, and then manually transmit the necessary ordering information, which the salesperson must manually record. Paper or electronic **product order forms** can help automate this process for the provider, but these must be filled out by the consumer. ... All of these information transfers require

human involvement and thus create the potential for data errors. ... **Therefore, a need exists for a communications system which allows providers and consumers to easily establish an automated communications relationship** ....

('205 Patent at 2:6-31) (emphasis added).

Going beyond the abstract and first two columns of the '205 Patent, there is ample description of automatically completing purchase transactions. For example, the '205 Patent explains how the use of a customer's home address can be automatically used in completing a purchase transaction:

> For example, an element of composite type IncludeHomeAddress could automatically add the **consumer's home address** element. Because the provider and consumer databases 11, 21 will typically contain common communications data pertaining to the respective user, a significant percentage of the data required by **routine business and commercial transactions** can be **automatically transferred** in this manner.

('205 Patent at 41:28-35 (emphasis added); Shamos Decl. ¶ 42.)

The '205 Patent further explains how order forms are used in automatically completing purchase transactions:

> the provider can also include special forms to be processed by the consumer program 22 that allow the consumer to **automatically** or semi-automatically transfer data from the consumer database 21 back to the provider. Examples include **product order forms**, survey forms, customer service request forms, scheduling forms, etc.

('205 Patent at 22:14-19) (emphasis added). "Transferring filled-out order forms between parties to a transaction over a network constitutes an 'electronic purchasing transaction.'" (Shamos Decl. ¶ 49.)

In arguing that the '205 Patent does not disclose automatically completing a purchase, Amazon makes only very broad arguments and does not argue that any specific element is missing. (Amazon Br. at 11 ("[T]here is nothing in the earlier '205 Patent specification that describes automatically completing an on-line purchase.").) Cordance was not required to present every last detail of completing a purchase, as "[e]very online merchant at the time the

'205 application was filed knew the steps that were required to complete a purchase." (Shamos Decl. ¶¶ 40, 50, 56-57.) See Chiron, 363 F.3d at 1254 ("[A] patentee preferably omits from the disclosure any routine technology that is well known at the time of application.").

Amazon repeats its argument that the '205 Patent doesn't discuss specific numbers of clicks, but as discussed above, there was no need to describe making any clicks, so long as the patent specification supports the language that is in the claims (as it does).

In sum, the declarations of Dr. Shamos and Mr. Reed demonstrating how the '205 Patent describes "automatically completing the purchase of an item" create, at a minimum, questions of fact precluding summary judgment.

### 3.    The '205 Patent Describes all of the Claims of the '710 Patent

Amazon does not argue that other limitations of the '710 Patent are not described by the '205 Patent, so any other arguments concerning written description are waived. In any event, Dr. Shamos and Mr. Reed have provided in their declaration a detailed explanation of how each limitation of the '710 claims is described. (See Shamos Decl. ¶¶ 37-50; Reed 2nd Decl. Ex. A.)

### D.    Amazon's Prosecution Laches Defense Fails As A Matter of Law.

Prosecution laches is an equitable tool "that should be used sparingly" and "only in egregious cases of misuse of the statutory patent system." Symbol Techs., 422 F.3d at 1385 (applying doctrine to prosecution delays of 18 to 39 years). When Congress changed the law to measure patent duration from the date of filing, rather than the date of application, it "effectively eliminate[d] the issue of prosecution laches for patent applications [like Cordance's] filed after June 7, 1995." Ariad Pharms., 529 F. Supp. 2d 106 at 136 n.46.

The timing of Cordance's patent prosecution was of no more than ordinary duration – and indeed, on the fast side. Its final three applications each issued about two years after they were filed, which is significantly faster than the average 2006 pendency of 31 months. See Ariad, 529 F. Supp. 2d at 136-37. As with most small technology companies with limited resources,

Cordance had to be selective in filing patent applications, and Cordance's five applications were filed in 1996, 1996, 1998, 2000, and 2002, respectively. Amazon has adduced no evidence showing there was anything atypical, let alone improper, about Cordance's prosecution timing.

Because Cordance's patent prosecution history is quite typical – and far from anything that could possibly be considered "egregious" – Cordance has itself moved for summary judgment of no prosecution laches. Amazon's contention that "prosecution laches" – an egregious abuse of the patent system – could be found here is utterly unsupported by any evidence, and is contrary to all of the case law it cites.

The total duration for the prosecution of Cordance's '710 Patent is similar to two recent District of Delaware cases where the Court entered judgment of <u>no</u> prosecution laches. The total time is also shorter than the prosecution of Amazon's own pending patent applications. Not surprisingly, Amazon does not cite any case law suggesting that the prosecution of Cordance's '710 Patent is unreasonable. Amazon thus fails to clear that first hurdle. It also fails even to address the second prong of prosecution laches, which requires that it be applied "sparingly" and "only in egregious cases of misuse of the statutory patent system." <u>Symbol Techs.</u>, 422 F.3d at 1385.

As explained in more detail in Cordance's Motion for Summary Judgment of no prosecution laches (D.I. 313), the District of Delaware in recent years has twice found no prosecution laches on facts quite similar to these. In <u>Stambler v. RSA Security, Inc.</u>, the Court found that "a delay of more than seven years…is not unreasonable" for the prosecution of a family of seven patents. 243 F. Supp. 2d 74, 76 (D. Del. 2003). In <u>Intuitive Surgical, Inc. v. Computer Motion, Inc.</u>, No. 01-203, 2002 WL 31833867, at *4 (D. Del. 2002), the Court found no prosecution laches where there was a delay of almost nine years between patent issuance and the first application, even though there was evidence (not present here) that the applicant had intentionally delayed correcting a mistake by the PTO.

Amazon makes no attempt to distinguish <u>Stambler</u> and misrepresents the holding of <u>Intuitive Surgical</u>. In <u>Intuitive Surgical</u>, the applicant, IBM, took four years and four months to notify the PTO that it had misplaced one of its applications. The court found "four years and four months to be an unreasonable period of time for an experienced patentee such as IBM **to identify and correct a misplaced application problem**." 2002 WL 31833867, at *5 (emphasis added). Amazon ignores the specifics of the holding and incorrectly suggests that a **total** prosecution duration of four years and four months is unreasonable. Indeed, the court in <u>Intuitive Surgical</u> found **no** prosecution laches for a delay of almost **nine years**. <u>Id.</u> at *4.

Cordance's '710 Patent was filed six years after the first application in the family and issued two years later. By contrast, Amazon filed four applications[4] more than **nine years** after filing its U.S. Patent No. 5,960,411, which was filed in 1997, and is still prosecuting two of these applications **twelve years** after the original filing date. Surely, Amazon does not believe that its own patents are unenforceable for prosecution laches.

Even if Amazon could show an unreasonable or unexplained delay, it would still have to show that Cordance's delay was among "the most egregious of cases." <u>Symbol Techs.</u>, 422 F.3d at 1385. Amazon has not made any attempt to do so. Further, the Federal Circuit has expressed doubt that any single application's prosecution history could justify a finding of prosecution laches, suggesting that a pattern of abuse covering a patent family was required. <u>Symbol Techs.</u>, 422 F.3d at 1385-86. Amazon has not made any attempt to show a pattern of abuse.[5]

---

[4] The application serial numbers are 11/410,998 (filed on April 25, 2006 and is abandoned), 11/610,619 (filed on December 14, 2006 and is abandoned), 11/618,452 (filed on December 29, 2006 and is pending), and 11/751,483 (filed on May 21, 2007 and is pending).

[5] Unable to prove prosecution laches, Amazon presents a litany of other complaints having no bearing on this motion. It reiterates arguments made elsewhere about what Cordance really invented, whether the written description adequately supports the patent claims, whether Amazon infringes those claims, whether and how the claims of the parent applications differ from those of the '710, whether Mr. Reed's PTO declaration was false, whether Cordance

Amazon concludes by selectively quoting <u>Reiffin</u> to make the law appear more favorable to its case.  The <u>Reiffin</u> court actually stated that the prosecution laches doctrine "prevents patent applicants from 'unduly postponing  the time when the public [can] enjoy the free use of the invention' by strategically delaying the issuance of the patent to their own commercial advantage." 270 F. Supp. 2d at 1154 (citation omitted).  <u>Reiffin</u> was thus concerned only with delays that would have the effect of extending the patent term.  As Cordance's '710 Patent expires twenty years from **filing**, Cordance had nothing to gain from any delay in prosecution.

In sum, prosecution laches is an equitable doctrine.  Amazon has not cited a single case finding prosecution laches that has equities even remotely approaching the facts of the '710 Patent's prosecution history.  Indeed, on similar facts, courts in this District have granted summary judgment of <u>no</u> prosecution laches.

## V.    <u>CONCLUSION</u>

Because Amazon has failed to identify undisputed facts that prove by clear and convincing evidence that Cordance's '710 patent claims are invalid under 35 U.S.C. § 112, its motion for summary judgment should be denied.  Further, because Cordance has shown as a matter of law that Amazon has no defense of prosecution laches, Amazon's summary judgment motion on that issue should be denied and Cordance's granted.

---

publicized its invention, and whether Cordance obtained insurance.  As these issues are irrelevant to the present motion, they will not be addressed further here.  Amazon also speculates that Cordance intentionally drafted claims that would cover its 1-click shopping system.  Even if Cordance had done so, such conduct is specifically allowed by the patent system.  <u>See</u> <u>Kingsdown Med. Consultants v. Hollister Inc.</u>, 863 F.2d 867, 874 (Fed. Cir. 1988) ("[T]here is nothing improper, illegal or inequitable in filing a patent application for the purpose of obtaining a right to exclude a known competitor's product from the market; nor is it in any manner improper to amend or insert claims intended to cover a competitor's product the applicant's attorney has learned about during the prosecution of a patent application.").  Amazon's complaints are thus with the patent system and not with Cordance.

ASHBY & GEDDES

*/s/ Tiffany Geyer Lydon*

_____

Steven J. Balick (I.D. #2114)
John G. Day (I.D. #2403)
Tiffany Geyer Lydon (I.D. #3950)
500 Delaware Avenue, 8th Floor
P.O. Box 1150
Wilmington, DE 19899
(302) 654-1888
sbalick@ashby-geddes.com
jday@ashby-geddes.com
tlydon@ashby-geddes.com

*Attorneys for Plaintiff Cordance Corporation*

*Of Counsel:*

Michael A. Albert
Robert M. Abrahamsen
Jeffery C. O'Neill
WOLF, GREENFIELD & SACKS, P.C.
600 Atlantic Avenue
Boston, Massachusetts 02210
(617) 646-8000
malbert@wolfgreenfield.com
rabrahamsen@wolfgreenfield.com
joneill@wolfgreenfield.com

Dated: February 23, 2009