# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| CORDANCE CORPORATION, | ) |
| | ) C.A. No. 06-491-MPT |
| Plaintiff, | ) |
| | ) **JURY TRIAL DEMANDED** |
| v. | ) |
| | ) **PUBLIC VERSION** |
| AMAZON.COM, INC. and | ) |
| AMAZON WEB SERVICES, LLC, | ) |
| | ) |
| Defendants. | ) |

## DEFENDANTS' REPLY MEMORANDUM IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT OF INVALIDITY OF U.S. PATENT 6,757,710 B2

OF COUNSEL:

Lynn H. Pasahow
J. David Hadden
Darren E. Donnelly
Saina S. Shamilov
Ryan Marton
FENWICK & WEST LLP
801 California Street
Mountain View, CA 94041
Tel: (650) 988-8500

Dated: March 9, 2009
Public Version Dated: March 16, 2009
907206 / 30763

Richard L. Horwitz (#2246)
David E. Moore (#3983)
D. Fon Muttamara-Walker (#4646)
POTTER ANDERSON & CORROON LLP
Hercules Plaza, 6th Floor
1313 N. Market Street
Wilmington, DE 19801
Tel: (302) 984-6000
rhorwitz@potteranderson.com
dmoore@potteranderson.com
fmuttamara-walker@potteranderson.com

*Attorneys for Defendants*
*Amazon.com, Inc. and*
*Amazon Web Services, LLC*

## TABLE OF CONTENTS

Page(s)

I. INTRODUCTION ............................................................................................................. 1
II. ARGUMENT ..................................................................................................................... 1
    A. A Request To Place an Item In a Shopping Cart Is Not an "indication to initiate a purchase transaction" ............................................................................... 2
    B. Amazon Prior Art Shopping Cart Is Prior Art Under 35 U.S.C. 102(b) ................ 6
    C. Amazon Prior Art Shopping Cart Is Prior Art Under 35 U.S.C. 102(g) ................ 8
    D. Amazon Produced Information About Amazon Prior Art Shopping Cart During Discovery ................................................................................................... 9
    E. First Virtual System Is Prior Art Under 35 U.S.C. 102(b) ................................... 10
III. CONCLUSION ................................................................................................................ 10

## TABLE OF AUTHORITIES

**Page**

### Cases

*Amazon.com v. BarnesandNoble.com,*
   239 F.3d 1343 (Fed. Cir. 2001) ............................................................................ 2

*Crown Packaging Tech., Inc. v. Rexam Bev. Can Co.,*
   531 F. Supp. 2d 629 (D. Del. 2008) ..................................................................... 7

*Mahurkar v. C.R. Bard, Inc.,*
   79 F.3d 1572 (Fed. Cir. 1996) ........................................................................ 8, 9

*Novartis Pharms. Corp. v. EON Labs Mfg.,*
   234 F. Supp. 2d 464 (D. Del. 2002) ..................................................................... 8

*Phillips v. AWH Corp.,*
   415 F.3d 1303 (Fed. Cir. 2005) ............................................................................ 1

*PowerOasis, Inc. v. T-Mobile USA, Inc.,*
   522 F.3d 1299 (Fed. Cir. 2008) ............................................................................ 6

*Technology Licensing Corp. v. Videotek, Inc.,*
   545 F.3d. 1316 (Fed. Cir. 2008) ........................................................................... 7

### Statutes

35 U.S.C. § 112 ............................................................................................................... 6

35 U.S.C. § 120 ............................................................................................................... 7

35 U.S.C. 102(b) ................................................................................................... 6, 8, 10

35 U.S.C. 102(g) ............................................................................................................. 8

## I. INTRODUCTION

Cordance's only substantive argument in opposition to Amazon's Motion is an issue of claim construction, the meaning of "indication to initiate a purchase transaction." Claim construction is a matter of law and Cordance's dispute does not create an issue of fact to avoid summary judgment. Under the proper construction of the claims, both Amazon Prior Art Shopping Cart and First Virtual Prior Art System invalidate the '710 patent.

## II. ARGUMENT

Cordance does not dispute that in June of 1995—more than a year before Cordance filed its '325 patent—Amazon Prior Art Shopping Cart allowed repeat customers to purchase books without reentering their customer information. The prior art system stored customer information at Amazon computers. The stored information was identified by a SessionID received with every request from the customer's computer, including a request to purchase. The Amazon Prior Art Shopping Cart used the SessionID to retrieve the stored customer payment and shipping information, which it used to automatically complete the purchase transaction.

Cordance also does not dispute that more than a year before Cordance's earliest filing date, First Virtual Prior Art system allowed customers to purchase electronic products using their previously stored information. Customers stored their payment information at First Virtual computers, evaluated items available for purchase under First Virtual's "try before you buy" program and confirmed their desire to purchase the evaluated items via a single "yes" email. The "yes" email included a transaction code, metadata, which was used to identify previously stored customer payment information to complete the purchase.

Cordance's only argument on the merits with respect to both prior art systems is based on the meaning of the claim phrase "indication to initiate a purchase transaction"—an issue of claim construction and a matter of law. *Phillips v. AWH Corp.*, 415 F.3d 1303, 1330 (Fed. Cir. 2005).

### A. A Request To Place an Item In a Shopping Cart Is Not an "indication to initiate a purchase transaction"

Cordance, through its expert Dr. Shamos and inventor Mr. Reed, asserts that a request to add an item to a shopping cart is an "indication to initiate a purchase transaction."[1] Opp. at 17 (D.I. 337). Neither offers any support for this assertion or explains its illogical encompassing of items in a shopping cart that a customer does not ultimately decide to purchase. Neither cites to the specification of the asserted patent or its prosecution history. Shamos Decl., ¶¶ 106, 109-110 (D.I. 342); Reed 2nd Decl., ¶ 41 (D.I. 341). Neither cites to any extrinsic evidence. *Id.* Indeed, as explained by the Federal Circuit, Cordance's unsupported construction is improper.

The claims of the '710 patent track those of Amazon's 1-click patent. *Compare* '710 Patent and App. Exh. 15[2]. The Federal Circuit construed Amazon's 1-Click claims and discussed their application to the Amazon Prior Art Shopping Cart. The element from claim 1 of the 1-Click patent that the Federal Circuit construed is paraphrased in Cordance's claim:

| Amazon's claim phrase | Cordance's claim phrase |
|---|---|
| **in response to only a single action being performed sending a request to order an item** along with an identifier of a purchaser of the item to a server system | **receiving from the customer an indication to initiate a purchase transaction for purchasing the item** including metadata associating said customer data with said transaction |

Whether it is described as "sending a request to order an item" "in response to only a single action" or as "receiving from the customer an indication to initiate a purchase transaction for purchasing the item" the issue is the same—which customer action (e.g., mouse click) in an online ordering process signifies a request to purchase. The Federal Circuit held that the answer cannot depend on the customer's state of mind. *Amazon.com v. BarnesandNoble.com*, 239 F.3d 1343, 1353 (Fed. Cir. 2001) ("We are not prepared to assign a meaning to a patent claim that

---

[1] Mr. Reed's opinions provided in support of Cordance's opposition are improper and must be stricken as described in detail in Amazon's Motion to Strike filed concurrently herewith.
[2] App. Exhs. 1-14 refer to D.I. 324 and App. Exhs. 15-37 refer to D.I. 325.

depends on the state of mind of the accused infringer"). Whether a customer decided to purchase an item before he turns on his computer, when he first visits the website, when he places an item in his shopping cart, or only after reviewing the shopping cart contents at check-out and removing or replacing them cannot be dispositive of infringement or invalidity of the claim. The scope of the claim cannot change based on whether customer's intent was to add an item to his cart for future consideration or with an unequivocal intent to purchase. Thus, the meaning of the claim must be based on what customer action the technology interprets as an indication to initiate the purchase transaction.

Indeed, even more so than with traditional shopping carts, customers select, remove or replace items of interest in their online shopping carts before making a final decision of whether and what to purchase. The technology does not create an order, or initiate a purchase transaction, until the customer clicks on the final purchase confirmation button. ▓▓▓▓▓▓▓▓▓▓ ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ Reply App. Exh. 1 at 217:13-21. If the customer does not press the final button, no order is generated, no purchase transaction is initiated and completed, and no items are sent to the customer—no indication to initiate a purchase transaction is received.

The prosecution history of the '710 patent affirms that a request to confirm the purchase, and not to add an item to a shopping cart, is the "indication to initiate a purchase transaction." The Patent Office rejected the claims of the '710 patent over a patent issued to Raman Chelliah et al. Reply App. Exh. 2 at AMZC122930. Chelliah described a system that implemented an online shopping cart in a manner similar to Amazon Prior Art Shopping Cart, allowing customers to add or remove items from their carts before the purchase:

> The selection of an item for purchase is not a commitment to purchase. It is analogous to a shopper placing an item in a shopping cart in preparation for a purchase. Just as a shopper

3

may elect not to purchase a selected item, User Interface 13 may also communicate to Sales Representative program object 114 that the customer does not wish to purchase an item that has been previously selected. In response to such a call [the item is removed] ... App. Exh. 10 at 14:63-15:5.

The cited Chelliah patent distinguished between "shopping events" and "purchasing events" and did not treat an "add to cart" message as an indication to purchase:

> Shopping events may include, for example: Select_Item, Unselect_Item....The Select_Item event is generated when a customer selects an item as a purchase candidate, akin to when a customer in a real store places an item in a shopping cart....The Unselect_Item event is generated when a customer decides not to purchase a particular item and unselects the item as a purchase candidate, akin to removing it from the shopping cart and replacing it on the store shelf.... *Id.* at 26:46-57.

> Purchasing events may include, for example Purchase_Item and Purchase_Order. The Purchase_Item event is generated when a customer actually purchases a selected item.... The Purchase_Order event is generated when a customer actually makes a purchase of one or more items. *Id.* at 26:64-27:8.

The examiner found that Chelliah described "receiving from the customer an indication to initiate a purchase transaction for purchasing the item; and in response to the received indication, automatically completing the purchase of an item from the seller." Reply App. Exh. 2 at AMZC122930. As can be seen above, Chelliah explicitly distinguishes when "a customer actually purchases a selected item" from selecting an item because a customer can "decide[] not to purchase a particular item and unselect[]" an item in his or her cart. Because of the clear distinction in Chelliah, the examiner finding that it discloses the "received indication to initiate the purchase transaction" can only refer to the request to purchase not the request to add to cart.

In response to the examiner's rejection, Cordance did not contest that the Chelliah shopping cart met all the limitations of the claims. Nor did Cordance contest the examiner's implicit construction of "receiving an indication to initiate a purchase" that excluded adding an item to a shopping cart. Instead, to overcome the rejection, Cordance asserted a prior invention date by submitting a declaration from inventor Reed in which he swore that automatically

4

completing the purchase takes place in response to the customer's click to "confirm and order an item"—the final step taken by the customer, and not the previous mouse click for selecting a product for purchase.[3]  App. Exh. 4 at AMZC 122957 and 122971.



Construction of the term "indication to initiate a purchase transaction" must include a confirmation step because both in the Chelliah patent and Reed declaration submitted during prosecution to overcome rejections over Chelliah it is the confirmation of the order and not the selection of an item that triggers the "automatically completing the purchase of an item" which must be done "in response to the received indication [to initiate a purchase transaction]."[5]

Cordance cannot escape summary judgment by contradicting sworn testimony and what it told the Patent Office. Because Amazon Prior Art Shopping Cart initiated a purchase upon receiving the customer's confirmation to order a previously selected item just like the Chelliah patent that the Patent Office found met the claim language (which Cordance did not dispute) and

---

[3] Claim 1 requires "receiving from the customer an **indication to initiate** a purchase transaction for purchasing the item . . ."; and "in response to the **received indication**, automatically completing the purchase of an item from the seller ..."

[4] ███████████████████████████████████████████████████████. Reply App. Exh. 4.

[5] Not only did Cordance draw no distinctions between claims 1 and 7 in this litigation, during prosecution of the '710 patent Reed treated "indication to initiate" and "indication to complete" identically. App. Exh. 4 at AMZC122956.

5

just like the ordering example Reed swore to overcome the rejection, the '710 patent is invalid. Similarly, because the "yes" email response confirms the purchase of previously selected item in First Virtual's system, the '710 patent is invalid.

### B.    Amazon Prior Art Shopping Cart Is Prior Art Under 35 U.S.C. 102(b)

There is no genuine dispute that Amazon Prior Art Shopping Cart was in public use in July of 1995—more than a year before the filing date of the '325 patent, to which the '710 patent is a continuation, and thus constitutes prior art under 35 U.S.C. 102(b). A declaration of Amazon's employee, Craig Kulfan, establishes that the source code Amazon relies on was used to run the bookstore. Mr. Kulfan declared that Amazon's source code version control systems, from which Amazon Prior Art Shopping Cart source code was retrieved, store "the current and past versions of the source code files used to run the www.amazon.com website."[6] D.I. 320. Further, Mr. Paul Davis—an author of the source code—confirms that the prior art code was used to run the website in June and July of 1995—more than a year before the earliest filing date Cordance is entitled to. Declaration of Paul Davis, ¶¶ 2, 3.

Because the '710 patent is a continuation-in-part of the much shorter '205 patent, if Cordance is to rely on the '205 filing date to avoid the 102(b) bar, it is Cordance's burden to establish that the '710 patent is entitled to the filing date of the '205 patent. Cordance must show that the '205 patent fully supports the asserted claims by satisfying all the requirements of paragraph 1 of 35 U.S.C. § 112. *PowerOasis, Inc. v. T-Mobile USA, Inc.*, 522 F.3d 1299, 1305-6 (Fed. Cir. 2008) (once defendant establishes 102(b) prior art, the burden is placed on patentee "to

---

[6] Dr. Shamos' speculation that the code was not actually used by Amazon because it was "developed" by "developers" is baseless. Dr. Shamos, who testifies against Amazon with great regularity—this is the third case listed on his resume—appears never to have written any commercial or e-commerce software and was in fact a full time lawyer through out the 1990s and never one of skill in the art. Reply App. Exh. 5. Even the software companies that he claims to have operated over 20 years ago merely resold software he bought from a graduate student. Reply App. Exh. 6 at 22:6-27:8.

come forward with evidence to prove entitlement to claim priority to an earlier filing date"); *Technology Licensing Corp. v. Videotek, Inc.*, 545 F.3d. 1316, 1328 (Fed. Cir. 2008) (confirming that the burden is on the patentee to establish that the earlier application "contains a written description that supports all the [claim] limitations"); 35 U.S.C. § 120. Cordance has not met its burden. Cordance's expert Dr. Shamos does not identify what parts of the '205 specification provide support for every element of the claims in the '710 patent. And, in fact, Dr. Shamos admits that the '205 specification does not, at least, disclose completing the purchase as required by the claims of the '710 patent. Shamos Decl., at ¶ 50. The '205 specification contains even less of a disclosure than the purported conception document, and Cordance cannot be said to meet its proof burden for all the requirements of § 112, paragraph 1.

Cordance's reliance on inventor Reed's declaration does not remedy the shortcomings of Dr. Shamos' declaration. Inventor Reed does not establish that every element of the claims is supported by the specification of the '205 patent. Reed 2nd Decl., ¶¶ 26-35; Alvisi Reply Decl., ¶¶ 18-20. Further, Reed cannot fill gaps in his own disclosure to support his claims. Indeed, during his deposition 

To provide an opinion as to whether a specification provides sufficient written description to support a claim necessarily requires interpretation of the claims and mapping of claim elements to the specification. *See Crown Packaging Tech., Inc. v. Rexam Bev. Can Co.*, 531 F. Supp. 2d 629, 637-43 (D. Del. 2008) (granting summary judgment of invalidity based on

7

lack of written description because there was no evidence that the inventor possessed a claim limitation, "[without an] annular reinforcing bead," as construed, "an outwardly concave generally 'U' shaped grove"). ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ ▓▓▓▓▓▓▓ and provides no explanation on how his qualifications changed since his deposition.

### C. Amazon Prior Art Shopping Cart Is Prior Art Under 35 U.S.C. 102(g)

Not only was the Amazon Prior Art Shopping Cart in public use for more than a year before Cordance's filing date and thus prior art under 35 U.S.C. 102(b), it was also conceived and reduced to practice before Cordance's purported invention and is prior art under 102(g).[7] Cordance does not dispute that at least as early as in June 1995, Amazon authored and reduced to practice its Prior Art Shopping Cart. Under 102(g), once Amazon shows earlier reduction to practice, Cordance must show prior invention by an earlier conception date and its reasonable diligence in reducing the invention to practice. *See, e.g., Mahurkar v. C.R. Bard, Inc.*, 79 F.3d 1572, 1578 (Fed. Cir. 1996). Yet, nowhere in its brief, its expert declaration, or its inventor declaration, does Cordance attempt to establish an earlier conception date or explain its diligence in reducing the invention to practice.

Indeed, the only document identified by Cordance during discovery as evidencing conception is Reed's declaration submitted during prosecution of the '710 patent to overcome claim rejections. Even if the document was enough to establish conception of the invention, Cordance never built an e-commerce system and its reduction to practice is the filing date of its patent applications about three years after the date of the purported conception document.

---

[7] In its opening brief, Amazon presented detailed evidence about Amazon Prior Art Shopping Cart and its reduction to practice supporting its argument that the system invalidates the '710 patent under both 35 U.S.C. 102(b) and 102(g). Amazon has not waived any of the arguments presented herein. *See Novartis Pharms.Corp. v. EON Labs Mfg.*, 234 F. Supp. 2d 464, 470 (D. Del. 2002) (deciding on substance, not form, a doctrine of equivalence argument made in a footnote in opposition to a motion for summary judgment presented without factual evidence).

8

Cordance has provided no evidence to meet its burden of establishing its diligence during the relevant time period. *Mahurkar*, 79 F.3d at 1578.

### D. Amazon Produced Information About Amazon Prior Art Shopping Cart During Discovery

As described in detail in Amazon's Opposition to Cordance's Motion to Strike, Amazon produced source code for its Prior Art Shopping Cart as soon as Cordance alleged that Amazon's "1-click from shopping cart" feature infringes Cordance's patents. In July 2008, Cordance for the first time alleged that Amazon's "1-click from shopping cart" infringes the claims of the '710 patent. Declaration of Saina Shamilov (Shamilov Decl.), ¶ 2. Cordance did not provide any infringement contentions or explain how Amazon's "1-click from shopping cart" feature infringes the claim. *Id.* Amazon, however, realizing that Cordance may potentially read its claims on Amazon's shopping cart feature, started to diligently search through its archives with decade's worth of data, for information about its earliest shopping cart system. *Id.*, ¶ 4. In September, 2008—months before the close of discovery—Amazon produced source code for its Prior Art Shopping Cart. *Id.*, ¶ 5. Further, before the discovery period closed, Amazon provided Cordance with its invalidity contentions including claim charts mapping features of the Amazon Prior Art Shopping Cart to the claims. *Id.*, ¶ 8. Amazon supplemented its production when earlier versions of the previously produced source code files were located within its massive archives. *Id.*, ¶¶ 7, 9. Amazon did not change its contentions; the supplemental files further evidenced Amazon's deployment of its shopping cart feature prior to Cordance filing its patents—a fact that was already well established by public launch of Amazon.com in July 1995. *Id.*, ¶ 9.

In addition, Amazon did not refuse to provide a 30(b)(6) witness to testify about its Prior Art Shopping Cart. Cordance's 30(b)(6) deposition topic at issue was: "To the extent that you

9

allege any claim of the Cordance patents is invalid over prior art other than a patent or printed publication, the scope and content of any such prior art." *Id.*, ¶ 14. Amazon objected because the topic which covered all prior art was overly broad. *Id.* Cordance did not revise the topic or limit it to Amazon prior art but instead dropped the issue. *Id.*

### E.     First Virtual System Is Prior Art Under 35 U.S.C. 102(b)

More than a year before the earliest possible filing date Cordance can claim priority to for its '710 patent claims, First Virtual Prior Art system allowed customers to purchase items using their previously stored customer information. Cordance has no facts and has presented no evidence to attack the credibility of Dr. New's declaration. First Virtual documents in Exhibit B to Dr. New's declaration corroborate his testimony. The documents describe in detail the functionality and operation of First Virtual Prior Art system. Reply Declaration of Dr. Darren New (New Reply Decl.), ¶ 3. Indeed, neither Dr. Shamos nor Mr. Reed testify that the citations relied on by Dr. Alvisi in his declaration are incomplete or provide inadequate information to understand the operations of First Virtual's system. The steps performed by the system to complete a purchase transaction are described in the documents. *Id.* The missing pages are irrelevant. *Id.* Further, as described by Dr. New, the other purported deficiencies in First Virtual documents pointed out by Cordance are not deficiencies at all.[8] *Id.* at ¶¶ 4,5; *see also* Defendants' Opposition to Motion to Strike.

### III.   CONCLUSION

Amazon respectfully requests that the Court grant summary judgment of invalidity of the '710 patent.

---

[8] There cannot be a genuine dispute that the pages in New Decl., Exhibit B (D.I. 321) are dated in November, 1995 and not April as Cordance contends. New Reply Decl., ¶ 4. What Cordance contends as missing text, is not missing text at all but original hyperlinks to other parts of First Virtual's website that did not show through upon the faxing of the pages. *Id.*, ¶ 5.

10

POTTER ANDERSON & CORROON LLP

OF COUNSEL:

Lynn H. Pasahow
J. David Hadden
Darren E. Donnelly
Saina S. Shamilov
Ryan Marton
FENWICK & WEST LLP
801 California Street
Mountain View, CA 94041
Tel: (650) 988-8500

Dated: March 9, 2009
Public Version Dated: March 16, 2009
907206 / 30763

By: */s/ D. Fon Muttamara-Walker*
Richard L. Horwitz (#2246)
David E. Moore (#3983)
D. Fon Muttamara-Walker (#4646)
Hercules Plaza, 6th Floor
1313 N. Market Street
Wilmington, DE 19801
Tel: (302) 984-6000
rhorwitz@potteranderson.com
dmoore@potteranderson.com
fmuttamara-walker@potteranderson.com

*Attorneys for Defendants*
*Amazon.com, Inc. and*
*Amazon Web Services, LLC*

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

## CERTIFICATE OF SERVICE

I, D. Fon Muttamara-Walker, hereby certify that on March 16, 2009, the attached document was electronically filed with the Clerk of the Court using CM/ECF which will send notification to the registered attorney(s) of record that the document has been filed and is available for viewing and downloading.

I further certify that on March 16, 2009, the attached document was Electronically Mailed to the following person(s):

| | |
|---|---|
| Steven J. Balick | Michael A. Albert |
| John G. Day | Robert M. Abrahamsen |
| Tiffany Geyer Lydon | Jeffrey O'Neill |
| Ashby & Geddes | Chelsea A. Loughran |
| 500 Delaware Avenue, 8th Floor | Wolf, Greenfield & Sacks, P.C. |
| Wilmington, DE 19899 | 600 Atlantic Avenue |
| sbalick@ashby-geddes.com | Boston, MA 02210-2206 |
| jday@ashby-geddes.com | malbert@wolfgreenfield.com |
| tlydon@ashby-geddes.com | rabrahamsen@wolfgreenfield.com |
| | jeffrey.oneill@wolfgreenfield.com |
| | cloughran@wolfgreenfield.com |

By: */s/ D. Fon Muttamara-Walker*
Richard L. Horwitz
David E. Moore
D. Fon Muttamara-Walker
POTTER ANDERSON & CORROON LLP
(302) 984-6000
rhorwitz@potteranderson.com
dmoore@potteranderson.com
fmuttamara-walker@potteranderson.com

757320 / 30763