IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| CORDANCE CORPORATION, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | C.A. No. 06-491-MPT |
| ) | |
| AMAZON.COM, INC., and ) | |
| AMAZON WEB SERVICES, LLC, ) | |
| ) | |
| Defendants. ) | |

**CORDANCE'S BRIEF CONCERNING PATENT MISUSE AND
THE CERTIFICATE OF CORRECTION TO THE '710 PATENT**

ASHBY & GEDDES
Steven J. Balick (I.D. #2114)
John G. Day (I.D. #2403)
Tiffany Geyer Lydon (I.D. #3950)
Lauren E. Maguire (I.D. #4261)
500 Delaware Avenue, 8th Floor
P.O. Box 1150
Wilmington, DE 19899
302-654-1888
sbalick@ashby-geddes.com
jday@ashby-geddes.com
tlydon@ashby-geddes.com
lmaguire@ashby-geddes.com

*Attorneys for Plaintiff Cordance Corporation*

*Of Counsel:*

Michael A. Albert
Robert M. Abrahamsen
Jeffrey C. O'Neill
WOLF, GREENFIELD & SACKS, P.C.
600 Atlantic Avenue
Boston, Massachusetts 02210
617-646-8000

Dated: July 1, 2009

As ordered at the Pretrial Conference, plaintiff Cordance Corporation ("Cordance") submits this brief in support of its position that: (1) patent misuse should be tried to this Court as part of the previously-scheduled bench trial on equitable defenses; and (2) there is no legal bar to damages for infringement occurring prior to the Certificate of Correction of the '710 patent.

**I.    Amazon's Remaining Patent Misuse Defense Should Be Part of the Bench Trial.**

The Court has already scheduled a bench trial to address Amazon's equitable defenses. Its equitable defense of patent misuse should be heard at that bench trial. The sole remaining patent misuse issue turns on a question of contract interpretation normally within the province of the Court rather than the jury. Moreover, admitting evidence pertaining to that defense before the jury considering infringement would unfairly prejudice Cordance's patent case. Courts commonly reserve such issues for the Court (or on occasion for a *different* jury).

**A.    The Patent Misuse Defense Unfairly Prejudices Cordance before the Jury.**

Patent misuse is an equitable defense for which Amazon has no right to a jury. Texas Instruments, Inc. v. Hyundai Elec. Indus., 191 F.R.D. 119, 123 n.7 (E.D. Tex. 1999). Facts relating to equitable defenses such as patent misuse create a "danger of unfair prejudice, confusion of the issues, or misleading the jury" such that the "fundamental fairness of the adjudication [is] prejudiced." Hebert v. Lisle Corp., 99 F.3d 1109, 1114 (Fed. Cir. 1996) (vacating judgment for unfair prejudice caused by admission of evidence on equitable defense). For this reason, the Federal Circuit has authorized district courts to retain and decide equitable issues. See Agfa Corp. v. Creo Products, Inc., 451 F.3d 1366, 1375 (Fed. Cir. 2006) (in patent jury trial, judge retains "discretion to conduct a bench trial on the equitable issues").

Several district courts have concluded that, to avoid prejudice, patent misuse should be tried to the Court. See Hearing Components, Inc. v. Shure, 2009 U.S. Dist. LEXIS 25050, at *2

(E.D. Tex. Mar. 26, 2009) (holding bench trial on equitable issue of patent misuse); Hynix Semiconductor Inc. v. Rambus, Inc., U.S. Dist. LEXIS 17791, at *17 (N.D. Cal. Mar. 3, 2009) (trying patent misuse to the court while other patent issues were tried to jury); GFI, Inc. v. Franklin Corp., 88 F. Supp. 2d 619, 621 (N.D. Miss. 2000) (trying equitable defenses including patent misuse to court); Texas Instrs. Inc. v. Hyundai Elecs. Indus. Co., 49 F. Supp. 2d 893, 894 (E.D. Tex. 1999) (patent misuse tried to court after jury trial on infringement).[1]

Trying patent misuse to the jury along with the issues of infringement and validity would unfairly prejudice Cordance. Amazon's misuse defense contends that Cordance sought an illegal contractual arrangement; this argument and evidence would slander Cordance in the eyes of the jury and distract the jury from the merits of the patent infringement claims. The jury already has before it numerous technically and legally complex issues of infringement and validity. There is no reason to sidetrack their analysis with these unrelated – and purely equitable – contentions.

### B. Amazon's Patent Misuse Defense is Better Addressed by the Court

Moreover, now that the Court has eliminated a portion of Amazon's patent misuse defense on summary judgment (D.I. 417 at 18-19), its remaining misuse contention turns solely on the meaning of certain contracts between Cordance and XDI.org. These issues are factually unrelated to patent infringement; and contract interpretation is normally resolved by the Court.

Amazon contends that Cordance impermissibly extended the temporal scope of its patents through its relationship with XDI.org. Amazon's argument is based on contractual agreements between Cordance and XDI.org, including the Global Services Specification, the Global Service Provider Agreement, the Intellectual Property Rights Agreement, and the

---

[1] In situations where courts try patent misuse to a jury, courts will still seek to avoid prejudice before the infringement jury by trying misuse to a *separate* jury in a separate phase of the case. See Hynix Semiconductor, Inc. v. Rambus, Inc., 609 F. Supp. 2d 951, 956 (C.D. Cal. 2009); Hunter Douglas, Inc. v. Comfortex Corp., 44 F. Supp. 2d 145, 157 (N.D.N.Y. 1999).

XDI.org license.  Amazon's argument is based entirely on the existence and meaning of these contracts.  Amazon has not identified any other facts relevant to its patent misuse defense.

The interpretation of a contract is a legal question for evaluation by the Court, under both federal law and that of Virginia, whose law governs the contract.[2]  Lucent Techs., Inc. v. Gateway, Inc., 543 F.3d 710, 717 (Fed. Cir. 2008) ("[C]ontract interpretation is a question of law."); Tracinda Corp. v. DaimlerChrysler AG, 502 F.3d 212, 229 (3d. Cir. 2007) (same); GB Biosciences Corp. v. Ishihara Sangyo Kaisha, Ltd., 270 F. Supp. 2d 476, 481 (D. Del. 2003) (same); Phoenix Renovation Corp. v. Rodriguez, 258 Fed. Appx. 526, 537 (4th Cir. 2007) (holding that under Virginia law, contract interpretation is a question of law).

Because the interpretation of a contract does not require the performance of functions traditionally reserved for a jury (such as the evaluation of the credibility of witnesses), Amazon does not have any basis for requesting that its patent misuse theory be heard by a jury.

## II.    The Certificate of Correction Does Not Limit Damages.

Prior to this lawsuit, the Patent and Trademark Office ("PTO") issued Cordance two certificates of correction ("CoC") under 35 U.S.C. § 255 to correct typographical errors in Cordance's '710 patent.  Three years into the case, Amazon now argues for the first time that Cordance is precluded from recovering any damages prior to the issuance of the CoC.  Amazon's argument is legally incorrect and an improper stealth summary judgment motion.

A CoC applies to infringement occurring after its issuance.  The PTO granted the latest CoC on August 29, 2006, and the corrected claims are shown in Exhibit A.  The correction thus applies to Amazon's infringement after August 29, 2006, and the uncorrected claims apply to Amazon's infringement prior to August 29, 2006.  See Southwest Software, Inc. v. Harlequin

---

[2] The Global Services Specification has a Virginia choice of law clause.

Inc., 226 F.3d 1280, 1295 (Fed. Cir. 2000) (CoC applies only to causes arising after it issues); Novo Indus., L.P. v. Micro Molds Corp., 350 F.3d 1348, 1356 (Fed. Cir. 2003) (for infringement prior to COC, "the patent must be considered without the benefit of the [CoC]"); Cent. Admixture Pharmacy Servs., Inc. v. Advanced Cardiac Solutions, P.C., 482 F.3d 1347, 49 (Fed. Cir. 2007) (infringement prior to CoC is determined based on claims as originally written).

The COC, however, **does not abrogate damages**, nor does it create intervening rights.[3] No law supports Amazon's theory that it does. Instead, Amazon appears to be arguing that it does not infringe the uncorrected claims. But the uncorrected claims are not materially different from the ones with the typos corrected. Amazon infringes both, for the same reasons and in the same ways. See Shamos Decl. ¶ 12. Indeed, the question of whether Amazon infringes the uncorrected claims is a question of fact for the jury. Cordance's evidence (including Dr. Shamos's report and declaration) amply support infringement. Any evidence Amazon might assert to the contrary would simply give rise to a dispute of fact for trial. Amazon is in effect arguing a stealth summary judgment motion of noninfringement for the period prior to the CoC. The deadline for summary judgment motions is long past, and trial is barely a month away.

Further, the Court has the authority to itself correct the claims and apply them retroactively to the entire period of infringement. Hoffer v. Microsoft Corp., 405 F.3d 1326, 1331 (Fed. Cir. 2005) ("When a harmless error in a patent is not subject to reasonable debate, it can be corrected by the court, as for other legal documents."). A district court may correct patent claims where (1) the error is evident on the face of the patent and (2) in consulting the prosecution history, there is only a single reasonable correction. Group One, Ltd. v. Hallmark Cards, Inc., 407 F.3d 1297, 1302-03 (Fed. Cir. 2005). In doing so, the Court "is merely giving to

---

[3] A patent *reissue* can create intervening rights, but as Cordance did not reissue its patents that law is irrelevant to the question currently before the Court.

[the claim] the meaning which was intended by the applicant and understood by the examiner." <u>Novo</u>, 350 F.3d at 1355.  Cordance respectfully requests that the Court do so here.

The typographical errors in the '710 claims are evident from the claims themselves.  The first error is a superfluous "a" in claim 1, limitation 1 in the phrase "providing a customer data."[4]  The second error is just a repeated word.  The third error is the omission of the word "wherein" which is clear from the structure of the claim.  (<u>See</u> Shamos Decl. ¶¶ 6-7).  The fourth error, like the first, indisputably requires the removal of "an" from claim 7.

The Court can thus correct the four typos in the '710 patent claims just as the PTO did.  The corrections would apply retroactively to the entire period of infringement.  Doing so would avoid confusing the jury by giving them two slightly different versions of the claims to read.

---

[4] In writing patent claims, the first time an element is introduced in the singular, it may be written with "a" (e.g., "providing a book").  When the element is introduced in the plural, it may be written without an article ("providing books").  When an element is later referred to again, it is generally written with "said" or "the" ("said book" or "said books").  Claim 1 and its dependent claims refer back to the phrase "customer data" seven times as "said customer data" or "the customer data."  While the word "data" is plural, in common usage, it is often mistakenly used in the singular; and thus the word "a" was accidentally included in claim 1.  As the PTO acknowledged in granting the CoC, the simple correction needed was to remove the article "a."  The error is plain from the language of the claim.

The prosecution history shows that there is only a single reasonable correction.  During prosecution, Cordance submitted a draft amendment to the patent office, requesting that the claims be amended to be exactly as the corrected claims are now (e.g., "providing customer data").  (<u>See</u> Ex. B).  When the claims issued, the examiner amended the claims, but he apparently inadvertently left in the article "a" in the claim language.  (<u>See</u> Exs. C, D).

Amazon has suggested that claim 1 was intended to read "providing a customer [with] data storing information."  (<u>See</u> Ex. E, Supp. Resp. to Interrog. No. 4).  Amazon's suggestion, however, **would create eight other typographical errors in the claim rather than fixing just one**.  First, the phrase "storing information for a customer" in the first limitation of claim 1 would have to be changed to "storing information for <u>the</u> customer" to refer back to the previously identified customer.  Second, the seven instances of "the customer data" and "said customer data" would have to be changed to "the data" and "said data," respectively.  Such a suggestion is clearly counter to the intent of Cordance and the understanding of the examiner during prosecution as shown in Exhibits B, C, and D.

                    ASHBY & GEDDES

                    */s/ Lauren E. Maguire*

                    _____
                    Steven J. Balick (I.D. #2114)
                    John G. Day (I.D. #2403)
                    Tiffany Geyer Lydon (I.D. #3950)
                    Lauren E. Maguire (I.D. #4261
                    500 Delaware Avenue, 8th Floor
                    P.O. Box 1150
                    Wilmington, DE 19899
                    (302) 654-1888
                    sbalick@ashby-geddes.com
                    jday@ashby-geddes.com
                    tlydon@ashby-geddes.com
                    lmaguire@ashby-geddes.com

                    *Attorneys for Plaintiff Cordance Corporation*

*Of Counsel:*

Michael A. Albert
Robert M. Abrahamsen
Jeffrey C. O'Neill
WOLF, GREENFIELD & SACKS, P.C.
600 Atlantic Avenue
Boston, Massachusetts 02210
(617) 646-8000
malbert@wolfgreenfield.com
rabrahamsen@wolfgreenfield.com
joneill@wolfgreenfield.com

Dated: July 1, 2009

**EXHIBIT A – '710 Claims as Amended by the Certificates of Correction**

The following is a redline showing how the typographical errors in the claims of the '710 patent were corrected by the certificates of correction.

The four corrections are:

> [i] removing "a" from claim 1, limitation 1;
>
> [ii] removing a repetition of "by" from claim 1, limitation 3;
>
> [iii] adding an omitted "wherein" to claim 3; and
>
> [iv] removing "an" from claim 7, limitation 1.

In the claim text below, each correction is identified by one of the above bracketed numbers. The three deleted words ("a," "by," and "an") are shown by strike-throughs. The one added word ("wherein") is shown in bold and underlined.

1. A computer implemented method comprising:

> providing [i] ~~a~~ customer data storing information for a customer usable to automatically complete an on-line purchase of an item from a seller;
>
> providing the customer with information from the seller with respect to an item;
>
> receiving from the customer an indication to initiate a purchase transaction for purchasing the item including metadata associating said customer data with said transaction;
>
> in response to the received indication, automatically completing the purchase of an item from the seller [ii] by ~~by~~ processing said metadata associating said customer data so as to complete the purchase transaction.

2. The computer implemented method of claim 1, wherein the customer data is maintained as an object.

3. The method of claim 1 [iii] **<u>wherein</u>** processing said metadata includes processing said metadata to retrieve at least a portion of said customer data from an associated data store for use in completing the transaction.

4. The method of claim 1 wherein the customer data is retrieved from a computer of the customer.

5. The method of claim 1 wherein the customer data is retrieved from a computer of the seller.

6. The method of claim 1 wherein the customer data is retrieved from a third party's computer.

2

7. A computer implemented method comprising:

providing [iv] ~~an~~ information provider data storing information for an information provider usable to automatically complete a proposed on-line transaction, including metadata associating said information with said transaction;

providing the information provider with information from an information consumer with respect to a proposed transaction;

receiving from the information provider an indication to complete the proposed transaction;

in response to the received indication, automatically completing the purchase of an item from the information consumer by accessing the information provider data to retrieve the information and process the retrieved information by processing said metadata associating said information with the proposed transaction so as to complete the proposed transaction.

8. The method of claim 7 wherein the information provider data is stored in a computer of the information consumer.

9. The computer implemented method of claim 7, wherein the information provider data is maintained as an object.