**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

CORDANCE CORPORATION,              :
                                   :
              Plaintiff,           :
                                   :
       v.                          :      Civil Action No. 06-491-MPT
                                   :
AMAZON.COM, INC. and,              :
AMAZON WEB SERVICES, LLC,          :
                                   :
              Defendants.          :

**MEMORANDUM ORDER**

**INTRODUCTION**

       This is a patent case.  On August 8, 2006 Cordance Corporation ("Cordance")

filed suit alleging that Amazon.com Inc. and Amazon Web Services, LLC (collectively,

"Amazon") infringe U.S. Patent Nos. 6,757,710 ("the '710 patent"), 6,044,205 ("the '205

patent"), 5,862,325 ("the '325 patent"), and 6,088,717 ("the '717 patent").[1]  On October

23, 2006 Amazon filed its answer asserting numerous counterclaims and defenses,

including a counterclaim of patent infringement of its U.S. Patent No. 6,269,369 ("the

'369 patent").  Currently before the court are three motions for summary judgment filed

by Amazon:  Motion for Summary Judgment of Non-Infringement and No Willful

Infringement;[2] Motion for Summary Judgment re Lack of Written Description and

Prosecution Laches for U.S. Patent 6,757,710 B2;[3] and Motion for Summary Judgment

of Invalidity of U.S. Patent 6,757,710 B2.[4]  Additionally, Cordance has moved to strike

_____

       [1] The Cordance patents are in the same patent family–three of them have the same specification
(the '710, '325, and '717 patents), and one has a shorter specification (the '205 patent).
       [2] D.I. 314.
       [3] D.I. 316.
       [4] D.I. 318.

1

certain materials relied upon by Amazon[5] and has also moved to file a sur-reply to Amazon's motion for summary judgment of invalidity due to anticipation.[6]

## SUMMARY JUDGMENT

Summary Judgment is appropriate if the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law."[7]  Once there has been adequate time for discovery, Rule 56(c) mandates judgment against the party that "fails to make a sufficient showing to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."[8]  When a party fails to make such a showing, "there can be no 'genuine issue as to any material fact' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial."[9]  The moving party is therefore entitled to judgment as a matter of law because "the nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof."[10]  A dispute of material fact exists where "the evidence is such that a reasonable jury could return a verdict for the nonmoving party."[11]

The moving party bears the initial burden of identifying portions of the record

---

[5] D.I. 339 (Motion to Strike Materials Produced After The Close Of Discovery And Inadmissible Hearsay).
[6] D.I. 380.
[7] Fed. R. Civ. P. 56(c).
[8] *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).
[9] *Id.* at 323.
[10] *Id.*
[11] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

which demonstrate the absence of a genuine issue of material fact.[12]  However, a party

may move for summary judgment with or without supporting affidavits.[13]  Therefore, "the

burden on the moving party may be discharged by 'showing' – that is, pointing out to

the district court – that there is an absence of evidence supporting the nonmoving

party's case."[14]

If the moving party has demonstrated an absence of material fact, the

nonmoving party must then "come forward with specific facts showing that there is a

genuine issue for trial."[15]  If the nonmoving party bears the burden of proof at trial, he

"must go beyond the pleadings in order to survive a motion for summary judgment."[16]

That party "may not rest upon the mere allegations or denials of his pleadings, but must

set forth specific facts showing that there is a genuine issue for trial."[17]  At the summary

judgment stage, the court is not to "weigh the evidence and determine the truth of the

matter, but to determine whether there is a genuine issue for trial."[18]  Further, "there is

no issue for trial unless there is sufficient evidence favoring the nonmoving party for a

jury to return a verdict for that party."[19]  The threshold inquiry therefore is "determining

whether there is a need for trial – whether, in other words, there are any genuine factual

issues that properly can be resolved only by a finder of fact because they may

reasonably be resolved in favor of either party."[20]

---

[12] *Celotex*, 477 U.S. at 323.
[13] *Id.*
[14] *Id.* at 325.
[15] Fed. R. Civ. P. 56(c).
[16] *Yeager's Fuel v. Pennsylvania Power & Light Co.*, 22 F.3d 1260, 1273 (3d Cir. 1994).
[17] *Anderson*, 477 U.S. at 248.
[18] *Id.* at 249.
[19] *Id.*
[20] *Id.* at 250.

3

**DISCUSSION**

A.    Amazon's Motion for Summary Judgment of Non-Infringement and No Willful Infringement[21]

In this motion for summary judgment, Amazon contends that there are no genuine issues of material fact and Cordance's willfulness allegations as to the '710, '325, and '717 patents (collectively, the "patents-in-suit"), and its infringement claims based on the '325 patent and the '717 patent (collectively "the Feedback Patents"), fail as a matter of law.   Therefore, Amazon requests that the court enter summary judgment on Counts 1-4 of Cordance's Third Amended Complaint, and Defense 1 and Counterclaims 1, 3, 5, and 7 of Amazon's Answer, Defenses and Counterclaims to Cordance's Third Amended Complaint.

Willful Infringement

**Willful Infringement Standard under *Seagate***[22]

As a result of the Federal Circuit's decision in *Seagate,* a new willful infringement standard exists.   No longer is willfulness based on the duty of care promulgated in *Underwater Devices Inc v. Morrison-Knudsen Co.*[23]   In *Seagate*, the court overruled the standard establish in *Underwater Devices* because that standard "sets a lower threshold for willful infringement that is more akin to negligence," which "fails to comport with the general understanding of willfulness in the civil context."[24]   The court noted other areas of the law, such as, the Copyright Act and the Supreme Court's recent

---

[21] D.I. 314 (Motion for Summary Judgment of Non Infringement and No Willful Infringement).
[22] *In re Seagate Tech., LLC ("Seagate")*, 497 F.3d 1360 (Fed. Cir. 2007).
[23] 717 F.2d 1380, 1389-90 (Fed. Cir. 1983).
[24] *Seagate*, 497 F.3d at 1371.

4

decision in *Safeco Ins. Co. of America v. Burr,* where willfulness has been defined to encompass reckless behavior.[25]  Therefore, *Seagate* made willful infringement in the patent arena consistent with the concept of infringement in other civil matters.

Under the new willfulness standard of *Seagate*, "proof of willful infringement permitting enhanced damages requires at least a showing of objective recklessness."[26] A two step analysis is necessary.  Under the first step, the patentee must meet the threshold inquiry of showing "by clear and convincing evidence that the infringer acted despite an objectively high likelihood that its actions constituted infringement of a valid patent."[27]  The court recognized within the first step that "'[i]t is a high risk of harm, objectively assessed, that is the essence of recklessness at common law.'"[28]  For this step, since it involves an objective assessment, the "state of mind of the accused infringer is not relevant."[29]  Should the threshold objective standard be met, "the patentee must also demonstrate that this objectively-defined risk (determined by the record developed in the infringement proceeding) was either known or so obvious that it should have been known to the accused infringer."[30]  As a result, by eliminating the affirmative duty of care, "no affirmative obligation to obtain opinion of counsel" exists.[31] The court left it to "future cases to further develop the application of this standard." Although the court provided little, if any direction, on how to apply the new standard, it did not specifically abandon other factors previously applied to the willfulness issue,

---

[25] 127 S. Ct. 2201 (2007).
[26] *Seagate*, 497 F.3d at 1371.
[27] *Id.*
[28] *Id.* (quoting *Safeco*, 127 S. Ct. at 1215).
[29] *Id.* at 1371.
[30] *Id.*
[31] *Id.*

including analysis of willfulness under the totality of the circumstances.  Use of this approach is supported by footnote 5 in the *Seagate* opinion which acknowledges that standards of commerce would be an acceptable factor to consider, along with the historical recognition of trial courts having substantial discretion to enhance infringement damages depending on the circumstances of a case.[32]

Therefore, under *Seagate's* objective standard, "both legitimate defenses to infringement claims and credible invalidity arguments demonstrate the lack of an objectively high likelihood that a party took actions constituting infringement of a valid patent."[33]

*Seagate* confirmed prior rulings that a willful infringement is not automatic merely because infringement has been found.[34]  The simple fact that infringement exists does not equate to willful infringement, even where the accused has knowledge or is aware of the patent.[35]

Amazon contends that under *Seagate*, it is entitled to summary judgment of no willful infringement.  Amazon states that it is undisputed that Cordance failed to provide notice of its patents or infringement claims to Amazon prior to the commencement of this lawsuit.[36]  Amazon also points out that, after filing suit, Cordance did not seek to

---

[32] "Although willful infringement may authorize the award of enhanced damages, 'a finding of willful infringement does not mandate that damages be enhanced, much less mandate treble damages.'" *Informatica Corp. v. Business Objects Data Integration, Inc.*, 527 F. Supp. 2d 1076, 1082 (N.D. Ca. 2007), quoting *Read Corp. v. Portec, Inc.*, 970 F.2d 816, 826 (Fed. Cir. 1992), *abrogated on other grounds by Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 975 (Fed. Cir. 1995).

[33] *Black & Decker, Inc. v. Robert Bosch Tool Corp.*, 260 Fed. Appx. 284, 291 (Fed. Cir. 2008).

[34] *Comark Comm. Inc. v. Harris Corp.*, 156 F.3d 1182, 1190 (Fed. Cir. 1998).

[35] *Id.*

[36] Amazon also argues that because it never had notice prior to the lawsuit, Cordance did not even have a good faith basis for even alleging willful infringement.  According to Amazon, this lack of good faith basis is highlighted by the complaint's allegations regarding willful infringement which are based solely on "information and belief" that the alleged infringement was "deliberate and willful."

enjoin Amazon's alleged infringement during the pendency of this suit.  Amazon contends that a patentee who does not attempt to stop an accused infringer's activities with a preliminary injunction upon filing of a lawsuit precludes a willfulness finding. Finally, Amazon contends that Cordance has identified no evidence of objective recklessness toward any of the patents-in-suit by Amazon at any time.  As a result of these purportedly undisputed facts, Amazon maintains that Cordance's willfulness allegation fails as a matter of law.  Even if Cordance were to point to such evidence, Amazon argues that it has viable non-infringement and invalidity defenses which preclude an objective recklessness finding.

Cordance counters that Amazon was on actual notice of its patents as early as 1999.  As evidence of that assertion, it notes that the patents were cited in Amazon's own patent applications, thus rebutting Amazon's contention that it did not learn of Cordance's patents until this lawsuit.  Cordance suggests that, at the very least, there is question of fact concerning Amazon's knowledge of the patents.  Cordance contends that in assessing willfulness, the jury will be also be entitled to weigh Amazon's history of attempting to monopolize 1-click technology during the 1999-2002 time frame; the fact that Amazon continues to deliberately use Cordance's technology; and the fact that Amazon has failed to put forth any substantive non-infringement position.  Cordance maintains that where conflicts remain over the underlying factual question of infringement, courts in this circuit have held that the dispute over whether infringement was willful cannot be resolved on summary judgment.  Finally, Cordance contends that *Seagate* does not require a motion for preliminary injunction as a predicate for a willfulness finding when such motion would have been futile for reasons unrelated to

7

the merits of the infringement or validity case.

Amazon contends Cordance's failure to provide notice of the patents-in-suit or its claims of infringement prior to commencing this lawsuit precludes a pre-suit willfulness finding.  Cordance responds that there is evidence that Amazon had actual notice of its patents as early as 1999.  In fact, it was only Cordance's '325 patent that Amazon was made aware of at that time.  In July 1999, two months before Amazon's own 1-click patent issued, the PTO issued an office action as part of the prosecution of Amazon's U.S. Patent 6,615,226 ("Amazon's '226 patent") which rejected certain application claims as being anticipated or obvious in light of specified prior art.  That office action also attached "[t]he prior art made of record and not relied upon is considered pertinent to applicant's disclosure," which included Cordance's '325 patent as one of ten additional references.[37]  On September 29, 2003, in prosecuting the application that issued as Amazon's U.S. Patent 6,907,315 ("Amazon's '315 patent"), Amazon filed an Information Disclosure Statement ("IDS") listing the '325 patent as one of a number of references that "may be material to the examination of [the] application."[38]  In light of those filings Cordance insists that Amazon cannot claim ignorance of Cordance's patent and, at the very least, there is a fact dispute concerning Amazon's knowledge.

The court notes first that Amazon argues that *Cordance* did not provide Amazon with notice of the patents-in-suit of infringement claims prior to filing this suit.  The evidence indicates that Amazon's patent counsel had knowledge of the '325 patent as a

---

[37] D.I. 343, Ex. P.
[38] D.I. 343, Ex. Q.  The list of references includes all of the references from the July 1999 office action in the prosecution of Amazon's '226 patent, the parent of Amazon's '315 patent.  *Id*.

result of prosecuting Amazon patents.  Cordance cites the Federal Circuit's opinion in

*Stryker Corp. v. Intermedics Orthopedics, Inc.* affirming the district court's finding of

actual knowledge of the patent-in-suit based upon evidence that defendant's patent

attorney "saw a reference to [the patent] in the Official Gazette of the United States

Patent Office, as well as a drawing."[39]  There, however, it was not only actual

knowledge of the patent-in-suit that was determinative.  The defendant's patent counsel

also had knowledge of the accused product when he learned of the patent.[40]  More

importantly, *Stryker* applied the standard that "[t]he law imposes an affirmative duty of

due care to avoid infringement of the patent rights of others"[41] which was overruled by

*Seagate*.  After *Seagate*, willfulness is not determined under a "due care" analysis and

the "state of mind of the accused infringer is irrelevant," rather, "proof of willful

infringement permitting enhanced damages requires at least a showing of objective

recklessness."[42]  Cordance has not presented clear and convincing evidence from

which a reasonable jury could conclude that Amazon acted despite an objectively high

likelihood that its actions constituted infringement of the patents-in-suit.

---

[39] 96 F.3d 1409, 1415 (Fed. Cir. 1996).

[40] *Id.*; *id.* at 1414-15 ("The court found that Intermedics had notice of Osteonics' pending patent as of January 23, 1989.  This finding was based in part on a letter dated January 23, 1989, from J.D. Webb, Intermedics' Manager of Product Development, to Intermedics' patent counsel.  In the letter, Mr. Webb sought 'consideration of a patent [on the APR II femoral stem and modular sleeve] and also to insure that we are not infringing on any other patents.'  Attached to the letter was an Osteonics brochure showing a femoral stem with the distal sleeve and marked 'U.S. Patent Pending.' . . .  The court found that Intermedics had actual notice of the '023 patent as of January 5, 1990, when an Intermedics patent attorney . . . saw a reference to the '023 patent in the Official Gazette of the United States Patent Office, as well as a drawing, on or about that date.") (citations omitted) (alteration in original).

[41] *Stryker*, 96 F.3d at 1414.  Likewise, *TV Interactive Data Corp. v. Microsoft Corp.*, No. C 02 02385 JSW, 2005 WL 1910929, *1 (N.D. Cal. Aug. 10, 2005), also relied upon by Cordance that was decided prior to *Seagate* and applied the willfulness standard overruled in that case, e.g., "[i]n determining whether the infringement was willful, the primary focus is on the infringer's intent and reasonable beliefs."

[42] *Seagate*, 497 F.3d at 1371.

With regard to the '325 patent, it is alleged that Amazon was aware of that patent prior to this suit through its citation in the prosecution of two of Amazon's own patents. With regard to the '710 and '717 patents, Cordance does not allege Amazon had notice of those patents from any source prior to this lawsuit.  Cordance argues, however, that the evidence establishes that Amazon should have known about its patents based on Amazon's activities in the field of 1-click technology.  Cordance states that starting in 1999 Amazon's focused particular attention on the field of 1-click technology and chose to build much of its e-commerce infrastructure around the value of 1-click shopping. Cordance notes that Amazon sued a major competitor (Barnes & Noble) who used 1-click technology.  During Amazon's litigation with Barnes & Noble, Amazon's founder and CEO, Jeff Bezos, testified that "Amazon.com's patented 1-Click® purchasing is a key feature of [Amazon's branded] experience that is identified with and distinguishes the Amazon.com site and brand."[43]  Cordance contends it can reasonably be inferred that a company so thoroughly invested in this breakthrough technology concept would have carefully studied the prior art before seeking a patent for and investing in that business model.  Cordance contends that such inference also meets the alternative "should have known" test under *Seagate*.  Cordance's reading of *Seagate* is overly broad.  That court stated "the patentee must also demonstrate that this objectively-defined risk (determined by the record developed in the infringement proceeding) was either known or *so obvious that it should have been known* to the accused infringer."[44] The court disagrees that Amazon's interest in 1-click technology is sufficient to show by

---

[43] D.I. 343, Ex. W, ¶ 18.
[44] *Seagate* 497 F.3d at 1371 (emphasis added).

clear and convincing evidence that Amazon "acted despite an objectively high likelihood that its actions constituted infringement of a valid patent."  Cordance's argument that Amazon's focus on that technology means that it "should have known" of Cordance's '710 and '717 patents suggests the negligence standard for willful infringement overruled by *Seagate*.[45]  Moreover, Amazon contends that this is not a case where the theory of infringement is objectively obvious, apparently even to Cordance, since Amazon's web site with the feedback systems accused by Cordance were launched more than a year prior to Cordance's filing dates and yet Cordance waited fifteen months into this litigation to assert the '325 and '717 patents.

Lastly, Amazon has moved for summary judgment of invalidity or non-infringement of the asserted patents.  "[B]oth legitimate defenses to infringement claims and credible invalidity arguments demonstrate the lack of an objectively high likelihood that a party took actions constituting infringement of a valid patent."[46]  Here, the court determines that Amazon's arguments of invalidity and non-infringement demonstrate a good faith belief in its defenses to Cordance's claims.  In its own motion for partial summary judgment, Cordance at least suggests that Amazon's arguments are substantial.  Despite the court agreeing with Cordance's proposed constructions for a majority of the disputed claim terms, Cordance did not itself move for summary judgment except as to certain subsidiary defenses raised by Amazon.  In fact, in its

---

[45] Cordance contends that it was during the 1999-2002 time period that Amazon "was aggressively seeking to enforce its own one-click patent against a large competitor in the e-commerce industry discovery, and thus devoted extensive resources to examining the art in that field."  Amazon argues that the '710 patent claims were not filed until December 2002, and it did not issue until 2004, therefore, it would have been impossible for Amazon to have willfully infringed before the issue date.

[46] *Honeywell Int'l Inc. v. Universal Avionics Sys. Corp.*, 858 F. Supp. 2d 626, 642 (D. Del. 2008) (quoting *Black & Decker, Inc. v. Robert Bosch Tool Corp.*, 260 Fed. Appx. 284, 291 (Fed. Cir. 2008)).

brief in support of its motion for summary judgment Cordance represented that:

> This patent infringement case raises hotly contested disputes of fact regarding the operation of Amazon's one-click and feedback systems and their use of the inventions claimed in Cordance's patents.  These issues are likely to turn ultimately on conflicting technical expert testimony.  The core issues of infringement and validity in this case, accordingly, are not amenable to summary judgment, and Cordance does not ask the court to involve itself at this time in weighing conflicting contentions and evidence.[47]

Furthermore, though Cordance cites cases where summary judgment of no willful infringement was denied, those cases present additional evidence from which a jury might find willful infringement that are not present here.  In *Depomed, Inc. v. Ivax Corp.*, in addition to a denial of a motion for summary judgment of invalidity, the court noted that plaintiff's patent "issued almost two years *before* [defendant] began selling" the accused product, and thus giving "ample time to investigate and discover the relevant patent."[48]  Also, there was "evidence that the [patent] and an agreement to license the patent to a third party were well publicized."[49]  In *Arlington Indus., Inc. v. Bridgeport Fittings, Inc.*, the court denied summary judgment on willful infringement where there was ongoing conflict over infringement.[50]  The court notes, however, that in denying the defendant's motion for summary judgment of no willful infringement the court stated that:

> [Plaintiff] has set forth *considerable evidence* purporting to establish the recklessness of [defendant's] actions with respect to the patent dispute at hand.  Much of this evidence requires judgments of credibility and the reasonableness of various business decisions.  Thus, the ongoing conflict

---

[47] D.I. 313 at 1.
[48] 532 F. Supp. 2d 1170, 1185-86 (N.D. Cal. 2007) (emphasis added).
[49] *Id.* at 1186.
[50] No. 3:01-CV-0485, 2009 WL 260981, at *13 (M.D. Pa. Feb.. 4, 2009).

regarding the existence of infringement, coupled with the affirmative evidence of willfulness raised by [plaintiff], compel resolution of this question by the jury.[51]

The considerable evidence purporting to establish the defendant's recklessness included:

that [the defendant's] attempts to copy the [patent-in-suit] have been ongoing since 1994; that [the defendant] has been permanently enjoined from infringing three separate . . . devices [of plaintiff's], including the [the patent-in-suit]; that [defendant's] executives made no attempt to obtain design advice from patent counsel and, in fact, made very little effort to ensure that its [accused] products would avoid the [patent-in-suit] patent. [Plaintiff] also alleges that [the defendant] ignored its own internal standard operating procedures designed to prevent the manufacture of devices with infringing designs.  These conclusions are by no means certain, but they are not unreasonable, mandating their eventual resolution by the jury.[52]

Because the court finds that Cordance has not presented evidence sufficient to support a finding of willfulness under *Seagate*, Amazon's motion for summary judgment of no willful infringement is granted.[53]

---

[51] *Id.* at *13 (footnote and citation omitted) (emphasis added).

[52] *Id.* at *13, n.24 (citations omitted).  The other case cited by Cordance, *Cal. Table Grape Com'n v. RB Sandrini, Inc.*, No. 1:06-cv-00842, 2007 WL 1847631, at *21 (E.D. Cal. June 27, 2007), was decided prior to *Seagate* and applied the now-inapposite willfulness standard:  "[t]he focus is generally on whether the infringer exercised due care to avoid infringement, usually by seeking advice of competent counsel. Willful infringement must be proved by clear and convincing evidence in view of the totality of the circumstances that the alleged patent infringer acted in disregard of the patent and lacked a reasonable basis for believing it had a right to do what it did."  Cordance also notes that there is no evidence that Amazon attempted to design around or otherwise modify its systems to avoid Cordance's claims nor has Amazon ever indicated that it sought or obtained a legal opinion on non-infringement or invalidity.  As support, it again sites another pre-*Seagate* opinion, *SRI Int'l, Inc. v. Advanced Tech. Labs., Inc.*, 127 F.3d 1462, 1465 (Fed. Cir. 1997) (stating "[a] factor to be considered is whether the adjudged infringer relied on legal advice" and discussing mitigating aspects of a willfulness determination such as "whether there was independent invention or attempts to design around and avoid the patent").  Cordance has not presented sufficient evidence to demonstrate Amazon "acted despite an objectively high likelihood that its actions constituted infringement of a valid patent" and the court does not believe Amazon's purported failure to design around or modify its systems is significant.  Also, *Seagate* states that "[b]ecause we abandon the affirmative duty of due care, we also reemphasize that there is no affirmative obligation to obtain opinion of counsel."  497 F.3d at 1371.

[53] In light of this determination, the court declines to address the parties' arguments concerning Cordance's failure to file for a preliminary injunction after beginning this litigation.

Non-Infringement

On December 5, 2008, the court issued its claim construction order.[54]   One of the claim terms defined was "feedback information."   Cordance's proposed construction was "information that includes an evaluative review and may also include information related to the review such as its subject or the evaluator."   Amazon's proposed construction was "evaluation attributes and corresponding value choices."   The court rejected Cordance's proposed construction and adopted Amazon's proposed construction:  "evaluation attributes and corresponding value choices."[55]   As a result of that construction, Amazon states that Cordance's infringement claims against Amazon's buyer/seller feedback and product review features fail as the great majority of its accused products do not provide the required evaluation attributes and corresponding value choices, but, rather support only free text reviews and an overall star rating.[56]   The free text based review allows a user to type a narrative review about a buyer, seller, or product, and an overall rating that permits a user to give a buyer, seller, or a product between one and five stars.   Consequently, Amazon contends that it does not infringe the asserted claims of the '325 or '717 patents ("the Feedback Patents").

For the asserted claims of the '325 and '717 patents, Cordance has accused two sets of features on Amazon's web site.   One set of features is the "buyer/seller feedback."   In a declaration in support of Amazon's motions for summary judgment, its

---

[54] *Cordance Corp. v. Amazon.com, Inc.*, C.A. No. 06-491-MPT, 2008 WL 5147212 (D. Del. Dec. 5, 2008).

[55] The term "feedback information" is found in each of the asserted claims of the '325 and '717 patents.

[56] Amazon notes that for only a few product categories does Amazon possibly provide the ability for users to rate products based on particular characteristics.

expert, Dr. Lorenzo Alvisi, states that "I have examined this feature on Amazon's website.  This feature allows Amazon users to post text-based comments and provide an overall rating of parties that buy or sell products through Amazon's website."[57]  The second set of accused features are product reviews posted by Amazon customers.  Alvisi states that "I have examined this feature on Amazon's website.  This feature for all product reviews (with the possible exception for toys, wireless carrier, and restaurant categories during certain periods) similarly allows users to post only reviews in the form of text-based comments and an overall product rating."[58]  Alvisi opines neither feature falls under the court's claim construction for "feedback information":

> Upon my examination of the accused features, I conclude that neither the "buyer/seller feedback" feature nor the product review feature (with the possible exception for toys, wireless carrier, and restaurant categories during certain periods) provide Amazon users with the ability to rate people or products based on predefined characteristics, *i.e.*, "evaluation attributes," of the person or product.[59]

Amazon maintains that Cordance's proposed construction– "information that includes an evaluative review and may also include information related to the review such as its subject or the evaluator"–was designed to capture Amazon's free text product reviews and buyer/seller feedback features.  Amazon contends that the court's adoption of Amazon's proposed construction of the term confirms that the accused features of Amazon's web site are non-infringing.  Amazon argues that its "buyer/seller feedback" feature allows an Amazon customer to post comments and an overall star rating of third parties who buy or sell products on Amazon's web site.  With regard to

---

[57] D.I. 322, ¶ 19 (Alvisi Declaration).
[58] D.I. 322, ¶ 20.
[59] D.I. 322, ¶ 21.

the product review features, it contends that such reviews are limited to free text provided by the reviewing customer and an overall star rating.  Amazon argues that Cordance's patents do not describe a system for processing and posting free text reviews, describing instead a system for collecting and tabulating numerical scores for specific predefined attributes relevant to the particular item being evaluated.  Because Amazon's accused features purportedly do not operate in the way Amazon characterizes the patents' disclosure, those features cannot infringe.

Cordance contends that there are remaining questions of fact, e.g., whether Amazon's products support more than just "free text reviews and overall star ratings," and whether such reviews and ratings incorporate "evaluation attributes and corresponding value choices."  Cordance disputes Amazon's contention that neither its buyer/seller feedback collection system nor its product review collection system "provides the required evaluation attributes and corresponding value choices as both support only free text reviews and an overall star rating."  For support, Cordance's expert, Dr. Michael Shamos states that one of Amazon's accused feedback system allows customers to enter reviews of items for sale on Amazon's web site.  In entering such review, the customer fills out a form where the review may:  (1) indicate if she is over 13 years old; (2) rate the item on a scale of 1 to 5 stars; (3) enter a title for her review; (4) select whether the review will be written of via video; and (5) type a review in the indicated space.[60]  Consequently, Cordance maintains that Amazon's system supports more than "only free text reviews and an overall star rating."  Likewise,

_____

[60] D.I. 342, ¶ 23 (Shamos Declaration).

Shamos states that Amazon's seller feedback forms contain additional features, in at least some instances, allowing a user to provide:  (1) rating the overall experience with the seller on a scale of 1 to 5 stars; (2) written comments regarding the buyer's experience with the seller; (3) the timeliness of the item's delivery; (4) whether the items arrived in the condition as described by the seller; and (5) the quality of the seller's customer service.[61]

Cordance further argues, that even if the accused features do only support free text reviews and an overall star rating, such reviews still incorporation "evaluation attributes and corresponding value choices" as the court has defined "feedback information."  First, Cordance takes issue with Alvisi's declaration statement that "evaluation attributes and corresponding value choices" require "predefined characteristics," and his conclusion, based thereon, that the overall ratings and text-based comments in Amazon's system are not "predefined characteristics."  Cordance contends that nothing in the court's claim construction requires "evaluation attributes" to represent predefined characteristics, nor that the construction requires that such characteristics be aggregated and summarized as Amazon suggests in its briefing.  Even if aggregation and summarization were required, Cordance maintains that another question of fact would be raised by that requirement.  Cordance contends that Amazon does actually collect and tabulate star ratings by pointing to Amazon documents showing an average of all buyer feedback over a set time period and "Guest Product Review Quarterly Distribution" tabulating the number of reviews by star rating in each

---

[61] D.I. 342, ¶ 29.

17

quarter.[62]

Cordance also notes that Alvisi's opinion is contradicted by that of Shamos whose declaration gives a lengthy explanation as to why Shamos opines that Amazon's feedback systems contain the "feedback information" recited in the asserted claims.[63] As only one example, Shamos cites the evaluation attribute of the "overall quality rating" of a minivan and a corresponding value choice on a scale of 1-10 as an example of "feedback information" described in the '325 and '717 patents.[64] Shamos then opines that Amazon's accused systems permitting: rating an item on a scale of 1 to 5 stars; rating the durability of an item on a scale of 1 to 5 stars; and a rating of an overall experience with a seller on a scale of 1 to 5 stars are "evaluation attributes and corresponding value choices," i.e., "feedback information."

Without detailing the parties' additional arguments, the court finds that the evidence presented creates a question of fact as to whether Amazon's accused feedback system contains the claimed "feedback information" as defined by the court. Consequently, Amazon's motion for non-infringement is denied.

B.    Amazon's Motion for Summary Judgment re Lack of Written Description and Prosecution Laches for U.S. Patent 6,757,710 B2[65]

Amazon argues that the claims of the '710 patent are invalid because the claims

---

[62] *See*, D.I. 343, Ex. U; Ex. MM.

[63] *See*, D.I. 342, ¶¶ 20-32.

[64] D.I. 342, ¶ 20; '717 patent, 127:54-60 ("A feedback consumer can create a query for only those communications objects 110 representing minivans with a sticker price of less than $20,000 which also had overall quality rating of 7 or higher on a scale of 1 to 10 from feedback providers whose expertise level was rated by other feedback providers to also 7 or higher on a scale of 1 to 10.")

[65] D.I. 316 (Motion for Summary Judgment re Lack of Written Description and Prosecution Laches for U.S. Patent 6,757,710 B2). The court's determination of Amazon's motion for summary judgment of prosecution laches was separately discussed in connection with Cordance's motion for partial summary judgment which also addressed the prosecution laches issue.

18

are not adequately described as required by 35 U.S.C. § 122(1).  Amazon also argues

that because the '710 patent claims priority to the February 1996 filing date of the '205

patent, the '710 patent claims must supported by the disclosure of the '205 patent

specification.[66]  Cordance maintains that whether the '205 patent provides written

description support for the claims of the '710 patent is not relevant to Amazon's motion

for summary judgment that the '710 patent specification purportedly fails to satisfy the

written description requirement supporting the claims of the '710 patent.  Cordance

contends that Amazon's argument concerning support for the '710 patent's claims in

the '205 patent specification relates, not to the written description argument that is the

subject of this motion, but to Amazon's argument in a separate motion summary

judgment of invalidity due to anticipation.  Although Cordance is technically correct that

the priority date issue is relevant to Amazon's anticipation motion, Cordance,

nevertheless, argues in opposition to Amazon's written description motion that the '205

patent specification does support the claims of the '710 patent.  The court will,

therefore, consider the parties' arguments on this issue.

     35 U.S.C. § 112(1) provides:

> The specification shall contain a written description of the invention, and
> of the manner and process of making and using it, in such full, clear,
> concise, and exact terms as to enable any person skilled in the art to
> which it pertains, or with which it is most nearly connected, to make and
> use the same, and shall set forth the best mode contemplated by the
> inventor of carrying out his invention.

    Section 112(1) requires that the patent specification describes the invention "in

---

[66] *Vas-Cath Inc. v. Mahurkar*, 935 F.2d 1555, 1566 (Fed. Cir. 1991) ("Application sufficiency under § 112 first paragraph, must be judged as of the filing date.").  The '710 patent is the last in a family of patents that originated with the filing of the '205 patent on February 29, 1996.

sufficient detail that one skilled in the art can clearly conclude that the inventor invented the claimed invention . . . ."[67]  "The purpose of this provision is to ensure that the scope of the right to exclude, as set forth in the claims, does not overreach the scope of the inventor's contribution to the field of art as described in the patent specification."[68]  To comply with the written description standard, one "'does not have to describe exactly the subject matter claimed, [rather] the description must clearly allow persons of ordinary skill in the art to recognize that [he or she] invented what is claimed.'"[69] Although exact description of the subject matter claimed is not required, the Federal Circuit has made clear that the specification must "convey with reasonable clarity to those skilled in the art that, as of the filing date sought, he or she was in possession *of the invention*."[70]  "One shows that one is 'in possession' of *the invention* by describing *the invention*, with all its claimed limitations, not that which makes it obvious."[71]

> While the meaning of terms, phrases, or diagrams in a disclosure is to be explained or interpreted from the vantage point of one skilled in the art, all the limitations must appear in the specification.  The question is not whether a claimed invention is an obvious variant of that which is disclosed in the specification.  Rather, a prior application itself must describe an invention, and do so in sufficient detail that one skilled in the art can clearly conclude that the inventor invented the claimed invention as of the filing date sought.[72]

---

[67] *Lockwood v. Am. Airlines, Inc.*, 107 F.3d 1565, 1572 (Fed. Cir. 1997) (emphasis in original).
[68] *Reiffin v. Microsoft Corp.*, 214 F.2d 1342, 1345 (Fed. Cir. 2000); *see also Pandrol USA, LP. v. Airboss Ry. Prods., Inc.*, 424 F.3d 1161, 1165 (Fed. Cir. 2005) ("The purpose of the written description requirement is to prevent an applicant from later asserting that he invented that which he did not; the applicant for a patent is therefore required 'to recount his invention in such detail that his future claims can be determined to be encompassed within his original creation.'" (quoting *Amgen Inc. v. Hoechst Marion Roussel Inc.*, 314 F.2d 1313, 1330 (Fed. Cir. 2003)).
[69] *Vas-Cath Inc.*, 935 F.2d at 1563 (quoting *In re Gosteli*, 872 F.2d 1008, 1012 (Fed. Cir. 1989)) (second alteration in original).
[70] *Id.* at 1563-64 (emphasis in original).
[71] *Lockwood*, 107 F.3d at 1572 (emphasis in original).
[72] *Id.*

Because a patent is presumed valid under 35 U.S.C. § 282, the evidentiary burden for "invalidating a claim requires a showing by clear and convincing evidence that the written description requirement has not been satisfied."[73]  "Compliance with the written description requirement is a question of fact but is amenable to summary judgment in cases where no reasonable fact finder could return a verdict for the non-moving party."[74]

Amazon focuses its arguments on three aspects of the asserted claims of the '710 patent:  (1) "completing a purchase transaction"; (2) "automatically completing the purchase of an item"; and (3) "automatically completing the purchase of an item from the seller."[75]  In support of its motion, Amazon relies on declarations of its expert, Dr. Lorenzo Alvisi, detailing his reasons for opining that the claims are not adequately described.  Cordance counters with the declarations of its expert, Dr. Michael Shamos, and the inventor, Mr. Drummond Reed, in which each opine that the asserted claims are adequately described.  Cordance casts the competing declarations as creating classic factual disputes from which a reasonable jury could find that the '710 patent adequately describes its claims.  Amazon responds that Reed and Shamos each fail to identify express disclosures of several critical '710 claim elements and, additionally, as noted above, that Shamos improperly argues that limitations known or obvious to one

---

[73] *Invitrogen Corp. v. Clontech Labs., Inc.*, 429 F.3d 1052, 1072 (Fed. Cir. 2005).

[74] *PowerOasis, Inc. v. T-Mobile USA, Inc.*, 522 F.3d 1299, 1307 (Fed. Cir. 2008) (citing *Invitrogen Corp. v. Clontech Labs.,* 429 F.3d 1052, 1072-73 (Fed. Cir. 2005)).

[75] Claims 1-6 of the '710 patent require "automatically completing the purchase of an item *from the seller*," while claims 7-9 require "automatically completing the purchase of an item *from the information consumer*."  Amazon's arguments focus on the requirement that the item be purchased from the seller, however, its arguments are equally applicable to claims requiring purchase from the information consumer.  In its opposition brief, Cordance does not take issue with Amazon's position.

of skill in the art need not be expressly described.

Cordance also contends that a question of fact exists as to whether Alvisi is qualified as one of skill in the art.  Alvisi opines that:

> One skilled in the art would be familiar with the types of systems cited in the Invention Disclosure Statements submitted during the prosecution of the asserted patents.  Additionally, one skilled in the art would have experience building distributed computing systems, or equivalent academic training.[76]

Cordance's expert, Shamos, disagrees with Alvisi's description of one skilled in the art stating that "[w]hile client/server systems of the type used on the Internet are by their nature distributed, skill in building distributed systems is not called for in the patents, and 'distributed system' is never mentioned."[77]  Shamos opines from his review of Cordance's patents and their prosecution histories that "a person of ordinary skill in the art to which the patents-in-suit would have a bachelor's degree in computer science (or equivalent work experience) and experience in computer network communication protocols, including Internet protocols, object-oriented programming and developing software for electronic commerce transactions."[78]  Cordance argues that a search of Alvisi's qualifications does not reveal any experience in the field of electronic commerce and, therefore, he does not meet the level of ordinary skill in the art.  According to Cordance, at a minimum, this creates a factual dispute precluding summary judgment.

In his reply declaration, Alvisi takes issue with Shamos' contention that he does not meet the level of ordinary skill in the art.  He notes that "the field of distributed

---

[76] D.I. 322, ¶ 16.
[77] D.I. 342, ¶ 13.
[78] D.I. 342, ¶ 14.

computing is directly relevant to e-commerce applications, which are of course examples of distributed computing systems."[79]  He states that, during the late 1990s, he "worked on and helped solve problems in the design and implementation of some of the largest e-commerce and web systems then in existence which were used by millions of consumers a day."[80]  Cordance, and Shamos, also intimate that Alvisi did not read or analyze the entire specifications of the asserted patents.  Alvisi avers that he has "thoroughly analyzed all Cordance's patent specifications including all the figures" focuses of his opening declaration "on the payment partner server description because Cordance told the Patent Office and the court in its claim construction papers that this description supported the '710 claims."[81]

From a review of the declarations submitted by Alvisi, the court is satisfied that he meets the level of skill in the art with regard to the patents-in-suit and Cordance's challenge to Amazon's motion based on Alvisi's qualifications does not warrant a denial of that motion.

<u>Completing a Purchase Transaction</u>

Amazon contends that the '710 patent's specification does not adequately describe "completing a purchase transaction."  Amazon's expert Alvisi cites a section of the patent in the Payment Service Objects and Partner Servers" section as the only passage relating to completing a purchase transaction:

> Now a data exchange method 141 on the payment partner server 1302 can carry out the purchase order transaction using the verified purchase

---

[79] D.I. 362, ¶ 5 (Alvisi Reply Declaration).
[80] D.I. 362, ¶ 6; *see also id.*, ¶¶ 6-9 (discussing "the challenges in maintaining a meaningful relationship between providers and consumers of information," as well as, his specific work in the field).
[81] D.I. 362, ¶ 10.

order data, the verified customer account certificate, and the verified merchant account certificate (step 4466).  This may involve any sequence of steps between the payment partner server 1302 and other payment servers or data processing systems, such as the consumer's bank or credit clearinghouse, a credit card processor, a cybercash server, and so on.[82]

Alvisi opines that:

There is not enough information in the patent for one skilled in the art to understand how the inventors contemplated the certificates and purchase order data would be used to carry out the transaction.  The patent does not even describe or suggest what is meant by carrying out the purchase order transaction.

In addition, the statement "any sequence of steps" is not an adequate description to convey to one of ordinary skill that the inventor had in his possession an invention to "carry out the purchase order transaction."[83]

In response, Cordance states that Alvisi is incorrect that the '710 patent does not disclose the "processing of the customer certificate" by pointing to sections of the specification not cited by Alvisi.[84]  Cordance also contends that the '710 patent further describes:  the processing of certificates in the form of customer account certifications in the context of payment transactions; describes the contents of a customer account certificate, how a unique customer ID is retrieved from the certificate and how that unique ID "identifies the stored customer data to be used to complete the transaction"; and gives specific examples of how one of ordinary skill in the art could complete a purchase by stating that the payment partner server could use "other payment servers or data processing systems, such as the consumer's bank or credit clearinghouse, a credit card processor, a cybercash server, and so on," each of which were purportedly

---

[82] D.I. 322, ¶ 32 (quoting '710 patent, 122:27-35).
[83] D.I. 322, ¶¶ 33-34.
[84] D.I. 336 at 9 (noting Shamos' citation of '710 patent, 121:65-122:7 in paragraphs 52-53 of his declaration).

well known in the art.[85]

The conflicting expert opinions creates a question of fact that the court cannot

resolve on a motion for summary judgment.

<u>Automatically Completing the Purchase of an Item</u>

Amazon next argues that the '710 patent does not describe an invention for

"*automatically* completing the purchase of an item" stating that:

> "[a]ny sequence of steps" does not suggest any limitation on the number
> of clicks or other user actions that may be required to order an item and
> certainly would not suggest to one of ordinary skill that Cordance had an
> invention covering one-click, or any particular number of clicks.
> Conclusory statements that leave one of ordinary skill to guess at what
> the invention may be have repeatedly been found insufficient to meet the
> written description requirement[86]

Alvisi opines that "[o]ne skilled in the art after reading the '710 Patent would not

understand that the patent described a method or system for completing purchase

transactions with one mouse click, or any number of mouse clicks for that matter."[87]

Cordance responds that Amazon's argument is incorrect as a result of its

misapprehension of the '710 patent's claims.  First, according to claim 1 of the '710

patent, it is not the customer that performs the act of "automatically completing the

purchase of an item."  Rather, it is the seller or third party that receives an "indication to

initiate from the customer and then that other entity which performs the act of

"automatically completing the purchase of an item."  Shamos opines "[o]ne of skill in the

art would have understood that once an order is received, no more action is required on

---

[85] D.I. 336 at 9 (citing Shamos Decl., ¶¶ 54-55, 67-69, 59 and specification references from the
'710 patent referenced therein).
[86] D.I. 317 at 14 (citing Alvisi Decl., ¶ 35).
[87] D.I. 322, ¶ 35.

the part of the customer and thus the purchase is completed 'automatically' from the customer's point of view."[88]  Cordance contends that the specification does not describe any clicks in "automatically completing a purchase" because no clicks take place. According to Cordance, automatically completing a purchase is performed by the seller or third party using "other payment servers or data processing systems, such as the consumer's bank or credit clearinghouse, a credit card processor, a cybercash server, and so on."[89]  Moreover, Cordance maintains that the patent need not describe any number of clicks at all since all the claims recite is an "indication to initiate" and "automatically completing the purchase of an item" in response to that indication.

Finally, Cordance states that the '710 patent's specification clearly describes "automatically completing the purchase of an item."  It cites the patent's explanation that a "payment service object . . . operates . . . to provide secure financial transaction services."[90]  Those "[p]ayment service objects allow such common payment services as credit card transactions, electronic funds transfers, and cybercash transactions to take place easily, automatically, and securely."[91]  Cordance states that a merchant can use links to the payment service object and "can indicate the services of such payment service objects 1310 by using the names or logos of the appropriate credit cards, debit cards, and so on in a product ordering input form."[92]  After a customer selects the link, "the payment service object 1310 is used automatically."[93]  Cordance states that the

---

[88] D.I. 342, ¶ 40.
[89] D.I. 336 at 11 (citing Shamos Decl., ¶ 59).
[90] '710 patent, 119:27-31.
[91] '710 patent, 119:36-39.
[92] '710 patent, 121:21-32.
[93] '710 patent, 121:32-34.

automated sequence of events is shown in Figure 38, including "carry[ing] out the purchase order transaction," which involves clearing payment with "other payment servers or data processing systems such as the consumer's bank or credit clearinghouse, a credit card processor, [or] a cybercash server."[94]  "When the transaction has been completed . . . a unique receipt number can . . . be used to verify the transaction with both the customer and the merchant."  Cordance contends, therefore, that a person of ordinary skill in the art would recognize that the '710 patent describes "automatically completing the purchase of an item."  The court again finds that the competing expert opinions create a question of fact precluding summary judgment.

<u>Automatically Completing the Purchase of an Item from the Seller</u>

Amazon contends that the '710 patent fails to described its claimed requirement of "automatically completing the purchase of an item *from the seller*."  Amazon states that the '710 patent's description of purchasing transactions is limited to transmitting purchase orders to the payment partner server, the intermediary between a seller and a buyer.  Amazon maintains that the patent does not describe how the purchase order is transmitted to the seller to complete the purchase of an item *from the seller* and Alvisi states that the specification "does not describe anything the seller does when it somehow receives a purchase order."[95]  Citing Cordance's earlier answering claim construction brief, Amazon states that Cordance points to a single statement in the specification that the payment partner server can be combined with other functionality

---

[94] '710 patent, 122:24-35.
[95] D.I. 322, ¶ 37.

to show that the '710 patent disclosed combining seller functionalities with the functionality of the payment partner:  "[i]n another embodiment of the present invention, the functions of either or both the programs 12, 22, and databases 11, 21 can be combined with a partner server 1302 and a partner server database 1301."[96]  Alvisi opines that that citation does not describe combining the functions of the seller with the payment partner server and such combination would purportedly defeat the purpose of having a trusted third party entity mediate the interactions between multiple buyers and sellers.

Citing four columns of the patent specification, Cordance argues that the Payment Partner Server section of the '710 patent describes in detail the purchase of an item by a customer through a payment partner server.[97]  Shamos disagrees with Alvisi and opines that "there is no doubt over how the seller receives the order," which he states is fully described in the specification:[98]

> From this point the receipt acknowledgment process can take several paths.  The payment partner server 1302 can return receipt acknowledgments to both the consumer program 22 and the provider program 12.  Each of these programs can in turn send receipt acknowledgments to the other to complete full three-way acknowledgment.[99]

Shamos also opines that "[t]he fact that a purchase may be made through an intermediary does not imply that the ultimate seller would be confused about how to fill an incoming order."[100]

---

[96] '710 patent, 128:51-54.
[97] D.I. 336 at 12 (citing '710 patent, 119:26-123:28).
[98] D.I. 342, ¶ 61.
[99] '710 patent, 122:41-46.
[100] D.I. 342, ¶ 61.

<u>'205 Patent's Description of the Claims of the '710 Patent</u>

Amazon correctly states that to maintain priority to the earlier February 1996 filing date of the '205 patent, the '710 patent claims must be described in the '205 patent specification.[101]  Amazon contends that the '205 patent specification does not adequately describe the on-line purchasing process claimed in the '710 patent and, therefore, the '710 patent is not entitled to that earlier filing date.  The abstract of the '205 patent describes the invention as "[an] automated communications system [that] operates to transfer data, metadata and methods from a provider computer to a consumer computer through a communications network."[102]  Alvisi notes that it explains that "communications objects" are what "encapsulate data, metadata, and methods for automating communications with the provider of the object."[103]  Amazon argues, therefore, that "communications objects" are central to the to the invention described in the '205 patent specification.[104]  Amazon states that none of the '710 patent claims directed to automatically complete an on-line purchase of an item require a "communications object" or other control structure.  According to Amazon, therefore, what is claimed in the '710 patent is not the invention described in the '205 patent specification.[105]

---

[101] *See Vas-Cath*, 935 F.2d at 1566 ("Application sufficiency under § 112 first paragraph, must be judged as of the filing date.").

[102] '205 patent, Abstract.

[103] D.I. 322, ¶ 13 (quoting '205 patent, 42:52-54).

[104] *See* D.I. 322, ¶ 13 (quoting '710 patent, 13:31-34 ("Communications objects are the core data structure transmitted from the provider program to the consumer program to control communications between the provider and consumer.").

[105] *See* D.I. 322, ¶ 15 ("[T]he key aspect of Cordance's invention described in the patent specifications is the use of a "communications object" or "control structure" that is transferred between a provider and consumer computer, and includes processes to control future communications between those computers.").

Cordance responds that a communications object is neither essential or critical to the description of the '205 patent.  It contends that a "communications object," a "control structure" nor anything else was described as an "essential" or "critical" feature of the invention; and that they are not.  In support, Cordance points to the statement in the '205 patent's specification that:

> The use of software objects and object-oriented databases . . . are useful in the storage, transfer, and processing of information. . . . Thus, the following description of a preferred embodiment will discuss the use of objects.  However, *other methods for storing, transferring, and processing information, such as relational databases, binary files, or procedural programs, could be used*.[106]

Thus, Shamos opines that "[n]owhere does either specification state or imply that 'communication objects' and 'control structures' are key aspects of the claimed inventions" and that the specification makes clear that "communications objects and control structures can be used to implement embodiments of the inventions but that they are not required."[107]

Amazon also contends that nothing in the '205 patent specification describes automatically completing an on-line purchase.  It maintains that the passages Cordance points to describes the transfer of data between two computers that can then be used to control future communications between them.  None, argues Amazon, discuss how that data is "usable to automatically complete an on-line purchase of an item" are required by the asserted claims of the '710 patent.  Amazon states that the only passage of the '205 patent specification that alludes to product ordering recites:

---

[106] '205 patent, 12:39-63.
[107] D.I. 342, ¶ 36.

> Or the provider can also include special forms to be processed by the consumer program 22 that allow the consumer to automatically or semi-automatically transfer data from the consumer database 21 back to the provider.  Examples include product order forms, survey forms, customer service request forms, scheduling forms, etc.[108]

Alvisi opines that while that language section of the '205 specification mentions product order forms, it "does not describe in response to receiving a completed order form from the consumer the step of 'automatically completing the purchase of an item from the seller' . . . or 'automatically completing the purchase of an item from the information consumer' . . . ."[109]

Amazon also states that Cordance relies on the "Response and Response Acknowledgment Processing" section of the '205 patent specification to support the "automatically completing the purchase of an item from the seller by processing said metadata associating said customer data" requirement of the '710 patent claims.  That section of the '205 patent specification recites:

> When the transmission containing the form data is received by the provider program 12, the transmission can indicate the system ID of the originating communications object.  It can also indicate the name of the response processing method associated with this object which can be used to automate the processing of the form data for the provider.[110]

Alvisi states that this "statement does not describe what process is performed, or even suggest that the processing has anything to do with purchasing an item," and, consequently, does not describe "automatically completing the purchase of an item."[111]

Amazon concludes that nothing in the '205 patents supports the '710 patent and,

---

[108] '205 patent, 10:48-54.
[109] D.I. 322, ¶ 26.
[110] '205 patent, 41:48-54.
[111] D.I. 322, ¶ 30.

therefore, the '710 patent cannot claim priority to the filing date of the '205 patent.

Cordance disagrees, arguing that the '205 patent does describe "automatically completing an on-line purchase."  It contends that the '205 patent is directed at automating several types of transactions, of which purchase transactions are one example, noting that the abstract explicitly states that the patent provides methods "to automate many common communications services and *transactions*."[112]  Types of transactions recited include "data and records exchanged in the context of the communications relationship, e.g. orders, receipts, product numbers, invoice numbers, [and] customer numbers."[113]  Shamos states that those data records "all refer to electronic ordering, which is an electronic purchase transaction."[114]  He also cites the following language from the '205 patent specification as "expressly stat[ing] that automated sales transactions are contemplated":

> For example, to order a product, the consumer must place a telephone call, locate a salesperson, and then manually transmit the necessary ordering information, which the salesperson must manually record.  Paper or electronic product order forms can help automate this process for the provider, but these must be filled out by the consumer. . . .  All of these information transfers require human involvement and thus create the potential for data errors. . . .  Therefore, a need exists for a communications system which allows providers and consumers to easily establish an automated communications relationship . . . .[115]

Cordance contends there are additional recitations in the '205 patent's specification describing automatically completing purchase transactions.  As an example, Shamos opines that the specification provides the following example of how

---

[112] '205 patent, Abstract.
[113] '205 patent, 1:35-41.
[114] D.I. 342, ¶ 39.
[115] D.I. 342, ¶ 41 (quoting '205 patent, 2:6-28).

the use of a customer's home address can be automatically used in completing a

purchase transaction:

> For example, an element of composite type IncludeHomeAddress could automatically add the consumer's home address element.  Because the provider and consumer databases 11, 21 will typically contain common communications data pertaining to the respective user, a significant percentage of the data required by routine business and commercial transactions can be automatically transferred in this manner.[116]

Shamos also states that, contrary to Alvisi's contention that the '205 patent

specification neither mentions or discusses online or electronic purchasing transactions,

"such transactions are taught directly to one of skill in the art through the use of the

language":

> the provider can also include special forms to be processed by the consumer program 22 that allow the consumer to automatically or semi-automatically transfer data from the consumer database 21 back to the provider.  Examples include product order forms, survey forms, customer service request forms, scheduling forms, etc.[117]

Shamos states that "transferring filled-out order forms between parties to a

transaction over a network constitutes an 'electronic purchasing transaction.'"[118]

Once again, the court agrees with Cordance that, in this battle of the experts,

questions of fact exist concerning whether the '205 patent provides adequate support

for the asserted claims of the '710 patent.

Consequently, Amazon's motion for summary judgment of invalidity due to lack

of written description is denied.[119]

---

[116] D.I. 342, ¶ 42 (quoting '205 patent, 41:28-35).
[117] D.I. 342, ¶ 49 (quoting '205 patent, 22:14-19).
[118] D.I. 342, ¶ 49.
[119] Based on Shamos's declaration and related specification citations discussed above, the court disagrees with Amazon's arguments that, as a matter of law, Shamos improperly substituted knowledge of skill in the art to fill in information purportedly absent from the patent specifications.

C.      Cordance Motion to Strike Materials Produced after the Close of Discovery an Inadmissible Hearsay[120]

Materials Produced after the Close of Discovery

Cordance has filed to strike certain materials relied upon by Amazon in support of its motion for invalidity of the '710 patent based on purportedly invalidating prior art. In its motion to strike, Cordance addresses the First Virtual System and Amazon's purportedly prior art 1995 Shopping Cart System, claiming that neither prior art references were produced during the discovery phase of the case. It also moves to strike the declaration of Dr. Darren New on the basis that he was never timely identified as a witness with relevant knowledge during the discovery phase. In its reply brief, Cordance moves to strike the declaration of Paul Davis.[121]  Accordingly, Cordance requests that Amazon be precluded from relying on any evidence of the First Virtual System, the 1995 Amazon Shopping Cart System, and the declarations of Dr. New and Davis. Cordance reiterated these same arguments in a motion *in limine*, but expanded it to include Amazon's 1996 source code (feedback system) and the '818 patent. Cordance further moved to strike the declarations of an additional witness (Mr. Fernald), on the same basis that he was first identified after the close of discovery. At the pretrial conference, the court allowed argument to be presented by both sides on these issues, which the court viewed as augmenting the parties' prior arguments related to Cordance's motion to strike. The rulings that the court provided during the pretrial

---

[120] D.I. 339.
[121] Cordance noted that not until March 9, 2009, when Amazon filed its reply briefs, was Mr. Davis identified as a witness in support of its summary judgment motions. Because Cordance's motion to strike was filed before Amazon's answering brief, it could not address the Davis declaration, which Cordance maintains suffers from the same infirmities as the Dr. New declaration.

conference addresses Cordance's original concerns as contained in the motion to strike, as well as, its expanded concerns contained in the motions *in limine*.  Therefore, Cordance's motion to strike on materials and witnesses identified after discovery is moot.

<u>Inadmissable Hearsay</u>

Cordance also argues that in its invalidity motion, Amazon relies on two instance of inadmissible hearsay:  two faxes with a number of pages missing containing blank lines where information is missing or has been redacted and the deposition testimony of Sheldon Kaphan ("Kaphan") from a prior, unrelated litigation involving Amazon, but not Cordance.  Cordance emphasizes that the faxes attached to Dr. New's declaration are incomplete in which 49 of 71 pages in the first fax and 38 of 70 total pages in the second fax are missing.  Relying on Fed. R. Evid. § 801(c), Cordance contends that the faxes constitute "classic" hearsay, and hearsay documents may not be used as corroboration of an invalidity theory.

Cordance also moves to strike on the basis of hearsay the deposition of Kaphan, who was deposed in previous litigation involving Amazon and Barnesandnoble.com.  It maintains that the exception under Fed. R. Evid. § 804(b)(1) is not applicable  because it only applies "if the party against whom the testimony is now offered . . . had an opportunity and similar motive to develop the testimony by direct, cross, or redirect examination."  Cordance notes that it had no knowledge of the prior suit, was never involved in that litigation in 2001 and never in the position to cross-examine Kaphan at that time.  Further, since Amazon is the proponent of that evidence, it has the burden of proving that it is admissible, and in the absence of identifying any hearsay exception, it

35

has failed to do so.

Amazon responds that the court may properly consider the faxes attached as exhibit B to the New declaration and the Kaphan deposition testimony.  Regarding exhibit B, Amazon maintains that they are admissible evidence because:  Dr. New advises that he is the author of that exhibit, which is a true and correct copy of the First Virtual website, and accurately describes its operation and functionality of the electronic commerce system; he confirms the publication date of October 16, 1994; based on his personal knowledge of both the First Virtual System and the web pages, the document accurately describes that System; and, all of the information regarding the System's general functionality is included in the exhibit.  Because the documents are authenticated based on the personal knowledge of the author, Amazon contends that they are admissible.[122]

Amazon also confirms that the exhibit is the exact copy of the document on file with the PTO as prior art cited in patent applications.  Amazon notes that the spaces in the document which appear as missing text were links to other web pages and because the fax version did not copy the light color of those links, it gives the appearance that text is missing.

Amazon propounds that the Kaphan deposition is admissible since it qualifies under the hearsay exception of Fed. R. Evid. § 804, which provides that prior testimony is admissible hearsay where the declarant is unavailable and a predecessor in interest

---

[122] *Kenawell v. DuBois Bus. Coll., Inc.*, No. Civ. A. 3:2005-425, 2008 WL 768139, at *8 (W.D. Pa. Mar. 20, 2008) (lack of authentication and hearsay problems are curable by testimony from one with personal knowledge of the contents); Fed. R. Evid. 901(b)(1).

had the opportunity and similar motive to question the witness.  Because Kaphan is a

resident of the state of Washington and beyond the subpoena power of this court, he is

unavailable under Rule 804(a)(5).[123]  Further, Amazon suggests because of his

unavailability, Kaphan deposition testimony is admissible hearsay and should he testify

at trial, it would not be hearsay.  Moreover, because Barnesandnoble.com was

asserting Amazon's Shopping Cart as invalidating prior art to its 1-Click patent,

Barnesandnoble.com was motivated to explore when Amazon's shopping cart was

publically available and how it operated – the same interests of Cordance.

In response, Cordance maintains that Amazon fails to argue that the faxes in

question are not hearsay or that any exception applies:  it merely argues that Dr. New

has authenticated the documents, which remain as hearsay and are still inadmissible.

Regarding the Kaphan deposition, Cordance challenges Amazon's contention

that Barnesandnoble.com was a "predecessor in interest" of Cordance.  Accordingly,

Cordance argues that a "predecessor in interest" requires that:  1) "the questioner is on

the same side of the same issue at both proceedings" and 2) "the questioner had a

substantially similar interest in asserting and prevailing on the issue."[124]  Since Amazon

only makes conclusory arguments on that issue, Kaphan's deposition should be

excluded.  Further, Cordance maintains that the issues in the two litigations *are not* the

same.  Barnesandnoble.com concerned whether Amazon's '411 patent was valid.

Here, the issue is whether Cordance's '710 patent is valid.

---

[123] *Hill v. Equitable Bank, Nat'l. Ass'n.*,115 F.R.D. 184, 185 (D. Del. 1987) (a witness is unavailable under Rule 804(a) when he resides more than 100 miles from the court).
[124] *Battle v. Memorial Hosp. at Gulfport*, 228 F.3d 544, 552 (5th Cir. 2000).

1.    *Kaphan Deposition*

Fed. R. Evid. 804(b)(1), allows the use of former testimony, trial or deposition, of an unavailable witness if a "predecessor in interest" of the party against whom the testimony is being used had a similar opportunity and motive to develop the testimony.[125]   Fed. R. Evid. 804(b)(1) provides

> [t]estimony given as a witness at another hearing of the same or different proceeding . . . if the party against whom the testimony is now offered . . . a predecessor in interest, had the opportunity and similar motive to develop the testimony by direct, cross, or redirect examination.

Amazon proposes to use the Kaphan testimony from a prior, unrelated litigation between Barnesandnoble.com and Amazon.  In that previous litigation, Barnesandnoble.com asserted that the Amazon Shopping Cart was invalidating prior art to its 1-Click patent, or that it should have been disclosed to the PTO.  Thus, when Amazon's shopping cart became publicly available and the details regarding its operation at that time were relevant.  The question under consideration, then, is whether Barnesandnoble.com is a predecessor in interest having similar motives and opportunities to develop the record has Cordance does in the current matter.  Privity is not required.[126]  "[T]he test is 'inherently factual' and depends on the similarity of issues and the context of the questioning."[127]  There is no dispute that since Kaphan resides in Washington state, he is beyond the subpoena power of this court, and therefore, is considered unavailable.[128]

---

[125] *Hynix Semiconodcutor Inc. v. Rambus Inc.*, 259 F.R.D. 452, 458 (N.D. Ca. 2008).
[126] *Id.*
[127] *Id.*
[128] *Hill*, 115 F.R.D. at 185; *see also Odato v. Vargo*, 677 F. Supp 384, 387 (W.D. Pa. 1988).

The *Hynix Semiconductor* court noted that it admitted certain testimony under Rule 804(b)(1) because the witnesses were clearly third-party witnesses, who were not under the control of any of the parties[129] and that the issues involved were identical. Further, the cross-use of depositions in Rambus related actions was acknowledged and authorized in the case management order, which required the parties to treat all prior testimony as if taken in all such cases in the California district court.  The parties objecting to the use of this prior testimony were clearly aware of this provision in the scheduling order and did not object to the cross-use provision.  Although Kaphan, a founder of Amazon, is purportedly not under the control of Amazon, the court is unaware of his relationship to Amazon at the time of the Barnesandnoble.com litigation. Moreover, the California court also gave the objecting parties the opportunity to further question the witnesses whose depositions were being proffered if they felt that there were new issues of concern.  No such opportunity existed for Cordance.

Further, the issues are not identical.  The Barnesandnoble.com matter addressed whether Amazon's '411 patent was valid; the issue in the current litigation is whether Cordance's '710 patent is valid.  Barnesandnoble.com argued that Amazon's 1995 Shopping Cart System invalidated Amazon's '411 patent.  Here, *Amazon*, not Cordance, is proposing that its 1995 Shopping Cart System invalidates Cordance's *'710 patent*.  Rather, Cordance is arguing that such prior art *does not* invalidate its patent. Therefore, no substantially similar interest exists nor is a sufficient community of

---

[129] The court reasoned that each side had a motive "to fully develop" the testimony in the deposition.  *Hynix Semiconductor*, 250 F.R.D. at 458.

interest shared between Barnesandnoble.com and Cordance.[130]   As a result Cordance's motion to strike the Kaphan testimony is granted.

2.      New Declaration Exhibit B

Under Fed. R. Evid. 801 hearsay is a statement, which includes a written assertion, "*other than one made by the declarant* while testifying at a trial or hearing, offered into evidence to prove the truth of the matter asserted."[131]   The "statement" under consideration is the First Virtual webpages which were personally authored by Dr. New.   According to his declarations, as First Virtual's Director of Custom Software Design and Senior Software Architect, he was personally involved in the designing and creating of the source code used to access the initial version of First Virtual's electronic purchasing system which he began working on in July 1994 and continued to develop until in went public on October 16, 1995.   He confirms that the contents of Exhibit B accurately describe the operation and functionality of First Virtual's electronic commerce system which was available to the public on October 16, 1994.   The statement, itself, confirms that the content was updated on September 1, 1994.

Contrary to Cordance's arguments and cases cited, Dr. New, as the declarant, is also the author of the statement at issue.   The statement of which he is testifying about is his.

Under Third Circuit law, authentication of a document only requires a "foundation

---

[130] *See American Export Lines, Inc v. Alvarez*, 580 F.2d 1179, 1186-87 (3d Cir. 1978).   Unlike the present action, the parties in *American Export* involved the exact same issues as in the prior Coast Guard hearing which investigated the facts regarding an assault which occurred on a vessel.   The Coast Guard hearing addressed whether a seaman, Lloyd, wrongfully assaulted another seaman, Alvarez, while intoxicated and the facts surrounding that incident, while the court action dealt with Alvarez's claim against the shipowner for negligence in not preventing the assault by Lloyd against him.

[131] *See* Fed. R. Evid. 801(c).

from which a fact-finder could legitimately infer that the evidence is what its proponent claims it to be."[132]  Fed. R. Evid. 901 allows authentication to be "satisfied by evidence sufficient to support a finding that the matter in question is what it proponent claims,"[133] which may be accomplished by the testimony of a witness with knowledge.[134]  Cordance does not seriously dispute that Dr. New authenticated exhibit B: rather, it contends that the document is hearsay, has information missing from it based on blanks within certain pages or non-produced pages and therefore, should be stricken.  Although "only evidence which is admissible at trial may be considered in ruling on a motion for summary judgment,"[135] neither lack of authentication and presence of hearsay will prevent the use of a document on a motion for summary judgment if authentication and hearsay may be cured at trial.[136]  In the present circumstances, the document has been properly authenticated consistent with Fed. R. Evid. 901.  Further, the document is not hearsay since it is supported by the author of it through a declaration.[137]

The other criticisms raised by Cordance concerning the missing pages and blanks on pages have been, in part, explained in the declarations of Dr. New.  He claims that the blanks are hyperlinks which are not apparent because the document is a copy of a fax.  Regarding the "missing" pages, Dr. New has confirmed that the document in its produced form completely and accurately describes the operation and

---

[132] *In re Japanese Electronic Products Antitrust Litigation*, 723 F.2d 238, 285 (3d Cir. 1983), *rev'd on other grounds*, 475 U.S. 547 (1986).
[133] Fed. R. Evid. 901(a).
[134] Fed. R. Evid. 901(b).
[135] *Countryside Oil Co., Inc v. Travelers Ins. Co.*, 928 F. Supp. 474, 482 (D.N.J. 1995); *see also Pamintuan v. Nanticoke Mem. Hospital*, 192 F.3d 378, 388 (3d Cir. 1999).
[136] *Lexington Ins. Co. v. Western Pennsylvania Hospital*, 423 F.3d 318, 329 n.6 (3d Cir. 2005).
[137] *Bouriez v. Carnegie Mellon University*, No. Civ. A. 02-2104, 2005 WL 2106582, at *9-*10 (W.D. Pa. Aug. 26, 2005).

function of First Virtual.  Cordance's argument in this regarding goes to weight, rather than admissibility.  Since the court has required during the pretrial conference for Amazon to produce Dr. New for deposition, Cordance is free to examine Dr. New on the contents of both his declarations and exhibit B.

Therefore, for the purposes of Amazon's summary judgment motions, the court will allow the declarations of Dr. New and exhibit B.  Cordance's motion to strike the declarations of Dr. New and exhibit B is denied.[138]

D.    Amazon's Motion for Summary Judgment of Invalidity of U.S. Patent 6,757,710 B2[139]

Amazon contends that two prior art references invalidate Cordance's '710 patent. The first reference is Amazon's 1995 Shopping Cart System, first in public use by July 1995.  Amazon maintains that the 1995 Shopping Cart system invalidates the claims of the '710 patent under 35 U.S.C. § 102(b).  The second reference is First Virtual Holdings' System, first in public use in October 1994.  Amazon maintains that the First Virtual System invalidates the claims of the '710 patent under 35 U.S.C. § 102(b).  Each of those references purportedly predate the effective filing date of the '710 patent by more than one year.

Cordance contends that Amazon fails to meet the statutory requirements to show that the 1995 Shopping Cart System and the First Virtual System are prior art.  First, Cordance states that Amazon does not show that the 1995 Shopping Cart System was ever in public use or was ever used to make a purchase.  With respect to the First

---

[138] The caution the court advised during the pretrial conference remains.
[139] D.I. 318.

Virtual System, it contends the evidence to show public use are two faxes that constitute inadmissible hearsay, an argument rejected by the court, above, in its resolution of Cordance's motion to strike.  Cordance further argues that, even if Amazon's evidence is considered, the record reflects material and detailed fact disputes between the parties' experts regarding whether either of those two references even relates to, let alone anticipates, the patent claims.

Under 35 U.S.C. § 102(b):

A person shall be entitled to a patent unless–
* * * * *
(b) The invention was patented or described in a printed publication in this or a foreign country or in public use or on sale in this country more than one year prior to the date of the application for patent in the United States.

The statutory phrase "printed publication" means that "before the critical date the reference must have been sufficiently accessible to the public interested in the art; dissemination and public accessibility are the keys to the legal determination whether a prior art reference was 'published.'"[140]  "The statutory phrase 'public use' does not necessarily mean open and visible in the ordinary sense; it includes any use of the claimed invention by a person other than the inventor who is under no limitation, restriction, or obligation of secrecy to the inventor."[141]

In order to succeed on its anticipation defense, Amazon must prove by clear and

---

[140] *In re Klopfenstein*, 380 F.3d 1345, 1348 (Fed. Cir. 2004) (quoting *In re Cronyn*, 890 F.2d 1158, 1160 (Fed. Cir. 1989)); *see also* MPEP § 2128 ("An electronic publication, including an on-line database or Internet publication, is considered to be a 'printed publication' within the meaning of 35 U.S.C. § 102(a) and (b) provided the publication was accessible to persons concerned with the art to which the document relates." (citing, among other references, *Amazon.com v. Barnesandnoble.com*, 73 F. Supp. 2d 1228, 53 U.S.P.Q.2d 1115, 1119 (W.D. Wash. 1999) (Pages from a website were relied on by defendants as an anticipatory reference (to no avail), however status of the reference as prior art was not challenged.)).

[141] *New Railhead Mfg., L.L.C. v. Vermeer Mfg. Co.*, 298 F.3d 1290, 1297 (Fed. Cir. 2002).

convincing evidence that every limitation of the asserted claims of the '710 patent was contained in a single prior art reference.[142]   "An 'anticipating' reference must describe all of the elements and limitations of the claim in a single reference, and enable one of skill in the field of the invention to make and use the claimed invention."[143]   "When the asserted basis of invalidity is prior public use, the party with the burden of proof must show that the subject of the barring activity met each of the limitations of the claim, and thus was an embodiment of the claimed invention."[144]   Anticipation is a question of fact.[145]

The 1995 Shopping Cart System

Amazon contends that by July 1995, Amazon's 1995 Shopping Cart System was in public use and that that system performed every limitation of the asserted claims of the '710 patent.  The '205 patent was filed on February 29, 1996, less than one year after the first purported public use of the 1995 Shopping Cart System.  Because the court determined in its discussion of Amazon's motion for summary judgment of lack of written description that there is a question of fact as to whether the '710 patent is entitled to claim priority to the filing date of the '205 patent, a question of fact necessarily exists as to whether the 1995 Shopping Cart System is prior art.  As a result, the court need not consider the parties' respective arguments concerning

---

[142] *Union Carbide Chems. & Plastics Tech. Corp v. Shell Oil Co.*, 308 F.3d 1167, 1188 (Fed. Cir. 2002).

[143] *Merck & Co. v. Teva Pharms. USA, Inc.* 347 F.3d 1367, 1372 (Fed. Cir. 2003).

[144] *Juicy Whip, Inc. v. Orange Bang, Inc.*, 292 F.3d 728, 737 (Fed. Cir. 2002) (internal quotation marks omitted); *see also Schering Corp v. Geneva Pharms., Inc.*, 339 F.3d 1373, 1377 (Fed. Cir. 2003) ("A patent is invalid for anticipation if a single prior art reference discloses each and every limitation of the claimed invention.").

[145] *Advanced Display Sys., Inc. v. Kent State Univ.*, 212 F.3d 1272, 1281 (Fed. Cir. 2000) (citing *In re Graves*, 69 F.3d 1147, 1151 (Fed. Cir. 1995)).

whether the 1995 Shopping Cart System performs each and every limitation of the

asserted claims of the '710 patent and Amazon's motion as to that system is denied.[146]

<u>The First Virtual System</u>

Amazon contends that the First Virtual System was in public use in 1994 and

that it also performs each and every limitation of the asserted claims of the '710 patent.

Claim 1 of the '710 patent includes the following for steps:

(1) "providing a customer data storing information for a customer usable to automatically complete an on-online purchase of an item from a seller;"

(2) "providing the customer with information from the seller with respect to an item;"

(3) "receiving from the customer an indication to initiate a purchase transaction for purchasing the item including metadata associating said customer data with said transaction;" and

(4) "in response to the received indication, automatically completing the purchase of an item from the seller by processing said metadata associating said customer data so as to complete the purchase transaction."[147]

Because a prior art reference must contain every limitation of the asserted claims

in order to invalidate those claims under 35 U.S.C. § 102(b), the court will only discuss

one element where it determines there is a question of fact as to whether the First

Virtual System discloses that element and need not discuss the parties additional

---

[146] Amazon also argues that the 1995 Shopping Cart System is an invalidating reference under 35 U.S.C. § 102(g). The court determines that there is insufficient evidence to conclude, as a matter of law, that that Amazon is entitled to summary judgment of invalidity under that section of the patent statute.

[147] Amazon contends that asserted independent claims 1 and 7 are of similar scope and that its arguments for each of those claims are the same. For instance, claim 1 uses the terms "customer" and "seller" to refer to the parties of a "purchase transaction" while claim 7 refers to "information provider" and "information consumer" to refer to the parties of an "on-line transaction." Amazon states that in Cordance's infringement contentions, it does not draw any distinction between these terms and treats "information provider" as a "customer" and "information consumer" as a "seller" and that Cordance equates the "on-line transaction" of claim 7 to the "purchase transaction" of claim 1.

arguments concerning that reference.

The First Virtual System is described in two facsimile transmissions ("the Faxes") that purportedly describe the operation of that system in 1994 attached as exhibit B to the declaration of Dr. Darren New (the "New Declaration").  The Faxes state that First Virtual had a "try before they buy" customer policy:  "At First Virtual, we strongly believe that a buyer of information should have an opportunity to examine the information–and make sure it's what he or she really wants–before committing to pay for it."[148]  The Faxes then describe the first six steps of the process:

> 1.  You locate an information product you're interested in buyer, and find out how much the seller is asking for it.  (For more about how to find products for sale, see below.)
>
> 2.  You tell the seller you're interested in buyer the product.
>
> 3.  The seller asks you for your First Virtual Account identifier, which the seller might verify to make sure your account is valid.
>
> 4.  The seller delivers you the information you're interested in buyer, or allows you to download it, and you review it to see if it's what you really wanted.
>
> 5.  The seller asks First Virtual to bill you for the information that was delivered to you.  Then First Virtual sends you email, asking whether or not you authorize the purchase and agree to pay for it through your First Virtual account.
>
> 6.  Following the instructions in First Virtual's email message, you reply to the message and answer "YES" or "NO".
>
> • You answer "YES" if you're satisfied with the information and agree to pay for it.  The item will be added to your First Virtual account total in the next billing cycle.

---

[148] New Decl., Ex. B at AMZC645570.

• You answer "NO" if the information wasn't what you . . . .[149]

Shamos opines that the First Virtual System does not disclose the limitation "in response to the received indication, automatically completing the purchase of an item from the seller by processing said metadata associating said customer data so as to complete the purchase transaction."  Disagreeing with Alvisi's contention that step six, where the buyer sends an email to First Virtual with the word "yes," is the indication to initiate," Shamos states that the email sent by First virtual in step six is the equivalent of sending a bill after a purchase.  In the opinion of Shamos, the first step in purchasing a product with First Virtual, the indication to initiate" the purchase, occurs in step two when the buyer tells the seller that he is interested in buyer the product.  According to Shamos, step six cannot be the indication to initiate because the "indication to initiate a transaction" would then occur after the customer already had the item in hand, which Shamos states is illogical.  Because First Virtual does not automatically complete the purchase in response to step two, Shamos opines that it does not anticipate the claim.[150]

Because the court is not permitted to weigh competing evidence submitted by the parties, it determines that a question of fact exists as to whether the First Virtual System contains each and every limitation of the asserted claims of the '710 patent.  Consequently, Amazon's motion for summary judgment of invalidity is denied.[151]

---

[149] New Decl., Ex. B at AMZC645570.  Cordance states that the next five pages of the fax are missing and that, therefore, Amazon has not shown how many subsequent steps are required or what they are.  Amazon contends that the missing pages are irrelevant.

[150] D.I. 342, ¶¶ 126-28.

[151] In light of this determination, Cordance's motion for leave to file a sur-reply in opposition to this motion (D.I. 380) is MOOT.

47

**CONCLUSION**

For the reasons contained herein, IT IS ORDERED, ADJUDGED and DECREED that:

1.    Amazon's motion for summary judgment of non-infringement and no willful infringement (D.I. 314) is granted in part and denied in part:

   A.    Amazon's motion for summary judgment of non-infringement is DENIED.

   B.    Amazon's motion for summary judgment of no willful infringement is GRANTED.

2.    Amazon's motion for summary judgment re lack of written description for U.S. Patent 6,757,710 B2 (D.I. 316) is DENIED.

3.    Cordance's motion to strike materials produced after the close of discovery and inadmissible hearsay (D.I. 339) is granted in part, denied in part, and moot in part.  Cordance's motion to strike the Kaphan testimony is GRANTED.  The remainder of Cordance's motion to strike is DENIED or MOOT as discussed above.

4.    Amazon's motion for summary judgment of invalidity of U.S. Patent 6,757,710 B2 (D.I. 318) is DENIED.

5.    Cordance's motion for leave to file sur-reply in opposition to Amazon's motion for summary judgment of invalidity of U.S. Patent 6,757,710 (D.I. 380) is MOOT.

July 27, 2009                         /s/ Mary Pat Thynge
                                      UNITED STATES MAGISTRATE JUDGE

48