IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

CORDANCE CORPORATION,      :
                                      :
                  Plaintiff,        :
                                        :
       v.                     :     Civil Action No. 06-491-MPT
                                        :
AMAZON.COM, INC.,         :
                                        :
                 Defendant.   :

## MEMORANDUM

## I.    INTRODUCTION

On August 8, 2006, plaintiff, Cordance Corporation ("Cordance") filed this patent infringement matter against defendant, Amazon.com, Inc. ("Amazon").  After trial, motions for judgment as a matter of law, bench trial on inequitable conduct and patent misuse, and an appeal to the Federal Circuit, the matter was adjudicated in favor Amazon.  Presently before the court is Amazon's bill of costs in the amount of $591,824.69 filed on November 14, 2011.[1]  In its bill of costs, Amazon requests $1,378.78 for printing, $447,694.69 for electronic discovery, $51,323.62 for exemplifications, and $62,353.24 for deposition expenses, $1,498.99 for filing fees, and $27,575.37 for witness fees and subsistence costs.

On November 28, 2011, Cordance filed objections to Amazon's bill of costs.[2]  In its objections, Cordance alleges Amazon is not entitled to any costs incurred because Amazon engaged in dilatory tactics which increased expenses for both parties and

---

[1] D.I. 601.
[2] D.I. 607.

Cordance is indigent and thus, unable to pay the costs requested.[3]  Alternatively,

Cordance argues if costs are awarded, they should be significantly reduced because

Amazon's demand is improper or fatally unsubstantiated.  Specifically, Cordance

maintains Amazon's costs for ediscoveryiscovery, *Markman* demonstrative exhibits (or

exemplifications), depositions and witness fees should be drastically reduced.

Cordance does not object to Amazon's request for printing and copying costs and filing

fees totaling $3,202.74.[4]  Amazon responded to Cordance's objections on December 5,

2011.[5]

For the following reasons, the court will grant in part and deny in part Amazon's

request for costs and will deny Cordance's request to have Amazon's bill of costs

denied in its entirety.

## II.    DISCUSSION

### A.    Dilatory Tactics by Amazon

Cordance argues Amazon engaged in dilatory tactics during litigation, and such

improprieties bar Amazon's recovery for costs.

In support of its position, Cordance relies on *In re Paoli R.R. Yard PCB Litig.*[6]

When evaluating a bill of costs by a prevailing party, the *Paoli* court considered "the

prevailing party's unclean hands, bad faith, dilatory tactics or failures to comply with

process during the course of the instant litigation or the costs award proceedings."[7]  In

---

[3] *Id.*
[4] *Id.*
[5] D.I. 611.
[6] 221 F.3d 449 (3d Cir. 2000).
[7] *Id.* at 468.

2

determining what are dilatory tactics by a prevailing party,[8] the Third Circuit has repeatedly relied on the Seventh Circuit case *Chicago Sugar Co. v. American Sugar Refining Co.*, which noted examples of dilatory tactics as "calling unnecessary witnesses, bringing in unnecessary issues or otherwise encumbering the record, or by delaying in raising objections fatal to the plaintiff's case."[9]  The Third Circuit recognizes denying costs, where the prevailing party has unduly extended or complicated resolution of the issues, is balanced with an attorney's duty to provide a client complete and vigorous representation by raising good faith claims or defenses on its behalf.[10]  In balancing these factors, the court must evaluate an attorney's decision at the time it was made and not with the aid of hindsight obtained through discovery.[11]

Here, Cordance claims "Amazon repeatedly failed to provide basic discovery, violated the court's discovery orders, made empty promises to produce discovery materials, and produced unprepared Rule 30(b)(6) deposition witnesses."[12]  Cordance further asserts Amazon unreasonably maintained a vague, unsupported counterclaim which it refused to dismiss despite this court's directive to provide evidence to substantiate it.

Amazon denies using dilatory tactics and rejects Cordance's accusations as unfounded.  Amazon represents it always complied with court orders regarding

---

[8] *See Smith v. Southeastern Pa. Transp. Auth.*, 47 F.3d 97, 99 (3d Cir. 1995); *ADM Corp. v. Speedmaster Packaging Corp.*, 525 F.2d 662, 665 (3d Cir. 1975); and *Institutionalized Juveniles v. Secretary of Public Welfare*, 758 F.2d 897, 926 (3d Cir. 1985).

[9] 176 F.2d 1, 11 (7th Cir. 1949), *cert. denied*, 338 U.S. 948 (1950).

[10] *ADM Corp.*, 525 F.2d at 665.

[11] *Id.*

[12] D.I. 607.

3

production of financial documents.  Amazon further notes Cordance's 30(b)(6)

deposition notice was extremely broad by including 223 topics (later reduced to 208

topics).  Amazon maintains it worked with Cordance to produce witnesses "educated

about the accused systems and if Cordance was not satisfied, [it] could move to compel

further testimony."[13]  Amazon argues its cooperative efforts are now condemned as

dilatory tactics.  Finally, Amazon claims as to its counterclaim, no Rule 11 motion was

filed and it survived two motions to dismiss.  Amazon compares the subsequent

dismissal of its counterclaim as akin to Cordance's dismissal of its '205 patent claims.[14]

Cordance, maintains "Amazon's dilatory tactics . . . are evident."[15]  However,

Cordance only cites six references in the record as evidence of dilatory tactics, despite

claiming Amazon "repeatedly failed to provide basic discovery [and] violated the Court's

discovery orders."[16]  The docket in this litigation contains over 600 entries, and only two

out of the six entries cited by Cordance pertain to a single discovery dispute in January

2009.  Although Amazon's dilatory tactics are purportedly obvious, this court will not

review and parse through the entire docket to ferret out the "evident" improprieties.

Based on the evidence presented by Cordance, the court cannot find that Amazon

"encumber[ed] the record."[17]

---

[13] D.I. 611.
[14] *Id.*
[15] D.I. 607 at 3.
[16] *Id.*
[17] *Chicago Sugar*, 176 F.2d at 11.

**B.    Cordance's Inability to Pay**

Cordance argues inability to pay Amazon's asserted costs due to indigency.

In deciding whether to award costs to a prevailing party, the Third Circuit allows a court to consider "the losing [party's] potential indigency or inability to pay the full measure of a costs award levied against them."[18]  "[A] party may be excepted from costs if he is in fact indigent, if he has adduced evidence that he is indigent, and if the district court sees fit to reduce the costs award imposed for reasons of equity."[19]

In support of its claim of indigency, Cordance has submitted the affidavit of Brian E. Lewis, its General Counsel, which gives an overview of revenue, losses, assets and liabilities.[20]  According to Lewis, Cordance has incurred a loss for the past three years, including a loss of $706,874.00 in 2010.  In addition, Cordance's current liabilities are $17,397,102.00, while its assets are $23,057.00.[21]

Amazon responds that courts routinely do not allow corporations to claim indigency,[22] and Cordance failed to provide a complete accounting of its assets. Amazon relies on a 1997 valuation from Coopers and Lybrand which valued a license for Cordance's intellectual property at fifty million dollars.  In addition, it cites a document Cordance purportedly submitted to the bankruptcy court with an estimated liquidation value of Cordance's patents between $250,000.00 and $500,000.00 as of

---

[18] *In re Paoli R.R. Yard PCB Litig.*, 221 F.3d at 468.
[19] *Id.* at 463.
[20] D.I. 608.
[21] *Id.* at ¶ 3-4.
[22] D.I. 611 at 3.

December 31, 2003.[23]   Amazon further references other currently pending patent

infringement actions[24] and an insurance policy with Lloyd's of London.[25]   Amazon

requests a discovery hearing into the financial assets of Cordance relying on *Adams v.*

*Teamsters Local 115.*[26]

 Amazon relies on *Reger v. Nemours Found., Inc.*[27]   *Reger* relied on *Smith v.*

*Southeastern Pa. Transp. Auth.*,[28] an earlier decision by the Third Circuit, wherein

indigency was reaffirmed as a basis for reducing costs, while disparity of wealth

between the prevailing and losing parties is not.[29]

 In the instant matter, Cordance is not claiming a reduction due to disparity of

wealth, but is asserting indigency and/or inability to pay.   Therefore, the holdings of

*Reger* and *Smith* do not apply.   Cordance, however, has not provided any information to

support its claim of indigency beyond the affidavit of its General Counsel.   That affidavit

fails to describe how the information was calculated.   No copies of financial records, tax

returns and/or bankruptcy filings were provided or explained.[30]   Since "the losing party

has the burden of making the showing that an award is inequitable under the

---

[23] Corance filed bankruptcy in 2003 under Chapter 11.   The valuation information is over eight years ago, before the jury trial and the Federal Circuit upheld certain claims invalid.

[24] The matter cited was voluntarily dismissed without prejudice on September 26, 2011*, Cordance Corp. v. Apple, Inc., et al.*, C.A. No. 11-222-LPS, D.I. 20.

[25] D.I. 611.

[26] 678 F. Supp. 2d 314 (E.D. Pa. 2007).

[27] 599 F.3d 285 (3d Cir. 2010).

[28] 47 F.3d 97 (3d Cir. 1995).

[29] *Id.* at 100.

[30] Cordance did not advise it filed for bankruptcy; rather, Amazon notes Cordance's 2003 bankruptcy petition.

circumstances,"[31] Cordance should have included additional information regarding its financial health. However, in light of the findings and conclusions herein which result in a significant reduction to Amazon's demand for costs, a discovery hearing is not presently warranted.

### C. Amazon's Claims for Costs

Cordance further argues, in the event costs are taxed against it, Amazon's request is improper and fatally unsubstantiated. Since Cordance does not object to Amazon's printing and copying costs or filing fees, the court will not address those claims.

### 1. Ediscoveryiscovery Costs

Amazon seeks ediscoveryiscovery costs of $447,694.63 under D. DEL. LR 54.1(b)(11), which authorizes taxation of costs[32] if the requesting party "substantiates the claim by reference to a statute or binding court decision."[33] Cordance objects to these expenses because Amazon failed to reference any statute or binding court decision authorizing such recovery.[34]

At the time of Amazon's original filing and all objections, the Third Circuit had not addressed the issue of whether ediscoveryiscovery is a taxable cost. Recently, however, on March 16, 2012, the Third Circuit resolved the issue of ediscoveryiscovery

---

[31] *In re Paoli R.R. Yard PCB Litig.*, 221 F.3d at 462-63.

[32] D. DEL. LR 54.1(b)(11) provides "Other costs: Claims for costs other than those specifically mentioned in the preceding paragraphs of subpart (b) of this RUle ordinarily will not be allowed, unless the party claiming such costs substantiates the claim by reference to a statute or binding decision." Discovery or ediscoveryiscovery expenses are not specifically itemized under LR 54.1(b).

[33] *Id.*

[34] D.I. 608.

costs for this circuit in *Race Tires Am., Inc. v. Hoosier Racing Tire Corp.*[35] wherein the court determined:

> [28. U.S.C.] *Section 1920(4)* does not state that all steps that lead up to the production of copies of materials are taxable.  It does not authorize taxation merely because today's technology requires technical experience not ordinarily possessed by the typical legal professional.  It does not say that activities that encourage cost savings may be taxed.  *Section 1920(4)* authorizes awarding *only* the cost of making copies."[36]

However, "the costs of conversion to an agreed-upon production format are taxable as the functional equivalent of 'making copies.'  It is all other activity, such as searching, culling and deduplication, that are not taxable."[37]

In addition, the Third Circuit specifically distinguished *Synopsis, Inc. v. Ricoh Co. (In re Ricoh Patent Litigation),*[38] on which Amazon relies, because "the parties had agreed to the creation of a specific document review database by a specific vendor for document production purposes."[39]  For that reason, the court concluded *In Re Ricoh Patent Litigation* does not apply when the parties retain their own electronic discovery consultants.[40]

Here, neither party suggests they shared a document review database or otherwise had any agreement regarding ediscoveryiscovery costs.  Therefore, the ediscoveryiscovery exchanged would be the functional equivalent of making copies and governed by the provisions of § 1920(4).

---

[35] 2012 U.S. App. LEXIS 5511 (3d Cir. Mar. 16, 2012).
[36] *Id.* at *31. (emphasis added).
[37] *Id.* at *37.
[38] 661 F.3d 1361 (Fed. Cir. 2011).
[39] *Race Tires Am., Inc.*, 2012 U.S. App. LEXIS 511 at *38, n.11.
[40] *Id.*

Amazon has provided numerous invoices regarding its ediscoveryiscovery which total $447,694.69 for services by four different providers.

The first invoice from Fenwick and West totals $67,011.75.[41]  Based on the itemized descriptions therein, expenses incurred on June 20, 2008, July 16, 2008 and July 18, 2008 totaling $1,128.15 are taxable.  However, regarding the services for June 19, 2008, the $992.25 bill covers both processing and converting documents.  Since processing is not a taxable cost, to recover any of this expenses, Amazon must provide a break down which distinguishes costs for converting from processing documents.  Upon receipt of an appropriately itemized invoice showing the cost for converting the documents, this expense will be considered.

The second invoice is from DatG in the amount $75,137.29.[42]  Contained therein are four charges for CD ROM totaling $100.00 (a charge of $25.00 each) and an expense on September 20, 2007 for conversion of documents to Tiff format in the amount of $501.13.  Both costs are taxable under § 1920(4).

The third invoice from eLit Litigation Solutions is in the amount $5,260.59.[43]  The expenses from this vendor are for monthly storage fees as well as "Intelligent Culling" and "tech time."  Nothing in this invoice is recoverable.

The final invoice is from Cataphora for $300,285.00.[44]  Neither the invoices[45] nor the contract for services between Amazon and Cataphora[46] allows a determination of

---

[41] D.I. 602 at Ex. D-4.
[42] *Id.* at Ex. D-5.
[43] *Id.* at Ex. D-6.
[44] *Id.* at Ex. D-7.
[45] *Id.*
[46] *Id.* at Ex. D-3.

whether any portion of this bill is for scanning and converting.  To recover any part of this invoice, Amazon must provide the appropriate itemization for review.

### 2.    Exemplification/Demonstrative Exhibit Costs

Amazon also claims expenses for exemplifications in the amount of $51,323.62 under § 1920(4) and D. DEL. LR 54.1(b)(5) and (6).  Amazon cites *Schering Corp. v. Amgen, Inc.*[47] as the standard for determining "whether the [exemplifications] materially aided [the judge's] understanding of the technological issues in the case."[48]

Cordance relies on the standard set forth in *Honeywell Int'l, Inc. v. Hamilton Sunstrand Corp.*,[49] which described a three part test to determine whether exemplification costs are recoverable.  There, this court held:

> Costs for exemplifications of exhibits will be granted *only if* the parties show that the requested costs 1) were necessarily sustained in connection with exhibits that were admitted into evidence or *explicitly and specifically* were requested by the court . . .; 2)  were for exhibits or documents prepared primarily in order to aid the finder of fact's understanding of the issues in the case, and were not 'essentially explanatory or argumentative, serving merely as an aid to the argument of counsel and the explanation of expert witnesses,'  . . .; *and* 3) were for the actual presentation of the exhibits and documents, and not for the intellectual effort involved in their production.[50]

The *Honeywell* court specifically distinguished *Schering* by concluding the award of costs related to the video only occurred "after finding the district court judge specifically 'invited both parties submit videos to assist the court in understanding the

---

[47] 198 F.R.D. 422 (D. Del. 2001).
[48] *Id.* at 428.
[49] C.A. No. 99-309-GMS, 2009 WL 3153496 (D. Del. Sept. 30, 2009).
[50] *Id.* at *5 (first emphasis in original) (second and third emphasis added) (citations omitted).

technological issues involved."[51]

Amazon argues copies of exhibits were specifically requested during the
*Markman* hearing based on the court's comment "if you have any presentation materials
that you wish to hand up for the court to review or use during this process, please do so.
I'd like a copy for myself and for my clerk."[52]  Amazon also emphasizes the court's
inquiry at the conclusion of the hearing "[w]hen may I expect your slides[?]"[53] as support
that exhibits were specifically requested.

Amazon's argument is unpersuasive.  This court did not require any exhibits be
prepared to assist in the understanding of the issues.  Copies of the exhibits were only
requested for later review of the transcript to analyze Amazon's position *after* they were
presented and used at the *Markman* hearing.  Therefore, *Schering* is not controlling.

In applying the *Honeywell* test, the maximum amount taxable is $600.00.  Even
assuming the exhibits were prepared primarily to assist the court, under the second and
third prongs of the *Honeywell* test and D. DEL. LR 54.1(b)(5) and (6), the only amount
taxable is "for the actual presentation of the exhibits and documents," and not for
explanation or argument or "for the intellectual effort involved in their production."[54]  A
review of the itemized bill from Advanced Courtroom Technologies ("ACT") submitted by
Amazon[55] shows charges of $1,072.50 for "project management," $43,358.75 for
"graphic design," $5,512.50 for "trial consultant" ($367.50 of which was paid by

---

[51] *Id.* at n. 4.
[52] D.I. 204 at 4:21-24.
[53] *Id.* at 144:15.
[54] *Honeywell*, 2009 WL 3153496, at *5.
[55] D.I. 602 at Ex. E-1.

Cordance), $925.00 for "leased equipment" ($325.00 of which was also paid by Cordance),[56] and $780.00 for "logistics," described as "prep of equipment for shipping."[57]

Taxation of the various expenses noted above would be contrary to the rule barring parties from recovering attorney and expert fees.[58]  Therefore, the maximum allowed for exemplifications is $600.00, the actual amount incurred by Amazon for their presentation.[59]  However, since Amazon is not seeking reimbursement for equipment lease costs,[60] of which the $600 is a portion, all costs claimed for exemplifications/demonstrative exhibits are denied.[61]

### 3.   Costs for Depositions

Amazon seeks $62,353.24 for deposition costs incurred in this litigation.  D. DEL. L.R. 54.1(b)(3) governs taxation of costs of depositions by allowing "[t]he reporter's reasonable charge for the original and one copy of a deposition and the reasonable cost of taking a deposition . . . where a substantial portion of the deposition is used in the resolution of a material issue in the case."  In *Honeywell*, this court clarified "[t]he

---

[56] Although Amazon purportedly is not seeking reimbursement for these charges, the only reduction applied was $1,592.38 for "other."

[57] D.I. 602 at Ex. E-1.  An additional charge of $1,592.38 for "other" was itemized as "airfare, hotel, taxi to SFO airport, meals, fed ex," which Amazon is not seeking.

[58] *Honeywell*, 2009 WL 3153496, at *5.

[59] $600 represents the difference between $925 Amazon was charged for leased equipment by ACT less Cordance's contribution to that expense.

[60] D.I. 602 at 5.

[61] If reimbursement for equipment leasing costs were sought, the request would likely be denied because the burden rests on Amazon to substantiate its expense.  *See Synopsys v. Ricoh*, 661 F.3d 1361, 1367 (Fed. Cir. 2011).  All equipment Amazon leased from ACT is available from the court.  Amazon fails to explain why it did not use the court's equipment during the *Markman* hearing, and instead rented the equipment.

standard of 54.1(b)(3) [as focusing] on the actual use of a substantial portion of the deposition to resolve a material issue in the case; it does not focus on whether the parties' attorneys use the depositions or subjectively view the depositions as important or unimportant."[62]  The *Honeywell* decision further explained under LR 54.1(b)(3), the deposition must not only be actually used, but also the portion used must be substantial. An appellate court quoting a mere eight words from a deposition transcript in an opinion does not meet the requirement of substantial portion.[63]

Amazon relies on *Smith v. Tenet Health System SL, Inc.*,[64] an Eighth Circuit opinion which allowed the "district court discretion to award costs" even when the deposition was not used at trial, if "the deposition was necessarily obtained for use in a case and was not 'purely investigative.'"  The Eighth Circuit standard, however, is not the standard of this jurisdiction.  Amazon cites no authority from this jurisdiction or circuit warranting deviation from the *Honeywell* interpretation and application of LR 54.1(b)(3).  Amazon does not dispute *Honeywell* is controlling:  it simply and conclusory purports "substantial portions of the depositions identified . . . were used during the course of the litigation to resolve material issues in the case,"[65] relying on the declaration of Lauren Whittemore, an attorney representing Amazon.[66]  The Whittemore affidavit provides a summary of the costs of the depositions, a general overview of whose deposition was taken and why, and a generic description of the purpose and

---

[62] 2009 WL 3153496, at *2.
[63] *Id.*
[64] 436 F.3d 879, 889 (8th Cir. 2006).
[65] D.I. 611 at 9.
[66] D.I. 602.

importance of the depositions.  For most of the depositions, Whittemore fails to confirm they were actually used at trial, how the deposition resolved a material issue or what she means by substantial portion.  She merely concludes actual use occurred employing substantial portions whereby material issues were resolved.  The *Honeywell* factors are not in the alternative.  *Honeywell* requires a "showing that a *substantial* portion was actually *used* in the resolution of a material issue."[67]

In addition, Whittemore relies on the premise that substantial portions of deposition transcripts were designated for trial, but never shows any actual use.  That substantial portions were designated, but not subsequently used at trial indicates they were not necessary to resolve a material issue, and would not be taxable under either the *Honeywell* standard of this court or the *Smith* standard of the Eighth Circuit.

In light of LR 54.1(b)(3) and *Honeywell*'s requirement of actual use, no costs will be allowed for the deposition transcripts of Dan Banay,[68] David Michael Barth, John Cormie and Shelley Reynolds since Amazon admits they were not actually used at trial.[69]

The depositions of Aron Levko , Diane Lye and Terry Musika were never designated for nor were they actually used at trial.  Therefore, costs for those depositions are not recoverable.

---

[67] *Honeywell*, 2009 WL 3153469, at *2 (emphasis in original).

[68] Amazon initially asserted the Banay deposition was not used.  D.I. 602 at Ex. F.  Subsequently, in its reply brief, it represented portions of Banay's deposition were read into the record.  Despite Amazon's conflicting statements, six pages out of a 173 page transcript equates to a little over 3% and is not substantial.  *Honeywell*, 2009 WL 3153496, at *2.

[69] D.I. 602 at Ex. F.

The depositions of John Sitar and Thomas Vaughan, although designated, were not actually used at trial.  Taxation of the costs for those depositions is denied.

With regard to the deposition of Lorenzo Alvisi, Amazon claims that "Cordance used portions of Dr. Alvisi's deposition testimony in order to impeach . . . a witness for Amazon."[70]  Amazon fails to show whether a substantial portion was used.  Therefore, Amazon has not met its burden to justify reimbursement for this cost.

Amazon claims expenses for David Barth's deposition because page 52 of the transcript was designated by Cordance and pages 52-54 were designated by Amazon to address the meaning of metadata "an important claim term."[71]  However, Amazon has not shown either an actual or a substantial use of the deposition, just a designation.  As a result, Amazon's request is denied.

In seeking taxation of the deposition transcript of Jeff Bezos, founder of Amazon, Inc., Amazon has not cited its actual use at trial.  It merely asserts "Cordance designated portions of Bezos's December 19, 2008 deposition transcript."[72]  Therefore, the cost for the deposition transcript is denied for the same reasons set forth above.

The cost of his videotaped deposition, however, is not quite as clear.  Amazon actually used Bezos's video deposition at the trial to "describe the value of [its] 1-click feature"[73] which Amazon maintains was important regarding the issue of damages.  The video deposition testimony encompassed 13 pages of the trial transcript.[74]  The

---

[70] D.I. 612 at 2.  Dr. Alvisi was Amazon's expert witness on non-infringement and invalidity.  D.I. 602 at ¶ 11.

[71] D.I. 612 at 2.

[72] *Id.* at 3.

[73] *Id.*

[74] *Id.*

deposition transcript was at least 138 pages.[75]  The issue, then, is whether 10% of a video deposition equals a substantial portion and, if so, whether the value of the 1-click feature to Amazon is a material issue.  Ten percent of a video deposition is not substantial.  Further, Amazon has not indicated why it had to rely on the video testimony of Jeff Bezos, the founder of Amazon, in lieu of live testimony.  Therefore, the request to tax the cost of the video deposition of Bezos is denied.

    With regard to the deposition of Paul Davis, Amazon emphasizes the Federal Circuit's reliance on his trial testimony in finding the '710 patent invalid.[76]  However, as determined in *Honeywell*, use of trial testimony by the Federal Circuit does not automatically justify taxation of the cost of the deposition transcript.[77]  Amazon does not claim the Federal Circuit cited to Davis's deposition testimony, nor does it indicate the deposition transcript was actually used.  Therefore, no taxation of the cost of the transcript is warranted.

    The expenses for the depositions of Peter Heymann and Kevin Jones, both former Cordance employees, are also sought.  Heymann and Jones are the inventors of Cordance's patents in-suit.  Both depositions addressed issues regarding infringement and are material.  Further, Heymann and Jones, during the course of this litigation, resided in Asia, necessitating videotaping their testimony for trial.  Although Amazon indicated substantial portions of their deposition transcripts were "designated" for trial, it

---

[75] The total number of pages of Bezos's deposition transcript is unknown. However, Cordance designated up to page 138 of the transcript, which indicates the minimum number of pages that the transcript could be.

[76] D.I. 612 at 4.

[77] *Honeywell*, 2009 WL 3153496, at *2.

does not indicate what portions of each deposition transcript were "actually used" at trial as required by LR 54.1(b)(3).  Therefore, the request for costs for the deposition transcripts of Heymann and Jones is denied.  However, since their videotaped depositions were used at trial and were necessitated by their physical location, whether to tax their videotaped depositions will be evaluated.

As previously indicated, in order to recover the expenses for a video deposition, a substantial portion must have been actually used to resolve a material issue.  Here, Amazon has shown the video depositions of Heymann and Jones were used to resolve a material issue in the case.  Taxation of costs, however, rests on whether the portion used was substantial.  With regard to Heymann's video deposition, his testimony encompassed approximately 19 pages of trial transcript.  Jones's video testimony constituted approximately 16 pages of trial transcript.  The reporter's bill indicates Heymann's deposition transcript consisted of 226 pages and his video lasted nine hours.  Likewise, Jones's deposition transcript contained 197 pages and lasted for seven hours.  Assuming the trial transcript reflects only video testimony and not objections or other comments by counsel, Amazon used approximately 12% of Heymann's video deposition and 8% of Jones's video testimony at trial.  This is not substantial and, therefore, Amazon's request for expenses related to the video testimony of Heymann and Jones is denied.

Amazon also seeks taxation of costs for Stephen Mushero's deposition transcript, referencing its designation of a large portion of his transcript for trial.  However, Amazon does not indicate when, if ever, the transcript was actually used at trial.  Mushero appeared live at the jury trial, and the portion of Mushero's video

17

deposition used during the bench trial consisted of less than a page of trial transcript. Therefore, Mushero's deposition is not taxable.

With regard to the deposition of Jeffrey Oberlander, Amazon, again, references designating a large portion of the deposition transcript for trial. However, there is no indication his deposition transcript was actually used at trial. In addition, while Amazon claims it used a substantial portion of the videotaped deposition at trial, the portion identified consists only of eight pages of trial transcript. Assuming those pages pertained solely to the video deposition, that means eight pages out of 136 pages of the deposition transcript were used, which is not a substantial portion.

Amazon seeks taxation of costs for Brian O'Neill's deposition. O'Neill's deposition was at least 222 pages and Amazon designated most of the deposition for use at trial. Amazon further indicates it "read in substantial portions of O'Neill's deposition to describe the operation of customer reviews on Amazon's website."[78] The portion read into the record encompassed 22 pages of trial transcript, which encompasses only 10% of his deposition testimony, and as previously indicated, is not substantial. Amazon also claims the O'Neill deposition testimony was used by Dr. Michael Shamos in his expert report. The use by Dr. Shamos in his expert report does not constitute an actual use at trial, especially since his report was not admitted into evidence. Counsel's statement Dr. Shamos used O'Neill's deposition "in his analysis of the operation of Amazon's customer review feature"[79] merely shows Amazon's subjective view as to why the deposition was important. Even if Dr. Shamos's use in his

---

[78] D.I. 612 at 8.
[79] *Id.*

18

report constituted actual use at trial, he referenced only five pages of O'Neill's 222 page deposition transcript at page 23 of his report.  Amazon has not explained how Dr. Shamos's use is substantial nor how that use *directly* resolved a material issue.  Therefore, the cost associated with the O'Neill deposition is not recoverable.

The deposition costs of Kyle Peterson are also requested.  Amazon designated much of Peterson's deposition transcript for use at trial.  Amazon claims it "read in substantial portions of Peterson's deposition to describe the operation of Amazon's 1-click feature,"[80] referencing 44 pages of trial transcript and claiming the use was "material to whether Amazon's 1-click feature infringed the '710 Patent."[81]  Amazon further notes Dr. Shamos used the deposition transcript in his expert report.  Forty-five pages of trial transcript constitutes approximately 25% of the 203 page deposition transcript, which is substantial.  Despite Amazon's limited one line description of how Peterson's testimony resolved a material issue, its 1-click feature was clearly an important relevant issue.  Therefore, the costs for the Peterson deposition in the amount of $1,152.80 are allowed.

Finally, Amazon seeks reimbursement for the deposition transcript of Drummond Reed, Cordance's founder and inventor.  Drummond Reed's deposition consisted of three volumes.  The first volume contained, at least, 448 pages and the second volume had at least 81 pages.  Again, Amazon designated a large portion of Reed's deposition for use at trial.  Amazon further claims it "played portions of Reed's first videotaped deposition" during the jury trial citing one page of that trial transcript, and four pages of

---

[80] *Id.*
[81] *Id.*

the bench trial transcript.[82]  Amazon also notes its "expert witness . . . read portions of

Reed's testimony."[83]  The total amount used of Reed's video deposition was five pages

out of over 500 pages.  Therefore, the use of Reed's deposition at trial cannot be

considered substantial and is not taxable.

### 4.    Witness Fees

Finally, Amazon requests $27,575.37 for witness fees.  Taxation of witness fees

is allowable under 28 U.S.C. § 1920(3) and LR 54.1(4) and are fixed by 28 U.S.C. §

1821.  "[A]bsent explicit statutory or contractual authorization for the taxation of the

expenses of a litigant's witness as costs, federal courts are bound by the limitations set

out in *28 U.S.C. § 1821* and *§ 1920.*"[84]

Cordance does not object to witness fees of $40.00 each for Ajay Madhock,

Andrew Carey Currie and Bryan William Griffin, or the costs of Mark C. Divincenzo for

the service of a subpoena in the amount of  $205.00, pointing out recovery is

permissible under § 1920(1), rather than § 1920(3).  However, Cordance disputes the

mileage fees of Bryan Griffin and Andrew Currie in the amount of $29.00 and $30.00,

respectively, absent appropriate documentation.  In addition, Cordance objects to the

witness fees of Peter Heymann and Steven Mushero in the amount of $12,200.00 and

$14,991.37, respectively, again due to lack of proper documentation.

Amazon does not address the sufficiency of Griffin and Currie's total mileage

expenses of $59.00.  "A travel allowance equal to the mileage allowance which the

---

[82] *Id.* at 9.
[83] *Id.*
[84] *Crawford Fitting Co. v. J.T. Gibbons, Inc.*, 482 U.S. 437, 444 (1987)  (emphasis
in original).

Administrator of General Services has prescribed . . . for official travel of employees of the Federal Government shall be paid to each witness who travels by privately owned vehicle."[85]  Currently, the allowable amount for automobile travel is $.51 per mile. Dividing the claimed amounts of $29.00 and $30.00 by $.51 equals 56.86 miles round trip for Griffin and 58.82 miles total for Currie.  Cordance's objection is limited to inadequate documentation.  The Federal Circuit recognized when an objection is based on the sufficiency, rather than the legal permissibility, of the evidence, an invoice is sufficient evidence of the actual cost.[86]  Therefore, Amazon's request for taxation of the mileage costs of Currie and Griffin is granted.

In response to Cordance's objections to the reimbursement of Mushero and Heymann's witness fees, Amazon submits emails wherein Amazon confirmed these expenses would be recoverable costs should it prevail.[87]  The *Crawford* court allowed recovery for costs where a contract or agreement exists.[88]  In addition, Cordance arranged for the travel and subsistence of these witnesses and thus should, at least, constructively possess evidence of their travel expenses.  Therefore, the witness fees of Heymann and Mushero in the amount of $12,200.00 and $14,9991.37 will be taxed in accordance with the contractual arrangement between Amazon and Cordance.

## III.    CONCLUSION

For the reasons stated above, Cordance's request that Amazon's bill of costs be

---

[85] 28 U.S.C. § 1821(c)(2).
[86] *Kinzenbaw v. Case LLC*, C.A. No. 05-1483, 2006 U.S. App. LEXIS 10711, at *15 (Fed Cir. Apr. 26, 2006).
[87] D.I. 612 Ex. 1.
[88] *Crawford*, 482 U.S. at 444.

denied in its entirety due to dilatory tactics and indigency of Cordance is denied.  In addition, Amazon's request for ediscovery costs in the amount of $447,694.63 is reduced to $2,721.53.  Should Amazon intend to pursue ediscovery expenses of Fenwick and West or Cataphora, it shall provide an appropriate itemization of the June 18, 2008 charge by Fenwick and West and the charges by Cataphora within thirty days of the date of this decision.

Amazon's request for exemplification costs in the amount of $51,323.62 is denied.  Amazon's request for deposition expenses is granted in part and denied in part and $1,152.80 of those costs is awarded.

Amazon's request for taxation of copying costs in the amount of $1,378.78, for taxation of filing fees in the amount of $1,498.99, and witness fees in the amount of $27,575.37, the above totaling $34,327.47, are granted

Any expenses or costs awarded herein are with interest at the applicable post-judgment rate specified in 29 U.S.C. § 1961.

Dated: April 11, 1012                    /s/   Mary Pat Thynge
                                        UNITED STATES MAGISTRATE JUDGE